UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION, | |
| Plaintiff, | |
| vs. | Civil Action No. 04-10913 WGY |
| THE GILLETTE COMPANY, | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS IN PART AND FOR A MORE DEFINITE STATEMENT

GELB & GELB LLP
    Richard M. Gelb (BBO#188240)
    Daniel C. Hohler (BBO#633065)
20 Custom House Street
Boston, MA 02110
Tel: (617) 345-0010
Fax: (617) 345-0009

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

*Attorneys for Defendant The Gillette Company*

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

FACTS ................................................................................................................................ 1

    A.   The Parties ............................................................................................... 1

    B.   Gillette's License to Use PIC's Photographs ........................................... 1

    C.   Gillette's Alleged Failure to Return PIC's Photographs .......................... 2

    D.   Gillette's Alleged Use of the Photographs in Excess of the Scope of the
Licenses .................................................................................................... 3

    E.   Gillette's Alleged Unauthorized Duplication of the Photographs ............ 3

    F.   Gillette's Alleged Improper Use Of Copyright Notices ......................... 3

    G.   Gillette's Alleged "Stonewalling" in Response to PIC'S Claims ............. 3

    H.   Gillette's Alleged Refusal to Pay March and April 2004 Invoices ........... 4

ARGUMENT ..................................................................................................................... 4

I.    STANDARDS FOR MOTION TO DISMISS ........................................................ 5

II.    PIC'S CLAIMS FOR BREACH OF CONTRACT (COUNT III), FRAUD (COUNT IV)
AND UNFAIR AND DECEPTIVE TRADE PRACTICES (COUNT V) SHOULD BE
DISMISSED TO THE EXTEND THEY ARE PREEMPTED BY THE COPYRIGHT
ACT ....................................................................................................................... 6

    A.   PIC's Contract Claim Based on Gillette's Use of The Photographs Outside The
Scope of And/Or Without A License Seeks To Protect Rights Equivalent to
Those Under Copyright .............................................................................. 7

    B.   PIC'S Fraud Claim Based On Gillette's Unauthorized Duplication Of The
Photographs Seeks To Protect Right Equivalent To Those Under Copyright .......... 8

    C.   PIC's Claim For Unfair And Deceptive Trade Practices Under Mass. Gen. L. Ch.
93A is Preempted ...................................................................................... 9

III.    PICS'S FRAUD CLAIMS (COUNT III) SHOULD BE DISMISSED IN THEIR
ENTIRETY ........................................................................................................... 9

    A.   PIC's Fails to Plead Fraud Based On Gillette's Unauthorized Duplication Of The

              Photographs With Sufficient Particularity ................................................................10

    B.      PIC Fails to State a Claim For Fraud ...........................................................................11

           1.      PIC's Fails to State A Claim For Fraud Based On Gillette's Unauthorized
                 Duplication Of The Photographs .........................................................................11

           2.      PIC's Fails to State A Claim for Fraud Based On Gillette's "Stonewalling"
                 Of Plaintiff's Efforts To Resolve This Matter....................................................12

           3.      PIC's Fails To State A Claim for Fraud Based On Gillette's Failure To Pay
                 PIC's March-April 2004 Invoices .....................................................................12

IV.    PIC FAILS TO STATE A CLAIM UNDER MASS. GEN. L. CH. 93A .............................13

V.     PIC'S COPYRIGHT CLAIMS ARE DEFICIENT .............................................................14

    A.      PIC Has Failed To Meet The Minimum Pleading Requirements To Sustain Its
            Claim For Copyright Infringement...........................................................................14

    B.      To The Extent PIC's Copyright Claims Purport to Be Based Upon Infringement
            Of Works That Are Not Registered, The Court Has No Subject Matter
            Jurisdiction And The Claims Should Be Dismissed .................................................15

VI.    TO THE EXTEND PIC'S CLAIMS SURVIVE DISMISSAL, THE COURT SHOULD
       ORDER PIC TO PROVVICE A MORE DEFINITIVE STATEMENT OF ITS CLAIMS
       PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(E)................................16

CONCLUSION...........................................................................................................................19

## TABLE OF AUTHORITIES
### FEDERAL CASES

*Advanced Cardiovascular System, Inc. v. SciMed Life Systems, Inc.*, 988 F.2d 1157 (Fed. Cir. 1993) ...................................................................................................................5

*Carvalho v. Town of Westport*, 140 F. Supp. 2d 95 (D. Mass. 2001).............................................6

*Conley v. Gibson*, 355 U.S. 41 (1957) ...........................................................................................5

*Cooper v. Pate*, 378 U.S. 546 (1964)..............................................................................................5

*Data General Corp. v. Grumman System Support Corp.*, 36 F.3d 1147 (1st Cir. 1994).........6, 7, 9

*Doyle v. Hasbro, Inc.*, 103 F.3d 186 (1st Cir. 1996) ......................................................................10

*Educadores Puertorriqueños en Acción  v. Hernández*, 367 F.3d 61 (1st Cir. 2004) ...................14

*First Mutual Inc. v. Rive Gauche Apparel Distributing*, Civ. A. No. 90-10899-Z, 1990 WL. 235422 (D. Mass. Dec. 21, 1990) ...................................................................... 16-17

*Henry v. National Geographic Society*, 147 F. Supp. 2d 16 (D. Mass. 2001)..................... 9, 13-14

*Herring v. Vadala*, 670 F. Supp. 1082 (D. Mass. 1987)................................................................13

*John T. Callahan & Sons, Inc. v. Dykeman Electric Co.*, 266 F. Supp. 2d 208 (D. Mass. 2003) .......................................................................................................................13

*Kelley v. L.L. Cool J*, 145 F.R.D. 32 (S.D.N.Y. 1992) ...........................................................15, 16

*MacNeill Engineering Co. v. Trisport, Ltd.*, 59 F. Supp. 2d 199 (D. Mass. 1999) ......................14

*Papasan v. Allain*, 478 U.S. 265 (1986) .........................................................................................5

*Patricia Kennedy & Co. v. Zam-Cul Enterprises, Inc.*, 830 F. Supp. 53 (D. Mass. 1993).......... 7-9

*Port Authority v. Arcadian Corp*, 189 F.3d 305 (3d Cir. 1999) ......................................................5

*Powers v. Warminster Township*, 1994 WL. 45021 (E.D. Pa. Feb. 10, 1994) ..............................17

*Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 650 F. Supp. 838 (D. Mass. 1986) .................6, 15

*Reid v. American Society of Composers, Authors & Publishers*, No. 92 Civ. 270, 1994 WL. 3409 (S.D.N.Y. Jan. 5, 1994) ..............................................................................16

*Robinson v. Fauver*, 932 F. Supp. 639 (D.N.J. 1996)......................................................................5

*Roeder v. Alpha Industries, Inc.*, 814 F.2d 22 (1st Cir. 1987)............................................5

*Rose v. Kinevan*, 115 F.R.D. 250 (D. Colo. 1987)..............................................................17

*Saint-Groban Industrial Ceramics, Inc. v. Wellons, Inc.*, 246 F.3d 64 (1st Cir. 2001).................13

*Sands v. Ridefilm Corp.*, 212 F.3d 657 (1st Cir. 2000)......................................................11

*Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357 (1st Cir. 1994)...............................10

*Sunoco, Inc. (R & M) v. Makol, No. Civ. A. 01-30053-MAP*, 2002 WL. 991703 (D. Mass. May 10, 2002)........................................................................................................13

*Supreme Wine Co. v. Distributors of New England, Inc.*, 198 F. Supp. 318 (D. Mass. 1961)..................................................................................................................17

*Tingley Systems, Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95 (D. Mass. 2001).................6-9

*Tom Kelley Studios Inc. v. International Collectors Society*, No. 97 Civ 0056 (WK), 1997 WL. 598461 (S.D.N.Y. Sept. 25, 1997)............................................................14-16

*U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158 (S.D.N.Y. 2001)......................16

*Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F. Supp. 277 (E.D. Wis. 1975) ......................16

## FEDERAL STATUTES AND RULES

17 U.S.C. § 102 (a)(5).........................................................................................................6

17 U.S.C. § 106(1) ..............................................................................................................8

17 U.S.C. § 106(5) ..............................................................................................................7

17 U.S.C. § 301....................................................................................................................6, 7

17 U.S.C. § 411(a) ..............................................................................................................15

Fed. R. Civ. P. 12(b)(1)......................................................................................................5

Fed. R. Civ. P. 12(b)(6)......................................................................................................5

Fed. R. Civ. P. 12(e) ..........................................................................................................16

## STATE STATUTES

Mass. Gen. L. Ch. 93A ...............................................................................................*passim*

**MISCELLANEOUS**

1 Melville B. Nimmer, et al., *Nimmer on Copyright* § 1.01 (Matthew Bender 2004)......................7

Defendant The Gillette Company ("Gillette") respectfully submits this memorandum of law in support of its Motion to Dismiss in Part the Amended Complaint of Plaintiff Photographic Illustrators Corporation ("PIC") and for a More Definite Statement. PIC amended its Complaint after counsel for Gillette informed PIC's counsel that Gillette intended to file a Motion to Dismiss the original Complaint. As set forth herein, PIC's Amended Complaint still is defective in several ways.

## FACTS[1]

### A. The Parties

PIC is a Massachusetts corporation that specializes in photography, including photography of consumer products for catalogs and advertising. (Am. Compl. ¶¶ 1, 7.) Gillette is a Delaware corporation located in Massachusetts that, *inter alia*, develops, manufactures and sells consumer products.

### B. Gillette's License to Use PIC's Photographs

On many occasions over a span of years, Gillette retained PIC to photograph certain of its products. (Am. Compl. ¶ 8.) On each such occasion, PIC took photographs of Gillette's products and provided Gillette with such photographs, as well as other photographic materials such as transparencies, negatives and digital images (collectively, the "Photographs") purportedly pursuant to PIC's standard "terms and conditions." (*Id.* ¶ 9.) These boilerplate terms and conditions are set out on the reverse of invoices supplied by PIC to Gillette (the "Boilerplate").[2] Of the unspecified number of Photographs that are the basis of PIC's claims, PIC alleges to have applied for and received U.S. Copyright Registrations for only four of the Photographs (Nos. VA1-225-338; VA1-225-339; VA1-225-340; and VA1-225-341). (Am.

---

[1] Gillette assumes, for purposes of this Motion only, that the facts PIC alleges in its Amended Complaint are true. Gillette reserves its right to dispute PIC's allegations at any other time in this litigation.

[2] PIC failed to attach a copy of the Boilerplate to its Amended Complaint.

Compl. ¶ 12.)

PIC alleges that the Boilerplate "was entered into on each occasion" PIC provided Photographs to Gillette, "such that Gillette and PIC entered into hundreds of Agreements over the years." (*Id.* ¶ 9.) PIC does not claim that the Boilerplate was ever executed by or on behalf of Gillette.

Under the Boilerplate, PIC claims to retain the copyrights in the Photographs, and to provide Gillette with limited licenses (the "Licenses") to reproduce the Photographs for one year in the United States only. (*Id.* ¶ 10.) Paragraph 9 of the Boilerplate states:

> REPRODUCTION RIGHTS:  Reproduction rights are conditioned on Photographer's receipt of payment in full and Client's proper use of the copyright notice.  All rights not expressly granted here remain the exclusive property of Photographer.  Unless otherwise stated on the face of this Agreement, the duration of the License is one year from the Agreement date and limited to use in the United States of America.

(*Id.*) Paragraph 12 of the Boilerplate provides:

> RETURN OF PHOTOGRAPHS:  Client assumes all risk for all photographic material(s) delivered by Photographer from time of receipt by Client until time of receipt by Photographer.  If no Return Date appears on the face of this form, Client shall return all of these material(s) in undamaged, unaltered and unretouched condition within 30 days of first publication.

(*Id.* ¶ 12.)

C. Gillette's Alleged Failure to Return PIC's Photographs

PIC alleges that Gillette failed to return PIC's copyrighted Photographs as required by Paragraph 10 of the Boilerplate. (*Id.* ¶ 17.) PIC does not, however, identify which Photographs were never returned, when such Photographs were first provided to Gillette, and when, or even if, such Photographs were ever published by Gillette. (*See id.*) PIC alleges to have made "numerous requests" for the return of the Photographs but fails to allege when or over what period such requests were made, except to allege that PIC "brought its concerns" to Gillette's attention in a June 23, 2003 letter. (*Id.* ¶¶ 18, 28, 29.) PIC concedes in its pleading that some of

2

the Photographs have been returned. (*Id.* ¶ 30.)

### D. Gillette's Alleged Use of the Photographs in Excess of the Scope of the Licenses

PIC claims that Gillette has used "at least some" of the Photographs beyond the scope of the Licenses. (*Id.* ¶¶ 20-23.) However, PIC identifies only three photographs that allegedly have been used beyond the scope of the License and has failed to identify the circumstances or timing of any other alleged improper uses. (*Id.*)

### E. Gillette's Alleged Unauthorized Duplication of the Photographs

PIC cannot and does not allege that the Boilerplate, which licenses Gillette to reproduce the Photographs, requires Gillette to obtain duplicates of such Photographs from PIC. Nevertheless, PIC claims that Gillette has infringed its copyrights by hiring a third party other than PIC to provide duplicates of the Photographs "outside the one-year period for which Gillette was licensed, and/or without any license ...." (Am. Compl. ¶¶ 25, 51.) PIC also claims fraud based upon Gillette's procurement of duplicates of unspecified Photographs and based upon one conversation between PIC's officer and an unnamed employee of Gillette who represented that it did not need PIC to provide a duplicate of an unspecified Photograph. (*Id.* ¶¶ 58-62.)

### F. Gillette's Alleged Improper Use Of Copyright Notices

PIC further alleges that Gillette has used "false or misleading copyright notices" in connection with the Photographs in violation of the Boilerplate and, as a result, breached its contracts with PIC *and* infringed PIC's copyrights in the Photographs. (*Id.* ¶¶ 19, 49, 55.)

### G. Gillette's Alleged "Stonewalling" in Response to PIC's Claims

PIC further alleges that in response to its claims, Gillette's in-house counsel "stonewalled" PIC's efforts to resolve its claims by first stating, in August 2003, that Gillette was conducting an internal investigation into PIC's claims and would "forward any relevant information" to PIC, but later contradicting such statement in May 2004. (*Id.* ¶¶ 31-33.) PIC

alleges fraud based on its allegation that it "relied upon" this statement "in delaying the filing of this lawsuit while it awaited the promised results of Gillette's supposed 'internal investigation.'" (*Id.* ¶¶ 66-68.)

H.  <u>Gillette's Alleged Refusal to Pay March and April 2004 Invoices</u>

PIC alleges that in February 2004, Gillette approached PIC to perform photographic work. (*Id.* ¶ 34.) Despite the fact that PIC's complaints concerning Gillette's prior conduct had not been resolved to PIC's satisfaction at that time, PIC agreed to perform the projects "[a]s a gesture of goodwill." (*Id.* ¶¶ 34, 35, 37.) PIC further alleges that Gillette was happy with the work PIC performed, but, as of June 30, 2004, had failed to pay PIC's invoices dated March 2, 2004, March 17, 2004, March 22, 2004 and April 20, 2004 which, combined, represent $70,000 in unpaid fees.[3] (*Id.* ¶¶42-44.) PIC asserts breach of contract, copyright infringement and fraud based on Gillette's failure to pay these invoices. (*Id.* ¶¶ 49, 56, 63-65.)

## ARGUMENT

PIC's Amended Complaint contains the following five separate causes of action: Count I (Copyright Infringement By Use Of The Photographs Without Any License And/Or Beyond The Scope Of The Licenses); Count II (Copyright Infringement By Unauthorized Duplication Of The Photographs); Count III (Breach Of Contract); Count IV (Fraud); and Count V (Unfair And Deceptive Trade Practices Under Mass. Gen. L. ch. 93A).

Gillette moves to dismiss in whole or in part the above claims for the following reasons:

To the extent PIC's Count III for Breach of Contract, Count IV for Fraud and Count V for Unfair And Deceptive Trade Practices Under Mass. Gen. L. Ch. 93A are preempted by the Copyright Act they should be dismissed.

PIC's Fraud claims should be dismissed in their entirety because PIC has failed to plead with sufficient particularity and has failed to state a claim for fraud.

---

[3] PIC does not allege *when* these invoices were submitted to Gillette.

PIC's claim under Mass. Gen. L. Ch. 93A is deficient as a matter of law because PIC has failed to state a claim upon which relief can be granted.

Finally, PIC's claims for Copyright Infringement (Counts I and II) are deficient as a matter of law because PIC has failed to meet its pleading obligation in identifying either the specific works that are being infringed or the specific acts, including when those acts occurred, that give rise to the alleged infringement. Moreover, because PIC has alleged ownership of only four copyright registrations, to the extent PIC's copyright claims relate to unregistered works, the Court has no subject matter jurisdiction over those claims pursuant to Fed. R. Civ. P. 12(b)(1).

## I.    STANDARDS FOR MOTION TO DISMISS

The purpose of Rule 12(b)(6) is to "screen out cases" where no remedy exists for the wrong alleged. *Port Auth. v. Arcadian Corp*, 189 F.3d 305, 312 (3d Cir. 1999); *see also Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (the rule's purpose is to terminate lawsuits "that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity").

It is appropriate to dismiss claims pursuant to Fed. R. Civ. P. 12(b)(6) "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir. 1987) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). While the Court must accept the factual allegations stated in the amended complaint as true, *see Cooper v. Pate,* 378 U.S. 546 (1964), "legal conclusions made in the guise of factual allegations will not be given the presumption of truthfulness and will not preclude the dismissal of a complaint." *Robinson v. Fauver*, 932 F. Supp. 639, 642 (D.N.J. 1996) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Moreover,

> the standard for dismissal is not without any bite. In taking the plaintiff's allegations as true, the Court may eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets. Moreover, the plaintiff must set forth in his complaint factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some

5

actionable legal theory.

*Carvalho v. Town of Westport*, 140 F. Supp. 2d 95, 98 (D. Mass. 2001) (citations omitted).

Solely for the purposes of this motion, Gillette accepts all of PIC's allegations in the Amended Complaint as true except for its incorrect designation of Gillette's state of incorporation. The motion is based solely upon PIC's Amended Complaint.

## II.  PIC'S CLAIMS FOR BREACH OF CONTRACT (COUNT III), FRAUD (COUNT IV) AND UNFAIR AND DECEPTIVE TRADE PRACTICES (COUNT V) SHOULD BE DISMISSED TO THE EXTENT THEY ARE PREEMPTED BY THE COPYRIGHT ACT

Under the Copyright Act, all legal or equitable rights equivalent to the exclusive rights under copyright are preempted. 17 U.S.C. § 301. Section 301 of the Copyright Act sets out a two-part analysis to determine whether a claim is preempted. *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 650 F. Supp. 838, 849 (D. Mass. 1986). The Court must first determine whether the work that is the center of the controversy falls within the subject matter of copyright as defined by Section 102 or Section 103 of the Copyright Act. *Id.*; *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 104 (D. Mass. 2001). There is no dispute that PIC's Amended Complaint centers entirely on what it claims is Gillette's alleged misuse of PIC's photographs. Obviously, photographs fall within the subject matter of copyright. 17 U.S.C. § 102(a)(5).

The second statutory requirement for preemption is that the state cause of action creates "legal or equitable rights that are equivalent to any exclusive rights within the general scope of copyright as specified in Section 106 of the Act." 17 U.S.C. § 301; *see also Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164 (1st Cir. 1994). In this Circuit, the courts apply the "extra element" test to determine whether a state claim is equivalent to a copyright claim: "[I]f a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and

6

federal law will not preempt the state action." *Id.* (citations omitted).

"Not every 'extra element' of a state claim will establish a qualitative variance between the rights protected by the federal copyright law and those protected by state law." *Id.* at 1164. For example, causes of action "where the additional elements merely concern *the extent to which* authors and their licensees can prohibit unauthorized copying by third parties," are deemed "equivalent in substance to a copyright infringement claim." *Id.* at 1165. Rather, the extra element "must be one which changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Tingley Sys., Inc.*, 152 F. Supp. 2d at 105 (citation omitted). Thus, in applying the preemption provision of the Copyright Act, "courts focus not upon the label affixed to the state causes of action, but rather upon what plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Patricia Kennedy & Co. v. Zam-Cul Enters., Inc.*, 830 F. Supp. 53, 56 (D. Mass. 1993) (citation omitted).

A.    **PIC's Contract Claim Based On Gillette's Use Of The Photographs Outside The Scope Of And/Or Without A License Seeks To Protect Rights Equivalent To Those Under Copyright**

PIC asserts a breach of contract claim against Gillette based on Gillette's alleged use of the Photographs outside the scope of the license provided under the Agreement. (Am. Compl. ¶ 54.) Yet PIC also alleges that this identical conduct gives rise to copyright infringement by Gillette – presumably on the ground that Gillette's alleged use of Photographs outside the scope of the license infringes on PIC's exclusive rights to "display" the Photographs publicly under 17 U.S.C. § 106(5). (Am. Compl. ¶ 49.) The fundamental allegation of both claims is that Gillette displayed the photographs without authorization. Because there is no "extra element" alleged by PIC that differentiates the claims from one another, the breach of contract claim is preempted by the Copyright Act. PIC cannot avoid a preemption finding simply by dressing up its copyright infringement claim as a breach of contract claim. *See, e.g.,* 1 Melville B. Nimmer, et al., *Nimmer on Copyright* § 1.01[B][1][a], at 1-19 (Matthew Bender 2004 Release) (noting that § 301 of the Copyright Act preempts breach of contract claims that "serve as a subterfuge to control nothing

7

other than the reproduction, adaptation, public distribution, etc. of works within the subject matter of copyright.").

PIC's breach of contract claims based on Gillette's failure to use a proper copyright notice (*id.* ¶ 55) and/or failure to pay PIC's invoices (*id.* ¶ 56) similarly are preempted. PIC alleges that because Gillette failed use a proper copyright notice and/or to pay the invoices, Gillette did not have permission to use the photographs at all, and, as a result, all of Gillette's "uses, reproductions, displays or distributions of such Photographs ... constitute[d] copyright infringement." (*Id.* ¶¶ 9, 19, 45, 49.) Here, again, PIC has failed to allege any "extra element" that differentiates this breach of contract claim from its copyright infringement claim. Accordingly, the Copyright Act preempts the breach of contract claim.

## B.   PIC's Fraud Claim Based On Gillette's Unauthorized Duplication Of The Photographs Seeks To Protect Rights Equivalent To Those Under Copyright

PIC asserts a fraud claim against Gillette based on Gillette's obtaining duplicates of PIC's photographs from third parties other than PIC. (Am. Compl. ¶¶ 59-62.) PIC further alleges that Gillette deceived PIC about the need for duplicates. (*Id.*) In focusing on "what plaintiff seeks to protect" by this claim, *Patricia Kennedy & Co.*, 830 F. Supp. at 56, there can be no dispute that PIC claims to have been wronged by Gillette duplicating PIC's photographs. The very first of the exclusive rights in copyrighted works outlined in the Copyright Act is the right "to reproduce the copyrighted work in copies . . . ." 17 U.S.C. § 106(1). Indeed, PIC concedes that the right it seeks to protect by its fraud claim is a copyright right, when it alleges that by obtaining duplicates from third parties without PIC's permission Gillette "infringed PIC's copyrights." (Am. Compl. 51.)

The only "extra element" alleged by PIC is that Gillette misled it as to Gillette's need for duplicate photos. (*Id.* ¶ 61.) However, PIC's allegations, even if true, do not change the core nature of the rights PIC seeks to protect. Indeed, "the fact that a cause of action includes awareness, intent or commercial misconduct" does not save a claim from preemption where "such additional elements merely alter the scope of the action and not its nature." *Tingley Sys.,*

*Inc.*, 152 F. Supp. 2d at 105. Here, PIC essentially alleges commercial misconduct on the part of Gillette. There is nothing in the fraud claim that alters its scope or nature from copyright infringement to something else.

### C.    PIC's Claim For Unfair And Deceptive Trade Practices Under Mass. Gen. L. Ch. 93A Is Preempted

PIC does not articulate in its pleading the acts that give rise to its claim under Mass. Gen. L. Ch 93A (the "93A Claim"). Rather, PIC refers generally to "acts and/or omissions as described above" as constituting the unfair and deceptive trade practices and adds that such acts were "knowing and willful." (Am. Compl. ¶¶ 70-75.) As is the case with PIC's deficient fraud claim, the core of PIC's complaint is that Gillette allegedly used PIC's copyrighted material in some unauthorized fashion. There is nothing in the 93A Claim that goes beyond "*the extent to which*" PIC "can prohibit unauthorized copying" by Gillette. As a result, the 93A claim must be deemed "equivalent in substance to a copyright infringement claim." *Data Gen. Corp.*, 36 F.3d at 1165.

In a case with similar facts, *Henry v. National Geographic Society*, 147 F. Supp. 2d 16, 23 (D. Mass. 2001), this Court found that the plaintiff's 93A claim was preempted by the Copyright Act. In that case, the plaintiff, a photographer, sued National Geographic for having used certain of his photographs beyond the scope of the parties' agreement. *Id.* at 18. The Court held that the right the plaintiff sought to enforce by the claim – the right to reproduce the copyrighted work – was equivalent to the right protected by copyright law and thus preempted. *Id.* at 23. The same result is warranted here.

## III.    PIC'S FRAUD CLAIMS (COUNT III) SHOULD BE DISMISSED IN THEIR ENTIRETY

PIC alleges three fraud claims against Gillette based, respectively, on Gillette's: (1) unauthorized duplication of PIC's Photographs (Am. Compl. ¶¶ 59-62); (2) "stonewalling" of PIC's attempts to resolve this dispute (*id.* ¶¶ 66-68); and (3) failure to pay the amount due in four invoices dated March 2, 2004, March 17, 2004, March 22, 2004 and April 20, 2004 (*id.* ¶¶ 63-

65). As set forth below, each of these claims is deficient and should be dismissed.

### A.   PIC's Fails To Plead Fraud Based On Gillette's Unauthorized Duplication Of The Photographs With Sufficient Particularity

Rule 9(b) of the Federal Rules of Civil Procedure "imposes a heightened pleading requirement for allegations of fraud . . . ." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996). In that regard, "'[t]he clear weight of authority is that Rule 9 requires specification of the time, place, and content of an alleged false representation . . . .'" *Id.* (quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980)); *see also Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir. 1994) ("rule requires that the particular times, dates, places or other details" be alleged).

PIC's fraud claim does not meet the heightened pleading requirement imposed by Rule 9(b). PIC's fraud allegations are limited to: (1) Gillette purchased duplicates of PIC's photos from third parties and not from PIC (Am. Compl. ¶ 25); (2) Gillette engaged in such acts of duplication outside the one-year period for which Gillette was licensed and/or without any license (*Id.*); and (3) a requisitioning agent of Gillette asked for a particular image and, when asked by PIC's officer whether the image was needed to make a duplicate, such agent allegedly said no. (*Id.* ¶¶ 27, 60.)

First, to the extent PIC seeks to plead a general pattern of fraud by Gillette with respect to the unauthorized duplication of PIC's photographs, such pleading is not sufficiently specific to meet the heightened requirement. (*See* Am. Compl. ¶ 60 ("As one example of this deception….").) PIC has really alleged one act of so-called fraud: a purported conversation between PIC's officer and an anonymous Gillette employee. (*Id.*) However, PIC fails to specify the date of this conversation, the name of the person at Gillette with whom PIC's officer allegedly spoke and whether such individual was authorized to speak on Gillette's behalf, the identity of the particular image at issue, or the facts surrounding the alleged unauthorized duplication of the image. Indeed, PIC does not even allege that Gillette made an unauthorized duplicate of the image about which Gillette's requisitioning agent was asked. (Compl. ¶¶ 59-62.)

Thus, PIC's fraud claim based on Gillette's unauthorized duplication of PIC's photographs fails on this basis as well.

### B.    PIC Fails To State A Claim For Fraud

In order to make out a claim for fraud "a plaintiff must prove 'that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.'" *Sands v. Ridefilm Corp.*, 212 F.3d 657, 663 (1st Cir. 2000) (citation omitted).  Each of PIC's pleaded fraud claims should be dismissed because PIC has failed to make out a cause of action for fraud.

### 1.    PIC's Fails To State A Claim For Fraud Based On Gillette's Unauthorized Duplication Of The Photographs

PIC's fraud claim with respect to Gillette's unauthorized duplication of PIC's photographs is not only preempted and fails to meet the heightened pleading standard under Rule 9(b) (*see* Sections II.B & III.A, above), it also fails to state a claim.

PIC merely alleges that Gillette's employee stated that: (1) the image he was requesting was not needed for the purpose of making duplicates of it; and (2) Gillette was "experiencing a reduced need for duplicates." (Am. Compl. ¶ 60.)  Even assuming for purposes of this Motion that PIC has alleged a "false representation of material fact" with respect to this claim,[4] PIC's fraud claim fails because there is no allegation that PIC's reliance on Gillette's purportedly false statements has caused any legally cognizable damage to PIC.  Indeed, PIC alleges that the only damage suffered as a result of its reliance on the purportedly false statements was that PIC did "not inquire further regarding Gillette's duplication activities." (Am. Compl. ¶ 62.)  This does not represent damage under any legally recognized theory of which Gillette is aware.  Thus, the claim fails on this ground as well.

---

[4] PIC does not allege, because it cannot, that Gillette actually had a duplicate of the particular image referenced in the Amended Complaint made by a third party without PIC's authorization. (*See* Am. Compl. ¶¶ 59-62)

### 2.    PIC's Fails To State A Claim For Fraud Based On Gillette's "Stonewalling" Of Plaintiff's Efforts To Resolve This Matter

PIC's fraud claim based on Gillette's "stonewalling" of PIC's settlement efforts likewise fails to state a claim.  With respect to this claim, PIC alleges merely that, in August 2003, Gillette promised to conduct an internal investigation concerning PIC's claims and to provide PIC with "relevant information," but contradicted such statement in May 2004.  (*Id.* ¶¶ 31-33.) The only damage PIC alleges as a result of this conduct is that it "relied upon" the statement "in delaying the filing of this lawsuit" – presumably for seven months.  (*Id.* ¶ 67.)  Again, this is not "damage" under any legally recognized theory of which Gillette is aware.  Thus, this fraud claim fails as well.

### 3.    PIC's Fails To State A Claim For Fraud Based On Gillette's Failure To Pay PIC's March-April 2004 Invoices

For its final fraud claim, PIC alleges that: (1) in February 2004, Gillette approached PIC to perform photographic work; (2) PIC performed such work "[a]s a gesture of good will" (*id.* ¶ 37); (3) Gillette was happy with the work PIC performed; and (4) as of June 30, 2004, Gillette failed to pay PIC's invoices dated March 2, 2004, March 17, 2004, March 22, 2004 and April 20, 2004, which total $70,000 in unpaid fees.  (*Id.* ¶¶ 42-44.)  These allegations are insufficient to state a fraud claim.

First, PIC's effort to identify a false representation falls woefully short of the mark.  In this connection, PIC alleges that "in light of the Agreement's requirement that payment is due upon receipt, and Gillette's longstanding practice of prompt payment over the course of the years, Gillette's entreaties to PIC and its repeated statements to PIC during March and April complimenting PIC on the speed and quality of [PIC's] work falsely implied that Gillette would pay PIC's invoices upon receipt." (*Id.* ¶ 63.)  Certainly, the Agreement's terms, which PIC drafted, cannot be the basis for any false statement on Gillette's part.  Moreover, Gillette's "longstanding practice of prompt payment" is not a statement and, in any event, is not alleged to be false.  PIC does not allege that Gillette's "entreaties" to PIC were false in any way.  Gillette's expressed satisfaction with PIC's work – *after* the work already was performed – cannot be the

12

basis for a fraudulent inducement claim. Moreover, PIC does not allege that Gillette in fact *was not* satisfied with the work PIC produced. Simply put, there is no false statement alleged here, and without a false statement, there can be no fraud.

Second, even if PIC had identified a false statement – which it did not – PIC does not allege that it took any action in reliance on such false statement. Rather, PIC acknowledges that it performed the work in question "[a]s a gesture of good faith" in reliance on its own Agreement's terms and Gillette's longstanding practice of paying on time, not on any statement by Gillette. (*Id.* ¶¶37, 63.)

Essentially, PIC's fraud claim is based simply on its allegation that Gillette promised, but failed, to pay PIC for the photographs. But Gillette's alleged failure to pay money allegedly owed under a contract, without more, cannot support a cause of action for fraud. *See, e.g., Herring v. Vadala*, 670 F. Supp. 1082, 1086 (D. Mass. 1987) ("Although withholding payments may be a breach of contract, it does not amount to fraud.").

## IV.    PIC FAILS TO STATE A CLAIM UNDER MASS. GEN. L. CH. 93A

As noted above, PIC's 93A claim refers generally to "acts and/or omissions as described above" in the Amended Complaint as constituting unfair and deceptive trade practices and adds that such acts were "knowing and willful." (Am. Compl. ¶¶ 70-75.)

"[T]he boundaries of what may qualify for consideration as a [ch.] 93A violation is a question of law." *Saint-Groban Indus. Ceramics, Inc. v. Wellons, Inc.*, 246 F.3d 64, 73 (1st Cir. 2001) (citation omitted). "A mere breach of contract does not constitute an unfair or deceptive trade practice under [ch.] 93A unless it rises to the level of 'commercial extortion' or a similar degree of culpable conduct." *Sunoco, Inc. (R & M) v. Makol*, No. Civ. A. 01-30053-MAP, 2002 WL 991703, at *7 (D. Mass. May 10, 2002) (citation and internal quotations marks omitted); *see also, e.g., John T. Callahan & Sons, Inc. v. Dykeman Elec. Co.*, 266 F. Supp. 2d 208, 220 n.25 (D. Mass. 2003). To plead a claim for unfair trade practices under Mass. Gen. L. ch. 93A, PIC is required to show that the unfair practices reach "'a level of rascality that would raise an eyebrow

13

of someone inured to the rough and tumble of the world of commerce,' and be 'unscrupulous, intolerable, and unethical.'" *Henry*, 147 F. Supp. 2d at 21 (citations omitted).

In *Henry*, however, this Court held that defendant National Geographic's alleged "willful[ ]" unauthorized use and reproduction of the plaintiff's forty-three photographs, even after the plaintiff had requested that National Geographic cease such conduct, "was not so unscrupulous and intolerable to rise to the level necessary to support a Chapter 93A claim." *Henry*, 147 F. Supp. 2d at 22.

The facts alleged by PIC herein are not materially different than those in *Henry*. As in that case, PIC's claims here all revolve around Gillette's alleged unlawful reproduction of PIC's photos. The sum total of PIC's allegations against Gillette set forth in the Amended Complaint does not rise to the level of "rascality" required to support the 93A Claim.

## V.   PIC'S COPYRIGHT CLAIMS ARE DEFICIENT

### A.   PIC Has Failed To Meet The Minimum Pleading Requirements To Sustain Its Claims For Copyright Infringement

"Despite the liberal notice pleading standards embodied in the Federal Rules of Civil Procedure, a plaintiff 'is nonetheless required to set forth *factual allegations*, either direct or inferential, respecting *each material element* necessary to sustain recovery under some actionable legal theory.'" *MacNeill Eng'g Co. v. Trisport, Ltd.*, 59 F. Supp. 2d 199, 201 (D. Mass. 1999) (Young, *Chief Judge*) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)) (emphasis in original). Thus, "in any ... action subject to notice pleading standards, *the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why ....*" *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004) (emphasis added).

Where a plaintiff alleges copyright infringement, it is required to allege: (1) "which specific original works are the subject of the copyright claim"; (2) "that plaintiff owns the copyrights in those works"; (3) "that the copyrights have been registered in accordance with [Section 411 of the Copyright Act]"; and (4) "by what acts during what time the defendant

14

infringed the copyright." *Tom Kelley Studios Inc. v. Int'l Collectors Soc'y*, No. 97 Civ. 0056(WK), 1997 WL 598461, at *1 (S.D.N.Y. Sept. 25, 1997) (citation omitted); *see also, e.g., Kelley v. L.L. Cool J*, 145 F.R.D. 32, 37 (S.D.N.Y. 1992).

PIC's copyright claim is woefully deficient. PIC fails to allege with specificity which specific original works are the subject of its copyright claim. Although PIC alleges copyright infringement based on three specific works, it provides these only as "examples" of Gillette's copyright infringement. (Am. Compl. ¶¶ 21-23.) Thus, PIC seeks to allege copyright infringement of "[m]any if not all" and "at least some" of its "Photographs" (*id.* ¶¶ 19-20), a term defined by PIC only as "photographs (and other photographic materials such as transparencies, negatives and digital images) of Gillette's products" provided to Gillette. (*Id.* ¶ 9.) This vague description falls far short of the requirement to identify the "specific original work." Indeed, PIC identifies only four works for which it owns a copyright registration. (*Id.* ¶ 12.) Moreover, PIC fails to identify "by what acts during what time" Gillette committed copyright infringement except with respect to three of its photographs.

PIC's copyright claims do not rise to the level of notice pleading and thus should be dismissed.

**B.     To The Extent PIC's Copyright Claims Purport To Be Based Upon Infringement Of Works That Are Not Registered, The Court Has No Subject Matter Jurisdiction And The Claims Should Be Dismissed**

Even if the Court finds that PIC has pleaded its copyright claim with sufficient particularity, to the extent PIC purports to base its copyright claim on works that are not registered, such claims should be dismissed. Section 411(a) of the Copyright Act provides that "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a); *see also Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 650 F. Supp. 838, 850 n.8 (D. Mass. 1986) ("Copyright registration under § 411(a) is a condition precedent to filing an infringement action.").

Although the Amended Complaint broadly alleges infringement of PIC's "Photographs,"

15

PIC identifies only four works for which it owns copyright registrations. (Am. Compl. ¶ 12.) Thus, to the extent PIC's copyright claim purports to extend to infringement of works that are not registered, this Court does not have subject matter jurisdiction over such claims and they must be dismissed pursuant to Rule 12(b)(1). *See, e.g., U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158, 169 (S.D.N.Y. 2001); *Reid v. American Soc'y of Composers, Authors & Publishers*, No. 92 Civ. 270, 1994 WL 3409, at *2 (S.D.N.Y. Jan. 5, 1994) (dismissing copyright claim for lack of subject matter jurisdiction where PIC failed to allege registration of the allegedly copied work).

## VI.    TO THE EXTENT PIC'S CLAIMS SURVIVE DISMISSAL, THE COURT SHOULD ORDER PIC TO PROVIDE A MORE DEFINITE STATEMENT OF ITS CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(E)

To the extent that PIC's complaint survives dismissal, Gillette respectfully requests that the Court order PIC to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).[5] As set forth in Section V.A, above, the Federal Rules require pleading with a measure of particularity.   In the copyright context this means: (1) identifying the works that are the subject of the claim; (2) alleging ownership of a valid copyright; (3) owning a valid copyright registration; and (4) setting forth the specific acts that give rise to the infringement. *Tom Kelley Studios Inc*, No. 97 Civ. 0056(WK), 1997 WL 598461, at *1; *L.L. Cool J*, 145 F.R.D. at 37.

Moreover, "where 'various agreements' are mentioned" in the complaint, the plaintiff should be required to "identify each agreement by date and parties ...." *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F. Supp. 277, 284 (E.D. Wis. 1975). And to the extent the plaintiff alleges that such agreements have been breached, it must "set[] forth the particular acts ... which plaintiff alleges constitute a breach of the agreements ...." *First Mut. Inc. v. Rive Gauche*

---

[5] Federal Rule of Civil Procedure 12(e) provides, in relevant part:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.

Fed. R. Civ. P. 12(e).

*Apparel Distrib.*, Civ. A. No. 90-10899-Z, 1990 WL 235422, at *4 (D. Mass. Dec. 21, 1990).

Finally, a motion for more definite statement under Rule 12(e) is appropriate where the plaintiff has failed to provide sufficient information for the defendant to determine whether to plead the defenses of statute of limitations, laches and/or acquiescence. *Supreme Wine Co. v. Distribs. of New England*, 198 F. Supp. 318, 320 (D. Mass. 1961); *see also, e.g., Powers v. Warminster Township*, 1994 WL 45021, at *5 (E.D. Pa. Feb. 10, 1994); *Rose v. Kinevan*, 115 F.R.D. 250, 251-52 (D. Colo. 1987).

PIC's Amended Complaint fails to meet the above-cited pleadings standards and, as such, is too indefinite, in the following ways:

- **Counts I & II – *Copyright Infringement* –** PIC alleges that "Gillette has misappropriated and infringed PIC's copyright in its Photographs … by using such Photographs beyond the scope (both temporal and geographic) of the Licenses provided for in the Agreements" (Am. Compl. ¶ 49), by using such Photographs "without any license" (*id.*), and "by obtaining duplicates thereof without authorization from PIC" (*id.* ¶51). PIC fails, however, to specify: which "Agreements" PIC is referring to out of the alleged "hundreds of Agreements" adverted to earlier in the Amended Complaint (*id.* ¶ 9); when and where the parties allegedly entered into each such Agreement; which "Photographs" were used outside the temporal scope of the license (with the exception of two photographs identified by way of example (*id.* ¶¶ 21-22)), which Photographs were used outside the geographic scope of the license (with the exception of one photograph identified by way of example (*id.* ¶ 23)); any Photographs that were used without a proper copyright notice; any photographs that were duplicated outside the one-year period permitted under the contract; whether PIC has registered or filed applications to register any but four of the Photographs with the Copyright Office; or when and where such alleged copyright infringement took place.

- **Count III – *Breach of Contract* –** PIC alleges that "Gillette has breached its Agreements with PIC by failing to return PIC's Photographs" (*id.* ¶ 53), "by using PIC's Photographs outside the scope of the Licenses provided for in the Agreements" (*id.* ¶ 54), "by failing to make proper use of the copyright notice in connection with PIC's Photographs" (*id.* ¶ 55), and "by using PIC's Photographs without paying PIC's invoices as required by the Agreements" (*id.* ¶ 56). PIC fails to specify, however, what "Agreements" PIC is referring to out of the "hundreds of Agreements" alleged earlier in the Amended Complaint (*id.* ¶ 9); when the parties allegedly entered into each such Agreement; what "Photographs" Gillette allegedly has used outside the scope of the Licenses (except as noted above), failed to return, used with an improper copyright notice or used without paying for such use; or when and where each such alleged breach took place.

- **Count IV – *Unfair and Deceptive Trade Practices* –** PIC does not provide any additional allegations to support this claim; instead, PIC merely incorporates by reference the allegations pleaded in support of Counts I through III, listed above, and Count IV for Fraud. Accordingly, this claim is too indefinite for the reasons stated above.

The Court should require PIC to cure these deficiencies to allow Gillette to prepare its responsive pleading and to give parties and the Court a clearer picture of the issues that are to be litigated in this case.

## CONCLUSION

For the reasons set forth above, Gillette respectfully requests that its motion be granted.

July 15, 2004                                     FROSS ZELNICK LEHRMAN & ZISSU, P.C.


By: _____
        Patrick T. Perkins (Admitted *pro hac vice*)
        David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901


GELB & GELB LLP

By:    /Daniel C. Hohler/ _____
        Richard M. Gelb (BBO#188240)
        rgelb@gelbgelb.com
        Daniel C. Hohler (BBO#633065)
        dhohler@gelbgelb.com

20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

*Attorneys for Defendant The Gillette Company*

I:\ddonahue\GLTC\COURT DOCS\040715-0420298-Dismissal Brief-dd.doc

19