IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

       Plaintiff,

v.

THE GILLETTE COMPANY,

       Defendant.

Civil Action No. 04-CV-10913-WGY

**PIC'S OPPOSITION TO GILLETTE'S MOTION TO
DISMISS IN PART AND FOR A MORE DEFINITE STATEMENT**

Michael A. Albert, BBO #558566
Michael N. Rader, BBO # 646990
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
Tel:  (617) 720-3500
Fax: (617) 720-2441

COUNSEL FOR PLAINTIFF
PHOTOGRAPHIC ILLUSTRATORS CORP.

TABLE OF CONTENTS

I.  BACKGROUND ...........................................................................................................1

    A.  The Parties' Business Relationship.........................................................................1

    B.  Gillette's Refusal To Comply With Its Contractual Obligations
        And Its Unauthorized Uses Of PIC's Photographs................................................2

    C.  Gillette's Unauthorized Duplication Of PIC's Photographs
        And Its Misrepresentation To PIC About The Same ...............................................3

    D.  Gillette's Successful Effort, Through Misrepresentation,
        To Induce PIC To Delay The Filing Of This Suit ...................................................3

    E.  Gillette's Refusal To Pay Outstanding Invoices.....................................................4

II. ARGUMENT ...............................................................................................................5

    A.  Applicable Law .....................................................................................................5

        1.  Pleading Standards........................................................................................5

        2.  Copyright Preemption ...................................................................................8

    B.  PIC's Claims Are Not Preempted .......................................................................11

        1.  Breach Of Contract ....................................................................................12

        2.  Fraud .........................................................................................................14

        3.  Chapter 93A ...............................................................................................14

    C.  PIC's Claims Meet (And Exceed) Applicable Pleading Requirements................15

        1.  Copyright ...................................................................................................15

        2.  Fraud .........................................................................................................18

        3.  Chapter 93A ...............................................................................................19

III. CONCLUSION...........................................................................................................20

Gillette's partial motion to dismiss Photographic Illustrators Corporation's ("PIC") Amended Complaint should be denied.

The motion is based on incorrect and selective characterizations of PIC's claims as well as flawed legal premises.  As explained in detail below, PIC's Amended Complaint more than adequately pleads each of its claims against Gillette.

## I.     BACKGROUND

### A.     <u>The Parties' Business Relationship</u>

PIC specializes in photography of consumer products.  On many occasions over a span of years, Gillette retained PIC to photograph its products. (Am. Compl. ¶¶ 7-8; Gillette Br. at 1).  On each occasion, PIC delivered photographs to Gillette with an invoice that was subject to a set of standard terms (the "Agreement," Exhibit A). (Am. Compl. ¶ 9; Gillette Br. at 1).

Gillette accepted the photographs provided by PIC on each occasion, and – with the exception of four orders from early 2004 (discussed below) – Gillette paid PIC's invoices.  Accordingly, the parties entered into hundreds of Agreements over the years. (Am. Compl. ¶ 9).[1]

Under the Agreements, PIC retained the copyrights in its photographs and provided Gillette with limited licenses (the "Licenses") permitting reproduction for one year in the United States only.  The Licenses required (a) that PIC's invoices be paid in full, and (b) that Gillette acknowledge PIC's copyright ownership with proper copyright notices. (<u>Id.</u> ¶ 10).

PIC provided its photographs to Gillette as part of a "job" with which a job number was associated.  Each job number (for over 500 jobs in total) was communicated to Gillette at the time of delivery, for example on a jacket or box containing the photographs. (<u>Id.</u> ¶ 11).

---

[1] Gillette appears to dispute whether accepting the photographs and paying invoices that were subject to the Agreements means that contracts were formed. (Gillette Br. at 2) ("PIC does not claim that the Boilerplate was ever *executed* by or on behalf of Gillette.") (emphasis added).  The purported dispute over contract formation is far-fetched to say the least.  It is well established that when a client orders goods or services, receives an invoice with standard terms printed on it, does not object to the terms, and pays the invoice, it has entered into a contract on the terms set forth on the invoice. <u>E.g.</u>, <u>Alloy Comp. Prods., Inc v. N. Telecom, Inc</u>. 683 F. Supp. 12 (D. Mass. 1988). In any event, for purposes of the present motion to dismiss, PIC's allegation that the parties entered into the Agreements must be accepted as true – something that Gillette concedes. (<u>Id.</u> at 1 n.1).

PIC provided a list of its job numbers for Gillette in its Amended Complaint. (Id.).

Paragraph 10 of the Agreements requires Gillette to return all photographic materials within thirty days of first publication. (Id. ¶ 14). Paragraph 11 provides that failure by Gillette to comply with the return requirement entitles PIC to liquidated damages of $1,500 per original image not returned as and when required. (Id. ¶ 15). Paragraph 12 entitles PIC to collect its attorney fees and costs in connection with enforcing the Agreements. (Id. ¶ 16).

**B.    Gillette's Refusal To Comply With Its Contractual Obligations
And Its Unauthorized Uses Of PIC's Photographs**

Despite acknowledging its obligation under the Agreements to return PIC's photographic materials, Gillette has refused to return the vast majority of them. (Id. ¶¶ 17-18).

In addition, many (if not all) of Gillette's uses of PIC's photographs were unaccompanied by a copyright notice acknowledging PIC's ownership of the copyrights therein as required by the Agreements. Because it failed to comply with Paragraph 9, Gillette acquired no reproduction rights with respect to such photographs. (Id. ¶ 19).

Gillette has also used PIC's photographs beyond the one-year term of the Licenses. For example, two of PIC's photographs, bearing Copyright Registration Nos. VA 1-225-338 and VA 1-225-340 (Exhibits B and C), both of which were transmitted to Gillette in or about March 2001, were still being used by Gillette on its web site when PIC filed its Amended Complaint. (Am. Compl. ¶¶ 21-22). The relevant screen shots from that date are attached hereto as Exhibits D and E. As of the filing date of this memorandum, these PIC photographs have been removed from Gillette's web site and have been replaced with non-PIC images. See Exhibits F and G.

Gillette has also used PIC's photographs beyond the geographic scope (the United States) of the Licenses. For example, Gillette used one of PIC's photographs, bearing Copyright Registration No. VA 1-225-339 (Exhibit H), in a Spanish-language catalog in South America (Exhibit I). The photograph was taken in the kitchen of PIC's President, Mr. Paul Picone. Mr. Picone's kitchen is clearly recognizable in the catalog photograph. (Am. Compl. ¶ 23).

### C.    Gillette's Unauthorized Duplication Of PIC's Photographs And Its Misrepresentation To PIC About The Same

For a period of time, Gillette purchased duplicate transparencies, negatives, and prints of PIC's photographs from PIC, paying PIC's standard rates for such duplicates. Over time, Gillette purchased fewer and fewer duplicates from PIC and instead purchased duplicates directly from third-party laboratories. Gillette did so outside the one-year period for which Gillette was licensed and/or without any license (because Gillette failed to comply with the conditions of Paragraph 9 of the Agreements for it to obtain reproduction rights), without PIC's permission and in violation of PIC's copyrights. (Id. ¶¶ 24-25).

Gillette was able to bypass PIC and obtain duplicates directly from third-party laboratories by virtue of the fact that it had retained the photographs, rather than returning them to PIC as required by the Agreements. When questioned regarding its reduced purchasing of duplicates from PIC, Gillette responded by misrepresenting to PIC it had a reduced need for duplicates. Gillette concealed from PIC that it was, in fact, obtaining duplicates from other sources without PIC's permission. (Id. ¶¶ 26-27).

### D.    Gillette's Successful Effort, Through Misrepresentation, To Induce PIC To Delay The Filing Of This Suit

PIC brought its concerns about Gillette's conduct to Gillette's attention on numerous occasions, including in writing on June 23, 2003. (Id. ¶¶ 28-29). On August 13, 2003, Gillette's Deputy General Counsel John B. Gatlin stated to PIC in writing (Exhibit J) as follows: "We apologize for the untimely manner in which we have complied with these requests." Mr. Gatlin went on to assure PIC that "we are conducting an internal investigation to determine the extent to which" any PIC "images have been used by Gillette or any of its subsidiaries," and that "[w]e will continue with our investigation and forward any relevant information to your attention as it becomes available." (Am. Compl. ¶ 31).

Notwithstanding these assurances, Gillette stonewalled and refused to disclose the results of its investigation. This action was commenced on May 7, 2004. (<u>Id.</u> ¶ 32). Suit would have been filed earlier but for Gillette's misrepresentations about its "investigation." (<u>Id.</u> ¶¶ 66-68).

Thereafter, notwithstanding the above-quoted written representation by Gillette's Deputy General Counsel that Gillette was conducting an investigation, as well as subsequent oral representations that such an investigation had been undertaken and relevant materials gathered, Gillette's Assistant Trademark Counsel Leon Bechet represented to PIC in writing on May 19, 2004 (Exhibit K) that "no representation was made to you regarding an 'investigation' undertaken by Gillette." (<u>Id.</u> ¶ 33).

### E.    Gillette's Refusal To Pay Outstanding Invoices

In or about late February 2004, Gillette purchasing agent Beth Cooper approached PIC with an "emergency" photography project of significant scope. She entreated Mr. Picone to assist with this project, notwithstanding the ongoing dispute between the parties regarding Gillette's infringement and other breaches and violations. Ms. Cooper even traveled to PIC's office to plead her case. (<u>Id.</u> ¶¶ 34-36).

PIC agreed to assist Gillette as a gesture of good will and in reliance on correspondence from Gillette that was calculated to suggest to PIC that its help with the emergency project would assist in resolution of PIC's outstanding disputes with Gillette. The scope of the project required PIC personnel to work night and day for two weeks to complete it. (<u>Id.</u> ¶¶ 37-39).

While working on the project, PIC received correspondence from Gillette personnel indicating Gillette's gratitude that PIC had accepted the project and conveying satisfaction with the high quality of PIC's work. For instance, Gillette personnel made written statements such as "GORGEOUS!!!", "I think it looks terrific!", "You rock! Thanks!", "Thanks for all your help!", and "These look ABSOLUTELY WONDERFUL!!!!". (<u>Id.</u> ¶ 38).

Following this project, Gillette requested that PIC handle additional emergency projects. In all, PIC handled four such projects between March and April 2004. (Id. ¶¶ 40-41).

Despite placing these orders, and accepting and using the photographs provided by PIC, Gillette refused to pay PIC's invoices (which total over $70,000). Gillette personnel will not even take Mr. Picone's phone calls regarding payment for these jobs. (Id. ¶¶ 43-46).

## II.    ARGUMENT

Pursuant to Fed. R. Civ. P. 8(a)(2), PIC's Amended Complaint need only include "a short and plain statement of [each] claim showing that [PIC] is entitled to relief."

PIC's Amended Complaint does far more than that. It describes in detail Gillette's wrongful conduct, including its copyright infringements, its refusal to return thousands of PIC's original images as required by the Agreements, other specified breaches of the Agreements, Gillette's misrepresentations that were calculated to hide its unauthorized duplication of PIC's images and to stall legal action by PIC, and Gillette's refusal to pay for work that it misleadingly induced PIC to perform. Gillette's motion should be denied.

### A.    <u>Applicable Law</u>

#### 1.    <u>Pleading Standards</u>

As Gillette concedes, in deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations stated in the Amended Complaint as true. (Gillette Br. at 5). Dismissal is then appropriate "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (Id.) (citing cases).

Imposition of a heightened pleading standard, beyond the "short and plain statement" required by Rule 8, is proper only if required by statute or rule. Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) (declining to extend the heightened pleading requirements of Rule 9(b) to other contexts); Leatherman v. Tarrant Cty. Narcotics Intel. and Coord. Unit, 507 U.S. 163 (1993) (same); Educ. Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66 (1st Cir. 2004)

("<u>Swierkiewicz</u> has sounded the death knell for the imposition of a heightened pleading standard except in cases in which either a federal statute or specific Civil Rule requires that result.").

**_Copyright._**  For copyright claims, "complaints simply alleging present ownership by plaintiff, registration in compliance with the applicable statute and infringement by the defendant have been held sufficient under the rules." <u>Perfect 10, Inc. v. Cybernet Ventures, Inc.</u>, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001).  The heightened four-pronged pleading requirement for which Gillette argues (at 15), citing decisions from the Southern District of New York such as <u>Kelly v. LL Cool J</u>, 145 F.R.D. 32 (S.D.N.Y. 1992),[2] is improper in the wake of <u>Leatherman</u>. <u>E.g.</u>, <u>Mid America Title v. Kirk</u>, 991 F.2d 417, 421-22 (7th Cir. 1993) (holding that requiring particularity in pleading of copyright infringement claims is improper after <u>Leatherman</u>); <u>Jetform Corp. v. Unisys Corp.</u>, 11 F. Supp. 2d 788, 790 (E.D. Va. 1998) (following <u>Mid America</u> and holding that "Unisys' Motion to Dismiss must be denied if JetForm's copyright infringement claims state sufficient facts to enable Unisys to draft a responsive pleading").

A copyright complaint need not specify every copyrighted work or every act of infringement by the defendant. <u>Sefton v. Jew</u>, 201 F. Supp. 2d 730, 747 (W.D. Tex. 2001) (denying motion to dismiss even though "Plaintiff has not identified every photograph allegedly infringed"); <u>Great American Fun Corp. v. Hosung New York Trading, Inc.</u>, 935 F. Supp. 488, 489 (S.D.N.Y. 1996) ("[T]he complaint should not be dismissed as insufficiently specific under Fed. R. Civ. P. 8(a) where it is apparent on its face that the plaintiff has a colorable claim of infringement as to a number of defendant's products.").  This is particularly true where the plaintiff alleges many infringements. <u>Perfect 10</u>, 167 F. Supp. 2d at 1120 ("Perfect 10 alleges the existence of hundreds, even thousands of infringing photographs … Requiring a statement of each and every example would defeat the regime established by Rule 8.").

---

[2] <u>See</u> <u>Sefton v. Jew</u>, 201 F. Supp. 2d 730, 747 (W.D. Tex. 2001) (acknowledging that the four-pronged copyright pleading standard set forth in <u>LL Cool J</u> is a "heightened pleading requirement").

*Fraud.*  As Gillette correctly notes, a fraud claim requires that "the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage." (Gillette Br. at 11).

As one example, under Massachusetts law, making a promise that one does not intend to honor supplies the necessary false representation to state a claim for fraud. Barrett Assoc., Inc. v. Aronson, 190 N.E. 2d 867, 868 (Mass. 1963) ("The statement of fact as to present intention of the defendant, being susceptible of actual knowledge and being a fact alleged to have been false, may be made the foundation of an action for deceit"); Fanger v. Leeder, 99 N.E. 2d 533, 535 (Mass. 1951) ("[I]f the promise here relied upon was a misrepresentation of the state of mind of the defendants at the time it was made, it could be the basis of an action for deceit.").  This is especially true where the false promise is that the defendant will pay for goods or services provided by the plaintiff, in which case the inducement and reliance elements of the fraud claim are formalities. Watson v. Silsby, 43 N.E. 1117 (Mass. 1896) ("[O]ne who buys goods with a preconceived intention not to pay for them is guilty of a fraud upon the vendor.").

*Chapter 93A.*  The Supreme Judicial Court has "underscored the broad impact of c. 93A as creating 'new substantive rights' and providing relief which is 'in addition to, and not an alternative to, traditional tort … remedies.'" Datacomm Interface, Inc. v. Computerworld, Inc., 496 N.E. 2d 185, 197 (Mass. 1986).  "Consequently, while it is clear that common law actions for fraud and deceit are within the contemplation of an 'unfair act' under the statute, it is equally well established that the definition of the term under c. 93A *goes far beyond* the scope of these common law actions." Id. (emphasis added).

The breadth of the statute makes courts reluctant to dismiss claims for unfair and deceptive trade practices where the plaintiff's allegations – which must be accepted as true for purposes of a motion to dismiss – conceivably form the basis for a valid cause of action:

> [D]efendants maintain that the difficulty the plaintiff has with the defendants is really a simple breach of contract which does not rise to the 'level of rascality' required for liability to lie under 93A.  Although the finder of fact may return with such a finding, it is not appropriate at this stage of litigation to so predict the outcome where the plaintiff has alleged malice and coercion on the defendants' part.

Charles River Data Sys. v. Oracle Complex Sys. Corp., 788 F. Supp. 54, 61 (D. Mass. 1991).

Pleading a misrepresentation, including an implication that the defendant would pay for services rendered when it did not in fact intend to pay, *ipso facto* states a valid Chapter 93A claim. Arthur Little Int'l, Inc. v. Dooyang Corp., 979 F. Supp. 919, 925 (D. Mass. 1997), *aff'd*, 147 F.3d 47 (1st Cir. 1998) ("[W]here one party orders consulting services without an intent to pay for them, such conduct constitutes a violation" of 93A.); Marshall v. Stratus Pharms., 749 N.E.2d 698, 707 (Mass. App. 2001) ("The allegation that the defendants never intended to pay for the services stated sufficient facts to constitute a claim for relief under c. 93A.").

## 2.    Copyright Preemption

Legal or equitable rights that are "equivalent" to copyright rights are preempted. 17 U.S.C. § 301.  A cause of action is *not* preempted if it "requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display." Data Gen'l Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1164 (1st Cir. 1994).

***Fraud.***  It is black-letter law that fraud claims, which require the extra elements of misrepresentation and reliance, are not preempted. Nimmer on Copyright § 1.01[B][1][e] ("[T]he element of misrepresentation or deception, which is no part of a cause of action for copyright infringement [means] there is no pre-emption of the state law of fraud."); Valente-Kritzer Video v. Pinckney, 881 F.2d 772, 776 (9th Cir. 1989) ("VKV alleges that Pinckney intentionally misrepresented its intent to perform the contract.  This is not substantially equivalent to a claim for copyright infringement."); Tracy v. State Key, Inc., 697 F. Supp. 748, 751 (S.D.N.Y. 1988) ("[P]laintiff's claim for fraud contains an element of misrepresentation that is irrelevant to the cause of action for copyright infringement…. this cause of action is also not preempted.").

An exception may arise for a claim based solely on copyright that is merely "re-labeled" under the heading of fraud, but a claim that differs even *slightly* from copyright – such as one that includes a false promise by the defendant not to copy from the plaintiff – is not preempted. E.g., Firoozye v. Earthline Networks, 153 F. Supp. 2d 1115, 1129 (N.D. Cal. 2001) ("A state-law misrepresentation claim, even where the defendant's only alleged misrepresentation involved a promise not to use the plaintiff's work, contains an additional element that makes the claim qualitatively different from a copyright right claim and is therefore not preempted.").

Where (as here) the plaintiff alleges misrepresentation and reliance in connection with one or more acts of fraud *separate from copying*, the cause of action certainly is not preempted. See Section II(B)(2) below.

**Chapter 93A.**  Just as with fraud, claims under Chapter 93A are not preempted when they include the "extra element" of an alleged misrepresentation. E.g., Nimmer on Copyright § 1.01[B][1][e] (no preemption because "crucial to liability under a deceptive trade practices cause of action is the element of a misrepresentation or deception"); Rubin v. Brooks/Cole Publishing Co., 836 F. Supp. 909, 924 (D. Mass. 1993) (Young, J.) (rejecting preemption argument with respect to Chapter 93A claim based on misrepresentation: "Rubin's chapter 93A claim is not limited to these acts [of copying], however, for Rubin also claims that Brooks/Cole improperly represented that the Love Scale was 'reprinted with permission.'").

**Breach of contract.**  Breach of contract claims generally are not preempted by copyright because they (a) entail the "extra element" of a promise, and (b) only affect their parties; they do not impinge on the province of copyright by creating exclusive rights against all others. E.g., Bowers v. Baystate Techs., Inc., 320 F.3d 1317, 1324 (Fed. Cir. 2003) ("[M]ost courts to examine this issue have found that the Copyright Act does not preempt contractual constraints on copyrighted articles."); Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 459 (6th Cir. 2001) (preemption of contract claim by district court was error because "an action based on a contract

implied in fact requires the extra element of a promise to pay for the use of the work which is implied from the conduct of the parties"); ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1454 (7th Cir. 1994) (reversing preemption of contract claim: "A copyright is a right against the world. Contracts, by contrast, generally affect only their parties.").

Thus, for example, a claim based on failure to return copyrighted works as required by a contract – one of the core issues in this case – is *not* preempted by copyright because the return requirement is an extra element that is wholly distinct from the rights secured to the copyright holder by the Copyright Act.

> In this case, defendant's breach of contract claim asserts that Video Pipeline has breached its contractual obligation under the Master Clip License Agreement by failing to return the Promotional Previews to defendant BVHE … This right is separate and distinct from defendant BVHE's exclusive rights granted to it under § 106 of the Copyright Act.

Video Pipeline v. Buena Vista Home Entertainment, 210 F. Supp. 2d 552, 567 (D.N.J. 2002).

A claim based on failure to honor a contractual covenant to make proper use of a copyright notice – another core contention by PIC against Gillette – likewise is *not* preempted. E.g., Marvullo v. Gruner + Jahn AG & Co., 2001 WL 40772 (S.D.N.Y. Jan. 17, 2001) (allegations concerning "failure to give copyright and photograph credit to the plaintiff" held to state a claim for breach of contract).

Unlike the above causes of action, which plainly are not preempted, courts have split over whether a breach of contract claim purely for use of a copyrighted work outside the scope of an otherwise valid license is preempted by copyright. The better-reasoned cases, such as Lennon v. Seaman, 63 F. Supp. 2d 428 (S.D.N.Y. 1999), hold that "a breach of contract claim is not preempted even if the contract involves rights granted to copyright owners under the Copyright Act because, unlike claims for copyright infringement, claims based on a contract will involve the extra element of a promise by one party to another." Id. at 437 (internal quotes omitted).

Although the First Circuit has not passed directly on the question, the Federal Circuit in

Bowers, applying First Circuit law, concluded that the First Circuit would not find a breach of

contract claim for uses of copyrighted works exceeding the scope of a license to be preempted by

copyright. 320 F.3d at 1324.

This conclusion is consistent with Metro-Goldwyn Mayer Distrib. Corp. v. Bijou Theatre

Co., 3 F. Supp. 66 (D. Mass. 1933), in which this District found that such facts give rise to

claims *both* for breach of contract *and* for copyright infringement:

> The defendant was given a license to exhibit the films on one day, and an
> exhibition on that day, of course, gave rise to no action for an invasion of the
> plaintiff's copyright. When the defendants had exercised the license, it was
> exhausted, and *the alleged exhibition on an additional day constituted both a*
> *breach of the contract and a trespass upon the monopoly conferred upon the*
> *plaintiff by the copyright*.

Id. at 74 (emphasis added).

The Metro-Goldwyn court went on to explain that, in such a situation, the "plaintiff had

an election of remedies." Id. Recent cases have reinforced this approach. In Nat'l Car Rental

Sys., Inc. v. Computer Assoc. Int'l, Inc., 991 F.2d 426 (8th Cir. 1993), for example, the court

ultimately did not have to decide the question, but posited that allowing the plaintiff an "election

of remedies" might be the appropriate way to handle the issue. Id. at 434 n.6.

In short, while there is no question that use of a copyrighted item outside the scope of a

license constitutes copyright infringement (accord Gillette Br. at 7), and that PIC therefore has

stated a claim on that basis alone, the weight of authority also indicates that a breach of contract

claim based on the same conduct is not preempted by copyright.

### B.    PIC's Claims Are Not Preempted.

As explained below, PIC's claims in this case manifestly are not preempted by copyright.

Gillette's argument to the contrary is based on mischaracterization of those claims and

misstatements of law.

### 1.    Breach Of Contract

PIC's central claim for breach of contract is based on Gillette's refusal to return PIC's photographs as required by the Agreements. (Am. Compl. ¶¶ 17, 18, 53).  This claim certainly is not preempted because it involves an "extra element" (the return requirement) that is wholly distinct from the rights secured by the Copyright Act, as the Video Pipeline court squarely held. 210 F. Supp. 2d at 567.  *Notably, Gillette's motion papers completely ignore this part of PIC's claim*.  That silence is telling.

Because PIC's Count III recites at least one breach of contract that indisputably is not preempted (indeed, Gillette concedes this through silence), the count should not be dismissed. What is more, Count III recites additional breaches of contract that likewise are not preempted.

For example, Count III also recites a claim for breach of contract based on Gillette's violation of its covenant in the Agreement that it would utilize a proper copyright notice in conjunction with PIC's photographs. (Am. Compl. ¶¶ 19, 55). See Marvullo, 2001 WL 40772 (allegations concerning failure to observe notice obligation considered breach of contract).

Gillette relies upon the fact that PIC's Amended Complaint also characterizes Gillette's use of PIC's images without a copyright notice as "copyright infringement." (Gillette Br. at 8). This allegation is a permissible pleading in the alternative.  Discovery has not yet begun, and there may be room for debate as to whether the language in the Agreements pertaining to copyright notices constitutes a "condition" or a "convenant" of the License.  As the Second Circuit has explained, violation of the former leads to copyright infringement, while violation of the latter leads to breach of contract. Graham v. James, 144 F.3d 229, 236-37 (2d Cir. 1998) (concluding, after some consideration, that a copyright notice obligation "would likely be considered" a covenant under New York law).  Since determination of whether the notice obligation constitutes a condition or a covenant can hinge on the intent of the parties, see Mass. Mun. Wholesale Elec. Co. v. Town of Danvers, 577 N.E. 2d 283, 288 (Mass. 1991) ("When

construing a contract, a court looks to the parties' intent to determine whether they have created a condition precedent."), which will be the subject of discovery, PIC appropriately pled its cause of action for Gillette's failure to affix proper copyright notices in the alternative. See Fed. R. Civ. P. 8(a) ("Relief in the alternative or of several different types may be demanded.").

The same applies to PIC's claim based on Gillette's use of PIC's recent photographs without paying PIC's invoices for the same. (Am. Compl. ¶¶ 34-46, 49, 51, 56). The Graham court found that such a payment requirement would "likely" be considered a covenant under New York law. See 144 F.3d at 229. If the same outcome were to prevail in this case, the claim would *not* be preempted. Nevertheless, PIC appropriately pled in the alternative, because whether the claim gives rise to copyright infringement instead of breach of contract depends on Massachusetts law and the intention of the parties – something, again, that is subject to discovery. Gillette's suggestion that the claim is necessarily preempted (Gillette Br. at 8) is made without citation to any authority – because there is none.

Finally, as discussed above, although PIC's cause of action against Gillette for use of PIC's photographs outside the scope of the Licenses unquestionably presents a copyright infringement claim, there is also a split of authority as to whether PIC may proceed in parallel for breach of contract, electing its preferred remedy later. The only decision on point in this District holds that PIC may do exactly that. Metro-Goldwyn, 3 F. Supp. 66. Gillette has cited no contrary authority, let alone a case from this District. Accordingly, PIC, once again, properly pled in the alternative. (Am. Compl. ¶¶ 49, 51, 54).

In summary, PIC's central claim for breach of contract – based on Gillette's refusal to return PIC's photographs as required by the Agreements – indisputably is not preempted. Moreover, the weight of authority indicates that PIC's remaining breach of contract claims are not preempted either, and PIC's decision to plead them in the alternative as copyright infringements was proper under the circumstances.

- 13 -

### 2. **Fraud**

PIC's fraud count (Count IV) is based on three distinct transactions.  First, Gillette induced PIC to perform several "emergency" projects in the Spring of 2004 by misrepresenting an intent to pay PIC for its services.  Second, Gillette made false statements in stonewalling PIC, in a successful effort to delay PIC's initiation of legal action. Finally, Gillette misrepresented that it had a reduced need for duplicates, in a successful attempt to discourage PIC from making inquiring and discovering that Gillette had infringed PIC's copyrights. (Am. Compl. ¶¶ 58-69).

Gillette argues (at 8) only that the third of these claims is preempted, based on the suggestion that the claim "seeks to protect … a copyright right."  Even if Gillette were correct (it is not), Count IV should not be dismissed because Gillette does not maintain that PIC's other fraud claims are preempted.  Even as to the third claim, moreover, Gillette is incorrect.  As PIC explained in its Amended Complaint, (a) Gillette's requisitioning agent falsely represented to PIC that Gillette had a reduced need for duplicates, (b) the false statement was made with an intention that PIC rely on it and not inquire further regarding Gillette's duplication activities, and (c) PIC relied upon the false statement. (Am. Compl. ¶¶ 60-62).  The claim manifestly does not "seek to protect" PIC's copyright, but instead to redress a fraudulent misrepresentation that damaged PIC by causing it not to further investigate Gillette's wrongful activities.  The "extra elements" of Gillette's misrepresentation and PIC's reliance preclude preemption. E.g., Valente-Kritzer, 881 F.2d at 776.

### 3. **Chapter 93A**

PIC's cause of action for violations of Chapter 93A (Count V) is based on the same transactions or occurrences described above with respect to PIC's fraud count.  Gillette's argument for preemption of the Chapter 93A claim is based, once again, on a mischaracterization of the claim. See Gillette Br. at 9: ("There is nothing in the claim that goes beyond '*the extent to which*' PIC 'can prohibit unauthorized copying' by Gillette.").

- 14 -

In point of fact, PIC's allegations center on misrepresentations by Gillette that induced detrimental reliance by PIC, including the false representation that Gillette would pay PIC for services rendered after entreating PIC to assist with a series of "emergency" projects in the Spring of 2004. (Am. Compl. ¶ 63).

Such claims plainly are not preempted. E.g., Rubin, 836 F. Supp. at 924 ("Rubin's chapter 93A claim is not limited to these acts [of copying], however, for Rubin also claims that Brooks/Cole improperly represented that the Love Scale was 'reprinted with permission.'").

Gillette's only case, Henry v. Nat'l Geographic Society, 147 F. Supp. 2d 16 (D. Mass. 2001), supports PIC, *not* Gillette.  In Henry, the court concluded that the plaintiff sought only "to protect his right to reproduce the [] photographs" and alleged only that the defendant's "use of the photographs" constituted a violation of Chapter 93A.  The court specifically distinguished Henry's complaint from one like PIC's, noting that a Chapter 93A claim based on the defendant obtaining a copyrighted work without paying for it (as Gillette did here) is *not* preempted.

> But where the plaintiff alleges that the defendant's acquisition of the copyrighted work was accomplished through unfair or deceptive means, such as by acquiring the artwork without paying for it and then disputing its origination, the claim was not preempted because it "had attained a level of rascality beyond mere copyright infringement."

147 F. Supp. 2d at 23 (citing Pat. Kennedy v. Zam-Cul Ent., 830 F. Supp. 53 (D. Mass. 1993)).

### C.    PIC's Claims Meet (And Exceed) Applicable Pleading Requirements.

#### 1.    Copyright

Gillette's contention (tucked into the end of its brief) that PIC's copyright infringement claims (Counts I and II) fail the notice pleading requirement of Rule 8, fails as a matter of law.

The argument is based on a heightened pleading standard, see Sefton v. Jew, 201 F. Supp. 2d 730, 747 (W.D. Tex. 2001) (acknowledging that the four-pronged copyright pleading standard urged here by Gillette is, in fact, a "heightened pleading requirement"),[3] that is improper in the

---

[3] Gillette, too, concedes that the standard "require[s] … a measure of particularity." (Gillette Br. at 16).

wake of the Supreme Court's decisions in <u>Leatherman</u> and <u>Swierkiewicz</u>, not to mention the First Circuit's recent pronouncement that the Supreme Court "has sounded the death knell for the imposition of a heightened pleading standard except in cases in which either a federal statute or specific Civil Rule requires that result." <u>Educ. Puertorriqueños</u>, 367 F.3d at 66.

In any event, even if the heightened pleading standard urged by Gillette (at 14-15) *were* applicable, PIC's pleading meets it.  PIC has alleged:

> (1) which original works are the subject of the copyright claim (<u>see</u> Am. Compl. ¶¶ 21, 22, in which PIC identifies two infringed works by Copyright Registration Number and provides links to their infringing use on Gillette's web site);
>
> (2) that PIC owns the copyrights in those works (<u>id.</u>);
>
> (3) that the copyrights have been properly registered (<u>id.</u>); and
>
> (4) the acts by which Gillette infringed the copyrights, i.e., by posting the images on its web site (<u>id.</u>)

As explained in Section II(A)(1) above, PIC need not specify every work at issue, or every act of infringement by Gillette. <u>Sefton</u>, 201 F. Supp. 2d at 747 (denying motion to dismiss despite the fact that "Plaintiff has not identified every photograph allegedly infringed"); <u>Great American Fun</u>, 935 F. Supp. at 489 ("[T]he complaint should not be dismissed as insufficiently specific under Fed. R. Civ. P. 8(a) where it is apparent on its face that the plaintiff has a colorable claim of infringement as to a number of defendant's products.").

This is particularly true where (as here) the plaintiff alleges a substantial number of infringements by the defendant. <u>Perfect 10</u>, 167 F. Supp. 2d at 1120 (in such cases, "[r]equiring a statement of each and every example would defeat the regime established by Rule 8.").

Indeed, the parallel to <u>Perfect 10</u> is striking.  In its brief (at 17), Gillette complains that PIC's Amended Complaint fails to specify:

> which 'Photographs' were used outside the temporal scope of the license (with the exception of two [])… which Photographs were used outside the geographic scope of the license (with the exception of one []) … whether PIC has registered or filed applications to register any but four of the Photographs … or when and where such alleged copyright infringement took place.

The Perfect 10 court rejected precisely these arguments:

> Cybernet argues that the complaint fails to allege a valid claim of copyright infringement…. Cybernet bases this argument on the failure of Perfect 10 to state, in its complaint, every copyright relied on, every individual image in that magazines that is being infringed, every image on specific web pages that does infringer, or the dates of any infringement.  This misconstrues the burden Perfect 10 faces in the pleadings stage.  Copyright claims need not be pled with particularity.

Perfect 10, 167 F. Supp. 2d at 1120.

Numerous other courts have rejected similar contentions. E.g., Home & Nature, Inc. v. Sherman Specialty Co., Inc., 2004 WL 139538, *4 (E.D.N.Y. June 22, 2004) (holding that it was sufficient for plaintiff to "state that defendant has … infringed and continues to infringe 'one or more' of its copyrights"); Capitol Records, Inc. v. Wings Digital Corp., 218 F. Supp. 2d 280, 284 (E.D.N.Y. 2002) (plaintiff "not required to state with particularity specific infringing acts or the times of such acts"); Krasselt v. Seagram & Sons, Inc., 2002 WL 1997926, *2 (S.D.N.Y. Aug. 29, 2002) (plaintiff not required to "state exactly which of the thirty proposed advertisements that constitute the proposals were infringed"); Richard Feiner & Co., Inc. v. Larry Hampton Pictures Corp., 38 F. Supp. 2d 276, 279 (S.D.N.Y. 1999) ("As to Feiner's failure to specify which copyright is infringed by which act, that is not fatal to his claim."); Tin Pan Apple, Inc,. v. Miller Brewing Co., Inc., 737 F. Supp. 826, 839 (S.D.N.Y. 1990) (denying motion for more definite statement: "Defendants may develop additional details – for example, which musical compositions and sound recordings defendants are alleged to have infringed – through customary pre-trial discovery.").  Accordingly, PIC has amply met its notice pleading burden in this case.

Gillette's related contention (at 15) that the Court lacks subject matter jurisdiction with respect to photographs other than those for which Gillette has already alleged registration is a red herring.  First, because Gillette has unquestionably stated a claim for copyright infringement with respect to several registered photographs, dismissal would be improper.  Second, even if the Court were to assess its jurisdiction separately with respect to each individual work, PIC has now

- 17 -

filed expedited copyright applications for over 600 photographs.  Copies of these applications are attached hereto as Exhibits L-Q.[4]  With these applications pending, even a partial dismissal would be improper under the many cases holding that a pending copyright application confers subject matter jurisdiction. E.g., Lakedreams v. Taylor, 932 F.2d 1103, 1108 (5th Cir. 1991) ("[A] plaintiff has complied with the statutory formalities when the Copyright Office receives the plaintiff's application for registration, fee and deposit.")[5]; Positive Black Talk, Inc. v. Cash Money Records, Inc., 66 U.S.P.Q. 2d 1468, 1473 (E.D. La. 2003) (holding that plaintiff's filing of suit without copyright registration "was cured … when the Copyright Office *received PBT's application*…. Nothing can be gained from dismissal at this juncture.") (emphasis added); Foraste v. Brown Univ., 248 F. Supp. 2d 71, 77 (D.R.I. 2003) (denying motion to dismiss where "Plaintiff has alleged in the Amended Complaint that he has *initiated the process of copyright registration* in ninety-seven of the disputed images in his possession") (emphasis added).

A partial dismissal at this juncture would also be inefficient.  According to the Copyright Office, once expedited handling has been approved, an application is normally processed in approximately five business days. (Exhibit R – Copyright Office Circular 10).  Accordingly, PIC expects that its pending copyright applications will mature into official registrations shortly, and plans to amend its complaint accordingly.

### 2.    **Fraud**

Gillette's misrepresentation regarding its intent to pay PIC's invoices for "emergency" projects in March and April 2004 unquestionably constitutes a valid claim for fraud. Watson, 43 N.E. 1118 ("[I]t is well settled in this commonwealth, that one who buys goods with a preconceived intention not to pay for them is guilty of a fraud upon the vendor.").

---

[4] As explained in its Amended Complaint, PIC delayed filing these applications based on Gillette's misrepresentations that it was investigating PIC's claims and would report back to PIC the results of its investigations and attempt to resolve this dispute. (Am. Compl. ¶ 13).

[5] The Fifth Circuit appears to be the only Court of Appeals to have addressed this issue.

Gillette raises two objections, both of which lack merit.  First, Gillette argues (at 12-13) that PIC has not identified a "false statement."  To the contrary, PIC's Amended Complaint states quite clearly that "Gillette falsely implied an intent to pay PIC." (Am. Compl. ¶ 63).  In Massachusetts, fraud "may be perpetrated by an implied as well as by an express representation." Briggs v. Carol Cars, Inc., 553 N.E. 2d 930, 933 (Mass. 1990).

Gillette's second argument, that PIC did not allege reliance, is even further off the mark: "PIC relied upon Gillette's false implications in performing this work, with an expectation that it would be paid for the same." (Am. Compl. ¶ 65).

With regard to PIC's second claim for fraud, based on Gillette's false statements about its supposed "investigation," Gillette musters only an objection that the resulting delay in the filing of this lawsuit "is not 'damage' under any legally recognized theory of which Gillette is aware." (Gillette Br. at 12).  Gillette may not be aware that the law in this District provides precisely that. Arthur D. Little Int'l, Inc., v. Dooyang Corp., 979 F. Supp. 919, 925 (D. Mass. 1997) (concluding that the defendant's "deceptive conduct prejudiced [the plaintiff] because it delayed instituting litigation to collect a lawful debt").

For the same reason, Gillette's sole objection to PIC's third fraud claim (Gillette Br. at 11), that delay in PIC's discovery of Gillette's unauthorized duplication caused by Gillette's requisitioning agent's misrepresentation is not "damage," also fails.

Individually, these transaction each state a claim for fraud – *a fortiori*, they do so (and should not be dismissed) when taken together.

### 3.    Chapter 93A

Finally, there can be no dispute that the misrepresentations alleged above constitute a cognizable violation of Chapter 93A.  Indeed, pleading a misrepresentation by the defendant that it would pay for services rendered when it did not in fact intend to pay (as PIC pled, see Am. Compl. ¶ 63), or similarly deceptive conduct, *ipso facto* states a claim for violation of Chapter

93A. E.g., Marshall, 749 N.E.2d at 707 ("The allegation that the defendants never intended to pay for the services stated sufficient facts to constitute a claim for relief under c. 93A.").[6]

## III.    CONCLUSION

For the aforementioned reasons, Gillette's motion to dismiss in part and for a more definite statement should be denied.[7]

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS CORPORATION,

By its counsel,

Dated: July 29, 2004                              /s/ Michael N. Rader
                                        Michael A. Albert, BBO #558566
                                        malbert@wolfgreenfield.com
                                        Michael N. Rader, BBO # 646990
                                        mrader@wolfgreenfield.com
                                        WOLF, GREENFIELD & SACKS, P.C.
                                        600 Atlantic Ave.
                                        Boston, MA 02210
                                        Tel:  (617) 720-3500
                                        Fax: (617) 720-2441

---

[6] Gillette also includes a half-hearted argument that one of PIC's three fraud claims (the claim based on Gillette's purchasing agent's misrepresentation regarding duplicates) is not set forth with particularity.  This argument provides no reason for dismissal.  First, the argument pertains to just one of three fraudulent transactions or occurrences pled by PIC.  Second, Gillette is simply wrong that this transaction is insufficiently pled.  Although Gillette complains that the requisitioning agent's name is not provided, that level of detail is not required. See Howard v. Cycare Sys., Inc., 128 F.R.D. 159, 163 (D. Mass. 1989) ("I do not see a violation of Rule 9(b) in the failure of the plaintiff to identify the specific agent of the defendant who made each misrepresentation.").

[7] In the alternative, to the extent the Court finds any deficiencies in PIC's pleading, PIC should be permitted an opportunity to correct any such deficiencies by re-pleading pursuant to Fed. R. Civ. P. 15.