IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>          Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY,<br><br>          Defendant. | Civil Action No. 04-CV-10913-WGY |

## SECOND AMENDED COMPLAINT

Plaintiff Photographic Illustrators Corporation ( "PIC" or "Plaintiff"), for its Amended

Complaint against Defendant The Gillette Company ("Gillette" or "Defendant"), alleges as

follows:

## THE PARTIES

1.      PIC is a Massachusetts corporation with a place of business at 467 Sagamore

Street, Hamilton, Massachusetts 01936.

2.      Gillette is a Massachusetts corporation with a place of business at Prudential

Tower Building, Boston, Massachusetts 02199.

## JURISDICTION AND VENUE

3.      This is a civil action for injunctive relief and damages for violation of the

copyright laws of the United States, 17 U.S.C. § 101, *et seq.*, and for breach of contract, fraud,

and unfair and deceptive trade practices in violation of Mass. Gen. L. ch. 93A.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331, 1338, 1367.

5.      This Court has personal jurisdiction over Gillette because Gillette has a place of business in this judicial district, and has extensive business contacts with this judicial district, including the business which forms the basis for this civil action.

6.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391, 1400.

### PLAINTIFF'S COPYRIGHTED PHOTOGRAPHS AND DEFENDANT'S LIMITED LICENSES TO USE THE SAME

7.      PIC specializes in photography, including photography of consumer products for catalogs and advertising.

8.      On many occasions over a span of years, Gillette retained PIC to photograph certain of its products.

9.      On each such occasion, PIC took, and provided to Gillette, photographs (and other photographic materials such as transparencies, negatives and digital images) of Gillette's products (the "Photographs"), pursuant to PIC's standard terms and conditions (the "Agreement").  An Agreement was entered into on each occasion, such that Gillette and PIC entered into hundreds of Agreements over the years.

10.     Under the Agreements, PIC retained the copyrights in its Photographs, and provided Gillette with limited licenses (the "Licenses") to reproduce the Photographs for one year, in the United States only.  Per Paragraph 9 of the Agreements, the Licenses were conditioned on (a) PIC receiving full payment of its invoices, and (b) Gillette acknowledging PIC's ownership of the copyrights in the Photographs with proper copyright notices:

> 9. REPRODUCTION RIGHTS: Reproduction rights are conditioned on Photographer's receipt of payment in full and Client's proper use of the copyright notice.  All rights not expressly granted herein remain the exclusive property of Photographer.  Unless otherwise stated on the face of this Agreement, duration of the License is one year from the Agreement date and limited to use in the United States of America.

11.     Each of PIC's Photographs was provided to Gillette as part of a "job" with which a particular job number was associated.  The job numbers were communicated to Gillette at the time of delivery, for example on a jacket or box containing the Photographs.  A list of PIC's job numbers for Gillette is shown here:

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3072 | 3373 | 3666 | 4070 | 4257 | 4451 | 4671 | 4938 | 5273 | 4575 | 5641 | 5908 |
| 3088 | 3384 | 3675 | 4080 | 4264 | 4455 | 4675 | 4939 | 5275 | 4578 | 5648 | 5911 |
| 3107 | 3391 | 3680 | 4084 | 4266 | 4459 | 4676 | 4965 | 5277 | 5482 | 5651 | 5912 |
| 3118 | 3392 | 3688 | 4085 | 4268 | 4460 | 4687 | 4976 | 5281 | 5483 | 5659 | 5917 |
| 3121 | 3396 | 3692 | 4091 | 4270 | 4468 | 4690 | 4981 | 5282 | 5484 | 5660 | 5918 |
| 3128 | 3405 | 3695 | 4104 | 4277 | 4472 | 4691 | 4984 | 5293 | 5486 | 5669 | 5922 |
| 3138 | 3425 | 3705 | 4105 | 4288 | 4477 | 4702 | 5011 | 5294 | 5494 | 5684 | 5954 |
| 3158 | 3437 | 3726 | 4106 | 4290 | 4482 | 4709 | 5012 | 5300 | 5498 | 5685 | 5940 |
| 3160 | 3439 | 3731 | 4108 | 4291 | 4487 | 4715 | 5030 | 5305 | 5506 | 5687 | 5950 |
| 3162 | 3450 | 3738 | 4109 | 4299 | 4492 | 4716 | 5037 | 5314 | 5507 | 5693 | 5952 |
| 3177 | 3465 | 3742 | 4111 | 4309 | 4500 | 4717 | 5044 | 5315 | 5508 | 5716 | 5954 |
| 3191 | 3466 | 3743 | 4112 | 4311 | 4501 | 4718 | 5051 | 5321 | 5510 | 5730 | 5955 |
| 3198 | 3470 | 3752 | 4121 | 4314 | 4506 | 4721 | 5055 | 5325 | 5511 | 5732 | 5956 |
| 3204 | 3479 | 3759 | 4124 | 4321 | 4508 | 4726 | 5056 | 5333 | 5515 | 5746 | 5968 |
| 3208 | 3481 | 3769 | 4132 | 4324 | 4510 | 4728 | 5088 | 5336 | 5517 | 5756 | 5975 |
| 3218 | 3496 | 3770 | 4133 | 4325 | 4511 | 4730 | 5089 | 5337 | 5519 | 5760 | 5979 |
| 3221 | 3489 | 3785 | 4145 | 4330 | 4516 | 4757 | 5107 | 5338 | 5521 | 5766 | 5980 |
| 3227 | 3498 | 3812 | 4147 | 4331 | 4517 | 4579 | 5118 | 5341 | 5538 | 5772 | 5881 |
| 3229 | 3513 | 3819 | 4148 | 4332 | 4527 | 4768 | 5112 | 5342 | 5548 | 5785 | 5989 |
| 3235 | 3519 | 3834 | 4150 | 4344 | 4533 | 4771 | 5122 | 5350 | 5552 | 5787 | 5998 |
| 3248 | 3526 | 3835 | 4155 | 4346 | 4534 | 4799 | 5129 | 5358 | 5553 | 5790 | 6008 |
| 3252 | 3529 | 3847 | 4158 | 4351 | 4535 | 4806 | 5141 | 5359 | 5555 | 5793 | 6011 |
| 3256 | 3539 | 3852 | 4159 | 4352 | 4537 | 4812 | 5158 | 5360 | 5557 | 5806 | 6016 |
| 3264 | 3546 | 3885 | 4168 | 4355 | 4546 | 4816 | 5170 | 5361 | 5558 | 5807 | 6045 |
| 3266 | 3552 | 3890 | 4177 | 4363 | 4556 | 4817 | 5179 | 5364 | 5559 | 5810 | 6067 |
| 3273 | 3553 | 3891 | 4178 | 4364 | 4557 | 4818 | 5188 | 5367 | 5560 | 5811 | 6080 |
| 3275 | 3566 | 3898 | 4181 | 4369 | 4559 | 4825 | 5189 | 5375 | 5564 | 5828 | 6084 |
| 3286 | 3574 | 3900 | 4186 | 4373 | 4562 | 4826 | 5197 | 5377 | 5569 | 5830 | |
| 3294 | 3585 | 3907 | 4190 | 4375 | 4566 | 4827 | 5198 | 5378 | 5577 | 5831 | |
| 3295 | 3589 | 3912 | 4201 | 4380 | 4572 | 4837 | 5202 | 5394 | 5580 | 5836 | |
| 3296 | 3593 | 3926 | 4202 | 4381 | 4573 | 4839 | 5206 | 5395 | 5583 | 5838 | |
| 3301 | 3600 | 3944 | 4205 | 4384 | 4577 | 4851 | 5212 | 5409 | 5592 | 5840 | |
| 3313 | 3601 | 3959 | 4206 | 4385 | 4579 | 4852 | 5213 | 5414 | 5593 | 5846 | |
| 3319 | 3602 | 3969 | 4211 | 4400 | 4587 | 4855 | 5219 | 5421 | 5594 | 5850 | |
| 3320 | 3603 | 3979 | 4213 | 4407 | 4590 | 4867 | 5224 | 5431 | 5595 | 5852 | |
| 3322 | 3606 | 3987 | 4214 | 4409 | 4601 | 4871 | 5231 | 5433 | 5596 | 5855 | |
| 3323 | 3609 | 3998 | 4217 | 4413 | 4602 | 4877 | 5236 | 5463 | 5599 | 5862 | |
| 3325 | 3617 | 3999 | 4219 | 4418 | 4613 | 4887 | 5248 | 5442 | 5602 | 5873 | |
| 3329 | 3621 | 4008 | 4220 | 4419 | 4614 | 4889 | 5249 | 5443 | 5605 | 5876 | |
| 3373 | 3626 | 4016 | 4227 | 4422 | 4621 | 4896 | 5254 | 5545 | 5607 | 5880 | |
| 3345 | 3630 | 4017 | 4230 | 4424 | 4626 | 4897 | 5258 | 5446 | 5610 | 5883 | |
| 3350 | 3652 | 4031 | 4232 | 4432 | 4630 | 4898 | 5260 | 5453 | 5613 | 5893 | |
| 3354 | 3659 | 4038 | 4245 | 4438 | 4631 | 4899 | 5264 | 5455 | 5615 | 5898 | |
| 3356 | 3662 | 4043 | 4249 | 4446 | 4639 | 4930 | 5268 | 5456 | 5638 | 5899 | |
| 3366 | 3664 | 4059 | 4256 | 4448 | 4649 | 4933 | 5271 | 5465 | 5639 | 5904 | |

12.     PIC applied for and received U.S. Copyright Registration Nos. VA 1-225-338,

VA 1-225-339, VA 1-225-340 and VA 1-225-341, each effective on or about March 2, 2004, for

four of the Photographs.

13.     PIC delayed obtaining copyright registrations for other Photographs used by

Gillette because of Gillette's representations that it was investigating the matters addressed

herein and would report back to PIC the results of its investigations and attempt to resolve the

dispute, none of which has it done.  PIC has now applied for and received for following U.S.

Copyright Registrations (with effective dates in parentheses) for additional Photographs: VA 1-

256-147 (July 27, 2004), VA 1-256-146 (July 30, 2004), VA 1-256-101 (July 27, 2004), VA 1-

256-100 (July 27, 2004), VA 1-261-493 (July 21, 2004), VA 1-256-107 (July 29, 2004).

14.     Paragraph 10 of the Agreements provides:

10.  RETURN OF PHOTOGRAPHS: Client assumes all risk for all photographic
material(s) delivered by Photographer from time of receipt by Client until time of
receipt by Photographer.  If no Return Date appears on the face of this form,
Client shall return all these material(s) in undamaged, unaltered and unretouched
condition within 30 days of first publication.

15.     Under Paragraph 11 of the Agreements, failure by Gillette to comply with the

return requirement entitles PIC to liquidated damages of $1,500 per original image not returned

as and when required by the Agreements.

16.     The Agreements specify in Paragraph 12 that PIC "will be entitled to collect any

expenses, including reasonable attorney fees and costs, required to collect any sums due or

enforce the terms of this Agreement."

## DEFENDANT'S UNAUTHORIZED RETENTION
## AND USE OF PLAINTIFF'S PHOTOGRAPHS

17.     Gillette failed to return PIC's copyrighted Photographs as required by Paragraph

10 of the Agreements.

- 4 -

18.     Following numerous requests, Gillette acknowledged its obligation to return the Photographs to PIC, but belatedly sent PIC a box containing only a small fraction of the Photographs.  The remaining Photographs still have not been returned.

19.     Many, if not all, of Gillette's uses of PIC's copyrighted Photographs were unaccompanied by a copyright notice acknowledging PIC's ownership of the copyrights in the Photographs, as required by Paragraph 9 of the Agreement.  Accordingly, pursuant to Paragraph 9, Gillette acquired no reproduction rights with respect to such Photographs.  All uses, reproductions, displays or distributions of such Photographs are therefore unlicensed and constitute breaches of the Agreements.

20.     Gillette has also used at least some of PIC's copyrighted Photographs beyond the one year duration of the Licenses provided for in the Agreements.

21.     For example, PIC's Photograph of the Braun Multiquick Handblender, Copyright Registration No. VA 1-225-338, transmitted to Gillette in or about March 2001, is still posted on Gillette's <theessentials.com> web site (without a proper copyright notice) as of the filing of this Amended Complaint. See http://www.theessentials.com/store/prodinfo.asp?number=5063. Under "Legal Terms and Conditions," Gillette's <theessentials.com> web site states that "This site is owned and operated by The Gillette Company and its affiliates and divisions."

22.     Similarly, PIC's Photograph of the Braun Deluxe Juice Extractor, Copyright Registration No. VA 1-225-240, transmitted to Gillette in or about March 2001, is still posted on Gillette's <theessentials.com> web site as of the filing of this Amended Complaint. See http://www.theessentials.com/store/prodinfo.asp?number=5071.  This Photograph too lacks a proper copyright notice.

23.     Gillette has also used at least some of PIC's copyrighted Photographs beyond the geographic scope (the United States) of the Licenses provided for in the Agreements.  For example, Gillette used one of PIC's copyrighted Photographs, Copyright Registration No. VA 1-225-339, in a Spanish-language catalog circulated in South America.  The Photograph, which features a kitchen scene, was taken in the kitchen of PIC's President, Mr. Paul Picone.  Mr. Picone's kitchen is clearly recognizable in the Photograph.

24.     For a period of time, Gillette purchased duplicate transparencies, negative, and prints of the Photographs from PIC, paying PIC's standard rates for such duplicates.  PIC had these duplicates developed by one or more third-party development laboratories, including Advanced Photographics, Inc. ("Advanced Photographics") of Danvers, Massachusetts.

25.     Over time, Gillette purchased fewer and fewer duplicates from PIC, and instead purchased duplicates directly from third-party laboratories, including Advanced Photographics.  Gillette did so without PIC's permission and in violation of PIC's copyrights.  In particular, Gillette engaged in such acts of duplication outside the one-year period for which Gillette was licensed, and/or without any license (because Gillette failed to meet the conditions of Paragraph 9 of the Agreements for it to obtain reproduction rights).

26.     Gillette was able to bypass PIC and obtain duplicates directly from third-party laboratories such as Advanced Photographics by virtue of the fact that it had retained the Photographs, rather than returning them to PIC as required by the Agreements.

27.     When questioned regarding its reduced purchasing of duplicates from PIC, Gillette responded that it had a reduced need for duplicates.  Gillette concealed from PIC that it was, in fact, obtaining duplicates from other sources, such as Advanced Photographics, without PIC's permission.

## DEFENDANT'S DELAY, CONTRADICTORY STATEMENTS AND STONEWALLING IN RESPONSE TO PLAINTIFF'S CLAIMS

28.     PIC brought its concerns about Gillette's unauthorized use and non-return of PIC's Photographs to Gillette's attention on numerous occasions.

29.     On June 23, 2003, PIC brought these concerns to Gillette's attention in writing.

30.     On or about June 30, 2003, Gillette sent to PIC a box containing a small fraction of the Photographs owed to PIC.  The remaining Photographs were not (and still have not been) returned.

31.     On August 13, 2003, Gillette's Deputy General Counsel John B. Gatlin stated to PIC in writing as follows: "We apologize for the untimely manner in which we have complied with these requests."  Mr. Gatlin went on to assure PIC that "we are conducting an internal investigation to determine the extent to which" any PIC "images have been used by Gillette or any of its subsidiaries," and that "[w]e will continue with our investigation and forward any relevant information to your attention as it becomes available."

32.     Notwithstanding Mr. Gatlin's assurances that an investigation was ongoing and that Gillette would provide relevant information as it became available, no such information was provided.  Despite further attempts by PIC to obtain such information from Gillette, Gillette stonewalled and refused to disclose the results of its investigation.  Accordingly, this action was commenced on May 7, 2004.

33.     On May 19, 2004, Gillette's Assistant Trademark Counsel Leon Bechet represented to PIC in writing – in direct contradiction to Mr. Gatlin's earlier written representation – that "no representation was made to you regarding an 'investigation' undertaken by Gillette."

**DEFENDANT'S REFUSAL TO PAY OUTSTANDING INVOICES**

34.    In or about late February 2004, Beth Cooper of Gillette approached PIC with an "emergency" photography project of significant scope.

35.    Notwithstanding the fact that Ms. Cooper and Gillette were aware of the outstanding disputes between PIC and Gillette which ultimately led to the filing of this lawsuit, Ms. Cooper entreated PIC to assist with the aforementioned emergency project.

36.    Specifically, Ms. Cooper indicated to Mr. Picone that Gillette needed a large volume of photographic work done on extremely short notice in order to prepare for an upcoming housewares show.  Ms. Cooper entreated Mr. Picone by phone to assist with this project, and even traveled to PIC's office in Hamilton, Massachusetts to plead her case.

37.    As a gesture of goodwill, PIC agreed to assist Gillette with the project.  Given the extensive scope of the project and the short time available in which to complete it, PIC personnel worked night and day for approximately two weeks to complete it.

38.    During this time, PIC received extensive correspondence from Gillette personnel indicating Gillette's gratitude that PIC had accepted the project and conveying satisfaction with the high quality of PIC's work.  For instance, Gillette personnel made statements such as "GORGEOUS!!!", "I think it looks terrific!", "You rock!  Thanks!", "Thanks for all your help!", and "These look ABSOLUTELY WONDERFUL!!!!  Thank you!".

39.    The correspondence transmitted by Gillette to PIC was also calculated to suggest to PIC that its goodwill gesture of taking on the emergency project would assist in resolution of PIC's outstanding disputes with Gillette.  For instance, on March 4, 2004, Ms. Cooper wrote to Mr. Picone: "FYI … I left a message for legal this AM and am awaiting followup.  Also sent Julie Washington an e-mail ... glad to have you back!"

40.     Following this emergency project, Gillette personnel (including Ms. Cooper and others, such as Gary Gibson) requested that PIC handle additional emergency projects.  Once again, Gillette personnel praised PIC's rapid action and high quality, with statements such as "Thanks so much for your help in turning this around so quickly.  The images look great!"

41.     In all, PIC handled a total of four such projects for Gillette between March and April of 2004.

42.     Per its standard practices (and the established course of dealing between the parties), PIC invoiced Gillette for the work done, with four invoices dated March 2, 2004, March 17, 2004, March 22, 2004 and April 20, 2004.  As always, each invoice was subject to the terms of an Agreement.

43.     As of the filing of this Amended Complaint, Gillette has not paid any of these four invoices.  Moreover, Gillette personnel refuse to return Mr. Picone's telephone calls regarding payment for these jobs.

44.     Gillette owes Mr. Picone $70,000 for these four jobs.

45.     Gillette has reproduced and used the Photographs provided by PIC for, *inter alia*, a housewares show and a sales meeting, despite not having paid PIC for the Photographs as required under Paragraph 9 of the Agreements.

46.     Gillette has not returned PIC's original images as required by the Agreement.

### DEFENDANT'S WILLFULNESS

47.     On information and belief, Gillette's infringement of PIC's copyrights, its breach of the Agreements, its fraud, its stonewalling in response to PIC's claims, its refusal to pay outstanding invoices, its misrepresentations to PIC, and its unfair and deceptive trade practices, have been knowing and willful.

## COUNT I
### (Copyright Infringement By Use Of The Photographs Without Any License and/or Beyond The Scope Of The Licenses)

48.    PIC repeats and re-alleges the allegations of the paragraphs above as though fully set forth herein.

49.    Gillette has infringed PIC's copyrights in its Photographs, in violation of 17 U.S.C. § 501, by using such Photographs beyond the scope (both temporal and geographic) of the Licenses provided for in the Agreements, and/or without any license (by using such Photographs without acknowledging PIC's ownership of the copyrights in the Photographs with proper copyright notices as required by the Agreements, and/or by using such Photographs without paying PIC's invoices as required by the Agreements).

## COUNT II
### (Copyright Infringement By Unauthorized Duplication Of The Photographs)

50.    PIC repeats and re-alleges the allegations of the paragraphs above as though fully set forth herein.

51.    Gillette has infringed PIC's copyrights in its Photographs, in violation of 17 U.S.C. § 501, by obtaining duplicates thereof beyond the scope of the Licenses provided for in the Agreements, and/or without any license (by using such Photographs without acknowledging PIC's ownership of the copyrights in the Photographs with proper copyright notices as required by the Agreements, and/or by using such Photographs without paying PIC's invoices as required by the Agreements).

## COUNT III
### (Breach of Contract)

52.    PIC repeats and re-alleges the allegations of the paragraphs above as though fully set forth herein.

53.    Gillette has breached its Agreements with PIC by failing to return PIC's Photographs as required by the Agreements.  Indeed, even following notice of this dispute, Gillette still failed to return the vast majority of the Photographs belonging to PIC.  Under Paragraph 11 of the Agreements, Gillette owes PIC liquidated damages for thousands of unreturned Photographs.

54.    Gillette has also breached its Agreements with PIC by using PIC's Photographs outside the scope (both temporal and geographic) of the Licenses provided for in the Agreements.

55.    Gillette has also breached its Agreements with PIC by using PIC's Photographs without acknowledging PIC's ownership of the copyrights in the Photographs with proper copyright notices as required by the Agreements.

56.    Gillette has also breached its Agreements with PIC by using PIC's Photographs without paying PIC's invoices as required by the Agreements.

57.    PIC has been, and will continue to be, damaged by Gillette's breaches of the Agreements.

## COUNT IV
### (Fraud)

58.    PIC repeats and re-alleges the allegations of the paragraphs above as though fully set forth herein.

59.    As noted above, over time Gillette reduced its purchases of duplicates from PIC on the pretense that it had a reduced need for duplicates, when in fact Gillette was procuring duplicates from third-party laboratories without PIC's permission and in violation of PIC's copyrights.

60.    As one example of this deception, a requisitioning agent at Gillette telephoned Mr. Picone to request that PIC provide Gillette with a particular image. When Mr. Picone inquired whether Gillette wanted this image because it planned to duplicate it, the requisitioning agent answered in the negative and informed Mr. Picone that Gillette was experiencing a reduced need for duplicates. This statement was false. In fact, Gillette was obtaining duplicates from other sources, such as Advanced Photographics, without PIC's permission.

61.    On information and belief, the false statement made by the requisitioning agent to Mr. Picone was made with an intention that PIC rely upon it and not inquire further regarding Gillette's duplication activities.

62.    PIC relied upon the Gillette agent's false statement and assumed, because of PIC's longstanding relationship with Gillette, that Gillette would not unlawfully bypass PIC in obtaining duplicates.

63.    Gillette falsely implied an intent to pay PIC for work performed in connection with several "emergency" projects in the March-April 2004 time frame. In light of the Agreements' requirement that payment is due upon receipt of invoices by Gillette, and Gillette's longstanding practice of prompt payment over the course of several years, Gillette's entreaties to PIC and its repeated statements to PIC during March and April 2004 complimenting PIC on the speed and quality of its work falsely implied that Gillette would pay PIC's invoices upon receipt.

64.    Despite these statements to PIC, Gillette refused to pay PIC's invoices and now refuses to take PIC's telephone calls concerning the same.

65.    PIC relied upon Gillette's false implications in performing this work, with an expectation that it would be paid for the same. Gillette owes PIC over $70,000 for this work.

66.    In stonewalling PIC on PIC's claims, Gillette made contradictory statements to PIC, one or more of which was false.  Namely, as described above, Mr. Gatlin represented to PIC that an investigation into PIC's claims was being performed, and later Mr. Bechet denied that any such representation had been made.

67.    On information and belief, one or more of the aforementioned statements was made with an intention that PIC rely upon it and delay further action with respect to pursuit of PIC's claims against Gillette.

68.    PIC relied upon Mr. Gatlin's statement in delaying the filing of this lawsuit while it awaited the promised results of Gillette's supposed "internal investigation."

69.    Gillette's fraud damaged PIC in an amount to be determined at trial.

### COUNT V
### (Unfair And Deceptive Trade Practices Under Mass. Gen. L. ch. 93A)

70.    PIC repeats and re-alleges the allegations of the paragraphs above as though fully set forth herein.

71.    Gillette is, and at all relevant times was, engaged in commerce.

72.    Gillette's acts and/or omissions as described above (and the center of gravity of those acts and/or omissions) occurred primarily and substantially in Massachusetts.

73.    Gillette's acts and/or omissions as described above constitute unfair and deceptive trade practices under Mass. Gen. L. ch. 93A.

74.    Gillette's acts and/or omissions as described above were knowing and willful.

75.    Gillette's unfair and deceptive trade practices damaged PIC in an amount to be determined at trial.

**RELIEF REQUESTED**

WHEREFORE, PIC requests that this Court:

A.      Permanently enjoin Gillette, including its partners, officers, agents, servants, employees, attorneys, and all those persons and entities in active concert or participation with them, from further infringement of the copyrights in and to the Photographs, pursuant to 17 U.S.C. § 502, from further breaching the Agreements, and from further unfair and deceptive trade practices pursuant to Mass. Gen. L. ch. 93A.

B.      Order the recall, impounding and destruction of all infringing copies made, used or distributed by Gillette in violation of PIC's exclusive rights in and to its Photographs (and, in the case of electronic copies, order that all such copies be deleted from the computers or other storage means on which they reside), pursuant to 17 U.S.C. § 503.

C.      Direct Gillette to pay to PIC its actual damages and any additional profits realized by Gillette, pursuant to 17 U.S.C. § 504.

D.      Order that, in the alternative to actual copyright damages, at PIC's election, Gillette shall pay PIC statutory damages pursuant to 17 U.S.C. § 504.

E.      Direct Gillette to pay to PIC its damages sustained as a result of Gillette's fraud and unfair and deceptive trade practices.

F.      Award PIC liquidated damages of $1,500 per Photograph not returned by Gillette to PIC as and when required by the Agreements.

G.      Award PIC its damages for Gillette's failure to pay outstanding invoices.

H.      Enter judgment that Gillette's copyright infringements, breaches of the Agreements, fraud, and unfair and deceptive trade practices have been knowing and willful.

I.      Award PIC its attorney fees and costs in prosecuting this action, pursuant to 17

U.S.C. § 505, the Agreements, Mass. Gen. L. ch. 93A, or otherwise.

J.      Award PIC treble damages pursuant to Mass. Gen. L. ch. 93A or otherwise.

K.      Award PIC such further relief as this Court may deem just and proper.

## **JURY DEMAND**

PIC hereby demands a trial by jury of all issues so triable.


                                        Respectfully submitted,

                                        PHOTOGRAPHIC ILLUSTRATORS
                                        CORPORATION,

                                        By its counsel,


Dated: September 3, 2004                /s/ Michael A. Albert
                                        Michael A. Albert, BBO #558566
                                        malbert@wolfgreenfield.com
                                        Michael N. Rader, BBO # 646990
                                        mrader@wolfgreenfield.com
                                        WOLF, GREENFIELD & SACKS, P.C.
                                        600 Atlantic Ave.
                                        Boston, MA 02210
                                        Tel:  (617) 720-3500
                                        Fax: (617) 720-2441