IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY,<br><br>    Defendant. | Civil Action No. 04-CV-10913-WGY |

**REPLY MEMORANDUM IN SUPPORT OF PIC'S AND PAUL PICONE'S
<u>MOTION TO DISMISS GILLETTE'S COUNTERCLAIMS</u>**

                        Michael A. Albert, BBO #558566
                        Michael N. Rader, BBO # 646990
                        WOLF, GREENFIELD & SACKS, P.C.
                        600 Atlantic Ave.
                        Boston, MA 02210
                        Tel: (617) 646-8000

                        COUNSEL FOR PLAINTIFF AND
                        COUNTERCLAIM-DEFENDANT
                        PHOTOGRAPHIC ILLUSTRATORS CORP.

                        and

                        ADDITIONAL COUNTERCLAIM-DEFENDANT
                        PAUL PICONE

TABLE OF CONTENTS

I. OVERVIEW ...................................................................................................................1

II. ARGUMENT .................................................................................................................2

    A.    Gillette's Contract-Related Counterclaims Should Be Dismissed Because An Agreement To Agree Is Unenforceable And Cannot Be The Subject Of Reasonable Reliance......................................................2

    B.    Gillette's Contract-Related Counterclaims Should Also Be Dismissed Because They Rely Upon Parol Evidence That Directly Contradicts The Parties' Written Contracts......................................7

    C.    Gillette's Breach Of Contract Counterclaim Should Also Be Dismissed Because Gillette Fails To Allege Even An Offer Of Performance ..........................9

    D.    Gillette's Trademark Counterclaim Should Be Dismissed Because There Is No Cause Of Action For "Intent To Commit Trademark Infringement" .................9

III. CONCLUSION................................................................................................................11

Plaintiff and Counterclaim-Defendant Photographic Illustrators Corp. ("PIC") and additional Counterclaim-Defendant Paul Picone respectfully request leave to file this reply brief in support of their motion to dismiss Gillette's counterclaims.

## I. OVERVIEW

Four of Gillette's five counterclaims against PIC and Mr. Picone (breach of contract, estoppel, fraud and violation of Mass. Gen. L. ch. 93A) are based on alleged discussions between Gillette employee Beth Cooper and Mr. Picone in March and April 2004. Gillette plans to argue that, in those discussions, PIC agreed to provide its photographic services without requiring Gillette to accept its standard terms and conditions governing use of PIC's images – then breached that agreement by including the terms and conditions on its invoices.

These counterclaims fail because Gillette's own pleading concedes (in ¶ 25) that the key terms of any agreement governing Gillette's use of PIC's images – namely, the "terms concerning ownership and use of the photographs" – were not resolved in the oral discussions, but remained to be "memorialized" later. (Id.).[1] An "agreement" in which the most important (and hotly contested) terms are to be worked out later is an unenforceable "agreement to agree" as a matter of law. Gillette's breach of contract counterclaim therefore should be dismissed. Gillette's estoppel, fraud and Chapter 93A counterclaims should also be dismissed because Gillette could not reasonably have relied on an "agreement to agree." This too is a matter of law.

Gillette's fifth counterclaim – for "intent to commit trademark infringement" – should be dismissed because no such cause of action exists under the Lanham Act. PIC cited ample case law to this effect in its opening brief, and Gillette had no substantive response.

---

[1] The allegations set forth by Gillette in its Amended Counterclaim must, of course, be taken as true for purposes of this motion.

II.   **ARGUMENT**

   A.   **Gillette's Contract-Related Counterclaims Should Be Dismissed Because An Agreement To Agree Is Unenforceable And <u>Cannot Be The Subject Of Reasonable Reliance</u>.**

An "agreement" lacking material terms on which the parties will have to agree later is unenforceable as a matter of law. <u>PDC-El Paso Meriden, LLC v. Alstom Power, Inc.</u>, 2004 WL 1588201, *11 (Mass. Super. June 14, 2004) ("A purported contract which … does not adequately specify essential terms, ordinarily will be unenforceable."); <u>Metrowest Med. Group, Inc. v. Mt. Auburn Hosp.</u>, 1994 WL 902895, *5 (Mass. Super. Dec. 14, 1994) (dismissing contract claim: "An agreement to reach an agreement is a contradiction in terms.").

According to Gillette's own pleading, which must be taken as true for purposes of this motion, the "terms concerning ownership and use of the photographs" were not decided in the March-April 2004 oral discussions between Ms. Cooper and Ms. Picone, but remained to be "memorialized" later. (Am. Counterclaim ¶ 25). Thus, at best the March-April 2004 discussions resulted in an unenforceable "agreement to agree."

Gillette has three responses to this. **First,** Gillette argues – without citation to authority – that the oral "agreement" pled by Gillette was not lacking in material terms because the following terms are "sufficient to create a binding contract":

(i) Gillette was to provide PIC with Gillette products for PIC to photograph;

(ii) PIC was to photograph such products and provide such photographs to Gillette for Gillette's use; and

(iii) PIC was to charge Gillette no more than its customary rate.

(Opp. at 2, 6).[2]

---

[2] The terms presented here are directly quoted from Paragraph 22 of Gillette's Amended Counterclaim. Gillette paraphrased the terms differently in different parts of its opposition brief.

- 2 -

In a contract for photographic services, the first two terms above (that the client will provide items to be photographed and that the photographer will photograph them) are self-evident and hardly provide any substance to the alleged contract. The third, that PIC would charge Gillette "no more than its customary rate," is fatally indefinite. Witco Chem. Corp. v. Down Chem. Co., 623 F. Supp. 308, 309 n.3 (D. Del. 1985) (royalty rate set forth as "*not more than a specific rate*" was deemed insufficiently definite, rendering the license an unenforceable "agreement to agree") (emphasis added); see also Service & Training, Inc. v. Data Gen'l Corp., 737 F. Supp. 334, 339 (D. Md. 1990) (noting with approval the conclusion by Judge Skinner of this District that construing a license to require that the licensor charge an unspecified "reasonable license fee" would render it an unenforceable "agreement to agree"). For this reason alone, Gillette's breach of contract counterclaim should be dismissed.

More significant still, the essential aspects of any intellectual property (IP) license – ownership of the IP and the scope of any license thereto – admittedly were not determined in the alleged oral discussions between Ms. Cooper and Ms. Picone. See Am. Counterclaim ¶ 22 (ownership and scope of license not among the terms agreed to by the parties) and ¶ 25 (explicitly conceding that the "terms concerning ownership and use of the photographs" remained to be "memorialized"). The lack of such terms necessarily renders the alleged oral agreement unenforceable. Freeland v. HP Asset LLP, 35 Fed. Appx. 874, 877 (Fed. Cir. 2002) (contract more than a mere "agreement to agree" because it "clearly sets forth detailed licensing terms, including the amount of the royalty, sublicensing conditions, and the scope of the license"); Vian v. Carey, 1993 U.S. Dist. Lexis 5460, *9 (S.D.N.Y. Apr. 26, 1993) (copyright license that failed to specify "the duration or geographic scope of the license" was an unenforceable "agreement to agree"); DeFrancesco v. Particle Interconnect Corp., 39 P.3d 1243 (Colo. App. Ct. 2001) (agreement that failed to specify scope of license held indefinite as a matter of law).

- 3 -

Again, Gillette cites no authority for the proposition that a copyright license agreement can be sufficiently definite without at least setting forth who will own the copyright and the scope (e.g., geographic and temporal) of any license to be granted.[3]  The oral "agreement" pled by Gillette is an unenforceable "agreement to agree."

Gillette's **second** explanation for why it believes it has pled more than an "agreement to agree" is based on semantics.  In its original Counterclaim (pled, of course, pursuant to Rule 11) Gillette stated that Ms. Cooper and Mr. Picone "*discussed … negotiating a new agreement*" during their March 1, 2004 meeting. (Docket #21 ¶ 21) (emphasis added).  After PIC informed Gillette, pursuant to Local Rule 7.1, that this explicitly describes an unenforceable "agreement to agree," Gillette deleted references to future "negotiations" and replaced them, in its Amended Counterclaim, with the word "memorialize."  Gillette now maintains that when its Amended Counterclaim refers to the parties' future "memorializing" of terms, this means nothing more than "put[ting] in writing terms on which the parties orally have agreed." (Opp. at 6).

This notion is unsupported by Gillette's own pleading and, in any event, fails to remedy the deficiency of Gillette's counterclaims as a matter of statutory copyright law.

*Nowhere* does Gillette's pleading set forth the parties' alleged oral agreement as to who would own the images created by PIC in the Spring 2004 Projects. (Of course, as a matter of copyright law, PIC, the author, owns the copyrights in those images by default.  Gillette's pleading does not allege that the parties anticipated, let alone agreed upon, a copyright transfer from PIC to Gillette.)  Moreover, *nowhere* does Gillette's pleading set forth the geographic or temporal scope of any license that PIC had agreed to grant Gillette.

---

[3] Gillette's argument that contracts need not be in writing to be enforceable (Opp. at 6, 7, citing Quint v. A.E. Staley Mfg. Co., 246 F.3d 11 (1st Cir. 2003)) is a red herring.  While parties can of course contract orally about many things, absence of agreement on a material term is as fatal to an oral contract as it is to a written contract.

If ownership and/or license terms had been agreed upon orally, and all that remained was to "memorialize" them in writing, then certainly Gillette would have set forth the orally agreed-upon terms in Paragraph 22 of its pleading, where it listed several allegedly agreed-upon terms. Yet Gillette did not do so, opting instead to include the catch-all, "the parties were to memorialize additional terms that would govern other aspects of the parties' relationship." (Id.). The mere fact that Gillette used the word "memorialize" instead of "negotiate" does not change that Gillette has not pled (because it cannot do so in good faith pursuant to Rule 11) oral agreement on any ownership or license terms for PIC's images.

In any event, *as a matter of statutory copyright law*, the parties could not have agreed orally that ownership of PIC's images would be transferred to Gillette. See 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is **in writing** and signed by the owner of the rights conveyed or such owner's duly authorized agent.") (emphasis added). Gillette's post-hoc contention that the parties contracted orally with respect to ownership of copyrights is impossible as a matter of law.[4]

**Third** and finally, Gillette argues that, under Lafayette Place Assoc. v. Boston Redevelopment Auth., 694 N.E. 2d 820 (Mass. 1998), a binding agreement may be entered into even if "some terms" are missing. (Opp. at 9). That may be true, but, as discussed above, an agreement is not binding if *material* terms (such as ownership of copyrights or the scope of a copyright license to be granted) are missing. Lafayette supports PIC in this regard.

---

[4] The suggestion in Gillette's brief that it (and not PIC) owns PIC's images is frivolous. (Opp. at 20 n.5).

Lafayette affirmed the principle that an "agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto," and that "the failure to reduce uncertainties to definite terms is fatal, particularly where parties have not yet formalized their negotiations or have left essential terms completely open." Id. at 825.

The agreement at issue in Lafayette was held enforceable precisely because the challenged terms were *not* left completely open, but were specified by formulae that would lead to a definite price term at a future date based on a detailed appraisal and arbitration process set out in the contract. Id. at 826. "If parties specify formulae and procedures that, although contingent on future events, provide mechanisms to narrow present uncertainties to rights and obligations, their agreement is binding." Id.

This is not a case like Lafayette where the parties arrived at a formal, structured agreement incorporating future contingencies. See id. at 827 ("To borrow Justice Holmes's metaphor, the machinery was built and had merely to be set in motion."). Instead, the geographic and temporal scope of any license granted to Gillette was left completely unresolved, in addition to other critical terms such as the length of time that Gillette would be permitted to retain the images, the sum of liquidated damages for Gillette's failure to return the images,[5] and the price to be paid by Gillette. Gillette's contract counterclaim should be dismissed.

Gillette does not contest that a party cannot reasonably rely, for purposes of establishing "estoppel" or "fraud," on an "agreement to agree." Fontneau v. Town of Sandwich, 251 F. Supp. 2d 994, 1003 (D. Mass. 2003) (Young, C.J.) ("[T]he ambiguity of the Harbormaster's alleged statement to [plaintiff] – in that it failed to include such material terms as duration and price – is as fatal to [plaintiff's] promissory estoppel claim as it is to his contract claim."); Gregg v. U.S.

---

[5] The industry standard for liquidated damages recently increased from $1,500 per image to $2,500 per image.

Indus., Inc., 715 F.2d 1522, 1531 (11th Cir. 1989) ("a fraud action may not be used to recover for breach of an unenforceable oral contract … nor may recovery be had for fraudulent inducement to enter an unenforceable oral contract").  Accordingly, because Gillette's pleading is based on an "agreement to agree," its estoppel and fraud counterclaims should be dismissed.[6]

      **B.     Gillette's Contract-Related Counterclaims Should Also Be Dismissed Because They Rely Upon Parol Evidence That Directly Contradicts The Parties' Written Contracts.**

As explained in PIC's opening brief, a breach of contract claim that necessarily relies upon parol evidence should be dismissed. (PIC Br. at 9-10) (citing cases).  Estoppel and fraud claims that are based on oral statements directly contradicting a later written agreement likewise cannot succeed and should dismissed. (Id. at 11-13) (citing cases).

In its response (Opp. at 11), Gillette correctly points out an erroneous statement by PIC – but the error was harmless.  PIC mistakenly stated in its opening brief that its invoices (with standard terms and conditions on the reverse side) "accompanied" the images it sent to Gillette.  In fact, as Gillette correctly observes, PIC's usual practice (which it followed with respect to the Spring 2004 Projects) is to send its invoices after transmitting images to a client.

Gillette argues that, because PIC's invoices arrived after Gillette had received (and commenced use of) the images, the parties never entered into a written contract based on PIC's terms and conditions – such that the parties' earlier discussions would not constitute inadmissible parol evidence.  The argument depends entirely on the premise – unsupported by any authority – that PIC's dealings with Gillette were subject to Article 2 of the Uniform Commercial Code ("UCC"), which differs from the common law rule of contracts on this issue. (Opp. at 12-13).

---

[6] Gillette's analysis of the Fontneau case is limited to the bald statement that Fontneau is a "far cry" from Gillette's allegations here. (Opp. at 17).  In point of fact, this Court's holding in Fontneau that failure to include material terms is fatal to a promissory estoppel claim is directly on point here.

This premise is wrong as a matter of law. Photography contracts are contracts for the provision of *services* (not for the sale of goods),[7] which fall outside the UCC and under the common law. E.g., Elbe v. Adkins, 812 F. Supp. 107, 111 (S.D. Ohio 1991) (wedding photography contract is a contract for services; the UCC does not apply); Pre-Media, Inc. v. Sherinda Int'l, Inc., 1980 U.S. Dist. Lexis 10793, *4-5 (S.D.N.Y. Mar. 24, 1980) (contract for creation of slide show is a contract for services; the UCC does not apply). Accordingly, when Gillette received PIC's invoice, complete with PIC's standard terms and conditions, and did not object to those terms within a reasonable period of time,[8] the writing became the parties' contract as a matter of law. "It is well established that a professional may obtain a judgment as a matter of law for an Account Stated when the client fails to object to the professional's statement for services within a reasonable amount of time." Patterson, Belknap, Webb & Tyler v. Larosa, 1993 U.S. Dist. Lexis2835, *11 (D. Md. Feb. 16, 1993); see also John T. Percy & Assocs. v. Collura, 239 A.D. 2d 650, 651 (granting summary judgment for plaintiff on contract claim where "defendant failed to object to the cost of these services within a reasonable time after receiving the invoices").[9]

Gillette's reliance on Ionics, Inc. v. Elmwood Sensors, Inc., 110 F.3d 184 (1st Cir. 1997) is misplaced. (Opp. at 12). The Ionics court did not disagree with the reasoning of Roto-Lith and Alloy Comp. Prods., Inc. v. N. Telecom, Inc., 683 F. Supp. 12, 14 (D. Mass. 1988) that

---

[7] The fact that a service contract calls for transmission of a deliverable (like a photographic image) does not convert it into a contract for sale of goods under the UCC. Little, Brown and Co. v. Am. Paper Recycling Corp., 824 F. Supp. 11, 16 (D. Mass. 1993) ("The Massachusetts Supreme Judicial Court has held that '[c]ontracts whose predominant factor, thrust or purpose is the rendition of services are not within the scope of art. 2 (U.C.C.)'") (citation omitted).

[8] Gillette never objected to the Spring 2004 invoices; in fact, Gillette never communicated with PIC about those invoices at all. In its own pleading, Gillette concedes that it refused to have any contact with PIC or Mr. Picone about the subject. (Am. Counterclaim ¶ 43).

[9] There is no "contradiction" (Opp. at 17) in PIC's position that the alleged oral discussions between Ms. Cooper and Mr. Picone did not result in an enforceable contract, while enforceable written contracts *were* formed later, when Gillette failed to object to PIC's invoices (with terms and conditions printed on the reverse side) within a reasonable period of time.

acquiescence to contractual terms creates a binding contract under the common law – it only overruled Roto-Lith to the extent that Roto-Lith applied the common law to a sale of goods. Ionics, 110 F.3d at 188 ("The court then reverted to common law and concluded that Roto-Lith 'accepted the goods with knowledge of the conditions specified in the acknowledgment [and thereby] became bound.'"). Here, the parties contracted for provision of photography services and common law rules apply. PIC's terms and conditions became part of the parties' contract when Gillette failed to object to the same within a reasonable time. Alleged contrary statements cannot form the basis for a breach of contract, estoppel or fraud claim as a matter of law.[10]

### C. Gillette's Breach Of Contract Counterclaim Should Also Be Dismissed Because Gillette Fails To Allege Even An Offer Of Performance.

To succeed on its breach of contract counterclaim, Gillette must allege that it performed under the contract (PIC Br. at 10), or at least it was "ready, willing and able to perform *and had manifested some offer of performance*." Lafayette, 694 N.E. 2d at 827 (emphasis added). Gillette has not alleged that it manifested "some offer of performance," nor could it, as it has steadfastly refused to pay for the Spring 2004 Projects.

### D. Gillette's Trademark Counterclaim Should Be Dismissed Because There Is No Cause Of Action For "Intent To Commit Trademark Infringement".

In its opposition, Gillette does not address any of the cases cited in PIC's opening brief establishing that no cause of action exists for "intent to commit trademark infringement." Instead, Gillette points to PIC's unwillingness to stipulate to an agreement to not use its own photographic materials "for *any* purpose," and a statement in discovery that one possible use of PIC's images is for stock photos, as "confirming Gillette's fears." (Opp. at 19-20).

---

[10] As noted in PIC's opening brief (at 15), Gillette's 93A counterclaim is based on the same conduct as its breach of contract, estoppel and fraud counterclaims. Because those causes of action fail, the 93A counterclaim should also be dismissed. Gillette agrees that its 93A counterclaim stands or falls with the others recited above. (Opp. at 18-19).

Once again, however, there simply is no cause of action under the Lanham Act for "intent to commit trademark infringement." E.g., Cognitest Corp. v. Riverside Publishing Co., 36 U.S.P.Q. 2d 1363, 1366 (N.D. Ill. 1995).

In any event, even if PIC had *actually used* its photos of Gillette products as stock photos (which it has not done, and which Gillette does not allege it has done), and even if Gillette trademarks were visible in such photos (another element Gillette does not allege), Gillette *still* would have no cause of action for trademark infringement. The mere use of an image containing another's trademark "for any purpose" is not automatically trademark infringement, as Gillette implies.[11] Rather, trademark infringement occurs only if and when the trademark is (a) used in commerce, (b) to designate the source or origin of the alleged infringer's goods or services, and (c) creates a likelihood of consumer confusion. 15 U.S.C. § 1125(a). Gillette has neither articulated these elements in its argument nor, more importantly, alleged any of them (let alone all of them) in its pleading – nor could it, as use by a photographer of his own works for purposes utterly unrelated to the sale of razors (such as for purposes of demonstrating what is in his portfolio, or as stock photographs, or simply to prevent Gillette from keeping the pictures itself and making such improper uses of them as are alleged in PIC's complaint) is plainly not trademark infringement.

---

[11] As the Supreme Court explained just days ago, "A trademark may be used by another as part of an image if it is used in a descriptive manner…. Furthermore such a descriptive fair use is permissible even if some confusion may result." KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 2004 WL 2804921, *6 (Dec. 8, 2004).

### III. CONCLUSION

For the above reasons, Gillette's counterclaims against PIC and Paul Picone should be dismissed with prejudice.

Respectfully submitted,

PLAINTIFF AND COUNTERCLAIM-DEFENDANT
PHOTOGRAPHIC ILLUSTRATORS CORP.

and

ADDITIONAL COUNTERCLAIM-DEFENDANT
PAUL PICONE

By their counsel,

Dated: <u>December 15, 2004</u>         <u>   /s/ Michael A. Albert          </u>
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO # 646990
mrader@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
Tel: (617) 646-8000