**Michael N. Rader**
mrader@wolfgreenfield.com
direct dial 617.646.8370

January 20, 2005

By E-mail, Facsimile and FedEx

David Donahue, Esq.
FROSS, ZELNICK LEHMAN & ZISSU
866 U.N. Plaza
At First Avenue and 48th Street
New York, NY 1017

      Re:    Photographic Illustrators Corp. v. Gillette
                Civil Action No. 04-CV-10913-WGY
                Our File No. P0768.30000US00
                Your File No. GLTC 0420298

Dear David:

      This letter follows our previous unsatisfied demands for discovery from Gillette. With the discovery deadline fast approaching in light of Gillette's request that the case be put on an expedited schedule, we will have no choice but to move to compel on each of the following items if Gillette does not promptly provide the requested discovery. The motion will be filed tomorrow (Friday) afternoon unless Gillette agrees, by noon tomorrow, to deliver the requested documents and things by Monday, January 24, 2005.

      While we have endeavored to be flexible throughout the discovery process in this case, there is a limit to how flexible we can be. We must have Gillette's production so that we have time to review and process the material and prepare for a number of depositions of Gillette personnel. We cannot permit our client to be prejudiced by continued stonewalling from Gillette.

I.    **ELECTRONIC MAIL AND DOCUMENTS**

      PIC is entitled to all electronic mail and other electronic documents that are responsive to its document requests. For example, PIC's Request Nos. 2, 5, 7 and 8 call for all documents – including electronic documents – concerning the use of PIC's images in various media. Request Nos. 11, 12 and 13 call for all documents – including electronic documents – concerning any communications between Gillette and PIC, between Gillette and any third party, and internal to Gillette, concerning PIC's images or PIC. PIC's Request Nos. 30 and 31 call for all e-mail communications concerning the subject matter of this case, and No. 36 calls for all e-mails concerning PIC or Mr. Picone.

David Donahue, Esq.
January 20, 2005
Page 2 of 7

To date, a very limited number of e-mails and little or no electronic documents have been produced by Gillette. Gillette purported to object to producing any e-mail or other electronic documents "not previously printed out or transcribed." After we took issue with this objection in our November 22, 2004 letter, you responded on November 23, 2004 that you were "in the process of discussing these issues with our client." In response to a further inquiry, you stated in a December 1, 2004 letter that "Gillette is currently looking into what, if any, electronic archives of deleted electronic mail or other electronic documents may exist." We never heard from you again on this issue.

To be clear, PIC's discovery requests call for *all* responsive e-mail and other electronic documents, not only ones that have been "deleted." This includes responsive e-mails and electronic documents from at least the individuals identified in PIC's initial disclosures as likely to have discoverable information, namely Linda Mallet, Karen Mullen, Michele Sager, Joyce Lorden, Beth Cooper, Brenda Tattan, Jill Josephson, Nancy Daly, Pamela _____ (last name unknown but her extension at Gillette is 617-463-4075), Nadine Romano, Trish Moriarty, Barbara Mackin, Anna Madden and Gary Gibson. It is difficult to imagine that these individuals will not have responsive e-mail, including recent e-mail.

We note that Gillette has had not just months but *years* to investigate this matter (and represented to PIC in correspondence that it conducted an investigation). There is no excuse for the failure to produce the e-mails and other responsive documents.

A full production of the responsive electronic e-mails and other materials is required.

## II.  ELECTRONIC COPIES OF GILLETTE'S WEB SITES

PIC's Request No. 6 calls for electronic copies of all of Gillette's web sites, annually for the past six years. A company of Gillette's size and stature must have an IT department or other department (or outside vendor) charged with maintaining Gillette's web sites from whom current and archival copies of web sites could be obtained.

Gillette's response stated that it would produce "printouts" it happened to have in its possession, but refused to provide electronic copies of Gillette's web sites. In correspondence dated December 1, 2004, you stated that Gillette "continues its search for copies of past web sites." We never heard from you again regarding the results of that search. Also, we have yet to receive electronic copies of even Gillette's *current* web sites.

David Donahue, Esq.
January 20, 2005
Page 3 of 7

      Electronic copies of current and archived web sites under Gillette's control must be produced as requested.

### III. DOCUMENTS RELATED TO GILLETTE'S INVESTIGATION AND INDEX OF PHOTOGRAPHIC MATERIALS

      PIC's Request No. 15 calls for all documents concerning Gillette's investigation of PIC's images, including the index that Gillette stated it had created. Gillette answered that it would produce responsive documents, but has not done so. In our review of the Gillette's production, we were unable to identify the index.

      A full production of documents concerning Gillette's investigation, including the index, is required.

### IV. CATALOGS AND OTHER MARKETING MATERIALS

      PIC's Request No. 1 calls for all of Gillette's catalogs containing PIC's images. Gillette responded with the incredulous statement that it does not keep copies of its own catalogs in the normal course of business. In correspondence dated December 1, 2004, you indicated that Gillette's "efforts to locate more [catalogs] if any, is ongoing." We never heard from you again on this issue.

      Gillette's production contains two 1999 Braun catalogs from Jill Josephson and a handful of catalogs, and what appear to be product sheets, from Brenda Tattan. Our understanding is that Gillette produces product catalogs in the United States at least once a year. (We also understand that Gillette produces product sheets for most if not all of its products as they are distributed.) This is borne out by Gillette catalogs in PIC's own possession (which are in the queue for our copy vendor to scan and produce to you shortly). Specifically, PIC has Braun catalogs going back to 1997, as well as a larger 2002 binder entitled "2002 Product Guide" that includes many product sheets. PIC's collection of U.S. catalogs, product guides and product sheets is undoubtedly, however, incomplete. Naturally, these materials should be available from Gillette – it would be rather curious if our client had more of Gillette's catalogs than Gillette itself. Indeed, from our review of Gillette's document retention policy, it appears that Gillette retains its advertising materials going back a number of years.

      What is more, Gillette has not yet produced even its *current* (2005 and 2004) catalogs, product guides or product sheets. We do not understand Gillette to contend that it is not in possession of its own current marketing materials, and accordingly await production of the same.

David Donahue, Esq.
January 20, 2005
Page 4 of 7

      We also understand that Gillette produces foreign-language catalogs and marketing materials for distribution abroad, none of which have yet been produced.

      We note that the Rules require production of documents not only in Gillette's possession, but also in its custody or control. Gillette has control over the outside vendors that produce its catalogs and other marketing materials for purposes of obtaining copies from those vendors. Thus, Gillette must obtain catalogs and other marketing materials both internally and from its vendors. Please describe for us the search that has been performed for domestic and foreign materials.

      In short, a full production of Gillette's catalogs and related advertising literature (product sheets, product guides, etc.) is required.

### V.   INVOICES

      Gillette's production includes PIC invoices that appear to start at Job No. 4360 in December 1997. Gillette has not produced earlier PIC invoices, such as those listed in PIC's Complaint in this action between Job No. 3072 and 4352.

      There are also over 70 invoices post-dating December 1997 that remain missing from Gillette's production, bearing the following Job Numbers:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 4407 | 4409 | 4418 | 4424 | 4446 | 4448 | 4451 | 4455 | 4459 | 4460 |
| 4468 | 4477 | 4482 | 4492 | 4508 | 4511 | 4516 | 4517 | 4534 | 4537 |
| 4546 | 4556 | 4557 | 4559 | 4562 | 4566 | 4572 | 4577 | 4587 | 4590 |
| 4601 | 4602 | 4613 | 4614 | 4621 | 4626 | 4630 | 4631 | 4639 | 4649 |
| 4675 | 4687 | 4721 | 4839 | 4877 | 4930 | 4938 | 4939 | 4976 | 4984 |
| 5011 | 5012 | 5112 | 5129 | 5224 | 5248 | 5273 | 5282 | 5315 | 5375 |
| 5395 | 5807 | 5830 | 5880 | 5881 | 5898 | 5940 | 5950 | 5954 | 5989 |
| 5998 | 6067 | 6080 | | | | | | | |

      A full production of invoices is required.

      We also note that Gillette's production does not include the reverse side of PIC's invoices, where PIC's terms and conditions are printed. Copies of those reverse sides must also be produced.

David Donahue, Esq.
January 20, 2005
Page 5 of 7

## VI. TRADE SHOW DISPLAYS

PIC's Request No. 5 calls for, among other things, production of all trade show booths – and other documents concerning the same – in which Gillette used PIC's images. Our preliminary review indicates that images from at least the following Jobs were used in trade show booths: Job No. 3819 (invoice date 5/21/96), Job No. 4159 (invoice date 6/10/97) and Job No. 5687 (invoice date 6/22/01). There are undoubtedly others as well. We understand that Gillette attends approximately six (6) major national trade shows per year (for housewares, drug stores, retail chains, etc.), as well as numerous regional trade shows. Many it not all of Gillette's booths for these trade shows over the years have incorporated PIC's images. PIC is entitled to inspect these booths as well as records related to when the booths were displayed. For example, we are aware that Gillette employs a photographer to photograph its trade show booths at every trade show, that Gillette maintains an archive of those photographs, and that Gillette has a trade show group within its organization with responsibility for these items.

The trade show booths, photographs of the booths, and records related to their use and display, must be produced.

## VII. PRODUCT PACKAGING AND POINT-OF-PURCHASE DISPLAYS

Thus far, Gillette has produced only one photocopy of product packaging, namely for a particular Braun/Oral-B electric toothbrush, and has produced no point-of-purchase displays. Because Gillette has used PIC's images in much of its product packaging and point-of-purchase displays, much more should have been produced. Surely those who ordered images from PIC for such uses (again, the list of people that PIC provided in its initial disclosures) would be able to identify the relevant product packaging and point-of-purchase displays so that Gillette can produce it to PIC as required. Gillette's response to PIC's Interrogatory No. 4 stated that, pursuant to Rule 33(d), it would produce the requested items. Your December 1, 2004 letter stated that Gillette was engaged in "ongoing" efforts to locate product packaging. Since then we have heart nothing further from you on this issue. The requested materials must be produced.

## VII. PRIVILEGE LOG

Gillette produced a number of documents in redacted form, and has refused to produce other documents on grounds of privilege, yet no privilege log has been received to date. A privilege log must be provided.

David Donahue, Esq.
January 20, 2005
Page 6 of 7

### VIII. DOCUMENTS PERTAINING TO REPRODUCTION OF PIC'S IMAGES

Gillette conceded in its Answer that it has employed third-party laboratories to duplicate PIC's images. Yet no documents responsive to PIC's Request No. 38, which calls for all documents concerning such duplication, have been produced to date. These documents must be produced.

### IX. GILLETTE'S REVENUE AND PROFIT INFORMATION

PIC requested a statement of Gillette's gross revenues, costs and profits for products that Gillette advertised or marketed using PIC's images, broken down by year and product (Interrogatory No. 24) as well as related information about Gillette's advertising expenditures and the effectiveness of its advertising (Interrogatory Nos. 25-27), and documents reflecting the same (Request Nos. 39-43). Gillette refused to provide this information.

This information is highly relevant to a number of issues in the case, including without limitation PIC's claim to an appropriate percentage of Gillette's profits from the sale of products that Gillette advertised or marketed with infringing images. See, e.g., Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700 (9th Cir. 2004).

The revenue and profit information for Gillette's products must be provided.

### X. CONFIDENTIAL DOCUMENTS AND PROTECTIVE ORDER

In response to several of PIC's discovery requests, Gillette stated that it would require a protective order before revealing its responses (such as the entities to whom it distributed its catalogs, see PIC's Interrogatory No. 3). In later correspondence, you took the position that Gillette no longer requires a protective order. If so, a response to the interrogatories for which Gillette objected based on confidentiality, including No. 3, must now be provided. (In any event, at your request we have today provided a draft protective order for your review.) We continue to await production of this information.

David Donahue, Esq.
January 20, 2005
Page 7 of 7

## XI. CONCLUSION

Please let us know by the noon tomorrow whether you will provide the above-listed discovery by Monday. If not, our motion to compel will be filed tomorrow afternoon.

    Very truly yours,

    WOLF, GREENFIELD & SACKS, P.C.

    Michael N. Rader