UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>      Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>      Defendant. | Civil Action No. 04-10913 WGY |
| THE GILLETTE COMPANY,<br><br>      Counterclaim-Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>      Counterclaim-Defendants. | |

**THE GILLETTE COMPANY'S CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO PHOTOGRAPHIC ILLUSTRATORS CORPORATION'S MOTION TO COMPEL**

                                                FROSS ZELNICK LEHRMAN & ZISSU, P.C.
                                                     Marie V. Driscoll (Admitted *pro hac vice*)
                                                        Patrick T. Perkins (Admitted *pro hac vice)*
                                                        David Donahue (Admitted *pro hac vice)*
                                                886 United Nations Plaza
                                                New York, New York 10017
                                                Ph: (212) 813-5900
                                                Fax: (212) 813-5901

                                                GELB & GELB LLP
                                                        Richard M. Gelb (BBO#188240)
                                                       Robert S. Messinger (BBO#651396)
                                                20 Custom House Street
                                                Boston, MA  02110
                                                Tel: (617) 345-0010
                                                Fax: (617) 345-0009

                                                *Attorneys for Defendant/Counterclaim-Plaintiff*
                                                *The Gillette Company*

Defendant-Counterclaim Plaintiff the Gillette Company ("Gillette" or "Defendant") respectfully submits this corrected memorandum of law in opposition to the Motion to Compel of Plaintiff Photographic Illustrators Corporation ("PIC" or "Plaintiff"), which is substantively identical to Gillette's previous opposition brief but corrects certain typographical errors therein.

## INTRODUCTION

Gillette has met its burden of searching its files for materials responsive to PIC's discovery requests and producing such materials to PIC.  With respect to the few categories Gillette for which has refused to produce documents, its refusal is based on sound principles of law.  PIC's instant motion is nothing more than an attempt to make Gillette appear as uncooperative and to argue the merits of the case in the guise of a discovery motion.

PIC filed its motion—along with a twenty-page brief and hundreds of pages of exhibits—well after the close of business on January 25, 2005.  In the normal course, Gillette would have had fourteen (14) days to respond to the motion; instead, at 11:20 a.m. this morning, the Court ordered Gillette to respond to the motion by 3:00 p.m. this afternoon.  Given the limited time period that Gillette has been provided to respond to PIC's motion, it will not be possible for Gillette to respond to all the misstatements in PIC's motion.  Accordingly, Gillette will address only the broader discovery-related issues raised in the motion and reserves its right to object to PIC's mischaracterizations later in this case.  However, Gillette notes that its use of PIC's photographs is and always has been consistent with the parties' longstanding practices, which were established through a course of dealing lasting over a decade, with PIC's knowledge and consent.  Thus, PIC's claim that Gillette has committed massive copyright infringement is completely without merit.

Gillette also notes that PIC's request for expedited treatment of this motion is premised on a false sense of urgency designed to limit Gillette's ability to defend itself.  Thus, PIC has omitted to disclose to the Court that although Gillette timely served its responses to PIC's first set of discovery requests, PIC waited a month before alerting Gillette that PIC was not satisfied with Gillette's discovery responses.  Gillette then promptly addressed PIC's complaints by letter,

but PIC let several weeks pass by before filing this motion seeking "expedited" treatment. In view of the foregoing, Gillette respectfully submits that PIC's request for expedited treatment should not have been granted, and that the resulting expedited schedule set by the Court is unfair to Gillette. Accordingly, Gillette respectfully requests additional time to supplement its response to PIC's motion to compel.

## ARGUMENT

I. **GILLETTE HAS COMPLIED WITH PIC'S REQUESTS TO PRODUCE CATALOGS, MARKETING MATERIALS, TRADE SHOW MATERIALS, PRODUCT PACKAGING AND POINT-OF-PURCHASE DISPLAYS CONTAINING PHOTOGRAPHS PROVIDED BY PIC**

   A. **Catalogs and Marketing Materials**

Contrary to PIC's suggestion, Gillette does not keep copies of all its marketing materials in the normal course of business. Moreover, to the extent such marketing materials remain in Gillette's files, they are not categorized by which materials contain PIC photographs and which materials contain photographs provided by Gillette itself or by other vendors of photographic services. Finally, due to the nature of the Business Communications marketplace, there has been high turnover at Gillette in the departments that dealt with PIC over the course of the ten-year plus relationship. Accordingly, most of the employees who used PIC's services no longer are employed by Gillette and are not under Gillette's "control" for purposes of searching for and producing responsive materials.

Against this backdrop, Gillette has made a reasonable effort to locate all catalogs, and marketing materials that contain or may contain photographs provided by PIC and, as PIC admits (PIC Mot. at 5), Gillette already has produced a volume of such materials to PIC. Moreover, Gillette has agreed to produce three additional catalogs and a product binder that it located last week after PIC advised Gillette, for the first time, of PIC's claim that PIC photographs appear in these specific materials.

Throughout the course of the parties' relationship, Gillette provided PIC with copies of

2

its marketing materials incorporating photographs provided by PIC so that PIC could see how its photographs were used and so that PIC could show such materials to its prospective clients. Thus, in all likelihood, PIC retains more copies of such materials then Gillette. Thus, if PIC is aware of specific Gillette catalogs and marketing materials that it claims contain PIC images, then PIC long ago should have specified such materials to Gillette so that Gillette could search its files for such materials.

      B.    **Trade Show Materials**

As Gillette repeatedly has told PIC, Gillette has searched its files for trade show materials that contain or may contain photographs provided by PIC, but has located none. PIC's argument that trade show materials are expensive and therefore should be retained and reused does not make it so. That said, Gillette is continuing to search its files for responsive materials and will produce such materials to PIC if they and when they are located.

      C.    **Product Packaging and Point-of-Purchase Displays**

For the most part, Gillette did not, in the normal course of business, use PIC photographs in product packaging and point-of-purchase displays. Moreover, to the extent Gillette did use PIC photographs in such manner, it does not, in the normal course of business, maintain files of such materials categorized by which materials contain PIC photographs and which materials contain photographs provided by Gillette itself or by other vendors of photographic services. Gillette searched its files and produced all product packaging and point-of-purchase materials that its present employees with knowledge of PIC identified as containing or possibly containing PIC photographs and Gillette has produced such materials to PIC.

Again, to the extent PIC is aware of other product packaging and point-of-purchase materials that it claims contain PIC photographs, it should advise Gillette of such specific items and Gillette will produce such materials if it still has them in its files.

**II.**    **DOCUMENTS CONCERNING GILLETTE'S REPRODUCTION OF IMAGES PROVIDED BY PIC**

3

Gillette has conducted a reasonable search of its records for materials responsive to this request and has turned over to PIC whatever responsive materials were be located. PIC argues that because PIC possesses materials—e.g., from Advanced Photographics—that it claims provide evidence Gillette's use of outside services to duplicate photographs, Gillette must have access to such materials as well. This is not the case. Gillette does not keep separate files of invoices for its photographic duplication services vendors organized by which duplicated photographs were provided by PIC and which photographs were not provided by PIC.

### III.    GILLETTE'S INDEXES OF PIC'S IMAGES

PIC's account of Gillette in-house counsels' prior representations to PIC's counsel concerning the indexes is inaccurate and, in any event, is irrelevant on this motion. As Gillette has explained to PIC, there are no non-privileged documents responsive to PIC's request for Gillette's indexes of images provided by PIC. Such indexes, which were compiled by Gillette personnel at the direction of Gillette's in-house counsel after PIC and its counsel contacted Gillette and made Gillette aware of PIC's claims, clearly constitute "attorney work product" and are therefore privileged.

### IV.    PRIVILEGE LOG

Gillette produced a privilege log to PIC on January 26, 2005.[1] Accordingly, this issue is moot.

### V.    ELECTRONIC MAIL AND DOCUMENTS

---

[1] Gillette would have produced the privilege log on January 24, 2005, but delay was caused by Gillette's lead counsel's illness and absence from the office.

4

Gillette informed PIC that Gillette has searched for and produced all emails concerning PIC and photographs provided by PIC that either: (1) already had been printed out; or (2) still were maintained on such employees' computers.

Thus, the only emails Gillette has not produced to PIC are deleted emails that may be retrieved from "back-up" files only at great burden and expense to Gillette. In view of the many court decisions recognizing that cost-shifting from the producing party to the non-producing party is appropriate under such circumstances, *see, e.g., Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 429 (S.D.N.Y. 2002); *see also Cognex Corp. v. Electro Scientific Indust., Inc.*, 2002 WL 32309413 (D. Mass. 2002), Gillette invited PIC to propose a mechanism for obtaining such materials. PIC ignored Gillette's request and filed this motion instead.

## VI. ELECTRONIC COPIES OF GILLETTE'S WEBSITE

Gillette advised PIC that it does not keep any prior electronic version of its web sites. Gillette has also confirmed that the entity that operates Gillette's web sites also does not keep any such materials.

Gillette's current website is publicly available for PIC's review. Nevertheless, Gillette is working with its IT department to determine whether an electronic copy may be obtained. If so, Gillette will produce it to PIC.

## VII. PIC'S INVOICES

Gillette advised PIC that its accounting department has produced all of the invoices in its files. Copyright claims are subject to a three-year statute of limitations and breach of contract claims are subject to a six-year statute of limitations. Accordingly, Gillette objected to production of invoices prior to December 1997 since any claim thereon is barred by the statute of

5

limitations. Nevertheless, Gillette is searching its records to determine whether it even has invoices going back that far and whether the invoices kept by the accounting department include PIC's purported terms on the reverse side. If such documents reasonably can be located, Gillette will produce them.

## VI.     REVENUE AND PROFIT INFORMATION

PIC requested Gillette to produce a "statement of [its] gross revenues, costs and profits for products that Gillette advertised or marketed using PIC's images, broken down by year and product . . . as well as information about Gillette's advertising expenditures and the effectiveness of its advertising . . . ." Gillette informed PIC that it does not keep records in the manner PIC requested. Moreover, the burden on Gillette to create the kind of "statement" PIC is requesting is disproportional to what is at issue in the case.

PIC relies on *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708(9th Cir. 2004), for the proposition that it is entitled to Gillette's "indirect profits" which are "attributable" to its alleged infringement. But in that case, the Ninth Circuit made clear that, "[u]nder § 504(b) … recoverable profits must be 'attributable to the infringement.' From the statutory language, it is apparent that a causal link between the infringement and the monetary remedy sought is a predicate to recovery of both actual damages and profits. We take this opportunity to reaffirm the principle that a plaintiff in a § 504(b) action must establish this causal connection, and that this requirement is akin to tort principles of causation and damages." *See also* 4 M. Nimmer and D. Nimmer, *Nimmer on Copyright*, § 14.03 at 14-34 (2003) ("When an infringer's profits are only remotely and speculatively attributable to the infringement, courts will deny recovery to the copyright owner."); *Mackie v. Rieser*, 296 F.3d 909, 916 (9th Cir. 2002) (indirect profit recovery rejected as too speculative); *Rainey v. Wayne State Univ.*, 26 F. Supp. 2d 963, 972 (E.D. Mich

1998) (same); *Sunset Lamp Corp. v. Alsy Corp.*, 749 F. Supp. 520, 525 (S.D.N.Y. 1990) (copyright plaintiff should be prevented from "achieving a windfall").

As a matter of law, there is no possibility of PIC showing a causal connection between the use of its photographs and any sales of Gillette product.

## CONCLUSION

For the foregoing reasons, PIC's motion should be denied in its entirety or, in the alternative, the Court should give Gillette a reasonable amount of time to respond in depth to PIC's accusations.

Dated: January 27, 2005                                  FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By:  /s/David Donahue/
     Marie V. Driscoll (Admitted *pro hac vice*)
     Patrick T. Perkins (Admitted *pro hac vice*)
     David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP

By:   /s/Richard M. Gelb/
      Richard M. Gelb (BBO#188240)
      rgelb@gelbgelb.com
      Robert S. Messinger (BBO# 651396)
      rmessinger@gelbgelb.com

20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

*Attorneys for Defendant/Counterclaim-Plaintiff
The Gillette Company*

I:\ddonahue\GLTC\COURT DOCS\050127-0420298-REVISED Opp. PIC Mot. to Compel-dd.doc