IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY,<br><br>    Defendant. | Civil Action No. 04-CV-10913-WGY |

### OPPOSITION TO DEFENDANT'S MOTION TO QUASH SUBPOENA

Plaintiff Photographic Illustrators Corporation ("PIC") opposes Defendant The Gillette Company's ("Gillette") motion to quash the subpoena *duces tecum* served by PIC on The Procter & Gamble Company ("P&G").

PIC's subpoena to P&G seeks highly relevant material concerning Gillette's infringement of PIC's copyrights. P&G has already acknowledged to PIC, after reviewing the subpoena, that it possesses responsive material. There is no basis for Gillette's motion to quash.

### BACKGROUND

After wrongfully retaining thousands of PIC's original images in breach of its contracts with PIC, Gillette misused those images in a number of ways. Among other wrongful acts, Gillette infringed PIC's copyrights by using PIC's images outside the scope of any license (i.e., one year) that it purchased. Gillette admits that such infringements continued even after the filing of this suit. (Am. Answer ¶¶ 21-22). Gillette also unlawfully disseminated PIC's images to third parties such as its resellers, inducing those third parties to commit wholesale copyright infringement by using PIC's images in their own marketing and advertising materials.

Gillette purchased, at most, one-year licenses to use PIC's photographs. All of those licenses have now expired, such that any further use by Gillette (or its resellers) of PIC's photographs constitutes copyright infringement. Although PIC did do four jobs for Gillette within the last year (in Spring 2004), Gillette admittedly refused to pay PIC for that work. (Am. Answer ¶ 43). Accordingly, Gillette acquired *no* licenses to the images provided in those jobs.

In short, although Gillette purchased **limited licenses** to use PIC's images (for one year in the United States only), Gillette systematically treated PIC's images as if they were Gillette's own, refusing to return them as required by the parties' contracts, using them far beyond the geographic and temporal scope of any licenses that it bought, and even sending them around the country and the world to third parties for their use.

In response to PIC's subpoena, P&G has identified what appears to be yet another infringing use by Gillette of PIC's images – this time in advertising itself for sale to P&G. The document is responsive and highly relevant, and the subpoena plainly should not be quashed.

## THE SUBPOENA

PIC's subpoena to P&G is narrowly targeted to just four categories of highly relevant documents, including (a) disclosures made by Gillette to P&G about this litigation; and (b) photographs of Gillette products that P&G has in its possession. See Category Nos. 1, 3 (quoted in Gillette Br. at 2).

Following service of the subpoena, P&G's counsel promptly contacted PIC's counsel and acknowledged that P&G *does* have relevant, responsive material – namely, a presentation made by Gillette to P&G that includes photographs of several Gillette products. See Declaration of Michael N. Rader ("Rader Decl.") ¶ 5. This presentation is not only called for in PIC's subpoena; it goes to the heart of PIC's claim that Gillette infringed PIC's copyrights by using PIC's photographs outside the scope of any license that Gillette purchased.

- 2 -

P&G cannot tell whether the photographs in Gillette's presentation were taken by PIC. Notably, neither can Gillette, which – despite having contractually undertaken not to use PIC's photographs for more than a limited time and purpose – ***admits*** that it "does not, in the normal course of business, maintain files … categorized by which materials contain PIC photographs and which materials contain photographs provided by … other vendors." (Docket #34 at 3).

The only way for PIC to determine whether Gillette infringed PIC's copyrights in its presentation to P&G is for PIC to review, as Paragraph 3 of the subpoena requests, an "original or color copy of" the presentation "concerning or containing Photographs of Gillette products." The document is highly relevant and, in any event, "it practically goes without saying that [Gillette] ought not be empowered to decide what may or may not be relevant for [PIC's] purposes." Atchison Casting Corp. v. Marsh, Inc., 216 F.R.D. 225, 227 (D. Mass. 2003).

**ARGUMENT**

Gillette's core contention, that there are no documents responsive to PIC's subpoena, is simply wrong. P&G acknowledges having at least one responsive document.

Gillette's related contention, that any responsive document could just as easily be obtained from Gillette instead of P&G, is disingenuous and reinforces the importance of third-party discovery in this case.[1] Although the potentially-infringing presentation was prepared and delivered by Gillette during a presumably recent meeting, and is plainly called for in PIC's discovery requests to Gillette, ***Gillette never produced this presentation to PIC as required***.[2]

---

[1] PIC's subpoenas to other third parties have already resulted in numerous responses. Consistent with their obligations under the subpoenas, these third parties are gathering what in many cases amount to large numbers of responsive documents. (Rader Decl. ¶ 12). PIC expects to receive significant evidence of Gillette's infringement via this legitimate third-party discovery. Indeed, as detailed in PIC's Motion to Compel, PIC's images even appear on the web sites of many of Gillette's resellers; PIC is certainly entitled to discover the full scope of third-party uses that Gillette induced. Any motion to quash PIC's third-party subpoenas (Gillette Br. at 2 n.1) would be frivolous, and PIC reserves its right to seek sanctions for the filing of such a motion.

[2] (Rader Decl. ¶ 6). Presumably, Gillette will do so by February 11, 2005, the deadline imposed by the Court for compliance with PIC's discovery requests in its February 1, 2005 Order on PIC's Motion to Compel.

In short, this motion is a continuation of Gillette's attempt to frustrate legitimate discovery by PIC at every turn. See Docket Nos. 32-33 (PIC's Motion to Compel). First Gillette refused to produce responsive material from its own files, and now it seeks to prevent PIC from obtaining responsive material from third parties – including material that Gillette should have produced from its own files in the first instance.[3]

Gillette's remaining argument, a bald assertion that the subpoena is intended to "harass" P&G, is wholly unsupported and untrue. (Rader Decl. ¶ 10). It is also insufficient as a matter of law. E.g., Klesh & Co., Ltd. v. Liberty Media Corp., 217 F.R.D. 517, 523 (D. Colo. 2003) (denying motion to quash third-party subpoena where "Plaintiff offer[ed] nothing more than a bald assertion that the subpoena will 'harass'"); Grinnell Corp. v. Hackett, 70 F.R.D. 326, 333-34 (D.R.I. 1976) ("A showing that the likelihood of harassment is 'more probable than not' is … insufficient without a concomitant showing that the information sought was 'fully irrelevant and could have no possible bearing on the issues.'"), quoting Wright and Miller § 2037.

A brief description of the facts of the case cited by Gillette for its "harassment" proposition is telling. In Bogosian v. Woloohojian Realty Corp., 323 F.3d 55 (1st Cir. 2003), the plaintiff appealed the district court's allowance of a motion to quash a subpoena on *opposing counsel*, which is, itself "generally disfavored." Id. at 66. Among other factors, the First Circuit noted that the subpoena was served *the day before trial*, "without the slightest attempt to explain why [plaintiff] had failed to depose opposing counsel during the preceding ten-year period of ongoing discovery." Id. at 67.

---

[3] Indeed, just because a document is available from the defendant's files does not mean that the same document cannot be discovered from a third party. That is particularly true in this case, where the completeness of Gillette's production is in serious question. For example, Gillette has produced a paltry portion – just a few hundred – of the *thousands* of images that should have been in its files. Gillette even claims that it does not have access to *its own product catalogs*, and has produced just a handful of catalogs out of dozens that should have been produced.

By contrast, PIC has served four highly specific discovery requests on a third party that has already *acknowledged* having relevant and discoverable information.

## CONCLUSION

For the above reasons, Gillette's motion to quash should be denied.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS CORPORATION,

By its counsel,

Dated: February 7, 2005

/s/ Michael N. Rader
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO # 646990
mrader@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000