UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>      Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>      Defendant. | Civil Action No. 04-10913 WGY |
| THE GILLETTE COMPANY,<br><br>      Counterclaim-Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>      Counterclaim-Defendants. | |

**THE GILLETTE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PHOTOGRAPHIC ILLUSTRATORS CORPORATION'S MOTION FOR RECONSIDERATION OF THE COURT'S FEBRUARY 1, 2005 ORDER**

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP
    Richard M. Gelb (BBO#188240)
    Robert S. Messinger (BBO#651396)
20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

*Attorneys for Defendant/Counterclaim-Plaintiff The Gillette Company*

In its pending Motion for Reconsideration (which plaintiff Photographic Illustrators Corporation "PIC" has styled a "Motion for Clarification"), PIC incorrectly states that the Court Order "did not address" in its February 1, 2005 Order PIC's motion to compel Gillette's production of a statement of "gross revenue, cost and profits for *every product that Gillette advertised or marketed with images provided by PIC*" and all documents relating to the "effectiveness of Gillette's advertising, trade shows, point of sale displays or product packaging." (PIC Mot. at 1.) In fact, the opposite is true. At pages 19-20 of its first expedited motion to compel ("Motion to Compel"), PIC expressly requested that the Court compel Gillette's production as to Interrogatories 24-27 and Document Requests Nos. 39-43, which sought the very information and documents PIC seeks in this motion. PIC entitled the section of the brief "Revenue and Profit Information."

The Court's Order of February 1, 2005 was crystal clear. Gillette's objections as to Document Requests 2, 5, and 14 were overruled and Gillette was ordered to produce all documents responsive to such requests, as well as all documents Gillette had previously agreed to produce, no later than February 11, 2005. The Court went on to hold "Motion otherwise denied." There is no ambiguity to the Court's Order. PIC's motion to compel the information it now seeks by this Motion for Reconsideration was unequivocally denied.

I.   **PIC'S MOTION FOR RECONSIDERATION SHOULD BE DENIED**

`    A.   **Standard On A Motion For Reconsideration**

"[A] court should grant a motion for reconsideration of an interlocutory order only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Davis v. Lehane,* 89 F. Supp. 2d 142, 147 (D. Mass. 2000) (Young, *Chief J.*) (citations omitted).

PIC's present motion does not argue a change in the law, nor does it claim discovery of new evidence not previously available. It appears that PIC's sole basis for the motion is its belief that the Court made a "clear error of law" in denying PIC's motion to compel. In comparing

1

PIC's present motion to its prior motion to compel, it is clear the substance of both briefs is virtually the same. However, such "re-hashing" is not appropriate on a motion such as this. *Id.* at 147-148 (citing *In re Wedgestone Fin.,* 142 B.R. 7, 8 (Bankr. D. Mass. 1992) ("A motion for reconsideration is not a means by which parties can rehash previously made arguments.")); *see also Froudi v. United States,* 22 Cl.Ct. 290, 300 (1991) ("Generally, a motion for reconsideration is not a vehicle for giving an unhappy litigant an additional chance to sway the judge, nor is it intended to allow a party to make arguments already presented to, and rejected by, the court."); *Renfro v. City of Emporia,* 732 F.Supp. 1116, 1117 (D. Kan. 1990) ("A party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend."), *aff'd,* 948 F.2d 1529 (10th Cir. 1991), *cert. dismissed,* 503 U.S. 915 (1992).

In the present motion, PIC has sought to "improve" its prior presentation on the subject by adding additional case and treatise citations. However, this is not appropriate either. As this Court previously held

> "The motion for reconsideration is not an opportunity for a party to improve upon his arguments or try out new arguments; nor is it properly a forum for a party to vent his dissatisfaction with the Court's reasoning." Rather, in order for a court to reconsider, "there must be a reason why the court should reconsider [a] prior decision, and [the movant] must set forth facts or law of a strongly convincing nature to induce the court to reverse [the] prior decision."

*Davis*, 89 F. Supp. 2d at 149 (citations omitted).

    **B.**     **There Is No Justification For Requiring Gillette To Produce All Of Its Revenue And Marketing Information In This Case.**

PIC seeks a statement of gross revenues, costs and products by year *for every product that Gillette has advertised or marketed using PIC's images*, as well as information concerning Gillette's advertising expenditures and the effectiveness of its advertising. This request, unlimited in time and product, is not likely to lead to the discovery of admissible evidence and simply cannot be justified when balanced against what is at stake in the litigation.

PIC relies on *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) for the proposition that it is entitled to Gillette's "indirect profits" which are "attributable" to its alleged infringement. But in that case, the Ninth Circuit made clear that

> [u]nder § 504(b) … recoverable profits must be 'attributable to the infringement.' From the statutory language, it is apparent that a causal link between the infringement and the monetary remedy sought is a predicate to recovery of both actual damages and profits. We take this opportunity to reaffirm the principle that a plaintiff in a § 504(b) action must establish this causal connection, and that this requirement is akin to tort principles of causation and damages."

*Id*. at 708; s*ee also* 4 M. Nimmer and D. Nimmer, *Nimmer on Copyright*, § 14.03 at 14-34 (2003) ("When an infringer's profits are only remotely and speculatively attributable to the infringement, courts will deny recovery to the copyright owner."); *Mackie v. Rieser*, 296 F.3d 909, 916 (9th Cir. 2002) (indirect profit recovery rejected as too speculative); *Rainey v. Wayne State Univ.*, 26 F. Supp. 2d 963, 972 (E.D. Mich 1998) (same); *Sunset Lamp Corp. v. Alsy Corp.*, 749 F. Supp. 520, 525 (S.D.N.Y. 1990) (copyright plaintiff should be prevented from "achieving a windfall").

The decision of the U.S. Court of Appeals for the Second Circuit in *On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001) further demonstrates the speculative nature of what PIC seeks. In that case, the Second Circuit held that the statutory term "infringer's gross revenue" should not be construed so broadly as to include revenue from lines of business that were unrelated to the act of infringement. The U.S. Court of Appeals for the Fourth Circuit made a similar ruling in *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 -526 (4th Cir. 2003). In that case, the plaintiff was the designer of the Baltimore Ravens' logo and was seeking to obtain profits for every income stream related to the Baltimore Ravens. In affirming the district court's motion for summary judgment on the plaintiff's speculative theory, the Fourth Circuit held that "no reasonable trier of fact could find that the sale of a ticket, or of a sponsorship, or of broadcast rights was in any way a consequence of the team's adoption of one

3

logo design rather than another.  Similarly, it defies credulity that a consumer would purchase NFL trading cards in order to catch a glimpse of the Flying B logo on a featured player's helmet; or video games, so as to see the logo on the simulated Ravens players; or a game program, simply because its artwork incorporated the Flying B." *Id.* at 525 n.10.

Attempts to compel broad requests for profits information such as those propounded by PIC have been denied in other districts.  For example, in *Compaq Computer Corp. v. Ergonome Inc.*, 2001 WL 34104827, Civ. A. H-97-1026 (S.D. Tex. June 27, 2001), the court denied the copyright owner's motion to compel profits information accepting the alleged infringer's argument "that [profit] information is irrelevant because its revenues with respect to its sales of computers are unrelated to its bundling of the allegedly [infringing work]." *Id.* at * 2.  Similarly, in *Mager v. Brand New School*, 2004 WL 2413978, 03 Civ. 8552 (S.D.N.Y. October 28, 2004), the Court denied the copyright owner's motion to compel general profits information.  *Id.* at *6. In its opinion granting summary judgment to the defendants, the district court held that because plaintiff failed to show a "causal link" between the defendants' infringement and defendants' revenues, he was not eligible for defendants' profits.  *Id*. at *4.

The same reasoning applies here.  In its two attempts to obtain discovery of Gillette's profits, PIC has provided no showing of any causal connection between photographs provided by PIC and sales of Gillette products.  PIC's speculative and unsupported theory cannot be the basis for requiring Gillette to undertake the burdensome process of charting its profits for all products for an unlimited amount of time.

PIC asks the Court to ignore common sense and, based upon nothing but PIC's fantasies, to order Gillette to provide sales and profit information for virtually its entire product line without any limitation in time.  Just as it would "defy credulity" that consumers would purchase football tickets or trading cards based upon the inclusion of one logo over another on a football helmet, *Bouchat*, 346 F.3d at 525 -526, it would also defy credulity that consumers purchased Gillette products because of a photograph of that product either in a catalog that does not go to consumers or a photograph buried on a web site.

4

Making PIC's request even more unreasonable is the fact that throughout this litigation PIC has refused to come forward with the details of the alleged copyright infringements. In response to Gillette's motion to dismiss, on September 23, 2004, the Court ordered PIC to articulate the basis of its copyright infringement claims in its initial disclosures made pursuant to Rule 26 (a) (1) (the "Initial Disclosures"). In its Initial Disclosures, PIC identified 11 photographs it claims Gillette used in violation of the purported license terms. (Ex. A at 5-6.) The Initial Disclosures did not include the "Job Numbers" associated with such photographs, nor did it identify the purported license Gillette was alleged to have violated in using such photographs. Moreover, PIC alleges copyright infringement in connection with a Spanish-language catalog which PIC claims was circulated in South America. However, the Initial Disclosures do not identify the date of the catalog or the basis for the allegation that it was circulated in South America.

In its First Set of Interrogatories, Gillette once again sought the basis for PIC's claims for copyright infringement. Gillette's Interrogatory No. 1 required PIC to "state the basis" for each alleged copyright infringement and to provide specific information regarding each alleged infringement, including the date the photograph was provided to Gillette by PIC, the particular infringing act(s), the date of such alleged infringement, the job number associated with each allegedly infringing photo, the copyright registration that covers each photo, and the date PIC first learned of the alleged infringement. (Ex. B at 3-4.) However, in its November 29, 2004 response to Gillette's Interrogatory No. 1, PIC once again identified the same 11 photos as those listed in its Initial Disclosures but identified none of the supporting facts it was required to identify in response to the Interrogatory. (*Id.* at 4-7.)

In its Motion to Compel dated January 25, 2005, PIC for the first time claimed infringement of a photograph of a dollop of shave cream on two product canisters[1], infringement

---

[1] In its brief, PIC boldly claims that the "two shaving cream cans feature images of dollops of shaving cream *created by PIC*." (Motion to Compel at 8.) However, in his declaration, PIC's principal Paul Picone is much less certain, willing only to say under oath that the image "appear" to be PIC's. (Picone Decl. ¶ 8.)

5

of some unidentified copyright right in the packaging for the MACH 3 razor, an unidentified infringement on a point-of-purchase display at Costco, and alleged images provided by PIC on the web sites of Wal-Mart and Bed, Bath & Beyond.  (Motion to Compel at 8-11.)

Thus, even taking as true PIC's sworn and unsworn statements (which, to date, PIC has refused to substantiate), PIC has identified only 16 alleged copyright infringements.  Given the fact that over their almost 15-year relationship PIC provided thousands of images to Gillette, the allegation of infringement is *de minimis.*  There is simply no evidence of widespread infringement as alleged by PIC.

Even if there were some legal basis for forcing Gillette to undertake the massive project of creating a document to show profits for the 16 alleged infringements, and as discussed in Section I.A. above there is not, PIC has failed to explain why Gillette should be required to do so ***for every product for an unlimited time period***, even for those products where there is no allegation of any infringement. Again, as far as Gillette can tell, PIC has only itself identified 16 instances of alleged infringement.  Surely such a *de minimis* allegation is disproportional to the overwhelming burden PIC's request would place on Gillette.

6

## CONCLUSION

For the foregoing reasons, PIC's motion should be denied in its entirety or, in the alternative, the Court should give Gillette a reasonable amount of time to respond in depth to PIC's accusations.

Dated:  February 8, 2005                                          FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: /s/Patrick T. Perkins/
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP

By: /s/Richard M. Gelb/
    Richard M. Gelb (BBO#188240)
    rgelb@gelbgelb.com
    Robert S. Messinger (BBO# 651396)
    rmessinger@gelbgelb.com

20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

*Attorneys for Defendant/Counterclaim-Plaintiff
The Gillette Company*

I:\PPERKINS\GLTC\General\Opp. PIC Mot. For Reconsideration.doc