UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>        Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br><br>        Defendant. | Civil Action No. 04-10913 WGY<br><br><br>**DECLARATION OF PATRICK T. PERKINS IN OPPOSITION TO PIC'S MOTION FOR RECONSIDERATION** |

Patrick T. Perkins hereby declares:

      1.      I am a member of the Bar of the State of New York and a shareholder of the law firm of Fross Zelnick Lehrman & Zissu, P.C. I have been admitted *pro hac vice* to act before this Court as counsel for Defendant The Gillette Company ("Gillette") in this action. I submit this declaration in opposition to plaintiff's Motion for Reconsideration of the Court's February 1, 2005 Order.

      2.      Attached as Exhibit A hereto is a copy of Plaintiff's Rule 26(a)(1) Disclosures.

      3.      Attached as Exhibit B hereto is a copy of a Plaintiff's Responses to Gillette's First Set of Interrogatories.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York this 8th day of February, 2005.

                                    /s/ Patrick T. Perkins
                                       Patrick T. Perkins

# EXHIBIT A

RECEIVED

OCT 0 4 2004

GELB & GELB

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

      Plaintiff,

v.

THE GILLETTE COMPANY,

      Defendant.

Civil Action No. 04-CV-10913-WGY

## PLAINTIFF'S RULE 26(a)(1) DISCLOSURES

Plaintiff Photographic Illustrators Corporation ("PIC"), makes the following initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and D. Mass. Local Rule 26.2. Given the early stage of the case and the fact that discovery has not yet begun, PIC reserves the right to supplement this disclosure as needed to identify additional witnesses, documents and things.

### A. Individuals Likely To Have Discoverable Information

Each of the individuals listed herein is believed to have discoverable information related to Gillette's misuse and unauthorized duplication of PIC's images, as well as Gillette's refusal to return those images to PIC as required by the parties' contracts. The current and former Gillette employees, as well as Mr. Picone, are believed to have discoverable information related to the formation of the parties' contracts. At least Mr. Picone and Beth Cooper are believed to have discoverable information related to Gillette's false implication that it would pay for the "emergency projects" it induced PIC to handle in Spring 2004.

Other individuals with discoverable information on these and other relevant topics will be identified during discovery.

Paul Picone
Photographic Illustrators Corp.

## Individuals believed to be current employees of Gillette:

- Linda Mallet

- Karen Mullen

- Michele Sager

- Joyce Lorden

- Beth Cooper

- Brenda Tattan

- Jill Josephson

- Nancy Daly

- Pamela _____ (last name unknown, but her extension at Gillette is 617-463-4075)

## Individuals believed to be former employees of Gillette:

- Nadine Romano, former Manager of Business Communications

- Trish Moriarty

- Barbara Mackin

- Anna Madden (Note: Ms. Madden was the Gillette requisitioning agent who made the fraudulent representation to Mr. Picone that is referred to in Paragraphs 27 and 60 of PIC's Second Amended Complaint. Based on PIC's investigation to date – and without discovery from Gillette on the matter – the conversation is believed to have occurred in approximately March 2001.)

- Gary Gibson

## Other individuals:

Rose Rupenian
Advanced Photographics, Inc.
28 Cherry Hill Drive
Danvers, MA 01923
(978) 777-7776

-2-

Leslie Van Arken (current address unknown but believed to be known to Gillette)

An appropriate Rule 30(b)(6) witness from Gillette knowledgeable about Gillette's representations to PIC regarding its investigations and/or other matters referenced in the Second Amended Complaint.

**B.    Document And Things That May Be Used to Support PIC's Claims Or Defenses**

The following documents and things in PIC's possession, custody or control may be used

to support its claims and defenses:

- Job files for the jobs numbers listed in PIC's Second Amended Complaint (including materials such as invoices, contracts, correspondence and photographic materials).
- Photographic materials belonging to PIC that are known to have been duplicated by Gillette through one or more third-party laboratories without authorization from PIC.
- Printouts from web sites owned and/or operated by Gillette.
- Gillette marketing and promotional materials reflecting unauthorized use of PIC's images such as product catalogs and novelty items.
- A box of images returned by Gillette to PIC and a third-party affidavit regarding the contents of that box.
- Correspondence between PIC and Gillette.

**C.    Computation Of Damages**

PIC seeks to recover the damages set forth in its Second Amended Complaint, including,

without limitation the following categories of damages.  PIC notes that discovery has not yet

begun in this case, and the figures provided here may increase as relevant information is obtained

from Gillette bearing on damages issues.

- Pursuant to the contracts between PIC and Gillette, liquidated damages of $1,500

for the photographic materials that Gillette failed to return to PIC as and when required.  Because

Gillette has failed to return at least 7,000 original images, such liquidated damages total at least

$10,500,000.

- Damages for Gillette's unauthorized use of PIC's images beyond the scope of the licenses provided to Gillette in the parties' contracts. An appropriate measure of damages for this unauthorized use would be the amount that PIC would have charged Gillette for a perpetual, worldwide license to use its images across the Gillette organization. PIC's standard practice is to charge an additional 300% of fees for such a license. Because PIC's total fee billings to Gillette total slightly over $1,000,000, PIC's copyright damages total at least $3,000,000.

- Damages for Gillette's failure to include a proper copyright notice on its uses of PIC's images as required by the parties' contracts. Damages for this failure will be quantified by the jury at trial, and will include at least the following elements: (1) lost client work that PIC would have obtained from referrals based on the inclusion of the required copyright notices; and (2) lost revenues associated with unauthorized copying of PIC's images by others that would have respected PIC's copyrights and paid for licenses had the required copyright notices been included.

- Damages resulting from Gillette's unauthorized duplication of PIC's images. The full extent of Gillette's unauthorized duplication will become known during discovery. At this time, PIC estimates that Gillette ordered at least 10,000 unauthorized duplicates. At PIC's standard rate of approximately $60 per duplicate, this comprises at least $600,000 in damages from lost duplication revenue.

- Damages resulting from Gillette's failure to pay outstanding invoices, including the "emergency" photography project Gillette requested of PIC in approximately February 2004. These damages total over $70,000.

- Treble damages under Mass. Gen. L. ch. 93A.

- 4 -

- Damages for multiple counts of fraud, in an amount to be determined by the jury at trial.

- Interest on the above as provided by law.

- Attorneys fees and costs pursuant to the contracts, Chapter 93A, or otherwise.

**D.**    **Insurance Agreements**

Not applicable.

**E.**    **Other**

The following is a statement, to the extent now know, of known examples of Gillette's misuse of PIC's images. Discovery in this case has not begun, and much of the information on this subject is in Gillette's control; Gillette will be required to provide that information to PIC during discovery. PIC reserves the right to supplement these disclosures as the case progresses.

PIC's photograph of the Braun Multiquick Handblender, Copyright Registration No. VA 1-225-338, transmitted to Gillette in or about March 2001, was still posted on Gillette's <theessentials.com> web site (without a proper copyright notice) as of the filing of PIC's First Amended Complaint on June 30, 2004.

PIC's Photograph of the Braun Deluxe Juice Extractor, Copyright Registration No. VA 1-225-240, transmitted to Gillette in or about March 2001, was still posted on Gillette's <theessentials.com> web site as of the filing of PIC's First Amended Complaint on June 30, 2004.

PIC has identified additional infringing material on at least the following pages of Gillette's web site(s):

http://www.gillette.com/household/digital_library/iron.htm
http://www.gillette.com/household/digital_library/blenders.htm
http://www.gillette.com/men/digital_library/flexintegral.htm
http://www.gillette.com/products/appliances.asp

- 5 -

http://www.theessentials.com/store/prodinfo.asp?number=5064&variation=&aitem=5&mitem=9&bc=6_4_1
http://www.theessentials.com/store/prodinfo.asp?number=5033&variation=&aitem=6&mitem=9&bc=6_4_1
http://www.theessentials.com/store/prodinfo.asp?number=5057&variation=&aitem=7&mitem=11&bc=6_8_1
http://www.theessentials.com/store/prodinfo.asp?number=5020&variation=&aitem=10&mitem=11&bc=6_8_1

Gillette has also used at least one of PIC's copyrighted Photographs, Copyright

Registration No. VA 1-225-339, in a Spanish-language catalog circulated in South America. The

Photograph, which features a kitchen scene, was taken in the kitchen of PIC's President, Mr.

Paul Picone. Mr. Picone's kitchen is clearly recognizable in the Photograph.

<p style="margin-left:40%">Respectfully submitted,</p>

<p style="margin-left:40%">PHOTOGRAPHIC ILLUSTRATORS<br>CORPORATION,</p>

<p style="margin-left:40%">By its counsel,</p>

Dated: October 4, 2004

Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO # 646990
mrader@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
Tel: (617) 646-8000

- 6 -

## CERTIFICATE OF SERVICE

I certify that on October 4, 2004 a copy of PIC's Rule 26 (a)(1) Disclosures was served upon the following counsel of record by hand:

Richard Gelb, Esq.
20 Custom House St.
Boston, MA 02110

A courtesy copy was also e-mailed to Gillette's attorney, Patrick Perkins of Fross Zelnick Lehrman and Zissu on October 4, 2004.

Michael N. Rader

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

      Plaintiff,

v.

THE GILLETTE COMPANY,

      Defendant.

Civil Action No. 04-CV-10913-WGY

## PLAINTIFF'S RESPONSES TO GILLETTE'S FIRST SET OF INTERROGATORIES

Plaintiff Photographic Illustrators Corporation ("PIC") responds to Gillette's First Set of Interrogatories as follows.

PIC's investigations are ongoing and its responses are based on present knowledge and belief. PIC reserves the right to modify or supplement its responses if additional or different information is discovered at a later time.

PIC's responses are not to be construed as a waiver of any right or objection, or as an admission of relevance, materiality, or admissibility of any information or document provided.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

PIC objects to Gillette's definition of "you," "PIC" and "Picone" in Paragraph B to the extent it includes entities not under PIC's control.

PIC objects to Gillette's definition of the term "identify" in Paragraph D to the extent it exceeds the scope provided for that term in D. Mass. Local Rule 26.5(c).

PIC objects to Gillette's request in Paragraph K to the extent it exceeds the requirements of Fed. R. Civ. P. 26(b)(5).

PIC objects to Gillette's request in Paragraph M that PIC provide information to "Opposer," a party that is not identified.

## GENERAL OBJECTIONS TO INTERROGATORIES

PIC objects to Gillette's interrogatories to the extent they:

1.      Are directed to matters which are not relevant to the subject matter at issue in this action and are not reasonably calculated to lead to the discovery of relevant evidence;

2.      Seek information and/or identification of documents that are subject to the attorney-client privilege, constitute work product, or are otherwise immune from discovery (if and to the extent that any documents or information are identified, disclosed, or produced which are so privileged or immune, said identification, disclosure, or production is inadvertent, and is made without waiver of or intent to waive any privilege or immunity, and the return and non-use of said materials is requested);

3.      Seek information and/or identification of documents already known to Gillette, in Gillette's possession, or available from public sources;

4.      Seek information not within PIC's possession, custody or control, or that is not located after a reasonable search (an agreement to produce documents or things is not a representation that such documents or things exist or are within PIC's possession, custody, or control, but rather only that they will be produced if and to the extent they exist, are within PIC's possession, custody, or control, and are located after a reasonable search);

5.      Are overly broad, unduly burdensome and/or oppressive;

6.      Are vague and ambiguous;

7.      Are premature;

8.     Call for information that PIC requires a reasonable opportunity to discover and analyze before providing a complete response;

9.     Call for identification of documents not in existence at the time the suit was initiated or not in PIC's possession, custody or control as of the time the suit was initiated;

10.     Call for identification, in addition to production, of particular documents (pursuant to Fed. R. Civ. P. 33(d) PIC may respond by producing such documents); and/pr

11.     Seek confidential information and/or documents prior to entry of a suitable protective order.

All of the above objections are hereby incorporated into each response below as though fully set forth therein. Subject to the above objections as well as those additional objections noted below, and without waiver of its objections, PIC responds as follows:

**Interrogatory No. 1**

State the basis of any alleged copyright infringement by Gillette of any photo owned by you. To the extent not encompassed within the scope of L.R. 26.5 (a)(c)(8), your answer should also include:

    a.     the content of such photo;

    b.     the date such photo was provided to Gillette;

    c.     the particular infringing act or acts alleged;

    d.     the date of such alleged infringing acts;

    e.     the job number assigned to each photo by you;

    f.     the particular invoice associated with such photo;

    g.     any consideration, including, without limitation, the amount of money received by you from Gillette for its use of the photo.

    h.     the copyright registration number that covers such photo.

    i.     The date you first learned of such infringing act.

**Response**

PIC objects to this interrogatory to the extent it purports to exceed the scope of the definition provided for the phrase "state the basis" in D. Mass. Local Rule 26.5.

PIC objects to this interrogatory as calling for information within Gillette's control that Gillette has not yet provided to PIC as required. For example, Gillette has refused to return PIC's copyrighted images as required by the parties' contracts, and Gillette also has not yet provided PIC with required discovery into Gillette's copyright infringements, many of which are currently unknown to PIC. Indeed, Gillette has communicated to PIC that it is still searching for its own catalogs, which are known by PIC to contain infringements of PIC's copyrights. PIC also has not yet been given an opportunity to inspect other of Gillette's materials that will reveal copyright infringements by Gillette, including but not limited to electronic copies of Gillette's web sites, Gillette's trade show displays, its point of purchase displays, and its product packaging. PIC also has not yet been provided with a list of the entities to whom Gillette distributed PIC's copyrighted images. Thus, it is impossible for PIC to respond fully to this interrogatory without receiving the discovery requested from Gillette. PIC also notes that its discovery requests were served on Gillette earlier in time, such that it is entitled to review Gillette's responsive materials in preparing its own responses to Gillette's discovery requests.

For the same reasons, PIC objects to this interrogatory as premature.

Subject to the foregoing general and specific objections, PIC states as follows:

PIC will produce, pursuant to Fed. R. Civ. P. 33(d), available, non-privileged documents reflecting requested information. The interrogatory also requests information that can be discerned from documents that Gillette has in its own possession and must produce to PIC during discovery.

- 4 -

As an example of the information to be provided in response to this interrogatory pursuant to Rule 33(d), PIC's files include individual job folders for each of the over 500 jobs (or projects) that PIC executed for Gillette over the years. These job folders contain invoices, terms and conditions of the licenses granted to Gillette, records of the number and types of images conveyed to Gillette, and correspondence.

PIC's existing copyright registrations will also be produced. As noted previously, PIC has reserved (and continues to reserve) the right to register additional copyrights as additional infringements by Gillette become known during discovery.

PIC also has a box of materials, including many of PIC's original images, that Gillette wrongly provided to third-party laboratory Advanced Photographics to obtain unauthorized copies and duplicates of PIC's images. This box of materials will also be produced.

PIC also has a small box of approximately 191 images belatedly returned by Gillette to PIC on or about June 27, 2003. This box was opened by a third party court reporter, Alene M. Jennette, who swore to the contents of the box in a 25-page declaration. The box, and Ms. Jennette's declaration regarding its contents, will be produced.

In addition to the above, PIC provides the following responsive information:

PIC's photograph of the Braun Multiquick Handblender, Copyright Registration No. VA 1-225-338, transmitted to Gillette in or about March 2001, was still posted on Gillette's <theessentials.com> web site (without a proper copyright notice) as of the filing of PIC's First Amended Complaint on June 30, 2004. See http://www.theessentials.com/store/prodinfo.asp?number=5063. Documents reflecting additional information related to this image will be made available pursuant to Rule 33(d).

PIC's photograph of the Braun Deluxe Juice Extractor, Copyright Registration No. VA 1-225-240, transmitted to Gillette in or about March 2001, was still posted on Gillette's <theessentials.com> web site as of the filing of PIC's First Amended Complaint on June 30, 2004. See http://www.theessentials.com/store/prodinfo.asp?number=5071. Documents reflecting additional information related to this image will be made available pursuant to Rule 33(d).

As of approximately September 22, 2004 PIC had identified additional infringing material on at least the following pages of Gillette's web site(s):

http://www.gillette.com/household/digital_library/iron.htm
http://www.gillette.com/household/digital_library/blenders.htm
http://www.gillette.com/men/digital_library/flexintegral.htm
http://www.gillette.com/products/appliances.asp
http://www.theessentials.com/store/prodinfo.asp?number=5064&variation=&aitem=5&mitem=9&bc=6_4_1
http://www.theessentials.com/store/prodinfo.asp?number=5033&variation=&aitem=6&mitem=9&bc=6_4_1
http://www.theessentials.com/store/prodinfo.asp?number=5057&variation=&aitem=7&mitem=11&bc=6_8_1
http://www.theessentials.com/store/prodinfo.asp?number=5020&variation=&aitem=10&mitem=11&bc=6_8_1

Documents reflecting additional information related to these infringements will be made available pursuant to Rule 33(d).

Gillette infringed PIC's copyright in another of its photographs, Copyright Registration No. VA 1-225-339, in a Spanish-language catalog circulated in South America. The photograph, which features a kitchen scene, was taken in the kitchen of PIC's President, Mr. Paul Picone. Mr. Picone's kitchen is clearly recognizable in the photograph. Documents reflecting additional information related to these infringements will be made available pursuant to Rule 33(d).

PIC also has a number of Gillette catalogs reflecting numerous infringements of PIC's copyrights. PIC is now in the process of reviewing these catalogs. Gillette must produce the remainder of the catalogs that PIC has requested. PIC will then review such catalogs, as well as other materials obtained in discovery (e.g., electronic copies of Gillette's web sites, Gillette's

- 6 -

trade show displays, its point of purchase displays, its product packaging) to put PIC in a better

position to identify Gillette's infringements.

PIC intends to supplement its response to this interrogatory as discovery progresses.

**Interrogatory No. 2**

State the basis for each and every claim that Gillette breached an "agreement." To the

extent not encompassed within the scope of L.R. 26.5 (a)(c)(8), your answer should also include the

following:

a.    the actual alleged agreement that has been breached;

b.    the specific provision of any alleged agreement that has been breached;

c.    the specific act that allegedly gives rise to a breach;

d.    the date of such alleged breach;

e.    to the extent the breach concerns any photo prepared by you for Gillette, the
      content of such photo, the date such photo was provided to Gillette, the particular
      job number associated with such photo, the copyright registration number that
      covers such photo and the date of first publication of such photo.

f.    the date you first learned of the breach.

**Response**

PIC objects to this interrogatory to the extent it purports to exceed the scope of the

definition provided for the phrase "state the basis" in D. Mass. Local Rule 26.5.

PIC objects to this interrogatory as calling for information within Gillette's control that

Gillette has not yet provided to PIC as required. For example, Gillette has refused to return

PIC's images as required by the parties' contracts, and Gillette also has not yet provided PIC

with required discovery into Gillette's breaches of contract.

For the same reasons, PIC objects to this interrogatory as premature.

Subject to the foregoing general and specific objections, PIC states as follows:

Gillette breached its agreements with PIC in at least the following ways:

Gillette failed to return PIC's images as required by Paragraph 10 of the agreements.

Gillette failed to include proper copyright notices on PIC's images as required by Paragraph 9 of the agreements.

Gillette reproduced and duplicated PIC's images beyond the temporal and geographic scope of any license provided by PIC in the agreements and/or without any license.

Gillette refused to pay for images provided by PIC in Spring 2004.

PIC will produce, pursuant to Fed. R. Civ. P. 33(d), available, non-privileged documents reflecting requested information. For example, PIC's job folders contain the parties' agreements, which reflect requested information including the dates on which particular images were transmitted to Gillette. PIC's job folders also contain records of the number and types of images conveyed to Gillette. These records, when compared against the small box of images belatedly returned by Gillette to PIC as noted above, will reflect the number of images that Gillette did not return, in violation of Paragraph 10 of the agreements.

The box of materials wrongly provided by Gillette to Advanced Photographics includes many of PIC's images that also were not returned by Gillette to PIC in violation of Paragraph 10 of the agreements.

Any images that Gillette now produces to PIC in discovery also were not returned to PIC in violation of Paragraph 10 of the agreements.

PIC has materials, including some Gillette catalogs, that reflect Gillette's failure to include proper copyright notices on PIC's images as required by Paragraph 9 of the agreements. As noted above, these materials will be produced.

With regard to Gillette's unauthorized reproduction and duplication of PIC's images, see Response to Interrogatory No. 1.

With regard to Gillette's refusal to pay for images provided by PIC in Spring 2004, PIC will produce its job folders for those jobs.

**Interrogatory No. 3.**

State the basis for your claim that Gillette was required to obtain duplicate photos solely from you and could not obtain such duplicates from third parties.

**Response**

Subject to the foregoing general objections, PIC states as follows:

The Copyright Act reserves to the copyright owner the sole right to reproduce and distribute the copyrighted work. The Copyright Act thus prohibits distribution of copyrighted works without permission of the copyright owner. The agreements between PIC and Gillette expressly provide, in Paragraph 9, that "Client may not sell, assign or otherwise transfer this License, or any rights or obligations under this License without Photographer's prior written consent." No license was granted by PIC to any third parties to whom Gillette distributed PIC's images without permission.

In addition, Gillette was permitted to reproduce images only if such acts of reproduction occurred within the scope of a valid license from PIC. In point of fact, Gillette reproduced photos, including via third party laboratories, outside the one-year period for which Gillette was licensed, and/or without any license (because Gillette failed to meet the conditions of Paragraph 9 of the Agreements for it to obtain reproduction rights).

**Interrogatory No. 4**

State the basis for each and every claim of fraud you allege against Gillette. To the extent not encompassed within the scope of L.R. 26.5 (a)(c)(8), your answer should also include the following:

a. the substance of any false statement or act upon which your purported claim of fraud is based;

b. the date such alleged statement or statements or acts were made;

c. the identity of any person who made such allegedly false statements or acts;

d. who was the direct recipient of the false statement and by what means (whether in person, by telephone, by letter, etc.

e. the date you first learned of the alleged fraud.

**Response**

PIC objects to this interrogatory to the extent it purports to exceed the scope of the definition provided for the phrase "state the basis" in D. Mass. Local Rule 26.5.

PIC objects to this interrogatory as calling for information within Gillette's control that Gillette has not yet provided to PIC as required. For example, PIC has not yet had the opportunity to depose Anna Madden, who made the false statement described below. Likewise, there may be other statements by Gillette that will prove through discovery to have been false.

For the same reasons, PIC objects to this interrogatory as premature.

Subject to the foregoing general and specific objections, PIC states as follows:

Over time Gillette reduced its purchases of duplicates from PIC on the pretense that it had a reduced need for duplicates, when in fact Gillette was procuring duplicates from third-party laboratories without PIC's permission and in violation of PIC's copyrights.

As one example of this deception, Gillette employee Anna Madden telephoned Mr. Picone to request that PIC provide Gillette with a particular image. When Mr. Picone inquired whether Gillette wanted this image because it planned to duplicate it, Ms. Madden answered in the negative and informed Mr. Picone that Gillette was experiencing a reduced need for duplicates. This statement was false. In fact, Gillette was obtaining duplicates from other sources, such as Advanced Photographics, without PIC's permission.

Based on PIC's investigation to date – and without discovery from Gillette on the matter – the conversation with Ms. Malden is believed to have occurred in approximately March 2001.

On information and belief, the false statement made by Ms. Madden to Mr. Picone was made with an intention that PIC rely upon it and not inquire further regarding Gillette's duplication activities.

PIC relied upon Ms. Madden's false statement and assumed, because of PIC's longstanding relationship with Gillette, that Gillette would not unlawfully bypass PIC in obtaining duplicates.

Gillette falsely implied an intent to pay PIC for work performed in connection with several "emergency" projects in the March-April 2004 time frame.

In or about late February 2004, Beth Cooper of Gillette approached PIC with an "emergency" photography project of significant scope.

Notwithstanding the fact that Ms. Cooper and Gillette were aware of the outstanding disputes between PIC and Gillette which ultimately led to the filing of this lawsuit, Ms. Cooper entreated PIC to assist with the aforementioned emergency project.

Specifically, Ms. Cooper indicated to Mr. Picone that Gillette needed a large volume of photographic work done on extremely short notice in order to prepare for an upcoming housewares show. Ms. Cooper entreated Mr. Picone by phone to assist with this project, and even traveled to PIC's office in Hamilton, Massachusetts to plead her case.

As a gesture of goodwill, PIC agreed to assist Gillette with the project. Given the extensive scope of the project and the short time available in which to complete it, PIC personnel worked night and day for approximately two weeks to complete it.

During this time, PIC received extensive correspondence from Gillette personnel indicating Gillette's gratitude that PIC had accepted the project and conveying satisfaction with the high quality of PIC's work. For instance, Gillette personnel made statements such as "GORGEOUS!!!", "I think it looks terrific!", "You rock! Thanks!", "Thanks for all your help!", and "These look ABSOLUTELY WONDERFUL!!!! Thank you!".

The correspondence transmitted by Gillette to PIC was also calculated to suggest to PIC that its goodwill gesture of taking on the emergency project would assist in resolution of PIC's outstanding disputes with Gillette. For instance, on March 4, 2004, Ms. Cooper wrote to Mr. Picone: "FYI ... I left a message for legal this AM and am awaiting followup. Also sent Julie Washington an e-mail ... glad to have you back!"

Following this emergency project, Gillette personnel (including Ms. Cooper and others, such as Gary Gibson) requested that PIC handle additional emergency projects. Once again, Gillette personnel praised PIC's rapid action and high quality, with statements such as "Thanks so much for your help in turning this around so quickly. The images look great!"

In all, PIC handled a total of four such projects for Gillette between March and April of 2004.

Per its standard practices (and the established course of dealing between the parties), PIC invoiced Gillette for the work done, with four invoices dated March 2, 2004, March 17, 2004, March 22, 2004 and April 20, 2004. As always, each invoice was subject to the terms of an Agreement.

Despite these statements to PIC, Gillette refused to pay PIC's invoices

PIC relied upon Gillette's false implications in performing this work, with an expectation that it would be paid for the same. Gillette owes PIC over $70,000 for this work.

Gillette also stonewalled on PIC's claims, making contradictory statements to PIC, one or more of which was false. Gillette first represented to PIC that an investigation into PIC's claims was being performed, and later denied that any such representation had been made.

Specifically, on or about August 13, 2003, Gillette's Deputy General Counsel John B. Gatlin stated to PIC in writing as follows: "We apologize for the untimely manner in which we have complied with these requests." Mr. Gatlin went on to assure PIC that "we are conducting an internal investigation to determine the extent to which" any PIC "images have been used by Gillette or any of its subsidiaries," and that "[w]e will continue with our investigation and forward any relevant information to your attention as it becomes available."

Notwithstanding Mr. Gatlin's assurances that an investigation was ongoing and that Gillette would provide relevant information as it became available, no such information was provided. Despite further attempts by PIC to obtain such information from Gillette, Gillette stonewalled and refused to disclose the results of its investigation.

On May 19, 2004, Gillette's Assistant Trademark Counsel Leon Bechet represented to PIC in writing – in direct contradiction to Mr. Gatlin's earlier written representation – that "no representation was made to you regarding an 'investigation' undertaken by Gillette."

On information and belief, one or more of the aforementioned statements was made with an intention that PIC rely upon it and delay further action with respect to pursuit of PIC's claims against Gillette.

PIC relied upon Mr. Gatlin's statement in delaying the filing of this lawsuit while it awaited the promised results of Gillette's supposed "internal investigation."

Gillette's fraud damaged PIC in an amount to be determined at trial.

In addition to the above, discovery may reveal additional fraud by Gillette.

**Interrogatory No. 5**

State the basis for each and every claim of unfair and deceptive practice by you against

Gillette pursuant to Mass. Gen. L. ch. 93A.

**Response**

See Responses to Interrogatory Nos. 1-4, which are incorporated herein by reference.

Subject to the foregoing general and specific objections, PIC states as follows:

Without limitation of the foregoing, Gillette's pattern of disregard for its contractual

obligations, its fraud, its stonewalling in response to PIC's claims, its refusal to pay outstanding

invoices, and its misrepresentations to PIC (described above), all constitute violations of Chapter

93A.

**Interrogatory No. 6**

With respect to each job number alleged in paragraph 11 of the Second Amended

Complaint, please identify, by job number, all facts related thereto, including but not limited to:

      a.     the date of the project represented by such job number;

      b.     the particular photos and project with which the job number is associated;

      c.     whether, to the extent you are aware, the particular photos associated with the job number were actually used;

      d.     whether, to the extent you are aware, the particular photos associated with the job number were actually published;

      e.     whether Gillette ever requested any duplicates of any of the photos associated with such job number and, if so, when such duplicates were requested;

      f.     all documents concerning the request for duplicates by job number;

      g.     the particular division of Gillette for which the project identified by such job number was performed;

      h.     the individual employees of Gillette with whom you communicated concerning the project identified by such job number;

      i.     all documents concerning each such job number;

      j.     all communications concerning each such job number;

k.  the amount of consideration, including, without limitation, money you received for each such job number;

l.  which, if any, of the photos identified by each job number were returned to you, and if so, when;

m.  each instance, by date, when you expressly requested the return of photos related to a given job number, to whom such request was made and by what means.

n.  each instance, by date, when you became aware of Gillette's use of a photo related to a given job number outside the United States or over one year after the photo was provided to Gillette.

## Response

PIC objects to this interrogatory as unduly burdensome, in that much of the information requested is better suited to discovery at a deposition than through an interrogatory.

See Responses to Interrogatories 1-2, which are incorporated herein by reference.  Subject to the foregoing general and specific objections, PIC states as follows:

Without limitation of the foregoing, PIC will produce, pursuant to Fed. R. Civ. P. 33(d), available, non-privileged documents reflecting requested information.

## Interrogatory No. 7

Identify any and all uses you have made of any photo prepared for Gillette, including but not limited to:

a.  the content of the photo used;

b.  the job number associated with such photo;

c.  the date of such use;

d.  in what media such photo was used;

e.  the number of copies distributed;

f.  the geographic scope of distribution;

g.  the identity of each recipient of such photos;

h.  any revenues received in connection with your reproduction and/or distribution of such photos.

**Response**

PIC objects to this interrogatory because it seeks information about "uses" to which PIC

has put images that Gillette has wrongfully refused to return to PIC. PIC cannot have "used"

images that are in Gillette's possession.

Subject to the foregoing general objections, PIC states as follows:

PIC has many uses for the images it prepared for Gillette. For example, one use is that

PIC provided Gillette with limited licenses to use such images. Indeed, by retaining its images,

PIC can prevent Gillette from making unauthorized copies or from engaging in unauthorized

distribution, thereby infringing PIC's copyrights.

The photos are also included in PIC's portfolio book, which it shows to prospective

clients to establish its credentials and obtain business.

PIC has had numerous inquiries by third parties to purchase such images for use as stock

photos. PIC has repeatedly been forced to decline these inquiries because Gillette had wrongly

obtained the original transparencies of such images such that PIC could not provide them to the

third parties who requested them.

PIC personnel also regularly review such images to generate ideas for use in projects for

other clients, including to generate ideas for lighting technique, shadow placements, camera

angles and the like.

**Interrogatory No. 8**

Identify with specificity each and every agreement entered into between you and Gillette,

whether written or otherwise.

**Response**

Subject to the foregoing general objections, PIC states as follows:

PIC will produce, pursuant to Fed. R. Civ. P. 33(d), available, non-privileged documents reflecting requested information, including the agreements contained in PIC's job folders.

**Interrogatory No. 9**

Identify all documents concerning any contract or agreement, either executed, in effect, proposed, considered or unexecuted, between you and Gillette.

**Response**

See Response to Interrogatory No. 8.

**Interrogatory No. 10**

Identify all documents concerning any payments made by Gillette to you.

**Response**

See Response to Interrogatory No. 8.

**Interrogatory No. 11**

Identify all communications between Gillette and you.

**Response**

See Response to Interrogatory No. 8.

**Interrogatory No. 12**

Identify all communications between you and any third party concerning Gillette.

**Response**

PIC objects to this interrogatory because it calls for privileged information.

Subject to the foregoing general and specific objections, PIC will produce, pursuant to Fed. R. Civ. P. 33(d), available, non-privileged documents reflecting requested information.

**Interrogatory No. 13**

Identify all persons for whom you have provided photos who you claim are or were bound by the same or a similar agreement you claim Gillette was bound by, and identify all documents concerning such agreements.

**Response**

PIC objects to this interrogatory because it calls for confidential information and a protective order has not yet been entered in this case.

Subject to the foregoing general and specific objections, PIC will provide a list of its clients responsive to this request once a suitable protective order has been entered.

**Interrogatory No. 14**

Identify documents sufficient to show your customary fees, including, but not limited to, your day rate and license fees for use of your photographs.

**Response**

PIC objects to this interrogatory because it calls for confidential information and a protective order has not yet been entered in this case.

Subject to the foregoing general objections, PIC will produce, pursuant to Fed. R. Civ. P. 33(d), a schedule of its fees, once a suitable protective order has been entered.

**Interrogatory No. 15**

Identify all documents reviewed or examined in your preparation of responses to Interrogatories propounded by Gillette or Gillette's request for documents.

**Response**

Subject to the foregoing general objections, PIC will produce, pursuant to Fed. R. Civ. P. 33(d), available, non-privileged documents reflecting requested information.

## JURAT

On behalf of the Plaintiff, I have read the foregoing responses to interrogatories. Said responses were prepared by or with the assistance of agents, employees, and/or representatives of Plaintiff and/or others believed to have relevant information, and with the assistance and advice of counsel, upon which I have relied. The responses set forth herein, subject to inadvertent or undiscovered errors or omissions, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, thus far discovered in the course of the preparation of these responses, and currently available to Plaintiff. Consequently, Plaintiff reserves the right to make any changes in or additions to any of these responses if it appears at any time that errors or omissions have been made therein or that more accurate or complete information has become available. Subject to the limitations set forth herein, the said responses are true to the best of my present knowledge, information and belief. I certify under penalty of perjury on behalf of Plaintiff that the foregoing is true and correct.

Dated: November 29, 2004

_____
Paul Kevin Picone
President
Photographic Illustrators Corporation


As to objections and reservations of rights:


Dated: November 29, 2004

_____
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO # 646990
mrader@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
Tel: (617) 646-8000

COUNSEL FOR PLAINTIFF
PHOTOGRAPHIC ILLUSTRATORS CORP.

## JURAT

On behalf of the Plaintiff, I have read the foregoing responses to interrogatories. Said responses were prepared by or with the assistance of agents, employees, and/or representatives of Plaintiff and/or others believed to have relevant information, and with the assistance and advice of counsel, upon which I have relied. The responses set forth herein, subject to inadvertent or undiscovered errors or omissions, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, thus far discovered in the course of the preparation of these responses, and currently available to Plaintiff. Consequently, Plaintiff reserves the right to make any changes in or additions to any of these responses if it appears at any time that errors or omissions have been made therein or that more accurate or complete information has become available. Subject to the limitations set forth herein, the said responses are true to the best of my present knowledge, information and belief. I certify under penalty of perjury on behalf of Plaintiff that the foregoing is true and correct.


Dated: November 29, 2004

                    Paul Kevin Picone
                    President
                    Photographic Illustrators Corporation


As to objections and reservations of rights:


Dated: November 29, 2004

                    Michael A. Albert, BBO #558566
                    malbert@wolfgreenfield.com
                    Michael N. Rader, BBO # 646990
                    mrader@wolfgreenfield.com
                    WOLF, GREENFIELD & SACKS, P.C.
                    600 Atlantic Ave.
                    Boston, MA 02210
                    Tel: (617) 646-8000

                    COUNSEL FOR PLAINTIFF
                    PHOTOGRAPHIC ILLUSTRATORS CORP.

## CERTIFICATE OF SERVICE

I certify that on November 29, 2004 copies of Plaintiff's Responses to Gillette's First Set of Interrogatories and Plaintiff's Responses to Gillette's First Set of Document Requests were served upon the following counsel of record by First Class mail:

Patrick T. Perkins, Esq.
FROSS, ZELNICK LEHMAN & ZISSU
866 U.N. Plaza
At First Avenue and 48th Street
New York, NY 10017

846706.1