UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>      Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>      Defendant. | Civil Action No. 04-10913 WGY |
| THE GILLETTE COMPANY,<br><br>      Counterclaim-Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>      Counterclaim-Defendants. | |

**DEFENDANT THE GILLETTE COMPANY'S OPPOSITION TO PLAINTIFF PHOTOGRAPHIC ILLUSTRATORS CORPORATION'S MOTION TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS**

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Marie V. Driscoll (Admitted *pro hac vice*)
    Patrick T. Perkins (Admitted *pro hac vice)*
    David Donahue (Admitted *pro hac vice)*
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP
    Richard M. Gelb (BBO#188240)
    Robert S. Messinger (BBO#651396)
20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

*Attorneys for Defendant/Counterclaim-Plaintiff
The Gillette Company*

Defendant the Gillette Company ("Gillette" or "Defendant") respectfully submits this memorandum of law in opposition to the Motion to Compel of Plaintiff Photographic Illustrators Corporation ("PIC" or "Plaintiff").

## INTRODUCTION

In their latest of a series of motions lacking merit and intended to harass Gillette, PIC and its counsel willfully ignore binding precedent of the First Circuit and this Court that directly and completely contradict PIC's legal arguments.

First, PIC argues that the disclosure by Gillette employee Beth Cooper of attorney-client privileged notes to Mr. Picone (at Mr. Picone's request) *prior* to this litigation results in a broad waiver of privilege as to "the subject matter of the document, and … all documents reflecting that subject matter…." (PIC Mot. at 1.) PIC and its counsel fail, however, to advert to the First Circuit's recent decision in *In re Keeper of the Records*, 348 F. 3d 16, 24 (1st Cir. 2003) in which the Court held that "the extrajudicial disclosure of attorney-client privileged communications, not thereafter used to gain adversarial advantage in judicial proceedings, *cannot work an implied waiver of all confidential communications on the same subject.*" (Emphasis added). Ms. Cooper provided the privileged notes to Mr. Picone in an "extrajudicial setting" and Gillette has not attempted to use the notes to gain adversarial advantage in this case (and has no intention of attempting to do so in the future). Accordingly, PIC's subject matter waiver claim fails as a matter of law.

Second, without citing any authority, PIC claims that two documents—one containing handwritten notes by Gillette personnel on a chart attached to Mr. Picone's October 25, 2003 demand letter, and the other an email written by Gillette employee Linda Mallette concerning Mr. Picone's demand for the return of his photographs—are not entitled to protection under the work product doctrine because none of the persons listed on the documents are attorneys. Again, PIC and its counsel ignore directly on-point precedent; in *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004) (Young, *Chief J.*), this very Court reaffirmed that "[t]he work product doctrine protects against disclosure of materials that *a party*, her attorney, or her

1

representative prepares in anticipation of litigation . . . ." (emphasis added; footnote omitted); *see also id.* at 142 n.6. Here there is no question that the documents in question were prepared by Gillette employees in anticipation of litigation—and their anticipation was well-founded, given that PIC instituted this lawsuit based on the claims raised by Mr. Picone. Accordingly, PIC's challenge to Gillette's privilege designation as to such documents also fails.

**BACKGROUND**

1.     **Ms. Cooper's Notes**

On February 1, 2004, Gillette employee Beth Cooper met with Gillette's Deputy General Counsel John Gatlin to discuss a meeting she had scheduled with Paul Picone concerning potential future projects under which PIC was to provide photographic services for Gillette. Ms. Cooper wrote down notes of her conversation with Mr. Gatlin on a note pad. One week later, on March 1, 2004, Ms. Cooper met with Mr. Picone to discuss the projects. Ms. Cooper brought the notes of her conversation with Mr. Gatlin to the March 1 meeting with Mr. Picone and used them as "deal points" to provide guidance for her discussion with Mr. Picone. At the end of the meeting, Mr. Picone asked Ms. Cooper if he could have a copy of the notes. Ms. Cooper obliged him.

Just over two months later, PIC commenced this lawsuit. It later amended its Complaint to include claims concerning the projects discussed at the March 1 meeting. Gillette included Ms. Cooper's notes on its privilege log, which it produced to PIC on January 26, 2005. Moreover, Gillette included Mr. Gatlin's notes of the February 25 meeting with Ms. Cooper, as well as a memorandum taken by Gillette Legal Intern Michelle Bratton reporting on an April 26, 2004 meeting between Ms. Bratton and Ms. Cooper concerning Ms. Cooper's meeting with Mr. Picone as well as other issues relating to Mr. Picone.

PIC's counsel questioned Gillette's inclusion of Ms. Cooper's notes on the privilege log, noting that Ms. Cooper had provided a copy of the notes to Mr. Picone. Recognizing that attorney-client privileged documents no longer are privileged once revealed to a third party, Gillette withdrew its claim of privilege and produced its file copy of the notes to PIC.

However, without citing my authority, PIC's counsel also claimed that Mr. Gatlin's notes and Ms. Bratton's memorandum were not privileged and demanded that Gillette produce such documents as well. Gillette informed PIC's counsel that PIC's argument is incorrect as a matter of law and has not produced such documents.

### 2. Work Product Materials

Mr. Picone and PIC photographed Gillette's products for Gillette for fifteen years without ever placing any restrictions on Gillette's use of such photographs or requesting that the photographs be returned. However, on or about October 25, 2002 Mr. Picone—apparently frustrated by his mistaken belief that Gillette was phasing out its use of his services due to a supposed change in policy that never was planned and never happened—placed angry telephone calls to Gillette personnel demanding the return of all photographs PIC ever had provided to Gillette and threatened Gillette employee that he would be entitled to $1500.00 in liquidated damages for each photograph not returned by Gillette. In anticipation of litigation by Mr. Picone, one of the recipients of Mr. Picone's irate telephone calls, Gillette employee Linda Mallette, e-mailed several of her co-workers who had conducted business with Mr. Picone. Ms. Mallette stated in her email, *inter alia*, "Paul [Picone] … is preparing a lawsuit against Gillette unless he has every image he has ever taken for us returned in its original form by Monday." Gillette produced this email to PIC, except redacted a single line of text containing Ms. Mallette's speculation regarding a legal issue in this case. (Ex. A.)[1]

On June 23, 2003, Mr. Picone followed up on his threatening telephone calls by sending a letter to several Gillette employees again demanding return of the photographs PIC had provided to Gillette over the course of their fifteen year relationship and threatening to seek "$1,500 for each original image to cover [his] loss." (Ex. B.) The letter included a chart of "job numbers" that Mr. Picone alleged to represent the projects PIC had performed for Gillette. (*Id.*) One of the recipients of the letter made hand-written notations on the chart of job numbers.

---

[1] References to "Ex." are to the exhibits to the Declaration of David Donahue, dated February 8, 2005. The Donahue Declaration is filed concurrently herewith.

3

Gillette withheld the copy of the letter containing the handwritten notes from production to PIC on grounds that the notations constituted work product. Gillette produced other copies of Mr. Picone's letter that did not include the hand-written notes on the job numbers chart. (*See id.*)

In an email to Gillette's counsel, PIC's counsel provided a list of documents about which it questioned privilege on grounds that such documents "appear[ed] not to be correspondence with an attorney or attorney notes." In responding to PIC's counsel's email, Gillette's counsel inadvertently neglected to respond to the first item on PIC's list, which was tersely described by PIC's counsel as "GLTC 242"—i.e., the Bates number of the redacted copy of Ms. Mallette's October 25, 2002 email. PIC's counsel never attempted to follow up with Gillette's counsel on this issue before filing this motion.

With respect to the handwritten notes on Mr. Picone's June 23, 2003 letter, Gillette's counsel explained that the notes were protected under the work product doctrine based on the following facts: "These notes consist of markings on the chart of job numbers included with Mr. Picone's letter. They were made in connection with Gillette's investigation of the allegations in Mr. Picone's letter and in anticipation of litigation."

## ARGUMENT

**I.   PIC'S SUBJECT MATTER WAIVER CLAIM REGARDING MS. COOPER'S NOTES IS DIRECTLY CONTRADICTED BY THE FIRST CIRCUIT'S DECISION IN *IN RE KEEPER OF THE RECORDS***

The law in this Circuit is clear: "[T]he extrajudicial disclosure of attorney-client communications, not thereafter used by the client to gain adversarial advantage in judicial proceedings, *cannot work an implied waiver of all confidential communications on the same subject matter.*" *In re Keeper of the Records*, 348 F.3d 16, 24 (1st Cir. 2003) (emphasis added). Here, Ms. Cooper's disclosure of the notes of her meeting with Gillette's in-house counsel was an "extrajudicial disclosure"—PIC did not even commence this litigation until two months after the disclosure of the notes.

4

Moreover, Gillette has not used Ms. Cooper's notes "to gain adversarial advantage in judicial proceedings." As the Court noted in *In re Keeper of the Records*, "courts have found subject matter waiver by implication when a client (i) testifies concerning portions of an attorney-client communication, (ii) places the attorney-client relationship itself at issue or (iii) asserts reliance on an attorney's advice as an element of a claim or defense," *id.* at 24 (citing *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)), none of which occurred here.

PIC completely ignores *In re Keeper of the Records* in its brief, which is not surprising, since the First Circuit's holding in that case completely contradicts PIC's legal assertions here. Instead, PIC cites an out-of-circuit case for the proposition that "any voluntary disclosure to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter." (PIC Mot. at 3 (quoting *Sheet Metal Workers Int'l Ass'n v. Sweeny*, 29 F. 3d 120, 125 (1994)). As noted above, however, the quote in PIC's Motion does not represent the law of the First Circuit. Moreover, unlike the case at bar, the Fourth Circuit in *Sheet Metal Workers Int'l Ass'n*, found that the party asserting the privilege did not have an attorney-client relationship with his alleged attorney and thus had no expectation of confidentiality as to their communications. *See id.* at 124-25.

PIC also makes a misguided reference to Gillette's alleged use of the privilege as a "both sword and a shield." (PIC Mot. at 1.) When courts speak of a litigant using the privilege as a both "a sword and a shield," they are referring to litigants revealing privileged information in a judicial setting—e.g., in testimony—to gain adversarial advantage while withholding other related information on grounds of privilege. *See In re Keeper of the Records*, 348 F.3d at 24. Again, that is not what happened here. While Gillette initially asserted that the Ms. Cooper's notes were privileged—i.e., used the privilege as a "shield"—it withdrew its claim of privilege as

5

to that document alone upon its analysis of PIC's claim that Ms. Cooper turned over the notes to PIC—thereby letting down the shield. There has been no sword-wielding here. Accordingly, Ms. Cooper's extrajudicial disclosure of the notes at the March 1 meeting cannot result in the subject matter waiver requested by PIC and PIC's waiver claim fails as a matter of law. *See In re Keeper of the Records*, 348 F. 3d at 24.

**II.   PIC'S CLAIM THAT MATERIALS PREPARED BY GILLETTE PERSONNEL IN RESPONSE TO PIC'S CLAIMS DO NOT QUALIFY AS WORK PRODUCT IS DIRECTLY CONTRADICTED BY THIS COURT'S DECISION IN *IN RE GRAND JURY SUBPOENA***

"The work product doctrine protects against disclosure of materials that a *party*, her attorney, or her representative prepares in anticipation of litigation." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004) (Young, *Chief J.*) (emphasis added); *see also* Fed. R. Civ. P. 26(b)(3). As such, "[t]he work product doctrine preserves a 'zone of privacy' in which a party … can prepare for litigation, 'free from unnecessary intrusion by his adversary.'" *In re Grand Jury Subpoena*, 220 F.R.D. at 141 (citation omitted).

PIC asserts without citation to any legal authority that Ms. Mallette's email and handwritten notes written by Gillette personnel cannot constitute work product because they were prepared by non-attorneys. But that is not the law. As this Court reaffirmed in *In re Grand Jury Subpoena,* the law in the First Circuit is that materials prepared by a party in anticipation of a law suit qualify as work product *whether or not* such materials are prepared at the direction of counsel. *See id*. at 142 n. 6; *see also Sprague v. Director, Office of Workers' Comp. Programs*, 688 F. 2d 862, 870 (1st Cir. 1982) (whether document is prepared by an attorney or non-attorney "is irrelevant for purposes of Rule 26(b)(3) work-product protection."); *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, No. 00-0738, 2001 WL 1180694, at * 1 (D. Mass. Sept. 25, 2001) ("[T]he mental impressions, opinions, or litigation of a party's non-attorney

6

employee may qualify as work product when the non-attorney employee is acting on the party's behalf.").

PIC also appears to suggest, again without citation to any authority, that Ms. Mallette's email and the handwritten notes cannot qualify as work product because they were prepared ten months (with respect to the notes on Mr. Picone's letter) and a year and a half (with respect to Ms. Mallette's email) before suit was filed. However, to the extent PIC is claiming that there is some temporal limit to the work product doctrine, PIC once again is clearly wrong. Rather, in determining whether materials were prepared in anticipation of litigation, "[i]t does not matter whether the anticipated litigation *ever occurs*." *In re Grand Jury Subpoena*, 220 F.R.D. at 147.

Here, Ms. Mallette sent her October 25, 2002 email "in anticipation of litigation" spurred by Mr. Picone's surprising demand that Gillette return all photographs PIC had provided to it and unfounded claim that Gillette would be liable for $1500.00 per photograph not returned. Indeed, her email refers to the fact that Picone telephoned her and was "preparing a lawsuit" against Gillette. (*See* Ex. A.)

Similarly, there is no question that Gillette personnel's notes on the job number chart attached to PIC's demand letter—in which Picone again demanded that Gillette return the photographs and threatened that he was entitled to "$1,500 for each original image to cover [his] loss"—were made in anticipation of the very litigation Mr. Picone threatened to commence in his letter and eventually commenced in this Court. (*See* Ex. B.)

Finally, Gillette notes that PIC is not challenging Gillette's assertion of work product as to other materials created during the same time periods as Ms. Mallette's email, (*see* Ex. C at p. 1, rows 1, 3-5; p. 2, rows 1-7; p. 3, rows 1-3), and the handwritten notes on Mr. Picone's letter, (*see id*. p. 3, row 6; p. 4, rows 1-5). Accordingly, PIC has waived any claim that the timing of

7

the creation of the email and the notes prevents a finding that such materials constitute work product.

## CONCLUSION

For the foregoing reasons, PIC's motion to compel should be denied in its entirety. Although Gillette believes that the Court should rule in Gillette's favor based on the parties' submissions alone, Gillette is willing to file the privileged documents under seal for *in camera* review should the Court wish to view them before ruling on PIC's motion.

Dated:  February 8, 2005                                    FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: /s/Patrick T. Perkins/
    Marie V. Driscoll (Admitted *pro hac vice*)
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP

By: /s/Richard M. Gelb/
    Richard M. Gelb (BBO#188240)
    rgelb@gelbgelb.com
    Robert S. Messinger (BBO# 651396)
    rmessinger@gelbgelb.com

20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

*Attorneys for Defendant/Counterclaim-Plaintiff
The Gillette Company*

I:\ddonahue\GLTC\COURT DOCS\050208-0420298-Opp. PIC Mot. to Compel Privileged Documents-dd.doc