IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

        Plaintiff,

v.

THE GILLETTE COMPANY,

        Defendant.

Civil Action No. 04-CV-10913-WGY

**PIC'S OPPOSITION TO GILLETTE'S MOTION TO QUASH
SUBPOENAS SERVED ON GILLETTE CUSTOMERS**

Plaintiff Photographic Illustrators Corporation ("PIC") opposes Defendant The Gillette Company's ("Gillette") motion to quash the subpoenas served by PIC on the resellers identified by Gillette in its motion. (Gillette Mot. at 1).

This is Gillette's second motion to quash, and follows its policy of attempting to starve PIC of much if not all of the factual information that underlies PIC's case. First, Gillette refused to provide discovery from its own files relating to its improper duplication and distribution of PIC's images to third parties. (It has since been ordered to provide such materials by the Court, but apparently continues to claim that it does not have its own product catalogs.) Now, Gillette is seeking to prevent PIC from obtaining that information from the third parties themselves, who may have better records and recordkeeping practices than Gillette does.

The information that PIC has requested from these third parties is at the core of both PIC's breach of contract claims (Gillette undertook contractual obligations to return PIC's images *to PIC* and not to distribute them to third parties) and its copyright infringement claims (Gillette's wrongful distribution of PIC's images induced copyright infringement by the resellers who received those images.).

Gillette does not deny distributing PIC's images to its resellers; it simply does not want PIC (or the Court) to uncover the extent of that distribution.

Of the forty resellers subpoenaed by PIC, *only one* has lodged an objection to its subpoena. At least *eighteen* resellers have already responded that they are in the process of complying, and none of them have contended that compliance with their respective subpoenas would be unduly burdensome. One reseller has already confirmed in writing that a portion of the images used in its advertising *were in fact* provided by Gillette. There is no basis for Gillette's motion to quash.

## BACKGROUND

After wrongfully retaining thousands of PIC's original images in breach of its contracts with PIC, Gillette misused those images in a number of ways. Among other wrongful acts, Gillette infringed PIC's copyrights by using PIC's images outside the scope of any license (i.e., one year) that it had purchased from PIC. Gillette admits that its uses of PIC's images continued even after the filing of this suit. (Am. Answer ¶¶ 21-22). Gillette also unlawfully disseminated PIC's images to third parties such as its resellers, inducing those third parties to commit wholesale copyright infringement by using PIC's images in their own marketing and advertising materials.

Gillette purchased, at most, one-year licenses to use PIC's photographs. All of those licenses have now expired, such that any further use by Gillette (or its resellers) of PIC's photographs constitutes copyright infringement. Although PIC did do four jobs for Gillette within the last year (in Spring 2004), Gillette admittedly refused to pay PIC for that work. (Am. Answer ¶ 43). Accordingly, Gillette acquired *no* licenses to the images provided in those jobs.[1]

---

[1] The parties' contracts provide that Gillette acquires a certain – *limited* – license only if and when it makes the required payment.

- 2 -

In short, although Gillette purchased limited licenses to use PIC's images (for one year in the United States only), Gillette systematically treated PIC's images as if they were Gillette's own, refusing to return them as required by the parties' contracts, using them far beyond the geographic and temporal scope of any licenses that it bought, and even sending them around the country and the world to third parties for their use.

## THE SUBPOENAS

PIC's subpoenas to third parties are narrowly targeted to just four categories of highly relevant documents, including (a) advertising containing photographs of Gillette products; and (b) communications with Gillette personnel who provided such images. (Gillette Br. at 2).

Following service of the subpoenas, at least eighteen parties have responded that they are in the process of complying, and one has already complied. In a letter received by PIC's counsel yesterday, counsel to Shavers.com acknowledged that its advertising *does* include images provided by Gillette. See Declaration of Michael N. Rader ("Rader Decl.") ¶ 6. Even prior to issuing the subpoenas, PIC identified a number of infringements by Gillette's resellers on the Internet. Gillette concedes this. (Gillette Br. at 2-3). Although not surprising that Gillette is hoping to suppress the collection of further such evidence, the effort is without any legal basis.

Numerous subpoenaed parties have stated that they expect to locate and produce responsive documents, including advertising material containing images provided by Gillette. (Rader Decl., ¶ 3). At least one party has also indicated familiarity with the Gillette personnel identified by PIC in its subpoena. (Id. ¶ 7).

The documents and advertising material that these third parties are producing is not only called for in PIC's subpoena; it goes to the heart of PIC's claim that Gillette breached its contractual covenants to PIC and infringed PIC's copyrights by freely distributing PIC's photographs to its resellers.

- 3 -

**ARGUMENT**

To assess the full scope of Gillette's unauthorized distribution of PIC's photographs, PIC must obtain the documents it has requested from third parties. The documents are highly relevant and, in any event, "it practically goes without saying that [Gillette] ought not be empowered to decide what may or may not be relevant for [PIC's] purposes." <u>Atchison Casting Corp. v. Marsh, Inc.</u>, 216 F.R.D. 225, 227 (D. Mass. 2003).

Gillette does not dispute that it distributed images created by PIC to its resellers – PIC has already provided proof of such induced third-party infringement. Gillette's motion is intended to starve PIC of the highly relevant and unquestionably discoverable evidence to which it is entitled.

Gillette's half-hearted justifications for its motion are nothing short of frivolous, and warrant an appropriate Rule 37 sanction.

First of all, **Gillette does not even have standing to file its motion to quash**. While Gillette asserts (at 4) that "a party has standing to object to a subpoena directed to a nonparty when the party claims a personal right or privilege regarding the documents sought," ***Gillette asserts no right or privilege of any kind in the documents sought here***. In <u>Minn. School Boards Assoc. Ins. Trust v. Employers Ins. Co. of Wausau</u>, 183 F.R.D. 627 (N.D. Ill. 1999), cited by Gillette, a motion to quash was granted where the documents sought reflected work product privilege of the movant. Here, Gillette does not claim work product (or any other right or privilege) in third parties' advertising materials or PIC's images.

The two cases Gillette cites from this District also support PIC on the merits. <u>Atchison Casting</u>, which Gillette cites for the proposition that it has standing to make this motion, ***denied*** a motion to quash because the document sought was deemed relevant under the "broad scope of the discovery rules." 216 F.R.D. at 227.

- 4 -

The Atchison Casting case is also notable because the Court denied the motion to quash despite the movant's claim of confidentiality with respect to the document sought (a settlement agreement between the movant and the subpoenaed third party). Id. at 228 ("[T]he policies favoring liberal discovery outweigh Plaintiff's claim of confidentiality."). Here, of course, Gillette does not even have a claim of confidentiality, privilege, or any other basis for objecting to the production. It is doing nothing more than following the tried-and-true litigation maxim that if the evidence will hurt your case, object.

In the other case Gillette cites from this District, Demers v. LaMontagne, 1999 WL 1627978 (D. Mass. May 5, 1999), the court likewise *denied* a motion to quash, concluding:

> The March 26, 1999 subpoena duces tecum served by the defendants calls for production of documents that are relevant in this case. The subpoena seeks information regarding the relationship between LLG & M and Demers and information about Demers' unpaid bills. This information is likely to lead to evidence regarding the propriety of the fees incurred by Demers, which directly relates to a substantial portion of the damages claimed by Demers in this case.

Id. at *2.

Gillette's bald assertion that the subpoena is intended to "harass" the subpoenaed parties is wholly unsupported and untrue. (Rader Decl. ¶ 4-5). It is also insufficient as a matter of law. E.g., Klesh & Co., Ltd. v. Liberty Media Corp., 217 F.R.D. 517, 523 (D. Colo. 2003) (denying motion to quash third-party subpoena where "Plaintiff offer[ed] nothing more than a bald assertion that the subpoena will 'harass'"); Grinnell Corp. v. Hackett, 70 F.R.D. 326, 333-34 (D.R.I. 1976) ("A showing that the likelihood of harassment is 'more probable than not' is … insufficient without a concomitant showing that the information sought was 'fully irrelevant and could have no possible bearing on the issues.'"), quoting Wright and Miller § 2037.

A brief description of the facts of the case cited by Gillette for its "harassment" proposition is telling. In <u>Bogosian v. Woloohojian Realty Corp.</u>, 323 F.3d 55 (1st Cir. 2003), the district court quashed a subpoena served on *opposing counsel*, a tactic that is "generally disfavored." <u>Id.</u> at 66. In affirming, the First Circuit noted that the subpoena was served *the day before trial*, "without the slightest attempt to explain why [plaintiff] had failed to depose opposing counsel during the preceding ten-year period of ongoing discovery." <u>Id.</u> at 67.

By contrast, PIC has served highly specific discovery requests on third parties (not counsel) in a timely manner during the discovery period. Many of these parties have already *acknowledged* having relevant and discoverable information.

Gillette's only remaining argument in seeking to quash the subpoenas, that the subpoenas are unjustifiably burdensome (Gillette Br. at 4-5) is simply untrue, as proven by the fact that only one of the forty resellers subpoenaed has lodged a single objection. The rest either have complied already, or are in the process of doing so. (Rader Decl.).

## CONCLUSION

For the above reasons, Gillette's motion to quash should be denied.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS CORPORATION,

By its counsel,

Dated: <u>February 9, 2005</u>     <u>   /s/ Michael N. Rader          </u>
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO # 646990
mrader@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000