IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

          Plaintiff,

v.

THE GILLETTE COMPANY,

          Defendant.

Civil Action No. 04-CV-10913-WGY

**EXPEDITED CONSIDERATION
REQUESTED PURSUANT TO
LOCAL RULE 5.1(c)**

**REPLY IN SUPPORT OF PIC'S MOTION FOR CLARIFICATION
OF THE COURT'S FEBRUARY 1, 2005 ORDER**

Photographic Illustrators Corporation ("PIC") respectfully requests leave to file this reply

brief in support of its Motion for Clarification of the Court's February 1, 2005 Order.

The discovery requests at issue are fairly aimed at evaluating how much Gillette has

profited from its infringement of PIC's copyrights – a type of recovery explicitly authorized by

the Copyright Act.  Gillette does not dispute that a copyright infringer's profits are recoverable.

Rather, Gillette opposes providing the requested fact discovery on the basis that PIC has not yet

established that it will succeed on the merits. See Opp. at 4 ("PIC has provided no showing of

any causal connection between [the infringing advertising] and sales of Gillette products.").

The argument is premature; it is axiomatic that PIC need not prove it will prevail on the

merits before it is entitled to fact discovery.

The argument is also disingenuously circular.  PIC's "causal connection" will be

established, at least in part, by the information it seeks (documents evidencing the effectiveness

of Gillette's advertising).  Gillette's strategy here – refusing to produce these documents, then

claiming that PIC cannot make out its case, then arguing that PIC is not entitled to the documents

because it cannot make out its case – is unfair and highly disingenuous.

Gillette's second argument, that case law militates against the requested discovery in a copyright case, is simply mistaken. The cases that Gillette cites in support of the notion that the "profits" recoverable under 17 U.S.C. § 504 must be reasonably related to the defendant's infringement only highlight the propriety (and importance) of discovery in this area. Gillette's two cases denying motions to compel discovery are readily distinguishable.

At the outset, it bears repeating that in the cases cited in PIC's opening brief (at 2) both the Eight and Ninth Circuits not only approved the type of discovery requested here, but held that the copyright owners were entitled to recover an appropriate portion of the infringers' profits attributable to copyright infringement in trade show displays and in other marketing materials. Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 712 (9th Cir. 2004) (affirming award of infringer's profits from sale of watches attributable to infringing use of copyrighted advertising material in trade show booths); Andreas v. Volkswagen of America, Inc., 336 F.3d 789 (8th Cir. 2003) (*reversing* district court's grant of JMOL and *reinstating* jury's award of infringer's profits from sale of cars attributable to infringing use of copyrighted advertising material in television commercials).

Gillette's cases do not undermine the principle that profits attributable to infringing advertising can be recovered when causation is properly established. In fact, Gillette's cases support PIC on this point.

In On Davis v. The Gap, Inc., 246 F.3d 152, 160 (2d Cir. 2001), for example, the Second Circuit concluded that copyright infringement in an ad campaign for particular products bore too speculative a connection to the recovery sought by the copyright holder – namely, the increased profit of the defendant's *entire business* during the period of the infringement. Id. at 159-60. The court stated, however, that the plaintiff could properly have sought an appropriate portion of the defendant's profits from the particular products that were advertised with the infringing material:

> Because the ad infringed only with respect to Gap label stores and eyewear, we agree with the district court that it was incumbent on Davis to submit evidence at least limited to the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories.  Had he done so, the burden would then have shifted to the defendant under the terms of § 504(b) to prove its deductible expenses and elements of profits from those revenues attributable to factors other than the copyrighted work.

Id.

Here, PIC seeks to do precisely what the Second Circuit *approved* in Davis – present evidence on Gillette's profits for *the particular products* that were sold with infringing advertising.  Davis not only supports PIC's discovery requests; it supports PIC on the merits too.

Gillette's discussion of its next case, Bouchat v. Baltimore Ravens Football Club, 346 F.3d 514 (4th Cir. 2003), is incomplete.  Bouchat, like Davis, actually supports PIC.

Although Gillette does not mention this in its discussion of the case, the district court in Bouchat granted only *partial* summary judgment to the accused infringer on *a portion* of the plaintiff's claim to profits attributable to infringing advertising.  At trial, the plaintiff *was* permitted to present to the jury its claim for profits from sales of t-shirts, caps, souvenir cups and other items bearing the infringing logo. Id. at 518.  Although the jury ultimately found that sales of these items were not attributable to the infringement, id. at 519, *the issue did go to the jury*.

What is more, the district court permitted the plaintiff to obtain discovery (including profit information) into the defendant's profits from an even wider range of the defendant's infringing activity, including activity on which it ultimately granted the defendant's partial summary judgment motion:

> Plaintiff was provided with the opportunity to engage in adequate discovery with respect to corporate sponsorships.  The function of the discovery permitted was to obtain evidence as to the nature of the sponsor relationship **and the income derived by the Defendants therefrom**.

Bouchat v. Baltimore Raven, Inc., 215 F. Supp. 2d 611, 621 (D. Md. 2002) (emphasis added).

- 3 -

The Fourth Circuit expressed no disapproval either of the plaintiff's discovery, or of the district court's decision to permit the plaintiff to go to trial on an appropriate portion of its claim for the infringer's profits.  <u>Bouchat</u> is consistent with <u>Davis</u> and strongly favors PIC.

Gillette also offers two unpublished decisions in which courts denied requests for profits information.  Both are readily distinguishable.

In <u>Mager v. Brand New School</u>, 2004 WL 2413978 (S.D.N.Y. Oct. 28, 2004), the defendants fought the plaintiff's motion to compel discovery *while simultaneously moving for summary judgment* with respect to the plaintiff's claim to their profits under § 504(b).  The court offered no independent rationale for denying the plaintiff's motion to compel; that result flowed instead from the court's decision on the merits.  <u>Mager</u> is not relevant here, where there is no summary judgment motion pending (indeed, such a motion would be premature), and PIC has not yet had an opportunity to present its case on the merits.  Rather, as in <u>Bouchat</u>, PIC should be permitted to take the requested discovery, and Gillette may of course file a motion for summary judgment at the appropriate time if it believes the issue is amenable to summary disposition.

It is also worth noting the speculative nature of the plaintiff's theory in <u>Mager</u>.  The defendants' 44-minute broadcast incorporated just 3 seconds worth of the plaintiff's material, meaning that a viewer could miss the infringement "in the blink of an eye." <u>Id.</u> at *4.

Such a theory stands in marked contrast to a claim to infringers' profits resulting from infringements in marketing and advertising materials *that are designed to help sell the products in question*.  Purchasers quite plausibly reached their decisions at least in part as a result of advertising, point-of-sale displays,  product packaging, trade show displays, or other marketing techniques that incorporated PIC's images.  The <u>Polar Bear</u> and <u>Andreas</u> cases cited by PIC, as well as the <u>Davis</u> and <u>Bouchat</u> cases cited by Gillette, all agree that PIC's is a viable claim on which discovery – not to mention recovery – is proper.

Gillette fares no better with its final case, <u>Compaq Comp. Corp. v. Ergonome, Inc.</u>, 2001 WL 34104827 (S.D. Tex. June 27, 2001).  The <u>Compaq</u> court denied discovery into Compaq's revenues from sales of computers, based on the bundling of those computers with allegedly infringing pamphlets that Ergonome itself had offered to license for $7.99 a copy. <u>Id.</u> at *3.  The computer purchasers likely would not even have discovered the pamphlets until after making their purchasing decisions.  This case presents the opposite scenario, where the infringements were used in advertising – the very vehicle designed to increase sales of Gillette's products.

Gillette's final argument, that PIC has not demonstrated a threshold number of infringements by Gillette to justify its entitlement to the requested information, is disingenuous. Gillette has consistently refused to provide the discovery from which those infringements may be discerned, including catalogs, product packaging, point-of-purchase displays and trade show displays. (The Court has now ordered Gillette to produce these materials by February 11.)

Gillette's argument is also incorrect.  After completing its review of the seven Gillette catalogs in its own possession (a small fraction of the catalogs that Gillette should be producing on February 11 pursuant to the Court's Order on PIC's Motion to Compel), PIC has identified at least 234 infringements in those catalogs alone. <u>See</u> Exhibit A (update to PIC's discovery responses identifying specific infringements in Gillette's catalogs).  Meanwhile, PIC awaits critical discovery from Gillette (and from third parties to whom Gillette improperly distributed PIC's images for infringing use in their own advertising) that will undoubtedly establish a level of infringement many times that which PIC has been able to identify from its own documents.

The fact that PIC has so far been forced to rely on its own documents, with Gillette claiming that PIC has more of Gillette's marketing materials than Gillette itself, makes it all the clearer how crucial the evidence in Gillette's possession is.  Gillette should be compelled to respond to PIC's requests so that PIC has a fair opportunity to present its case at trial.

**CONCLUSION**

Gillette should be compelled to respond fully to PIC's Interrogatory No. 24 and

Document Request No. 42.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

By its counsel,

Dated: <u>February 10, 2005</u>            <u>    /s/ Michael N. Rader        </u>
                                         Michael A. Albert, BBO #558566
                                         malbert@wolfgreenfield.com
                                         Michael N. Rader, BBO # 646990
                                         mrader@wolfgreenfield.com
                                         WOLF, GREENFIELD & SACKS, P.C.
                                         600 Atlantic Ave.
                                         Boston, MA 02210
                                         (617) 646-8000