IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

       Plaintiff,

v.

THE GILLETTE COMPANY,

       Defendant.

Civil Action No. 04-CV-10913-WGY

**EMERGENCY CONSIDERATION REQUESTED PURSUANT TO LOCAL RULE 5.1(c)**

**EMERGENCY MOTION TO FURTHER COMPEL GILLETTE'S COMPLIANCE WITH THE COURT'S FEB. 1, 2005 ORDER, TO HOLD GILLETTE IN CONTEMPT OF THAT ORDER, AND FOR APPROPRIATE RELIEF AND SANCTIONS**

On February 1, 2005, the Court granted-in-part Photographic Illustrators Corporation's ("PIC") Motion to Compel. In its Order, the Court specifically overruled all of The Gillette Company's ("Gillette") objections to PIC's Document Request Nos. 2, 5 and 14, and ordered Gillette to produce all documents responsive to these requests within ten days. Because the Order did not move Gillette, PIC is forced to return to the Court for further relief.

**I.    DOCUMENTS THAT GILLETTE HAS REFUSED TO PROVIDE**

    **A.    Foreign Catalogs**

PIC's Request No. 2 calls for "[a]ll documents concerning the use of images created by PIC in Gillette catalogs." (Ex. G to Docket #33).

In its Motion to Compel, PIC explained that this includes both domestic *and foreign* catalogs, and that PIC already has independent evidence that its images were used by Gillette abroad. (Docket #33 at 5). A copy of a Spanish-language use by Gillette of a PIC image is attached hereto as Exhibit 1.

In defiance of the Court's Order, Gillette refuses to produce its foreign catalogs. The reason provided by Gillette's counsel for this refusal is that "[o]ur client has informed us that its foreign offices create catalogs … locally and thus would not have used photographs provided by PIC in such locally produced materials." (Exhibit 2).

From the fact that foreign catalogs are "produced locally," it does not follow that such catalogs do not incorporate PIC's images, which Gillette is known to have duplicated and distributed around the world. Indeed, as noted above, PIC has *independent* evidence that Gillette used PIC's images abroad. (Exhibit 1).

What is more, the argument is directly contradicted by Gillette's admission in briefing that its catalogs "are **not** categorized by which [ones] contain PIC photographs and which … contain photographs provided by Gillette itself or by other vendors." (Docket #35 at 2).

Gillette also maintains that because the Court granted PIC's Motion to Compel on its *broader* Request No. 2 (all documents concerning catalogs) rather than on its *narrower* Request No. 1 (all catalogs), Gillette is not required to produce its foreign catalogs. (Exhibit 2).

Gillette's belated position is plainly wrong, see L.R. 26.5(c)(7) (setting forth definition of "concerning"), and demonstrates its bad faith. Immediately following the Court's February 1 Order, PIC's counsel sent Gillette's counsel a detailed letter setting forth what PIC expected Gillette to produce in compliance with the Order, including all catalogs. (Exhibit 3). PIC's counsel prompted Gillette's counsel regarding catalogs again on February 9 when PIC identified 234 copyright infringements located by PIC in U.S. catalogs in PIC's possession. (Exhibit 4). On Friday, February 11, after being informed that Gillette would not comply with the 10-day deadline set by the Court and would produce additional documents the following week, PIC's counsel *again* reminded Gillette's counsel that foreign catalogs were expected. (Exhibit 5).

Not until **7:50 pm on Monday, February 14** – three full days after the deadline set by the Court for compliance with its Order – did Gillette's counsel inform PIC's counsel that no foreign catalogs would be produced. (Exhibit 2).

In the final analysis, Gillette's belated arguments as to why it need not comply with the Court's Order are too little, too late. As this District recently recently explained:

> What counsel fails to realize is that in the face of an Order by the Court, the time for discussion was past. Defendants' counsel was under an Order to comply unless the Order was amended or vacated. Further, if defendants' counsel opposed discovery on the claims against the Town, he should have opposed the initial motion to compel on the ground. It is far too late to raise the issue now.

Russell v. Town of Reading, 208 F.R.D. 24, 25 (D. Mass. 2002).

Gillette should be compelled to produce ***all*** of its product catalogs, including foreign catalogs, forthwith.

### B. Documents Concerning Trade Show Displays

PIC's Request No. 5 calls for "[a]ll documents concerning the use of images created by PIC in Gillette trade show displays." (Ex. G to Docket #33).

In its Motion to Compel, PIC explained that this includes photographs of the booths that Gillette takes at each trade show, and documents reflecting when and where the displays are used. (Docket #33 at 7). Indeed, PIC's counsel told Gillette's counsel about Gillette's practice of photographing its trade show booths on January 20, 2005 (Id. at Ex. J, p. 5), and Gillette's counsel responded that it would check on this and "get back to you as soon as possible" (Id. at Ex. K, p. 3).[1]

---

[1] The fact that PIC knows more about Gillette's internal practices than Gillette's counsel further demonstrates the lack of any reasonable investigation performed by Gillette's counsel both before and after the Court's Order.

Yesterday (February 14, 2005), PIC's counsel received a telephone call from Wayne Lincoln, an employee of Czarnowski Exhibit Services ("Czarnowski"), which creates trade show displays for Gillette. Mr. Lincoln informed PIC's counsel that Czarnowski is complying with a third-party subpoena served by PIC, but that more documents concerning Gillette's trade show displays would be in the files of Gillette's National Trade Show Manager, Bill Spain. See Declaration of Michael N. Rader ("Rader Decl.") ¶ 2. This was the first time that PIC's counsel had ever heard of Mr. Spain.

PIC's counsel promptly inquired of Gillette's counsel whether Mr. Spain's files would be produced. PIC's counsel was shocked to learn that Gillette's counsel did not even know who Mr. Spain was and had no idea whether he is currently employed by Gillette. (Exhibit 2). ***Despite being under Court Order to produce all documents concerning trade show displays, Gillette's counsel admittedly did not even consult Gillette's National Trade Show Manager, let alone produce his files.*** As discussed in Section II below, appropriate sanctions are in order.

    C.    <u>Electronic Mail</u>

The Court granted PIC's Motion to Compel as to Request No. 14, which calls for "[a]ll documents concerning PIC's images or PIC." The word "document" plainly encompasses electronic documents such as e-mails, and the Court overruled Gillette's objections to this Request ("incorporated by reference" in its response thereto, see Docket #33, Ex. M, p. 9), including its objection to producing e-mails stored electronically and/or on backup media.

To comply with this request, Gillette could simply have instructed its IT department to perform a global e-mail search on a small number of key words ("Picone," "PIC," "picorp" and "Photographic Illustrators") that will return e-mails "concerning PIC's images or PIC." These search terms will return few, if any, "false positives."

Gillette explained in its February 3 letter about the Court's Order that e-mails, including e-mails stored on backup media, had to be produced. (Exhibit 3). Gillette ignored the letter, making it impossible for PIC to seek a further Order from the Court at an earlier time.

On Friday, February 11, PIC's counsel reminded Gillette's counsel that e-mails were expected, and proposed the search terms set forth above. (Exhibit 5). As of that date, and likewise as of the filing of this motion, just a handful of e-mails have been produced.

Gillette did not respond until **7:50 pm on Monday, February 14** (and then only after a further voice mail message had been left by PIC's counsel), stating that "relevant individuals still employed at Gillette were instructed to search their computers and paper files for any e-mails relating to PIC and that no responsive documents were located other than what already has been produced." (Exhibit 2). This response is wholly inadequate because:

- Gillette has not searched for e-mails to or from individuals who no longer work at the company. As Gillette conceded in briefing, "there has been high turnover at Gillette in the departments that dealt with PIC… Accordingly, most of the employees who used PIC's services no longer are employed by Gillette." (Docket #35 at 2). Thus, Gillette's "search" is calculated *not* to find "most" of the relevant and responsive e-mails.

- Gillette does not explain how it determined which of the remaining Gillette employees are "relevant" for purposes of this inquiry. If an employee sent or received an e-mail including the key words listed above such as "Picone," that person (and the e-mail) is relevant.

- Gillette does not explain how the "remaining" "relevant" individuals performed their searches, what key words were used, whether PIC's suggested key words were used, or even whether these people know how to perform such searching.

The key words suggested by PIC are simple, calculated to lead to the discovery of highly relevant evidence, and will yield few, if any, "false positives." Gillette should be required to perform a system-wide search, including on backup media, for responsive e-mails.

## II.   APPROPRIATE RELIEF AND SANCTIONS FOR GILLETTE'S CONTINUED STONEWALLING

As explained in detail above, PIC has done everything possible to avoid a last-minute showdown. Immediately following the Court's February 1 Order, PIC sent Gillette a detailed letter describing the production it expected in response to that Order. Gillette never responded.

The following week, PIC prompted Gillette on several additional occasions. Gillette did not respond to those communications either.

After informing PIC that it would produce a portion of its documents several days after the deadline set by the Court (indeed, Gillette *still* has not produced the documents that it has *agreed* to produce, i.e., documents not subject to this motion), Gillette finally – late in the evening on Monday, Feb. 14, 2005 – informed PIC that it would *not* produce its foreign catalogs or e-mails, and that it had not contacted its National Trade Show Manager following the Court's Order that it produce all documents concerning use of PIC's images in trade show displays.

Gillette's abusive discovery practices have severely prejudiced PIC. Not only did Gillette fail to comply with the Court's February 11 deadline, Gillette has now belatedly taken the position that it will not produce many of the most important documents at all. PIC is now in the midst of deposing Gillette employees and third parties without the benefit of highly relevant documents about which PIC is entitled to question those individuals. Fact discovery is set to close in just ten (10) days.

Gillette should now be compelled, once and for all, to produce its foreign catalogs, its documents concerning the use of PIC's images in trade show displays (including a complete search and production of relevant documents from the files of Gillette's National Trade Show Manager Bill Spain), and all e-mails including the key words "Picone," "PIC," "picorp" and "Photographic Illustrators."

As a sanction, PIC should be awarded its attorney fees and costs in prosecuting its original Motion to Compel and this Further Motion to Compel. Russell, 208 F.R.D. at 25 (awarding attorney fees incurred in prosecuting first and second motions to compel).

To reduce the prejudice to PIC from Gillette's belated production, PIC should be permitted to depose or re-depose any individual identified in the documents produced, without such deposition(s) counting toward PIC's deposition limit in the case.  Because depositions are scheduled throughout the remaining ten (10) days of fact discovery, PIC should be permitted to take such depositions within a reasonable time after the scheduled close of fact discovery.

### III. CONCLUSION

For the above reasons, PIC requests that the Court enter an Order:

- Requiring Gillette to produce all of its foreign product catalogs within three days.

- Requiring Gillette to produce all documents concerning the use of PIC's images in trade show displays, including a complete search and production of relevant documents from the files of Gillette's National Trade Show Manager Bill Spain, within three days.

- Requiring Gillette to perform the following company-wide keyword search on its e-mail storage systems, including backup media, and to produce all resulting e-mails (notwithstanding any objections), within three days:

    - Picone
    - PIC
    - picorp
    - "Photographic Illustrators"

- Directing Gillette to pay PIC's attorney fees and costs incurred in connection with PIC's original Motion to Compel (Docket #32) and this Further Motion to Compel. Russell, 208 F.R.D. at 25 (awarding attorney fees incurred in prosecuting first and second motions to compel).

- Permitting PIC to depose or re-depose any individual identified in the documents produced pursuant to such Order, within a reasonable time after the scheduled close of fact discovery, without such deposition(s) counting toward PIC's deposition limit in the case.

- 8 -

## CERTIFICATION PURSUANT TO LOCAL RULES 7.1 AND 37.1

The undersigned certifies that counsel for PIC consulted with counsel for Gillette in a good faith effort to narrow the areas of disagreement to the greatest extent possible, but that PIC's effort was unsuccessful. This motion complies with the requirements of Local Rule 37.1.

## LOCAL RULE 5.1(c) REQUEST FOR EMERGENCY CONSIDERATION

Pursuant to Local Rule 5.1(c), PIC respectfully requests that this motion be given emergency consideration because fact discovery is scheduled to close in ten (10) days.

## LOCAL RULE 7.1(d) REQUEST FOR ORAL ARGUMENT

PIC respectfully requests the opportunity to appear for oral argument on this motion.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS CORPORATION,

By its counsel,

Dated: February 15, 2005

/s/ Michael N. Rader
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO # 646990
mrader@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000