UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>      Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>      Defendant. | Civil Action No. 04-10913 WGY |
| THE GILLETTE COMPANY,<br><br>      Counterclaim-Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>      Counterclaim-Defendants. | |

**THE GILLETTE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PHOTOGRAPHIC ILLUSTRATORS CORPORATION'S EMERGENCY MOTION TO FURTHER COMPEAL GILLETTE'S COMPLIANCE WITH THE COURT'S FEB. 1, 2005 ORDER, TO HOLD GILLETTE IN CONTEMPT OF THAT ORDER, AND FOR APPROPRIATE RELIEF AND SANCTIONS**

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP
    Richard M. Gelb (BBO#188240)
    Robert S. Messinger (BBO#651396)
20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009
*Attorneys for Defendant/Counterclaim-Plaintiff*
*The Gillette Company*

**Preliminary Statement**

Plaintiff Photographic Illustrators Corporation ("PIC") is a corporation owned by photographer Paul Picone who, for a dozen years, provided photographs of Gillette's own products to Gillette. During that time, PIC never placed any restrictions on Gillette's use of such photographs nor requested the return of any of the materials it provided to Gillette. Then, in late 2002, apparently disgruntled over its belief that Gillette was changing its policy with respect to the use of outside vendors and that it might lose work from Gillette, PIC concocted the claims that make up its current complaint. Those claims include a still as-yet unspecified series of alleged copyright infringements and a claim that it is entitled to $1,500 for each of the thousands of photographs PIC provided to Gillette since 1992 that Gillette did not return within thirty (30) days of receipt, notwithstanding the fact that PIC has retained its own original transparencies and/or copies of *each and every* photograph it has ever provided to Gillette and thus has suffered no loss.[1]

Because PIC's claims are so weak, it has resorted to a misguided attempt to paint Gillette as "stonewalling" and as violating the Court's Order of February 1, 2005. In fact, Gillette substantially complied with the Court's Order by the deadline and supplemented its production with virtually all responsive documents by February 15, 2005 – only two business days after the Court's deadline and before any deposition of Gillette personnel took place. Notwithstanding Gillette's production of documents on February 15, 2005, PIC chose not to review such

---

[1] Notwithstanding the fact that PIC has retained original transparencies and/or copies of every photograph it has ever provided to Gillette, PIC has misrepresented to both the Court and to Gillette that Gillette's alleged failure to return photographs has deprived PIC of those photographs. For example, in its Motion For Leave To File Second Amended Complaint, PIC represented to the Court that it had retained copies of "some" images and might register additional copyrights once it had access to images in Gillette's possession. (Dkt. No. 14 at 4, n.3.) Similarly, in response to an interrogatory propounded by Gillette, PIC stated that it "has had numerous inquiries by third parties to purchase such images [referring to images not returned by Gillette] for use as stock photos. PIC has repeatedly been forced to decline these inquiries because Gillette had wrongly obtained the original transparencies of such images *such that PIC could not provide them to the third parties who requested them*." (Perkins Ex. **1**) (emphasis supplied).

documents until February 21, 2005. Nor did PIC even approach Gillette about postponing depositions of Gillette employees by a few days to allow it to review documents produced by Gillette. Instead, PIC continued its two-pronged strategy of tarring Gillette before the Court while harassing Gillette with overly broad discovery requests, and discovery practices that are clearly disproportional to PIC's fading claims. After having deposed virtually all of the Gillette witnesses, in some cases for the seven-hour maximum, PIC feigns prejudice in order to get a second chance with <u>all</u> of Gillette's witnesses and legions of as-yet unspecified "other" witnesses. PIC's motion is unjustified.

PIC's current motion is all the more offensive in light of its egregious discovery violations. To this day, and notwithstanding the Court's Order of September 23, 2004 that PIC specify each claimed violation by Gillette, PIC has steadfastly refused to come forward with the details of Gillette's alleged copyright infringements and purported contract breaches. PIC promised to serve supplemental Interrogatory Responses by February 21, 2005 but failed to do so. PIC has refused to articulate the basis for its claims and to fully answer Interrogatories directed at discovering the basis for its claims. As a result, after giving PIC numerous chances to comply with its discovery obligations, Gillette is filing a Motion to Compel.

This is not all. Notwithstanding its representation to Gillette that its document production would be completed no later than February 4, 2005, PIC repeatedly delayed completion of its production, presumably to obtain some tactical advantage. Indeed, since PIC filed its Motion to Compel on January 25, 2005, PIC has produced literally thousands of documents. In fact, just today – the day Gillette's response to the present motion is due and after the close of the discovery period – PIC informed Gillette that it had located and will produce for the first time *four years worth* of files that will undoubtedly total in the many thousands of pages.

In light of Gillette's compliance with the Court's Order any imposition of sanctions would be wholly inappropriate.

## FACTS

**PIC's Discovery Motions**

On January 25, 2005, PIC filed its Motion to Compel Gillette to Produce Documents and Respond to Interrogatories (the "Motion to Compel"). In that Motion, PIC sought to compel production of documents responsive to PIC's Document Requests Nos. 1-8, 16, and 39-43, and responses to Interrogatories Nos. 24-27. Those requests and interrogatories sought the following documents and/or information:

- **Request No. 1** – Copies of all Gillette catalogs containing images created by PIC or containing images whose origin is "uncertain" to Gillette.

- **Request No. 2 –** All documents concerning the use of images created by PIC in Gillette catalogs.

- **Request No. 3 –** Copies of all Gillette product packaging and point of purchase displays containing images created by PIC or containing images whose origin is "uncertain" to Gillette.

- **Request No. 4 -** Copies of all Gillette trade show materials containing images created by PIC or containing images whose origins are "uncertain" to Gillette.

- **Request No. 5** – All documents concerning the use of images created by PIC in Gillette trade show displays.

- **Request No. 6** – Electronic copies of the entire content of Gillette's web sites for the past six years.

- **Request No. 7** – All documents concerning the use of PIC images in Gillette's web sites.

- **Request No. 8 –** All documents concerning any use of images created by PIC on so-called "promotional items."

- **Request No. 16** – All documents concerning Gillette's duplication of images created by PIC or images whose origin is "uncertain" to Gillette.

- **Request No. 39** – All documents concerning gross revenue, costs, and profits for every product advertised or marketed with images provided by PIC.

- **Request No. 40** – All documents concerning Gillette's advertising of every product that Gillette advertised or marketed with images provided by PIC.

- **Request No. 41** – All documents concerning sales of Gillette products that occurred at or resulted from trade shows where Gillette's displays included images provided by PIC.

3

- **Request No. 42** – All documents relating to the effectiveness of Gillette's advertising, trade shows, point of sale displays, or product packaging.

- **Request No. 43** – All documents reflecting the percentage of sales of any Gillette product attributable to advertising.

- **Interrogatory No. 24** – The gross revenue, costs, and profits, broken down by year and product, for every product Gillette advertised or marketed using images provided by PIC.

- **Interrogatory No. 25** – Gillette's advertising expenditures, broken down by year and product, associated with every product that Gillette advertised or marketed with images provided by PIC.

- **Interrogatory No. 26** – An itemization of all sales of Gillette products that occurred at or resulted from trade shows where images provided by PIC appeared.

- **Interrogatory No. 27** – Identification of all documents relating to the effectiveness of Gillette's advertising, trade shows, point of sale displays, or product packaging.

In its Motion, PIC sought, *inter alia*, that Gillette be required to turn over every piece of marketing material containing images about whose origin Gillette was uncertain. (Dkt. No. 38 at 6.) PIC also requested that Gillette be ordered to search for all emails to and from "each of the individuals listed in PIC's initial disclosures" and that such search should include deleted e-mails. (*Id.* at 16.)

On February 1, 2005, the Court denied the majority of PIC's Motion, but ordered Gillette to produce within ten days of the Order: (1) all documents it had previously promised to produce; (2) documents responsive to PIC's Document Request No. 2; (3) documents responsive to PIC's Document Request No. 5; and (4) documents responsive to Document Request No. 14. The Court *did not* order Gillette to produce catalogs that did not contain PIC images, nor did it order Gillette to undertake the expense associated with recovering deleted e-mails.

On February 4, 2005, PIC filed two more motions: (1) one styled as a "Motion to Compel Gillette to Produce Documents Improperly Withheld as Privileged" and (2) another styled as a "Motion for Clarification of the Court's February 1, 2005 Order" that, in reality, was a motion for reconsideration. The privilege motion sought materials clearly protected by the attorney-client privilege and work product doctrine. The so-called "Motion for Clarification" sought reconsideration of the Court's denial of PIC's prior motion to compel documents and

4

information relating to Gillette's gross sales, advertising expenditures, and effectiveness of advertising. On February 10, 2005, the Court issued an order denying both of PIC's motions.

Meanwhile, upon receiving the Court's Order of February 1, 2005, Gillette continued its ongoing search for documents responsive to PIC's document requests and responsive to the Court's Order.

**Gillette's Search For Documents**

Finding documents responsive to PIC's discovery requests was quite challenging because PIC had provided photographs to Gillette since 1992 and because the division with which PIC has worked almost exclusively, the "Business Communications" division, has gone through a number of reorganizations since that time. Moreover, as a result of the many reorganizations, the entire Braun Business Communications unit – the unit with which PIC worked more than any other Gillette business unit, has moved to three different locations—first from its location in Lynnfield, MA to Woburn, MA, then to a facility in South Boston, and finally to its current location in the Prudential Center in Boston. With each change of location, all files associated with the unit that were not destroyed were physically moved as well. (Bechet Decl. ¶ 3.)

Further complicating the search for responsive documents was the fact that most of the Gillette employees that had worked directly with PIC over the years are no longer employed by the company. What is more, the files of former employees are not kept in any formal way at Gillette. Thus, determining whether any such files still exist and where they are located required significant time and effort on Gillette's part. In addition, Gillette does not keep a formal archive or other record of the marketing materials of the sort that sometimes contained photographs provided by PIC. Similarly, Gillette does not keep any formal record identifying the source of any photograph used in Gillette marketing materials or included on Gillette's web sites. (*Id.* ¶ 4.)

Notwithstanding the foregoing challenges, Gillette made significant efforts to find and produce documents responsive to PIC's discovery requests. Under the instruction and supervision of Gillette's in-house counsel, Gillette personnel who had contact with PIC and its principal, Paul Picone, searched their paper files and computer hard drives for any

5

correspondence, including e-mails, to PIC or Picone or concerning them. Those individuals, including but not limited to, Beth Cooper, Jill Josephson, Linda Mallette, Brenda Tattan, and Karen Mullen, also searched for any materials that contained or might contain photographs provided by PIC. (*Id.* ¶ 5.)

Among the categories of documents sought by PIC in its requests were e-mails, both deleted and undeleted. While Gillette has consistently objected to production of deleted e-mails, in an effort to cooperate with PIC, it investigated whether it would be possible to retrieve deleted e-mails and, if so, what would be involved. Gillette keeps backup tapes of deleted e-mails for only two years after they are deleted. After two years, the backup tapes are purged and the e-mails cannot be retrieved. Although Gillette can retrieve an individual's deleted e-mails (up to two years old) from backup tapes, searching the collected emails is a capability that Gillette does not have. Rather, Gillette would have to hire an outside consultant to create a search function or would have to print out and review each e-mail manually. In any event, the Court denied PIC's motion to the extent it required Gillette to search deleted e-mails.

To make matters worse, PIC's posture in the instant motion goes beyond what it requested in its Motion to Compel, where it sought only a search of e-mails of the individuals identified in its Initial Disclosures. (Dkt. No. 38 at 16.) In its current Motion, PIC now requests that the Court order Gillette to search *every* e-mail of Gillette. Two years worth of deleted e-mails for a company the size of Gillette likely would include millions of e-mails. (Bechet Decl. ¶ 6.)

By letter dated January 21, 2005, Gillette's outside counsel informed PIC's counsel that the process of retrieving deleted e-mails is burdensome and time consuming. Nevertheless, in an effort to cooperate, Gillette invited PIC to make a reasonable proposal regarding such deleted e-mails that would not require Gillette to incur undue burden or expense. PIC's only response to Gillette's invitation was to file a Motion to Compel. (*Id.* ¶ 7.)

With respect to e-mails not deleted from the system, each of the individuals fully identified at page 16 of PIC's Motion to Compel that are currently employees of Gillette,

6

namely, Linda Mallette, Karen Mullen, Joyce Lorden, Beth Cooper, Brenda Tattan, Jill Josephson, Nancy Daly, Trish Moriarty, and Barbara Mackin, all searched for any e-mail in any way concerning PIC or its images. All responsive e-mails located have been produced. Moreover, contrary to PIC's suggestion in its current motion (Mot. at 4), Gillette can only search e-mails currently on the system by individual user and does not have the capability to perform the sort of "global e-mail search" suggested by PIC in its current motion. (Bechet Decl. ¶ 9.)

In response to the Court's Order of February 1, 2005, Gillette continued to search for responsive documents to ensure that Gillette would comply with the Court's Order. In an abundance of caution, Gillette decided to be over-inclusive to ensure it did not run afoul of the Court's Order. Specifically, current Gillette employees again searched for Gillette catalogs or any other materials likely to contain images provided by PIC as well as any correspondence that could possibly relate to PIC. In addition, Gillette's accounting department pulled all invoices of certain of Gillette's outside vendors that printed Gillette catalogs or created trade show materials that also might have contained images provided by PIC, regardless of whether those invoices actually concerned projects that in fact contained PIC images. (*Id*. ¶ 11.)

The Gillette employees deposed by PIC, to the extent asked what efforts they made to search for documents, testified to those efforts. (Perkins Decl. ¶¶ 3-8; Perkins Exs. **2-6**.)

Gillette's efforts to meet the Court's deadline were hampered somewhat by health problems. First, on February 9, 2005, the individual in the Gillette legal department coordinating the collection of documents was out sick. Second, on February 10, 2005, Gillette's lead outside counsel on the case, Patrick Perkins, took ill at the deposition of the plaintiff, requiring him to go to the emergency room at the Massachusetts Eye and Ear Infirmary where he underwent treatment and tests, including an MRI. These illnesses, and particularly that to Mr. Perkins, caused Gillette to lose valuable time in completing the search for and production of responsive documents by the Court-ordered deadline. (*Id*. ¶ 12.)

Nevertheless, by the February 11, 2005 deadline, Gillette produced computer disks containing hundreds of electronic images of Gillette products, some of which may have been

7

provided by PIC, as well as approximately 50 pages printed out from another Gillette database. In addition Gillette located the files of a former employee which it produced for inspection on February 11, 2005. These files contained materials relating to catalogs, trade shows, and other marketing materials, some of which contained images provided by PIC. In addition, on Friday, February 11, 2005 Gillette informed counsel for PIC that it would produce additional documents for inspection on the following Monday, February 14, 2005. As was explained to PIC, these additional documents would have been produced on February 11th except that Gillette fell behind because of Mr. Perkins' illness. (*Id.* ¶ 13.)

Notwithstanding the passing of the Court's deadline, consistent with its continuing discovery obligations, Gillette continued its search for responsive documents and continues such search presently. On Tuesday, February 15, 2005, the second business days after the Court's deadline, Gillette located an additional set of filing cabinets that appeared to contain responsive documents. These cabinets had not been searched previously because they are not "assigned" to any employee and are not actively used. Rather, the cabinets were storage of old materials relating to the Braun brand. Rather than delay production of these filing cabinets by reviewing their contents prior to production to determine whether they in fact contained responsive documents, in the early afternoon of February 15, 2005, Gillette informed PIC that they were available for inspection. At that time Gillette also produced for inspection several albums of photographs of Gillette trade show booths, additional transparencies of photographs that Gillette found mis-filed, and a binder of additional marketing material. Notwithstanding having been

8

made available to PIC for review on February 15, PIC's **counsel opted not to review the materials until the following Monday, February 21, 2005**.[2] (*Id*. ¶ 14.)

On Wednesday, February 16, 2005, Gillette also asked one of its employees, Jill Josephson, to produce documents from her personal home files. These documents were from her personal portfolio of work, and contained marketing materials featuring photographs provided by PIC for both Gillette, as well as for Sylvania, Ms. Josephson's former employer. These documents were produced prior to Ms. Josephson's deposition. (*Id*. ¶ 15.) Similarly, Gillette employee Linda Mallette located a small volume of additional responsive materials after the Court's deadline and Gillette produced such documents before the start of Ms. Mallette's deposition on February 22, 2005. (*Id*. ¶ 16.)

At their respective depositions, Gillette employees who were asked what they did to search for documents all testified in detail about such efforts. (Perkins Decl. ¶¶ 3-7; Perkins Exs. **2-7**.)

Thus, Gillette had substantially complied with the Court's Order by February 11, 2005 and, by February 15, 2005, only two business days thereafter, had produced virtually all documents in its possession that could relate to the case. Significantly, the first deposition of a Gillette employee and corporate representative, Beth Cooper, was scheduled for February 16, 2005. PIC did not request to reschedule the deposition to so that it could review the documents produced by Gillette. (Perkins Decl. ¶ 9.) Instead, PIC pressed forward with the deposition of Ms. Cooper for nearly a full seven hours. PIC also decided to go forward with the deposition of

---

[2] While PIC seeks to condemn Gillette for supplementing its document production two business days after the Court's deadline, PIC itself has engaged in a constant pattern of delay of its document production. PIC's response to Gillette's document production was due on November 29, 2004. On December 1, 2004, Gillette first inquired when it would receive documents. PIC put Gillette off for almost the entire month of December, with the wave of PIC's production not produced until the first week in January 2005. On January 20, 2005, PIC promised production would be complete no later than January 28, 2005. That deadline was then changed again to February 4, 2005. However, since February 4, 2005, PIC has produced thousands of pages of documents and has informed Gillette *today* that it has located another four years worth of responsive documents that are likely to total in the thousands of pages. (Perkins Decl. ¶ 11.)

9

Gillette employee Jill Josephson February 17, 2005, without requesting to reschedule her deposition. PIC continued its depositions of Gillette employees Brenda Tattan and Nancy Dwyer on February 18, 2005. Never once did PIC ask to reschedule the depositions of any of the specifically noticed Gillette employees. (*Id.*)

Notwithstanding Gillette's compliance with the Court's Order, on February 22, 2005, counsel for Gillette contacted counsel for PIC to suggest that the parties ask the Court for a modest 30-day extension of the discovery period in order to ensure that all parties have sufficient time to complete discovery in an orderly fashion. (Perkins Ex. **7**.) The following day, counsel for Gillette sent an e-mail to counsel for PIC reiterating Gillette's suggestion that the parties seek a 30-day extension of the discovery period. (*Id.*) PIC's counsel responded by expressing apprehension about the "purpose or intent behind Gillette's proposal for a blanket 30-day extension of discovery for all purposes" and asking to know what additional discovery Gillette was considering. PIC's counsel also claimed that that only PIC (and not Gillette) should be entitled to additional discovery. (*Id.*) PIC suggested that the parties simply agree on dates in March to complete the discovery events already agreed to and that PIC be permitted "additional follow-up discovery" in order to ensure that it is not prejudiced. (*Id.*)

Counsel for Gillette responded by explaining that Gillette had no current plans for additional discovery and disagreeing with PIC's suggestion that only PIC was entitled to an extension of discovery. Gillette then agreed to PIC's suggestion that the parties tie up loose ends in March. Specifically, PIC had committed to producing its 30(b)(6) witness as well as counterclaim defendant Paul Picone personally in March. In addition, at PIC's request, Gillette agreed to reschedule the deposition of Gillette witnesses on approximately three topics from PIC's 30(b)(6) notice of deposition not covered by prior witnesses. With respect to re-deposing Gillette witnesses that had already been deposed, Gillette agreed to consider any such request once PIC identifies whom it wishes to re-depose and why. Gillette committed to cooperate with re-deposing Gillette employees for a limited time on any documents that were produced after the deposition of a given witness. (*Id.*) Notwithstanding Gillette's compliance with the Court's

10

February 1, 2005 Order and its offer of cooperation, PIC has nonetheless insisted on pressing forward with the instant ill-advised motion.

## ARGUMENT

PIC's present motion – the third discovery motion after its initial Motion to Compel – is, in part, another Motion for Reconsideration and, in part, mooted by Gillette's substantial compliance with the Court's February 1, 2005 Order. What is more, PIC's claim of some undefined prejudice rings hollow in light of its decision to wait **five days** between the time Gillette's documents were produced and when it chose to review them. As set forth below, PIC's current is entirely without merit and should be dismissed.

Moreover, the motion is moot. While PIC makes much of having received documents after the Court-ordered deadline, PIC has not been prejudiced by Gillette's production of documents after that date.

## I.   GILLETTE HAS LOCATED NO FOREIGN CATALOGS CONTAINING PIC PHOTOGRAPHS

By its silence, PIC concedes that Gillette has complied with the Court's Order in producing responsive catalogs. PIC seeks to fabricate an issue by claiming that Gillette has "refused" to produce foreign catalogs. (Mot. at 1.) This is simply false. Rather, Gillette has been unable to locate any foreign catalog in its Boston office that contains an image provided by PIC. (Bechet Decl. ¶ 17.)[3] While arguing that Gillette should turn over its foreign *catalogs* containing PIC images, PIC implies that it has evidence that Gillette has used PIC images in catalogs abroad. (Mot. at 1.) However, PIC's own arguments make clear that it has **no evidence** of use of a PIC image in a foreign catalog. Instead, PIC only claims to have "independent evidence that its images were used abroad." (*Id.*) In fact, the so-called "independent evidence" of use of its "images" abroad, is a one-page document, featuring one image, with writing in

---

[3] Gillette's statement, relied upon by PIC, that Gillette's "foreign offices create catalogs and other marketing materials locally and thus would not have used photographs provided by PIC" (Mot. at 2; PIC Ex. 2) was not a refusal to turn over foreign catalogs that contain images provided by PIC but an explanation as to why none were located.

11

Spanish on it. Neither PIC nor Gillette know what the document represents, who prepared it or when. However, one thing is certain - the document is not evidence of a foreign *catalog* use.

What PIC is attempting to do with its argument concerning foreign catalogs is to re-argue its request in the original Motion to Compel that, in reliance upon its Request No. 1, Gillette be required to produce catalogs, including foreign catalogs, "containing images with uncertain origins." (Dkt. No. 38 at 5.) Of course, compliance with such request would require Gillette to produce virtually every catalog it has produced throughout the world. PIC betrays this true intention by now asserting that "Gillette should be compelled to produce ***all*** of its product catalogs, including its foreign catalogs, forthwith." (Mot. at 3) (emphasis in original).

However, the Court has already denied PIC's motion to compel Gillette to produce *every* Gillette catalog. Rather, with regard to catalogs, Gillette was ordered to produce only documents concerning the use of images *created by PIC* in Gillette catalogs. PIC should not be permitted to reargue its prior, unsuccessful motion seeking production of every Gillette catalog ever produced by fabricating a non-existent discovery violation. Gillette has complied with the Court's Order as it pertains to catalogs.

## II.   GILLETTE HAS ALL TRADE SHOW MATERIALS IN ITS POSSESSION

On February 11, 2005, the deadline set by the Court, Gillette produced documents that included trade show materials. Additional trade show materials were produced on February 14, 2005. (Bechet Decl. ¶¶ 13-14.) At 8:30 p.m. on February 14, 2005, counsel for PIC sent an e-mail stating that it was aware the Gillette employee Bill Spain maintained a collection of photographs of Gillette trade show booths. Gillette's outside counsel stated it was not aware of Mr. Spain but would look into it. (PIC Ex. 2.) Contrary to PIC's accusation, Mr. Spain had been consulted with respect to producing documents prior to February 15, just not by Gillette outside counsel. (Perkins Decl. ¶ 10.) Instead, as Gillette' outside counsel discovered on February 15, Mr. Spain had been contacted but did not understand that his collection of photographs of trade show booths would be responsive to PIC's discovery requests. (*Id.*) On February 15, the day

12

after PIC raised the issue and the day PIC filed its current motion, Gillette supplemented its production and produced Mr. Spain's collection of trade show photographs. (*Id.*)

In sum, by February 15, 2005, Gillette had produced all responsive documents relating to trade shows that did include or might have included PIC's images. (Bechet Decl. ¶¶ 11, 13.) PIC can claim no prejudice since it did not depose its first Gillette witness until February 16, 2005.

### III. GILLETTE HAS PRODUCED ALL RESPONSIVE E-MAILS NOT PREVIOUSLY DELETED AND WAS NOT REQUIRED BY THE COURT TO RETRIEVE DELETED E-MAILS

Gillette has produced all e-mails concerning PIC or Paul Picone it has been able to find. Indeed, Gillette has complied with PIC's request in its Motion to Compel that it search the e-mail files of each of the individuals fully identified by PIC in its Motion to Compel that are currently employees of Gillette, specifically, Linda Mallette, Karen Mullen, Joyce Lorden, Beth Cooper, Brenda Tattan, Jill Josephson, Nancy Daly, Trish Moriarty, and Barbara Mackin, all searched for any e-mail in any way concerning PIC or its images. (Bechet Decl. ¶ 9.) Because the e-mails of former employees are not kept, Gillette was unable to search for the e-mails of only four individuals named by PIC in its original motion, namely, Michele Sager, Nadine Romano, Anna Madden, and Gary Gibson. (*Id.*)

Confronted with the fact that Gillette has complied with the Court's Order, PIC tries to claim that Gillette is required to produce deleted e-mails pursuant to the Court's February 1, 2005 Order that Gillette comply with Request No. 14. (Mot. at 4-5.) PIC fails to disclose to the Court that its Motion to Compel separately briefed the issue of deleted electronic mail, that Request No. 14 was not mentioned in connection with this subject, and that the Courts Order on PIC's Motion to Compel does not refer to deleted e-mails at all. (Dkt. No. 38 at 14-16.) In response to PIC's arguments on electronic mail, Gillette expressly stated that it had not produced deleted e-mails and cited to specific cases concerning the need for cost-shifting where retrieval of deleted and back-up electronic data will be burdensome. (Gillette Brf. At 5.)

13

In this Motion, PIC makes the flip suggestion that Gillette simply perform a "search" on key words "Picone," "PIC," "picorp," and "Photographic Illustrators" and simply turn over the documents. (Mot. at 4.) Moreover, in the current Motion, PIC "moves the finish line" from what it requested in its prior Motion to Compel, requesting not just a search of the deleted e-mails of certain employees but now seeking an order requiring Gillette to search of *every* e-mail.

However, as Gillette explained to PIC by letter dated January 21, 2005, the process of retrieving deleted e-mails is burdensome and time consuming. (Bechet Ex. **A**.) Gillette keeps backup tapes of deleted e-mails for only two years after they are deleted. After two years, the backup tapes are purged and the e-mails cannot be retrieved. Although Gillette can retrieve an individual's deleted e-mails (up to two years old) from backup tapes, searching the collected emails is a capability that Gillette does not have. Rather, Gillette would have to hire an outside consultant to create a search function or would have to print out and review each e-mail manually. Two years worth of deleted e-mails for a company the size of Gillette likely would include millions of e-mails. (Bechet Decl. ¶ 6.)

As Gillette argued in response to PIC's prior Motion to Compel, Courts typically have not required a producing party to undertake the burden and expense of retrieving deleted electronic data. In *Cognex Corp. v. Electro Scientific Industries, Inc.*, 2002 WL 32309413 (D. Mass. Feb. 14, 2001), a decision involving a motion to compel production of electronic back-up tapes, Judge Lindsay held that "[t]he failure to search back-up tapes itself cannot have been bad faith – the case law does not establish a general duty to search back-up tapes." *Id.* at *5, citing, *McPeek v. Ashcroft,* 202 F.R.D. 31, 33 (D.D.C. 2001). The court also cited to the 1993 Advisory Committee note to Rule 26, Section b, which states, "[t]he information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression . . . The revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery." *Id* at *3. Those revisions include granting to the Court the right limit discovery if the "burden or expense of the proposed discovery outweighs

14

its likely benefit, taking into account the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2).

In *Cognex*, the moving party sought production of back up tapes in the defendant's possession. The court recognized that these back-ups "may well contain relevant documents." *Cognex*, at *1-2. In response to the motion to compel, the defendant demonstrated the burden and expense required to search the back-up tapes. The moving party stated that it would undertake the cost and burden of the search. *Id.* at *3. In response, the Court held that whether the defendant "should be compelled at its own cost and expense to undertake the search requested by [the moving party], the answer would be obvious in light of the facts and circumstances here." *Id.* Those "facts and circumstances," included the astronomical cost of the search. *Id.* Moreover, notwithstanding the moving party's offer to bear the burden of the cost associated with the search, the Court nonetheless denied the motion. *Id*. at *4-5.

In this case, PIC has not offered to undertake the burden and expense of searching back-up electronic media, a process that would be costly and burdensome to Gillette. (Bechet Decl. ¶ 7.) Nor has PIC made any showing as to why the law in this District that there is no general duty to search back-up tapes should be altered here to put Gillette to the burden of such a duty.[4]

Gillette has complied with its discovery obligations and with the Court's Order of February 1, 2005 as they relate to the search for and production of electronic mail.

---

[4] It is clear that PIC seeks a double standard on the issue of searching for and producing deleted e-mails. On February 17, 2005, Gillette requested that PIC advise what search, if any, PIC conducted of deleted e-mails and other electronic data in response to Gillette's document requests. To date, PIC has provided no response. (Perkins Decl. ¶ 12, Ex. **8**.)

15

## CONCLUSION

For the foregoing reasons, PIC's motion should be denied in its entirety.

Dated: March 1st, 2005                     FROSS ZELNICK LEHRMAN & ZISSU, P.C.

                                           By: /s/Patrick T. Perkins/
                                                Patrick T. Perkins (Admitted *pro hac vice*)
                                                David Donahue (Admitted *pro hac vice*)
                                           886 United Nations Plaza
                                           New York, New York 10017
                                           Ph: (212) 813-5900
                                           Fax: (212) 813-5901

                                           GELB & GELB LLP

                                           By: /s/Richard M. Gelb/
                                                Richard M. Gelb (BBO#188240)
                                                rgelb@gelbgelb.com
                                                Robert S. Messinger (BBO# 651396)
                                                rmessinger@gelbgelb.com

                                           20 Custom House Street
                                           Boston, MA  02110
                                           Tel: (617) 345-0010
                                           Fax: (617) 345-0009

                                           *Attorneys for Defendant/Counterclaim-Plaintiff
                                           The Gillette Company*

I:\PPERKINS\GLTC\General\Opp. PIC Mot. For Sanctions.doc