UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>Defendant. | Civil Action No. 04-10913 WGY<br><br>**DECLARATION OF LEON BECHET IN OPPOSITION TO PHOTOGRAPHIC ILLUSTRATORS CORPORATION'S MOTION TO FURTHER COMPEL COMPLIANCE WITH THE COURT'S FEBRUARY 1, 2005 ORDER, TO HOLD GILLETTE IN CONTEMPT OF THAT ORDER, AND FOR APPROPRIATE RELIEF AND SANCTIONS** |

Leon Bechet hereby declares:

1. I am an attorney employed as Deputy Trademark Counsel for defendant The Gillette Company ("Gillette"). My responsibilities include the direct supervision of Gillette's outside counsel and Gillette's in-house legal department in connection with this litigation. I submit this declaration in opposition to the motion of plaintiff Photographic Illustrators Corporation ("PIC") to Further Compel Compliance with the Court's February 1, 2005 Order, to Hold Gillette in Contempt of That Order, and for Appropriate Relief and Sanctions (the "Motion"). This declaration is based on my personal knowledge and matters about which I have been informed by Gillette personnel acting under my supervision.

2. PIC's discovery requests in this action are overbroad, as they seek production of, among other things, "all documents" concerning hundreds of photographs of Gillette's consumer products provided by PIC to several separate Gillette business units and predecessors-in-interest over a twelve year time period, and "all documents" concerning Gillette's use of such photographs in any media over such twelve-year time period. After receiving PIC's discovery requests, Gillette served responses and objections to PIC's discovery requests and produced

documents subject to such objections while continuing to review its files for additional responsive documents in accordance with its obligations under Federal Rules of Civil Procedure 26 and 34.

3. Finding documents responsive to PIC's discovery requests was quite challenging because PIC had provided photographs to Gillette since 1992 and because the department with which PIC has worked almost exclusively, the "Business Communications" unit, has gone through a number of reorganizations since that time. Moreover, as a result of the many reorganizations, the entire Braun Business Communications unit has moved to three different locations—first from its location in Lynfield, MA to Woburn, MA, then to a facility in South Boston, and finally to its current location in the Prudential Center in Boston. With each change of location, all files associated with the unit that were not destroyed, were physically moved as well.

4. Further complicating the search for responsive documents has been the fact that many of the Gillette employees that had worked directly with PIC over the years are no longer with the company. What is more, the files of former employees are not kept in any formal way at Gillette. Thus, determining whether any such files still exist and where they are located required significant time and effort on Gillette's part. In addition, Gillette does not keep a formal "archive" or other record of the marketing materials of the sort that sometimes contained photographs provided by PIC. Similarly, Gillette does not keep any formal record identifying the source of any photograph used in Gillette marketing material or included on Gillette's web sites.

5. Notwithstanding the foregoing challenges, Gillette made significant efforts to find and produce documents responsive to PIC's discovery requests. Under my instruction and supervision, Gillette personnel who had contact with PIC and Picone searched their paper files and computer hard drives for any correspondence, including e-mails, to PIC or Picone or concerning them. Those individuals, including but not limited to, Beth Cooper, Jill Josephson,

Linda Mallette, Brenda Tattan, and Karen Mullen also searched for any materials that contained or might contain photographs provided by PIC.

6. Among the categories of documents sought by PIC in its requests were e-mails, both deleted and undeleted. We objected to production of deleted e-mails. Nevertheless, in an effort to cooperate with PIC, I investigated whether it would be possible to retrieve deleted e-mails and, if so, what would be involved. I learned that Gillette keeps backup tapes of deleted e-mails for only two years after they are deleted. After two years, the backup tapes are purged and the e-mails cannot be retrieved. Although Gillette can retrieve an individual's deleted e-mails (up to two years old) from backup tapes, searching the collected emails is a capability that Gillette does not have. Rather, Gillette would have to hire an outside consultant to create a search function or would have to print out and review each e-mail manually. In its current Motion, PIC does not limit its request to the deleted e-mails of certain employees but instead asks the Court to order Gillette to search of *every* e-mail of Gillette. Two years worth of deleted e-mails for a company the size of Gillette likely would include millions of e-mails.

7. By letter dated January 21, 2005 (a copy of which is attached as **Exhibit A**), Gillette's outside counsel informed PIC's counsel that the process of retrieving deleted e-mails is burdensome and time consuming. Nevertheless, in an effort to cooperate, Gillette invited PIC to make a reasonable proposal regarding such deleted e-mails that would not require Gillette to incur undue burden or expense. PIC's only response to Gillette's invitation was to file a Motion to Compel.

8. On January 25, 2005, PIC filed its Motion to Compel Gillette To Produce Documents And Respond To Interrogatories (the "Motion to Compel"). At pages 14-16, that motion included, *inter alia*, a section devoted to electronic mail, including deleted e-mails. On February 1, 2005, the Court issued its Order, denying in part and granting in part PIC's motion. We understand the Order to deny PIC's motion as to deleted e-mails.

3

9. With respect to e-mails not deleted from the system, each of the individuals fully identified at page 16 of PIC's Motion to Compel that are currently employees of Gillette, namely, Linda Mallette, Karen Mullen, Joyce Lorden, Beth Cooper, Brenda Tattan, Jill Josephson, Nancy Daly, Trish Moriarty, and Barbara Mackin, all searched for any e-mail in any way concerning PIC or its images. All responsive e-mails located have been produced. Moreover, contrary to PIC's suggestion in its current motion, Gillette can only search e-mails currently on the system by individual user and does not have the capability to perform the sort of "global e-mail search" suggested by PIC in its current motion. Because the e-mails of former employees are not kept, Gillette was unable to search for the e-mails of only four individuals named by PIC in its original motion, namely, Michele Sager, Nadine Romano, Anna Madden, and Gary Gibson.

10. As stated above, on January 25, 2005, PIC made its Motion to Compel. In that motion, PIC sought to compel production of documents responsive to PIC's Document Requests Nos. 1-8, 16, and 39-43, and responses to Interrogatories Nos. 24-27. In an Order dated February 1, 2005, the Court Ordered Gillette to produce within ten days of the Order: (1) all documents it had previously promised to produce; (2) documents responsive to PIC's Document Request No. 2 which seeks "all documents concerning the use of images created by PIC in Gillette catalogs"; (3) documents responsive to PIC's Document Request No. 5 which seeks "all documents concerning the use of images created by PIC in Gillette trade shows"; and (4) documents responsive to Document Request No. 14 which seeks "all documents concerning PIC or PIC's images." PIC's motion as to the remaining 11 document requests and four interrogatories was denied.

11. In response to the Court's Order, under my direction and supervision, Gillette re-doubled its continuing efforts to search for responsive documents to ensure that Gillette would comply with the Court's Order. In an abundance of caution, Gillette decided to be over-inclusive to ensure it did not run afoul of the Court's Order. Specifically, current Gillette employees again searched for Gillette catalogs or any other materials likely to contain images provided by PIC as

4

well as any correspondence that could possibly relate to PIC. In addition, Gillette's accounting department pulled all invoices of certain of Gillette's outside vendors that printed Gillette catalogs or created trade show materials that also might have contained images provided by PIC, regardless of whether those invoices actually concerned projects that in fact contained PIC images.

12.     Gillette's efforts to meet the Court's deadline were hampered somewhat by health problems. First, on February 9, 2005, the individual in the Gillette legal department coordinating the collection of documents was out sick. Second, on February 10, 2005, our lead outside counsel on the case, Patrick Perkins, took ill at the deposition of the plaintiff, requiring him to go to the emergency room at the Massachusetts Eye and Ear Infirmary where he underwent treatment and tests, including an MRI. These illnesses, and particularly that to Mr. Perkins, caused us to lose valuable time in completing the search for and production of responsive documents.

13.     Nevertheless, by the February 11, 2005 deadline, Gillette produced computer disks containing dozens of electronic images of Gillette products, some of which may have been provided by PIC, as well as approximately 50 pages printed out from another Gillette database. In addition Gillette located the files of a former employee which it produced for inspection on February 11, 2005. These files contained materials relating to catalogs, trade shows, and other marketing materials, some of which contained images provided by PIC. In addition, on Friday, February 11, 2005 Gillette informed counsel for PIC that it would produce additional documents for inspection on the following Monday, February 14, 2005. As was explained to PIC, these additional documents would have been produced on February 11th except that Gillette fell behind because of Mr. Perkins' illness.

14.     Notwithstanding the passing of the Court's deadline, consistent with its continuing discovery obligations, Gillette continued its search for responsive documents and continues such search presently. On Tuesday, February 15, 2005, two business days after the

Court's deadline, Gillette located an additional set of filing cabinets that appeared to contain responsive documents. These cabinets had not been searched previously because they are not "assigned" to any employee and are not actively used. Rather, the cabinets were storage of old materials relating to the Braun brand. Rather than delay production of these filing cabinets by reviewing their contents prior to production to determine whether they in fact contained responsive documents, in the early afternoon of February 15, 2005, we informed PIC that they were available for inspection. At that time we also produced for inspection several albums of photographs of Gillette trade show booths, additional transparencies of photographs that Gillette found mis-filed, and a binder of additional marketing material. Notwithstanding having been made available to PIC for review on February 15, PIC's counsel opted not to review the materials until the following Monday, February 21, 2005.

15. On Wednesday, February 16, 2005, Gillette also asked one of its employees, Jill Josephson, to produce documents from her personal home files. These documents were from her personal portfolio of work, and contained marketing materials featuring photographs provided by PIC for both Gillette, as well as for Sylvania, Ms. Josephson's former employer. These documents were produced prior to Ms. Josephson's deposition.

16. Finally, Gillette employee Linda Mallette located a small volume of additional responsive materials after the Court's deadline. Those materials were produced to PIC before Ms. Mallette's deposition.

17. PIC's current motion also makes reference to foreign catalogs that it claims contain images created by PIC. Gillette has been unable to find any evidence of any Gillette catalog used outside of the United States that contains any image provided by PIC.
I hereby declare under penalty of perjury that the foregoing is true and correct.
Executed at Boston, Massachusetts this 28th day of February, 2005.

                                    /s/ Leon Bechet
                                    Leon Bechet

# BECHET EX. A

# FROSS ZELNICK LEHRMAN & ZISSU, P.C.

RONALD J. LEHRMAN
DAVID WEILD III
STEPHEN BIGGER
MICHAEL I. DAVIS
ROGER L. ZISSU
MARIE V. DRISCOLL
RICHARD Z. LEHV
DAVID W. EHRLICH
SUSAN UPTON DOUGLASS
JANET L. HOFFMAN
PETER J. SILVERMAN
LAWRENCE ELI APOLZON
BARBARA A. SOLOMON
LISA PEARSON
MARK D. ENGELMANN
NADINE H. JACOBSON
ANDREW N. FREDBECK
GEORGES NAHITCHEVANSKY
CRAIG S. MENDE
PATRICK T. PERKINS
J. ALLISON STRICKLAND
JOHN P. MARGIOTTA
MARIA A. SCUNGIO

866 UNITED NATIONS PLAZA
AT FIRST AVENUE & 48TH STREET
NEW YORK, N.Y. 10017

TELEPHONE: (212) 813-5900
FACSIMILE: (212) 813-5901
E-MAIL: fzlz@frosszelnick.com

JAMES D. SILBERSTEIN
RUTH E. LAZAR
JOYCE M. FERRARO
PHILIP T. SHANNON
MICHELLE P. FOXMAN
   COUNSEL

ROBERT A. BECKER
TAMAR NIV BESSINGER
ANGELA KIM
LYDIA T. GOBENA
MICHAEL CHIAPPETTA
JESSICA MANN
EVAN GOURVITZ
CARLOS CUCURELLA
NANCY C. DICONZA
ZOE HILDEN
LAUREN J. MANDELL
JAMES D. WEINBERGER
JASON M. VOGEL
VEJAY G. LALLA
DAVID I. GREENBAUM
DAVID DONAHUE
CHARLOTTA MEDER
MELISSA A. ANTONECCHIA
NANCY E. SABARRA
LAURA POPP-ROSENBERG

January 21, 2005

**VIA FACSIMILE**

Michael N. Rader, Esq.
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206

    Re: *Photographic Illustrators Corp. v. Gillette*, 04-CIV-10913-WGY
        (Our Ref: GLTC USA TC 0420298)

Dear Michael:

    I write in response to your letter of January 20, 2005 addressed to David Donahue in an effort to obviate the need for motion practice. I address your points in the order set forth in your letter. Please note that Gillette reserves the right to supplement its responses in accordance with Rule 26 (e) of the Federal Rules of Civil Procedure.

## I.    ELECTRONIC MAIL AND DOCUMENTS

    You have requested "all documents – including electronic documents – concerning the use of PIC's images in various media." You have also requested "all documents – including electronic documents – concerning any communications between Gillette and PIC, between Gillette and any third party, and internal to Gillette, concerning PIC's images or PIC" and "all e-mail communications concerning the subject matter of this case" and "concerning PIC or Mr. Picone."

    Our client has advised us that on several occasions all Gillette personnel who had contact with PIC and Mr. Picone were instructed to search their paper files and computer hard drives for any of the responsive documents set forth above, including e-mails. We

Michael N. Rader, Esq.
January 21, 2005
Page 2

are told by the client that all responsive documents have been gathered and produced to you.

It is our understanding that process of retrieving deleted e-mails is burdensome and time-consuming – particularly in light of the broad nature of your request. However, Gillette is willing to cooperate and is open to any reasonable proposal you might have in connection with deleted e-mails that will not require Gillette to incur undue burden and expense.

## II. ELECTRONIC COPIES OF GILLETTE'S WEB SITES

You have requested "electronic copies of all of Gillette's web sites, annually for the past six years." We have been advised that Gillette's IT personnel confirmed that it does not keep any prior electronic version of its web sites. Gillette has also confirmed that the entity that operates Gillette's web sites also does not keep any such materials.

As for your request for an electronic copy of the current web site, we believe such request is not appropriate. The web site is publicly available to you for review. If you would like us to print out each page of the Gillette web site, we will do so at your request.

## III. DOCUMENTS RELATED TO GILLETTE'S INVESTIGATION AND INDEX OF PHOTOGRAPHIC MATERIALS

You have asked for "all documents concerning Gillette's investigation of PIC's images, including the index that Gillette stated it created." Your letter, however, misstates our response. In response to Request No. 15 we stated, in relevant part, that "Gillette will produce *non-privileged* documents currently in Gillette's possession, custody or control, *if any*, responsive to this Request." (Emphasis added.) The documents you list in your letter are protected by the work product privilege as they were prepared in the anticipation of litigation in response to your client's claim. No non-privileged documents responsive to the request exist.

## IV. CATALOGS AND OTHER MARKETING MATERIALS

Your Request No. 1 calls for "all of Gillette's catalogs containing PIC's images." Gillette has advised us that it has directed all relevant Gillette personnel to gather all catalogs, brochures and other marketing materials in Gillette's possession that may contain PIC photographs. Additional responsive materials have just been located and will be produced to you next week. In addition, with respect to the 2004 and 2005 materials, we will ask the client to gather them and will produce them to you.

Michael N. Rader, Esq.
January 21, 2005
Page 3

## V. INVOICES

Gillette has advised us that its accounting department has produced all of the invoices in its files. As you know, we have objected to production of invoices prior to December 1997 since any claim thereon is barred by the statute of limitations. Nevertheless, we have asked Gillette to search its records to determine whether it even has invoices going back that far and whether the invoices kept by the accounting department include PIC's purported terms on the reverse side.

## VI. TRADE SHOW DISPLAYS

You have requested "production of all trade show booths." You also state that you are "aware that Gillette employs a photographer to photograph its trade show booths at every trade show, that Gillette maintains an archive of those photographs, and that Gillette has a trade show group within its organization with responsibility for these items." Please let us know the basis for your claim. Gillette has advised us that it has searched for but could not locate any Gillette trade show displays containing PIC's images and that Gillette does not keep materials concerning trade shows in the normal course of business. We have asked Gillette to determine if there is an archive of trade show booth photographs and whether there is a "trade show group" within Gillette and will get back to you as soon as possible.

## VII. PRIVILEGE LOG

We are aiming for providing a privilege log to you by Monday.

## VIII. DOCUMENTS PERTAINING TO REPRODUCTION OF PIC'S IMAGES

You have asked for "all documents concerning ... duplication" of PIC's images. Gillette has made a reasonable effort to search for responsive materials, all of which have been produced.

## IX. GILLETTE'S REVENUE AND PROFIT INFORMATION

You have requested that Gillette produce a "statement of [its] gross revenues, costs and profits for products that Gillette advertised or marketed using PIC's images, broken down by year and product ... as well as information about Gillette's advertising expenditures and the effectiveness of its advertising ...." Gillette informs us that it does not keep records in the manner you have requested. Moreover, the burden on Gillette to create the kind of "statement" you are requesting is disproportional to what is at issue in the case.

In addition, we note that you have provided no 1st Circuit authority for your novel damage theory. And as for the Ninth Circuit case upon which you do rely, *Polar Bear*

Michael N. Rader, Esq.
January 21, 2005
Page 4

*Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708(9th Cir. 2004), you misstate the holding of the case. In that case, the Ninth Circuit made clear that, "[u]nder § 504(b), actual damages must be suffered 'as a result of the infringement,' and recoverable profits must be 'attributable to the infringement.' From the statutory language, it is apparent that a causal link between the infringement and the monetary remedy sought is a predicate to recovery of both actual damages and profits. We take this opportunity to reaffirm the principle that a plaintiff in a § 504(b) action must establish this causal connection, and that this requirement is akin to tort principles of causation and damages."

As a matter of law, there is no possibility of PIC showing a causal connection between the use of its photographs and any sales of Gillette product.

## X. CONFIDENTIAL DOCUMENTS AND PROTECTIVE ORDER

Gillette is not currently withholding any documents on the basis of confidentiality.

## XI. CONCLUSION

As you can see, we are in agreement on almost every category. Gillette has produced, or is in the process of producing, all responsive documents within its possession, custody, or control. The only issue on which we have not agreed to produce documents is the revenue and profits information.

We hope that, based upon Gillette's full cooperation, you will not file what would be an unnecessary motion.

Very truly yours,

Patrick T. Perkins

cc: Richard Gelb, Esq.

I:\PPERKINS\GLTC\Corr\050121-Ltr.-M - Rader2.doc