UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>       Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>       Defendant. | Civil Action No. 04-10913 WGY |
| THE GILLETTE COMPANY,<br><br>       Counterclaim-Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>       Counterclaim-Defendants. | |

**THE GILLETTE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO COMPEL PLAINTIFF PHOTOGRAPHIC ILLUSTRATORS
CORPORATION TO SUPPLEMENT ITS RESPONSES TO INTERROGATORIES**

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP
    Richard M. Gelb (BBO#188240)
    Robert S. Messinger (BBO#651396)
20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009
*Attorneys for Defendant/Counterclaim-Plaintiff*
*The Gillette Company*

Defendant The Gillette Company ("Gillette") respectfully submits the memorandum of law in support of its motion to compel plaintiff Photographic Illustrators Corporation ("PIC") to supplement its responses to Interrogatories Nos. 1, 2 and 7.

## FACTS

Since the outset of the case, Gillette has been trying to discover the specific basis of PIC's broad claims of copyright infringement and breach of contract. In its pleading, PIC claims generalized "copyright infringement" based upon Gillette's use of PIC photographs beyond an alleged one-year license, or use of photographs without a copyright notice. Because PIC's claims were so ambiguous, on July 15, 2004, Gillette filed a Motion to Dismiss in Part and for a More Definite Statement. On September 23, 2004, the Court ordered PIC to "set forth in their mandatory disclosure to the extent now known the date and circumstance of the alleged misuse." (Sept. 23, 2004 Hearing Tran. at 10.) PIC's mandatory disclosure, served on October 4, 2004, was deficient in that it identified the following limited information concerning three alleged infringements: (1) the photographs; (2) the copyright registration numbers; (3) the date the photographs were allegedly transmitted to Gillette; and (4) an allegation that the three photographs were used beyond the purported one-year license granted to Gillette. (Ex. **1** at 5-6.) However, the mandatory disclosure also referred to eight additional photographs identified as "infringing material" but without any identification of any copyright registration number, the dates the photographs were allegedly provided to Gillette by PIC, or any other information articulating the basis of PIC's claim. (*Id.*)

Rather than make a motion to the Court concerning the deficiency in PIC's mandatory disclosure, Gillette opted instead to serve its First Set of Interrogatories on October 26, 2004, directed, in part, at discovering the basis for PIC's alleged claims. PIC served its responses on November 29, 2004. (Ex. **2**.)

Gillette's Interrogatories Nos. 1 and 2 are straightforward in that they ask PIC to "state the basis" of its copyright and contract claims. (*Id.* at 3, 7.) "State the Basis" is a phrase from

the District's Uniform Definitions in Discovery Requests in Local Rule 26.5.  The relevant

portion of the Rule reads as follows:

> *State the Basis.*  When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

(a)        identify each and every document (and where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b)        identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c)        state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and

(d)        state separately any other fact which forms the basis of the party's information  regarding the alleged facts or conclusions referred to in the interrogatory.

L.R. 26.5 (c) (8).

As set forth more fully below, PIC provided wholly deficient responses to the

Interrogatories.

On December 3, 2004, pursuant to Local Rule 37.1, Gillette wrote to PIC outlining PIC's

deficiencies in its responses to Interrogatories Nos. 1-3 and 5-7 and requesting a telephone

conference.  (Ex. **3**.)  On December 7, 2004, having received no response, Gillette sent a follow-

up e-mail requesting a response to the December 3 letter.  (Ex. **4**.)  PIC responded by e-mail that

day, promising a written response at some unspecified date.  (Ex. **5**.)  No response was ever

provided and no conference ever held.

On January 25, 2005, PIC filed a Motion to Compel and in that motion for the first time

claimed infringement of a photograph of a dollop of shave cream on two product canisters,

infringement of some unidentified copyright right in the packaging for the MACH 3 razor, an

unidentified infringement on a point-of-purchase display at Costco, and alleged infringement of images purportedly provided by PIC on the web sites of Wal-Mart and Bed, Bath & Beyond. (Dkt. No. 32 at 8-11.)  However, other than identifying the images and a bald assertion of "infringement," PIC has never identified any basis for the claim including but not limited to, identification of copyright registrations, when the images were allegedly provided to Gillette, and whether the claims of infringement are based upon use of the images outside the purported one-year license period, use of the images without a copyright notice, or on some other basis. (*Id.*)

On February 10, 2005, in its Reply In Support Of Motion For Clarification Of The Court's February 1, 2005, PIC attached as Exhibit A thereto a list of 234 purported infringements in Gillette catalogs and identified this list as an "update" of its list of alleged infringements. (Dkt. No. 43 at 5 and Ex. A thereto.)  However, this list suffers from the same deficiencies as PIC's responses to interrogatories – they contain none of the bases of the claim, just a bald assertion of infringement.[1]

On February 10, 2005, Gillette commenced the deposition of PIC.  (The deposition was terminated after approximately two hours due tp illness of Gillette's counsel.)  PIC produced Paul Picone as its 30(b)(6) witness.  Mr. Picone testified that he was the person "most knowledgeable" concerning all of the topics on Gillette's Notice of Deposition, including about PIC's claims.  However, during the deposition, whenever Gillette's counsel asked any questions concerning the substance of PIC's claims, PIC's counsel objected to the question as "calling for a legal conclusion," effectively coaching Mr. Picone into providing an evasive answer.[2]

---

[1] The fact that PIC has come up with this "list" of purported infringements only now is particularly troubling since all of the Gillette catalogs containing the purported infringements *come from PIC's own files*.  Thus, PIC was in possession of these catalogs when it filed all three versions of it pleading as well as in October 2004 when it was ordered by the Court to identify any infringements.  However, PIC failed to mention these purported infringements then.

[2] Gillette is not permitted to file any excerpts from Mr. Picone's testimony with the Court because PIC's counsel designated the entire transcript as confidential.

On February 16, 2005, Gillette again requested that PIC supplement its answers to interrogatories to articulate the full basis for its claims. In a tacit acknowledgement that its current responses are deficient, PIC responded that it would supplement its responses by February 21, 2005. (Ex. **6**.) PIC has failed to live up to its promise.

The deposition of PIC and of Paul Picone will be completed in the next few weeks. Gillette will be severely prejudiced if, on the one hand, PIC refuses to "state the basis" of its claims in response to interrogatories, and on the other, PIC's counsel objects to every question at deposition about PIC's claims as calling for a legal conclusion.

### ARGUMENT

## I.    PIC'S RESPONSES TO INTERROGATORIES NOS. 1, 2, AND 7 ARE DEFICIENT

### A.    Interrogatory No. 1

This Interrogatory requests that PIC "state the basis" of any claim of copyright infringement against Gillette. In addition to incorporating the definition of "state the basis" from L.R. 26.5 (c) (8), it requests that PIC's response include: the content of the photo; the date such photo was provided to Gillette; the particular infringing act or acts alleged; the date of such alleged infringing acts; the job number assigned to each photo by PIC; the particular invoice associated with such photo; any consideration received from Gillette for use of the photo; the copyright registration number that covers the photo; and the date PIC learned of the allegedly infringing act. (Ex. **2** at 3.)

The request merely seeks what Gillette has been asking for all along – sufficient facts for Gillette to fully understand PIC's allegations and to allow Gillette to defend itself.

In response, PIC sets forth a lengthy objection. It then states that it will produce documents requesting the reflected information pursuant to Fed. R. Civ. P. 33(d). (*Id.* at 4.) However, Fed. R. Civ. P. 33(d) requires the producing party to identify any responsive documents "in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." Fed. R.

Civ. P. 33(d). Nowhere in its response or in any other document has PIC identified the specific documents it claims is responsive to Interrogatory No. 1. Rather, PIC merely refers in general terms to the "individual job folders for each of the over 500 jobs (or projects) that PIC executed for Gillette over the years." (Ex. **2** at 5.) This is not sufficient to comply with PIC's obligations under Rule 33(d).

Further in its response, PIC states that it will produce its existing copyright registrations. (*Id.*) However, the copyright registrations alone are not responsive to the Interrogatory. PIC is required to identify specific copyright registrations associated with specific photographs PIC claims Gillette has infringed.

PIC goes on to state that it will produce "a box of materials, including many of PIC's original images, that Gillette wrongly provided to third-party laboratory Advanced Photographics to obtain unauthorized copies and duplicates of PIC's images." (*Id.*) This paragraph is equally non-responsive. Simply providing a box of photographs does not "state the basis" of PIC's copyright claims related thereto as that term is defined by the Local Rules, nor does it provide the information expressly requested in the Interrogatory.

PIC's response then goes on to refer to future production of 191 images returned to PIC by Gillette. (*Id.*) This *non-sequitur* is equally non-responsive to the Interrogatory.

PIC's response then goes on to identify the same 11 alleged infringements as those set forth in its mandatory disclosure and vaguely references Fed. R. Civ. P. 33(d). However, the Interrogatory Response provides no further information than what is in the mandatory disclosure and certainly does not identify any document with specificity to be sufficiently responsive. In other words, this portion of PIC's response also falls woefully short as stating the basis of its copyright claim, of providing the express information sought by the Interrogatory, or of meeting PIC's obligation under Rule 33(d). (*Id.* at 5-6.)

PIC concludes its response by conceding that it has Gillette catalogs in its possession that it claims contains infringements that, in violation of the Court's September 23, 2004 Order, it did not identify in its mandatory disclosures.

### B.    Interrogatory No. 2

This Interrogatory requests that PIC "state the basis" of every claim that Gillette breached a purported agreement.  In addition to incorporating the definition of "state the basis" from L.R. 26.5 (c) (8), it requests that PIC's response identify: the actual alleged agreement that was breached; the specific provision of any alleged agreement that has been breached; the specific act that allegedly gives rise to the breach; the date of such alleged breach; to the extent the breach concerns a photograph, the content of the photograph, the date the photograph was provided to Gillette, the particular job number associated with the photograph, the copyright registration number that covers the photograph, and the date of first publication of the photograph; and the date PIC first learned of the breach.  (Ex. **2** at 7.)

As with Interrogatory No. 1, by this request, Gillette is simply trying to know the specific basis of PIC's breach of contract claims.

PIC again begins its response with a lengthy objection.  (*Id.*)  PIC then states that Gillette breached PIC's agreements by doing the following:

(1)    *Failing to return PIC's images* – This response fails to identify which images Gillette failed to return, when such photos were provided to Gillette, which purported agreement pertains to the allegedly unreturned photos.

(2)    *Failing to include proper copyright notices* – This response suffers from the same lack of specificity as the prior one – Which photos? When? Etc.

(3)    *Reproducing and Duplicating PIC's images beyond the temporal and geographic scope of any purported license* – Again, which photos? When? Etc.

(*Id.* at 8.)

The response goes on to provide more non-specific information and, in fact, refers back to PIC's response to Interrogatory No. 1.  (*Id.*)

C.    **Interrogatory No. 7**

This Interrogatory seeks information concerning any use made by PIC of any photograph it provided to Gillette, which information is relevant to, *inter alia*, Gillette's counterclaims.  PIC has provided a non-specific answer but has failed to identify which photos it has used and how.

* * * *

It is now time for PIC identify the basis of its claims.  Gillette will continue to be severely prejudiced in its defense of this suit until PIC surfaces with the specifics of its purported claims.  Thus, Gillette respectfully requests that PIC be required to respond fully to Interrogatories 1, 2, and 7 within five days of the Court's Order on this Motion, and that PIC be required to produce its 30(b)(6) witness and Mr. Picone, respectively, for deposition within a week thereafter.

## CONCLUSION

For the foregoing reasons, Gillette's motion should be granted.

Dated:  March 1st, 2005

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By:___/s/Patrick T. Perkins/_____
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP

By:___/s/Richard M. Gelb/_____
    Richard M. Gelb (BBO#188240)
    rgelb@gelbgelb.com
    Robert S. Messinger (BBO# 651396)
    rmessinger@gelbgelb.com

20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009
*Attorneys for Defendant/Counterclaim-Plaintiff*
*The Gillette Company*

EX. 1

RECEIVED

OCT 0 4 2004

GELB & GELB

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

      Plaintiff,

v.

THE GILLETTE COMPANY,

      Defendant.

Civil Action No. 04-CV-10913-WGY

### PLAINTIFF'S RULE 26(a)(1) DISCLOSURES

Plaintiff Photographic Illustrators Corporation ("PIC"), makes the following initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and D. Mass. Local Rule 26.2. Given the early stage of the case and the fact that discovery has not yet begun, PIC reserves the right to supplement this disclosure as needed to identify additional witnesses, documents and things.

**A.**    **Individuals Likely To Have Discoverable Information**

Each of the individuals listed herein is believed to have discoverable information related to Gillette's misuse and unauthorized duplication of PIC's images, as well as Gillette's refusal to return those images to PIC as required by the parties' contracts. The current and former Gillette employees, as well as Mr. Picone, are believed to have discoverable information related to the formation of the parties' contracts. At least Mr. Picone and Beth Cooper are believed to have discoverable information related to Gillette's false implication that it would pay for the "emergency projects" it induced PIC to handle in Spring 2004.

Other individuals with discoverable information on these and other relevant topics will be identified during discovery.

Paul Picone
Photographic Illustrators Corp.

**Individuals believed to be current employees of Gillette:**

- Linda Mallet

- Karen Mullen

- Michele Sager

- Joyce Lorden

- Beth Cooper

- Brenda Tattan

- Jill Josephson

- Nancy Daly

- Pamela _____ (last name unknown, but her extension at Gillette is 617-463-4075)

**Individuals believed to be former employees of Gillette:**

- Nadine Romano, former Manager of Business Communications

- Trish Moriarty

- Barbara Mackin

- Anna Madden (Note: Ms. Madden was the Gillette requisitioning agent who made the fraudulent representation to Mr. Picone that is referred to in Paragraphs 27 and 60 of PIC's Second Amended Complaint. Based on PIC's investigation to date – and without discovery from Gillette on the matter – the conversation is believed to have occurred in approximately March 2001.)

- Gary Gibson

**Other individuals:**

Rose Rupenian
Advanced Photographics, Inc.
28 Cherry Hill Drive
Danvers, MA 01923
(978) 777-7776

Leslie Van Arken (current address unknown but believed to be known to Gillette)

An appropriate Rule 30(b)(6) witness from Gillette knowledgeable about Gillette's representations to PIC regarding its investigations and/or other matters referenced in the Second Amended Complaint.

**B.**    **Document And Things That May Be Used to Support PIC's Claims Or Defenses**

The following documents and things in PIC's possession, custody or control may be used

to support its claims and defenses:

- Job files for the jobs numbers listed in PIC's Second Amended Complaint (including materials such as invoices, contracts, correspondence and photographic materials).
- Photographic materials belonging to PIC that are known to have been duplicated by Gillette through one or more third-party laboratories without authorization from PIC.
- Printouts from web sites owned and/or operated by Gillette.
- Gillette marketing and promotional materials reflecting unauthorized use of PIC's images such as product catalogs and novelty items.
- A box of images returned by Gillette to PIC and a third-party affidavit regarding the contents of that box.
- Correspondence between PIC and Gillette.

**C.**    **Computation Of Damages**

PIC seeks to recover the damages set forth in its Second Amended Complaint, including,

without limitation the following categories of damages.  PIC notes that discovery has not yet

begun in this case, and the figures provided here may increase as relevant information is obtained

from Gillette bearing on damages issues.

- Pursuant to the contracts between PIC and Gillette, liquidated damages of $1,500

for the photographic materials that Gillette failed to return to PIC as and when required.  Because

Gillette has failed to return at least 7,000 original images, such liquidated damages total at least

$10,500,000.

- Damages for Gillette's unauthorized use of PIC's images beyond the scope of the licenses provided to Gillette in the parties' contracts. An appropriate measure of damages for this unauthorized use would be the amount that PIC would have charged Gillette for a perpetual, worldwide license to use its images across the Gillette organization. PIC's standard practice is to charge an additional 300% of fees for such a license. Because PIC's total fee billings to Gillette total slightly over $1,000,000, PIC's copyright damages total at least $3,000,000.

- Damages for Gillette's failure to include a proper copyright notice on its uses of PIC's images as required by the parties' contracts. Damages for this failure will be quantified by the jury at trial, and will include at least the following elements: (1) lost client work that PIC would have obtained from referrals based on the inclusion of the required copyright notices; and (2) lost revenues associated with unauthorized copying of PIC's images by others that would have respected PIC's copyrights and paid for licenses had the required copyright notices been included.

- Damages resulting from Gillette's unauthorized duplication of PIC's images. The full extent of Gillette's unauthorized duplication will become known during discovery. At this time, PIC estimates that Gillette ordered at least 10,000 unauthorized duplicates. At PIC's standard rate of approximately $60 per duplicate, this comprises at least $600,000 in damages from lost duplication revenue.

- Damages resulting from Gillette's failure to pay outstanding invoices, including the "emergency" photography project Gillette requested of PIC in approximately February 2004. These damages total over $70,000.

- Treble damages under Mass. Gen. L. ch. 93A.

- Damages for multiple counts of fraud, in an amount to be determined by the jury at trial.

- Interest on the above as provided by law.

- Attorneys fees and costs pursuant to the contracts, Chapter 93A, or otherwise.

**D.**  **Insurance Agreements**

Not applicable.

**E.**  **Other**

The following is a statement, to the extent now know, of known examples of Gillette's misuse of PIC's images. Discovery in this case has not begun, and much of the information on this subject is in Gillette's control; Gillette will be required to provide that information to PIC during discovery. PIC reserves the right to supplement these disclosures as the case progresses.

PIC's photograph of the Braun Multiquick Handblender, Copyright Registration No. VA 1-225-338, transmitted to Gillette in or about March 2001, was still posted on Gillette's <theessentials.com> web site (without a proper copyright notice) as of the filing of PIC's First Amended Complaint on June 30, 2004.

PIC's Photograph of the Braun Deluxe Juice Extractor, Copyright Registration No. VA 1-225-240, transmitted to Gillette in or about March 2001, was still posted on Gillette's <theessentials.com> web site as of the filing of PIC's First Amended Complaint on June 30, 2004.

PIC has identified additional infringing material on at least the following pages of Gillette's web site(s):

http://www.gillette.com/household/digital_library/iron.htm
http://www.gillette.com/household/digital_library/blenders.htm
http://www.gillette.com/men/digital_library/flexintegral.htm
http://www.gillette.com/products/appliances.asp

http://www.theessentials.com/store/prodinfo.asp?number=5064&variation=&aitem=5&mitem=9&bc=6_4_1
http://www.theessentials.com/store/prodinfo.asp?number=5033&variation=&aitem=6&mitem=9&bc=6_4_1
http://www.theessentials.com/store/prodinfo.asp?number=5057&variation=&aitem=7&mitem=11&bc=6_8_1
http://www.theessentials.com/store/prodinfo.asp?number=5020&variation=&aitem=10&mitem=11&bc=6_8_1

Gillette has also used at least one of PIC's copyrighted Photographs, Copyright

Registration No. VA 1-225-339, in a Spanish-language catalog circulated in South America.  The

Photograph, which features a kitchen scene, was taken in the kitchen of PIC's President, Mr.

Paul Picone.  Mr. Picone's kitchen is clearly recognizable in the Photograph.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

By its counsel,

Dated: October 4, 2004

Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO # 646990
mrader@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
Tel: (617) 646-8000

## CERTIFICATE OF SERVICE

I certify that on October 4, 2004 a copy of PIC's Rule 26 (a)(1) Disclosures was served upon the following counsel of record by hand:

Richard Gelb, Esq.
20 Custom House St.
Boston, MA 02110

A courtesy copy was also e-mailed to Gillette's attorney, Patrick Perkins of Fross Zelnick Lehrman and Zissu on October 4, 2004.

_____
Michael N. Rader

**EX. 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

      Plaintiff,

v.

THE GILLETTE COMPANY,

      Defendant.

Civil Action No. 04-CV-10913-WGY

## PLAINTIFF'S RESPONSES TO GILLETTE'S FIRST SET OF INTERROGATORIES

Plaintiff Photographic Illustrators Corporation ("PIC") responds to Gillette's First Set of Interrogatories as follows.

PIC's investigations are ongoing and its responses are based on present knowledge and belief. PIC reserves the right to modify or supplement its responses if additional or different information is discovered at a later time.

PIC's responses are not to be construed as a waiver of any right or objection, or as an admission of relevance, materiality, or admissibility of any information or document provided.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

PIC objects to Gillette's definition of "you," "PIC" and "Picone" in Paragraph B to the extent it includes entities not under PIC's control.

PIC objects to Gillette's definition of the term "identify" in Paragraph D to the extent it exceeds the scope provided for that term in D. Mass. Local Rule 26.5(c).

PIC objects to Gillette's request in Paragraph K to the extent it exceeds the requirements of Fed. R. Civ. P. 26(b)(5).

PIC objects to Gillette's request in Paragraph M that PIC provide information to "Opposer," a party that is not identified.

## GENERAL OBJECTIONS TO INTERROGATORIES

PIC objects to Gillette's interrogatories to the extent they:

1.      Are directed to matters which are not relevant to the subject matter at issue in this action and are not reasonably calculated to lead to the discovery of relevant evidence;

2.      Seek information and/or identification of documents that are subject to the attorney-client privilege, constitute work product, or are otherwise immune from discovery (if and to the extent that any documents or information are identified, disclosed, or produced which are so privileged or immune, said identification, disclosure, or production is inadvertent, and is made without waiver of or intent to waive any privilege or immunity, and the return and non-use of said materials is requested);

3.      Seek information and/or identification of documents already known to Gillette, in Gillette's possession, or available from public sources;

4.      Seek information not within PIC's possession, custody or control, or that is not located after a reasonable search (an agreement to produce documents or things is not a representation that such documents or things exist or are within PIC's possession, custody, or control, but rather only that they will be produced if and to the extent they exist, are within PIC's possession, custody, or control, and are located after a reasonable search);

5.      Are overly broad, unduly burdensome and/or oppressive;

6.      Are vague and ambiguous;

7.      Are premature;

8.    Call for information that PIC requires a reasonable opportunity to discover and analyze before providing a complete response;

9.    Call for identification of documents not in existence at the time the suit was initiated or not in PIC's possession, custody or control as of the time the suit was initiated;

10.    Call for identification, in addition to production, of particular documents (pursuant to Fed. R. Civ. P. 33(d) PIC may respond by producing such documents); and/pr

11.    Seek confidential information and/or documents prior to entry of a suitable protective order.

All of the above objections are hereby incorporated into each response below as though fully set forth therein. Subject to the above objections as well as those additional objections noted below, and without waiver of its objections, PIC responds as follows:

**Interrogatory No. 1**

State the basis of any alleged copyright infringement by Gillette of any photo owned by you. To the extent not encompassed within the scope of L.R. 26.5 (a)(c)(8), your answer should also include:

    a.    the content of such photo;
    b.    the date such photo was provided to Gillette;
    c.    the particular infringing act or acts alleged;
    d.    the date of such alleged infringing acts;
    e.    the job number assigned to each photo by you;
    f.    the particular invoice associated with such photo;
    g.    any consideration, including, without limitation, the amount of money received by you from Gillette for its use of the photo.
    h.    the copyright registration number that covers such photo.
    i.    The date you first learned of such infringing act.

**Response**

PIC objects to this interrogatory to the extent it purports to exceed the scope of the definition provided for the phrase "state the basis" in D. Mass. Local Rule 26.5.

PIC objects to this interrogatory as calling for information within Gillette's control that Gillette has not yet provided to PIC as required. For example, Gillette has refused to return PIC's copyrighted images as required by the parties' contracts, and Gillette also has not yet provided PIC with required discovery into Gillette's copyright infringements, many of which are currently unknown to PIC. Indeed, Gillette has communicated to PIC that it is still searching for its own catalogs, which are known by PIC to contain infringements of PIC's copyrights. PIC also has not yet been given an opportunity to inspect other of Gillette's materials that will reveal copyright infringements by Gillette, including but not limited to electronic copies of Gillette's web sites, Gillette's trade show displays, its point of purchase displays, and its product packaging. PIC also has not yet been provided with a list of the entities to whom Gillette distributed PIC's copyrighted images. Thus, it is impossible for PIC to respond fully to this interrogatory without receiving the discovery requested from Gillette. PIC also notes that its discovery requests were served on Gillette earlier in time, such that it is entitled to review Gillette's responsive materials in preparing its own responses to Gillette's discovery requests.

For the same reasons, PIC objects to this interrogatory as premature.

Subject to the foregoing general and specific objections, PIC states as follows:

PIC will produce, pursuant to Fed. R. Civ. P. 33(d), available, non-privileged documents reflecting requested information. The interrogatory also requests information that can be discerned from documents that Gillette has in its own possession and must produce to PIC during discovery.

As an example of the information to be provided in response to this interrogatory pursuant to Rule 33(d), PIC's files include individual job folders for each of the over 500 jobs (or projects) that PIC executed for Gillette over the years. These job folders contain invoices, terms and conditions of the licenses granted to Gillette, records of the number and types of images conveyed to Gillette, and correspondence.

PIC's existing copyright registrations will also be produced. As noted previously, PIC has reserved (and continues to reserve) the right to register additional copyrights as additional infringements by Gillette become known during discovery.

PIC also has a box of materials, including many of PIC's original images, that Gillette wrongly provided to third-party laboratory Advanced Photographics to obtain unauthorized copies and duplicates of PIC's images. This box of materials will also be produced.

PIC also has a small box of approximately 191 images belatedly returned by Gillette to PIC on or about June 27, 2003. This box was opened by a third party court reporter, Alene M. Jennette, who swore to the contents of the box in a 25-page declaration. The box, and Ms. Jennette's declaration regarding its contents, will be produced.

In addition to the above, PIC provides the following responsive information:

PIC's photograph of the Braun Multiquick Handblender, Copyright Registration No. VA 1-225-338, transmitted to Gillette in or about March 2001, was still posted on Gillette's <theessentials.com> web site (without a proper copyright notice) as of the filing of PIC's First Amended Complaint on June 30, 2004. See http://www.theessentials.com/store/prodinfo.asp?number=5063. Documents reflecting additional information related to this image will be made available pursuant to Rule 33(d).

PIC's photograph of the Braun Deluxe Juice Extractor, Copyright Registration No. VA 1-225-240, transmitted to Gillette in or about March 2001, was still posted on Gillette's <theessentials.com> web site as of the filing of PIC's First Amended Complaint on June 30, 2004. See http://www.theessentials.com/store/prodinfo.asp?number=5071. Documents reflecting additional information related to this image will be made available pursuant to Rule 33(d).

As of approximately September 22, 2004 PIC had identified additional infringing material on at least the following pages of Gillette's web site(s):

http://www.gillette.com/household/digital_library/iron.htm
http://www.gillette.com/household/digital_library/blenders.htm
http://www.gillette.com/men/digital_library/flexintegral.htm
http://www.gillette.com/products/appliances.asp
http://www.theessentials.com/store/prodinfo.asp?number=5064&variation=&aitem=5&mitem=9&bc=6_4_1
http://www.theessentials.com/store/prodinfo.asp?number=5033&variation=&aitem=6&mitem=9&bc=6_4_1
http://www.theessentials.com/store/prodinfo.asp?number=5057&variation=&aitem=7&mitem=11&bc=6_8_1
http://www.theessentials.com/store/prodinfo.asp?number=5020&variation=&aitem=10&mitem=11&bc=6_8_1

Documents reflecting additional information related to these infringements will be made available pursuant to Rule 33(d).

Gillette infringed PIC's copyright in another of its photographs, Copyright Registration No. VA 1-225-339, in a Spanish-language catalog circulated in South America. The photograph, which features a kitchen scene, was taken in the kitchen of PIC's President, Mr. Paul Picone. Mr. Picone's kitchen is clearly recognizable in the photograph. Documents reflecting additional information related to these infringements will be made available pursuant to Rule 33(d).

PIC also has a number of Gillette catalogs reflecting numerous infringements of PIC's copyrights. PIC is now in the process of reviewing these catalogs. Gillette must produce the remainder of the catalogs that PIC has requested. PIC will then review such catalogs, as well as other materials obtained in discovery (e.g., electronic copies of Gillette's web sites, Gillette's

trade show displays, its point of purchase displays, its product packaging) to put PIC in a better position to identify Gillette's infringements.

PIC intends to supplement its response to this interrogatory as discovery progresses.

**Interrogatory No. 2**

State the basis for each and every claim that Gillette breached an "agreement." To the extent not encompassed within the scope of L.R. 26.5 (a)(c)(8), your answer should also include the following:

a.     the actual alleged agreement that has been breached;

b.     the specific provision of any alleged agreement that has been breached;

c.     the specific act that allegedly gives rise to a breach;

d.     the date of such alleged breach;

e.     to the extent the breach concerns any photo prepared by you for Gillette, the content of such photo, the date such photo was provided to Gillette, the particular job number associated with such photo, the copyright registration number that covers such photo and the date of first publication of such photo.

f.     the date you first learned of the breach.

**Response**

PIC objects to this interrogatory to the extent it purports to exceed the scope of the definition provided for the phrase "state the basis" in D. Mass. Local Rule 26.5.

PIC objects to this interrogatory as calling for information within Gillette's control that Gillette has not yet provided to PIC as required. For example, Gillette has refused to return PIC's images as required by the parties' contracts, and Gillette also has not yet provided PIC with required discovery into Gillette's breaches of contract.

For the same reasons, PIC objects to this interrogatory as premature.

Subject to the foregoing general and specific objections, PIC states as follows:

Gillette breached its agreements with PIC in at least the following ways:

Gillette failed to return PIC's images as required by Paragraph 10 of the agreements.

Gillette failed to include proper copyright notices on PIC's images as required by Paragraph 9 of the agreements.

Gillette reproduced and duplicated PIC's images beyond the temporal and geographic scope of any license provided by PIC in the agreements and/or without any license.

Gillette refused to pay for images provided by PIC in Spring 2004.

PIC will produce, pursuant to Fed. R. Civ. P. 33(d), available, non-privileged documents reflecting requested information. For example, PIC's job folders contain the parties' agreements, which reflect requested information including the dates on which particular images were transmitted to Gillette. PIC's job folders also contain records of the number and types of images conveyed to Gillette. These records, when compared against the small box of images belatedly returned by Gillette to PIC as noted above, will reflect the number of images that Gillette did not return, in violation of Paragraph 10 of the agreements.

The box of materials wrongly provided by Gillette to Advanced Photographics includes many of PIC's images that also were not returned by Gillette to PIC in violation of Paragraph 10 of the agreements.

Any images that Gillette now produces to PIC in discovery also were not returned to PIC in violation of Paragraph 10 of the agreements.

PIC has materials, including some Gillette catalogs, that reflect Gillette's failure to include proper copyright notices on PIC's images as required by Paragraph 9 of the agreements. As noted above, these materials will be produced.

With regard to Gillette's unauthorized reproduction and duplication of PIC's images, see Response to Interrogatory No. 1.

With regard to Gillette's refusal to pay for images provided by PIC in Spring 2004, PIC will produce its job folders for those jobs.

**Interrogatory No. 3.**

State the basis for your claim that Gillette was required to obtain duplicate photos solely from you and could not obtain such duplicates from third parties.

**Response**

Subject to the foregoing general objections, PIC states as follows:

The Copyright Act reserves to the copyright owner the sole right to reproduce and distribute the copyrighted work. The Copyright Act thus prohibits distribution of copyrighted works without permission of the copyright owner. The agreements between PIC and Gillette expressly provide, in Paragraph 9, that "Client may not sell, assign or otherwise transfer this License, or any rights or obligations under this License without Photographer's prior written consent." No license was granted by PIC to any third parties to whom Gillette distributed PIC's images without permission.

In addition, Gillette was permitted to reproduce images only if such acts of reproduction occurred within the scope of a valid license from PIC. In point of fact, Gillette reproduced photos, including via third party laboratories, outside the one-year period for which Gillette was licensed, and/or without any license (because Gillette failed to meet the conditions of Paragraph 9 of the Agreements for it to obtain reproduction rights).

**Interrogatory No. 4**

State the basis for each and every claim of fraud you allege against Gillette. To the extent not encompassed within the scope of L.R. 26.5 (a)(c)(8), your answer should also include the following:

a.    the substance of any false statement or act upon which your purported claim of fraud is based;

b.    the date such alleged statement or statements or acts were made;

c.    the identity of any person who made such allegedly false statements or acts;

d.    who was the direct recipient of the false statement and by what means (whether in person, by telephone, by letter, etc.

e.    the date you first learned of the alleged fraud.

## Response

PIC objects to this interrogatory to the extent it purports to exceed the scope of the definition provided for the phrase "state the basis" in D. Mass. Local Rule 26.5.

PIC objects to this interrogatory as calling for information within Gillette's control that Gillette has not yet provided to PIC as required. For example, PIC has not yet had the opportunity to depose Anna Madden, who made the false statement described below. Likewise, there may be other statements by Gillette that will prove through discovery to have been false.

For the same reasons, PIC objects to this interrogatory as premature.

Subject to the foregoing general and specific objections, PIC states as follows:

Over time Gillette reduced its purchases of duplicates from PIC on the pretense that it had a reduced need for duplicates, when in fact Gillette was procuring duplicates from third-party laboratories without PIC's permission and in violation of PIC's copyrights.

As one example of this deception, Gillette employee Anna Madden telephoned Mr. Picone to request that PIC provide Gillette with a particular image. When Mr. Picone inquired whether Gillette wanted this image because it planned to duplicate it, Ms. Madden answered in the negative and informed Mr. Picone that Gillette was experiencing a reduced need for duplicates. This statement was false. In fact, Gillette was obtaining duplicates from other sources, such as Advanced Photographics, without PIC's permission.

Based on PIC's investigation to date – and without discovery from Gillette on the matter – the conversation with Ms. Malden is believed to have occurred in approximately March 2001.

On information and belief, the false statement made by Ms. Madden to Mr. Picone was made with an intention that PIC rely upon it and not inquire further regarding Gillette's duplication activities.

PIC relied upon Ms. Madden's false statement and assumed, because of PIC's longstanding relationship with Gillette, that Gillette would not unlawfully bypass PIC in obtaining duplicates.

Gillette falsely implied an intent to pay PIC for work performed in connection with several "emergency" projects in the March-April 2004 time frame.

In or about late February 2004, Beth Cooper of Gillette approached PIC with an "emergency" photography project of significant scope.

Notwithstanding the fact that Ms. Cooper and Gillette were aware of the outstanding disputes between PIC and Gillette which ultimately led to the filing of this lawsuit, Ms. Cooper entreated PIC to assist with the aforementioned emergency project.

Specifically, Ms. Cooper indicated to Mr. Picone that Gillette needed a large volume of photographic work done on extremely short notice in order to prepare for an upcoming housewares show. Ms. Cooper entreated Mr. Picone by phone to assist with this project, and even traveled to PIC's office in Hamilton, Massachusetts to plead her case.

As a gesture of goodwill, PIC agreed to assist Gillette with the project. Given the extensive scope of the project and the short time available in which to complete it, PIC personnel worked night and day for approximately two weeks to complete it.

During this time, PIC received extensive correspondence from Gillette personnel indicating Gillette's gratitude that PIC had accepted the project and conveying satisfaction with the high quality of PIC's work. For instance, Gillette personnel made statements such as "GORGEOUS!!!", "I think it looks terrific!", "You rock! Thanks!", "Thanks for all your help!", and "These look ABSOLUTELY WONDERFUL!!!! Thank you!".

The correspondence transmitted by Gillette to PIC was also calculated to suggest to PIC that its goodwill gesture of taking on the emergency project would assist in resolution of PIC's outstanding disputes with Gillette. For instance, on March 4, 2004, Ms. Cooper wrote to Mr. Picone: "FYI … I left a message for legal this AM and am awaiting followup. Also sent Julie Washington an e-mail ... glad to have you back!"

Following this emergency project, Gillette personnel (including Ms. Cooper and others, such as Gary Gibson) requested that PIC handle additional emergency projects. Once again, Gillette personnel praised PIC's rapid action and high quality, with statements such as "Thanks so much for your help in turning this around so quickly. The images look great!"

In all, PIC handled a total of four such projects for Gillette between March and April of 2004.

Per its standard practices (and the established course of dealing between the parties), PIC invoiced Gillette for the work done, with four invoices dated March 2, 2004, March 17, 2004, March 22, 2004 and April 20, 2004. As always, each invoice was subject to the terms of an Agreement.

Despite these statements to PIC, Gillette refused to pay PIC's invoices

PIC relied upon Gillette's false implications in performing this work, with an expectation that it would be paid for the same. Gillette owes PIC over $70,000 for this work.

Gillette also stonewalled on PIC's claims, making contradictory statements to PIC, one or more of which was false. Gillette first represented to PIC that an investigation into PIC's claims was being performed, and later denied that any such representation had been made.

Specifically, on or about August 13, 2003, Gillette's Deputy General Counsel John B. Gatlin stated to PIC in writing as follows: "We apologize for the untimely manner in which we have complied with these requests." Mr. Gatlin went on to assure PIC that "we are conducting an internal investigation to determine the extent to which" any PIC "images have been used by Gillette or any of its subsidiaries," and that "[w]e will continue with our investigation and forward any relevant information to your attention as it becomes available."

Notwithstanding Mr. Gatlin's assurances that an investigation was ongoing and that Gillette would provide relevant information as it became available, no such information was provided. Despite further attempts by PIC to obtain such information from Gillette, Gillette stonewalled and refused to disclose the results of its investigation.

On May 19, 2004, Gillette's Assistant Trademark Counsel Leon Bechet represented to PIC in writing – in direct contradiction to Mr. Gatlin's earlier written representation – that "no representation was made to you regarding an 'investigation' undertaken by Gillette."

On information and belief, one or more of the aforementioned statements was made with an intention that PIC rely upon it and delay further action with respect to pursuit of PIC's claims against Gillette.

PIC relied upon Mr. Gatlin's statement in delaying the filing of this lawsuit while it awaited the promised results of Gillette's supposed "internal investigation."

Gillette's fraud damaged PIC in an amount to be determined at trial.

In addition to the above, discovery may reveal additional fraud by Gillette.

**Interrogatory No. 5**

State the basis for each and every claim of unfair and deceptive practice by you against

Gillette pursuant to Mass. Gen. L. ch. 93A.

**Response**

See Responses to Interrogatory Nos. 1-4, which are incorporated herein by reference.

Subject to the foregoing general and specific objections, PIC states as follows:

Without limitation of the foregoing, Gillette's pattern of disregard for its contractual

obligations, its fraud, its stonewalling in response to PIC's claims, its refusal to pay outstanding

invoices, and its misrepresentations to PIC (described above), all constitute violations of Chapter

93A.

**Interrogatory No. 6**

With respect to each job number alleged in paragraph 11 of the Second Amended

Complaint, please identify, by job number, all facts related thereto, including but not limited to:

- a.    the date of the project represented by such job number;
- b.    the particular photos and project with which the job number is associated;
- c.    whether, to the extent you are aware, the particular photos associated with the job number were actually used;
- d.    whether, to the extent you are aware, the particular photos associated with the job number were actually published;
- e.    whether Gillette ever requested any duplicates of any of the photos associated with such job number and, if so, when such duplicates were requested;
- f.    all documents concerning the request for duplicates by job number;
- g.    the particular division of Gillette for which the project identified by such job number was performed;
- h.    the individual employees of Gillette with whom you communicated concerning the project identified by such job number;
- i.    all documents concerning each such job number;
- j.    all communications concerning each such job number;

k.   the amount of consideration, including, without limitation, money you received for each such job number;

l.   which, if any, of the photos identified by each job number were returned to you, and if so, when;

m.   each instance, by date, when you expressly requested the return of photos related to a given job number, to whom such request was made and by what means.

n.   each instance, by date, when you became aware of Gillette's use of a photo related to a given job number outside the United States or over one year after the photo was provided to Gillette.

**Response**

PIC objects to this interrogatory as unduly burdensome, in that much of the information requested is better suited to discovery at a deposition than through an interrogatory.

See Responses to Interrogatories 1-2, which are incorporated herein by reference. Subject to the foregoing general and specific objections, PIC states as follows:

Without limitation of the foregoing, PIC will produce, pursuant to Fed. R. Civ. P. 33(d), available, non-privileged documents reflecting requested information.

**Interrogatory No. 7**

Identify any and all uses you have made of any photo prepared for Gillette, including but not limited to:

a.   the content of the photo used;

b.   the job number associated with such photo;

c.   the date of such use;

d.   in what media such photo was used;

e.   the number of copies distributed;

f.   the geographic scope of distribution;

g.   the identity of each recipient of such photos;

h.   any revenues received in connection with your reproduction and/or distribution of such photos.

**EX. 3**

# FROSS ZELNICK LEHRMAN & ZISSU, P.C.

RONALD J. LEHRMAN
DAVID WEILD III
STEPHEN BIGGER
MICHAEL I. DAVIS
ROGER L. ZISSU
MARIE V. DRISCOLL
RICHARD Z. LEHV
DAVID W. EHRLICH
SUSAN UPTON DOUGLASS
JANET L. HOFFMAN
PETER J. SILVERMAN
LAWRENCE ELI APOLZON
BARBARA A. SOLOMON
LISA PEARSON
MARK D. ENGELMANN
NADINE H. JACOBSON
ANDREW N. FREDBECK
GEORGES NAHITCHEVANSKY
CRAIG S. MENDE
PATRICK T. PERKINS
J. ALLISON STRICKLAND
JOHN P. MARGIOTTA
MARIA A. SCUNGIO

866 UNITED NATIONS PLAZA
AT FIRST AVENUE & 48TH STREET
NEW YORK, N.Y. 10017

TELEPHONE: (212) 813-5900
FACSIMILE: (212) 813-5901
E-MAIL: fzlz@frosszelnick.com

JAMES D. SILBERSTEIN
RUTH E. LAZAR
JOYCE M. FERRARO
PHILIP T. SHANNON
MICHELLE P. FOXMAN
    COUNSEL

ROBERT A. BECKER
TAMAR NIV BESSINGER
ANGELA KIM
LYDIA T. GOBENA
MICHAEL CHIAPPETTA
EVAN GOURVITZ
CARLOS CUCURELLA
NANCY C. DICONZA
ZOE HILDEN
LAUREN J. MANDELL
JAMES D. WEINBERGER
JASON M. VOGEL
VEJAY G. LALLA
DAVID I. GREENBAUM
DAVID DONAHUE
CHARLOTTA MEDER
MELISSA A. ANTONECCHIA
NANCY E. SABARRA
LAURA POPP-ROSENBERG
CARA A. BOYLE
IRENE SEGAL AYERS
JOHN M. GALLACHER

December 3, 2004

**VIA FACSIMILE**

Michael A. Albert, Esq.
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206

    Re:    *Photographic Illustrators Corp. v. Gillette*, 04-CIV-10913-WGY
           (Our Ref: GLTC USA TC 0420298)

Dear Michael:

    I write pursuant to D. Mass. Local Rule 37.1 to request a telephone conference concerning your client Photographic Illustrators Corp.'s ("PIC") Response to Gillette's First Set of Interrogatories. As set forth below, PIC's responses are deficient.

**Objections To Definitions And Instructions**

    Your objection to the definition of "identify" is not well taken. While the Local Rules do provide a definition that is automatically incorporated by reference, such does not preclude the propounding party from specifying what information it wants in response to an identification. Please confirm that you will withdraw this objection and comply with Gillette's definition and instruction in this regard.

    Similarly, your objection to Paragraph K's outline of the information to be included in a privilege log is without merit. Moreover, you have not provided a privilege log. Please do so immediately so that we can assess whether the information you provide therein is sufficient to allow us to assess the applicability of the privilege or protection PIC has asserted.

Michael A. Albert, Esq.
December 3, 2004
Page 2

Your objection to Paragraph M points out an obvious typographical error. For the word "Opposer" you should read "Gillette."

**General Objections To Interrogatories**

Your objection #3 to information and/or identification of documents already known to Gillette, in its possession, or available from public sources is without merit. Because many of your client's claims depend upon what it knew, when it knew it, and what it represented to Gillette, our client is entitled to all responsive information and/or documents, regardless of whether Gillette has such information or documents in its possession or not.

Your objections #7 & 8 to interrogatories as "premature" and requiring a "reasonable opportunity to discovery and analyze" are also without basis in the Federal Rules. Your client is required to provide the information "as is available to it" now. If it learns additional information, it will be required to supplement its responses under the Federal Rules.

Your objection #9 is puzzling to us. Is PIC taking the position that, in the event it obtains responsive, relevant, and non-privileged information and/or documents after the suit is initiated, it is not required to produce such information or documents? We know of no basis for this position. Please provide your justification for it.

Your objection #10 is also confusing. It is true that, pursuant to Fed. R. Civ. P. 33(d), PIC is permitted to produce documents in lieu of answering. However, as you know, that rule also requires the responsive documents to be identified in sufficient detail so that we know which documents are responsive to which interrogatories. Please confirm that your objection #10 is not intended to state that PIC will not comply with Rule 33(d).

**Interrogatory No. 1**

PIC's response to Interrogatory No. 1 is woefully deficient. The purpose of the Interrogatory is to obtain from your client (finally), all facts that support its purported claims for copyright infringement of 500 + images. Indeed, if memory serves, in response to Gillette's motion to dismiss, you argued that we could obtain the basis for the claims through discovery. PIC's response fails to provide answers to many of the questions set forth in the Interrogatory. Moreover, the response is deficient for the following specific reasons:

- PIC's argument that any of the information requested that does not fall within the definition of "state the basis" under D. Mass. Local Rule 26.5 is without merit. Obviously, PIC is required to answer all questions that are likely to lead to the discovery of admissible evidence. In any event,

Michael A. Albert, Esq.
December 3, 2004
Page 3

the categories (a) – (i) in the Interrogatory are perfectly consistent with
the definition of "state the basis" in the Local Rules.

- PIC's circular argument that it cannot disclose the facts giving rise to the
  purported infringements because it has not received discovery from
  Gillette is completely without merit. PIC is required to disclose all facts
  it currently knows that form the basis of its copyright infringement
  claims.

- PIC's claim that the Interrogatory is premature and that PIC is entitled to
  review Gillette's discovery responses before providing its response to the
  Interrogatory is also without any basis in the Federal Rules. There is no
  rule of priority in discovery. Rather, as set forth above, PIC is required
  to respond fully now and supplement as more information becomes
  available.

- PIC's identification of the documents it intends to produce, (including "a
  number of Gillette catalogs reflecting numerous infringements")
  contradicts its claim that it does not have sufficient documents to respond
  to the Interrogatory. Moreover, the production of documents in this
  instance is not sufficient to provide the basis for PIC's copyright
  infringement claims and, in particular, the information requested in
  categories (a) – (i).

- Finally, with respect to the alleged 11 infringements PIC has identified,
  PIC has failed to provide the information requested in categories (a) – (i)
  and the reference to documents will not answer many the questions in
  many of the categories.

In sum, since PIC's complaint alleges infringement of more than 500
photographs, it is now time for PIC to state the basis of its claim of infringement for such
500 images so that Gillette may defend itself.

**Interrogatory No. 2**

PIC's response to Interrogatory No. 2 suffers from many of the same deficiencies
as in Interrogatory No. 1, which I will not repeat again. PIC's attempt merely to refer to
documents is not sufficiently responsive to the Interrogatory. For example, the "job
folders" will not tell us which of the specific provisions PIC claims were breached in
each alleged contract, the specific act that gives rise to the breach in each such instance,
the date of such breach, or the date PIC first learned of the alleged breach.

Michael A. Albert, Esq.
December 3, 2004
Page 4

Again, PIC's pleading baldly asserts breach of hundreds of agreements. These Interrogatories are the time for PIC to surface with its claims so that Gillette can defend itself.

**Interrogatory No. 3**

Please confirm that PIC's answer to this Interrogatory represents the entire basis for its claim that Gillette was required to obtain duplicate photos solely from PIC.

**Interrogatory No. 5**

The same deficiencies outlined with respect to your response to Interrogatory No. 1 apply here.

**Interrogatory No. 6**

This response suffers from the same deficiencies as those set forth above with respect to your response to Interrogatory No. 1. Contrary to your objection, the information sought is not better obtained through a deposition, particularly if you are going to insist that the deposition of PIC be limited to seven hours. Your objection that the Interrogatory is "unduly burdensome" is particularly troubling. PIC is the master of its own complaint and has generally alleged copyright infringement and breach of contract relating to more than 500 job numbers. After having asserted such broad claims, PIC cannot now hide behind a claim of "undue burden" when being asked the most basic questions as to its claims.

**Interrogatory No. 7**

PIC's answer to this Interrogatory is also non-responsive. Among other things, the Interrogatory bears directly on Gillette's counterclaims.

The remaining responses to Interrogatories 8-15 refer solely to documents. We reserve Gillette's right to seek supplementation of the responses once the actual documents are produced.

In addition, many of the Interrogatory responses refer to confidential documents and information. You promised to provide a draft protective order for our review. To date, we have not received the draft. Please forward it as soon as possible.

Finally, we asked when we could expect to receive your client's document production and have not received a response. Please let us know when we can expect to receive your client's documents.

Michael A. Albert, Esq.
December 3, 2004
Page 5

Please call me on Monday so that we can set up a date for a telephonic conference to attempt to avoid motion practice.

Very truly yours,

Patrick T. Perkins

cc: David Donahue, Esq.

I:\PPERKINS\GLTC\Corr\041201-Ltr.-M. Albert.doc

EX. 4

**From:**      Patrick Perkins
**To:**        Michael Albert
**Date:**      12/7/04 10:16AM
**Subject:**   PIC v. Gillette

Dear Michael:

I write to follow up on outstanding discovery issues.  (1) We continue to await your client's document production.  What is the status?  (2) Please let me know when we can meet and confer concerning your client's interrogatory responses.

Regards,

Patrick T. Perkins
Fross Zelnick Lehrman & Zissu, P.C.
866 United Nations Plaza
New York, NY 10017
Tel:  (212) 813-5900
Fax:  (212) 813-5901
e-mail:  pperkins@frosszelnick.com


**CC:**        David Donahue

EX. 5

| From: | "Albert, Michael" <Michael.Albert@WolfGreenfield.com> |
|---|---|
| To: | "Patrick Perkins" <pperkins@frosszelnick.com> |
| Date: | 12/7/04 10:29PM |
| Subject: | RE: PIC v. Gillette |

Dear Patrick and David:

I write in response to Patrick's email below and David's email of Dec. 2nd.

As to documents, my associate Mike Rader who has been closely involved in the discovery process is on vacation from Dec. 1st to 12th, which has delayed slightly the document review and gathering process, but you may be sure we are actively working on assembling our client's document production for you.  That production, by the way, will be considerably larger than Gillette's (an issue worthy of discussion in and of itself at some point).  The logistics of figuring out the best way to copy and produce the relevant materials (which include paper documents and various forms of photographic materials) are complex, but we hope to have it done soon.  I'd be happy to discuss the content and timing of this with you by phone if you would like.  I just got back from an out of town meeting today, but I expect to be in the office tomorrow.

As to the interrogatory responses, you just sent us a lengthy letter raising various questions.  I am in the process of reviewing your concerns, attempting to determine whether we can reach common ground, and preparing a response.  I'd be happy to discuss these issues with you by phone as well, but I think it might be most efficient in terms of both counsel's use of time if we simply go through the items in your letter and respond to you point by point.

On another discovery-related matter, I am puzzled by David's email of December 2nd refusing to allow our vendor to copy the one box of photographic materials that you allowed us to inspect (but not copy) at Gillette's offices last week.  David's email states instead that you would "send the box [of] photographs to a vendor of Gillette's choice and provide you [PIC] with an estimate of the copying costs in the various categories you have set forth below before ordering a copy set for your client."  First of all, I do not understand Gillette's refusal to comply with Rule 34, which requires Gillette, as the recipient of our document request, to "permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents."  The person acting on the requestor's behalf is our vendor, yet you have flatly refused to allow our vendor to make the copies as required by the Rule.  In any event, in the interests of minimizing motion practice and seeking common ground, we are willing to follow your approach assuming that (a) Gillette's vendor will do a competent job making the scans and/or copies that we need; (b) that they will charge a reasonable price (not higher than our vendor); and (c) that the job will be completed promptly.  To date, however, we have been told neither who your vendor is, nor what the promised price quotes are for the various options, nor when you or your vendor expect to have the job completed.  Please provide this information, or at a minimum allow us to contact that vendor so that we can get the information ourselves.

Finally, we are troubled by the strikingly small volume of materials

that Gillette purports to have in its possession.  Notably (and without
waiver regarding other discoverable materials that Gillette would also
be expected to have), you have produced only a small handful of
catalogs.  That cannot possibly reflect all the requested catalogs that
Gillette has in its possession, custody, or control for each of the
relevant Gillette divisions over the period in question (which spans
more than a decade).  As we hope motion practice on this issue can be
avoided, please advise what sort of search has been made at Gillette's
offices (including branches, divisions, overseas locations, and with
Gillette vendors) for such materials.  If you anticipate receiving
further responsive catalogs or other materials, please advise when the
results of that search will be complete and this production will be
made.

Sincerely,

Michael A. Albert
malbert@wolfgreenfield.com
direct dial 617.573.7840
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.720.3500  |  617.720.2441 fax

This e-mail message and any attachments may contain confidential or
privileged information.  If you are not the intended recipient, please
notify me immediately by replying to this message. Please destroy all
copies of this message and any attachments. Thank you.


-----Original Message-----
From: Patrick Perkins [mailto:pperkins@frosszelnick.com]
Sent: Tuesday, December 07, 2004 10:17 AM
To: Albert, Michael
Cc: David Donahue
Subject: PIC v. Gillette


Dear Michael:

I write to follow up on outstanding discovery issues.  (1) We continue
to await your client's document production.  What is the status?  (2)
Please let me know when we can meet and confer concerning your client's
interrogatory responses.

Regards,

Patrick T. Perkins
Fross Zelnick Lehrman & Zissu, P.C.
866 United Nations Plaza
New York, NY 10017
Tel:  (212) 813-5900
Fax:  (212) 813-5901
e-mail:  pperkins@frosszelnick.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information contained in this E-mail message may be privileged,
confidential, and protected
from disclosure.  Any unauthorized use, printing, copying, disclosure or
dissemination of this communication may be subject to legal restriction
or sanction.  If you think that you have received
this E-mail message in error, please reply to the sender.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CC:**          "David Donahue" <ddonahue@frosszelnick.com>, "Rader, Michael"
<Michael.Rader@WolfGreenfield.com>, "Kessel, Adam" <Adam.Kessel@WolfGreenfield.com>,
"Svenson, Tracie" <Tracie.Svenson@WolfGreenfield.com>

**EX. 6**

**From:**      "Rader, Michael" <Michael.Rader@WolfGreenfield.com>
**To:**         "David Donahue" <ddonahue@frosszelnick.com>, "Albert, Michael"
<Michael.Albert@WolfGreenfield.com>
**Date:**       2/17/05 8:59AM
**Subject:**   RE: PIC v. Gillette

Dear David,

I understand what you are saying, and we will provide updated responses
to both of these interrogatories on Monday.

Michael Rader

-----Original Message-----
From: David Donahue [mailto:ddonahue@frosszelnick.com]
Sent: Wednesday, February 16, 2005 7:19 PM
To: Albert, Michael
Cc: Craig Mende; Marie Driscoll; Patrick Perkins; rgelb@gelbgelb.com;
rmessinger@gelbgelb.com; Kessel, Adam; Rader, Michael
Subject: PIC v. Gillette


Michael,

Gillette's Interrogatory 1 required PIC to identify each alleged
copyright infringement and for each such alleged infringement, provide:
(a) the content of such photo; (b) the date such photo was provided to
Gillette; (c) the particular infringing act or acts alleged; (d) the
date of such alleged infringing acts; (e) the job number assigned to
each photo by PIC; (f) the particular invoice associated with such
photo; (g) any consideration, including, without limitation, the amount
of money received by PIC from Gillette for its use of the photo; (h) the
copyright registration number that covers such photo; (i) the date PIC
first learned of such infringing act.

Gillette's Interrogatory No. 2 required your client to identify each
alleged breach of contract and for each such breach to specify:  (a) the
actual alleged agreement that has been breached; (b) the specific
provision of any alleged agreement that has been breached; (c) the
specific act that allegedly gives rise to a breach; (d) the date of such
alleged breach;
(e) to the extent the breach concerns any photo prepared by PIC for
Gillette, the content of such photo, the date such photo was provided to
Gillette, the particular job number associated with such photo, the
copyright registration number that covers such photo and the date of
first publication of such photo; (f) the date PIC first learned of the
breach.

Obviously, these interrogatories go to the heart of the case.  Yet to
date your client has not given complete answers to them.  For example,
with respect to the supposed infringement in the Spanish-language
marketing material, which is identified in your client's complaint, your
client still has not provided any of the required information other than
the content of the photo and the infringing act.  Moreover, your client
only last week provided a list of supposed infringements in catalogs
(even though the catalogs containing the alleged infringements have been

in your client's files for years) but still has not identified the
alleged infringing act or any of the information required under
Interrogatory No. 1.

To make matters worse, you objected every time Patrick Perkins attempted
to ascertain such information at PIC's deposition.

Please advise whether PIC finally will provide complete answers to
Interrogatories 1 and 2 by no later than the close of business tomorrow,
February 16, 2005. If you refuse to provide complete responses, we will
file a motion to compel your PIC's cooperation in discovery.

Sincerely,

Sincerely,

David Donahue
Fross Zelnick Lehrman & Zissu, P.C.
866 United Nations Plaza
New York, New York 10017
Phone: (212) 813-5900
Fax: (212) 813-5901


David Donahue
Fross Zelnick Lehrman & Zissu, P.C.
866 United Nations Plaza
New York, New York 10017
Phone: (212) 813-5900
Fax: (212) 813-5901


>>> "Rader, Michael" <Michael.Rader@WolfGreenfield.com> 02/14/05
08:30PM >>>
Dear David,

We know that photographs are taken of Gillette's trade show booths and
that the Gillette employee with primary responsibility for maintaining
those photographs (and other materials related to trade show booths) is
Bill Spain. I have not seen Mr. Spain's files or photographs in
Gillette's production, and it has now been two weeks since the Court
ordered these materials to be produced within ten days. Perhaps these
materials were produced today while I was in deposition; if so, please
let me know.

With regard to foreign marketing pieces, once again PIC has produced to
Gillette proof that PIC's images were used by Gillette abroad. The
foreign catalogs must be produced. I note also that, as Gillette
conceded in briefing, Gillette does not maintain a mechanism for
tracking the source of its images -- hence a statement that foreign
catalogs are "produced locally" does not translate into an assurance
that none of PIC's images were used therein. Finally, even catalogs
produced with non-PIC images (which we doubt Gillette's foreign catalogs
were) plainly would be calculated to lead to the discovery of relevant
evidence in this case, and therefore must be produced.

With regard to e-mails, you obviously have a different understanding of the scope of the Court's Order.

For purposes of PIC's contempt motion, please let me know immediately which, if any, of the above-referenced items Gillette agrees to produce.

Regards,

Mike Rader

-----Original Message-----
From: David Donahue [mailto:ddonahue@frosszelnick.com]
Sent: Monday, February 14, 2005 7:50 PM
To: Kessel, Adam; Albert, Michael; Rader, Michael
Cc: Craig Mende; Marie Driscoll; Patrick Perkins; rgelb@gelbgelb.com; rmessinger@gelbgelb.com
Subject: Re: PIC v. Gillette

Reference is made to the voice message you left me concerning Gillette's production of documents.  In the message, you identified the following five categories of documents that you claim are missing from Gillette's production:

1.  Current Product Binder.  Our client has advised us that it produced the most recent version of the Braun Product binder today and that it is being copied at John Strand's request.  We will double-check with our client to ensure that the most recent catalog has been produced.  Of course, if the binder Gillette produced today and/or the current binder do not contain images provided by PIC then Gillette is not required to produce them in the first place.

2.  Trade Show Materials.  Our client has informed us that it has searched its files and has not located any additional documents responsive to Document Request No. 5 other than those which it already has produced.  We note that you have subpoenaed Czarnowski, a third party vendor of trade show services for Gillette, which may possess materials responsive to this category.

3.  E-mails.  Our client has informed us that the relevant individuals still employed at Gillette were instructed to search their computers and paper files for any e-mails relating to PIC and that no responsive documents were located other than what already has been produced to PIC. The court denied PIC's motion to compel to the extent PIC sought e-mails that may be obtained from Gillette's back-up files.
Therefore,
no such files need be produced.

4.  Foreign Catalogs.  Our client has informed us that its foreign offices create catalogs and other marketing materials locally and thus would not have used photographs provided by PIC in such locally produced materials.

5.  Product Packaging.  Our client has informed us that it has searched its files for product packaging incorporating photographs provided by PIC but has not located any responsive documents other than that which already has been produced.

As with Gillette's document production, this e-mail is subject to and without waiver of Gillette's objections to PIC's discovery requests.

Sincerely,

David Donahue
Fross Zelnick Lehrman & Zissu, P.C.
866 United Nations Plaza
New York, New York 10017
Phone: (212) 813-5900
Fax: (212) 813-5901

*******************************************************
*************************************************
The information contained in this E-mail message may be privileged, confidential, and protected from disclosure.  Any unauthorized use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.  If you think that you have received this E-mail message in error, please reply to the sender.
*******************************************************
*************************************************


*******************************************************
*************************************************
The information contained in this E-mail message may be privileged, confidential, and protected
from disclosure.  Any unauthorized use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.  If you think that you have received
this E-mail message in error, please reply to the sender.
*******************************************************
*************************************************

CC:          "Craig Mende" <cmende@frosszelnick.com>, "Marie Driscoll" <mdriscoll@frosszelnick.com>, "Patrick Perkins" <pperkins@frosszelnick.com>, <rgelb@gelbgelb.com>, <rmessinger@gelbgelb.com>, "Kessel, Adam" <Adam.Kessel@WolfGreenfield.com>