IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

   Plaintiff,

v.

THE GILLETTE COMPANY,

   Defendant.

Civil Action No. 04-CV-10913-WGY

**EMERGENCY CONSIDERATION
REQUESTED PURSUANT TO
LOCAL RULE 5.1(c)**

### REPLY IN SUPPORT OF PIC'S EMERGENCY MOTION TO FURTHER COMPEL GILLETTE'S COMPLIANCE WITH THE COURT'S FEB. 1, 2005 ORDER, TO HOLD GILLETTE IN CONTEMPT OF THAT ORDER, AND FOR APPROPRIATE RELIEF AND SANCTIONS

Although on notice of today's hearing for over two weeks, Gillette waited until a day and a half before the hearing to file a 16-page opposition brief and accompanying declarations. These papers contain outright misrepresentations, as well as material omissions.

Given the shortness of time remaining before the hearing today, and in order not to burden the Court with extensive further briefing, PIC provides this bullet-point reply: (1) to explain what Gillette *still* has not produced as required by the Court's February 1, 2005 Order, and how PIC has been prejudiced, both by this failure to produce materials and by the lateness of Gillette's production of other materials after the February 11, 2005 deadline set by the Court; and (2) to correct misrepresentations and omissions by Gillette in its opposition brief.

### PREJUDICE TO PIC FROM GILLETTE'S FAILURE TO PRODUCE MATERIALS AND FROM THE LATENESS OF ITS PRODUCTION OF OTHER MATERIALS

Notwithstanding the "investigation" that Gillette promised to make in August **2003**, and notwithstanding its discovery obligations in this case, and not withstanding the Court's February 1, 2005 Order, Gillette *still* has not produced the following:

- ***Gillette still has not produced a single foreign catalog***.  What is more, in its opposition brief, Gillette admits that it did not perform a search calculated to find such catalogs.  Gillette concedes that it searched only its "Boston office," and then only for foreign catalogs "that contain an image provided by PIC." (Opp. at 11).  Searching a single U.S. office for foreign catalogs is plainly insufficient, especially given Gillette's admission that its foreign catalogs are produced abroad. (Opp. at 11 n.3).  More important, because Gillette searched only for catalogs known to contain PIC's images, rather than for all catalogs (whether Gillette can identify the images therein as PIC's or not), the search was *knowingly calculated to produce no results* given Gillette's admission – again – in its opposition brief that "Gillette does not keep any formal record identifying the source of any photograph used in Gillette marketing materials." (Opp. at 5).  Because Gillette admittedly does not know which images are PIC's, PIC specifically requested that all catalogs with images of unknown origin be produced.  The Court's Order likewise required production of ***all*** foreign catalogs, whether Gillette can identify the images therein as PIC's or not.  Despite this, not a single foreign catalog has been produced, making it impossible for PIC to evaluate infringement by Gillette in those catalogs.  PIC has been severely prejudiced by Gillette's refusal to produce these materials.  Recent depositions have revealed two notable facts supporting PIC's belief that Gillette's foreign catalogs contain PIC's images: first, that Gillette maintains a "digital library" of images (including PIC's images) that is available to Gillette employees around the world for their use; and second, that Braun Germany maintains a separate "Picture Service," from which images can be ordered, for the same purpose.

- ***Gillette also still has not produced many of its United States catalogs***.  Gillette has produced only *six* United States catalogs – five (5) yearly Braun catalogs from 1999, 2000, 2001, 2002 and 2003/2004, and one (1) "Special Markets" catalog from 1996/1997.  Gillette still has not produced its most recent yearly catalog for 2005.  Gillette likewise has not produced its yearly catalogs from 1992 through 1998 (although PIC has some of those in its own possession).  Gillette likewise has not produced the vast majority of its "Special Markets" catalogs or any other catalogs.

- ***Gillette still has not performed a reasonable search for its e-mails***.  Gillette admits in briefing that it has performed a very limited search for e-mails among those few individuals who still work at the company.  Gillette refuses to perform a search of deleted e-mails, claiming that the Court's Order does not require it.  To the contrary, the Court specifically overruled all of Gillette's objections (including objections to producing deleted e-mails) when it compelled Gillette to respond to PIC's Request No. 14, which calls for "[a]ll documents concerning PIC's images or PIC."  Gillette's refusal to search for e-mail from those no longer employed by the company is calculated to avoid finding many relevant and responsive e-mails.[1]

---

[1] Gillette questions, without basis, PIC's own production of e-mails in this case.  (Opp. at 15 n.4).  In point of fact, PIC has produced every relevant e-mail and did so without prodding from Gillette.  PIC makes limited use of e-mail.  When it does use e-mail, PIC contemporaneously prints out every e-mail related to a particular job and places it in the respective job folder.  Each of the hundreds of job folders that PIC produced in this case contained the e-mail related to that job.  PIC also does not have any backup tapes of e-mails.  There is nothing else to produce.

Compounding Gillette's failure to produce the above critical categories of documents is the lateness of its production of other materials that are equally critical and should have been provided months ago in compliance with Gillette's discovery obligations.

As of February 10, 2005 (the day before the Court's deadline) Gillette had produced just 1,671 pages of documents to PIC. The week following expiration of the Court's deadline, after PIC had filed the present contempt motion, Gillette produced, among other things:

- a conference room full of boxes containing tens of thousands of pages of documents, including several boxes of marketing materials including PIC's images;

- *more than 5,000* of PIC's original transparencies and unauthorized duplicates of the same (Declaration of Ryan McManus); and

- photographs of Gillette's uses of PIC's images at trade shows

These documents and photographic materials go to the heart of PIC's core claims that Gillette breached its contracts with PIC by failing to return PIC's photographs as required, and infringed PIC's copyrights by duplicating PIC's transparencies without authorization (among other infringing acts).

Gillette has been severely prejudiced by the late production of these materials just days before the expiration of discovery, which has limited PIC's ability to (among other things) review and analyze these materials, and submit copyright applications covering the newly-discovered infringements. As described below, PIC should be provided with appropriate relief enabling it to secure appropriate copyright applications.

## GILLETTE'S MISSTATEMENTS

Other misstatements by Gillette in its opposition brief bear correction.

- Page 1: Gillette intimates that PIC has not been prejudiced by Gillette's late production because "PIC has retained its own original transparencies and/or copies of *each and every* photograph it has ever provided to Gillette." The statement is false. In shooting products for Gillette, PIC produced a number of original exposure transparencies, each of which was unique (although in some cases similar, the exposures are all different in some way such as lighting). PIC provided most of these

transparencies to Gillette and retained a minority of them. PIC did not duplicate the transparencies before providing them to Gillette and did not retain exact copies of what it provided to Gillette. Gillette and its brief misunderstand what actually happened.

- Pages 1-2 (and again in bold on pages 9 and 11): Gillette claims that "Notwithstanding Gillette's production of documents on February 15, 2005, PIC chose not to review such documents until February 21, 2005." The statement is false. PIC reviewed these materials to the best of its ability on February 15, 2005, the day they were produced. In fact, PIC Attorney John Strand *and* Paralegal Tracie Svenson were at Gillette on February 15, 2005 when the materials were brought in box-by-box. (Declaration of Attorney John Strand). Attorney Strand and Paralegal Svenson even flagged particular documents for immediate copying. PIC's counsel was busy taking depositions of Gillette personnel the remainder of the week (February 16-19), and PIC's principal Paul Picone was out of town most of that week, but PIC Attorney Michael Rader and Mr. Picone returned to Gillette on Monday, February 21, 2005 for a more thorough review of the documents (despite that day being a President's Day). (Declaration of Attorney Michael Rader).

- Page 2: Gillette's criticism of PIC for not requesting postponement of the depositions is misleading and unfair. PIC was already up against the February 25, 2005 discovery deadline and could not afford to risk the additional prejudice of being precluded from taking any of its depositions. The idea that PIC should have postponed a series of critical depositions *because of the lateness of Gillette's belated production* is the height of *chutzpah*.[2]

- Page 2: Gillette alleges that PIC has not identified Gillette's copyright infringements. The statement is false. To the contrary, weeks ago, PIC identified to Gillette over 200 infringements in Gillette catalogs then available to PIC. Since then, thousands of additional infringements have come to light because of Gillette's belated production. Today, PIC is supplementing its discovery response with a list of *thousands* of Gillette infringements.

- Page 2: Gillette claims that PIC "delayed" its document production. The statement is false. To the contrary, PIC provided its documents to the copy vendor, which worked diligently on a difficult production involving both paper and photographic materials, which Gillette requested be scanned rather than photocopied. The vendor produced the scanned materials to Gillette on CD, on a rolling basis throughout the month of January per Gillette's request. Gillette has never before claimed that the production was less than satisfactory. All told, PIC produced approximately 12 boxes of material to Gillette in this manner. While two boxes of job folders from PIC's early work for Gillette in the 1992-1995 time frame were recently located due to mis-filing, these were immediately made available to Gillette. (Rader Declaration).

---

[2] "Chutzpah is a quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan." <u>Engel Indus., Inc. v. First Am. Bank</u>, 798 F. Supp. 9, 15 n.7 (D.D.C. 1992) (citing Leo Rosten, *The Joys of Yiddish*).

- Page 6: Gillette states that PIC's counsel never responded to Gillette's counsel's request for proposal regarding a reasonable way for Gillette to search its e-mails. The statement is false. As detailed in PIC's opening contempt brief, PIC's counsel made just such a proposal to Gillette's counsel on February 11, 2005, suggesting four simple keywords to search.

- Pages 12-13: In a telling admission, Gillette now states that its National Trade Show Manager Bill Spain *was* consulted in connection with this case, but that he "did not understand that his collection of photographs of trade show booths would be responsive to PIC's discovery requests" until *after* the Court's February 11, 2005 deadline, *after* PIC filed this contempt motion, and *after* PIC's counsel specifically brought Mr. Spain's identity to Gillette's counsel's attention. The discovery process is intended to give each litigant access to the other party's documents without having to conduct independent investigations and inform opposing counsel of the precise identity of the individuals who possess responsive documents. PIC cannot do Gillette's work for Gillette, and should not be tasked with doing so. The fact that alleged consultations with Mr. Spain did not result in Mr. Spain producing highly relevant files (that reflect, among other things, Gillette's unauthorized use of images that it refused to pay for at a Spring 2004 trade show) speaks volumes about the nature of Gillette's "search" for documents in this case.

## CONCLUSION

In addition to the relief requested in PIC's opening brief, the continued failure to produce key documents, as well as the untimeliness of Gillette's production of the vast majority of the materials that Gillette *has* produced, entitles PIC to additional relief from prejudice. PIC accordingly requests that the Court enter an Order:

- Requiring Gillette to produce all of its foreign product catalogs, and all remaining U.S. catalogs, within three days.

- Ordering Gillette to make all transparencies in its possession available to PIC for use in additional copyright applications covering such photos;

- Providing PIC sixty (60) days in which to complete and file such copyright applications; and

- Establishing for purposes of this action an evidentiary finding that Gillette made at least 1,263 duplicate transparencies of PIC's images and 3,266 duplicate slides of PIC's images (see McManus Declaration).

- Requiring Gillette to perform the following company-wide keyword search on its e-mail storage systems, including backup media, and to produce all resulting e-mails (notwithstanding any objections), within three days:

  ➢ Picone

  ➢ PIC

  ➢ picorp

  ➢ "Photographic Illustrators"

- Allowing PIC (and only PIC) a period of sixty (60) days within which to take any follow-up discovery reasonably related to Gillette's incomplete or belated production, and correspondingly resetting all remaining deadlines, including expert rebuttals, dispositive motions, and trial, by sixty days.

- Directing Gillette to pay PIC's attorney fees and costs incurred in connection with PIC's original Motion to Compel (Docket #32) as well as this Motion.

- Imposing an appropriate monetary sanction on Gillette for every day that it does not comply in producing the required catalogs and e-mails.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

By its counsel,

Dated: <u>March 3, 2005</u>         <u>    /s/ Michael N. Rader          </u>
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO # 646990
mrader@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000