IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

    Plaintiff,

v.

THE GILLETTE COMPANY,

    Defendant.

Civil Action No. 04-CV-10913-WGY

**PIC'S RESPONSE TO GILLETTE'S MOTION FOR CLARIFICATION OF
THE COURT'S MARCH 7, 2005 ORDER ON GILLETTE'S MOTION TO COMPEL**

Plaintiff Photographic Illustrators Corporation ("PIC") responds herewith to Gillette's Motion for Clarification of the Court's March 7, 2005 Order on Gillette's Motion to Compel.

Gillette mischaracterizes the record. On March 1, 2005, Gillette moved to compel PIC to supplement its responses to Gillette's Interrogatory Nos. 1, 2, and 7. Interrogatory Nos. 1 and 2 request PIC to state the basis of its copyright and contract claims, respectively, and Interrogatory No. 7 seeks information concerning any use made by PIC of any photograph it provided to Gillette. PIC filed its opposition on March 4, 2005, attaching its fifty-page Supplemental Interrogatory Response which identifies nearly 9,000 acts of copyright infringement and which sets out in detail the basis for PIC's breach of contract claims. (Docket #58). On March 7, 2005, this Court granted Gillette's Motion with respect to Interrogatories 1 and 2 and denied the Motion with respect to Interrogatory 7.[1]

---

[1] Gillette's statement that PIC "failed to respond to Gillette's counsel" on the issue raised by Gillette fails to advise the Court that Gillette's request was made only a few hours before it filed its Motion. Indeed, Gillette concedes in its Local Rule 7.1 certification that "no conference was held" before filing.

PIC's Supplemental Interrogatory Response provides virtually all of the information Gillette has sought. Nonetheless, Gillette now seeks "clarification" – really a request for a further order requiring PIC to identify by Bates number the specific documents upon which its Rule 33(d) response rests in stating that those documents contain the information responsive to Gillette's Interrogatories. Gillette claims that PIC merely dumped 19,000 pages of documents on Gillette with no explanation or organization, and implies that Gillette continues to be left in the dark about the specific acts of infringement and breaches of contract claimed by PIC. This is simply untrue.

Over a twelve-year period, PIC performed approximately 650 photography "Jobs" for Gillette. PIC maintains a "Job Folder" for each of these Jobs. Each Job Folder contains the invoice for the Job, photographer's notes, receipts for charges incurred in performing the Job, and, in most cases, sample images from the Job (Polaroids and/or transparencies).

PIC's Job Folders are organized sequentially by date in fourteen boxes. The invoice for each Job indicates when the Job was done, a description of the photographic services provided in the Job, the scope of the client's (Gillette's) license to use the images created in that Job (i.e., media use, temporal period of use and geographic scope of use), as well as other terms and conditions associated with the images, and PIC's charges for the Job. All of this information was kept, and produced, in meticulous order, *as Gillette's counsel admitted at Mr. Picone's deposition*: "I'll just tell you that these were – you keep meticulous records, Mr. Picone, and so the jobs were provided to us in job jackets…" (Picone Depo. p. 78).

- 2 -

During discovery, after consulting with Gillette as to how Gillette wanted these materials organized for production, PIC agreed to electronically scan all of PIC's Job Folders and their contents. PIC produced these materials to Gillette on compact discs in a meticulous folder hierarchy, such that each folder on the CD corresponds to a physical Job Folder, and the contents of that electronic folder correspond to the contents of the physical Job Folder.[2] (Again, Gillette's counsel Mr. Perkins, who submitted the Motion for Clarification, admitted this at Mr. Picone's deposition.) The first file in each electronic folder on the CD is a scan of the corresponding folder cover for that Job, which indicates the Job Number, date, and description of the Job.

Per Gillette's request, PIC shipped each CD to Gillette on a rolling basis, within one day of scanning, and updated Gillette on the status of production throughout the production period.

In its Motion for Clarification, Gillette cites cases describing "document dumps" and "vague references to documents," implying that PIC simply dumped thousands of documents in a random fashion on Gillette. This case law bears no relationships to the facts of PIC's document production, described above.

It should be noted that PIC <u>has produced every document</u> it has in its possession that supports its claims, and has further recently provided a fifty-page Supplemental Interrogatory Response itemizing nearly 9,000 infringements.[3] PIC's supplemental responses also tie acts of infringement to specific Job Numbers, invoice dates, and copyright registrations. As noted in prior filings, as PIC completes its supplemental copyright registrations arising from Gillette's belated production of materials in the past two weeks (as well as the upcoming materials Gillette has been ordered to produce within the next week), PIC will accordingly update its responses.

---

[2] A typical Job Folder contains between 10 and 100 documents of various types.

[3] One set of Job Folders that was discovered late – because the files went back to the 1992-1995 time frame and were mis-filed in PIC's offices – was produced as soon as PIC's counsel learned of it. Gillette itself has declined to produce materials, including PIC invoices, that are that old. Nevertheless, PIC has been complete and comprehensive in its production, notwithstanding that Gillette has not done the same.

Because Gillette has not shown that it would be "no more burdensome for defendant[] to go through voluminous documents to pull out answers than for plaintiff," S.E.C. v. Elfindepan, 206 F.R.D. 574, 577 (M.D.N.C. 2002) (cited by Gillette in its Motion), Gillette's request for "clarification" should be denied.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

By its counsel,

Dated: March 8, 2005                /s/ Michael A. Albert
                                    Michael A. Albert, BBO #558566
                                    malbert@wolfgreenfield.com
                                    Michael N. Rader, BBO # 646990
                                    mrader@wolfgreenfield.com
                                    WOLF, GREENFIELD & SACKS, P.C.
                                    600 Atlantic Ave.
                                    Boston, MA 02210
                                    (617) 646-8000