UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>Defendant. | Civil Action No. 04-10913 WGY<br><br>**DECLARATION OF LEON BECHET REGARDING COURT'S MARCH 3, 2005 ORDER RE: GILLETTE CATALOGS** |

Leon Bechet hereby declares:

1.  I am an attorney employed as Assistant Trademark Counsel for defendant The Gillette Company ("Gillette"). My responsibilities include the direct supervision of Gillette's outside counsel and Gillette's in-house legal department in connection with this litigation. I submit this declaration in compliance with the Court's March 3, 2005 Order requiring Gillette to conduct a "physical search … of every extant and archived Gillette catalog" for photographs provided by Plaintiff Photographic Illustrators Corporation ("PIC"). This declaration is based on my personal knowledge and matters about which I have been informed by Gillette personnel acting under my supervision.

2.  At the outset, it is respectfully submitted that Gillette had made a reasonable effort to locate and produce all catalogs containing images provided by PIC both <u>before</u> the Court entered its February 1, 2005 Order to Show Cause and again immediately thereafter in response to such order.

**A.     Gillette's Corporate Structure and Localized Marketing Efforts**

3.     Gillette employs close to 30,000 employees worldwide, 70% of which are employed outside the United States. It has manufacturing facilities in 32 different countries and sells its vast line of products in over 200 countries and territories through local sales representatives, retailers and wholesalers. The Company's operations comprise the following five operating segments: (1) Blades and Razors; (2) Duracell; (3) Oral Care; (4) Braun; and (5) Personal Care. Each of these operating segments operates within the following five geographic regions: (1) Commercial Operations North America ("CONA"), which covers the U.S. and Canada; (2) Europe; (3) Latin America; (4) Asia-Pacific; and (5) Africa, Middle East and Eastern Europe ("AMEE").

4.     Gillette's promotional and sales materials typically are created in the specific locales within each geographic area. For example, Gillette promotional materials for the United States market are created by the various Business Communication departments for each of the five operating segments in the United States, whereas Gillette promotional materials for the Canadian market are created by Gillette employees in Canada. Because in response to PIC's January 25, 2005 Motion to Compel, which covered eighteen discovery requests, Gillette was only given four hours to respond, we did not have the time to articulate the extreme burden associated with searching each of Gillette's approximately 200 offices worldwide for catalogs.

**B.     Gillette's Search for Catalogs Containing Images Provided by PIC**

5.     Throughout the course of its twelve-year relationship with Gillette, PIC worked almost exclusively with Gillette's Business Communications departments in the United States. Moreover, the majority of the photographs PIC provided to Gillette over the years were of Braun products. In light of these facts, we focused our early efforts in gathering and reviewing catalogs, as well as information concerning the creation of such catalogs, from the United States Business Communications departments with which PIC had conducted business. This was a difficult task for several reasons. Since 1992, Gillette's Business Communications unit has gone

through a number of reorganizations. Moreover, as a result of the many reorganizations, the entire Braun Business Communications unit has moved to three different locations—first from its location in Lynnfield, MA to Woburn, MA, then to a facility in South Boston, and finally to its current location in the Prudential Center in Boston. With each change of location, all files associated with the unit that were not destroyed, were physically moved as well. Further complicating the search for catalogs has been the fact that many of the Gillette employees that had worked directly with PIC over the years no longer are employed by the company. What is more, the files of former employees are not kept in any formal way at Gillette. Thus, determining whether any such files still exist and where they are located required significant time and effort on Gillette's part. In addition, Gillette hired PIC to photograph accurate representations of Gillette's products, generally without any additional props or embellishments. Because PIC photographs of Gillette products are indistinguishable from photographs of similar quality of Gillette's products taken by other photographers hired by Gillette, it is not possible for anyone at Gillette to tell whether a given Gillette catalog contains a PIC photograph just by looking at the pictures. Nevertheless, Gillette gathered and produced to PIC all the catalogs it could locate that contained or were likely to contain images provided by PIC based on information provided by the current Gillette employees who either had worked on catalogs for which PIC provided photographs or believed it likely that other Gillette employees could have used PIC photographs for certain Gillette catalogs.

**C.    Gillette's Investigation of the Possible Use of PIC Photographs in Foreign Catalogs**

6.    With respect to foreign catalogs, based on our discussions with the United States Business Communications personnel to whom PIC provided photographs over the years, we concluded that it was highly unlikely that photographs provided by PIC would have appeared in any Gillette catalogs produced and distributed outside the United States. Indeed, although Gillette has produced to PIC for inspection thousands of pages of files concerning the use of photographs provided by PIC in Gillette promotional materials, including in catalogs, PIC has

3

not identified a single allegedly infringing use by Gillette of a PIC photograph in promotional materials outside the United States.[1]

**D.     PIC Has Withdrawn Its Claims Regarding Gillette's Alleged Use of PIC Photographs in an Alleged Spanish-Language Catalog**

7.      PIC earlier had alleged in its pleadings in this action, its January 25, 2005 Motion to Compel and its February 15, 2005 Emergency Motion to Compel Gillette's Compliance With The Court's February 1, 2005 Order, To Hold Gillette in Contempt of That Order, and for Appropriate Relief and Sanctions, that a PIC photograph improperly had appeared in a Spanish-language catalog (actually, a single-page picture with Spanish writing) circulated in South America.  (*See, e.g.*, Second Am. Compl. ¶ 23.)  Upon investigating this alleged use, Gillette never has been able to ascertain the origin or authenticity of the alleged Spanish-language document and PIC never has explained where, when or how it obtained the document.

8.      I am informed that at the March 3, 2005 hearing, the Court noted that this particular photograph grabbed the Court's interest.  (3/3/05 Hr'g Tr. at 6:23-24.)  Notably, however, after securing from the Court an order requiring Gillette to search every Gillette catalog worldwide for PIC photographs on the basis of its claims regarding the alleged "Spanish-language catalog," PIC now appears to have **withdrawn** its claims as to such document, as it did not include any reference to the document in its Supplemental Responses to Gillette's Interrogatory Numbers 1 and 2.  (*See generally* Dkt. No. 61, Ex. A (PIC's Supp'l Resp. to Gillette Interrogs. 1 & 2).)  It is unclear whether PIC already had withdrawn its claims as to this document as of the March 3, 2005 hearing on PIC's Motion for Sanctions.

**E.     Gillette's Compliance With the Court's March 3, 2005 Order**

9.      The Court gave Gillette ten (10) calendar days within which to submit an affidavit from me that "a physical search has been made of every extant and archived Gillette catalog" for photographs provided by PIC.  Given that Gillette's operations are spread over 200 countries and

---

[1] The only non-United States uses PIC has alleged involve photographs that appear on foreign-language web sites maintained by Gillette.  However, I am informed that each of those web sites is hosted by a United States Internet Service Provider.

4

territories worldwide and that this litigation covers a twelve-year period, this was a daunting task to say the least.

10.     Gillette took action in compliance with the Court's March 3, 2005 Order immediately after the order was issued.  Given that there is no central repository or archive containing all worldwide Gillette catalogs, the first step we took was to contact the respective Gillette legal counsel responsible for Gillette's primary geographic regions, including AMEE, Europe, Asia-Pacific, and Latin America, as well as Gillette legal counsel for Canada, China and Braun Headquarters in Kronberg, Germany, to ascertain the contact information for the Gillette business personnel worldwide who would be able to coordinate the collection of Gillette catalogs from Gillette's foreign offices.  Once we obtained such contact information, we sent an e-mail marked "URGENT—IMMEDIATE ACTION REQUIRED" to the appropriate Gillette business personnel explaining, *inter alia*, the deadline set by the Court and requesting that all Gillette catalogs from 1992-present containing images of Gillette products be sent to our offices in Boston prior to that deadline.  We then coordinated with business personnel in Gillette's foreign offices, answering any follow-up questions that they had concerning the Court's order and Gillette's responsibilities thereunder and helping to coordinate their collection efforts.

11.     Given that no one at Gillette can tell whether a given Gillette catalog contains a photograph provided by PIC just by looking at the photographs contained therein, on Monday, March 14, 2005 Gillette will produce for inspection by PIC at Gillette's offices in Boston all the above-referenced catalogs it has received from its foreign offices in compliance with the Court's order to date.  To the extent that due to unanticipated delays additional foreign catalogs arrive at Gillette's Boston offices after March 14, 2005, Gillette will make such catalogs available for PIC's inspection immediately thereafter.

6

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed at Boston, Massachusetts this 11th day of March, 2005.

                                                  /s/ Leon Bechet
                                                  Leon Bechet