IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY,<br><br>　　　　Defendant. | Civil Action No. 04-CV-10913-WGY<br><br>**EXPEDITED CONSIDERATION REQUESTED PURSUANT TO LOCAL RULE 5.1(c)** |

### PIC'S MOTION TO COMPEL GILLETTE TO RESPOND TO PIC'S CONTENTION INTERROGATORIES AND TO ATTEND ITS RULE 30(b)(6) DEPOSITION

　　　　With less than two weeks remaining before the deadline for dispositive motions in this case, Defendant The Gillette Company ("Gillette") continues to refuse to respond to Plaintiff Photographic Illustrators Corporation's ("PIC") interrogatories requesting it to state the basis of its affirmative defenses and counterclaims – notwithstanding Gillette's earlier promise to do so. Furthermore, Gillette also refuses to attend its own Rule 30(b)(6) deposition with respect to the vast majority of the topics listed in PIC's Rule 30(b)(6) notice, basing its refusal on a position contradicted by well-established law. Gillette's continued stonewalling in discovery has badly prejudiced PIC.

　　　　Accordingly, PIC now moves pursuant to Fed. R. Civ. P. 37(a)(2)(B) to compel Gillette to state the basis of its counterclaims and affirmative defenses, and to attend its own Rule 30(b)(6) deposition. PIC's deadline to file dispositive motions should correspondingly be re-set to a date at least ten (10) business days after Gillette complies with applicable discovery (or alternatively, Gillette's defenses and counterclaims should be deemed waived for failure to respond to discovery thereon).

I.     PIC'S "STATE THE BASIS" INTERROGATORIES

   A.     **Background**

PIC served its Second Set of Interrogatories on November 22, 2004, a week after Gillette filed its Amended Answer and Counterclaims. This document comprised seven interrogatories Nos. 24-30. At issue in this Motion are Interrogatory Nos. 28 and 29:

> 28.   State the basis for each of the Affirmative Defenses set forth in Gillette's Amended Answer filed November 15, 2004, in detail sufficient to permit the Court to rule on a motion for summary judgment thereon.
>
> 29.   State the basis for each of Gillette's Counterclaims filed November 15, 2004 in detail sufficient to permit the Court to rule on a motion for summary judgment thereon.

(Exhibit 1).

Because Gillette's counsel was on vacation, PIC granted Gillette's request for a one week extension to respond to these interrogatories. (Exhibit 2). On December 29, 2004, Gillette served its responses. (Exhibit 3). In its responses, Gillette provided no substantive answer to any of PIC's interrogatories. (Id.). With respect to Interrogatory No. 28, in which PIC requested that Gillette state the basis of its affirmative defenses, Gillette responded:

> The parties stipulated and the Court ordered that the parties would be limited to thirty-five (35) interrogatories in this action. As set forth in General Objection No. 2 above, PIC's First Interrogatories already exceed this limit.
>
> In Interrogatory 28, PIC attempts through a single interrogatory to request Gillette to set forth the basis for each of its *ten* Affirmative Defenses in this action. Similarly, in Interrogatory 29 PIC attempts through a single interrogatory to request Gillette to set forth the basis for each of its *four* Counterclaims in this action. Given that Federal Rule of Civil Procedure 33(a) requires "discreet subparts" to be counted as separate interrogatories, Interrogatories 28 through 30 amount to fifteen separate interrogatories at minimum.
>
> Based on the foregoing, even if PIC's First Interrogatories were held not to exceed the thirty-five interrogatory limit, PIC's Second Interrogatories greatly exceed the limit. Accordingly, Gillette is not required and will not respond to Interrogatories 28 through 30 at this time. If PIC amends Interrogatories 28 through 30 so that they number no more than a total of seven interrogatories,

> including discreet subparts, Gillette will provide responses thereto. Alternatively, if PIC advises Gillette which seven of the fifteen interrogatories remaining in Interrogatories 28 through 30 that PIC requests Gillette to answer, or requests Gillette to choose which seven of the fifteen interrogatories to answer, Gillette will provide responses.
>
> Gillette further objects to Interrogatory 28 because it violates District of Massachusetts Local Rule 26.5(c)(8), which permits an interrogatory to call "upon a party to 'state the basis' of or for a *particular* claim, assertion, allegation, or contention …." (Emphasis added.)
>
> Moreover, Gillette objects to Interrogatory 28 on grounds that it is premature because Plaintiff has not yet compiled with its obligations to identify and specify with particularity its claims against Gillette and to produce documents to Gillette in response to Gillette's discovery requests. Without knowing the precise nature of PIC's claims, Gillette cannot possibly provide a complete picture of its defenses to such claims.

(Id. at 5-6).

With respect to Interrogatory No. 29, in which PIC requested that Gillette state the basis of its counterclaims, Gillette incorporated by reference the same response. (Id. at 29).

On March 9, 2005, having given Gillette the additional time it requested in its assertion that the earlier requests were "premature" (a doubtful assertion in the first place), PIC requested again that Gillette respond to PIC's contention interrogatories. (Exhibit 4). As discussed below, PIC disagreed with Gillette's counting scheme (which itself is contradicted by Gillette's own discovery requests), but nevertheless requested that Gillette state the basis of just six of its ten affirmative defenses – something that Gillette had agreed to do in its response as quoted above. See Exhibit 3 at (Gillette's Response to Interrogatory No. 28: "[I]f PIC advises Gillette which seven of the fifteen interrogatories remaining in Interrogatories 28 through 30 that PIC requests Gillette to answer … Gillette will provide responses.").

Gillette's counsel responded by stating, groundlessly, that it believed PIC had "withdrawn" its contention interrogatories. (Exhibit 5).

Gillette also took the position that it was revoking its prior agreement to answer seven contention interrogatories because PIC had, in the meantime, served a number of Requests for Admissions, accompanied by an interrogatory asking Gillette to explain any failures to admit. (Exhibit 6).  That aspect of Gillette's position was particularly unjustified.  Of PIC's 145 Requests for Admission, Gillette responded that it "lack[ed] sufficient information or knowledge to respond" to 124 of them.  For five of the remaining Requests for Admission, Gillette responded that its "investigation of this Request is ongoing[,]" and promised to supplement its responses by March 13, 2005. (Exhibit 7). (As discussed below, Gillette *still* has not responded to those five Requests as promised, and thus the Court should hold that those requests are admitted as a matter of law.[1])

Thus, less than two weeks before the deadline for summary judgment motions, Gillette has yet to provide any substantive response to a single one of PIC's contention interrogatories, thus depriving PIC the opportunity for meaningful judicial review of Gillette's affirmative defenses and counterclaims prior to trial.  Gillette should be compelled to provide the required responses to these contention interrogatories, or in the alternative its affirmative defenses and counterclaims should be stricken as a sanction for its refusal to participate in the discovery process.

---

[1] The Requests for Admission in question are Nos. 132-136:

> 132. Admit that you publish catalogs in Spanish.
> 133. Admit that you publish catalogs in languages other than English and Spanish.
> 134. Admit that you distribute catalogs outside the United States.
> 135. Admit that you have used at least one Photograph, that had been provided to you by PIC, in a Spanish-language catalog.
> 136. Admit that you have used at least one Photograph, that had been provided to you by PIC, in a catalog distributed outside the United States.

Notably, these Responses were served the day after the March 3, 2005 Contempt Hearing.

**B.     Argument**

Gillette raised three objections to PIC's contention interrogatories.  First, it claimed that PIC exceeded the limit on interrogatories.  Second, it claimed that the interrogatories violated Local Rule 26.5(c)(8) because they did not call on Gillette to state the basis of a "particular" claim.  Third, it argued that the interrogatories were premature because PIC had not yet responded to Gillette's interrogatories and document requests asking PIC to specify its own claims with particularity.  These objections are without merit and should be overruled.

### 1.     PIC's Interrogatories Are Within The Limit Set By The Court.

Under the Court's scheduling order, each party is permitted a total of 35 interrogatories. (Docket #22).  PIC served three sets of interrogatories on Gillette, comprising a total of 34 interrogatories.  Gillette's position that PIC has exceeded the number of permissible interrogatories is inconsistent with Gillette's own interrogatories, and moreover Gillette has waived any such objection as a matter of law by responding to later interrogatories.

Gillette's method of counting subparts reflects a double standard.  Gillette's first interrogatory to PIC, requesting that PIC "state the basis of any alleged copyright infringement," included nine subparts.  Further, Gillette's request asked PIC to state the basis for each and every act of infringement.  In its interrogatory responses, PIC identified 8,683 acts of infringement, and thus Gillette's Interrogatory No. 1, under its own technical "subpart" counting scheme, consist of 78,147 separate interrogatories.  Nevertheless, PIC answered all of Gillette's interrogatories, including this one, providing literally hundreds of pages of detailed responses and keying them to the Bates Numbers of thousands of responsive documents.

Similarly, Gillette's second interrogatory, requesting PIC to "state the basis for each and every claim that Gillette breached an 'agreement'," includes six subparts. One of these subparts itself includes five subparts. In its interrogatory responses, PIC specifically identified 651 Jobs for which Gillette breached its contract with PIC. A separate agreement applied to each one of these Jobs. Again, under Gillette's counting scheme, its second interrogatory would result in at least 6,510 separate interrogatories. But, again, PIC answered them all in detail.

On March 17, 2005, PIC supplemented its interrogatory responses with 219 pages of detailed information that form the basis of PIC's claims. Gillette should not be able to flaunt its discovery obligations by adopting an inconsistent counting scheme and refusing to provide PIC with <u>any</u> information underlying its affirmative defenses and counterclaims.

Gillette also promised (Exhibit 3) to respond to PIC's contention interrogatories with respect to "seven" of its affirmative defenses and/or counterclaims, but later (Exhibit 5) reneged on that promise, claiming it believed PIC had "withdrawn" these interrogatories.

Gillette's contention that PIC withdrew its contention interrogatories is unfounded, illogical and contrary to law. First, PIC never withdrew them. To the contrary, PIC's contention interrogatories directed to Gillette's counterclaims and affirmative defenses go to the heart of the case and it would make no sense for PIC to drop them. More importantly, Gillette's position is impossible as a matter of law. A party cannot unilaterally or selectively withdraw an interrogatory, and certainly not after the responding party has prepared and served objections to thereto. <u>Walker v. Lakewood Condominium Owner Ass'n</u>, 186 F.R.D. 584, 588 (C. D. Cal. 1999) ("[N]othing in these rules allows a propounding party to unilaterally 'withdraw' interrogatories after they are served, particularly after the responding party incurs the burden of preparing and serving objections as Lakewood did in this case.").

Moreover, when Gillette responded to subsequent interrogatories, it waived any objections raised earlier. Herdlein Techs., Inc. v. Century Contractors, Inc., 147 F.R.D. 103, 104 (W.D.N.C. 1993).  In Herdlein, the court ruled that when a party fails to object *to the court* that the number of interrogatories propounded exceeds the limit, then answers later interrogatories, the party has waived any objection based on that limit.

> The Court sets a limit on the number of interrogatories because responding to them is inherently expensive and burdensome. Each party, however, has a right under the Federal Rules of Civil Procedure to obtain some discovery via interrogatories.  The responding party must object (to the Court) to the number of interrogatories before responding in order to rely on this rule.  Otherwise the responding party could selectively respond to the interrogatories and thereby strategically omit the most prejudicial information.  The Court must recognize that Century has a right to have interrogatories of its choosing answered fully and completely; therefore, if the Court were to allow Herdlein – the responding party – to answer certain interrogatories and then object that the total number of interrogatories exceeds the limit of twenty, the Court essentially would be allowing Herdlein to determine for itself what information to reveal. Accordingly, the Court will treat Herdlein's initial response as a waiver of the pre-trial order's limit on the number of interrogatories and will now examine the merit of Century's motion to compel.

Id. at 104-05.

Gillette's interrogatory "counting" objection should be overruled.

### 2. PIC's Contention Interrogatories Comply With The Local Rule.

Gillette's claim that PIC's contention interrogatories violate Local Rule 26.5(c)(8) is also without merit.  The preamble to this subpart of the Local Rule, which sets out definitions for discovery requests, reads as follows:

> (8)   State the Basis.  When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall…

Gillette's objection that PIC fails to specify a "particular" claim is a misguided attempt to turn a Local Rule which governs the information which must appear in the *response* to contention interrogatories into a requirement on how the interrogatory itself must be propounded. Under Gillette's strained interpretation of the rule, Gillette's own contention interrogatory which asked PIC to "[s]tate the basis of *any* alleged copyright infringement by Gillette of any photo owned by you" (emphasis supplied) would also violate the Local Rule because it does not specify a "particular" claim. In any event, PIC's contention interrogatories were clear that they were inquiring about each of Gillette's affirmative defenses (#28) and each of Gillette's counterclaims (#29) and thus were "particular" enough to meet even Gillette's own "particularity" requirement. This objection should be overruled.

### 3.    PIC's Contention Interrogatories Are Not Premature.

The final objection raised by Gillette to PIC's contention interrogatories was that they were premature because PIC "ha[d] not yet complied with its obligation to identify and specify with particularity its claims against Gillette and to produce documents to Gillette in response to Gillette's discovery requests." Gillette presumably had enough information by the end of December to state the basis for its counterclaims and affirmative defenses (having asserted these claims subject to Rule 11); in any event, it cannot possibly continue to maintain now, after obtaining all requested discovery from PIC and just days away from the summary judgment deadline, that the request is still "premature." PIC has produced 19,852 pages of documents in a extremely well-organized fashion, and served on Gillette three sets of responses to its Interrogatories, the most recent of which is a 219 page document setting out PIC's copyright and contract claims in assiduous detail. This objection should be overruled.

### C. Relief

The Court should order Gillette to respond to PIC's contention interrogatories within three days, in order to permit PIC some opportunity to know the basis of Gillette's affirmative defenses and counterclaims prior to the summary judgment deadline. In the alternative, the Court should dismiss Gillette's counterclaims and bar Gillette from advancing any affirmative defense that rely on information outside of Gillette's discovery responses to date.[2] As set forth in Section II below, PIC's deadline for filing dispositive motions should likewise be extended until ten (10) business days after Gillette complies with its discovery obligations.

## II. GILLETTE'S 30(B)(6) DEPOSITION

### A. Background

On February 4, 2005, PIC served a Rule 30(b)(6) Notice of Deposition on Gillette, requiring it to designate consenting persons to testify on its behalf on the subjects listed in the attached Schedule. (Exhibit 8). Gillette responded on February 15, identifying certain individuals who could testify on behalf of Gillette with respect to some of the categories, and refusing to produce any responsive witness with respect to other categories. (Exhibit 9). In particular, Gillette refused to produce any responsive witnesses for the following categories:

8. Gillette's return of some photographic materials to PIC and its decision not to return other photographic materials to PIC.

10. Gillette's advertising of its products in countries other than the United States.

16. Gillette's decision not to pay PIC for the projects that PIC did for Gillette in Spring 2004.

20. Gillette's computer system and backup policies and systems, including for electronic mail.

---

[2] If the Court finds that PIC has exceeded the number of permissible interrogatories and that Gillette has not waived the limit, the Court should exercise its discretion under Fed. R. Civ. P. 26(b)(2) to extend the limit sufficiently to require Gillette to state the basis of its defenses and counterclaims.

21. Gillette's filing of copyright applications.

24. Gillette's internal investigation(s) of PIC's claims.

25. Gillette's advertising and marketing strategy.

26. Gillette's advertising and marketing budget.

27. Gillette's gross revenue, cost (including advertising expenditures) and profit for each of the products identified in the accompanying report labeled "Product/Job Report."

28. Gillette's understanding of the impact of advertising (including without limitation its web sites, catalogs, product guides, product sheets, product packaging, point-of-purchase displays and trade show display) on sales, revenues and profits.

29. Gillette's internal assessments, and assessments from outside consultants or others, regarding the impact of advertising (including without limitation its web sites, catalogs, product guides, product sheets, product packaging, point-of-purchase displays and trade show display) on sales, revenues and profits.

With respect to one category, "Gillette's non-English language catalogs and other marketing materials," Gillette responded that it was "still investigating whether there is a local Gillette representative who has responsibility and/or knowledge about this category." (Id.). In subsequent e-mail on March 17, 2005, Gillette represented that "THERE IS NO GILLETTE EMPLOYEE IN THE UNITED STATES WHO IS QUALIFIED TO TESTIFY HOW GILLETTE'S CATALOGS ARE PRODUCED OUTSIDE THE U.S." (Exhibit 10). Gillette has thus refused to produce any witness responsive to this category as well.

With respect to two other categories, "Gillette's document retention policy" and "Gillette's responses to PIC's discovery requests in this action," Gillette indicated that it would produce an additional witness; however, no such witness was ever produced.

Finally, Gillette listed several Gillette employees who could testify for Gillette on the remaining fifteen categories.

Between February 16 and March 4, PIC deposed several Gillette witnesses who had been individually noticed. Gillette's Rule 30(b)(6) deposition, originally noticed for February 23, was postponed at PIC's request on February 22 when Gillette produced a large volume of material immediately before the original deposition date (in violation of its obligations to produce those materials months earlier in response to PIC's original discovery requests). (Exhibit 11).

Three days later, Gillette took the position that PIC would not be permitted to depose any Gillette employee under Rule 30(b)(6) who had already been deposed in their individual capacities, unless it were "for a very limited time," and limited to "additional documents that were produced after [that] individual's deposition." (Exhibit 12). Gillette also asserted that there were only "two or three topics left on the 30(b)(6) notice" for which Gillette still was obligated to produce Rule 30(b)(6) witnesses, notwithstanding the fact that PIC had not yet had the opportunity to conduct a separate Rule 30(b)(6) deposition of any witnesses. (Id.).

PIC responded on March 7, proposing several new dates for Gillette's Rule 30(b)(6) deposition, and noting that it expected that Gillette would produce its Rule 30(b)(6) witnesses, regardless of whether they had been previously deposed as individuals. (Exhibit 13). Gillette responded, again asserting that any further depositions of Gillette employees would be limited to belatedly produced documents. (Exhibit 14). On March 10, PIC again requested Gillette to tell PIC when it would make its Rule 30(b)(6) witnesses available for deposition. (Exhibit 15). Gillette again indicated that PIC would only be permitted to depose Gillette witnesses on the "as-to-yet not covered topics." (Exhibit 16). Later that day, Gillette's counsel sent another email, reiterating its position as follows:

> AS WE HAVE TOLD YOU NOW ON NUMEROUS OCCASIONS, GILLETTE WILL PRODUCE WITNESSES ON THE TWO REMAINING ISSUES AND WILL ENTERTAIN ANY REQUEST YOU HAVE TO RE-DEPOSE ANY OF GILLETTE'S PRIOR WITNESSES FOR A LIMITED TIME AND ON TOPICS LIMITED TO DOCUMENTS PRODUCED AFTER SUCH PERSON'S DEPOSITION.

(Exhibit 5).

On March 16, PIC provided a detailed explanation to Gillette of the items that were not covered – or were addressed inadequately – by the Gillette witnesses in their individually-noticed depositions. PIC's counsel further explained its intention to streamline the Rule 30(b)(6) deposition and to avoid overlap with material covered in prior depositions, notwithstanding PIC's right to a full and complete Rule 30(b)(6) deposition on all noticed topics. (Exhibit 17).

In response, Gillette refused to produce *any* 30(b)(6) witnesses (backing off even from its former, inadequate, agreement to produce *some* such witnesses) other than with respect to Gillette's maintenance of its web sites. (Exhibit 10). PIC then responded:

> It appears from your e-mail message that Gillette is declining to attend its Rule 30(b)(6) deposition, except with respect to documents that Gillette produced late. Under the Rules it is not up to Gillette to decide that depositions of particular individuals will take the place of a separate, duly noticed Rule 30(b)(6) deposition of the company. We are entitled to take Gillette's Rule 30(b)(6) deposition on any and all topics listed in the Notice. In the interest of efficiency and courtesy, we have voluntarily narrowed that list of topics and stated our intention to conduct the Rule 30(b)(6) deposition expeditiously without undue overlap with previous depositions.

(Exhibit 18).

Gillette replied the following day, accusing PIC of "attempting to create a false record" and maintaining once again that the only permissible topic for Gillette's Rule 30(b)(6) deposition was Gillette's maintenance of its own websites. (Exhibit 19). PIC made one last attempt to resolve the issue on March 21, indicating again that it was entitled under the law to take Gillette's Rule 30(b)(6) deposition on the listed topics, and that it would attempt to avoid duplication with prior individually-noticed depositions. (Exhibit 20). Gillette did not respond.

**B.     Argument**

Gillette's refusal to produce a Rule 30(b)(6) witness other than on a single topic is without basis in law. "[T]he 30(b)(6) deposition of [a] witness is a separate deposition from the deposition of that same person as an individual witness and is presumptively subject to a separate, independent seven-hour time limit." Sabre v. First Dominion Capital, LLC, 2001 WL 1590544, *1 (S.D.N.Y. 2001); accord Miller v. Waseca Medical Center, 205 F.R.D. 537, 540 (D. Minn. 2002). See also Fed. R. Civ. P. 30(d)(2) Advisory Committee Note (2000) ("For purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition."). The Sabre court explained why the contrary position—that a single seven hour time limit applies to an individually-noticed deponent who is also designated as a 30(b)(6) witness – must be rejected:

> If defendants' interpretation were correct, and a person who is both an individual witness and a 30(b)(6) witness were presumptively subject to a single seven-hour deposition there would be substantial potential for over-reaching. For example, any entity that wanted to limit the testimony of an individual could accomplish that goal by designating the individual as a 30(b)(6) witness; under defendant's interpretation, every minute spent conducting the 30(b)(6) deposition would be deducted from the time available to probe the witness's individual knowledge. Conversely, defendants' interpretation would also permit an entity to curtail 30(b)(6) examinations by designating as a 30(b)(6) witness a person who previously testified for six-hours as an individual and has only one hour left on his or her presumptive seven-hour clock. An interpretation that would lead to such absurd results must be rejected.

Sabre, 2001 WL 1590544 at *1.

Fed. R. Civ. P. 37(d) provides that appropriate sanctions shall be imposed where a party fails to appear for its own Rule 30(b)(6) deposition. These can include dismissal of the defenses or counterclaims in question (an appropriate remedy under present circumstances for additional reasons discussed above), or lesser sanctions.

Gillette's bare refusals to appear for its own Rule 30(b)(6) deposition do not provide a valid basis for failure to comply with the notice of deposition under the Federal Rules. "[A] party cannot unilaterally decide that he or she is not going to attend a duly-noticed deposition without at least applying for a protective order before the time set for the deposition." East Boston Ecumenical Community v. Mastrorillo, 133 F.R.D. 2, 4 (D. Mass. 1990). See also Robert Billet Promotions, Inc. v. IMI Cornelius, Inc., 1995 WL 672385, *2 (E.D. 1995) ("Once a deposition is properly noticed, a party who opposes the deposition and cannot amicably resolve the dispute must either attend the deposition or file for a protective order from the court … A party cannot, as defendants have done here, fail to attend a properly-noticed deposition without a court order.") (collecting cases).

### C.    Relief

The Court should order Gillette to attend its Rule 30(b)(6) deposition. Because Gillette has not timely moved for a protective order or otherwise sought judicial relief from PIC's Rule 30(b)(6) notice, Gillette should be ordered to produce a witness responsive to each one of the noticed topics other than Topic 19 (related to Gillette's maintenance of its web sites) for which Gillette has complied. Further, these witnesses should be produced regardless of whether they were individually noticed by PIC. PIC should also be awarded its attorney fees and costs in bringing this Motion. Inasmuch as the summary judgment deadline is currently April 8, PIC's deadline (but not Gillette's) for filing dispositive motions should be extended until at least ten (10) business days after the later of the completion of (1) Gillette's 30(b)(6) deposition and (2) Gillette's provision of all responses addressed in Part I above.

### III.  CONCLUSION

For the above reasons, the Court should order:

(1) that Gillette respond to all of PIC's contention interrogatories within three days, or in the alternative that Gillette's counterclaims and affirmative defenses shall be dismissed;

(2) that the Court deem PIC's Requests for Admission Nos. 132-136 to be admitted because Gillette failed to respond thereto, and also failed to supplement its responses to those Requests as promised;

(3) that Gillette attend its Rule 30(b)(6) deposition and produce thereat a witness or witnesses knowledgeable about each of the topics listed in PIC's Rule 30(b)(6) deposition notice;

(4) that PIC's (but not Gillette's) deadline for filing dispositive motions shall be extended until at least ten (10) business days after the later of the completion of (1) Gillette's 30(b)(6) deposition and (2) Gillette's provision of all responses addressed in Part I of this Motion.

(5) that Gillette pay PIC's attorney fees and costs in bringing this Motion.

### CERTIFICATION PURSUANT TO LOCAL RULES 7.1 AND 37.1

The undersigned certifies that counsel for PIC consulted with counsel for Gillette in a good faith effort to narrow the areas of disagreement to the greatest extent possible, but that PIC's effort was unsuccessful.  PIC's efforts to resolve these disagreements are reflected in the emails attached to this Motion.  This Motion complies with the requirements of Local Rule 37.1.

### LOCAL RULE 5.1(c) REQUEST FOR EMERGENCY CONSIDERATION

Pursuant to Local Rule 5.1(c), PIC respectfully requests that this Motion be given emergency consideration because dispositive motions are due in ten (10) days.

                                  Respectfully submitted,

                                  PHOTOGRAPHIC ILLUSTRATORS CORPORATION,

                                  By its counsel,

Dated: <u>March 29, 2005</u>                 <u>   /s/ Michael A. Albert          </u>
                                                  Michael A. Albert, BBO # 558566
                                                  malbert@wolfgreenfield.com
                                                  Michael N. Rader, BBO # 646990
                                                  mrader@wolfgreenfield.com
                                                  Adam J. Kessel, BBO # 661211
                                                  akessel@wolfgreenfield.com
                                                  WOLF, GREENFIELD & SACKS, P.C.
                                                  600 Atlantic Ave.
                                                  Boston, MA 02210
                                                  (617) 646-8000