IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY,<br><br>    Defendant. | Civil Action No. 04-CV-10913-WGY<br><br>**EMERGENCY CONSIDERATION REQUESTED PURSUANT TO LOCAL RULE 5.1(c)** |

### PIC'S MOTION TO HOLD GILLETTE IN CONTEMPT OF THE COURT'S MARCH 3, 2005 ORDER AND FOR AN APPROPRIATE EVIDENTIARY SANCTION

Notwithstanding *two* Court Orders to search and produce all of its product catalogs – including foreign catalogs – as well as evidence that Gillette used PIC's images in Spanish-speaking countries without authorization from PIC[1] and a records retention policy that requires Latin American marketing materials to be retained for at least three years, Gillette *still* has not produced the vast majority of its Latin American catalogs. For example, Gillette has not produced a single catalog or any other marketing material from Brazil, where one of Gillette's largest operations is located, and where PIC knows that many of its images were sent.

Notably, although the affidavit that Gillette submitted on March 11, 2005 recognizes that the Court's Order required certification that "a physical search has been made of every extant and archived catalog"[2] (see Bechet Aff., Docket #62, at ¶ 9), the affidavit nowhere makes the required certification. The failure is not surprising, given that no catalogs were produced from Brazil or several other Latin American countries.

---

[1] A copy of the Spanish-language document was attached as Exhibit 1 to Docket #49 but is attached again in conjunction with this Motion for the Court's convenience. (Exhibit 1 to Declaration of Paul Picone).

[2] See March 3 Contempt Hearing Transcript (Docket #59) at 8 ("I want an affidavit from the house counsel, an affidavit, ten days from now from the house counsel that a physical search has been made of every extant and archived Gillette catalog. Is that order clear?").

Moreover, although the Court ordered Gillette, with considerable emphasis, to submit an affidavit from *"the"* house counsel of the company certifying compliance, see 3/3/05 Contempt Hearing Transcript ("Transcript," Docket #59) at 8, Gillette did not obtain that signature but instead submitted an affidavit from an Assistant Trademark Counsel.

Gillette's cavalier attitude is underscored by the second paragraph of the affidavit, which postures that Gillette "made a reasonable effort to locate and produce all catalogs containing images provided by PIC both <u>before</u> the Court entered its February 1, 2005 Order to Show Cause and again immediately thereafter in response to such order." (Bechet Aff. ¶ 2) (emphasis original). This statement is contrary both to the Court's own findings and to Gillette's outside counsel's express admission at the Contempt Hearing:

> THE COURT: Be very careful with your responses. Have all catalogs been searched?
>
> MR. PERKINS: The answer to that, your Honor, is no.

(Transcript at 7-8).

The affidavit also contains other misleading and false statements, discussed below.

Gillette should be sanctioned for its contempt of the Court's March 3 Order, including its continuing failure to produce Latin American and other catalogs (that should exist per Gillette's own records retention policy), by entry of a suitable evidentiary finding.

## I. PROCEDURAL POSTURE

On January 25, 2005, PIC moved to compel Gillette to produce documents that are essential to certain of PIC's claims. (Docket #32). On February 1, the Court granted-in-part PIC's Motion as follows:

> THE OBJECTIONS TO REQUESTS 2,5 AND 14 ARE OVERRULED. ALL THE DOCUMENTS AGREED TO BE PRODUCED (WHETHER OR NOT AN OBJECTION HAS BEEN INTERPOSED) AS WELL AS ALL DOCUMENTS RESPONSIVE TO REQUESTS 2,5, AND 14 SHALL BE PRODUCED WITHIN 10 DAYS OF THE DATE OF THIS ORDER.

By February 15, five days after the deadline set by the Court, Gillette still had not complied. Among other things, Gillette still had not produced a single foreign catalog as required by PIC's Request No. 2. Because PIC claims that Gillette used PIC's copyrighted works in Latin America (and other foreign countries), outside the scope of any license that Gillette obtained from PIC, foreign marketing materials and catalogs are highly relevant.

PIC was thus forced to file an Emergency Motion to further compel Gillette's compliance with the Court's February 1 Order and to hold Gillette in contempt. (Docket #49).

On March 3, 2005, the Court held a hearing on that Motion and explained:

> [M]y order for discovery seems to be clear and unequivocal that all catalogs which have any PIC images in it must be disclosed.

(Transcript at 7).

The Court then ordered Gillette to search all of its catalogs (foreign and domestic) within ten calendar days, i.e., by March 13, 2005. In light of Gillette's admission in briefing that it had not even searched for foreign catalogs outside its Boston office,[3] the Court provided detailed guidance on the search that it was ordering Gillette to undertake:

| | |
|---|---|
| THE COURT: | Ten days. Every catalog represented – who's running this litigation in the company? |
| MR. PERKINS: | The, the attorney who put in the declaration, his name is Leon Bechet, your Honor. |
| THE COURT: | Is he inside house counsel? |
| MR. PERKINS: | Yes, he is, your Honor. |
| THE COURT: | I want an affidavit from *the* house counsel, an affidavit, ten days from now from the house counsel that *a physical search has been made of every extant and archived Gillette catalog*. Is that order clear? |
| MR. PERKINS: | Yes, your Honor. |

(Transcript at 8) (emphasis added).

---

[3] Docket #52 at 11 ("Gillette has been unable to locate any foreign catalog *in its Boston office* that contains an image provided by PIC.") (emphasis added).

## II. GILLETTE'S FAILURE TO COMPLY WITH THE COURT'S ORDER

On Friday, March 11, 2005, Gillette filed an affidavit from an Assistant Trademark Counsel. (Docket #62). As noted above, the affidavit did not include the required certification that "a physical search has been made of every extant and archived catalog." The affidavit also reiterated Gillette's position that its previous search for catalogs, which was limited to Gillette's Boston office, was "reasonable." (Id. ¶ 2).

The affidavit explained that an e-mail was sent to Gillette personnel in foreign offices seeking catalogs, that the catalogs received would be produced to PIC on March 14, 2005, and that if additional foreign catalogs were received by Gillette after that date, they would be made "available for PIC's inspection *immediately thereafter*." (Id. ¶¶ 10-11). (emphasis added).

The latter statement was false. Some catalogs were produced on March 14, but they included *no* Spanish-language or Latin American catalogs. See Declaration of Adam Kessel ("Kessel Decl.") ¶¶ 2-3. In light of the Spanish-language usage that most concerned PIC (and the Court), PIC found this striking. Gillette's counsel thereafter informed PIC's counsel that inspection of subsequently-located catalogs would not be permitted until March 18 (five days after the Court's deadline), due to Mr. Bechet's absence from the office. (Id. at Exhibit 1).[4] When PIC inquired as to why the "immediate" access promised in Mr. Bechet's affidavit was not being granted, Gillette's counsel declined to address the issue. (Id. at Exhibits 2-3).

As noted above, Gillette's March 14 production contained no Spanish-language or Latin American catalogs. Gillette's March 18 production (which PIC inspected that day and again on Monday, March 21) included a small number of Latin American materials, but *nothing* from key countries including Brazil, Colombia and Argentina. (Id. ¶ 7).

---

[4] The reason given appears to have been pretextual. Mr. Bechet was not in the office on March 14 either, yet PIC's counsel was permitted to inspect catalogs then. PIC's counsel has also been permitted to inspect materials at Gillette's offices on other occasions during this case without Mr. Bechet being present.

PIC knows that many of its photographic materials, including transparencies, were sent to Gillette's Manaus, Brazil facility, which is one of the largest Gillette operations in the world. (Picone Decl. ¶¶ 3-4).

Notwithstanding Gillette's repeated representations that it never used PIC's images abroad, Gillette's belated – albeit limited – production of foreign materials has proven that such use did in fact occur. By way of example, notwithstanding the geographical limitation on its license to an image of a hair remover, Gillette distributed sell sheets bearing that image in Canada. PIC learned this on March 14, 2005, when Gillette for the first time produced foreign marketing materials to PIC. (Kessel Decl. ¶¶ 8-12 & Ex. 4-8; Picone Decl. ¶¶ 5-9). This is just one example of Gillette's use of PIC's photographs abroad in disregard for Gillette's contractual undertakings not to do so. (Picone Decl. ¶ 10).

Likewise, Gillette appears to have used PIC's images on foreign web sites such as www.braun.co.jp despite contractually undertaking not to use the images outside of the United States. In his affidavit, Gillette's Assistant Trademark Counsel responded to this allegation by stating that he was "informed" that the foreign web site uses identified by PIC are "hosted by a United States Internet Service Provider." (Bechet Aff. ¶ 6 n.1). There is no explanation of who suggested that this is the case, and in any event the statement is untrue. The www.braun.co.jp web site is unquestionably hosted in Japan. (Kessel Decl. ¶¶ 13-15 & Exhibits 9-11).

In a similar misstatement, the affidavit claims that "PIC now appears to have **withdrawn** its claims as to" the Spanish-language use that grabbed the Court's interest. (Bechet Aff. ¶ 8) (emphasis original). To the contrary, PIC's Supplemental Interrogatory Responses incorporated its previous responses (including that claim) by reference. (Exhibit A to Docket #58). There would have been no reason for PIC to withdraw this allegation given the striking example it offers of Gillette's violation of the U.S.-only clause in its licenses from PIC.

- 5 -

Finally, Gillette's claim – repeated in the affidavit – that it "has never been able to ascertain the origin or authenticity of the alleged Spanish-language document" (Bechet Aff. ¶ 7), simply is not credible. The repetition of that claim after the Court's March 3 Order betrays the lack of seriousness with which Gillette has taken PIC's claims in this case.

At deposition, Gillette employee Jill Josephson testified to a very detailed recollection about the image. She remembered hiring PIC to take the photograph, she recognized the photograph, she recalled being present when the photograph was taken (in the kitchen of PIC's principal Paul Picone), and she even recalled helping to arrange the objects in the photograph. See Depo. Transcript of Jill Josephson (Exhibit 12 to Kessel Decl.) at 64-65. Ms. Josephson also testified that she used the photograph in a (United States) catalog. (Id. at 69).

With such detailed knowledge about the image, Gillette's contention that it has been "unable to ascertain" its origin is not credible, and betrays the shallowness of its investigation. At deposition, Ms. Josephson claimed not to know how the Spanish writing appeared. (Id. at 67-69). She is, however, an admitted perjurer. Out of fear that her answers might be "damaging" to her because they "wouldn't look good" (id. at 102), she admitted to lying about paying a recent uninvited visit to Mr. Picone's home, to having been bitten by his dog there, and to having called him to discuss her deposition. See id. at 44-45 (answering "no" to series of questions) and 94-98 (admitting that the true answers were "yes" *and that she knew this when she replied "no"*) and 97-98 (Q: So when I asked you whether earlier today whether you had spoken or called Mr. Picone in the last two weeks, did you know that the answer was yes? A: Yes. Q: But you said no, correct? A: Yes.").

Gillette's strategy throughout discovery has been to dodge, evade and delay. The latest round of such conduct is a half-hearted search for foreign catalogs that did not yield a single catalog from the most important Latin American countries, let alone such catalogs from the time

period when PIC was doing work for Gillette – even though such catalogs should be extant under Gillette's own document retention policy. See Exhibit O to Docket #33 at Bates No. GTLC 50 (marketing materials from the "Latin American Group" are retained for at least three years).[5] Gillette's inadequate production was also (yet again) untimely under the Court's Order.

Gillette's failure and/or refusal to produce key evidence of Latin American usage[6] – taken together with Gillette's insistence that it does not know, and cannot uncover, the origin of a known Spanish-language use of one of PIC's images (notwithstanding the detailed recollections of its own employee about that document), demonstrates a lack of seriousness toward Gillette's obligation to comply with Orders of the Court, let alone to search its files for discoverable evidence of breaches and to provide accurate answers to discovery requests.

As noted in PIC's co-pending Motion to Compel, Gillette still has not responded – despite promising to do so by March 13 – to straightforward Requests for Admission regarding foreign usage. (Docket #63 at 4 n.1).[7] Based on its belated production of foreign materials it is clear that Gillette knows the answers to these Requests, yet it still has not provided them.

---

[5] Notably, Gillette has also refused to produce a Rule 30(b)(6) witness to testify about foreign catalogs. Gillette has taken the position that there is no such witness in the United States, and apparently refuses to produce a knowledgeable witness on the topic from outside the United States. (Exhibit 13 to Kessel Decl.).

[6] PIC expects that the majority of Gillette's unauthorized foreign uses of its images occurred in Latin America for two reasons. First, Braun Germany photographs many products, and Braun Germany's photographs are likely to be more widely distributed in Europe than in Latin America. Second, as noted above, PIC is informed that Gillette sent PIC's images to Latin America, and specifically to Brazil.

[7] Gillette promised to respond to the following requests for admission by March 13, 2005 but still has not done so:
    132. Admit that you publish catalogs in Spanish.
    133. Admit that you publish catalogs in languages other than English and Spanish.
    134. Admit that you distribute catalogs outside the United States.
    135. Admit that you have used at least one Photograph, that had been provided to you by PIC, in a Spanish-language catalog.
    136. Admit that you have used at least one Photograph, that had been provided to you by PIC, in a catalog distributed outside the United States.

Indeed, based on questions asked by Gillette's counsel at Mr. Picone's deposition on March 24, 2005, Gillette knows that it sent at least one of PIC's images to the Dominican Republic. (Picone Decl. ¶ 12). Even this knowledge has not swayed Gillette to answer.

Notably, PIC raised a concern at the outset of the case that Gillette might stonewall in discovery. When Gillette requested a shortened case schedule, and PIC's counsel reiterated the significant volume of discovery that would be needed in the case, the Court made clear that although the shortened schedule requested by Gillette would be adopted, stonewalling would not be tolerated. See 9/23/04 Hearing Transcript (Docket #19) at 9-11.

PIC has been and continues to be prejudiced by Gillette's failure to produce key foreign catalogs and related evidence, and therefore requests, as relief, that the Court:

- hold Gillette in contempt of its March 3 Order;

- enter an evidentiary sanction that all of Gillette's foreign catalogs published or distributed since June 2000[8] (i.e., Gillette's 2000, 2001, 2002, 2003, 2004 and 2005 catalogs for each country), which have not been produced to PIC in this case, be conclusively deemed for purposes of this case to consist of unauthorized foreign uses of PIC's images.

- order Gillette to produce an employee pursuant to Rule 30(b)(6) who can testify as to Gillette's use of PIC's images in Latin American, Canadian and other foreign catalogs and marketing materials; and

- require Gillette to pay PIC's attorney fees and costs incurred in connection with PIC's original Motion to Compel, its Further Motion to Compel and for Contempt, and this Contempt Motion.

---

[8] June 2000 is three years prior to PIC's demand letter to Gillette. (Exhibit B to Docket #33). As of the date of that letter, in response to which Gillette promised PIC that it was conducting an investigation into PIC's claims and would get back to PIC (Exhibit D to Docket #33), Gillette had an obligation to preserve the relevant documents in its possession in anticipation of litigation, including the three years' worth of catalogs that it had or should have had pursuant to its own document retention policy. See Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.").

## CERTIFICATION PURSUANT TO LOCAL RULES 7.1 AND 37.1

The undersigned certifies that counsel for PIC consulted with counsel for Gillette via an exchange of emails, copies of which are attached to the Declaration of Adam Kessel, in a good faith effort to narrow the areas of disagreement to the greatest extent possible, but that PIC's effort was unsuccessful. This motion complies with the requirements of Local Rule 37.1.

## LOCAL RULE 5.1(c) REQUEST FOR EMERGENCY CONSIDERATION

Pursuant to Local Rule 5.1(c), PIC respectfully requests that this motion be given emergency consideration because the deadline on the Court's second Order to Gillette to produce documents expired on March 13, 2005 and summary judgment briefs are due on April 8, 2005.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS CORPORATION,

By its counsel,

Dated: March 29, 2005

/s/ Michael A. Albert
Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO # 646990
mrader@wolfgreenfield.com
Adam J. Kessel, BBO # 661211
akessel@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000