UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br><br>Defendant. | Civil Action No. 04-10913 WGY |
| THE GILLETTE COMPANY,<br><br>Counterclaim-Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>Counterclaim-Defendants. | |

**DEFENDANT THE GILLETTE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL GILLETTE TO RESPOND TO PLAINTIFF'S CONTENTION INTERROGATORIES AND TO ATTEND ITS RULE 30(b)(6) DEPOSITION**

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
 Patrick T. Perkins (Admitted *pro hac vice)*
 David Donahue (Admitted *pro hac vice)*
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP
 Richard M. Gelb (BBO#188240)
 Daniel C. Hohler (BBO#633065)
20 Custom House Street
Boston, MA 02110
Tel: (617) 345-0010
Fax: (617) 345-0009
*Attorneys for Defendant/Counterclaim-Plaintiff
The Gillette Company*

Defendant The Gillette Company ("Gillette") has complied fully with its discovery obligations, pursuant to Fed. R. Civ. P. 30 and 33, and has in no way prejudiced Plaintiff Photographic Illustrators Corporation ("PIC"). From its First Set of Interrogatories, PIC exceeded the number of permissible interrogatories set by the Court, and Gillette has made consistent efforts to accommodate PIC's discovery requests while simultaneously protecting itself from repeated, excessive demands. Gillette has also provided PIC full access to the testimony of relevant employees, and the parties have engaged in numerous depositions in February and March. These Gillette employees were produced in response to specific 30(b)(6) topics, and their depositions were conducted on that basis. These depositions, concluding with the March 18, 2005 depositions of Gillette representatives which satisfied all subjects listed in PIC's Rule 30(b)(6) notice of deposition (to which Gillette had no objection), undoubtedly met Gillette's requirements under that rule. PIC's argument about 30(b)(6) depositions is merely a repackaged request for additional depositions, which this Court has previously rejected. PIC's motion to compel answers to two interrogatories and to "attend" its Rule 30(b)(6) deposition should be denied.

**I.    The Court Should Deny Plaintiff's Motion to Compel Answers to Interrogatory Nos. 28 and 29.**

From the time it served its First Set of Interrogatories, PIC has exceeded the number of interrogatories permitted by this Court and, on this basis alone, its motion to compel answers to Interrogatory Nos. 28 and 29 must be denied.

**A.    Relevant Facts**

The Court's scheduling order in the instant action permitted each party a total of thirty-five interrogatories. (Docket No. 22.) PIC served its First Set of Interrogatories on October 4, 2004 which, though styled as only twenty-three separate interrogatories, contained several

interrogatories with multiple subparts. (Ex. 1 at Nos. 3, 6, 9, 14.) In its response to PIC's First Set of Interrogatories, Gillette objected to Plaintiff's "attempt to avoid the limitation on the number of interrogatories, as stipulated by the parties and ordered by the Court, through its pervasive use of subparts and compound questions..." (Ex. 2 at 2.)

PIC subsequently served its Second Set of Interrogatories, styled as numbers twenty-four through thirty, which included the two disputed interrogatories. (Mot. to Compel Ex. 1.) Interrogatory No. 28 asks that Gillette "state the basis" for each affirmative defense set forth in its Amended Answer, of which there are ten. (*Id.* at 2; Docket No. 24 (Amended Answer).) Interrogatory No. 29 asks that Gillette similarly "state the basis" for each counterclaim set forth in its Amended Answer, of which there are four. (Mot. to Compel Ex. 1 at 2; Docket No. 24.) In its response, Gillette reiterated its objection that PIC had already exceeded the number of interrogatories ordered by the Court through its First Set of Interrogatories and noted that Interrogatory Nos. 28 and 29 also contained extensive subparts. (Mot. to Compel Ex. 3 at 1-2, 4-6.) In an effort to accommodate PIC, Gillette requested that PIC amend these interrogatories to number no more than seven separate interrogatories, or to identify seven distinct interrogatories from them, to which Gillette could respond.[1] (*Id.*) For over two months, from December 2004 until early March, PIC failed to make any efforts to identify or limit Interrogatory Nos. 28 and 29.

In the meantime, however, PIC served a Third Set of Interrogatories upon Gillette, styled as numbers thirty-one through thirty-four, on January 26, 2005. (Ex. 3.) After two months without a response from PIC, and consequently believing PIC had withdrawn or simply chosen

---

[1] Gillette also objected to Interrogatory Nos. 28 and 29 on the grounds that they violated Massachusetts Local Rule 26.5(c)(8), insofar as a "state the basis" interrogatory relating to *multiple* affirmative defenses or counterclaims failed to call "upon a party to 'state the basis' of or for a *particular* claim, assertion, allegation, or contention..." (emphasis added).

3

not to identify separate interrogatories out of Interrogatory Nos. 28 and 29, Gillette responded fully to PIC's Third Set of Interrogatories on March 4, 2005. (Mot. to Compel Ex. 6.) Days later, on March 9, 2005, PIC contacted Gillette and requested it "state the basis" for six specific affirmative defenses, pursuant to Interrogatory No. 28. (Mot. to Compel Ex. 4.)

### B.  Argument

In its First Set of Interrogatories, PIC exceeded the number of permissible interrogatories as ordered by this Court. This simple fact renders moot PIC's arguments regarding (1) any "prior agreements" by Gillette to answer certain subparts to interrogatories or (2) Gillette's ongoing good faith efforts to respond to PIC's excessive Third Set of Interrogatories. PIC's motion to compel answers to the disputed interrogatories must be denied.

The Court's scheduling order limited each party to a total of thirty-five interrogatories. (Docket No. 22.) Although PIC styled its interrogatories to total only thirty-four, the law in this district, as elsewhere, is clear on what constitutes distinct interrogatories. A party cannot use subparts "merely for the purpose of evading the limit." Myers v. U.S. Paint Co., 116 F.R.D. 165, 165 (D. Mass. 1987). If the interrogatories are structured in such a way that the "subparts to a particular interrogatory bore no relation either to the primary question or to one another," the Court may exercise its inherent power to enforce its local rules and strike an interrogatory. Id.; see also Banks v. Office of the Senate Sergeant-at-Arms, 222 F.R.D. 7, 10 (D.D.C. 2004) (separate interrogatories exist "the moment an interrogatory introduces a new topic that is in a distinct field of inquiry").

PIC's First Set of Interrogatories clearly employs unrelated subparts to evade this Court's order. Routinely, an interrogatory identifies a general class of goods (e.g., "catalogs" or "product packaging" or "trade show display") from a previous interrogatory and then asks substantive but unrelated questions about this class of goods. These subparts fall into several

4

different categories, e.g. (1) the quantity of the class of goods, (2) the geographic scope and dates of their distribution, (3) dates or time periods throughout which the goods were printed or displayed, (4) the names and locations of all trade shows at which the goods were displayed, (5) the names of all recipients of the goods and dates of receipt, or (6) all documents concerning information responsive to the interrogatory. (Ex. 1 at Nos. 3, 6, 9, 14.)

With regard to the last category, courts have unambiguously held that requests for documents are distinct questions from requests for information about an event. See id. (the "first and most obvious example" of impermissible subparts "is the combining in a single interrogatory of a demand for information and a demand for the documents that pertain to that event"). Furthermore, aside from the generic umbrella of a class of goods, all of the categories described are "distinct field[s] of inquiry" requiring the subparts of Interrogatory Nos. 3, 6, 9, and 14 to be counted as separate interrogatories. Id. Even at a conservative count (i.e., treating subparts regarding first and last date of printing as identical inquiries), PIC's First Set of Interrogatories contains a minimum of thirty-nine distinct interrogatories – well over the Court's permitted number.

The disputed Interrogatory Nos. 28 and 29 also suffer from the same problem and contain a minimum of fourteen distinct interrogatories – relating to ten affirmative defenses and four counterclaims, respectively.[2] But the Court need not consider this problem. Nor should the Court entertain PIC's claims that the parties had reached a "prior agreement" about the disputed interrogatories or that Gillette somehow "waived" any objection to the disputed interrogatories

---

[2] As noted in n. 1, *supra*, the disputed interrogatories also violate Massachusetts Local Rule 26.5(c)(8) because a "state the basis" interrogatory relating to *multiple* affirmative defenses or counterclaims fails to request the basis "for a *particular* claim, assertion, allegation, or contention..." (emphasis added). PIC simply responds that the disputed interrogatories refer to each affirmative defense and counterclaim in Gillette's Amended Answer. In doing so, it appears to concede the point: Interrogatory Nos. 28 and 29 do not relate to a particular claim or allegation, but rather cover fourteen different claims or allegations. (Mot. to Compel at 7-8.)

by responding in good faith to later, excessive interrogatories. Gillette responded fully to well over thirty-five interrogatories before PIC served the disputed interrogatories, and its motion to compel answers to Interrogatory Nos. 28 and 29 must be denied.[3]

Against these simple facts, PIC relies upon Herdlein Techs., Inc. v. Century Contractors, Inc., 147 F.R.D. 103 (W.D.N.C. 1993), for the proposition that Gillette was required to notify the Court in order to seek protection from PIC's excessive interrogatories. The court's reasoning in that case involved a responding party's selective response and objection to interrogatories, which would allow a responding party strategically to decide what information to disclose. (Id. At 104-5.) This is simply not the case here. In its responses to PIC's First and Second Sets of Interrogatories, Gillette consistently objected to the number of interrogatories served by PIC and elaborated fully upon this objection, in response to Interrogatory Nos. 28 and 29, because PIC had once again employed impermissible subparts as it had done in its First Set of Interrogatories.

Gillette's later response to PIC's Third Set of Interrogatories was not a strategic move to "shop" PIC's interrogatories. Gillette had previously sought a reasonable method to limit the multi-part Interrogatory Nos. 28 and 29, which went unanswered by PIC from December of last year until just this month. At the end of this long period, Gillette made continued, good faith efforts to respond, beyond its obligations, to PIC's Third Set of Interrogatories. To characterize Gillette's objection to Interrogatory Nos. 28 and 29 as strategic avoidance – when PIC responded only this month to Gillette's request to narrow them – is simply inaccurate. Rather, PIC's failure to limit the disputed interrogatories for two months, and its immediate limitation of them just five days after Gillette's response to its Third Set of Interrogatories suggests a strategic move by

---

[3] PIC repeatedly refers to interrogatories served by Gillette in support of its motion to compel. (Mot. to Compel at 5-6.) Gillette's interrogatories, or PIC's opinion of their form, are irrelevant to the present motion. If PIC believed Gillette had also impermissibly sought to extend the number of interrogatories served through the use of subparts, it had the opportunity to object. PIC failed to do so.

PIC to fabricate a "waiver" argument out of Gillette's good faith efforts. The Court should deny PIC's motion.

## II. Gillette Has Fulfilled Its Obligations Under Rule 30(b)(6), And Plaintiff's Motion Should Be Denied.

Gillette has provided ample access to its employees, and PIC enjoyed this access in numerous depositions in February and March. The allegations that Gillette limited PIC's ability to depose witnesses and, in particular, that it failed to attend its own Rule 30(b)(6) deposition is simply untrue. PIC's motion must be denied.

### A. Relevant Facts

PIC served a Rule 30(b)(6) Notice of Deposition on Gillette on February 4, 2005. (Mot. to Compel Ex. 8.) By letter dated February 15, 2005, Gillette stated that various individuals already noticed individually by PIC for depositions were also the qualified corporate designees for purposes of Rule 30(b)(6), noted that they would be appearing in that capacity at their depositions, and identified which individuals were designated for each of the subjects contained in the 30(b)(6) notice. (Mot. to Compel Ex. 9.) Of the twenty-nine subjects, Gillette unambiguously designated six representatives – Linda Mallette, Jill Josephson, Brenda Tattan, Karen Mullen, Beth Cooper, and Nancy Dwyer – for fifteen of the subjects. (Id.) Regarding six subjects, Gillette reiterated that this Court had previously denied PIC's motions to compel information on these subjects and, consequently, no witness would be designated for them. (Id. (Categories 20, 25-29)) Regarding three subjects, Gillette noted that the requested information was clearly privileged and, consequently, Gillette was not required to designate representatives for these subjects. (Id. (Categories 8, 16, 24))[4]

---

[4] Together, the privileged subjects and subjects previously addressed by this Court in PIC's earlier motions to compel account for nine of the eleven subjects for which Gillette allegedly "refused to produce any responsive witnesses." (Mot. to Compel at 9-10.)

7

For two of the noticed subjects, Gillette objected to the relevance of the subject to the current action and requested clarification from PIC before designating representatives. (Id. (Categories 10, 21)) For another two subjects, Gillette stated that it would designative additional witnesses to the extent that they were not within the knowledge of the six previously designated witnesses. (Id. (Categories 9, 18)) Regarding a final subject, Gillette's non-English language catalogs and marketing materials, Gillette stated it was investigating whether there was a local representative with knowledge of this subject. (Id. (Category 11)) After reasonable investigation, Gillette confirmed by e-mail dated March 17, 2005 that there was no Gillette representative in the United States with knowledge of this subject. (Mot. to Compel Ex. 10.)[5]

Following Gillette's February letter designating 30(b)(6) representatives, from February 16 to March 4, PIC deposed several Gillette witnesses who had been individually noticed and did so with the express understanding that the depositions would serve as 30(b)(6) depositions. Gillette did not restrict any deposition to a seven-hour limit, and PIC voluntarily terminated each deposition.

In late February and March, the parties exchanged e-mail correspondence concerning remaining discovery issues. (Mot. to Compel Exs. 12-20.) Gillette expressed its view that, with the exception of two or three topics, the vast majority of subjects listed in PIC's Rule 30(b)(6) notice had already been addressed in previous depositions. Gillette also stated that it would make a representative available for those topics and would permit the repeated deposition of earlier deponents if the deposition related to documents produced after their initial depositions. (Mot. to Compel Exs. 12, 14.) However, PIC rejected this offer. (Id.) Gillette also repeated its

---

[5] Rule 30(b)(6) only requires testimony as to "matters known or reasonably available to the organization." Consequently, where Gillette "does not possess such knowledge as to so prepare [a designated representative], then its obligations under Rule 30(b)(6) obviously cease." Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 76 (D. Neb. 1995).

concern at PIC's ongoing attempts to seek Rule 30(b)(6) designees on subjects about which the Court has previously denied PIC discovery. (Mot. to Compel Ex. 19.) PIC expressed the contrary view that it was entitled to re-depose any and all Rule 30(b)(6) designees, regardless of whether (and for how long) they had previously been deposed. (Mot. to Compel Exs. 13, 17, 20.) During this period, on March 18, 2005, PIC deposed several Gillette representatives on the few remaining 30(b)(6) subjects that had not yet been addressed. (Mot. to Compel Ex. 19.)

Before this, on a prior motion for contempt and to compel (Docket No. 49), PIC requested additional depositions in this action, which the Court rejected on March 3, 2005. (March 3, 2005 Electronic Order.)

Finally, in response to PIC's current motion, Gillette contacted PIC via e-mail to express its concern that the meet and confer process was not completed with respect to the Rule 30(b)(6) depositions. (Ex. 4.) As a compromise, Gillette offered to provide a single additional witness to testify further about subjects 2, 4, 7, 10, 11, and 24 of PIC's Rule 30(b)(6) notice. (Id.) PIC did not respond or withdraw the current motion, forcing Gillette to incur the cost of filing this opposition.[6]

**B.      Argument**

Gillette has complied fully with its obligations under Rule 30(b)(6). Despite PIC's unusual allegation that Gillette somehow "failed to appear" for its 30(b)(6) deposition, this is not a case in which Gillette failed to designate representatives in response to PIC's proffered subjects. Nor is this a case in which Gillette failed to produce deponents on scheduled dates and locations at which counsel were assembled. Nor, in the many depositions PIC has taken, did Gillette attempt to limit the time of PIC's questioning. PIC's motion to compel Gillette's

---

[6] In light of PIC's rush to make its own motion on the 30(b)(6) issue without completing the meet and confer process and its failure to accept Gillette's offer of compromise in sufficient time to permit Gillette to avoid the cost

attendance at its 30(b)(6) deposition is at most a technical and illogical argument and should be denied. Indeed, PIC now merely seeks to cloak in the mantle of Rule 30(b)(6) a previous request for additional depositions made in a prior motion, and rejected by the Court, on March 3, 2005.

First, Gillette has "attended" its Rule 30(b)(6) deposition through the numerous depositions PIC took of its employees (noticed originally in their individual capacity) in February and March, as well as through its provision of Gillette representatives on March 18, 2005 for 30(b)(6) depositions on the outstanding subjects from PIC's 30(b)(6) notice that were not previously addressed. One court elaborated this sensible rule:

> [a] 30(b)(6) deposition may not be justified where, assuming the witness is properly prepared, the entity establishes that the witness's testimony as a 30(b)(6) witness would be identical to his testimony as an individual and the 30(b)(6) is limited, or substantially limited, to topics covered in the deposition taken in the witness's individual capacity. In such a situation, there appears to be no obstacle to the entity's complying with its obligations under Rule 30(b)(6) by adopting the witness's testimony in his individual capacity.

A.I.A. Holdings, S.A. v. Lehman Brothers, Inc., No. 97-4978 (LMM)(HBP), 2002 U.S. Dist. LEXIS 9218, at *18 (S.D.N.Y. May 23, 2002).[7]

In the current action, PIC appears to seek to re-depose individual witnesses as 30(b)(6) designees, even though it knew the status of such witnesses as corporate designees before it deposed each of them originally. Indeed, Gillette's February 15, 2005 letter to PIC indicates that those employees who had already been noticed for deposition in their individual capacity were the same qualified corporate designees for 30(b)(6) purposes and would be appearing in that capacity. Their testimony as to the topics on PIC's 30(b)(6) notice is identical to their individual testimony, and the 30(b)(6) notice is substantially limited to topics already addressed in the

---

of responding to the current motion, Gillette withdraws its offer.
[7] See also United States v. Massachusetts Indus. Fin. Agency, 162 F.R.D. 410, 412 (D. Mass. 1995) (after five individual depositions and one 30(b)(6) deposition had taken place, court refused to order party to produce another 30(b)(6) witness or to prevent the party from presenting its position through witnesses previously deposed).

10

numerous depositions taken in February and March. Indeed, for those remaining topics that were not addressed, Gillette provided – and PIC deposed – Gillette representatives on March 18, 2005. PIC's highly technical request for second bites at several apples is a clear waste of resources and should be denied.

Second, by PIC's own cited authority, Gillette has substantively complied with its obligations and has not prejudiced PIC. While acknowledging that Rule 30(b)(6) and individual depositions are different types of testimony, neither authority cited by PIC addresses the propriety of using a single deposition for both. Rather, these cases only address the applicable time limits when a witness testifies in both her individual capacity and as a corporate representative. See Sabre v. First Dominion Capital, LLC, No. 01-2145 (BSJ)(HBP), 2001 U.S. Dist. LEXIS 20637, at *2-3 (S.D.N.Y. Dec. 12, 2001) (witness subject to two independent seven-hour time limits); Miller v. Waseca Medical Ctr., 205 F.R.D. 537, 540 (D. Minn. 2002) (deposition of witness in consolidated action not necessarily limited to seven-hour time limit).[8]

PIC's authorities note the potential for overreaching that exists where a witness noticed for both individual and 30(b)(6) depositions is restricted to a single seven-hour time limit. In the current action, however, Gillette did not restrict the time of a single deposition taken in February or March. Indeed, each deposition was voluntarily concluded by PIC. For each individual Gillette designated as a 30(b)(6) representative, and PIC then deposed individually, PIC had unlimited time to cover any and all subjects in PIC's Rule 30(b)(6) notice. Furthermore, PIC knew the identity of every Gillette designee at the time it deposed Gillette's employees and cannot now be heard to complain of surprise or lack of preparation. In the context of individual and 30(b)(6) depositions, the Sabre court sensibly noted that a "witness could simply adopt the

---

[8] Though citing Sabre, the Miller court in fact did not address Rule 30(b)(6) depositions at all and strictly resolved the issue of deposition time limits in two independent actions later consolidated into a single action. (Id. at 540.)

testimony he or she provided in a former capacity, thereby obviating the need for a second deposition." Sabre, 2001 U.S. Dist. LEXIS at *4.[9]

Third, the meet and confer process regarding 30(b)(6) depositions was curtailed and left unfinished by PIC's current motion. Gillette has proposed a compromise which would offer PIC one additional deposition for further testimony on six subjects from its Rule 30(b)(6) notice. Gillette has yet to hear from PIC on this proposal, but this reasonable solution further warrants denial of PIC's motion.

Through numerous depositions, Gillette has more than fulfilled its obligations under Rule 30(b)(6), and is still offering additional Rule 30(b)(6) testimony to PIC. PIC's highly technical motion to compel its attendance at its 30(b)(6) deposition should be denied.

## III.  Conclusion

For the foregoing reasons, PIC's Motion to Compel Gillette to Respond to PIC's Contention Interrogatories and to Attend its Rule 30(b)(6) Deposition should be denied.

---

[9] It is significant that both authorities cited by PIC emphasize the importance of using common sense and considering facts over technical considerations. The Miller court noted that strict application of rules is inappropriate, and courts are "called upon in each case to make a fact intensive inquiry" as to whether previous questioning of witnesses is sufficient. Miller, 205 F.R.D. at 540.

Dated: March 30, 2005         FROSS ZELNICK LEHRMAN & ZISSU, P.C.


By: __/s/Patrick T. Perkins/_____
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP

By: ____/s/Richard M. Gelb/_____
    Richard M. Gelb (BBO#188240)
    rgelb@gelbgelb.com
    Daniel C. Hohler (BBO#633065)
    dhohler@gelbgelb.com

20 Custom House Street
Boston, MA 02110
Tel: (617) 345-0010
Fax: (617) 345-0009

*Attorneys for Defendant/Counterclaim-Plaintiff*
*The Gillette Company*