UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>  Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>  Defendant. | Civil Action No. 04-10913 WGY |
| THE GILLETTE COMPANY,<br><br>  Counterclaim-Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>  Counterclaim-Defendants. | |

**GILLETTE'S RESPONSE AND COUNTERSTATEMENT TO PIC'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO PIC'S <u>MOTION FOR SUMMARY JUDGMENT ON GILLETTE'S FRAUD</u>**

Gillette submits the following response and counterstatement to PIC's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment on Gillette's Fraud.

**RESPONSES AND OBJECTIONS TO DEFENDANT'S RULE 56.1 STATEMENT**

1. Admit.

2. Denied. PIC's sole cited support for Gillette's allegedly fraudulent intent is the August 13, 2003 letter in which Gillette informed PIC that it was conducting an investigation. The cited support provides no facts as to Gillette's intent and instead requests

an inference be drawn by the Court. In this letter, Gillette in fact requested additional information from PIC to assist it in its investigation and search for images. (Ex. 11.)[1]

    3.    Denied. PIC did not, in good faith, delay in filing suit in reliance on Gillette's August 13, 2003 letter. Six weeks after receiving this letter, PIC's counsel responded by letter on September 29, 2003, noting that PIC had not heard from Gillette, had not received any additional photographic images, and voiced its suspicion of Gillette, stating "we are puzzled as to Gillette's intentions." (Ex. 12.)

    4.    [Mistakenly labeled a second "2" in Plaintiff's statement] Denied. The August 14, 2003 e-mail speaks for itself. It attaches a copy of Gillette's August 13, 2003 letter to PIC and assures the recipients it is simply for their reference and records. (Declaration of Michael Rader in Support of PIC's Motions for Summary Judgment ("Dkt. No. 77") Ex. 34.)

    5.    [Mistakenly labeled a second "3" in Plaintiff's statement] Admit, except object to the factual implication that the "'investigation' undertaken by Gillette" refers to the same "investigation" mentioned in Gillette's August 13, 2003 letter from a year earlier. (Ex. 11; Ex. 35.)

    6.    [Mistakenly labeled "4" in Plaintiff's statement] Denied. (Dkt. No. 77, Ex. 1 at 117-18.)

    7.    [Mistakenly labeled "5 in Plaintiff's statement] Denied. PIC offers no record evidence to support its factual claim, and instead cites to Gillette's entire privilege log and leaves the Court to make enormous inferential leaps. Testimony from a Gillette employee suggests the company was investigating PIC's claims as of September 2003. (Dkt. No. 77, Ex. 1 at 247.)

---

[1] Unless otherwise indicated, all exhibits refer to those attached to the Declaration of David Donahue in Support

8.  [Mistakenly labeled "6" in Plaintiff's statement]  Denied.  PIC's first cited support does not even address the subject of PIC's work for Gillette in spring 2004.  The second cited authority offers no basis whatsoever for PIC's claim as to Gillette's intent.  The Gillette employee who hired PIC for this work has testified that Gillette intended to pay PIC when it retained the company in spring 2004.  (Cooper Decl. ¶ 9; Dkt. No. 77, Ex. 1 at 258.)

9.  [Mistakenly labeled "7" in Plaintiff's statement]  Denied.  (Dkt. No. 77, Ex. 49 at 98, 100-101.)

10.  [Mistakenly labeled "8" in Plaintiff's statement]  Denied.  Gillette's last order for duplicates came in March 2000, a full year before PIC alleges Ms. Madden made a statement concerning duplication services.  (Ex. 7 at 5-23.)

## COUNTERSTATEMENT OF UNDISPUTED FACTS

**Facts Relating to PIC's "Investigation" Claim**

1.  In the fall of 2002, PIC believed it would no longer be given work by Gillette, and in reaction it asked, in phone calls, for the return of photographic images in Gillette's possession.  (Ex. 2 at 266.)

2.  PIC allowed eight months to elapse before making a written demand for the return of PIC images on June 23, 2003, addressed to a group of Gillette employees with whom Paul Picone, principal of PIC, had worked.  (Ex. 8.)

3.  Four days after PIC's written request, on June 27, 2003, Gillette returned almost 200 images to PIC.  (Dkt. No. 77, Ex. 28 at 1-25.)

4.  Several weeks later, on August 5, 2003, Michael A. Albert, counsel for PIC, sent a letter to Gillette Deputy General Counsel John B. Gatlin requesting additional PIC images in Gillette's possession and alleging, *inter alia*, acts of copyright infringement by Gillette.  (Ex. 10.)

---

of Defendant The Gillette Company's Motion for Summary Judgment.  (Dkt. No. 93.)

5. A week later, on August 13, 2003, Mr. Gatlin replied via letter explaining the difficulties involved with tracking down images across a large company and requesting more information about the images PIC sought. (Ex. 11.)

6. In the August 13, 2003 letter, Mr. Gatlin also stated that Gillette was conducting an "internal investigation to determine the extent to which any of your client's images have been used by Gillette or any of its subsidiaries," noted that Gillette had been unable to find any instance of any misuse of PIC's photographs, and further noted that it would "continue with our investigation and forward any relevant information to your attention as it becomes available." (Ex. 11.)

7. The next day, a Gillette legal intern sent an e-mail, with a copy of Mr. Gatlin's letter attached, to the recipients of Mr. Picone's June 23, 2003 letter. The e-mail noted that the attached letter "is simply for your reference and for your records. You do not need to do anything." The e-mail and attachment served to keep Gillette employees (who had been contacted by Mr. Picone) informed but assure them that the Gillette legal department was handling the investigation referenced in the letter and that, consequently, the employees did not need to take any steps on their own before being contacted by a representative from the department. (Dkt. No. 77, Ex. 34.)

8. The purpose of this e-mail was confirmed in a similar conversation between Gillette employees Elizabeth Cooper and Tom Burgess in September 2003. (Dkt. No. 77, Ex. 1 at 247.)

9. More than six weeks later, on September 29, 2003, Mr. Albert responded to Mr. Gatlin's August 14, 2003 claiming to be "puzzled" by Gillette's intentions since PIC's counsel had heard nothing further from Gillette since the August 13, 2003 letter. Mr. Albert also failed to provide Gillette with the information requested by Mr. Gatlin in the August 13 letter. (Ex. 12.)

10. There was no written correspondence between PIC's counsel and Gillette's counsel from September 30, 2003 through May 7, 2004. (Exs. 8-12.)

11. On May 18, 2004, eleven days after PIC commenced this action against Gillette, Mr. Albert sent a letter to Mr. Bechet purporting to confirm the content of their conversation on that day. Among other things, Mr. Albert claimed that, during their telephone conversation, Mr. Bechet had "confirmed Michelle Bratton's previous representation to [PIC] that an index has been prepared within Gillette of the photographic materials belonging to our client that Gillette has located and gathered during its investigation…. You were not willing, however, to provide that index to us at this time." (Ex. 34.)

12. On May 19, 2004, in response to Mr. Albert's letter, Mr. Bechet wrote: "I enjoyed our conversation. In reply to yours of the 18th, please be advised that no representation was made to you regarding an 'investigation' undertaken by Gillette. Also, no representation was made to you regarding an index of photographic materials belonging to your client." (Ex. 35.)

13. Mr. Bechet was *not* referring to any prior statement made by Mr. Gatlin concerning Gillette's investigation, but was disputing PIC's counsel's purported record of the parties' telephone conversation. (Ex. 35.)

14. Mr. Albert did not respond to Mr. Bechet's letter.

**Facts Relating to PIC's Spring 2004 Work For Gillette**

15. In February and March 2004, Gillette employee Elizabeth Cooper had two telephone conversations and a lunch meeting with Mr. Paul Picone, in which he agreed that PIC would photograph several Gillette products. (the "Spring 2004 Jobs"). (Cooper Decl. ¶ 6.)

16. PIC performed this work in March and April 2004. (Cooper Decl. ¶ 6.)

5

17. Based upon prior jobs PIC performed for Gillette, Ms. Cooper estimated this work took approximately two days. (Dkt. No. 77, Ex. 1 at 143-44.)

18. Ms. Cooper was aware that the companies were involved in a dispute, and prior to meeting with Mr. Picone, she met with Gillette's Deputy General Counsel John Gatlin to discuss potential future projects with PIC. As a courtesy to Mr. Picone, Ms. Cooper provided him with a copy of her notes from her meeting with Mr. Gatlin. (Dkt. No. 77, Ex. 1 at 224-30.)

19. Ms. Cooper was never instructed by anyone, at any time, not to pay Mr. Picone for the Spring 2004 Jobs. (Cooper Decl. ¶ 9; Dkt. No. 77, Ex. 1 at 258.)

20. After PIC filed the complaint in this action on May 7, 2004, it sent the invoices for the Spring 2004 Jobs in an envelope postmarked May 14, 2004, which Ms. Cooper received on May 15, 2004. (Dkt. No. 1; Perkins Decl., Ex. 2; Dkt. No. 77, Ex. 1 at 160.)

21. One of these invoices totaled $43,500 for photographic services and, incorporating miscellaneous expenses, totaled over $63,000. (Cooper Decl. ¶ 8.)

22. Ms. Cooper considered this a gross overcharge based upon her years of doing business with PIC. Indeed, in over four years of dealing with PIC, Ms. Cooper had never received an invoice approaching the amount PIC charged for the Spring 2004 Jobs. As part of Ms. Cooper's responsibilities in approving vendor invoices, she could not routinely approve an invoice for such an unusually high amount. (Cooper Decl. ¶ 8.)

23. Because the invoices for the Spring 2004 Jobs appeared to overcharge Gillette, and because PIC and Gillette were in litigation, Gillette has not paid the invoices. (Dkt. No. 24 ¶ 27.)

**Facts Relating to PIC's "Duplication Services" Claim**

24. No duplicates of any PIC images were made for Gillette by Advanced Photographics, Inc. ("Advanced Photographics") after March 2000. (Ex. 7 at 5-29; Ex. 3 at 91.)

25. The date of the last Advanced Photographics invoice alleged by PIC to establish Gillette's improper duplication or photographs is March 31, 2000. (Ex. 7 at 22.)

26. PIC was aware of Gillette's duplication of PIC images no later than March 2000. (Ex. 2 at 186-87; Ex. 4 at 10-16; Ex. 3 at 11-12, 91.)

27. PIC claims that in March 2001, Gillette employee Anna Madden told Paul Picone that Gillette was "experiencing a reduced need for duplicates" while, in fact, Gillette was allegedly obtaining duplicates of PIC images directly from sources such as Advanced Photographics. (Dkt. No. 81 at 7, 11.)

28. Ms. Madden does not recall whether Mr. Picone asked her about duplicates, or discussing where Gillette was getting duplicates made, and generally did not recall discussing duplication at all with Mr. Picone. (Dkt. No. 77, Ex. 49 at 98, 100-101.)

| | |
|---|---|
| April 22, 2005 | FROSS ZELNICK LEHRMAN & ZISSU, P.C. |
| GELB & GELB LLP | |
| By:  /s/Richard M. Gelb/  <br>     Richard M. Gelb (BBO#188240) <br>     rgelb@gelbgelb.com <br>     Robert S. Messinger (BBO#651396) <br>     rmessinger@gelbgelb.com <br><br> 20 Custom House Street <br> Boston, MA  02110 <br> Tel: (617) 345-0010 <br> Fax: (617) 345-0009 | By:  /s/Patrick T. Perkins  <br>     Patrick T. Perkins (Admitted *pro hac vice)* <br>     David Donahue (Admitted *pro hac vice)* <br> 886 United Nations Plaza <br> New York, New York 10017 <br> Ph: (212) 813-5900 <br> Fax: (212) 813-5901 <br><br> *Attorneys for Defendant The Gillette Company* |