UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>      Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>      Defendant. | Civil Action No. 04-10913 WGY |
| THE GILLETTE COMPANY,<br><br>      Counterclaim-Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>      Counterclaim-Defendants. | |

**THE GILLETTE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PIC'S MOTION FOR SUMMARY JUDGMENT ON COPYRIGHT INFRINGEMENT**

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP
    Richard M. Gelb (BBO#188240)
    Robert S. Messinger (BBO#651396)
20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009
*Attorneys for Defendant/Counterclaim-Plaintiff
The Gillette Company*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT ............................................................................................................1

I.    THE PURPORTED LICENSE LIMITATIONS ON THE BOILERPLATE DO
      NOT APPLY TO GILLETTE  ..............................................................................1

II.   PIC'S PURPORTED LICENSE TERMS ARE UNENFORCEABLE AS A
      MATTER OF LAW UNDER THE DOCTRINES OF WAIVER, LACHES, AND
      ESTOPPEL ........................................................................................................3

      A.    PIC Has Waived The Purported License Terms ........................................3

      B.    PIC's Copyright Claims Are Also Barred Under The Doctrines Of Laches
            And Estoppel..........................................................................................4

III.  THE VAST MAJORITY OF PIC'S COPYRIGHT CLAIMS SHOULD BE
      DISMISSED ON SEPARATE GROUNDS ..............................................................6

      A.    The Court's Order Limits PIC's Copyright Claims To Those Identified In
            PIC's Supplemental Response To Interrogatory No. 1...................................6

      B.    The Bulk Of PIC's Copyright Claims Are Barred As Untimely ...................7

            1.    Duplicate Transparencies Made At Advanced Photographics...............10

            2.    Gillette's Catalogs........................................................................11

            3.    The Latin American Photo...............................................................11

      C.    Many Of PIC's Claims Fail Because Of Its Failure To Obtain Copyright
            Registrations ........................................................................................11

            1.    The Almost 4,500 Transparencies ....................................................12

            2.    The Advanced Photographics Duplicates ...........................................13

            3.    The Digital Images........................................................................13

            4.    Gillette Catalogs...........................................................................13

            5.    Internet Images.............................................................................13

6.    Third Party Images ...................................................................................13

7.    Foreign Web Sites .....................................................................................13

8.    Foreign Catalogs .......................................................................................14

9.    Product Packaging .....................................................................................14

D.    PIC's Copyright Claims Based Upon Copyright Registrations VA1-256-101, VA1-256-146, And VA1-256-147 Are Barred .............................................................14

E.    There Is No Evidence That Allegedly Unauthorized Duplicates Were Made Outside The One-Year License PIC Claims Exists ....................................................15

1.    PIC's New Version Of The Scope Of Gillette's Purported License Is Barred By PIC's Previous Judicial Admissions.............................................15

2.    It Is Undisputed That The Right To Duplicate Is Encompassed Within The Right To Reproduce...............................................................................16

F.    PIC's Claim That Its Invoices Limit The "Media" In Which Its Photographs May Be Used Is Unsupported By The Invoices Themselves ...................................17

IV.    PIC'S MOTION FOR A "PRESUMPTION OF INFRINGEMENT IN MISSING EVIDENCE" IS WITHOUT MERIT ..............................................................................17

CONCLUSION....................................................................................................................19

I:\PPERKINS\GLTC\General\TOC-SJ-Copyright.doc

## Preliminary Statement

In an attempt to circumvent the Court's page limit on motions, PIC has filed *five separate* briefs on summary judgment. In its brief on its copyright claims, PIC breezily asserts that it has demonstrated, as a matter of law, in excess of 8,000 "established" instances of copyright infringement. (*See* PIC Br. (Dkt. No. 87) at 6.) PIC concedes that it has only provided the Court with what it states are "representative samples" of purported copyright infringement. And yet, on this scant record PIC asks the Court to enter judgment on more than 8,000 claims. (Dkt. No. 87 at 7.)

Aside from the entirely impermissible nature of PIC's "sampling method," an application of the law to PIC's allegations demonstrate that all of PIC's copyright claims are deficient as a matter of law. PIC's current motion merely clarifies that Gillette's motion for summary judgment as to PIC's copyright claims should be granted.

## ARGUMENT

## I.    THE PURPORTED LICENSE LIMITATIONS ON THE BOILERPLATE DO NOT APPLY TO GILLETTE

PIC's copyright claims rely entirely upon its mistaken assertion that the back-of-the-invoice "terms and conditions" (the "Boilerplate") was binding on Gillette on each of the more than 640 jobs PIC performed for Gillette. However, the undisputed facts establish that PIC is incorrect as a matter of law.

Massachusetts law prohibits the addition of new or different terms on an invoice *after* the formation of an oral or written contract. *Commonwealth v. Hull*, 296 Mass. 327, 333 (1937) ("the document or letter containing the qualifying provisions must be accepted by the offeree at or prior to formation of the contract."); *Agoos Kid Co. v. Blumenthal Import Corp.*, 282 Mass. 1, 14 (1932) (citations omitted) ("[S]tatements printed on the defendant's bill heads are no part of the contracts between the parties."); *Lalime & Partridge, Inc. v. Hobbs*, 255 Mass. 189, 192 (Mass. 1926) (citations omitted). The rule is similar under the Massachusetts U.C.C.: Where a seller sends goods to a purchaser with an invoice containing terms that are additional to or different than the terms of the parties' prior written or oral agreement, the form is *not* considered a counteroffer, and the terms on the form do *not* become part of the parties' agreement if they

1

would materially alter the parties' agreement, even if the buyer accepts the goods. *JOM, Inc. v. Adell Plastics, Inc.*, 193 F.3d 47, 59 (1st Cir. 1999) (citing Mass. Gen. L. 106, § 2-207(2)(b)); *Glyptal, Inc. v. Engelhard Corp.*, 801 F. Supp. 887, 893 (D. Mass. 1992) ("seller's acknowledgement [that] arrives after the seller ships the goods" is "a mere proposal for additional terms, which either would be excluded from or incorporated into the parties' agreement depending upon" analysis under Section 2-207(2)).

PIC's first job for Gillette was in March 1992 and considered an "audition" for PIC. (Dkt. No. 77, Ex. 10 at 15, 117.) Prior to performing work on this job, PIC provided a written estimate, which contained the Boilerplate terms on its reverse side. (Dkt. No. 99, Ex. 13.) The estimate was then revised to reflect the parties' agreement that Gillette would "buy-out" PIC's reproduction rights, such that Gillette would have "unlimited time and unlimited usage rights" in the photos. (Dkt. No. 77, Ex. 10 at 131; Dkt. No. 99, Ex. 14.) After performing the job, PIC sent an invoice to Gillette that contained the Boilerplate on the reverse side. (Dkt. No. 99, Ex. 5.) "Buyout" and "unlimited usage" do not appear on the face of the invoice; instead, next to "Period of Use" on the face of the invoice, PIC typed "N/A," which PIC concedes means "Not Applicable." (*Id.*, Exs. 5; 2 at 138; *see also* Dkt. No. 77, Ex. 7 at 111.) Although the Boilerplate one-year license language appears on the back of the job invoice, the restriction did not apply. (Dkt. No. 77, Ex. 10 at 138-39.)

On the very next job in April 1992, PIC did not verbally express to Gillette any limitation on the usage of the photographs. (*Id.* at 140, 142.) And indeed, on the face of the invoice, "Period of Use" is again identified as "N/A." (Dkt. No. 99, Ex. 15.) In fact, on virtually every job performed in 1992, 1993, through mid-1994, PIC similarly identified the "Period of Use" as "N/A." (*See* Dkt. No. 99, Ex. 6.) PIC never told Gillette that "N/A" did not mean Gillette could use the photographs for an unlimited period of time. (Dkt. No. 77, Ex. 10 at 155.) When, in 1994, PIC replaced "N/A" with the letters "T&C" (Dkt. No. 99, Ex. 16), there was no prior discussion with Gillette limiting the use of photographs to one year. (Dkt. No. 91 ¶ 6.) Moreover, no PIC employee or representative ever told Gillette prior to any given job, that its use of photographs could be for only one year. (*Id.*)

2

## II.    PIC'S PURPORTED LICENSE TERMS ARE UNENFORCEABLE AS A MATTER OF LAW UNDER THE DOCTRINES OF WAIVER, LACHES, AND ESTOPPEL

### A.    PIC Has Waived The Purported License Terms

"If [a party] intentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it and may not thereafter seek judicial enforcement." *Gooley v. Mobil Oil Corp.*, 678 F. Supp. 939, 941 (D. Mass. 1987), *aff'd* 851 F.2d 513 (1st Cir. 1988) (citation omitted and alterations in original).  Waiver is a question of law to be resolved by the Court where the facts are undisputed.  *Cumberland Farms, Inc. v. Marchese*, No. 9702497, 2000 WL 33171003, at *3 (Mass. Super. Mar. 14, 2000) (granting summary judgment against plaintiff) (citing *McCarthy v. Tobin*, 429 Mass. 84, 88 n.5 (1999)).

Waiver is established where "'clear, decisive and unequivocal conduct'" indicates that the party to a contract would not insist that the contractual provision at issue be performed. *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 893 (1st Cir. 1988) (quoting *Glynn v. City of Gloucester*, 9 Mass. App. Ct. 454, 462 (1980)).  *See also Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 992-93 (1st Cir. 1988) ("plaintiff's admitted failure to abide by the terms of the dual notice provision barred the subsequent prosecution of a breach of contract claim against Mass. Electric").  Here, PIC demonstrated clear, unequivocal, and undisputed conduct that it would not enforce the provisions it now seeks to enforce.

Between 1992 and 2002, PIC was on notice that its photographs were regularly used beyond the purported one-year limit, outside the United States, on media other than that listed on the front of the invoices, and by third parties who sold Gillette products.  With respect to use beyond one year, PIC does not dispute that Gillette provided copies of its 1995 through 2002 yearly Braun catalogs to PIC within the year of each catalog's respective production date, that such catalogs contained numerous PIC photographs outside the purported one-year limit, and that such catalogs were reviewed by PIC personnel.  (Dkt. No. 77, Ex. 10, at 80-109; Dkt. No. 99, Ex. 7 at 33-34; *Id.*, Exs. 17, 22; *Id.*, Ex. 19 at 107-09.)  With respect to PIC's knowledge of Gillette's foreign uses, Braun's 1995, 1996, 1997, 1998 and 1999 catalogs produced from PIC's files each prominently displayed the address of "Braun Canada Ltd." on the back cover.  (*Id.*, Ex.

3

17.) Moreover, without objecting or increasing its purported licensing fees, PIC: (1) knew that Gillette was sending photographic transparencies to a Braun project manager and to a Gillette vendor, both located in Canada (*Id.*, Exs. 17, 18; Ex. 19 at 123:1-11); (2) sent transparencies to Gillette's offices in the Dominican Republic (Perkins Decl. Ex. 11); and (3) as early as 1998 was aware of Gillette's use of one of its images in Spanish-language marketing material. (Dkt. No. 77, Ex. 10 at 200-02; Dkt. No. 99, Ex. 20.) Moreover, PIC never placed any restriction on the media in which Gillette used the photographs. In the "media use" portion of its invoices, PIC used generic terms such as "Sales Promo" or "Marketing" to describe a wide variety of different uses, such as trade show use (Perkins Decl. Ex. 3), use in powerpoint presentations (*id.*), catalog use (*id.*, Ex. 4), foreign use (Dkt. No. 99, Ex. 18; Perkins Decl. Ex. 11) and use by Gillette's customers (Dkt. No. 99, Ex. 21).

With respect to third-party use, on numerous occasions throughout 1992-2002, PIC either provided photographs to Gillette that PIC knew were to be used by third party sellers of Gillette's products or itself provided photographs to Gillette's vendors for their use without any increase in fees, including Bloomingdale's, Costco, CVS, Dillard's, Duane Reade, Eckerd, Filene's, Fortunoff, Hecht's, K-Mart, Lowe's, QVC, Staples, and Wal-Mart. (Dkt. No. 99, Ex. 21.)

PIC also expressly waived the purported copyright notice requirement. Indeed, prior to performing work for Gillette, PIC was told that "it would be difficult" to place an acknowledgement of PIC's copyright on Gillette's selling materials. (Dkt. No. 77, Ex. 9 at 58.) Nevertheless, PIC never told Gillette it would not do further work for it unless credited, even after PIC was aware that Gillette was not providing such credit. (*Id.* at 59.) Moreover, PIC kept in its files copies of Gillette Catalogs from 1995 – 2002, that it received from Gillette within one year of production and that it reviewed when received. (*Id.* at 73-74, 77, 87; Dkt. No. 99, Exs. 17, 22.) None of these catalogs contain any copyright notice acknowledging PIC's copyright ownership. (*Id.*)

## B.    PIC's Copyright Claims Are Also Barred Under The Doctrines Of Laches And Estoppel

"The doctrine of laches applies when one party has unreasonably and inexcusably

delayed bringing suit and the other party is prejudiced as a result of that delay." *Penn Cent. Corp. v. Union Pacific R. Co.*, 1993 WL 370827, at *4 (D. Mass. 1993) (citing *Galliher v. Cadwell*, 145 U.S. 368 (1892) and *Calkins v. Wire Hardware Co.*, 165 N.E. 889 (1929)). "Laches commences from the time plaintiff had knowledge that its rights have been infringed." *Id*. Moreover, "'[a] person is estopped from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon the representations made.'" *Precious Metals Assocs., Inc. v. Commodity Futures Trading Comm'n* 620 F.2d 900, 908 (1st Cir. 1980) (quoting Bergeron v. Mansour, 152 F.2d 27, 30 (1st Cir. 1945)).

As set out above, PIC has unreasonably and inexcusably delayed in bringing suit. For more than 10 years PIC knowingly allowed Gillette to make unlimited uses of its photographs without ever enforcing the Purported License terms it seeks now to enforce. As a result, Gillette had no reason to believe that it could not use PIC photographs beyond one year, outside the United States, on media other than that identified on the face of the invoices, nor did it have any reason to believe it could not provide photographs to its third party customers. (*See, e.g.,* Cooper Decl. ¶ 5; Josephson Decl. ¶ 4; Madden Decl. ¶ 5; 2d Tattan Decl. ¶ 5.)

PIC points out in its brief that Gillette employees "ignored the license it received" and treated the images as if Gillette owned them. (Dkt. No. 87 at 5-6.) PIC is only half right. Gillette did not "ignore" the license it received, rather the "license" it received, based upon PIC's own actions and inaction, was an unlimited right to use the photographs. (Dkt. No. 77, Ex. 10, at 80-109, 200-02; Dkt. No. 99, Ex. 7 at 33-34, Exs. 17-22; Perkins Decl. Exs. 3-4, 11.) Thus, the view of Gillette employees vis-à-vis the photographs is understandable.[1]

Based upon the above undisputed facts, Gillette rightly relied upon PIC's failure to enforce any of the Purported License terms it now claims applies.

---

[1] The difference between an unlimited license and actual "ownership" of copyright is a legal concept generally lost on lay people. The fact that Gillette employees referred to "ownership" as opposed to an unlimited license does not change the situation—PIC did not enforce the Purported License Terms and Gillette had a right to rely on that.

## III. THE VAST MAJORITY OF PIC'S COPYRIGHT CLAIMS SHOULD BE DISMISSED ON SEPARATE GROUNDS

### A. The Court's Order Limits PIC's Copyright Claims To Those Identified In PIC's Supplemental Response To Interrogatory No. 1

Since the outset of the case, Gillette has been trying to discover the specific basis of PIC's broad claims of copyright infringement and breach of contract. In its pleading, PIC claims generalized "copyright infringement" based upon Gillette's use of PIC photographs beyond an alleged one-year license, or use of photographs without a copyright notice and alleged infringement of photographs from each of the more than 600 jobs PIC performed for Gillette. (SAC ¶¶ 48-49.) Because PIC's claims were so ambiguous, on July 15, 2004, Gillette filed a Motion to Dismiss in Part and for a More Definite Statement. On September 23, 2004, the Court ordered PIC to "set forth in their mandatory disclosure to the extent now known the date and circumstance of the alleged misuse." (Sept. 23, 2004 Hearing Tr. at 10.) PIC's mandatory disclosure, served on October 4, 2004, was deficient in that it identified the following limited information concerning three alleged infringements: (1) the photographs; (2) the copyright registration numbers; (3) the date the photographs were allegedly transmitted to Gillette; and (4) an allegation that the three photographs were used beyond the purported one-year license granted to Gillette. The mandatory disclosure also referred to eight additional photographs identified as "infringing material" but without any identification of any copyright registration number, the dates the photographs were allegedly provided to Gillette by PIC, or any other information articulating the basis of PIC's claim.

Rather than make a motion to the Court concerning the deficiency in PIC's mandatory disclosure at that time, Gillette opted instead to serve its First Set of Interrogatories on October 26, 2004, directed, in part, at discovering the basis for PIC's alleged claims. PIC served its responses on November 29, 2004. (Dkt. No. 53, Donahue Decl. Ex. 2.) Gillette's Interrogatory No. 1 asked for PIC to "state the basis" of its copyright claim. PIC served deficient responses, which it refused to supplement after repeated requests by Gillette. As a result, on March 1, 2005, Gillette filed a motion to compel. (Dkt. No. 53.)

6

On March 3, 2005, the Court ordered PIC to supplement its interrogatory responses directed at obtaining the basis for its copyright and breach of contract claims by "1) producing all of the documents referred to therein, and 2) supplementing its responses as required by the rules for interrogatories inquiring 'state the basis for.' Should supplementation include only documents, the plaintiff will, of course, be limited at trial to the production of those documents." (Electronic Order 3/3/05.)  In a subsequent Order, the Court stated that "UNLESS PROMPTLY SUPPLEMENTED WITH EXPRESS AND DETAILED FACTUAL CLAIMS, THE PLAINTIFF WILL BE LIMITED AT TRIAL TO THE PRODUCTION OF THE DOCUMENTS SPECIFICALLY IDENTIFIED IN ANSWER TO THESE TWO INTERROGATORIES."  (Electronic Order 3/8/05) (All caps in Order).

On March 17, 2005, PIC served its Supplemental Response To Interrogatories 1 and 2 (Dkt. No. 99, Ex. 7.)  As set forth in Gillette's Motion for Summary Judgment, in its Supplemental Response to Interrogatory No. 1, PIC organizes its copyright claims as follows: (1) Gillette's alleged unauthorized creation of duplicate transparencies and slides (*Id.* at 3-28); (2) Gillette's alleged unauthorized duplication of digital images (*Id.* at 29-33); (3) Gillette's alleged unauthorized reproduction of PIC images in catalogs beyond the scope of PIC's license (*Id.* at 35-44); (4) use by Gillette or by a third party of PIC's images on the Internet (*Id.* at 45-51); (5) Gillette's alleged supply of PIC images to third parties (*Id.* at 51-54); (6) Gillette's alleged use of PIC images on foreign web sites (*Id.* at 54-55); (7) Gillette's alleged Latin American use (*Id.* at 55-56); (8) Gillette's alleged use of PIC images in foreign catalogs (*Id.* at 56-57); (9) Gillette's use of images provided to Gillette in Spring 2004 (*Id.* at 57-58); and (10) Gillette's use of PIC images on product packaging.  (*Id.* at 58-59.)  PIC's Court-ordered Interrogatory Response provides a finite universe of PIC's copyright claims and a road map for the Court to significantly pare down PIC's copyright claims to the extent it does not dismiss them on the grounds set forth in Section II, *supra*.

**B.      The Bulk Of PIC's Copyright Claims Are Barred As Untimely**

The statute of limitations for a claim brought under the Copyright Act is three years from

the time when the claim accrues.  17 U.S.C. § 507 (b).  "A claim for copyright infringement is generally considered to have accrued when 'one has knowledge of a violation or is chargeable with such knowledge.'"  *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 186 F. Supp. 2d 1, 24 (D. Mass. 2002) (Young, Chief J.) (citations omitted).  "A plaintiff is 'chargeable with knowledge' when a reasonably diligent person in the plaintiff's position would have become aware of the infringement."  *Id.*  A statute of limitations is delayed only where the facts giving rise to a claim are "'inherently unknowable.'"  *Saenger*, 119 F.3d at 65 (emphasis in original) (quoting *Catrone v. Thoroughbred Racing Ass'ns of N. Am., Inc.*, 929 F.2d 881, 885 (1st Cir. 1991)).  As this Court recently reiterated in *Rakes v. United States*, 352 F. Supp. 2d 47, 70 (D. Mass. 2005), "'[t]he test for whether a plaintiff should have discovered necessary facts [to bring a claim] is an *objective* one.'" (emphasis in original) (quoting *McIntyre v. United States*, 367 F.3d 38, 52 (1st Cir. 2004)).[2]  "[T]he plaintiff bears the burden of proving facts taking his case outside the statute of limitations."  *Franklin v. Albert*, 381 Mass. 611, 619, 411 N.E.2d 458, 463 (1980) (citation omitted).

Through its bogus claims of "stonewalling," PIC appears to be attempting to wriggle out of its own delay in prosecuting this action by claiming that the statute of limitations should somehow be tolled.  PIC claims that, in an August 13, 2003 letter, Gillette falsely represented that it would "conduct an investigation and get back to PIC, which [was] calculated to, and did, induce reliance."  (Dkt. No. 81 at 9.)

The doctrine of equitable estoppel allows a plaintiff to "escape the consequences of his lack of diligence in bringing his action ... by way of proof that the defendants lulled the plaintiff into the delay."  *Coady v. Marvin Lumber & Cedar Co.*, 167 F. Supp. 2d 166, 171 (D. Mass. 2001) (holding defendant not equitably estopped from asserting statute of limitations defense and dismissing all claims).  To apply this doctrine PIC must show that (1) Gillette made representations it knew or should have known would induce PIC to postpone bringing suit; (2)

---

[2] When a person "'has a mere hunch, hint, suspicion, or rumor of a claim . . . such suspicions do give rise to a *duty to inquire* into the possible existence of a claim in the exercise of due diligence.' Once a duty to inquire is established, the plaintiff is charged with the knowledge of what he or she would have uncovered through a reasonably diligent investigation." *Rakes*, 352 F. Supp.2d at 70 (emphasis in original) (citations omitted).

PIC delayed bringing suit in reliance on those representations; and (3) its reliance was reasonable. *Kozikowski v. Toll Bros., Inc.*, 354 F.3d 16, 24 (1st Cir. 2003). The *Kozikowski* opinion is instructive, with facts similar to the instant action, and demonstrates PIC's failure to meet all three prongs of this test. Indeed, in that case, the plaintiffs sought to rely upon similarly vague statements, made in letters, that the defendant was "considering the building code violations" identified by in engineer's report and that defendant's "representatives would be available to the [plaintiffs] to discuss their problems." *Id.* at 24.

On the first prong, PIC fails to prove Gillette made the requisite misrepresentation because "promises or assurances in such communications must be specific in order to constitute 'representations.'" *Id.* at 24. Gillette's language in the August 13, 2003 letter fails to rise to the level of a "promise" and is clearly an imprecise and indefinite statement. As in *Kozikowski*, Gillette's statements were "very general in nature and did not specifically assure" PIC that it would get exactly what it wanted at a definite time. *Id.*

On the second prong, the First Circuit reiterated the finding of the district court that "'given the long and rocky course of the relationship' between the two parties, the notion that the [plaintiff] 'truly *believed*' [defendant] and 'were thus lulled into inaction ... strains credulity.'" *Id.* (quoting *Kozikowski v. Toll Bros., Inc.*, 246 F. Supp. 2d 93, 101 (D. Mass. 2003) (Young, *Chief J.*)). The parties here had a similarly rocky relationship at the time Gillette sent its August 13, 2003 letter. After Mr. Picone had terminated his relationship with Gillette out of frustration, spent ten months seeking the return of his materials, and retained counsel, the idea that Gillette "lulled" PIC into deferring legal action "strains credulity."

On the third prong, even assuming all facts in a light most favorable to PIC, its reliance upon Gillette's August 2003 letter was unreasonable. Where a defendant has continuously failed to satisfy a plaintiff's demands over a significant period of time, reliance upon correspondence from that defendant is unreasonable. *Kozikowski*, 354 F.3d at 25. These are precisely the facts in the instant action. PIC first made a demand in October 2002 and did not receive satisfaction. (Dkt. No. 75 ¶ 30.) PIC then sent a letter on June 23, 2003 but was not satisfied with Gillette's reaction. (*Id.* ¶ 31.) PIC then had its counsel send a letter on August 5, 2003, again asserting

claims and expressing dissatisfaction with Gillette's response. As for Gillette's letter of August 13, 2003, it is undisputed that PIC *was not lulled* thereby as demonstrated by PIC's counsel's response of September 29, 2003 in which it expressed dissatisfaction with Gillette's response to the situation. (Dkt. No. 99, Ex. 12.) It is undisputed that after the September 29, 2003 letter from PIC's counsel, there was *no* further correspondence between counsel for the parties and PIC nonetheless took no action until filing suit almost *eight months* later.

This Court's decision in *Deisenroth v. Numonics Corp.*, 997 F. Supp. 153 (D. Mass. 1998), further establishes that any claim of equitable estoppel by PIC is without merit. In Deisenroth, the plaintiff interpreted sporadic discussions with defendants' representatives, regarding "ways in which he might be repaid the value for his eliminated stock" and "promises to bring the matter to the Board of Directors," as indications that plaintiff need not file suit. *Id.* at 155. Dismissing the plaintiff's tort claims as time-barred, the court held that a "defendant waives the statute of limitations defense only where it gulls the plaintiff by making such representations *throughout the entire statutory period*." *Id.* at 157 (emphasis added). PIC's fraud claim has the same ring to it: PIC requests the Court hold it was "gulled" by a single, general statement made by Gillette nine months before PIC filed suit. Such a holding would be directly contrary to the law in this District.

Thus, as established below, 7,043 out of PIC's alleged 8,683 copyright claims are barred by the statute of limitation.

### 1.    Duplicate Transparencies Made At Advanced Photographics

PIC claims copyright infringement based upon alleged duplicates of PIC images made for Gillette by Advanced Photographics between January 1998 and March 2000. (Dkt. No. 99, Ex. 7 at 16-29.) This allegation of more than 6,700 separate infringements all took place before well before May 7, 2001, the cut off date for any copyright claim in this case. The undisputed facts demonstrate that PIC knew no later than 2000 that Advanced Photographics was allegedly making unauthorized duplicates of PIC's images for Gillette.

Jason Roopenian, the Vice President of Advanced Photographics testified that when he was made aware that Gillette was making duplicates of PIC's images he informed PIC's

president, Paul Picone. (Dkt. No. 77, Ex. 6 at 11-12.) Advanced Photographics' former employee Joe Gannuscio, who worked there between 1994 and 2001, similarly testified that he had alerted Paul Picone that Gillette was ordering duplicates of PIC's images directly. (Dkt. No. 99, Ex. 4 at 5-6, 10-16.) Mr. Picone conceded at his deposition that Mr. Gannuscio had contacted him "several times over duplicating of images from—actually not only Gillette but Sylvania, also." (Dkt. No. 77, Ex. 10 at 186-87.) Because PIC was told of alleged unauthorized duplication of images by Gillette while it was allegedly taking place, and because it is undisputed that no duplicates of any images were made for Gillette by Advanced Photographics after March 2000 (Dkt. No. 99, Ex. 7 at 16-29), PIC was on actual notice, and certainly on inquiry notice, of the purported unauthorized duplication well before the statute of limitations cut off.

### 2.    Gillette's Catalogs

PIC alleges copyright infringement based upon Gillette's use of PIC's photographs in catalogs dated 1996-2002. (*Id.* at 33-44.) PIC concedes that each of the catalogs for which PIC claims copyright infringement were produced from PIC's own files.[3] (*Id.*; *see also* Dkt. No. 99, Exs. 17 & 22.) PIC received the catalogs "within a year" of production. (Dkt. No. 77, Ex. 10 at 73-74.) Because the catalogs came from its own files, PIC cannot claim it was not on actual or even inquiry notice. As a result, any copyright claims relating to the catalogs for 1996-2001 are time barred.

### 3.    The Latin American Photo

PIC claims copyright infringement based upon alleged use of one of its photographs in a Spanish-language publication. (Dkt. No. 99, Ex. 7 at 55-56.) However, at deposition, PIC conceded that it had the allegedly infringing photograph in its possession as early as 1998. (Dkt. No. 77, Ex. 10 at 200-02.) Thus, any copyright claim based upon this photograph is also time barred.

### C.    Many Of PIC's Claims Fail Because Of Its Failure To Obtain Copyright Registrations

---

[3] PIC had the allegedly offending catalogs in its possession by October 4, 2004, the date by which it was ordered to "set forth in their [sic] mandatory disclosure to the extent now known the date and circumstance of the alleged misuse." (Sept. 23, 2004 Hearing Tran. at 10.) PIC's copyright claims based upon these catalogs should be precluded on the separate basis that PIC failed to comply with the Court's express order.

Section 411 (a) of the Copyright Act provides that "no action for infringement of copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title." *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 650 F. Supp. 838, 850, n.7 (D. Mass. 1986) ("[c]opyright registration under § 411 (a) is a condition precedent to filing an infringement action.") (citations omitted). PIC concedes this. (Dkt. No. 87 at 13-14.) The registration requirement is not discretionary but rather, this Court's subject matter jurisdiction over any of PIC's copyright claims is dependent upon plaintiff's ownership of a valid copyright registration. *See, e.g., Morris v. Business Concepts, Inc.*, 283 F.3d 502, 505 (2d Cir.2002); *see also I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc.*, 307 F.Supp.2d 521, 526 (S.D.N.Y.,2004) ("registration requirement is jurisdictional"); *Dodd v. Fort Smith Special School Dist. No. 100*, 666 F. Supp. 1278, 1282 (W.D.Ark.,1987) ("lack of registration is a result of the defendants' retention of the only copy of the manuscript, however, the Copyright Act does not provide any exceptions from the registration requirement").

PIC has sought to skirt this statutory and jurisdictional requirement by claiming that there were images it was unable to register because Gillette never returned them. (Dkt. No. 87 at 14, n.12.) This argument is to no avail because the statutory and jurisdictional requirement is absolute. Moreover, PIC's claim is as false as it is futile. Depending upon the version of PIC's testimony that is credited, PIC kept duplicate originals of every view provided to Gillette (Ex. 77, Ex. 9 at 28-29, 47-48) or at least kept "original out takes of the views that were photographed for Gillette" (Dkt. No. 99, Ex. 24) and beginning in 1997, kept a high resolution scan of everything it provided to Gillette (Dkt. No. 77, Ex. 10 at 218-19). PIC was not prejudiced in any way by Gillette. Moreover, as set forth below, PIC has had in its possession for some time all of the images for which it owns no copyright registrations.

PIC concedes that it does not own copyright registrations for the following of its claims, which claims should therefore be dismissed:

### 1.    The Almost 4,500 Transparencies

PIC owns no copyright registration for any of the almost 4,500 transparencies and slides in Gillette's files, produced to PIC as early as February 15, 2005. (Ex. 7 at 5-15.) PIC chose not

12

to copy the transparencies and seek registrations for them.  Under the Court's Orders of March 3 and 8, 2005, PIC is now precluded from obtaining registrations for these materials.

## 2.    The Advanced Photographics Duplicates

PIC owns no copyright registrations for the more than 6,700 allegedly unauthorized duplicates purportedly created for Gillette by Advanced Photographics.  (*Id.* at 16-29.)  Indeed, PIC has produced no evidence that the images duplicated by Advanced Photographics were PIC images, relying solely upon Advanced Photographics' invoices.  PIC has tried to create an inference that the purportedly unauthorized duplicates were made from the 559 transparencies PIC obtained from Advanced Photographics as early as 2002.  (Dkt. No. 99, Ex. 7 at 25-29.)  Yet, incredibly, PIC appears not to have obtained registrations for these images.

## 3.    The Digital Images

PIC claims infringement of 63 digital images, which it obtained in third party discovery from retailer ShopKo, for which it has identified no copyright registrations.  (*Id.* at 29-33.)  Although discovery in this case opened in September 2004, PIC waited until January 31, 2005, just 15 days before the close of fact discovery, to serve third-party subpoenas.  (*See* Dkt. No. 44.)

## 4.    Gillette Catalogs

Of the approximately 220 alleged infringements PIC claims appear in Gillette catalogs, PIC concedes that it does not own copyright registrations for 205 of them.  (Dkt. No. 99, Ex 7 at 35-44.)  It is undisputed that PIC had these catalogs in its possession since prior to the commencement of the litigation.  (Dkt. No. 77, Ex. 10 at 80-109; Dkt. No. 99, Exs. 17, 22; *id.*, Ex. 19 at 107-109.)

## 5.    Internet Images

PIC alleges 35 infringements on the Internet.  (Dkt. No. 99, Ex. 7 at 49-51.)  However, it does not own registrations for 12 of them.  (*Id.*)

## 6.    Third Party Images

PIC alleges 28 infringing images obtained in third party discovery for which it owns no registrations.  (*Id.* at 51-53.)  As set forth above, PIC waited until January 31, 2005 to serve third party discovery.  (*See* Dkt. No. 44.)

## 7.    Foreign Web Sites

PIC alleges infringement of four images on foreign web sites but owns no registrations for them. (Dkt. No. 99, Ex. 7 at 54).

### 8.    Foreign Catalogs

PIC alleges infringement of three images in Canadian catalogs but owns no registrations for them. (*Id.* at 56.)

### 9.    Product Packaging

PIC alleges infringement of product packaging but has identified no copyright registrations for the photographs used in the packaging or the packaging itself. (*Id.* at 58-59.)

### D.    PIC's Copyright Claims Based Upon Copyright Registrations VA1-256-101, VA1-256-146, And VA1-256-147 Are Barred.

PIC alleges 40 separate claims of copyright infringement based upon Copyright Registrations VA1-256-101, VA1-256-146, VA1-256-147. (Dkt. No. 99, Ex. 7 at 40, 42-44, 49-51.) These claims also fail because PIC failed to produce or even identify any of the photographs that are the subject matter of those registrations by the deadline set by the Court in its March 3, 2005 Order. PIC's own corporate designee testified that by just by looking at these Copyright Registrations he could not tell what job number any of the photographs came from or whether PIC ever provided the photographs purportedly registered to Gillette. (Dkt. No. 77, Ex. 10 at 48-56.) If PIC's corporate designee cannot tell from looking at the face of the registrations what images are covered, neither Gillette nor any reasonable juror will be able to do so either.

On April 19, 2005, PIC sought to rectify this failure by sending the missing documents accompanied by a letter indicating that the registrations were "public documents" but that PIC was producing them as a "courtesy." (Perkins Decl. Ex. 13.) PIC's casual attitude about its failure to comply with the Court's Orders of March 3 and 8 is troubling, particularly given that, at the March 3, 2005 hearing the Court emphatically stated that it "tries to enter clear and unequivocal orders" (3/3/05 Trans. at 7), and that "once this Court enters an order, even if it's one of these little on-the-margin endorsed orders, *that's an order of the Court.*" (*Id.* at 9) (emphasis added). In this case, the Court entered a "clear and unequivocal" order that PIC was required to supplement its responses by the March 13, 2005 deadline and that PIC would be "limited at trial to the production of the documents *specifically identified . . . .*" (3/3/05 and

3/8/05 Electronic Order) (emphasis added). PIC is now precluded under the Court's Orders.

**E.      There Is No Evidence That Allegedly Unauthorized Duplicates Were Made Outside The One-Year License PIC Claims Exists.**

PIC alleges that it granted licenses to Gillette to reproduce images for a period of one year. (SAC ¶ 10.) In stating the basis of its copyright infringement claims relating to the creation of duplicates (Dkt. No. 99, Ex. 7 at 5-23), PIC fails to provide proof or even allege that the duplicates were created beyond the alleged one-year license period. (*Id.*) Thus, these claims must be dismissed on this separate basis. PIC seeks to repair this glaring hole in its proof by claiming that the "reproduction" rights undisputedly granted to Gillette did not include the right to create "duplicates. (Dkt. No. 87 at 14.) This assertion is a newly-minted lawyer's argument that cannot be the basis for summary judgment for PIC.

**1.      PIC's New Version Of The Scope Of Gillette's Purported License Is Barred By PIC's Previous Judicial Admissions**

"'A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.'" *Schott Motorcycle Supply, Inc. v. American Honda Motor Company, Inc.*, 976 F.2d 58, 61 (1st Cir. 1992) (quoting *Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*, 757 F.2d 523, 528 (2d Cir. 1985).

In its Complaint—the third version in the case—PIC admits that Gillette *did* in fact have the right to make duplicates of PIC images, provided such duplicates were made within one year. Specifically, PIC states "[i]n particular, Gillette engaged in such acts of duplication *outside the one-year period for which Gillette was licensed . . . .*" (SAC ¶ 25) (emphasis added). Similarly, in response to Gillette's interrogatory requesting that PIC "state the basis" for its claim that Gillette was required to obtain duplicates solely from PIC, plaintiff stated in part, "Gillette was permitted to reproduce images only if such acts of reproduction occurred within the scope of a valid license from PIC. In point of fact, Gillette reproduced photos, including via third party laboratories, *outside the one-year period for which Gillette was licensed . . . .*" (Dkt. No. 99, Ex. 25 at 9) (emphasis added).

These judicial admissions demonstrate beyond cavil that Gillette had the right to create duplicates of PIC photographs, provided such duplicates were made during the purported one-

year license term.  Thus, PIC is now precluded from advancing its newly-minted lawyer's argument as a substitute for the undisputed facts.

> **2.    It Is Undisputed That The Right To Duplicate Is Encompassed Within The Right To Reproduce.**

Moreover, the plain language of the Purported License uses the broad term "reproduction" without excluding any specific type of reproduction, such as duplication.  In interpreting a contract on a motion for summary judgment, if the contract language is unambiguous, it is interpreted according to its plain terms and extrinsic evidence is not considered.  *Den Norske Bank AS v. First National Bank of Boston*, 75 F.3d 49, 53 (1st Cir. 1996).  Moreover, it is the law in this Circuit that a "party seeking to deviate from the terms of a broad and general conveyance . . . has the burden of proving the asserted specific exception." *SAPC, Inc. v. Lotus Development Corp.*, 921 F.2d 360, 363 (1st Cir. 1991) (citing *Rohauer v. Friedman*, 306 F.2d 933, 936 (9th Cir. 1962) and *Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 155 (2d Cir.) *cert. denied* 393 U.S. 826 (1968) (given words broad enough to cover new use, it is grantor's burden to negotiate exception)).

The Purported License Terms upon which PIC relies refer only to broad "reproduction rights." (Dkt. No. 99, Ex. 6 ¶ 9.)  Nowhere does the Boilerplate except duplication from the grant of reproduction rights.  In fact, PIC concedes that the creation of duplicates is a type of reproduction, but instead argues that such rights were not "within the scope of 'reproduction rights' covered within the scope of Gillette's licenses." (Dkt. No. 87 at 14.)  PIC's sole support for this claim is the unsworn report of PIC's paid "expert." (*Id.*)  PIC has not alleged that the term "reproduction" as used in the Purported License is ambiguous, nor can it.  To the contrary, PIC concedes that reproduction encompasses duplication in citing to the Copyright Act's legislative history which states that "the right to reproduce the copyrighted work in copies . . . means the right to produce a material object in which the work is *duplicated*." H. Rep. No. 94-1476 (1976) (cited in Dkt. No. 87 at 14.)  As a result of the broad and unambiguous meaning of the term "reproduction," the extrinsic evidence cited to by PIC in its motion cannot be considered.

Even if the Court does look to the opinion of PIC's "expert," such opinion favors Gillette.

At deposition, PIC's paid "expert" testified that a "duplicate is actually a form of reproduction because you are making a copy, but a reproduction is not necessarily a duplicate." (Dkt. No. 77, Ex. 7 at 126.) In other words, PIC's own "expert" agrees that "duplication" comes within the scope of "reproduction. Given that the Boilerplate purports to grant a reproduction right without carving out the right of duplication, PIC cannot meet its "burden of proving the asserted specific exception." *SAPC, Inc.*, 921 F.2d at 363.

### F.    PIC's Claim That Its Invoices Limit The "Media" In Which Its Photographs May Be Used Is Unsupported By The Invoices Themselves

On the face of PIC's invoices, under the words "Description/Terms" is the phrase "Media Use." (Dkt. No. 99, Ex. 6.) PIC argues that the "Media Use" space constitutes a limitation on the purported license being granted. (Dkt. No. 87 at 8.) However, reading the invoices as a whole, this is clearly not the case. The purported license granted under the Boilerplate is set forth in paragraph 9. (*Id.* ¶ 9.) The only limitations on use refer to duration and to geographic scope. Nowhere does the Boilerplate set forth any limitation as to the media in which the photographs may be used. The only plausible reading of "Media Use" on the face of PIC's invoices is that is a "Description" but not a "Term."

## IV.   PIC'S MOTION FOR A "PRESUMPTION OF INFRINGEMENT IN MISSING EVIDENCE" IS WITHOUT MERIT

Without citing to even a single fact either in its brief or in its Statement Of Undisputed Material Facts, PIC accuses Gillette of "discovery abuses" and "spoliation of relevant evidence." (Dkt. No. 87 at 17.) PIC's failure to cite facts alone is "grounds for denial of the motion." (L.R. 56.1.) However, Gillette will not sit idly by while PIC casts baseless aspersions against it. What has really gone on in this case is that PIC, recognizing the weakness of its claims due to inaction for *over 10 years*, has accused Gillette of "stonewalling" and of abusing the discovery process, in an effort to distract the Court and to try to force to Gillette to capitulate to PIC's outrageous and unjustified demands.

Lest there be any doubt as to PIC's real motivation here, the Court need only look to PIC's inappropriate references to settlement in its brief. Referring to its liquidated damages motion, PIC asserts that "its summary resolution may well prove essential to making Gillette

17

comprehend the need to discuss a good-faith resolution with PIC *that it has thus far resisted discussing.*" (Dkt. No. 87 at 1.) PIC's reference to Gillette's participation or non-participation in any settlement discussions is completely inappropriate and outrageous. (Without responding in kind, Gillette simply denies PIC's allegation.) Moreover, PIC's implication that the Court should be moved to rule in PIC's favor, not based upon the merits, but in order to encourage settlement is equally troubling.

Meanwhile, PIC's constant and tiresome whine about "stonewalling" is addressed more completely in Gillette's opposition to PIC's motion addressed to its deficient fraud claims. However, one self-evident point is worth making here: Gillette's unwillingness to capitulate to PIC's demands is not "stonewalling." The idea that Gillette was required to "offer . . . redress for the wrongs done to PIC" (Dkt. No. 87 at 18), in order not to "stonewall" is as ridiculous as it is false. Rather, the undisputed facts show that PIC has known, and approved of, the very conduct by Gillette on which PIC bases its breach of contract and copyright infringement claims.

PIC's casual allegation of spoliation also is without basis in fact. Without citation to a single fact, and indeed, without any lawyer of PIC willing to back up its accusation under oath, PIC alleges that Gillette "has lost (quite possibly since the dispute began) a vast quantity of the relevant evidence." (Dkt. No. 87 at 18.) Merely saying it does not make it so. In fact, there is *no basis* for the claim that Gillette has "lost" relevant evidence since the dispute began. That Gillette, over a period of 10 years, did not keep a copy of every marketing piece containing a photograph provided by PIC does not translate into spoliation by Gillette. Rather, it merely confirms the established conduct of the parties during more than a decade—PIC provided photographs, it did not ask for them back and it did not care how or where Gillette used them. PIC's own inaction does not translate into the nefarious acts of which it accuses Gillette.

The only case of documented spoliation of relevant evidence in this case is by PIC. At its deposition, PIC's witness testified that beginning in 1997, a copy of everything that Gillette received was kept by PIC in an electronic directory. (Dkt. No. 99, Ex. 10 at 219.) As has been explained in the context of the parties' motions relating to PIC's claims for liquidated damages, the fact that PIC kept duplicates in electronic form of all images provided to Gillette establishes

that the purported "liquidated damages" provision that PIC seeks to enforce is a penalty since PIC suffered no loss from Gillette's failure to return transparencies and negatives. Notwithstanding the centrality of this evidence (or perhaps because of it), PIC conceded that it has allowed the electronic directory to disintegrate into "total degradation." (*Id.* at 220.)

PIC also criticizes the schedule set by the Court in this case, claiming that the schedule was part of a Gillette "strategy" to deny PIC its day in Court. (Dkt. No. 87 at 7, n.10.) Of course, the Court has denied PIC's repeated to have the schedule extended. Similarly, PIC complains that Gillette has refused to produce 30(b)(6) witnesses to answer questions about Gillette's conduct with regard to images. (*Id.*) In fact, Gillette produced *seven* 30(b)(6) witness who were deposed for as long as PIC wanted. Moreover, PIC moved to compel further 30(b)(6) testimony from Gillette, a motion the Court denied on April 7, 2005. (4/7/2005 Electronic Order.)

PIC's motion for a presumption of infringement should be denied.

## CONCLUSION

For the foregoing reasons, PIC's motion should be denied in its entirety.

Dated:  April 22, 2005

GELB & GELB LLP

By:___/s/Richard M. Gelb/_____
     Richard M. Gelb (BBO#188240)
     rgelb@gelbgelb.com
     Robert S. Messinger (BBO# 651396)
     rmessinger@gelbgelb.com

20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By:___/s/Patrick T. Perkins/_____
     Patrick T. Perkins (Admitted *pro hac vice*)
     David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

*Attorneys for Defendant/Counterclaim-Plaintiff*
*The Gillette Company*

I:\PPERKINS\GLTC\General\Opp. PIC SJ-Copyright.doc

19