UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>     Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>     Defendant. | Civil Action No. 04-10913 WGY<br><br>**GILLETTE'S RESPONSES TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PIC'S AND PAUL PICONE'S MOTION FOR SUMMARY JUDGMENT ON PIC'S LIQUIDATED DAMAGES CLAIMS AND ON PIC'S CLAIMS FOR PAYMENT OF ITS SPRING 2004 INVOICES** |
| THE GILLETTE COMPANY,<br><br>     Counterclaim-Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>     Counterclaim-Defendants. | |

Gillette submits the following responses to Plaintiff's Statement of Undisputed Material Facts In Support Of PIC's And Paul Picone's Motion For Summary Judgment On PIC's Liquidated Damages Claims And On PIC's Claim For Payment Of Its Spring 2004 Invoices.

**Fact No. 1**: Mr. Picone is a talented photographer.

**Support**: Sedlik Report at 9; Roopenian Depo. at 39-40; Mullen Depo. at 69-70; Romano Depo. at 6-8; Exhibit 19.[1]

**Response**: Admitted.

**Fact No. 2**: The terms and Conditions on PIC's invoices include a requirement that PIC's transparencies be returned to PIC within 30 days of first publication.

---

[1] Except where otherwise identified by Docket Number, all exhibits referred to herein are attached to the Declaration of Attorney Michael N. Rader (Dkt. No. 77).

**Support:** Exhibits 13-18.

**Response:** Gillette objects to this "fact" to the extent it mischaracterizes a document which speaks for itself. Gillette admits that the backs of the invoices provided to Gillette state that original transparencies and negatives must be returned to PIC within 30 days of first publication.

**Support:** Exhibits 13-18.

**Fact No. 3:** The terms and Conditions on PIC's invoices include a liquidated damages provision of $1,500 per transparency in the event that the transparencies are not returned as required.

**Support:** Exhibits 13-18.

**Response:** Gillette objects to this "fact" to the extent it mischaracterizes a document which speaks for itself. Gillette admits that the backs of the invoices provided to Gillette state that "[i]n the event of failure to return photographs per item #10" (which is the requirement that photographic materials be returned within 30 days of publication), Photographer shall be entitled to payment in full" of "$1,500 per original transparency or negative."

**Support:** Exhibits 13-18.

**Fact No. 4:** Photographs can vary widely in value, and it is difficult to predict the value of a particular photograph before it is taken.

**Support:** Sedlik Report at 17; Adler Report ¶34.

**Response:** Gillette objects to the "fact" on the basis of relevance pursuant to F.R.E. 402. While it may be generally true that photographs can vary widely in value, in the case at bar, it is undisputed that the negatives and transparencies were of no value to PIC.

**Support:** Dkt. No. 77, Ex. 9 at 28-31, 45-48, 50, 52, 82, Ex. 10 at 218-19 200-21.

**Fact No. 5:** $1,500 is a common figure to include in a liquidated damages clause.

**Support:** Sedlik Report at 17; Adler Depo. at 25-26, 80.

**Response:** Gillette objects to the "fact" on the basis of relevance pursuant to F.R.E. 402. While it may be generally true that $1,500 is a common figure to include in a liquidated damages clause, it is undisputed that in this case, the $1,500 amount had no relationship whatever to any

actual loss anticipated by PIC at the time it supplied photographs to Gillette.

**Support:** Dkt. No. 77, Ex. 9 at 28-31, 45-48, 50, 52, 82; Ex. 10 at 218-19 200-21.

**Fact No. 6:** In connection with PIC's first job for Gillette in March 1992, Ms. Nadine Romano reviewed PIC's Terms and Conditions and was aware of the return requirement.

**Support:** 3/24/05 Picone Dep. At 117-122, 127-129, 134-136; Exhibit 23; Picone Decl. ¶¶ 13-17; Romano Dep. At 17-18, 24, 55.

**Response:** Gillette admits that, in connection with the first job PIC performed for Gillette in March 1992, the parties agreed that Gillette was not required to return the photographs to PIC. Gillette denies the remaining allegations.

**Support:** Dkt. No. 99, Ex.2 at 16-17; Dkt. No. 99, Ex.7 at 67; Dkt. No. 77, Ex. 7 at 116-17, 136; Josephson Decl. ¶¶__.

**Fact No. 7:** In connection with PIC's first job for Gillette in March 1992, Ms. Romano requested that Gillette obtain unlimited rights to use the images beyond the default one-year period specified in PIC's Terms and Conditions.

**Support:** Picone Decl. ¶¶ 14-17; Romano Depo. at 17-18, 24, 55.

**Response:** Gillette admits that in connection with PIC's first job for Gillette in March 1992, Gillette bought out all rights in the photographs at issue but denies the characterization of any "default one-year period" as calling for a legal conclusion and as unsupported in the record.

**Support:** Dkt. No. 99, Ex. 2 at 131, 138; Ex. 5; Ex. 14; *see also* Sedelik Report at 111.

**Fact No. 8:** In connection with PIC's first job for Gillette in March 1992, Ms. Romano requested that Gillette be permitted to maintain custody of PIC's film beyond the 30-day period specified in PIC's Terms and Conditions.

**Support:** 3/24/05 Picone Depo. at 134-135; Picone Decl. ¶¶ 17-18; Romano Depo. at 17-18, 24, 55.

**Response:** Denied. In connection with the first job PIC performed for Gillette in March 1992, it was agreed that Gillette would permanently retain all negatives and transparencies connected with the job.

**Support:** Dkt. No. 99, Ex.2 at 16-17; Dkt. No. 99, Ex.7 at 67; Dkt. No. 77, Ex. 7 at 116-

17, 136.

**Fact No. 9:** Jill Josephson served as a hand model for PIC's first job for Gillette in March 1992, and was present during discussion of PIC's Terms and Conditions.

**Support:** 3/24/05 Picone Depo. at 145-148

**Response:** Gillette admits that Jill Josephson served as a hand model for PIC's first job for Gillette but denies that she was present for any discussion of PIC's "Terms and Conditions."

**Support:** Josephson Decl. ¶ _.

**Fact No. 10:** Mr. Picone agreed, with Ms. Romano, to extend the 30-day return period PIC's images on a going-forward basis as a convenience to Gillette, but explained to Ms. Romano that all images would still have to be returned upon PIC's request.

**Support:** Picone Decl.¶ 18; Romano Depo. at 17-18; 24, 55.

**Response:** Denied. Mr. Picone agreed that, in connection with the first job that Gillette would permanently retain all negatives and transparencies connected with the job.

**Support:** Dkt. No. 99, Ex.2 at 16-17; Dkt. No. 99, Ex.7 at 67; Dkt. No. 77, Ex. 7 at 116-17, 136.

**Fact No. 11:** The total number of transparencies provided by PIC to Gillette is at least 9,381.

**Support:** McManus Decl. ¶¶ 2-7; Picone Decl. ¶¶ 27-28; Exhibits 29-30.

**Response:** Denied.

**Support:** Dkt. No. 99, Ex. 10 at 144, 174-75; Perkins Decl. Ex. 8, at PIC 9220, 9216-19, 9222-23, 9242-43; Perkins Decl. Ex. 9 at PIC 9009; Perkins Decl. Ex. 10 at PIC 6053-65, 6087-88, 6096-103, 6106-15, 6117-22.

**Fact No. 12:** Gillette personnel reviewed and signed substantially all of PIC's invoices.

**Support:** Exhibits 12-18; Cooper Depo. at 80-81, 84, 250-251; Josephson Depo. at 54, 105-106; Mullen Depo. at 28-29, 38-39; Tattan Depo. at 65-67, 70-74.

**Response:** Admit that Gillette personnel reviewed the front of PIC's invoices and would initial or sign them to approve for payment.

**Support:** Exhibits 12-18; Cooper Depo. at 80-81, 84, 250-251; Josephson Depo. at 54,

105-106; Mullen Depo. at 28-29, 38-39; Tattan Depo. at 65-67, 70-74.

**Fact No. 13:** Gillette never objected to PIC's Terms and Conditions.

**Support:** Romano Depo. at 42-43.

**Response:** This statement is not susceptible to an admission or denial. First, PIC has capitalized the phrase "Terms and Conditions" without defining what it refers to (whether the boilerplate on the back of PIC's invoices, or the actual "Terms and Conditions" under which the parties operated for more than 10 years). The evidence demonstrates that the "Terms and Conditions" under which the parties operated were that for a period of 10 years, PIC knowingly never enforced any Purported 30-day Return Requirement or any Late Penalty.

**Support:** Dkt. No. 99, Ex. 1 at 29-31, Ex. 2 at 133-34; Dkt. No. 91 ¶ 4.

**Fact No. 14:** Mr. Picone demanded that Gillette return PIC's transparencies by telephone in October 2002, and again by letter in June 2003.

**Support:** 3/24/05 Picone Depo. at 267; Exhibits 26-27.

**Response:** Admitted.

**Fact No. 15:** Gillette returned one box containing 191 transparencies to PIC in or about June 2003, and has not returned any other transparencies to PIC.

**Support:** Picone Decl. ¶ 31; Exhibits 28-30; Josephson Depo. at 44.

**Response:** Admitted except that: (1) PIC itself obtained the return of approximately 550 of its original transparencies and negatives and (2) an additional 1,978 original duplicates were produced to it in discovery, which it is free to reclaim at the conclusion of the litigation.

**Support:** Dkt. No. 99, Ex. 7 at 6-15, 24.

**Fact No. 16:** Gillette has additional transparencies of PIC's that it has not returned to PIC.

**Support:** Picone Decl. ¶ 32; Docket #56-57.

**Response:** Admitted except that 1,978 original duplicates were produced to PIC in discovery, which it is free to reclaim at the conclusion of the litigation.

**Support:** Dkt. No. 99, Ex. 7 at 6-15, 24.

**Fact No. 17:** Gillette understood, when Mr. Picone demanded that PIC's transparencies

5

be returned, that PIC was entitled to have them returned.

**Support:** Josephson Depo. at 117-120; Cooper Depo. at 191.

**Response:** This "fact" is objectionable because it calls for a legal conclusion. In any event, it is denied.

**Support:** Josephson Depo. at 117-120.

**Fact No. 18:** Gillette understood, when Mr. Picone demanded that PIC's transparencies be returned, that if those transparencies were not returned, PIC would charge Gillette $1,500 for each one not returned.

**Support:** Josephson Depo. at 117-120.

**Response:** This fact is objectionable because it calls for a legal conclusion. In any event, admit that, once the dispute arose that PIC would attempt to charge Gillette $1,500 for each transparency not returned.

**Support:** Josephson Depo. at 117-120.

**Fact No. 19:** Without access to its transparencies, PIC cannot license those transparencies to others.

**Support:** Picone Decl. ¶ 9

**Response:** Denied.

**Support:** Sedelik Dep. at 166.

**Fact No. 20:** Without access to its transparencies, PIC cannot use them as reference material.

**Support:** Picone Decl. ¶9.

**Response:** Denied.

**Support:** Dkt. No. 77, Ex. 9 at 28-29, 47-48; Ex. 10 at 218-19

**Fact No. 21:** Without access to its transparencies, PIC cannot include them in its portfolio.

**Support:** Picone Decl. ¶ 9.

**Response:** Denied.

**Support:** Dkt. No. 77, Ex. 10 at 32.

**Fact No. 22:** Without access to its transparencies, PIC cannot sell them to another.

**Support:** Picone Decl. ¶ 10.

**Response:** Gillette objects to this "fact" as irrelevant under F.R.E. 402 since it is not a purported "damage" considered by the parties at the time they did work together.

**Fact No. 23:** PIC's transparencies could garner license fees of up to $10,000 per image per.

**Support:** Sedlik Depo. at 164-165.

**Response:** Denied. The pages referenced make no reference at all to any of PIC's transparencies.

**Support:** Sedlik Depo. at 164-165.

Dated: April 22, 2005

GELB & GELB LLP

By:  /s/Richard M. Gelb/
    Richard M. Gelb (BBO#188240)
    rgelb@gelbgelb.com
    Robert S. Messinger (BBO# 651396)
    rmessinger@gelbgelb.com

20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By:  /s/Patrick T. Perkins/
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

*Attorneys for Defendant/Counterclaim-Plaintiff
The Gillette Company*

I:\PPERKINS\GLTC\General\Liquidated Damages - Statement of Facts.doc