UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>　　　　　Defendant. | Civil Action No. 04-10913 WGY<br><br>**DECLARATION OF ELIZABETH A. COOPER** |

Elizabeth A. Cooper hereby declares:

1. I am a Senior Project Manager for Oral-B/Braun, a part of Defendant The Gillette Company ("Gillette"). For convenience, I refer to Oral-B/Braun and Gillette collectively as "Gillette." My responsibilities include developing materials for product launches and promotions, including the creation of sell sheets and other materials that incorporate photographs of Gillette products. I submit this declaration based on my personal knowledge.

2. Since I began working at Gillette in 1999, on several occasions I engaged plaintiff Photographic Illustrators Corp. ("PIC") to take photographs of Gillette products for use in Gillette's selling materials. In addition, during this time period I personally observed other Gillette Project Managers who engaged PIC to take photographs of Gillette products for use in Gillette's selling materials on numerous occasions. Thus, I am familiar with PIC's dealings with Gillette.

3. Until the fall of 2002 when a dispute with PIC arose, no PIC employee had ever before demanded that I (or anyone else at Gillette of whom I am aware) return any original PIC transparency or negative. Similarly, during that time, no PIC employee ever told me that at some future date that Gillette might be required to return any original PIC transparencies or negatives, failing which, Gillette would be required to pay for each

unreturned transparency and negative. In addition, during the time PIC performed work for Gillette, PIC employees told me that PIC was maintaining duplicate original transparencies and negatives, as well as high resolution digital scans, of each image provided to Gillette.

4. As a result of the above facts, neither I nor anyone else at Gillette kept separate files of the original transparencies, negatives, and electronic images provided to us by PIC for the purpose of returning them to PIC upon its request.

5. Prior to fall of 2002, no PIC employee ever told me or, to my knowledge, any other Gillette employee, that Gillette's use of any of the photographic materials provided by PIC was limited to one year, to the U.S. or to any specific type of promotional or marketing material.

6. In February and March 2004, I had two telephone conversations and a lunch meeting with Mr. Paul Picone, in which he agreed that PIC would photograph several Gillette products. PIC performed this work in March and April 2004.

7. Although PIC completed the requested photographic work in March and April 2004, I did not receive the invoices for this work until May 15, 2004, in an envelope postmarked May 14, 2004.

8. One of PIC's invoices for the work performed in March and April 2004 totaled $43,500 for photographic services and, incorporating miscellaneous expenses, totaled over $63,000. This is an exorbitantly high amount that I considered a gross overcharge based upon my years of doing business with PIC. In over four years of dealing with PIC, I have never received an invoice that approaches the amount PIC charged for this work. As part of my responsibilities in approving vendor invoices, I could not routinely approve an invoice for such an unusually high amount.

9. At the time I hired PIC in February or March 2004, it was my intention to compensate PIC for the photographic work PIC was to perform. At the time I hired PIC,

I never was instructed, at any time, by any Gillette employee not to pay PIC for the work that PIC was to perform.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed at Boston, Massachusetts this 22nd day of April, 2005.

*Elizabeth A. Cooper*
/s/ Elizabeth A. Cooper
Elizabeth A. Cooper