IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>          Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY,<br><br>          Defendant. | Civil Action No. 04-CV-10913-WGY |

**DECLARATION OF PAUL K. PICONE
IN OPPOSITION TO GILLETTE'S SUMMARY JUDGMENT MOTION**

Paul K. Picone states as follows:

1.      I am the principal of Photographic Illustrators Corp. ("PIC"), the Plaintiff in the above-captioned matter.

2.      I make this declaration in opposition to Gillette's summary judgment motion in this case.

**Gillette's Product Packaging**

3.      I understand that Gillette contends, in its summary judgment motion, that PIC did not photograph and provide to Gillette the dollop of shaving cream that Gillette now uses on its FOAMY shaving cream cans. Gillette is incorrect, as I explain in detail below. The dollop image in use by Gillette today is PIC's.

4.      I understand that Gillette bases its contention on documents from PIC's Job Folder No. 5478, a Job that PIC handled in approximately November 2000. I understand that Gillette points to documents bearing Bates Nos. PIC07888-PIC07893 as evidencing that Gillette allegedly provided to PIC, prior to PIC's shoot, shaving cream cans bearing the dollops that are still in use by Gillette on its FOAMY cans today.

5. Specifically, PIC07888 (attached by Gillette in its Exhibit 29, and attached hereto as Exhibit 1 for convenience) is an e-mail from Melissa Conroy at Gillette to me requesting photographs of "comps (6 cans)" that Gillette had sent to me. (The six cans are pictured in PIC07861, attached hereto as Exhibit 2, a picture that is also contained in PIC's Job No. 5478.)

6. Gillette apparently divines from this e-mail that PIC did not photograph the dollops of shaving cream on the "comp" cans. This is incorrect.

7. The word "comp" (or "comped") stands for "composite" (or "composited"). A "composite" label is a sample label that is prepared for testing the appearance of the product. A "composite" label is typically created through a dye sublimation process to simulate a real label for evaluation and promotional purposes. It is usually attached (in this case to a shaving cream can) by hand.

8. In the case of the "comped" FOAMY cans that Gillette sent to me (referred to as "comp cans" in Gillette's e-mail at Exhibit 1 and shown in Exhibit 2), while Gillette prepared the labels, affixed them to cans, and shipped the cans to me, *it was PIC that had earlier provided the dollop image to Gillette for use in creating the labels*.

9. One can easily verify that the FOAMY cans Gillette sent me are "comped" rather than products for commercial sale. The hand-affixed labels on several of the cans extend to the very bottom of the can, while in the case of a machine-affixed label for a manufactured product, a small ring of metal would be visible at the bottom of the can.

10. For example, in PIC07861 (Exhibit 2) four of the six "comped" cans have labels that extend to the very bottom of the can, and the other two cans have labels that are slightly uneven and reach almost to the bottom of the can. (The leftmost can also has a label that extends slightly past the top of the can.)

11. By contrast, in a photograph of the older Gillette FOAMY cans that were machine-manufactured and sold commercially (these are the cans in which Gillette sold its FOAMY shaving cream before PIC photographed the new dollop in November 2000), shown at PIC07031 (Exhibit 3), the metal rings at the bottom of each can indicate that these are real labels and not "comped" labels.

12. To repeat for clarity, PIC07031 (Exhibit 3) shows the Gillette FOAMY cans in use before PIC created the new dollop photograph at issue here, while PIC07861 (Exhibit 2) shows a "comped" FOAMY can that includes PIC's new dollop photograph.

13. After the "comping" / evaluation process was complete, Gillette went ahead and used PIC's dollop photograph on its FOAMY cans for commercial sale. These cans are still being sold by Gillette today.

14. I understand that Gillette also contends that PIC did not contribute to the design of the packaging in which Gillette sells its Mach III razor today. Gillette is once again incorrect. The packaging does continue to incorporate PIC's copyrighted work.

15. Specifically, I understand that Gillette contends it provided to PIC the Mach III packaging shown in PIC05460, a photograph of several products from PIC's Job Folder 5219 that includes a Mach III razor in packaging on the left-hand side. (This photo is attached by Gillette at Exhibit 32 and is also attached hereto as Exhibit 4 for convenience.) This is wrong.

16. Like the "comped" label on the FOAMY shaving cream cans that Gillette sent to PIC as discussed above, the Mach III packaging shown in PIC05460 is also "comped." The "comped" packaging was created *from PIC's design*.

17. A comparison of the prior Mach III packaging to the "comped" packaging created by PIC and used by Gillette is instructive.

18. The photograph at PIC05461 (the very next image in PIC's Job Folder 5219) shows both the prior Mach III packaging (on the left side of the page) and the new "comped" packaging created by PIC just to the right of that. PIC05461 is attached hereto as Exhibit 5.

19. The difference between the prior packaging and the "comped" packaging that PIC had designed is clearly visible – the PIC design includes a more pronounced horizon line and white streaks on either side of the razor.

20. This new design was not finished, however. Indeed, the "comped" packaging has a more pronounced horizon line on the right side than on the left; it was a work-in-progress.

21. PIC continued working on this packaging, which ultimately became Gillette's COOL BLUE packaging, which was the subject of PIC's Job No. 5409.

22. In the context of Job No. 5409, Gillette provided to PIC the existing packaging shown at PIC07215-PIC07216 (attached hereto as Exhibit 6).

23. As indicated by the copyright symbol on the back of the packaging (PIC07216) it was created by or for Gillette in 1998. PIC's Job No. 5409 took place two years later, in 2000.

24. The final version of the packaging created by PIC, also in Job Folder 5409l, is shown at PIC07231 (Exhibit 7 hereto). It is considerably different in a number of respects from the prior packaging that Gillette had been using.

25. Notably, this new design was only licensed for promotional use and Gillette did not receive a license to use it for actual product packaging. I would have charged substantially more for the Job had Gillette requested that it be able to use the design for actual packaging.

26. Mach III and Mach III COOL BLUE razor packaging incorporating PIC's designs are still being sold by Gillette today.

**Other Issues**

27. It would be difficult or impossible for PIC to re-shoot many of its images for Gillette because the products are no longer available.

28. For a limited time starting in approximately 1997, PIC began scanning digital copies of a single exposure of each "view" that it had retained from Gillette photo shoots. This scan was generally used for reference purposes only, because the best exposures had been provided to Gillette and a digital scan is of lesser quality than a photographic transparency.

29. PIC stopped maintaining these digital scans in approximately 2000, in part because I believed (and had been led to believe) that PIC's images could all be obtained from Gillette upon request as the parties had agreed, and as required by PIC's Terms and Conditions. Since a digital scan is inferior to a transparency anyway, I saw no reason to maintain the digital scans.

30. Although PIC's business has historically focused on active product photography on a day-to-day basis, I have always known that I could pursue stock photography licensing for PIC's images if I chose to do so. In fact, as I contemplate retirement from actively shooting photography on a daily basis, I am considering the possibility of a bulk buy-out of PIC's image stock.

Sworn to under the pains and penalties of perjury that the foregoing is true to the best of my knowledge and belief.

Dated: <u>April 22, 2005</u>      <u>/s/ Paul K. Picone</u>
                                  Paul K. Picone