UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>       Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>       Defendant. | Civil Action No. 04-10913 WGY |
| THE GILLETTE COMPANY,<br><br>       Counterclaim-Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>       Counterclaim-Defendants. | |

**THE GILLETTE COMPANY'S MEMORANDUM OF LAW IN
OPPOSITION TO PIC'S MOTION FOR SUMMARY JUDGMENT
ON GILLETTE'S AFFIRMATIVE DEFENSES**

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
   Patrick T. Perkins (Admitted *pro hac vice*)
   David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP
   Richard M. Gelb (BBO#188240)
   Robert S. Messinger (BBO#651396)
20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009
*Attorneys for Defendant/Counterclaim-Plaintiff
The Gillette Company*

**Preliminary Statement**

In addition to evidencing a transparent attempt to flout the District of Massachusetts' twenty-page limit for memoranda of law, PIC's simultaneous filing of *five* separate but interrelated summary judgment motions fits within PIC's litigation tactic throughout this case—to muddle the issues before the Court in an attempt to cover up the fact that it has no case. Like its other four summary judgment motions, PIC's motion for summary judgment on Gillette's affirmative defenses is utterly devoid of merit.

The first point raised by PIC—that "Gillette Has Waived Each and Every One of its Purported Affirmative Defenses by Failure to Respond to Interrogatories Directed to these Defenses"—is frivolous. In its April 7, 2005 Order, the Court required Gillette to serve its responses to PIC's Interrogatory No. 28 (re: Gillette's Affirmative Defenses) by *May 7, 2005*. Gillette fully intends to comply with that deadline, which is two weeks away. In light of the Court's order and the fact that the deadline has not passed, Gillette's alleged failure to "state the basis" for its affirmative defenses to date cannot possibly constitute a waiver of Gillette's affirmative defenses.

PIC's substantive claims fare no better. As set forth in Gillette's motion for summary judgment (Dkt. No. 89), the vast majority of PIC's claims fail as a matter of law and summary judgment should be granted in Gillette's favor. If the Court allows Gillette's motion and dismisses all or most of PIC's claims, then there will be little, if any, need for the Court to consider and address PIC's instant motion.

**ARGUMENT**

Summary judgment is warranted if, after reviewing the facts in the light most favorable to the nonmoving party, no genuine issues of material fact remain. *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (Young, *Chief J.*). It "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

1

**I.   PIC'S WAIVER ARGUMENT IS BARRED BY THE LAW OF THE CASE**

PIC claims that Gillette has waived its affirmative defenses because Gillette has thus far failed to "state the basis" for each of its affirmative defenses in response to PIC's interrogatories. Yet, as PIC concedes (Dkt. No. 92 at 2 n.1), in an Order dated April 7, 2005, the Court ordered Gillette to respond to PIC's Interrogatory No. 28—the only interrogatory served by PIC relating to Gillette's affirmative defenses—by *May 7, 2005*. This deadline still was twenty-nine days away when PIC filed its instant motion and still is two weeks away as of the filing of this opposition brief. In light of these undisputed facts and this Court's prior order, it is unbelievable that PIC still would waste the Court's time arguing waiver.

In any event, Gillette's initial response and objection to Interrogatory No. 28 in PIC's Second Set of Interrogatories was based on its reasonable belief that PIC had exceeded the 35-interrogatory limit agreed to by the parties and ordered by this Court. (*See* Dkt. No. 67 at 2-3.) Notably, PIC waited more than two months after receiving Gillette's response to the interrogatory—and until after PIC had served and Gillette had fully responded to PIC's Third Set of Interrogatories—to argue that Gillette's response to Interrogatory No. 28 was not sufficient. (*Id.* at 3-4.) Gillette thus was led to believe that PIC had accepted Gillette's objection to Interrogatory No. 28 and had withdrawn the interrogatory, particularly since the first interrogatory in PIC's Third Set of Interrogatories, *by itself*, far exceeded the court-ordered 35-interrogatory limit.[1] (*Id.*; *see also* Dkt. No. 63, Ex. 6.) Although the Court ultimately granted

---

[1] PIC's Interrogatory No. 31 stated "If you do not admit in full any request for admission in PIC's First Request for Admission or PIC's Second Request for Admission, state the basis for your failure to admit, including the basis for any part of the request for admission that you deny." (Dkt. No. 63, Ex. 6.) *Every court* that has addressed the issue has held that this type of interrogatory should be counted as a separate interrogatory for each request for admission. *E.g., Am. Chiropractic Assoc. v. Trigon Healthcare, Inc.*, No. 1:00CV00113, 2002 WL 534459, at 3 (W.D. Va. Mar. 18, 2002); *Safeco of Am. v. Rawstrom*, 181 F.R.D. 441, 445-46 & n.3 (C.D. Cal. 1998); *see also Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 205-06 (6th Cir. 1986) (affirming district court's finding that purported requests for admission really were interrogatories); *In re Olympia Holding Corp.*, 189 B.R. 846, 853-54 (Bankr. M.D. Fla. 1995) (finding that "plaintiff's request for admissions was improper because it … impermissibly required the defendant to provide explanations of denials"). Here, PIC served *145* requests for admission, and Gillette complied in full with Interrogatory No. 31. (*See* Dkt. No. 63, Ex. 6.) Thus, PIC's claim that Gillette has failed to meet its obligation to respond to PIC's interrogatories rings particularly hollow—in reality, PIC has abused the discovery process and Gillette has been prejudiced.

2

PIC's request to compel Gillette's response to Interrogatory 28, it can hardly be said that Gillette's conduct under the circumstances was unreasonable. And under the law of the case doctrine, the Court's order providing Gillette until May 7 to respond to the interrogatory precludes any finding of waiver.

Perhaps footnote one to PIC's motion reveals PIC's true purpose here: to skirt the Court's denial of PIC's request to extend its deadline to file dispositive motions. In its motion to compel Gillette's response to Interrogatory No. 28, PIC requested, *inter alia,* "that PIC's (but not Gillette's) deadline for filing dispositive motions shall be extended until at least ten (10) business days after …Gillette's provision of all responses" to the interrogatories addressed in the Motion to Compel. (Dkt. No. 63 at 15, ¶ 4.) The Court expressly denied this request for relief, stating that aside from requiring Gillette to respond to the Interrogatories 28 and 29, PIC's "Motion and docket No. 63 are otherwise denied." (4/7/2005 Order re: Dkt. No. 63.) Now, however, PIC purports to reserve "its right" to "reply" to Gillette's responses to Interrogatory 28 (due May 7, 2005) "in a reply brief," which PIC presumably would file over a month after the April 8, 2005 summary judgment deadline has passed. (Dkt. No. 92 at 2 n.1.) This transparent attempt to obtain relief that this Court already has expressly denied should be rejected. PIC should not be permitted to obtain reconsideration of the Court's order without making the showing required under *Davis v. Lehane,* 89 F. Supp. 2d 142, 147 (D. Mass. 2000) (Young, *Chief J.*).

## II. PIC'S MOTION ALSO FAILS ON THE MERITS AS TO THE MAJORITY OF GILLETTE'S AFFIRMATIVE DEFENSES.

Most of the arguments raised in the merits portion of PIC's motion are addressed in Gillette's Motion for Summary Judgment and its oppositions to PIC's other four summary judgment motions. Accordingly, to prevent unnecessary duplication, Gillette will incorporate by specific reference its arguments in its other briefs and will address herein only those arguments raised by PIC that are not fully covered by Gillette's other briefs.

### 1. Failure To State A Claim

The grounds for Gillette's first affirmative defense, and the reasons Gillette is entitled to summary judgment on PIC's claims, are set forth in Gillette's Memorandum in Support of its Motion for Summary Judgment Dkt. No. 89, ("Gillette's Summary Judgment Brief") at 3-20.)

3

### 2. The Boilerplate Does Not Have Legal Force or Effect

The grounds for Gillette's Second affirmative defense, and the reasons Gillette is entitled to summary judgment on PIC's claims, are set forth in Gillette's Summary Judgment Brief at 4-12, and in Gillette's Memorandum of Law in Opposition to PIC's Motion for Summary Judgment on its Claim for Liquidated Damages and for Gillette's Alleged Failure to Return PIC's Images, filed concurrently herewith, ("Gillette's Liquidated Damages Opposition") at 7-17.

Additionally, in its instant motion, PIC appears to make a new claim. According to PIC, it signed the invoices, and Gillette "countersigned" them, which PIC claims to evidence the parties' mutual assent to the terms on the back of the invoice. (Dkt. No. 92 at 3.) This is a gross distortion of the facts.

At the bottom of every PIC invoice, there is a single signature line to be signed by the "Studio" (i.e., PIC); there is no signature line on the invoice for the Client (i.e., Gillette).[2] *See, e.g.,* Dkt. No. 77, Exs. 13 & 14. The signature line for PIC appears directly below ultra-fine print that states "Rights granted only upon full payment of this invoice; subject to terms and conditions on reverse." (*See id.*) PIC *never* signed any invoice to Gillette on the invoice's signature line. (*Id.*) PIC's pre-printed logo at the upper-right hand of its invoice (*see id.*) does not cure this obvious failure by PIC to give Gillette notice that it intended the invoice to function as something more than a bill for payment.

PIC's claim that Gillette employees "countersigned" the invoices is equally misleading. As explained in greater detail in Gillette's Liquidated Damages Opposition at 11, Gillette employees initialed or signed the invoices for internal identification purposes *only* and did not return the invoices to PIC after approving them for payment. (*See also* Dkt. No. 77, Ex. 14.) Under these circumstances, the fact that Gillette employees wrote their names on the invoices does not evidence assent to the back of the invoice terms. (*See* Gillette's Liquidated Damages Opposition at 11 (citing *Restatement 2d of Contracts* § 211, cmt. d & illus. 4).)

---

[2] Where PIC used this form for its estimates, the signature line was to be filled out by the "Client." In all but a few instances, PIC used the form as an invoice, not for estimates. (*See* Dkt. No. 77, Ex. 13.)

4

### 3. Unconscionability

PIC claims that under the terms of the Boilerplate, it is entitled to $1500.00 in liquidated damages for each original negative or transparency that Gillette failed to return within thirty (30) days of "first publication." As explained in more detail in Gillette's Summary Judgment Brief at 12-17, this liquidated damages clause does not bear any relationship to the loss that PIC may have anticipated it would suffer in the event that the photographs were not returned within 30 days. Accordingly, it is unenforceable as a penalty, which is another way of stating that it is unconscionable under the circumstances. *See, e.g., De Cordova v. Weeks,* 246 Mass. 100, 105 (1923).

### 4. Failure to Plead Fraud With Particularity

Obviously, this affirmative defense is moot at this stage in the litigation. However, as set forth in Gillette's Summary Judgment Brief at 17-18, and in its Memorandum of Law in Support of its Opposition to PIC's Motion for Summary Judgment on Gillette's Fraud, filed concurrently herewith ("Gillette's Fraud Opposition"), at 5-17, the undisputed facts of this case show that PIC's fraud claims are deficient as a matter of law. Accordingly, summary judgment should be entered in Gillette's favor on such claims.

### 5. Gillette Not Required to Admit or Deny

Obviously, this affirmative defense is moot at this stage in the litigation.

### 6. Acquiescence, Laches, Waiver, Estoppel

The grounds for these affirmative defenses, and the reasons Gillette is entitled to summary judgment on PIC's claims, are set forth in Gillette's Summary Judgment Brief at 6-8, and in Gillette's Liquidated Damages Opposition at 1-7. As set forth therein, PIC's *decade-long*, knowing failure to request the return of its photographs, to enforce the Late Penalty and to object to use of its photographs outside the purported one year license, outside the United States and by third parties, bars PIC's claims as a matter of law.

### 7. Statute of Limitations

In this action, PIC is seeking to recover for alleged breaches of contract that occurred as early as twelve years ago, alleged instances of copyright infringement that occurred as early as eight years ago and alleged fraudulent misrepresentations made four years ago. (*See generally*

5

Dkt. No. 99, Ex. 7.)  As set forth in Gillette's Summary Judgment Brief at 12 (breach of contract), 13-14 (copyright infringement), 18 (fraud), PIC knew or should have known about its claims against Gillette well beyond the applicable statutes of limitation.  Thus PIC's stale claims must be dismissed because they fall outside the respective limitations periods for such actions.  *See id.*; *see also* Gillette's Memorandum of Law in Opposition to PIC's Motion for Summary Judgment on Copyright Infringement, filed concurrently herewith ("Gillette's Copyright Infringement Opposition"), at 7-11.

Because Gillette has met its burden of proving that PIC's claims are stale, PIC "bears the burden of proving facts taking [its] case outside the statute of limitations." *Franklin v. Albert*, 381 Mass. 611, 619 (1980) (citation omitted).  PIC's attempts to escape the limitations period by claiming "stonewalling" and "fraudulent concealment" by Gillette and under the doctrine of equitable estoppel fail, as explained in greater detail in Gillette's Fraud Opposition at 6-10, and Gillette's Copyright Infringement Opposition at 7-10.

Moreover, in direct contradiction to its pleading in this action, which alleges that Gillette entered into agreements with PIC under which Gillette was required to return photographs provided by PIC within thirty (30) days of first publication and that Gillette breached such agreements by failing to comply with the Purported 30-day Return Requirement, (SAC ¶¶ 14, 15, 17, 53), PIC now claims, for the first time, that it "granted Gillette an extension to the 30-day return requirement, such that Gillette became a bailee of PIC's images, at the time PIC's images were turned over from PIC to Gillette."  (Dkt. No. 92 at 6.)  This is nothing more than a transparent attempt to evade the limitations period on its breach of contract claims.  As discussed in more detail in Gillette's Liquidated Damages Opposition at 1-4, PIC simply cannot change its story this late in the litigation, and it is bound by the judicial admissions in its operative pleading, which allege breach by Gillette of a 30-day return requirement, not an unlimited, at-will bailment.

PIC also claims that "[a]s to the breach of contract (license) claims for use of the images outside the scope of the license (including beyond the one-year licensed period, beyond the U.S.-only geographic limitation, and beyond the 'media use' limitations set forth on each invoice),

6

PIC is at a minimum entitled to recover for all actions that occurred within six years prior to the filing of the complaint." (Dkt. No. 92 at 6-7.) However, this Court already dismissed such claims as preempted under the Copyright Act. (9/23/04 Hr'g Tr. at 9.) Accordingly, the law of the case doctrine prohibits PIC from pressing these claims any further.[3]

### 8. Unclean Hands

PIC is incorrect to suggest that Gillette's affirmative defense based on PIC's unclean hands is based only on Gillette's dismissed trademark infringement claims against PIC and Picone. As set forth in Gillette's Counterclaims, this affirmative defense also is supported by PIC's fraudulent conduct, which is discussed in greater detail in Gillette's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment on Gillette's Counterclaims and on PIC's Claim for Payment of its Spring 2004 Invoices ("Gillette's Counterclaims Opposition"), filed concurrently herewith, at 13. Because PIC's summary judgment on Gillette's fraud claim fails, its motion directed at Gillette's affirmative defense based on PIC's unclean hands also fails.

### 9. Fraudulent Conduct

PIC's fraudulent conduct is discussed in greater detail in Gillette's Counterclaims Opposition at 13.

### 10. License

PIC intentionally oversimplifies Gillette's affirmative defense based on Gillette's license to use the photographs provided by PIC. Contrary to PIC's suggestion, Gillette does not agree that it was permitted to use the photographs provided by PIC for only one year, and only inside the United States. Rather, as Gillette steadfastly has maintained throughout this litigation, the Boilerplate provisions on the back of PIC's invoices, which, according to PIC, limited Gillette's right to use photographs provided by PIC, *never* applied to the agreements between PIC and Gillette. *See* Gillette's Summary Judgment Brief at 4-6; Gillette's Liquidated Damages Opposition at 4-7; Gillette's Copyright Infringement Opposition at 3-6. Moreover, even if PIC were correct that the Boilerplate applied at one time (and it is not), then PIC waived any such restrictions because it knew about Gillette's allegedly infringing use of the photographs but

---

[3] PIC's pattern of attempting to ignore the Court's orders on already litigated matters is both improper and disturbing to say the least.

7

never objected to Gillette and continued to provide photographs to Gillette. *See, e.g.,* Gillette's Summary Judgment Brief at 7-8; Gillette's Copyright Infringement Opposition at 3-6.

Under the circumstances here, Gillette clearly had a license to use the photographs provided by PIC in the manner established by the parties' decade-long course of dealing and course of performance. *See John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 40 (1st Cir. 2003) ("[N]onexclusive licenses … may be implied from conduct which indicates the owner's intent to allow a licensee to use the work."); *see also Silva v. MacLaine*, 697 F. Supp. 1423 (E.D. Mich. 1988) (implied license established where plaintiff knew about defendant's intended and actual use of the copyrighted work but did not object); 3 Melville B. Nimmer, et al. *Nimmer on Copyright* § 10.03[A][7], at 10-49 ("When the parties' conduct indicates an intent to grant … permission" to use the copyrighted work "the result is an nonexclusive license.") (2005 Supp.).  Moreover, the facts that Gillette requested PIC to create the photographs for Gillette's use, PIC received and accepted substantial consideration— amounting to over $1 million—for the photographs of Gillette's *own* products (*see generally* Dkt. No. 13), and PIC knew that Gillette intended to make use of the photographs in promotional and marketing materials (*id.*), all militate toward a finding that Gillette had an implied license to use the photographs.  3 *Nimmer on Copyright* § 10.03[A][7], at 10-49-51; *see also Atkins v. Fischer* 331 F.3d 988, 992 (D.C. Cir. 2003) (implied license can be found where "a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work"); *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 558-59 (9th Cir. 1990) (finding implied license based on conduct where, among other things, plaintiff delivered work directly to defendant and received payment for work).

Based on the foregoing, PIC's motion for summary judgment on Gillette's license affirmative defense fails.

8

## CONCLUSION

For the foregoing reasons, PIC's motion should be denied, except insofar as it pertains to Gillette's Fourth and Fifth Affirmative Defenses, which Gillette concedes are moot at this stage of the litigation.

Dated:  April 22, 2005

GELB & GELB LLP

By:   /s/Richard M. Gelb/
    Richard M. Gelb (BBO#188240)
    rgelb@gelbgelb.com
    Robert S. Messinger (BBO# 651396)
    rmessinger@gelbgelb.com

20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By:   /s/Patrick T. Perkins/
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

*Attorneys for Defendant/Counterclaim-Plaintiff*
*The Gillette Company*

I:\ddonahue\GLTC\Plaintiff's Summary Judgment Motions\Memo in Opposition to PIC SJ Mot. re Affirmative Defenses-dd.doc