IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

   Plaintiff,

v.

THE GILLETTE COMPANY,

   Defendant.

Civil Action No. 04-CV-10913-WGY

**PIC'S RESPONSE TO GILLETTE'S STATEMENT
OF UNDISPUTED MATERIAL FACTS**

   Pursuant to L.R. 56.1, PIC hereby responds to Gillette's Statement of Undisputed Facts.

PIC objects to Gillette's statement, which includes 173 "facts," because it violates the Local

Rule's requirement that the statement be "concise" and include only "material facts of record."

Gillette's statement is not concise, contains many facts which are not material, and contains

many statements of law that could not possibly be characterized as "facts."  PIC also objects to

Gillette's statement inasmuch as it fails to provide any evidentiary support for some of its

"facts," and because some of the alleged "facts" are not complete sentences and are otherwise

unintelligible.  PIC further objects that many of these statements do not stand alone but appear to

refer back to earlier statements, making it difficult to formulate a precise admission and/or

denial.  Subject to these objections, PIC responds as follows:

1.  **PIC began providing photographs of Gillette products to Gillette in 1992, and did so
regularly through 2003.**

Disputed.  PIC photographed Gillette products through 2004.  2/16/05 Cooper Depo.

(PIC Ex. 1)[1] at 59-60.

2.    **During the entirety of its relationship with Gillette, PIC performed in excess of 640**

      **separate jobs for Gillette.**

      Undisputed.

3.    **In connection with the first job PIC performed for Gillette, the parties agreed**

      **before any work was performed, that Gillette would own unlimited rights in any**

      **photographs produced, and that Gillette would keep the original transparencies and**

      **negatives provided by PIC.**

      Disputed.  3/24/05 Picone Depo. (PIC Ex. 10) at 133 ("Q: And film retained by client, did

that mean that they could keep it forever?  A: No, because it was my understanding that it was my

film.").  Moreover, disputed that any agreement relating only to the first Job applied to any

subsequent Job.  2/10/05 Picone Depo. (PIC Ex. 9) at 26-27.

4.    **The first job performed by PIC for Gillette was in March 1992 and was identified**

      **by PIC's internal Job Number 3072.**

      Undisputed.

5.    **The job was considered an "audition" for PIC.**

      PIC objects to this statement as it does not stand on its own and thus is difficult to

formulate a precise admission and/or denial.  Assuming this statement refers to Job 3072, it is

undisputed that PIC considered this first Job an "audition" for Gillette.

6.    **In connection with this job, PIC provided a written estimate prior to performing the**

      **work.**

---

[1] Citations to PIC Ex. ___ refer to Exhibits to the Declaration of Michael N. Rader in Support of PIC's Summary Judgment Motions.  Citations to Gillette Ex. ___ refer to Exhibits to the Declaration of David Donahue in Support of Defendant The Gillette Company's Motion for Summary Judgment.

PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial.  Assuming this statement refers to Job 3072, it is undisputed that PIC provided a written estimate prior to performing the work.

7.    **The reverse of the written estimate contained purported "Terms and Conditions" (hereinafter the "Boilerplate") including, inter alia, a limitation to use of photographs to one year in the United States, and a purported requirement that the recipient of the invoice return all original transparencies and negatives within 30 days, failing which, the recipient was required to pay $1,500 per transparency and negative.**

Disputed.  PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial.  Assuming this statement refers to Job 3072, it is undisputed only that PIC's Terms and Conditions were printed on the written estimate (both front and reverse).  Those terms speak for themselves.  The reverse of the written estimate form for Job 3072 is PIC17342, part of Gillette Ex. 13.  The evidence cited by Gillette (Gillette Ex. 15) is unrelated to Job 3072.

8.    **That estimate was revised and the parties agreed that Gillette would "buy-out" all of PIC's reproduction rights, meaning that Gillette would have "unlimited time and unlimited usage rights" in the photos.**

Disputed.  PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial.  Undisputed that Gillette had unlimited time and usage rights for the images from Job 3072 only.  Disputed that such rights applied to other jobs or "the" photos in generally.  3/24/05 Picone Depo. (PIC Ex. 10) at 110-11.  Disputed also because the term "buy-out" is vague and ambiguous.

9.    **Gillette's representative signed the revised estimate.**

PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial. Assuming this statement refers to Job 3072, it is undisputed that Gillette's representative signed the revised estimate.

**10.    After PIC performed the job, it sent an invoice to Gillette, which contained the Boilerplate on the reverse side of the invoice.**

PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial. It is undisputed only that the reverse side of PIC's invoice for Job 3072 included PIC's standard terms and conditions, and that PIC provided this invoice to Gillette after it performed the Job.

**11.    The words "buyout" or "unlimited usage" do not appear on the face of the invoice.**

Disputed. PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial. Assuming this statement refers to Job 3072, it is undisputed that the words "buyout" or "unlimited usage" do not appear on the final invoice; however, the words "buy-out" do appear on the face of the estimate, Gillette Ex. 14, and the parties engaged in an extensive discussion about the terms for that particular Job. 3/24/05 Picone Depo. (PIC Ex. 10) at 131.

**12.    Next to the terms "period of use" on the face of the invoice are the letters "N/A," which means "not applicable."**

Disputed. PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial. Assuming this statement refers to Job 3072, it is undisputed that the letters N/A appear for "period of use" on the face of the invoice for Job 3072. Disputed that the period of use was "not applicable" for Job 3072. 3/24/05 Picone Depo. (PIC Ex. 10) at 138-139.

13.    **Although the one-year restriction language was in the Boilerplate on the invoice for this job, such restriction did not apply to the job.**

Disputed.  PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial.  Assuming this statement refers to Job 3072, it is undisputed that PIC's terms and conditions appeared on the reverse of the invoice and that Gillette received an unlimited temporal license to Job 3072.  Disputed that Paragraph 9 or any other part of the terms and conditions on the reverse of the invoice did not apply to Job 3072. See PIC17349, Gillette Ex. 5, ¶ 9: "**Unless otherwise stated on the face of this Agreement**, duration of the License is one year from Agreement date and limited to use in the United States of America." (emphasis added).

14.    **The provisions in paragraph 10 and 11 of the Boilerplate did not apply to the first job performed.**

Disputed.  3/24/05 Picone Depo. (PIC Ex. 10) at 133.

15.    **On the next job PIC performed for Gillette in April 1992, identified by Job Number 3088, PIC did not verbally express to Gillette any limitation on the usage of the photograph.**

Disputed, the words on the invoice (front and back) for Job 3088 expressly limit usage of the photographs.  Gillette Exs. 5, 15.  PIC had also previously expressed such limitations to Gillette.

16.    **On the face of the invoice for the second job PIC performed for Gillette, the "period of use" is again identified as "N/A."**

Disputed.  Undisputed that the letters "N/A" appear for "period of use" for Job 3088. Disputed that the licenses to use the images from this Job did not have any temporal limitations. PIC17349 ¶ 9 (Gillette Ex. 5): "**Unless otherwise stated on the face of this Agreement**,

duration of the License is one year from Agreement date and limited to use in the United States of America." (emphasis added).

**17.    On virtually every job performed in 1992, 1993, and through part of 1994, the "period of use" was similarly identified as "N/A."**

Disputed. Undisputed that the letters "N/A" appear for "period of use" on almost every Job from this time period. Disputed that the licenses to use the images from these Jobs did not have any temporal limitations. PIC17349 ¶ 9 (Gillette Ex. 5): "**Unless otherwise stated on the face of this Agreement**, duration of the License is one year from Agreement date and limited to use in the United States of America." (emphasis added).

**18.    PIC never told Gillette that "N/A" did not mean Gillette could use the photographs for an unlimited period of time.**

Disputed that PIC did not tell Gillette it had a time-limited license. The time limitation was unequivocally expressed in the written terms and conditions on each invoice, and expressed orally to Gillette on a number of occasions. PIC17349 ¶ 9 (Gillette Ex. 5); 3/24/05 Picone Depo. (PIC Ex. 10) at 150-152, 196.

**19.    In 1994, PIC replaced "N/A" with the letters "T&C."**

Disputed. PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial. PIC does not dispute that starting in 1994 it started writing "T&C" next to "Period of use" on the front of its invoices, but PIC does dispute that this represented any change in the meaning of the contract between the parties. 3/24/05 Picone Depo. (PIC Ex. 10) at 161-62.

**20.    When PIC replaced "N/A" with the letters "T&C," there was no prior discussion with Gillette limiting the use of photographs to one year.**

Disputed.  PIC told Gillette in writing and orally that the use of the photographs was limited to one year.  PIC17349 ¶ 9 (Gillette Ex. 5);  3/24/05 Picone Depo. (PIC Ex. 10) at 150-152, 196.

21.    **No PIC employee or representative ever told Gillette prior to any given job, that its use of photographs could be used for only one year.**

Disputed.  3/24/05 Picone Depo. (PIC Ex. 10) at 150-152, 196.

22.    **Before the second job it performed for Gillette, PIC did not tell Gillette that the Boilerplate provisions relating to the return of photographs within 30 days or the purported $1,500 penalty for loss of photographs would apply.**

Disputed.  3/24/05 Picone Depo. (PIC Ex. 10) at 111.

23.    **Paul Picone never discussed paragraph 10 of the Boilerplate with any Gillette employee.**

Disputed.  3/24/05 Picone Depo. (PIC Ex. 10) at 111.

24.    **On every job PIC performed for Gillette, PIC would first perform the work and provide original transparencies, negatives and/or digital photographic materials to Gillette and some time thereafter, would forward an invoice to Gillette for payment.**

Undisputed.

25.    **PIC claims that the Boilerplate located on the reverse of its invoices represents the contracts between PIC and Gillette governing the use and disposition of PIC's photographs.**

Disputed.  PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts.   PIC does not dispute that the terms and conditions on the invoices (front and back) represent the contracts between the parties.

26. **PIC further alleges that on each occasion that PIC provided photographs to Gillette, it did so pursuant to the Boilerplate and that each occasion represented a separate agreement between PIC and Gillette, "such that Gillette and PIC entered into hundreds of Agreements over the years."**

Disputed. PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts. PIC does not dispute that the invoices (front and back) each represent a separate agreement between the parties, and that the parties entered into hundreds of Agreements during their relationship.

27. **According to PIC, the Boilerplate places a number of conditions upon Gillette's use of the photographs provided by PIC, including but not limited to: (1) duration of the license to the photograph is limited to one year and territory is limited to the United States, unless stated otherwise on the face of the invoice; (2) photographs must be returned within thirty (30) days of first publication (if no other return date appears on the face of the invoice); and (3) Gillette's failure to return the Photographs within thirty (30) days of first publication "entitles PIC to liquidated damages of $1,500 per photograph."**

Disputed. PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts. PIC does not dispute that Gillette had a limited license and was required to return PIC's photographs, and that failure to return the photographs entitles PIC to liquidated damages of $1,500 per photograph.

28. **On September 23, 2004, the Court held that PIC's "breach of contract claim is preempted by the Copyright Act, but only to the extent that it is premised on Gillette's use of [PIC's] photos outside the temporal and geographic scope of the licenses and without the required copyright notices."**

Disputed.  PIC objects to Gillette's characterization of the Court's holding as an "undisputed fact."  The Court's holdings at the September 23, 2004 hearing regarding preemption are legal conclusions and are not appropriate for a Statement of Undisputed Facts.  PIC does not dispute that the quoted text accurately reflects what the Court said at the September 23, 2004 hearing.  The Court's orders and holdings speak for themselves.

29.    **The only remaining portion of PIC's breach of contract claim arises from Gillette's alleged failure to return original negatives and transparencies within 30 days of first publication.**

Disputed.  PIC objects to this statement as a legal conclusion, inappropriate for a Statement of Undisputed Facts.  PIC further disputes Gillette's characterization of its breach of contract claim.

30.    **From 1992 to 2002, PIC never enforced the purported Boilerplate condition that Gillette return photographic materials in 30 days.**

Disputed.  PIC does not dispute that it did not demand its photographic materials be returned between 1992 and 2002, but disputes Gillette's characterization of the condition.  As explained in the Expert Report of Jeff Sedlik, it is common for photographers to permit their clients to have an extension on the 30-day return requirement, and PIC granted such an extension to Gillette at Gillette's request.  PIC Ex. 11 at 19-20.

31.    **From 1992 to 2002, PIC never charged Gillette $1,500 for each negative or transparency not returned in 30 days.**

Disputed.  Undisputed that PIC never charged Gillette $1,500 for an unreturned negative or transparency from 1992 to 2002, but disputed that Gillette was required to return any photographic materials during this time span.  As explained in the Expert Report of Jeff Sedlik, it is common for photographers to permit their clients to have an extension on the 30-day return

requirement, and PIC granted such an extension to Gillette at Gillette's request. PIC Ex. 11 at 19-20. PIC did not demand its photographic materials be returned until October 2002. 3/24/05 Picone Depo. (PIC Ex. 10) at 259.

**32.    PIC made a decision not to require return of photographic materials within 30 days because it wanted to continue the relationship with Gillette.**

Disputed. PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial. It is undisputed that PIC permitted Gillette to have an extension on the 30-day return requirement to facilitate the business relationship between the parties until 2002, but disputed that PIC decided not to require Gillette to return its photographic materials. PIC Ex. 11 at 19-20.

**33.    Notwithstanding the fact that Gillette did not return any of PIC's photographic materials within 30 days of first publication, PIC continued to provide photographs to Gillette for years.**

Disputed. Undisputed that PIC provided photographs to Gillette for years, but disputed because PIC extended Gillette's 30-day requirement to return images during the parties working relationship. PIC Ex. 11 at 19-20.

**34.    On at least one occasion, PIC requested the return of a photograph from Gillette. Gillette did not return the photograph but PIC took no action.**

Disputed. Undisputed that PIC requested the return of a photograph from Gillette on at least one occasion, but disputed that "PIC took no action." 3/24/05 Picone Depo. (PIC Ex. 10) at 22.

**35.    PIC did not provide Gillette any written inventory of materials upon their delivery to Gillette.**

Undisputed; however, there was no contractual requirement for PIC to provide such a written inventory of materials upon their delivery, and in several cases, Gillette took all of PIC's photographic materials from PIC immediately after a shoot. 3/24/05 Picone Depo. (PIC Ex. 10) at 8-9.

36.    **PIC did not alert Gillette with any writing on the packages containing its photographic materials that Gillette's failure to return the materials within 30 days would require Gillette to pay PIC $1,500 per image.**

Undisputed; however, this requirement was clearly visible from PIC's invoices, and was expressed orally to Gillette employees on a number of occasions. Moreover, as discussed previously, PIC granted Gillette an extension on the 30-day return requirement at Gillette's request. 3/24/05 Picone Depo. (PIC Ex. 10) at 150-152, 196; Export Report of Jeff Sedlik (PIC Ex. 11) at 19-20.

37.    **PIC did not keep a contemporaneous log of what was provided to Gillette.**

Disputed. PIC recorded the images created for each Job on the "Photographer's Notes" in each Job Folder. PIC's Supplemental Interrogatory Responses (Gillette Ex. 7) at 74.

38.    **For purposes of this litigation, PIC has attempted to reconstruct what photographic materials it provided to Gillette.**

Disputed. For the purposes of this litigation, PIC has summarized the information from PIC's Job Folders in its Interrogatory Responses (Gillette Ex. 7).

39.    **PIC alleges in its complaint that the copyright license granted to Gillette was limited to one-year.**

PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts. PIC does not dispute that it granted a one-year limited license to Gillette for use of its images.

40.     **Gillette provided copies of its 1995, 1996, 1997, 1998, 1999, 2000, 2001 and 2002 yearly Braun catalogs to PIC within one year of each catalog's respective production date.**

Disputed.  3/24/05 Picone Depo. (PIC Ex. 10) at 89.

41.     **PIC claims that such catalogs contained numerous PIC photographs used outside PIC's one-year limit.**

PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts.   PIC further objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial.  PIC disputes that it received catalogs containing infringements within one year of each catalog's respective production date.  3/24/05 Picone Depo. (PIC Ex. 10) at 89.  PIC does not dispute that Gillette used numerous PIC photographs outside PIC's one-year limit.

42.     **PIC personnel reviewed Gillette's catalogs provided to PIC by Gillette. Ex. 22; Ex. 2 at 87, 92.**

Disputed.  3/24/05 Picone Depo. (PIC Ex. 10) at 88.

43.     **PIC did not object to Gillette concerning the use of its photographs in the catalogs outside PIC's one-year license.**

Disputed.  3/24/05 Picone Depo. (PIC Ex. 10) at 79-80, 90, 110-111.

44.     **PIC alleges in its complaint that the copyright license granted to Gillette was limited to use in the United States.**

PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts.  PIC does not dispute that Gillette's license was limited to the United States.

45.     **Braun's 1995, 1996, 1997, 1998 and 1999 catalogs that PIC produced from its files each prominently contained the address of Braun Canada on the back cover.**

Disputed that the address on the back cover of these catalogs was "prominent." 3/24/05 Picone Depo. (PIC Ex. 10) at 94.

46. **Without objecting or increasing its purported licensing fees, PIC knew that Gillette was sending photographic transparencies to a Braun project manager and to a Gillette vendor, both located in Canada.**

Disputed. 3/24/05 Picone Depo. (PIC Ex. 10) at 94, 199.

47. **Without objecting or increasing its purported licensing fees, PIC sent transparencies to Gillette's offices in the Dominican Republic.**

Disputed. 3/24/05 Picone Depo. (PIC Ex. 10) at 204-206.

48. **Without objecting or increasing its purported licensing fees, PIC was aware of Gillette's alleged use of one of its images in Spanish-language marketing material as early as 1998.**

Disputed. 3/24/05 Picone Depo. (PIC Ex. 10) at 201-202.

49. **PIC claims that its licenses were limited to Gillette and that use by third parties of photographs provided to Gillette constitutes copyright infringement by Gillette.**

PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts. PIC does not dispute that Gillette's license was limited to Gillette and that use by unlicensed third parties is infringing.

50. **On numerous occasions throughout 1992- 2002, PIC either provided photographs to Gillette that PIC knew were to be used by third party sellers of Gillette's products or directly provided photographs to Gillette's vendors for their use without any increase in fees.**

Disputed that these occasions were "numerous," and disputed that photographs were provided to parties other than Gillette without any increase in fees. Gillette Ex. 21.

51.    **Such third-party vendors of Gillette's products include, Bloomingdale's, Costco, CVS, Dillard's, Duane Reade, Eckerd, Filene's, Fortunoff, Hecht's, K-Mart, Lowe's, QVC, Staples, and Wal-Mart.**

PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial.  PIC disputes that any of these third parties received PIC's photographs without any increase in fees.  Gillette Ex. 21.

52.    **PIC never enforced the alleged prohibition on third party use nor made any written alteration to the Boilerplate to indicate any change in any agreement between the parties to accommodate third party use.**

Disputed.  When third parties were licensed to use PIC's images, it was reflected on the invoice or in the Job Folder.  Gillette. Ex. 21.

53.    **PIC alleges in its complaint that the copyright license granted to Gillette required Gillette to acknowledge PIC's ownership of copyright with "proper copyright notices."**

PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts.   PIC does not dispute that Gillette was required to acknowledge PIC's ownership of copyright with proper copyright notices.

54.    **Prior to performing work for Gillette, PIC was told that "it would be difficult" to place an acknowledgement of PIC's copyright on Gillette's selling materials.**

Disputed.  Undisputed that PIC was told that "it would be difficult" to place an acknowledgment of PIC's copyright, but disputed that he was told such a notice would not be placed.  2/10/05 Picone Depo. (PIC Ex. 9) at 58-59.

55.    **PIC never told Gillette it would not do further work for it unless credited, even after PIC was aware that Gillette was not providing such credit.**

Disputed.  Undisputed that PIC did not tell Gillette it would do not further work, but disputed that PIC did not continue to press the issue with Gillette.  2/10/05 Picone Depo. (PIC Ex. 9) at 58-59.

56.    **PIC kept in its files copies of Gillette Catalogs from 1995 -2002, that it received from Gillette within one year of production and that it reviewed when received.**

Disputed.  3/24/05 Picone Depo. (PIC Ex. 10) at 89.

57.    **None of these catalogs contain any copyright notice acknowledging PIC's copyright ownership.**

PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial.  Undisputed that the Gillette catalogs from PIC's files did not contain a copyright notice acknowledging PIC's copyright ownership.

58.    **PIC never took any action against Gillette to enforce the purported notice requirement.**

Disputed.  2/10/05 Picone Depo. (PIC Ex. 9) at 58-59.

59.    **PIC claims that paragraph 11 of the Boilerplate requires payment of $1,500 for each "original transparency or negative" not returned within 30 days of first publication.**

Disputed.  PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts.   PIC does not dispute that the terms and conditions on the reverse of its invoices require a payment of $1,500 for each original transparency or negative not returned.  As explained in the Expert Report of Jeff Sedlik, it is common for photographers to permit their clients to have an extension on the 30-day return requirement, and PIC granted such an extension to Gillette at Gillette's request.  PIC Ex. 11 at 19-20.

60.    **The amount never had any relationship to any actual loss suffered by PIC.**

Disputed. PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial. Moreover, PIC and PIC's Expert Jeff Sedlik testified extensively about the loss suffered by PIC as a result of Gillette's failure to return PIC's images. PIC Ex. 11 at 14-18.

**61.     PIC's corporate designee testified that he had "no idea" what the basis was for the $1,500 set as the damages amount.**

Disputed. Gillette's quotation substantially mischaracterizes PIC's testimony by taking two words out of context. PIC disputes that it had "no idea" what the basis was for the liquidated damages amount. 2/10/05 Picone Depo. (PIC Ex. 9) at 45-46, 52. Moreover, PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed.

**62.     At deposition, PIC's corporate designee referred to the $1500.00 amount as "boilerplate."**

Disputed. PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC's principal referred to the amount once in his deposition as "a boilerplate number for what a shoot would cost." 2/10/05 Picone Depo. (PIC Ex. 9) at 46.

**63.     At deposition, PIC's corporate designee conceded the liquidated damages amount was not intended to replace a negative or transparency that has been lost.**

Disputed. PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed.

PIC disputes that the liquidated damages amount was unrelated to the cost of replacing a lost negative or transparency.  PIC Ex. 11 at 14-18.

**64.     PIC testified that the amount reflects a "license fee" to Gillette. Ex. 1 at 50.**

Disputed.  PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC does not dispute the transcript of its deposition, but does dispute that the $1,500 amount reflects a "license fee."  PIC testified as to several other factors that form the basis of the liquidated damages amount.  2/10/05 Picone Depo. (PIC Ex. 9) at 45-46, 52; Expert Report of Jeff Sedlik (PIC Ex. 11) at 14-18.

**65.     A "license fee" to Gillette has no connection whatever to any loss suffered by PIC by virtue of any loss of original negatives or transparencies or delay in returning them.**

Disputed.  2/10/05 Picone Depo. (PIC Ex. 9) at 45-46, 52; Expert Report of Jeff Sedlik (PIC Ex. 11) at 14-18.

**66.     When asked for the "business basis" for charging $1,500 per lost transparency or negative, PIC referred only to the Boilerplate found on the reverse of its invoices.**

Disputed.  PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC disputes that the only "business basis" of the liquidated damages provision was its own terms and conditions.  2/10/05 Picone Depo. (PIC Ex. 9) at 45-46, 52; Expert Report of Jeff Sedlik (PIC Ex. 11) at 14-18.

**67.     PIC testified that it kept a "duplicate copy" of "every view that was taken during [a] particular project" and that it "maintained an original copy for duplicating."**

Disputed. PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC disputes that it kept an original or duplicate copy of every view. 3/24/05 Picone Depo. (PIC Ex. 10) at 7-8.

68.    **PIC further conceded that it maintained an original copy of every job it performed for Gillette.**

Disputed. PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC also objects to this statement as it is unclear what Gillette means by "an original copy of every job." PIC disputes that it kept an original or duplicate copy of every view. 3/24/05 Picone Depo. (PIC Ex. 10) at 7-8.

69.    **PIC testified that it kept "an original" of every shot provided to Gillette, and did not object to Gillette's counsel's statement in a question that PIC "kept one original of everything."**

Disputed. PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC further objects to the implication that PIC was required to "object" to statements by Gillette's counsel. PIC disputes that it kept one original of everything. 3/24/05 Picone Depo. (PIC Ex. 10) at 7-8.

70.    **Beginning in 1997, PIC kept a high resolution, digital copy of everything PIC ever shot for Gillette.**

Disputed.  3/24/05 Picone Depo. (PIC Ex. 10) at 221.

71.    **PIC began to creating digital copies because "clients started asking for scanned images rather than ektachrome [transparencies]."**

Disputed.  This was not the only reason PIC began to create digital copies.  3/24/05 Picone Depo. (PIC Ex. 10) at 218.

72.    **PIC considers these digital images to be "original" and "reproducible" just as any transparency or negative.**

Disputed.  PIC Ex. 7 at 167-68.

73.    **In correspondence with Gillette, PIC explained that its digital scans were suitable for any form of duplication Gillette might wish to make, with the exception of large format trade show displays.**

Disputed.  PIC Ex. 7 at 167-68.

74.    **For any image provided to Gillette beginning in 1997, PIC has suffered no loss since it retained a high resolution digital copy that PIC deems to be "original and "reproducible."**

Disputed.  PIC Ex. 7 at 167-68.

75.    **PIC concedes that during a ten-year period from 1992-2002, it never insisted upon the return of any original negative or transparency.**

Disputed.  PIC granted Gillette an extension on the 30-day return requirement at Gillette's request, but always insisted that its photographic materials would need to be returned.  Gillette's 30(b)(6) witnesses admitted that the materials would need to be returned.  Expert Report of Jeff Sedlik (PIC Ex. 11) at 19-20; 2/18/05 Tattan Depo. (PIC Ex. 5) at 50-51.

76.    **In 2000, PIC ceased maintaining the high resolution digital scans of all of the work performed for Gillette because, according to PIC's corporate representative, "[n]o**

**one was requesting them. I wasn't being called and I wasn't doing a lot of business with Gillette, so I just let them fall by the waist [sic] side."**

Disputed. PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC disputes this statement. 3/24/05 Picone Depo. (PIC Ex. 10) at 220.

77. **PIC further testified that the disks containing the high resolution digital scans are "[p]robably [in] total degradation by this time."**

Disputed. PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC does not dispute the transcript of its deposition, but does dispute that it no longer has any high resolution digital scans of images it created for Gillette. 3/24/05 Picone Depo. (PIC Ex. 10) at 220.

78. **In discovery in this action, PIC did not produce copies of the "IOMEGA disks" containing the high resolution scans of PIC images of Gillette products.**

Disputed. PIC produced every nonprivileged document it still has relating to the photography it did for Gillette.

79. **PIC claims it is entitled to $1,500 for each of the 191 original negatives and transparencies returned to PIC on June 27, 2003, because they were not returned within 30 days of PIC's purported demand.**

Disputed. PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts. PIC does not dispute that it is entitled to $1,500 for each piece of film that Gillette included in the Fed-Ex package sent to PIC on June 27, 2003.

80.    **PIC testified that it is not making use of the photographs referenced in the paragraph above and that "[t]hey're in storage somewhere."**

Disputed.  PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC does not dispute the transcript of its deposition, but does dispute that it does not intend to use the photographic materials.  Decl. of Paul Picone in Support of PIC's Summary Judgment Motions ¶¶ 8, 9, 10.

81.    **PIC could not point to any actual damage it suffered from Gillette not having returned the original transparencies and negatives within 30 days of its request, stating only "they didn't live up to the terms and conditions of their agreement. They were supposed to return them immediately and they waited quite a while before they were returned."**

Disputed.   PIC testified that it suffered actual damage from Gillette's breach of contract. 4/8/05 Picone Decl. in Support of PIC's Summary Judgment Motions ¶¶ 8, 9, 10; 4/22/05 Picone Decl. in Opposition to Gillette's Summary Judgment Motion.  See also Expert Report of Jeff Sedlik (PIC Ex. 11) at 14-18.  PIC further objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed.

82.    **PIC did not have occasion to utilize the 191 original negatives and transparencies between the purported 2002 demand and their return in June 2003. Instead, PIC testified that Gillette might have "duplicated everything that they sent back" and**

that "they didn't live up to the terms and conditions of our agreement. . . . They broke contractual law."

Disputed.  PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. Expert Report of Jeff Sedlik (PIC Ex. 11) at 14-18;  4/8/05 Picone Decl. in Support of PIC's Summary Judgment Motions ¶¶ 8, 9, 10.

83.    In Interrogatory No. 7, Gillette requested PIC to "[i]dentify any and all uses [PIC has] made of any photo prepared for Gillette, including but not limited to: (a) the content of the photo used; (b) the job number associated with such photo; (c) the date of such use; (d) in what media such photo was used; (e) the number of copies distributed; (f) the geographic scope of distribution; (g) the identify of each recipient of such photo; (h) any revenues received in connection with [PIC's] reproduction and/or distribution of such photos."

Disputed.  PIC objects to Gillette quoting its own Interrogatory as an "undisputed fact." Moreover, the Court denied Gillette's Motion to Compel on this Interrogatory in its 3/7/05 Order.

84.    In response to Interrogatory 7, PIC did not identify a single photograph provided to Gillette that it has itself used.

Disputed.  The Court denied Gillette's Motion to Compel on this Interrogatory in its 3/7/05 Order.

85.    In its response to Interrogatory 7, PIC claims it "cannot have 'used' images that are in Gillette's possession."

- 22 -

Disputed. PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts. PIC does not dispute that the quoted language comes from PI's Interrogatory Responses.

**86.    In its response to Interrogatory 7, PIC claims that by "retaining its images, PIC can prevent Gillette from making unauthorized copies or from engaging in unauthorized distribution, thereby infringing PIC's copyrights."**

Disputed. PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts. PIC does not dispute that the quoted language comes from PI's Interrogatory Responses.

**87.    In response to Interrogatory 7, PIC claims that "photos are included in PIC's portfolio book, which it shows to prospective clients to establish its credentials and obtain business."**

Disputed. PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts. PIC does not dispute that the quoted language comes from PI's Interrogatory Responses.

**88.    PIC further conceded that it does not have a standing portfolio book but makes one up as needed.**

Disputed. PIC objects to Gillette offering a paraphrase of PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC further objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial.

**89.    At deposition, PIC admitted that it only includes the "final printed piece" in its portfolio that it "wouldn't put a transparency in [its] portfolio."**

Disputed.  PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC disputes that it would not use transparencies to demonstrate its work to potential clients. 3/24/05 Picone Depo. (PIC Ex. 10) at 32.

90.  **PIC's portfolio needs have nothing to do with its purported requirement that Gillette return negatives and transparencies in 30 days.**

Disputed.  PIC objects to this statement because Gillette does not provide any reference to any evidentiary support and thus has failed to comply with Local Rule 56.1.  PIC also disputes this statement.  3/24/05 Picone Depo. (PIC Ex. 10) at 32.

91.  **In response to Interrogatory 7, PIC claims that it "has had numerous inquiries by third parties to purchase such images for use as stock photos. PIC has repeatedly been forced to decline these inquiries" because of Gillette's purported refusal to return the transparencies.**

Disputed.  PIC objects to Gillette's paraphrasing or excerpting of PIC's claims as inappropriate for a Statement of Undisputed Facts.   PIC does not dispute that the quoted text comes from its Interrogatory response.

92.  **At deposition, PIC testified that it could recall no stock requests that it received since 1992.**

Disputed.  PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC disputes that it has not missed opportunities to license images for stock photography.

3/24/05 Picone Depo. (PIC Ex. 10) at 27; 4/8/05 Picone Decl. in Support of PIC's Summary Judgment Motions.

**93.    In response to Interrogatory 7, PIC claims that it reviews images to generate ideas for use in projects for other clients.**

Disputed.  PIC objects to Gillette's paraphrasing or excerpting of PIC's claims as inappropriate for a Statement of Undisputed Facts.   PIC does not dispute that this statement reflects its Interrogatory response.

**94.    By order dated March 3, 2005, the Court ordered PIC to produce all documents referred to in its responses to Gillette's Interrogatories Nos. 1 and 2 and to supplement its responses to "state the basis for" each of its copyright and contract claims.**

Disputed.  PIC objects to Gillette's characterization of the Court's order as an "undisputed fact."  The Court's Order speaks for itself and is not appropriate for a Statement of Undisputed Facts.

**95.    The Court also has held that "[t]he Order is clear that, unless promptly supplemented with express and detailed factual claims, the plaintiff will be limited at trial to the production of the documents specifically identified" in answer to Gillette's interrogatories concerning its copyright and contract claims.**

Disputed.  PIC objects to Gillette's characterization of the Court's order as an "undisputed fact."  The Court's order speaks for itself and is not appropriate for a Statement of Undisputed Facts.

**96.    PIC's Supplemental Response to Interrogatory 1, its copyright infringement claims are organized as follows: (1) Gillette's alleged unauthorized creation of duplicate transparencies and slides; (2) Gillette's alleged unauthorized duplication of digital**

**images; (3) Gillette's alleged unauthorized reproduction of PIC images in catalogs beyond the scope of PIC's license; (4) use by Gillette or by a third party of PIC's images on the Internet; (5) Gillette's alleged supply of PIC images to third parties; (6) Gillette's alleged use of PIC images on foreign web sites; (7) Gillette's alleged Latin American use; (8) Gillette's alleged use of PIC images in foreign catalogs; (9) Gillette's use of images provided to Gillette in Spring 2004; and (10) Gillette's alleged use of PIC images on product packaging.**

Disputed. PIC objects to Gillette's paraphrasing of PIC's interrogatory responses as inappropriate for a Statement of Undisputed Facts. PIC does not dispute that Gillette infringed PIC's copyrights in at least the ten ways listed above.

**97.    PIC claims copyright infringement based upon alleged duplicates of PIC images made for Gillette by PIC's preferred photo lab, Advanced Photographics, between January 1998 and March 2000.**

Disputed. PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts. PIC does not dispute that Gillette infringed PIC's copyrights by making unauthorized duplicates of PIC's images at Advanced Photographics.

**98.    PIC knew no later than 2000 that Advanced Photographics was allegedly making unauthorized duplicates of PIC's images for Gillette.**

Disputed. PIC only discovered the extent of Gillette's unauthorized duplication with Advanced Photographics during discovery during the instant litigation. Gillette Ex. 7 at 16.

**99.    Jason Roopenian, the Vice President of Advanced Photographics testified at his deposition that when he was made aware that Gillette was making duplicates of PIC's images he informed PIC's president, Paul Picone.**

Disputed.  PIC objects to Gillette offering Mr. Roopenian's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at Mr. Roopenian's deposition or that the content of the underlying testimony (taken out of context) is undisputed.  PIC does not dispute the accuracy of the transcript of the deposition, but does dispute that PIC discovered the extent of Gillette's unauthorized duplication with Advanced Photographics prior to the instant lawsuit.  Gillette Ex. 7 at 16.

**100.**   **Joseph Gannuscio, a managerial employee at Advanced Photographics between 1994 and 2001, similarly testified that he had alerted Paul Picone that Gillette was ordering duplicates of PIC's images directly.**

Disputed.  PIC objects to Gillette offering Mr. Gannuscio's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at Mr. Gannuscio's deposition or that the content of the underlying testimony (taken out of context) is undisputed.  PIC does not dispute the accuracy of the transcript of the deposition, but does dispute that PIC discovered the extent of Gillette's unauthorized duplication with Advanced Photographics prior to the instant lawsuit.  Gillette Ex. 7 at 16.

**101.**   **PIC testified at deposition that Mr. Gannuscio had contacted him "several times over duplicating of images from - actually not only Gillette but Sylvania, also."**

Disputed.  PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC does not dispute the accuracy of the transcript of the deposition.  PIC does not dispute the accuracy of the transcript of the deposition, but does dispute that PIC discovered the extent of Gillette's unauthorized duplication with Advanced Photographics prior to the instant lawsuit. Gillette Ex. 7 at 16.

**102.    No duplicates of any PIC images were made for Gillette by Advanced Photographics**
**after March 2000.**

Disputed.  PIC Ex. 6 at 90.

**103.    PIC alleges copyright infringement based upon Gillette's use of PIC's photographs**
**in catalogs dated 1996-2002.**

Disputed.  PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a
Statement of Undisputed Facts.   PIC does not dispute that Gillette infringed PIC's copyrights in
its catalogs dated 1996-2002, as well as in numerous other places.

**104.    Each of the catalogs for which PIC claims copyright infringement was produced**
**from PIC's own files.**

Disputed.  PIC identified numerous copyright infringements in foreign catalogs produced
by Gillette after the Contempt Hearing on 3/3/05.  Gillette Ex. 7.

**105.    PIC testified at deposition that it received catalogs "within a year" of production**
**and that he would "thumb through them" upon receipt.**

Disputed.  PIC objects to Gillette offering PIC's testimony as an "undisputed fact,"
because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's
deposition or that the content of the underlying testimony (taken out of context) is undisputed.
PIC also disputes that it reviewed the catalogs within a year of production.  3/24/05 Picone Depo.
(PIC Ex. 10) at 89.

**106.    PIC claims copyright infringement based upon alleged use of one of its photographs**
**in a Spanish-language publication.**

Disputed.  PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a
Statement of Undisputed Facts.   PIC does not dispute that the Gillette infringed PIC's copyright
by using one of its images in a Spanish-language publication.

**107.    PIC has possessed the allegedly infringing publication since 1998.**

Disputed.  Gillette still hasn't produced the publication that included the infringing use, and has been held in Contempt of Court for failure to produce all marketing materials that could include PIC's images.  4/6/05 Court Order.

**108.    PIC does not own copyright registrations for the images that form the basis for its copyright infringement claims based on the transparencies and slides from Gillette's files that were produced to PIC for review as early as February 15, 2005 and which are listed on the chart on pages 5-15 of PIC's Supplemental Response to Interrogatory No. 1.**

Disputed.  PIC objects to this statement as a conclusion of law inappropriate for a Statement of Undisputed Facts.  Moreover, Gillette has prevented PIC from registering copyrights for numerous of its images by refusing to return PIC's film.

**109.    PIC does not own copyright registrations for the images that form the basis for its copyright infringement claims based on the alleged creation of unauthorized duplicates for Gillette by Advanced Photographics.**

Disputed.  PIC objects to this statement as a conclusion of law inappropriate for a Statement of Undisputed Facts.  Moreover, Gillette has prevented PIC from registering copyrights for numerous of its images by refusing to return PIC's film.

**110.    PIC does not own copyright registrations for the images that form the basis for its copyright infringement claims based on the so-called "digital images."**

Disputed.  PIC objects to this statement as a conclusion of law inappropriate for a Statement of Undisputed Facts.  Moreover, Gillette has prevented PIC from registering copyrights for numerous of its images by refusing to return PIC's film.

**111.    PIC does not own copyright registrations for the images that form the basis for its copyright infringement claims based on a number of the alleged infringements in catalogs.**

Disputed.  PIC objects to this statement as a conclusion of law inappropriate for a Statement of Undisputed Facts.  Moreover, Gillette has prevented PIC from registering copyrights for numerous of its images by refusing to return PIC's film.

**112.    PIC does not own copyright registrations for the images that form the basis for its copyright infringement claims based on a number of the alleged Internet infringements.**

Disputed.  PIC objects to this statement as a conclusion of law inappropriate for a Statement of Undisputed Facts.  Moreover, Gillette has prevented PIC from registering copyrights for numerous of its images by refusing to return PIC's film.

**113. PIC does not own copyright registrations for the images that form the basis for its copyright infringement claims based on the alleged third party infringements.**

Disputed.  PIC objects to this statement as a conclusion of law inappropriate for a Statement of Undisputed Facts.  Moreover, Gillette has prevented PIC from registering copyrights for numerous of its images by refusing to return PIC's film.

**114.    PIC does not own copyright registrations for the images that form the basis for its copyright infringement claims based on the alleged foreign web site uses.**

Disputed.  PIC objects to this statement as a conclusion of law inappropriate for a Statement of Undisputed Facts.  Moreover, Gillette has prevented PIC from registering copyrights for numerous of its images by refusing to return PIC's film.

**115.    PIC does not own copyright registrations for the images that form the basis for its copyright infringement claims based on the alleged product packaging infringements.**

Disputed.  PIC objects to this statement as a conclusion of law inappropriate for a Statement of Undisputed Facts.  Moreover, Gillette has prevented PIC from registering copyrights for numerous of its images by refusing to return PIC's film.

**116.    In stating the basis of its copyright infringement claims relating to the creation of duplicates, PIC did not provide proof that duplicates were created by Gillette beyond the alleged one-year license period.**

Disputed.  PIC Ex. 2 at 83-88.

**117.    PIC's copyright infringement claims based upon alleged unauthorized duplication do not identify the job number of any of the photographs allegedly copied.**

Disputed.  PIC Ex. 7.

**118.    PIC's copyright infringement claims based upon alleged unauthorized duplication do not provide any documentation demonstrating that PIC actually authored the images at issue.**

Disputed.  PIC Ex. 7.

**119.    PIC's copyright infringement claims based upon alleged unauthorized duplication of digital images do not identify the job number of any of the photographs allegedly copied.**

Disputed.  PIC Ex. 7.

**120.    PIC's copyright infringement claims based upon alleged unauthorized duplication of digital images do not provide any documentation demonstrating that PIC actually authored the images at issue.**

Disputed. PIC Ex. 7.

**121.    PIC's copyright infringement claims based upon alleged third party uses do not identify the job number of any of the photographs allegedly copied.**

Disputed. PIC Ex. 7.

**122.    PIC's copyright infringement claims based upon alleged third party uses do not provide any documentation demonstrating that PIC actually authored the images at issue.**

Disputed. PIC Ex. 7.

**123.    PIC's copyright infringement claims based upon alleged foreign web site use do not identify the job number of any of the photographs allegedly copied.**

Disputed. PIC Ex. 7.

**124.    PIC's copyright infringement claims based upon alleged foreign web site use do not provide any documentation demonstrating that PIC actually authored the images at issue.**

Disputed. PIC Ex. 7.

**125.    When questioned at deposition about the alleged third party infringements listed in its Supplemental Interrogatory Responses, PIC's corporate designee testified that the only way to determine whether the images listed were actually PIC images was for him to "match it up with a visual" but that he had not done so.**

Disputed. PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC does not dispute the accuracy of the transcript of the deposition, but does dispute that third party infringements are not actually PIC images. PIC Ex. 7.

126. **When questioned at deposition about the alleged third party infringements listed in its Supplemental Interrogatory Responses, PIC's corporate designee testified that he had made no effort to match the images to any of PIC's job numbers.**

PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. PIC does not dispute the accuracy of the transcript of the deposition, but does dispute that third party infringements are not actually PIC images. PIC Ex. 7.

127. **Many of PIC's copyright infringement claims relating to catalogs do not identify the job number of any of the photographs allegedly copied.**

Disputed. PIC Ex. 7.

128. **Many of PIC's copyright infringement claims relating to catalogs do not provide any documentation demonstrating that PIC actually authored the images at issue.**

Disputed. PIC Ex. 7.

129. **Many of PIC's copyright infringement claims relating to web sites do not identify the job number of any of the photographs allegedly copied.**

Disputed. PIC Ex. 7.

130. **Many of PIC's copyright infringement claims relating to web sites do not provide any documentation demonstrating that PIC actually authored the images at issue.**

Disputed. PIC Ex. 7.

131. **PIC has presented no evidence of what photographs are the subject of Copyright Registration VA1-256-101.**

Disputed. The deposit that accompanies any copyright registration is a public record. The deposits were produced in discovery and also recently photocopied for Gillette.

**132.    PIC has presented no evidence of what photographs are the subject of Copyright Registration VA1-256-146**

Disputed.  The deposit that accompanies any copyright registration is a public record. The deposits were produced in discovery and also recently photocopied for Gillette.

**133.    PIC has presented no evidence of what photographs are the subject of Copyright Registration VA1-256-147.**

Disputed.  The deposit that accompanies any copyright registration is a public record. The deposits were produced in discovery and also recently photocopied for Gillette.

**134.    PIC's corporate designee testified that by just by looking at these above-referenced Copyright Registrations he could not tell what job number any of the photographs came from or whether PIC ever provided the photographs purportedly registered to Gillette.**

PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed.  PIC does not dispute the accuracy of the transcript of the deposition.  PIC does dispute Gillette's intimation that there was any defect in the copyright registration, or that any of the photographs registered did not come from PIC's Job Folders, or that any of the photographs registered did not reflect images provided to Gillette.

**135.    In connection with job number 5478, PIC claims to have photographed the dollop of shaving cream that appears on Gillette's FOAMY shaving cream can.**

PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts.  PIC does not dispute that it photographed the dollop of shaving cream that appears on the FOAMY shaving cream can.

136.    **In an e-mail dated November 17, 2000, Gillette requested PIC to photograph its new FOAMY shaving cream can and provided PIC with a sample brochure picturing the can as well as product samples for the photo shoot.**

Disputed.  Gillette Ex. 29; Declaration of Paul Picone in Opposition to Gillette's Motion for Summary Judgment.

137.    **On November 27, 2000, after PIC had taken photographs of Gillette's FOAMY shaving cream can and had provided the photographic transparencies to PIC, Gillette requested PIC to take photographs of dollops of shaving cream that looked like the dollop of shaving cream on the FOAMY shaving cream can.**

Disputed.  Declaration of Paul Picone in Opposition to Gillette's Motion for Summary Judgment.

138.    **The dollop of shaving cream on the FOAMY shaving cream can pictured in Gillette's Supplemental Response to Interrogatory No. 2 was not created by PIC.**

Disputed.  Gillette Ex. 29; Declaration of Paul Picone in Opposition to Gillette's Motion for Summary Judgment.

139.    **In connection with job number 5478, PIC claims to have photographed the dollop of shaving cream that appears on the GILLETTE SERIES shaving cream can.**

Disputed.  PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts.   PIC does not dispute that it photographed the dollop of shaving cream that appears on the GILLETTE SERIES shaving cream can.

140.    **The "dollop" of shaving cream on the GILLETTE SERIES shaving cream can pictured in PIC's Supplemental Interrogatory is identical to the dollop of shaving cream pictured on Gillette's old FOAMY shaving cream can.**

Disputed.  Gillette Ex. 7 at 58; Gillette Ex. 30 at PIC07031.

141.   **Gillette provided the old FOAMY shaving cream can (containing the dollop of shaving cream on the can) to PIC in connection with job number 5367, which PIC performed in August 2000, over two months before Gillette asked PIC to photograph dollops of shaving cream.**

Disputed.  The dollop on the old FOAMY shaving cream can was different from the dollop on the new packaging created by PIC.  3/24/05 Picone Depo. at 250-51; Declaration of Paul Picone in Opposition to Gillette's Motion for Summary Judgment.

142.   **The dollop of shaving cream on the Compare Ex. 7 at 58, right-hand photo, with GILLETTE SERIES shaving cream can pictured in Gillette's Supplemental Response to Interrogatory No. 2 was not provided by PIC.**

Disputed.  3/24/05 Picone Depo. at 250-51; Declaration of Paul Picone in Opposition to Gillette's Motion for Summary Judgment.

143.   **PIC claims that Gillette's current MACH III product packaging is based on packaging that PIC alleges to have helped design for Gillette's MACH III COOL BLUE packaging in connection with job number 5219, which PIC performed in September 2000.**

Disputed.  PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts.   PIC does not dispute that Gillette's current MACH III product packaging infringes PIC's packaging design from Job Number 5219.

144.   **In April 2000, Gillette provided its MACH III product in its packaging to PIC in connection with another project.**

Disputed.  Declaration of Paul Picone in Opposition to Gillette's Motion for Summary Judgment.

145.  **The MACH III packaging that Gillette provided to PIC in April 2000 is substantively identical to its current MACH III packaging.**

Disputed.  Declaration of Paul Picone in Opposition to Gillette's Motion for Summary Judgment.

146.  **Gillette's current MACH III packaging is not based on any packaging designed by PIC.**

Disputed.  3/24/05 Picone Depo. at 253-257; Declaration of Paul Picone in Opposition to Gillette's Motion for Summary Judgment.

147.  **PIC claims that in March 2001, Gillette employee Anna Madden told Paul Picone that Gillette was "experiencing a reduced need for duplicates" while, in fact, Gillette was allegedly obtaining duplicates of PIC images directly from sources such as Advanced Photographics.**

Disputed.  PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts.   PIC does not dispute that Anna Madden told Paul Picone that Gillette was "experiencing a reduced need for duplicates" while Gillette was obtaining duplicates of PIC images from third parties.

148.  **The date of the last Advanced Photographics invoice alleged by PIC to establish Gillette's improper duplication or photographs is February 16, 2000 - more than one year prior to Ms. Madden's alleged misstatements to Mr. Picone.**

Disputed.  PIC15808 (Advanced Photographics Invoice 3/31/2000).

149.  **PIC was aware of Gillette's duplication of PIC images no later than February 2000.**

Disputed.  PIC only became aware of the vast majority of Gillette's unauthorized duplication during discovery in this case.  Gillette Ex. 7.

150. **PIC claims that Gillette's in-house attorneys made false statements to PIC concerning PIC's claims and that PIC relied upon such statements in delaying the filing of the instant suit.**

Disputed.  PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts.   PIC does not dispute that Gillette's attorneys made false statements and that PIC relied upon those statements.

151. **In the fall of 2002, PIC was under the impression that it would no longer be given work by Gillette.**

Disputed.  3/24/05 Picone Depo. (PIC Ex. 10) at 266-67.

152. **After perceiving that it would no longer be given work by Gillette, PIC in 2002 claimed for the first time that the Boilerplate governed the parties' dealings.**

Disputed.  PIC testified that on several occasions it made clear to Gillette that the terms and conditions governed the parties' relationship. 3/24/05 Picone Depo. (PIC Ex. 10) at 150-152, 196.

153. **After perceiving that it would no longer be given work by Gillette, PIC in 2002 that the Boilerplate's requirement that Gillette return PIC's transparencies and negatives within 30 days of first publication was in fact in effect.**

Disputed.  PIC objects to this fact as it is not a complete sentence and is otherwise unintelligible.   To the extent this statement can be read as having any meaning, PIC disputes this fact.

154. **PIC did not make a formal written demand to Gillette until June 23, 2003, when it sent a letter to various Gillette employees alleging use of PIC photographs in ways "inconsistent" with the terms of a purported agreement.**

Disputed.  The contract between the parties imposed no requirement of a "formal written demand," and PIC demanded its photographs be returned in October 2002 and made clear on numerous occasions before that Gillette would have to return PIC's images.  3/24/05 Picone Depo. at 26.

155. **PIC alleged in the June 23, 2003, letter that Gillette was required to return photographic materials within 30 days and that, failing the return of its photographs, PIC was entitled to $1,500 for each original image.**

Disputed.  The letter speaks for itself.

156. **On June 26, 2003, Gillette returned to PIC the photographic materials it could find.**

Disputed.  The overwhelming majority of PIC's photographic materials remain with Gillette to this day.  Gillette Ex. 7.  Further, Gillette refused to provide a witness or answer interrogatories regarding its internal "investigation," thereby justifying an adverse inference as per the Court's 2/10/05 Order.

157. **On August 5, 2003, PIC's attorney, Michael Albert, sent a letter to Gillette's in-house counsel stating that PIC had not opened the box of photographs provided by Gillette and asking for an "index" of items included in the June 26, 2003 package to PIC, asking Gillette to check such index against PIC's list of job numbers, requesting a second shipment of photographic materials, and reiterating PIC's claims that there were "numerous instances in which Gillette used PIC's photographs outside of the limitations imposed by the contracts."**

Disputed.  The letter speaks for itself.

158. **In response, on August 13, 2003, John B. Gatlin, a Gillette in-house attorney, explained that Gillette was having difficulty gathering PIC's photographs and**

**requested that PIC provide more specificity so that Gillette could more easily gather the requested materials.**

Disputed. The letter speaks for itself. Further, disputed that Gillette was attempting to gather PIC's photographs. PIC Ex. 34.

159. **In the August 13, 2003 letter, Mr. Gatlin also stated that Gillette was conducting an internal investigation and had been unable to find any instance of any misuse of PIC's photographs but would continue to investigate and would forward any "relevant information" as it became available.**

Disputed. The letter speaks for itself. Further, disputed that Gillette was conducting an internal investigation. PIC Ex. 34. Gillette has refused to produce any witness or answer any interrogatories on this topic, thereby justifying an adverse inference as per the Court's 2/10/05 Order.

160. **More than one month later, on September 29, 2003, Mr. Albert responded to Mr. Gatlin's August 13, 2003 letter claiming to be "puzzled" by Gillette's intentions since PIC's counsel had heard nothing further from Gillette since the August 13 letter. Mr. Albert also refused to provide Gillette with the information requested by Mr. Gatlin in the August 13 letter.**

Disputed. The letter speaks for itself.

161. **There was no written correspondence between PIC's counsel and Gillette counsel from September 30, 2003 through May 7, 2004.**

Undisputed.

162. **On May 18, 2004, eleven days after PIC commenced this action against Gillette, Mr. Albert sent a letter to Mr. Bechet purporting to confirm the content of their conversation on that day. Among other things, Mr. Albert claimed that, during their**

**telephone conversation, Mr. Bechet had "confirmed Michelle Bratton's previous representation to [PIC] that an index has been prepared within Gillette of the photographic materials belonging to our client that Gillette has located and gathered during its investigation.... You were not willing, however, to provide that index to us at this time."**

Disputed.  The letter speaks for itself.

**163.    On May 19, 2004, in response to Mr. Albert's letter, Mr. Bechet wrote: "I enjoyed our conversation. In reply to yours of the 18th, please be advised that no representation was made to you regarding an 'investigation' undertaken by Gillette. Also, no representation was made to you regarding an index of photographic materials belonging to your client."**

Disputed.  The letter speaks for itself.  Also, disputed that the representations in Mr. Bechet's letter were accurate.  Gillette has refused to produce any witness or answer any interrogatories on this topic, thereby justifying an adverse inference as per the Court's 2/10/05 order.

**164.    Mr. Bechet was not referring to any prior statement made by Mr. Gatlin concerning Gillette's investigation, but was disputing PIC's counsel's purported record of the parties' telephone conversation.**

Disputed.  Gillette has refused to answer any interrogatories or provide any 30(b)(6) witness regarding Gillette's internal "investigation."  In the Court's 2/10/05 order in response to PIC's Motion to Compel, the Court held that the assertion of an attorney-client privilege in this context may be grounds for the drawing of an adverse inference.

**165.    Mr. Albert did not respond to Mr. Bechet's letter.**

PIC objects to this statement because Gillette does not provide any reference to any evidentiary support and thus has failed to comply with Local Rule 56.1.

**166. At his deposition, Mr. Picone testified that the correspondence he and his counsel sent to Gillette was intended to bring about an amicable resolution of the dispute.**

Disputed. PIC objects to Gillette offering PIC's testimony as an "undisputed fact," because it is unclear whether Gillette is claiming that it is undisputed what occurred at PIC's deposition or that the content of the underlying testimony (taken out of context) is undisputed. Undisputed that PIC wanted to avoid litigation if possible.

**167. In the Spring of 2004, PIC agreed to perform a series of additional jobs for Gillette as a gesture of goodwill (the "Spring 2004 Jobs").**

Undisputed.

**168. The jobs were completed by March 2, 17, 22, and April 20, 2004, respectively.**

PIC objects to this statement as it does not stand on its own and thus is difficult to formulate a precise admission and/or denial. Assuming this statement refers to the Spring 2004 Jobs, it is undisputed.

**169. After filing its complaint, PIC forwarded to Gillette the invoices for the Spring 2004 Jobs. Because the Invoices appeared to overcharge Gillette, and because PIC and Gillette were in litigation, Gillette has not paid the invoices.**

Disputed. PIC does not dispute that it sent its invoices to Gillette after filing its complaint. PIC does dispute that it "appeared" to overcharge Gillette or that it did overcharge Gillette. Expert Report of Jeff Sedlik (PIC Ex. 11). PIC also disputes that the instant litigation is a valid justification for Gillette not to pay the invoices.

**170. PIC's Second Amended Complaint alleges, inter alia, the following claims for breach of contract: (1) Gillette has failed to return PIC's original negatives and**

**transparencies within 30 days of publication and, as a result, Gillette is required to pay $1,500 for each such original negative or transparency; (2) Gillette has breached its agreements with PIC by using PIC's images outside the temporal and geographic scope of the copyright license; and (3) Gillette did not include a copyright notice on the photographs acknowledging PIC's ownership of copyrights.**

Disputed. PIC objects to Gillette's paraphrasing of PIC's claims as inappropriate for a Statement of Undisputed Facts. PIC does not dispute that Gillette failed to return PIC's film and thus is required to pay liquidated damages, and that Gillette breached its agreements with PIC by violating the temporal and geographic scope of the copyright license and that Gillette did not include a proper copyright notice on PIC's images.

**171.    PIC originally based its chapter 93A claim on the same conduct that formed the basis for its copyright, breach of contract and fraud claims.**

Disputed. PIC objects to Gillette's paraphrasing of PIC's claim as inappropriate for a Statement of Undisputed Facts. PIC also objects to Gillette's attempt to present a legal conclusion as an undisputed fact.

**172.    The Court dismissed plaintiff's Chapter 93A claim as preempted by the Copyright Act "to the extent it is based upon Gillette's reproduction and continued use of the copyrighted photos without [PIC's] permission."**

Disputed. PIC objects to Gillette's characterization of the Court's holding as an "undisputed fact." The Court's holdings at the September 23, 2004 hearing regarding preemption are legal conclusions and are not appropriate for a Statement of Undisputed Facts. PIC does not dispute that the quoted text accurately reflects what the Court said at the September 23, 2004 hearing.

**173.    PIC's remaining Chapter 93A claim, which is based on Gillette's alleged failure to**

**return PIC's photographs and alleged misrepresentations to PIC by Anna Madden,**

**by Gillette's in-house counsel, and in connection with the Spring 2004 Projects.**

Disputed.  PIC objects to this fact as it is not a complete sentence and is otherwise

unintelligible.  To the extent this statement can be read as having any meaning, PIC disputes this

fact.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

By its counsel,

Dated: April 22, 2005          /s/ Michael A. Albert
                              Michael A. Albert, BBO #558566
                              malbert@wolfgreenfield.com
                              Michael N. Rader, BBO # 646990
                              mrader@wolfgreenfield.com
                              Adam J. Kessel, BBO # 661211
                              WOLF, GREENFIELD & SACKS, P.C.
                              600 Atlantic Ave.
                              Boston, MA 02210
                              Tel: (617) 646-8000
                              FAX: (617) 646-8646