UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION<br><br>Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br><br><br>Defendant.<br><br>THE GILLETTE COMPANY,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>Counterclaim Defendants. | Civil Action No. 04-10913 WGY<br><br>**MOTION IN LIMINE TO EXCLUDE EXPERT REPORT AND TESTIMONY OF JEFFREY B. SEDLIK; MEMORANDUM IN SUPPORT OF MOTION** |

The Gillette Company ("Gillette") hereby moves pursuant to Federal Rules of Evidence 104 and 702 to exclude the Expert Report of Jeff Sedlik dated March 1, 2005 ("Sedlik Report") and to preclude his testimony proffered by plaintiff Photographic Illustrators Corporation ("PIC").

**MEMORANDUM IN SUPPORT OF MOTION**

For more than a decade, PIC supplied Gillette with photographic images of Gillette's products for use in connection with a variety of Gillette trade sales materials.  PIC commenced this case in May 2004, claiming, *inter alia*, that Gillette had infringed PIC's copyrights in certain images by using them beyond the scope of the license granted to Gillette.  The primary issues in this case, then, are, first, what constituted the license agreement between the parties and, second,

whether Gillette breached that agreement. For its part, PIC claims that the terms of the license are set forth in the boilerplate "Terms and Conditions" (the "Boilerplate") that appear on the back of PIC's invoices. Gillette maintains that, for various reasons, the Boilerplate does not constitute the agreement of the parties.

PIC seeks to offer Jeffrey B. Sedlik ("Sedlik") as an expert witness to testify concerning "commercial photography industry practices and procedures, both in general and relative to the business transactions and other related interactions between PIC and Gillette" and "copyright and licensing issues that might arise in the case." Ex. B at 2.[1] The topics upon which Sedlik seeks to offer his "expert opinion" in this case should be severely curtailed. As evidenced by the content of his Report, if not reigned in, Sedlik's testimony at trial will largely consist of irrelevant industry standards, inadmissible legal conclusions, testimony to facts outside Sedlik's personal knowledge, and other conclusions that are beyond the scope of permissible expert testimony. Accordingly, and for the reasons set forth herein, the Sedlik Report should not be permitted as evidence in this case and any testimony he is permitted to offer should be limited in advance to appropriate topics.

I. **RELEVANT LEGAL STANDARDS FOR ADMISSION OF EXPERT TESTIMONY**

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . .

*See also* Fed. R. Evid. 704. The key inquiry in assessing admissibility is whether the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). In order to be helpful to the trier of fact, the testimony

---

[1] References to "Ex." are to the Exhibits to the Declaration of David Donahue, dated May 6, 2005, filed concurrently herewith.

must be "relevant to the task at hand." *Daubert*, 509 U.S. at 589 (the trial judge must assure that proffered expert testimony is relevant under Federal Rules of Evidence 401 and 402); *Kumho Tire Co.*, 526 U.S. at 147. Courts must be particularly vigilant in assessing the relevance of expert testimony when the "probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert*, 509 U.S. at 595 (citation omitted).

Further, the use of expert testimony "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge as to the applicable law or the role of the jury in applying that law to the facts before it." *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). The law is clear that an expert cannot opine on the ultimate legal issues in a case and that any such opinions are *never* admissible. *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997) ("[I]t is for the judge, not the lawyers or the witnesses, to inform the jury of the law applicable in the case and to decide any purely legal issue."); *U.S. v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (expert testimony that "undertakes to tell the jury what result to reach . . . does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's"); *Playboy Enters, Inc. v. Terri Welles, Inc.*, 78 F. Supp. 2d 1066, 1100 (S.D. Cal. 1999) ("Federal Rules of Evidence 702 and 704 were not intended to allow experts to offer opinions embodying legal conclusions").

## II. THE EXPERT REPORT AND TESTIMONY OF SEDLIK IS IRRELEVANT AND PREJUDICIAL TO GILLETTE

At just about every turn, the Sedlik Report proffered by PIC violates the Federal Rules of Evidence and therefore Sedlik's testimony, which must conform to his Report, should not be submitted to a jury.

### A. Sedlik Should Not Be Permitted to Offer Irrelevant Testimony

Much of the Sedlik Report addresses various practices within the commercial photography industry. Specifically, in Sections V.A. and V.C. of his Report, Sedlik contends that the Boilerplate contained on the reverse of PIC's invoices "are standard in the commercial

3

photography industry." Ex. B at 8-9.  While Sedlik may be qualified to speak to such practices, they are irrelevant to PIC's claims that the Boilerplate constituted the license agreed to by the parties and that Gillette violated the unambiguous terms of that license.  If, as PIC has claimed in its original and two amended complaints and repeatedly has argued to this Court, the Boilerplate encompasses the parties' agreement *and* is unambiguous, extrinsic evidence about industry standards is completely irrelevant and may not be considered.[2]  *Nat'l Tax Inst., Inc. v. Topnotch At Stowe Resort and Spa*, 388 F.3d 15, 20 (1st Cir. 2004) (when the parties' intent is expressed in an unambiguous writing, extrinsic evidence may not be considered); *Den Norske Bank AS v. First Nat'l Bank of Boston*, 75 F.3d 49, 52 (1st Cir. 1996); *Clarendon Trust v. Dwek*, 970 F.2d 990, 993 (1st Cir. 1992); *compare Northeast Drilling, Inc. v. Inner Space Services, Inc.*, 243 F.3d 25, 38 (1st Cir. 2001) (permitting expert testimony to construe contract in view of ambiguity of contract term).

PIC should not be permitted to bolster Boilerplate that it contends is unambiguous with testimony that such terms comport with industry norms.  Irrelevant testimony of this sort does not assist the trier of fact as required under Federal Rule of Evidence 702 and is therefore inadmissible.  *See Home Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 229 F.3d 56, 64 (1st Cir. 2000) (expert testimony on industry standards inadmissible where contract terms are unambiguous); *see also Federal Refinance Co. v. Klock*, 352 F.3d 16, 25 (1st Cir. 2003) (district court properly excluded expert testimony regarding legally irrelevant subjects).

**B.     Sedlik Should Not Be Permitted to Offer Legal Conclusions**

Federal evidence law is clear that an expert cannot opine on ultimate legal issues in a case and that opinions addressing such issues are not admissible.  *Nieves-Villanueva*, 133 F.3d at 100; *U.S. v. Duncan*, 42 F.3d at 101; *Playboy Enters, Inc.*, 78 F. Supp. 2d at 1100.

Despite this clear federal rule, the Sedlik Report is replete with legal conclusions. Section V.C. of the Sedlik Report ("PIC's Licenses to Gillette"), for example, is comprised

---

[2] Gillette reserves its right to argue that the Boilerplate does not constitute the agreement of the parties.

4

almost completely of legal conclusions, many of them encompassing Sedlik's own interpretation of the Boilerplate. These legal conclusions include the following:

- "PIC never assigned its copyrights to Gillette (and did not create photographs for Gillette as works for hire), PIC retained the copyrights in the images, granting limited licenses to use the images only to the extent provided in PIC's invoices." Ex. B at 11.

- If Gillette wanted to duplicate PIC's work, "advance authorization must be obtained from the photographer," and, "[a]ccordingly, unless specifically authorized by PIC, Gillette would be outside the scope of its license in creating duplicates of PIC's original images." Ex. B at 11-12.

- "Absent an additional license (accompanied by payment of the requisite fee) a client such as Gillette would be outside the scope of its license in using PIC's images beyond one year from the date of the relevant invoice." Ex. B at 12.

- "Transmitting PIC's images to third parties for use in their advertising would not be permitted under PIC's licenses to Gillette." Ex. B at 12-13.

- "Because payment is required to obtain reproduction rights, a client's failure to pay the photographer's invoice results in no license being granted. The license is not activated until the Photographer receives payment in full." Ex. B at 13.

- "Usage for media other than that specified would not be included in the license. For example, if the "media use" indicates "catalog," then use of the photographs in media such as sales fliers, presentations, packaging, trade show displays, packaging, [sic] or any other media would not be licensed." Id.

- "Tolerating a few [license] violations on occasion is not to be considered a waiver of the license terms . . . ." Ex. B at 14.

Sedlik does not confine his legal conclusions to Section V.C. Section V.D. contains legal conclusions on an issue that could be key to the outcome of the case – namely, whether PIC waived a 30-day return requirement found in the Boilerplate. It is undisputed in this case that Gillette never returned originals it received from PIC and that PIC never once asked for their return during the parties' 10-year business relationship until shortly before this lawsuit. In a transparent attempt to reinforce PIC's new argument that it granted Gillette an indefinite "extension" of the 30-day deadline and to discredit the far more plausible theory that PIC had waived the 30-day requirement, Sedlik makes the following objectionable argument:

5

> Unless expressly stated that the photographer does not expect to receive the images back at all, permission for the client to store the photographer's film on-site should not be . . . understood to waive the return requirement if and when the photographer does ultimately request that the images be returned. . . . [T]he "extension" is just that, and does not operate as a waiver. . . . In granting permission to Gillette to retain custody of the materials beyond 30 days, PIC maintained that the materials would still be subject to return when and if PIC requested it. . . . [U]nless there is a writing in which PIC waived the return requirement, . . . the return requirement is still in place. I would characterize PIC's decision to permit Gillette (temporarily) to maintain custody of the images as a 'customer service' decision that is not uncommon in the industry.

Ex. B at 19-20. Obviously, such testimony should be barred, as the doctrine of waiver and contract interpretation are unequivocally legal issues. *Cumberland Farms, Inc. v. Marchese*, No. 9702497, 2000 WL 33171003, at *3 (Mass. Super. Mar. 14, 2000) (concluding that waiver is an issue of law) (citing *McCarthy v. Tobin*, 429 Mass. 84, 88 n.5 (1999)).[3]

Sedlik similarly offers legal conclusions on a potentially pivotal issue in the case when he opines in Section V.D. that the penalty amount of $1,500 specified in the Boilerplate for return of photographic originals past 30 days (the "Late Penalty") "represents a fair and practical estimate of the value of a particular image." Ex. B at 17. The enforceability of a liquidated damages provision such as the one contained in the Boilerplate depends on whether the figure reasonably approximates the damage that would be caused by a breach or whether the figure so distorts the damage that it acts as a penalty for breach. *Space Master Int'l, Inc. v. City of Worcester*, 940 F.2d 16, 18 (1st Cir. 1991) (quoting *Priebe & Sons, Inc. v. U.S.*, 332 U.S. 407,

---

[3] Moreover, PIC should not be permitted to offer expert testimony in an attempt to bolster a newly-minted, lawyer-crafted argument that finds no support in the undisputed facts of the case and is barred by law. As carefully explained and analyzed in Gillette's Memorandum of Law in Opposition to PIC's Motion for Summary Judgment on Its Claim for Liquidated Damages for Gillette's Alleged Failure to Return PIC's Images (Docket # 104), PIC's eleventh-hour argument that PIC merely orally extended the 30-day return requirement is barred by PIC's own judicial admissions, the language of the very Boilerplate on which PIC relies, and the parol evidence rule. This is the subject of a separate motion in limine filed by Gillette.

413 (1947)). Thus, by testifying that the Late Penalty is a reasonable figure, Sedlik attempts to answer the enforceability question for the jury.[4]

> Additional legal conclusions found in the Sedlik Report include:
> - "Pursuant to the liquidated damages provision, the photographer agrees not to demand that the client pay more than the stipulated amount for loss, damage or refusal to return a particular photograph, even if a particular photograph is worth more than the stipulated amount. Likewise, the client agrees to pay the stipulated amount for loss, damage or refusal to return, even if a particular photograph is worth less than the stipulated amount." Ex. B at 17.
>
> - "[A]ny failure by Gillette to pay an invoice once presented would void the advance license granted to Gillette by PIC. As a result, any use of PIC's photographs by Gillette would constitute infringement of PIC's copyrights in the photographs." Ex. B at 22.

Presumably, PIC would attempt to introduce Sedlik's expert "opinions" on all of the issues identified above during his testimony at trial in an attempt to bolster its own legal arguments. Because all of these statements are impermissible legal conclusions, Sedlik should not be permitted to offer testimony concerning any of these topics.

**C.    Sedlik Should Not Be Permitted to Testify to "Facts" Beyond His Personal Knowledge**

Throughout his Report, Sedlik recites PIC's version of the history between the parties as if PIC's rendition were determined fact. For example, Sedlik states that the Boilerplate constitutes the agreement between the parties, *see* Ex. B at 11, even though the application of the

---

[4] Moreover, Sedlik's opinion that the Late Penalty figure is reasonable in light of his opinion of Mr. Picone's skill is completely irrelevant. Under *Kelly v. Marx*, 705 N.E.2d 1114, 1116 (Mass. 1999), to determine whether a liquidated damages clause is a penalty, the court (and juries) are required to analyze whether the parties believed, *at the time they entered into the contract*, that the amount stated was a reasonable approximation of the damage a breach would cause. Thus, the relevant inquiry here is whether PIC and Gillette reasonably believed, at the time of the formation of each separate contract (*i.e.*, at the time of invoicing for each project), that PIC would suffer approximately $1,500 in damages if Gillette was late in returning original photographs. The parties are *not* permitted to argue, nor is the court or jury permitted to consider, how the stipulated amount compares to the injured party's *actual* damages (or lack thereof). Thus, PIC's post-hoc attempt, through Sedlik, to argue that PIC's photographs are worth $1,500 (or more) is completely irrelevant to any issue, and will serve only to confuse the jury and prejudice Gillette.

Boilerplate is a central issue in the case.  Additional statements of the factual record premised solely on PIC's version of the facts can be found throughout the Report, including (1) in the "Background" discussion, Ex. B at 5-8 (Section IV in its entirety); (2) in the discussion of PIC's alleged "approach" to policing Gillette's purported infringements, Ex. B at 14; (3) in the statement that "Gillette was well aware of the terms of PIC's invoices, as Gillette has received, reviewed, approved and paid hundreds of such invoices," Ex. B at 14; (4) in the statement that Gillette specifically requested an extension of the 30-day return period found in the boilerplate, Ex. B at19-20; and (5) in the statement that PIC permitted Gillette to use photographs before paying the invoices "as a customer service, in respect for the long term and mutually beneficial business relationship," Ex. B at 22.  Additionally, except for the first and perhaps the last paragraph, the entirety of Section V.H. – which discusses PIC's invoice and charges for the "Spring 2004 Housewares Project" – is fact testimony.  Ex. B at 23-26.

Because Sedlik generally does not qualify the contested history between the parties as "assumed facts," such unsubstantiated, second-hand testimony is testimony to facts outside Sedlik's personal knowledge.  While an expert witness' *opinions* need "not [be] based on first-hand knowledge or observation," *Daubert*, 113 S. Ct. at 2796, experts may not testify as to those second-hand facts.  *Nat'l Bank of Commerce v. City of New Bedford*, 175 Mass. 257, 261, 56 N.E. 288, 290 (1900) (Holmes, C.J.) ("The fact that an expert may use hearsay as a ground of opinion does not make the hearsay admissible."); *see also* Fed. R. Evid. 602, 802.  Such a rendition from a witness cloaked as an "expert" could be highly prejudicial to Gillette in that it could cause a jury to think that the alleged "facts" are undisputed, or that Sedlik's version of the facts, which happens to coincide with PIC's version of the facts, should carry weight.  PIC should not be permitted to voice its testimony through an "expert" witness and, thus, Sedlik should not be permitted to testify to such facts.  *Daubert*, 509 U.S. at 595 (expert testimony should not be considered when its probative value is outweighed by potential prejudice to the opposing party).

**D.    Sedlik Should Not Be Permitted to Critique Witness Credibility**

In Section V.C. of his Report, Sedlik attempts to discredit the deposition testimony of Gillette's employees. Ex. B at 14. Not only is Sedlik completely unqualified as an "expert" to voice any type of credibility opinion, it is the jury which is solely responsible for making such credibility determinations. *U.S. v. Gonzales-Maldonado*, 115 F.3d 9, 16 (1st Cir. 1997) (expert opinion concerning credibility of another witness not admissible under Fed. R. Evid. 702); *U.S. v. Sullivan*, 85 F.3d 743, 750 (1st Cir. 1996) ("credibility judgments are for the jury, not witnesses, to make"). Accordingly, Sedlik should not be permitted to testify concerning the credibility of other witnesses on any topic.

**E.    Sedlik's Opinion on Gillette's Photographic Storage System is Unnecessary**

In Section V.E. of his Report, Sedlik opines on Gillette's policies and procedures for handling PIC's original photographic materials. His statements on this issue are unnecessary: even assuming Gillette's handling of PIC's photographic originals is relevant to any issue in the case, the jury is fully capable of determining for themselves whether Gillette's policies and procedures did or did provide adequate safeguards. Sedlik's "expert" testimony on this issue therefore will not assist the trier of fact as required under Federal Rule of Evidence 702 and therefore is not admissible. *See Van Blargen v. Williams Hospitality Corp.*, 754 F. Supp. 246, 249 (D.P.R. 1991) (expert testimony on hotel security policies and procedures not needed when subject "deals with common occurrences that the jurors have knowledge of through their experiences in everyday life").

**F.    Sedlik Should Not Be Permitted to Testify on Copyright Registration Law**

In Section V.G. of his Report, Sedlik addresses "group registration" of copyrights and attempts to explain the purpose and effect of such registration. "[F]amiliarity" with copyright processes and policies, and communications with various Copyright Office officers, *see* Ex. B at 23, does not make Sedlik an expert in this area, and Sedlik is therefore not qualified to testify as an expert on these subjects. *See* Fed. R. Evid. 702 (witness must be qualified as an expert through specialized "knowledge, skill, experience, training, or education"). In addition,

9

testimony on this issue is completely irrelevant to any issue in the case, as Gillette does not contest the permissibility of group registrations under the Copyright Act. *Daubert*, 509 U.S. at 589 (expert testimony must be "relevant to the task at hand"). Finally, even were the law of group copyright registrations relevant to the case, educating the jury as to the purpose and effect of the law is the purely the province of the judge. *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp. 220, 225 (7th Cir. 1996) (since, "in a trial there is only one legal expert – the judge," expert testimony concerning the copyright process and copyrightability issues inadmissible).

## CONCLUSION

The vast majority of the Sedlik Report is comprised of Sedlik's legal conclusions, discussions of standards in the photography industry and his own rendition of PIC's allegations and the evidence in this case. For the reasons set forth above, Gillette hereby requests that this Motion in Limine be granted such that Sedlik's testimony be limited appropriately.

Dated:  May 6, 2005

GELB & GELB LLP

By:   /s/Richard M. Gelb/
      Richard M. Gelb (BBO#188240)
      rgelb@gelbgelb.com
      Robert S. Messinger (BBO# 651396)
      rmessinger@gelbgelb.com

20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By:   /s/Patrick T. Perkins/
      Patrick T. Perkins (Admitted *pro hac vice*)
      David Donahue (Admitted *pro hac vice*)

886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

*Attorneys for Defendant/Counterclaim-Plaintiff
The Gillette Company*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

I, Patrick T. Perkins, do hereby certify that on May 5 and 6, 2005, I communicated with Michael Albert, Esq., counsel of record for Plaintiff, in a good faith effort pursuant to Local Rule 7.1(a)(2) to resolve or narrow the issues raised in this motion.

By: /s/Patrick T. Perkins/

Patrick T. Perkins (Admitted *pro hac vice*)

I:\lpopprosenberg\GLTC\050505-0420298-PLD-limine-Sedlik-lep.doc