UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>          Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>          Defendant. | Civil Action No. 04-10913 WGY<br><br>**THE GILLETTE COMPANY'S MOTION IN LIMINE TO EXCLUDE ALL TESTIMONY AND EVIDENCE BARRED UNDER THE PAROL EVIDENCE RULE AND THE DOCTRINE OF JUDICIAL ADMISSIONS; MEMORANDUM IN SUPPORT OF MOTION** |

Defendant The Gillette Company ("Gillette") hereby moves pursuant to Federal Rule of Evidence 104 (a) to preclude plaintiff Photographic Illustrators Corporation ("PIC") from offering any evidence or testimony: (1) purporting to set forth contractual terms between the parties different from those set forth in the invoices provided by PIC to Gillette on each of the more than 600 jobs performed by PIC[1]; (2) as to PIC's belated claim that Gillette was not permitted to make "duplicates" as opposed to "reproductions" of PIC photographs; and (3) as to the meaning of "publication."

**MEMORANDUM IN SUPPORT OF MOTION**

    **A.**    **The Parol Evidence Rule Bars Evidence As To PIC's Purported Discussions With A Gillette Consultant In 1992, PIC's Claim That Reproduction Does Not Include Duplication, And The Meaning Of "Publication."**

"'Evidence of prior or contemporaneous oral agreements cannot be admitted to *vary* or *modify* the terms of an unambiguous written contract.'" *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1122-23 (1st Cir. 1995) (citations omitted). Moreover, "parol evidence may not be used to create ambiguity where none otherwise exists." *Id.* (citations and internal quotation marks omitted). An attempt to rely upon oral statements violates the parol evidence rule, which

---

[1] Gillette reserves its right to present evidence to show that the invoices are not contracts binding the parties.

1

prohibits a party to a written contract from contradicting the plain terms of that contract with prior statements. *Id.* at 1122. "The rule that written agreements may not be varied or added to by parol evidence of antecedent or contemporaneous negotiations is not one merely of evidence, but is a rule of substantive law." *Sound Techniques, Inc. v. Hoffman*, 737 N.E. 2d 920, 923 (Mass. App. Ct. 2000). Moreover, if the contract language is unambiguous, it is interpreted according to its plain terms and extrinsic evidence is not considered. *Den Norske Bank AS v. First Nat'l Bank of Boston,* 75 F.3d 49, 53 (1st Cir. 1996).

### 1.   The Purported 1992 Oral Agreement

In all three of its versions of the Complaint filed in this case, PIC has claimed that the language on the reverse of its invoices represents the contract between the parties. Those invoices all include the same language, namely:

> 9. REPRODUCTION RIGHTS: Reproduction rights are conditioned on Photographer's receipt of payment in full and Client's proper use of the copyright notice. All rights not expressly granted herein remain the exclusive property of Photographer. Unless otherwise stated on the face of this Agreement, duration of the License is one year from Agreement date and limited to use in the United States of America. Client may not sell, assign or otherwise transfer this License, or any rights or obligations under this License without Photographer's prior written consent.
>
> 10. RETURN OF PHOTOGRAPHS: Client assumes all risk for all photographic material(s) delivered by Photographer from time of receipt by Client to time of receipt by Photographer. If no Return Date appears on the face of this form, Client shall return all these material(s) in undamaged, unaltered and unretouched conditions within 30 days of first publication.
>
> 11. LOSS OR DAMAGE: If no "actual value" for liquidated damage(s) amount per photograph appears on the face of this form, or by attachment or by delivery memorandum, then liquidated damage(s) for loss or damage has been agreed upon between the parties to be $1500 dollars per original transparency or negative. In the event of failure to return photographs per item #10, Photographer shall be entitled to immediate payment in full of the above liquidated damages.

In addition, the invoice contains a clause requiring that any changes to the "agreement" be in writing and signed by the party to be bound by such changes.

It is undisputed that from 1992 until 2002, PIC never once asked for the return of photographs within 30 days as required under paragraph 10 above, and never once charged

2

Gillette $1,500 for any transparency it failed to return within 30 days, as required under paragraph 11.

PIC has asserted (and will undoubtedly seek to assert at trial), that in 1992, PIC made an agreement with Gillette different from the "terms and conditions" on the reverse of its invoices. Namely, PIC now claims that the stated requirement to return negatives and transparencies within 30 days of publication did not apply, but rather, was replaced with an agreement that Gillette could maintain custody of the materials until PIC asked for them back.

PIC's new story of an "extension" of the Purported 30-day Return Requirement is based upon alleged discussions that took place prior to PIC performing the first job for Gillette and thereafter in connection with the "second or third job." (Dkt. No. 75 ¶ 18.) This story contradicts PIC's Complaint in which PIC has alleged the existence of "hundreds" of integrated agreements between PIC and Gillette entered into over the years that all were subject to "PIC's standard terms and conditions." (SAC ¶ 9.) PIC cannot have it both ways—on the one hand claiming violation of hundreds of integrated written "Agreements" by Gillette while on the other hand purporting to modify the terms of such agreements through "prior or contemporaneous" alleged oral discussions. Assuming the allegations of PIC's own Complaint to be true, these alleged discussions clearly are inadmissible under the parol evidence rule.

   2.   **The Clear And Unambiguous Meaning Of "Reproduction" Includes "Duplication" And Thus PIC's Attempt To Proffer Evidence On The Meaning Of Reproduction Should Be Rejected.**

PIC alleges that it granted licenses to Gillette to reproduce images for a period of one year. (SAC ¶ 10.) Notwithstanding this admitted license, PIC claims that Gillette did not have the right to *duplicate* (as opposed to reproduce) PIC's images during the one-year license period. (Dkt. No. 87 at 14; Dkt. No. 99, Ex. 7 at 5-23.) The plain language of the purported license uses the broad term "reproduction" without excluding any specific type of reproduction, such as duplication. The purported license terms upon which PIC relies refer only to broad "reproduction rights." (Dkt. No. 99, Ex. 6 ¶ 9.)

Nowhere do any of PIC's invoices except duplication from the grant of reproduction

3

rights. In fact, PIC concedes that the creation of duplicates is a type of reproduction, but instead argues that such rights were not "within the scope of 'reproduction rights' covered within the scope of Gillette's licenses." (Dkt. No. 87 at 14.) PIC has not alleged that the term "reproduction" as used in the Purported License is ambiguous, nor can it. To the contrary, PIC concedes that reproduction encompasses duplication in citing to the Copyright Act's legislative history, which states that "the right to reproduce the copyrighted work in copies . . . means the right to produce a material object in which the work is *duplicated.*" H. Rep. No. 94-1476 (1976) (cited in Dkt. No. 87 at 14.) As a result of the broad and unambiguous meaning of the term "reproduction," the extrinsic evidence upon which PIC will attempt to rely to create a distinction between reproduction and duplication should not be considered.

        3.      **PIC's Extrinsic Evidence To Support Its Purported Meaning Of "Publication" Should Also Be Barred.**

The invoices that PIC claims represent the contracts between the parties state, in relevant part, that any purported duty to return negatives or transparencies begins within 30 days of "publication." Under the Copyright Act, "publication" is defined as "the distribution of copies … of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies … to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." 17 U.S.C. § 101.

Notwithstanding the clear and unambiguous meaning of the term "publication," PIC has sought to argue, through an expert, that the term has a special meaning in the context of commercial photography, namely, that it means when photographs are transmitted to a photographer's client. (Donahue Decl., Ex. B at 16.) Because the term "publication" is unambiguous, no extrinsic evidence should be permitted.

    **B.**    **PIC Is Bound By The Judicial Admissions In Its Pleading**

"A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc.*, 976 F.2d 58, 61 (1st Cir. 1992) (citation omitted). In *Schott*, the district court

4

rejected a plaintiff's attempt to thwart summary judgment by relying upon the existence of a purported oral agreement not pleaded in the Complaint, holding that the plaintiff was bound to its own pleading. *Id.* at 60-61. The Court of Appeals for the First Circuit explained:

> The judicial admission found by the lower court rested on plaintiff's clear and express statement in its original and amended complaints that "a contract did, in fact, exist between the parties," fortified by an attached copy of the 1985 Agreement. No other agreement was mentioned *nor was it suggested the Agreement was nullified, altered, or when or how that occurred.*"

*Id*. at 61 (emphasis added). The First Circuit further held that it had "scoured the complaint and [could] find no indication that plaintiff was pleading a termination and novation of the Agreement…. The complaint contains no mention of any contract other than the 1985 Agreement …." *Id*. at 62. *See also Restaurant Consulting Servs. v. Mountzuris*, 253 F. Supp. 2d 45, 53 (D.Mass. 2003) (Young, *Chief J*) (citing *Schott supra*), where this Court held that a party was bound by its assertion in a pleading concerning the agreement at issue in the case.

### 1. PIC's Claim Of An Oral Agreement In 1992 Is Inadmissible.

It is undisputed that all three versions of PIC's complaint have relied solely upon and have referred exclusively to the language on the reverse of its more than 600 invoices as the "Agreement[s]" between the parties. (SAC ¶ 9.) Nowhere in its pleading does PIC allege, rely upon, or even mention, any alteration of these purported "Agreements," such as the "extension" of the 30-day period which it now advances.[2] (*Id.* ¶¶ 14-15, 17, 53.) Any reference to the "new" oral agreement in 1992 cannot be admitted under the doctrine of judicial admissions.

### 2. PIC's Attempt Now To Claim That Gillette Was Not Permitted To Make Duplicates Of PIC Transparencies Should Also Be Barred.

PIC's claim that Gillette did not have the right to make "duplicates" (as opposed to reproductions) should also be barred under the doctrine of judicial admissions. In its Complaint—the third version in the case—PIC admits that Gillette *did* in fact have the right to

---

[2] Moreover, the fact that the purported Agreements on which PIC relies contain a no oral modification clause, (*See* Dkt. No. 99, Ex. 5 at PIC 17349, ¶ 14), also bolsters a finding that PIC is bound by its judicial admission. *See Schott*, 976 F.2d at 61 (holding that district court's finding of judicial admission was strengthened by fact that "[t]he Agreement provided that it could not be modified except by written instrument signed by an authorized Honda officer").

make duplicates of PIC images, provided such duplicates were made within one year. Specifically, PIC states "[i]n particular, Gillette engaged in such acts of duplication *outside the one-year period for which Gillette was licensed . . . .*" (SAC ¶ 25) (emphasis added). Similarly, in response to Gillette's interrogatory requesting that PIC "state the basis" for its claim that Gillette was required to obtain duplicates solely from PIC, plaintiff stated in part, "Gillette was permitted to reproduce images only if such acts of reproduction occurred within the scope of a valid license from PIC. In point of fact, Gillette reproduced photos, including via third party laboratories, *outside the one-year period for which Gillette was licensed . . . .*" (Dkt. No. 99, Ex. 25 at 9) (emphasis added).

PIC should be barred at trial from advancing its new theory.

## CONCLUSION

For the reasons set forth herein, Gillette's motion should be granted.

May 6, 2005

GELB & GELB LLP

By:  /s/Richard M. Gelb/
    Richard M. Gelb (BBO#188240)
    rgelb@gelbgelb.com
    Robert S. Messinger (BBO# 651396)
    rmessinger@gelbgelb.com

20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By:  /s/Patrick T. Perkins/
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

*Attorneys for Defendant The Gillette Company*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

    I, Patrick T. Perkins, do hereby certify that on May 5 and 6, 2005, I communicated with Michael Albert, Esq., counsel of record for Plaintiff, in a good faith effort pursuant to Local Rule 7.1(a)(2) to resolve or narrow the issues raised in this motion.

    By:   /s/Patrick T. Perkins/
    Patrick T. Perkins (Admitted *pro hac vice)*