UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>THE GILLETTE COMPANY,<br><br><br>　　　　　Defendant. | Civil Action No. 04-10913 WGY<br><br>**THE GILLETTE COMPANY'S MOTION FOR SANCTION DUE TO PLAINTIFF'S SPOLIATION OF EVIDENCE; MEMORANDUM IN SUPPORT OF MOTION** |

Defendant The Gillette Company ("Gillette") hereby moves pursuant to Federal Rule of Evidence 104 (a), Federal Rule of Civil Procedure 37 and the Court's inherent power, for an evidentiary sanction against plaintiff Photographic Illustrators Corporation ("PIC") for its destruction of or failure to preserve evidence key to Gillette's defense.  Specifically, Gillette requests the following: (1) that there be an instruction to the jury that, beginning in 1997, PIC kept a high resolution digital scan of every transparency or negative provided to Gillette; and (2) that PIC be precluded from offering evidence or testimony to the contrary.  Such a sanction is necessary because the digital directory of Gillette images that PIC created that would confirm Gillette's defense, has been allowed by PIC to degrade and never was produced to Gillette in any form.

**MEMORANDUM IN SUPPORT OF MOTION**

In this action, PIC alleges, *inter alia*, that it is entitled to liquidated damages of $1,500 for each transparency and/or negative that it provided to Gillette for over a decade that was not returned within 30 days of publication.  One of Gillette's main defenses to this claim is that the liquidated damages clause is an unenforceable penalty.

In support of its liquidated damages claim, PIC claims that Gillette's failure to return transparencies would deprive PIC of using the transparencies as reference materials, as part of a

portfolio, for stock photography and other unnamed purposes. (Dkt. No. 74 at 17.) All of these purported damages presume that Gillette's failure to return materials has deprived PIC of the images. However, as set forth below, PIC's practice of maintaining a high resolution digital scan of all transparencies provided to Gillette obliterates any claim of anticipated "loss" by virtue of Gillette's failure to return negatives and transparencies. As a result, the imposition of the liquidated damages clause would be a penalty.

At deposition, Paul Picone testified that beginning in 1997, PIC kept a high resolution, digital copy of every photograph taken by PIC for Gillette (the "Digital Directory"). (Dkt. No. 77, Ex. 10 at 218-19.) Specifically, Paul Picone testified as follows:

Q;   Now when you started—first of all, do you know when you started doing this for Gillette?

A:    Scanning and saving digital images?

Q:    Yes.

A:    I would say about '97.

Q:    Now, when you started doing that, did you scan in everything that you provided to Gillette?

A:    Yes. I think the instructions were at that time whenever we shot something and got the film back, we should scan it.

**Q:    So from 1997 forward, anything that Gillette received, you maintained in your electronic directory, correct?**

A:    **Correct.**

(*Id*. at 219, emphasis added.)

This testimony is consistent with that of Gillette's witnesses, who were told by PIC that it was keeping high resolution digital scans of everything provided to Gillette. (Cooper, Madden, Josephson, and Tattan Declarations, Dkt. Nos. 107-110.)

PIC began creating digital copies because "clients started asking for scanned images rather than ektachrome [transparencies]." (Dkt. No. 77, Ex. 10 at 218.) Indeed, in

correspondence with Gillette, PIC explained that its digital scans were suitable for any form of duplication Gillette might wish to make, with the exception of large format trade show displays. (Dkt. No. 99, Ex.23.)  Even PIC's paid "expert" testified at deposition that high resolution digital scans such as those PIC kept of Gillette's images are equal in quality to original transparencies and are accepted by stock photo agencies.  (Dkt. No. 77, Ex. 11 at 166.)  PIC itself considers these digital images to be "original" and "reproducible" just as any transparency or negative. (Dkt. No. 77, Ex. 9 at 82.)

PIC's own files show that as recently as July 2002, PIC was making active use of its Digital Directory on behalf of Gillette and, indeed, appeared to charge Gillette for doing so. (Donahue Decl., Ex. E.)

Obviously, the existence of the so-called "Digital Directory" containing high quality, reproducible digital copies of "everything that [PIC] provided to Gillette" since 1997 would decimate PIC's liquidated damages claim since prior to the making of each contract for photographic services, PIC knew that Gillette's failure to return transparencies or negatives would not cause PIC suffer any loss, thus converting the liquidated damage amount into a penalty.

After its deposition and after Gillette argued in its summary judgment that the liquidated damages clause is a penalty, in part, on the basis of PIC's unequivocal and case-dispositive testimony, PIC has sought to back-track, claiming in its most recent submission that PIC only scanned "left-over" exposures that it retained.  (Dkt. No. 117 at 12.)

PIC never produced the digital directory and at deposition, conceded that it had permitted the directory to degrade and become corrupted.  (Dkt. No. 77, Ex. 10 at 218.)  As a result of PIC's spoliation of this key evidence, Gillette cannot provide the best evidence to the jury of what exactly PIC scanned and maintained in its digital directory to, *inter alia,* disprove PIC's latest version of events.  Thus, Gillette would be severely prejudiced.

# I.   UNDER THE LAW OF THIS CIRCUIT, PIC SHOULD BE SANCTIONED FOR ITS SPOLIATION OF THE DIGITAL DIRECTORY.

"'Under settled authority, the district court has inherent power to exclude evidence that has been improperly altered or damaged by a party where necessary to prevent the non-offending side from suffering unfair prejudice.'" *Collazo-Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 28 (1st Cir. 1998) (citing *Sacramona v. Bridgestone/Firestone, Inc.,* 106 F.3d 444, 446 (1st Cir.1997).)  It is not necessary for the destruction of evidence to have been intentional or in bad faith for the imposition of a sanction because "the primary aim is remedial, at least absent willful destruction." *Trull v. Volkswagen of America, Inc.,* 187 F.3d 88, 95 (1st Cir. 1999).

"Factors to be considered in determining whether to exclude evidence as a sanction for spoliation include: 1) whether the adverse party was prejudiced by the destruction of evidence; 2) whether the prejudice can be cured; 3) the practical importance of the evidence; 4) whether the destruction was in good or bad faith, and 5) the potential for abuse if the evidence is not excluded or the party is not otherwise sanctioned." *Chapman ex rel. Estate of Chapman v. Bernard's Inc.*, 167 F.Supp.2d 406, 413 (D.Mass. 2001)( citing *McGuire v. Acufex Microsurgical, Inc.,* 175 F.R.D. 149, 156 (D.Mass.1997)).

These circumstances strongly favor the imposition of the requested sanction.

As set forth above, the fact that, beginning in 1997, PIC kept high quality digital scans of everything it provided to Gillette is dispositive of the liquidated damages claim.  Because, as of the date it entered into each transaction with Gillette, PIC knew it would suffer no loss if Gillette failed to return transparencies or negatives within 30 days, the liquidated damages clause is a penalty and thus is unenforceable.  Obviously, if Gillette had the Digital Directory in its possession, it would be in a position to demonstrate to the jury that PIC suffered no loss.  Thus, the evidence is central to one of Gillette's defenses to PIC main claim.  Without the Digital Directory, Gillette is irreparably prejudiced in this regard.  Moreover, there is no cure for the

prejudice Gillette will suffer.[1]

The potential for abuse, absent the sanction requested, has already been made manifest. PIC conceded at its deposition that it kept a high resolution digital scan of "everything" it provided to Gillette.  (Dkt. No. 77, Ex. 10 at 218-19.)  It was only after Gillette had moved for summary judgment on the basis of PIC's unequivocal testimony that PIC changed its story drastically, claiming that the only thing it scanned were "left over" exposures.  (Dkt. No. 117 at 12.)  Without the requested sanction, PIC will be free to change its story as to the contents of the Digital Directory and Gillette will be severely prejudiced in its defense.

**CONCLUSION**

For the reasons set forth herein, Gillette respectfully requests that the Court enter the following sanction: (1) that there be an instruction to the jury that, beginning in 1997, PIC kept a high resolution digital scan of every transparency or negative provided to Gillette and (2) that PIC be precluded from offering evidence or testimony to the contrary.

May 6, 2005

GELB & GELB LLP

By:___/s/Richard M. Gelb/_____
      Richard M. Gelb (BBO#188240)
      rgelb@gelbgelb.com
      Robert S. Messinger (BBO# 651396)
      rmessinger@gelbgelb.com

20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By:___/s/Patrick T. Perkins/_____
      Patrick T. Perkins (Admitted *pro hac vice*)
      David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

*Attorneys for Defendant The Gillette Company*

---

[1] Gillette has no evidence that the Digital Directory was destroyed in bad faith, but bad faith is not necessary for Gillette to prevail on this motion.  *Trull,* 187 F.3d at 95.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

I, Patrick T. Perkins, do hereby certify that on May 5 and 6, 2005, I communicated with Michael Albert, Esq., counsel of record for Plaintiff, in a good faith effort pursuant to Local Rule 7.1(a)(2) to resolve or narrow the issues raised in this motion.


By: ___/s/Patrick T. Perkins/_____
Patrick T. Perkins (Admitted *pro hac vice*)

I:\PPERKINS\GLTC\General\Motion in limine-Spoliation.doc