UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br><br>Defendant. | Civil Action No. 04-10913 WGY |
| THE GILLETTE COMPANY,<br><br>Counterclaim-Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>Counterclaim-Defendants. | |

**DEFENDANT THE GILLETTE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 7, 2005 CONTEMPT ORDER AGAINST GILLETTE**

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
  Patrick T. Perkins (Admitted *pro hac vice*)
  David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP
  Richard M. Gelb (BBO#188240)
  Robert S. Messinger (BBO#651396)
20 Custom House Street
Boston, MA 02110
Tel: (617) 345-0010
Fax: (617) 345-0009
*Attorneys for Defendant/Counterclaim-Plaintiff The Gillette Company*

Defendant The Gillette Company ("Gillette") respectfully submits this memorandum of law in support of its Motion for Reconsideration of the Court's Contempt Order Against Gillette.

## PRELIMINARY STATEMENT

Discovery in this action was a complex process, involving thousands of photographic images, thousands of pages of documents, and a multitude of witnesses. It was also characterized by significant motion practice between the parties. On one motion to compel filed by PIC – twenty pages in length and covering many subjects – Gillette was given less than four hours to respond. As a result of this compressed schedule, a lack of notice as to what PIC sought in certain document requests, and ambiguous correspondence between the parties, Gillette was confused even after an order of this Court and, regrettably, did not understand it was to search its approximately two hundred offices around the world for foreign catalogs.

When Gillette belatedly understood the required task, it took immediate and diligent action to retrieve all catalogs from 1992 to the present from all of its foreign offices worldwide. Its efforts were reasonable and substantially complied with the Court's order. Gillette regrets the delay its confusion has caused in the discovery process, but its reasonable efforts, compliance, and a lack of real harm to PIC as a result of its delay warrants vacating the Court's contempt order. Further, the contempt order may be disproportionate to the conduct the Court sought to sanction and, for this reason as well, should be vacated.

## STATEMENT OF FACTS

On October 4, 2004, PIC served its First Request for Production, which Request No. 2 sought "[a]ll documents concerning the use of images created by PIC in Gillette catalogs." (Dkt. No. 33, Ex. F at 3.) On November 3, 2004, Gillette timely responded to PIC's document requests and made several specific objections to Request No. 2 concerning catalogs. (Dkt. No.

33, Ex. M at 4.) Gillette agreed to work in good faith with PIC reasonably to narrow the scope of the request. (*Id.*)

On January 25, 2005, PIC filed a motion to compel the production of documents in response to several requests, including Request No. 2. (*Id.*) Its twenty-page motion covered many categories of documents including, *inter alia*, catalogs, marketing materials (product guides and product sheets), trade show displays, product packaging and point-of-purchase displays, privileged documents, electronic mail, PIC invoices, electronic copies of Gillette's websites, and revenue and profit information. (*Id.* at 4-19.) In these twenty pages, PIC's motion contained less than two sentences arguably pertaining to foreign catalogs.[1] Although in the normal course Gillette would have responded to the motion within fourteen (14) days, the Court telephonically ordered Gillette at 11:20 a.m. on Thursday, January 27, 2005 to respond to PIC's motion by 3:00 p.m. later that day. (Dkt. No. 35 at 1.) Gillette made an oral application to the Court requesting the weekend to file its response papers, but the Court did not respond. Seeking to cover the many issues briefed in PIC's motion, Gillette addressed catalogs generally but did not specifically address the issue of foreign catalogs in its opposition to PIC's motion to compel. (*Id.* at 2-3.)

On February 1, 2005, the Court issued an electronic order denying the majority of PIC's broad motion to compel. The Court did grant a number of PIC's requests, stating

> THE OBJECTIONS TO REQUESTS 2, 5 AND 14 ARE OVERRULED. ALL THE DOCUMENTS AGREED TO BE PRODUCED (WHETHER OR NOT AN OBJECTION HAS BEEN INTERPOSED) AS WELL AS ALL DOCUMENTS RESPONSIVE TO REQUESTS 2, 5 AND 14 SHALL BE PRODUCED WITHIN 10 DAYS OF THE DATE OF THIS ORDER.

---

[1] One sentence stated, "[l]ikewise, PIC is aware of at least one unauthorized use by Gillette of an image in a catalog outside the United States." A second clause in the motion stated, "Gillette has not produced a single foreign catalog…" (Dkt. No. 33 at 5.)

In response to the Court's order, Gillette redoubled its efforts to produce materials responsive to Request No. 2 "concerning the use of images created by PIC in Gillette catalogs."[2] On February 3, 2005, PIC sent Gillette a letter setting out in detail the documents PIC believed it was entitled to under the Court's February 1 order. PIC made no mention of foreign catalogs, and the only reference to "catalogs" pursuant to Request No. 2 was a general statement that "Gillette must produce all catalogs…" (Dkt. No. 49, Ex. 3.) Because the question of foreign catalogs was barely addressed in the parties' January briefing, and because PIC's correspondence following the Court's order nowhere mentioned foreign catalogs, Gillette did not contact its approximately two hundred worldwide offices and seek any catalog that, though impossible to determine from initial review, *could contain* an image from PIC. However, Gillette knew from discussions with its U.S. personnel that it was highly unlikely that any PIC images would appear in foreign catalogs.[3]

Days after the Court's February 11 deadline for compliance with its order, PIC ended its reticence about foreign catalogs and made repeated, detailed requests for them on February 14 and February 15 – the day before and the day it filed an emergency motion to compel compliance with the Court's original order, respectively. (Dkt. No. 49, Ex. 2.) PIC's second motion to compel covered three categories of documents and sought permission to re-depose several Gillette witnesses. In contrast to its earlier motion to compel, PIC devoted over a page and a half of its eight page motion to Gillette's failure to produce foreign catalogs. (*Id.* at 1-3.) The next day, on February 16, 2005, the Court issued an electronic order to show cause why

---

[2] These included a second search by Gillette employees of their files for Gillette catalogs or any other materials likely to contain images provided by PIC as well as any correspondence that could possibly relate to PIC. A more detailed account of these efforts was previously set forth in Docket No. 52 at 7-11.

[3] This has proven to be true as, from all the catalogs produced pursuant to the Court's order from around the world, PIC has alleged the unauthorized appearance of only three photographs in a Canadian catalog. (Dkt. No. 99, Ex. 7 at 56.)

Gillette should not be held in contempt of the Court's February 1 order, and set a hearing date of March 3, 2005.

On March 1, 2005, in its opposition to PIC's second motion, Gillette briefed the subject of foreign catalogs for the first time. Gillette acknowledged that it had not searched its approximately two hundred worldwide offices for catalogs that *could contain* a PIC image and explained that PIC's only proffered evidence that a foreign catalog *could contain* a PIC image was a photograph with Spanish-language text on it that neither party could confirm was an image from a catalog. (Dkt. No. 52 at 11-12.)

On March 3, 2005, the Court held the scheduled hearing. The Court observed that "[c]ontempt is a very serious complaint to bring. In order that there be a contempt there must be a clear and unequivocal, a contumacious disobedience of a clear and unequivocal Court order." (Dkt. No. 59 at 5.) Regarding foreign catalogs, counsel for Gillette stated that, in addition to the physical search of all files in Gillette's Boston headquarters, Gillette also discussed the relevant photograph bearing Spanish-language text – which had "grabbed" the interest of the Court – with employees in charge of the company's Latin American group. None of these employees could determine the genesis of the image, with good reason, given that it was at least six years old. (*Id.* at 6.)

The Court then stated that its February 1, 2005 order required a search "throughout catalogs generally, foreign language as well as domestic" and that it wanted an "affidavit, ten days from now from [Gillette's] house counsel that a physical search has been made of every extant and archived Gillette catalog." (*Id.* at 7, 8.) Counsel for Gillette then inquired as to how to address with the Court the burden or expense associated with searching all of Gillette's worldwide offices. The Court stated that

5

> we're beyond that. Because the time to have addressed that is when the order came out. Now, there has, in that respect I think the compliance has not been satisfactory and now I've made a further order which will vindicate the power of the Court to enter proper discovery orders, and I'm not the least bit concerned about anyone's expense now because of this dereliction to make discovery. In the normal business [sic] motions to compel, I suppose the oppositions will explain the problem and I will try to be careful in making my order.

(*Id.* at 12.) The Court issued an electronic order the same day, requiring "GILLETTE'S IN-HOUSE COUNSEL TO FILE AN AFFIDAVIT STATING THAT EVERY CATALOG OF GILLETTE'S HAS BEEN SEARCHED" and otherwise denying PIC's motion for contempt.

In compliance with the Court's order, Gillette Assistant Trademark Counsel Leon Bechet filed an affidavit on March 11, 2005. (Dkt. No. 62.) Mr. Bechet described Gillette's worldwide facilities, including manufacturing facilities in thirty-two countries and local sales representatives, retailers, and wholesalers in over two hundred countries. (*Id.* ¶ 3.) Mr. Bechet further noted that, in its hurry to respond to PIC's original motion to compel in under four hours on January 27, 2005 – and cover more than eighteen different discovery requests – Gillette did not articulate the significant burdens associated with searching Gillette's approximately two hundred offices worldwide. (*Id.* ¶ 4.) Mr. Bechet stated that, prior to the March 3 hearing, Gillette had determined through discussions with relevant U.S. personnel that it was "highly unlikely" a PIC image would have appeared in any catalog produced and distributed outside the U.S. (*Id.* ¶ 6.)

Then, in accordance with the March 3 order, Gillette immediately took action. Because it has no central repository for extant or archived catalogs, Gillette immediately contacted legal counsel in all geographic regions and obtained contact information for the relevant business personnel in each region. Gillette then sent an e-mail marked "URGENT – IMMEDIATE ACTION REQUIRED," requesting all catalogs from 1992 to the present containing images of Gillette products be sent to the company's Boston headquarters prior to the Court-ordered

6

deadline. (*Id.* ¶ 10.) Gillette then answered follow-up questions from foreign personnel and helped coordinate collection efforts. (*Id.*) Because Gillette employees could not determine whether a given catalog contained a PIC image just by looking at an image, Mr. Bechet stated he would make available to PIC all worldwide foreign catalogs received at Gillette's Boston office on Monday, March 14, 2005 – the first business day after the Court's deadline for submission of Mr. Bechet's affidavit (which fell on a Sunday). (*Id.* ¶ 11.) Mr. Bechet further stated that, in the event that foreign catalogs from any worldwide office did not arrive at Gillette's Boston office by March 14, Gillette would make such catalogs immediately available for inspection upon their arrival in Boston. (*Id.*)

On March 29, 2005, PIC filed a motion to hold Gillette in contempt of the Court's March 3 order. (Dkt. No. 64.) PIC chiefly argued that Mr. Bechet's affidavit did not comply with the letter of the Court's order. PIC also acknowledged that on March 14 and 21, it inspected foreign catalogs at Gillette's Boston office – including catalogs from Latin America, Taiwan, Benelux, Sweden, Russia, China, and Denmark – but speculated that it *should have seen* catalogs from Brazil, Colombia, and Argentina. (Dkt. No. 65 ¶¶ 2, 7; Dkt. No. 64 at 4-5.) Opposing PIC's third motion, Gillette attached another affidavit from Mr. Bechet detailing the steps his staff took to organize the foreign catalog material prior to PIC's inspection, and stating that "[a]lthough I did not personally search every location around the world, it is my understanding that all locations have been searched and that all catalogs located have been forwarded to Gillette headquarters." (Dkt. No. 69 ¶ 3, 4.)

On April 7, 2005, the Court issued an electronic order stating that

GILLETTE IS IN CONTEMPT OF THE COURT'S ORDER TO SUBMIT THE REQUISITE BECHET AFFIDAVIT.  ACCORDINGLY, IT IS SANCTIONED AS FOLLOWS: 1. WHEREVER GILLETTE HAS FAILED, AS OF THIS DATE, TO PRODUCE FOREIGN CATALOGS PUBLISHED OR DISTRIBUTED SINCE JUNE 2000, THE PLAINTIFF MAY ARGUE AN

7

ADVERSE INFERENCE THAT SUCH CATALOGS INCLUDE UNAUTHORIZED FOREIGN USES OF PIC'S IMAGES.

Gillette now brings the instant motion for reconsideration of the Court's order holding Gillette in contempt of its earlier order of March 3, 2005.

## ARGUMENT

Gillette respectfully requests the Court vacate its order of contempt. Gillette regrets its misreading of the Court's original order of February 1, 2005 and assures the Court that the timing of its production of foreign catalogs was strictly the result of compressed circumstances and inadvertence. Three persuasive reasons exist for vacating the contempt order. First, within a week of the Court's deadline for the requested Bechet affidavit, Gillette had taken all reasonable steps and substantially complied with the Court's order, and PIC was able to inspect all foreign catalogs in Gillette's possession, custody, or control. Second, PIC has experienced no significant harm or prejudice as a result of Gillette's inadvertent delay. Third, the Court's contempt order, by one reading, may prove disproportionate to the conduct the Court sought to sanction.

**I.      Standard for Reconsideration**

Pursuant to Federal Rule of Civil Procedure 54(b), federal district courts have the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment. *See, e.g. Bethlehem Steel Export Corp. v. Redondo Constr. Corp.*, 140 F.3d 319, 321 (1st Cir. 1998) (in its discretion, district court judge receiving reassigned case could grant the defendant's motion for summary judgment after previous judge had denied the motion); *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994) (noting that "[i]nterlocutory orders … remain open to trial court reconsideration").

A court may grant a motion for reconsideration where the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3)

a clear error of law in the first order. *See* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 4478 (2d ed. 2002). For the reasons discussed below, Gillette believes a clear error of law exists in the Court's contempt order that works a manifest injustice upon Gillette.

**II.     Gillette Took All Reasonable Steps And Substantially Complied With The Court's Order of March 3, 2005.**

Federal district courts have clear authority to sanction a party for discovery violations. *See* Fed. R. Civ. P. 37(b). A court's order concerning discovery matters places a party "'under a duty to make in good faith all reasonable efforts to comply.'" *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976) (quoting *United States v. Ryan*, 402 U.S. 530, 534 (1971)) (reversing contempt order). *See also Fraser v. Nationwide Mut. Ins. Co.*, 334 F. Supp. 2d 755, 762 (E.D. Pa. 2004) (denying motion for sanctions). Gillette made all reasonable efforts to comply with the Court's March 3 order and has substantially complied with that order.

By way of background, Gillette misunderstood the Court's earlier, original order of February 1. On that date, the Court ordered that all documents responsive to PIC's Request 2 (and others) shall be produced within ten days. (February 1, 2005 Electronic Order.) That request sought "[a]ll documents concerning the use of images created by PIC in Gillette catalogs." (Dkt. No. 33, Ex. F at 3.) Gillette did not interpret the request to require a physical search for foreign catalogs at its two hundred international offices for several reasons. *See* Fed. R. Civ. P. 26(b)(2)(iii). First, through discussions with its business people, Gillette had ascertained that it was highly unlikely that catalogs produced outside of the United States would contain images provided by PIC. The facts have borne out that Gillette's business people were correct. From the catalogs produced from around the world, PIC has identified only three alleged infringements in one Canadian catalog. (Dkt. No. 99, Ex. 7 at 56.)

9

Second, the issue was never truly briefed in the parties' January motion papers prior to the Court's February 1 order. Indeed, PIC devoted less than two passing sentences in a twenty-page brief to foreign catalogs, and Gillette did not separately address the issue in its opposition. (Dkt. No. 33 at 5; Dkt. No. 35 at 2-3.)

Third, Gillette had less than four hours to prepare opposition papers to PIC's original motion to compel, which covered many subjects other than foreign catalogs. Consequently, Gillette did not separately address foreign catalogs and, specifically, did not address the significant burden associated with a search of its two hundred worldwide offices for possible foreign catalogs that *might* contain a PIC image. (Dkt. No. 35 at 2-3.) Fourth, PIC's correspondence with Gillette two days after the Court's order, summarizing the documents it still sought, mentioned catalogs generally but did not mention foreign catalogs. (Dkt. No. 49, Ex. 3.)

The lack of any real focus on foreign catalogs by the parties – in the briefing before and correspondence immediately after the Court's order – as well as the compressed timetable Gillette had to respond to PIC's motion caused Gillette to misread the Court's February 1 order. Gillette did not read the order to require the search of its two hundred global offices for foreign catalogs when, after internal discussions with the business unit that worked with PIC, the company determined the likelihood of a foreign office using a PIC image was negligible.

As PIC gravitated towards foreign catalogs in its second motion to compel, Gillette openly acknowledged that it had not physically searched foreign offices, (Dkt. No. 52 at 11-12), and the March 3 hearing offered Gillette its first real opportunity to address the serious challenges it would face in seeking and retrieving possible catalogs from two hundred offices worldwide. The Court understandably stated that "[i]n the normal business [sic] motions to compel, I suppose the oppositions will explain the problem" and found the time to discuss such burdens had passed. (Dkt. No. 59 at 12.) However, Gillette did not address these burdens in its

10

opposition because it had less than four hours to draft it and had virtually no notice that PIC was seeking foreign catalogs or, more importantly, that such a request would require a search at every Gillette office worldwide.

Subsequently, Gillette took all reasonable steps and substantially complied with the Court's March 3 order. In response to the Court's order that Gillette's in-house counsel "file an affidavit stating that every catalog of Gillette's has been searched," Gillette took immediate action. Aware now that the Court's earlier order required a search for catalogs at all foreign offices, Gillette sent urgent e-mails to legal counsel for all global regions, who in turn put Gillette's headquarters in contact with business personnel for each region, who conducted searches for all Gillette catalogs with product images from 1992 to the present. (Dkt. No. 62 ¶ 10.) Gillette coordinated collection efforts for the delivery of all material by Monday, March 14, 2005 – the first business day after the filing deadline for the Court's required affidavit (which fell on a Sunday). (*Id.* ¶ 11.) Mr. Bechet filed an affidavit to this effect two days before the Court's deadline. (*Id.*) Some materials arrived a few days after March 14, but PIC acknowledges that it was able to inspect the results of Gillette's worldwide search on March 14 and 21, 2005. (Dkt. No. 65 ¶¶ 2, 7.)

Furthermore, in opposition to PIC's third motion, for contempt, Mr. Bechet filed another affidavit, closely tracking the Court's own language: "[a]lthough I did not personally search every location around the world, it is my understanding that all locations have been searched and that all catalogs located have been forwarded to Gillette headquarters." (Dkt. No. 69 ¶ 3.) Clearly the Court did not intend, at the March 3 hearing, that Mr. Bechet would personally search all Gillette offices worldwide for catalogs within the prescribed ten-day period. Mr. Bechet's March 11 affidavit details the good faith, reasonable efforts Gillette made to comply with the Court's March 3 order, and any doubt as to the literal form of Mr. Bechet's compliance

11

with that order (as suggested by PIC) was clearly resolved by his subsequent affidavit that tracks the Court's language from the March 3 hearing.

Gillette has made the "all reasonable efforts" required of it, and particularly where, as here, "a great volume of records was produced initially," the "arguable existence" of other documents "is not dispositive of the issue of whether [Gillette] made a good faith effort to comply with the court's order." *Rizzo*, 539 F.2d at 466. Discovery in a complex matter "which in this case included thousands of pages of documents and a multitude of witnesses, is a painstaking and lengthy process." *Fraser*, 334 F. Supp. 2d at 762. Where a defendant is slow in responding, this is often attributable to the "nature of the discovery process in a complex case" and does not warrant sanctions. *Id.* Gillette respectfully submits that its interpretation of the February 1 order of the Court – in light of its subsequent reasonable efforts and substantial compliance – does not rise to, in the Court's words, "contumacious disobedience of a clear and unequivocal Court order." (Dkt. No. 59 at 5.)

### III.     PIC Has Inspected All The Catalogs It Requested And Has Not Been Harmed By Gillette's Delay.

Rule 37 makes clear "that exclusion of evidence is a standard sanction for a violation" of a party's discovery obligations. *Samos Imex Corp. v. Nextel Communications Corp.*, 194 F.3d 301, 305 (1st Cir. 1999) (reversing sanction). However, "this is far from saying that the district court is obligated to exclude evidence based on such a failure when it occurs long before trial and is likely subject to correction without much harm to the opposing party." *Id.* Indeed, Rule 37 "expressly provides that sanctions should not be imposed if substantial justification exists for the failure to disclose, or if the failure to disclose was harmless." *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3rd Cir. 1995) (affirming denial of sanctions). Any delay caused by Gillette was subsequently rectified and was harmless to PIC.

As noted above, PIC requested all foreign catalogs that *could* contain a PIC image, and Gillette has produced for inspection catalogs from 1992 to the present gathered from all foreign offices. (Dkt. No. 62 ¶ 10; Dkt. No. 69 ¶ 3.) PIC has acknowledged that it inspected the requested documents on March 14 and 21, 2005. (Dkt. No. 65 ¶¶ 2, 7.) PIC has argued that, based upon a single PIC image with Spanish-language text on it (that neither party can confirm is from a Gillette catalog) and speculation about Gillette's business model, there must be catalogs from "key countries including Brazil, Colombia, and Argentina" that PIC has not seen. (Dkt. No. 64 at 4.) However, as this Court stated, "[c]ontempt is a very serious complaint to bring," and PIC's speculation and beliefs about what discovery should yield do not rise to a level of harm warranting sanctions against Gillette. (Dkt. No. 59 at 5.)

**IV.     The Court's Contempt Order May be Disproportionate to the Conduct the Court Sought to Sanction.**

Although the district court may, in its discretion, impose sanctions, the magnitude of sanctions that may be awarded is bounded by what is proportionate, or "'reasonable' in light of the circumstances." *Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1453 (11th Cir. 1985) (reversing and remanding order of sanction for more detailed record in support of sanction). *See also* 7 James WM. Moore, *Moore's Federal Practice* § 37.50[1][a] (3d ed. 2005) (noting that a "sanction is reasonable only if its character and magnitude are proportionate to the character and magnitude of the violation of the underlying discovery order…").

The Court's April 7 contempt order may unintentionally result in a disproportionate sanction. It reads:

> GILLETTE IS IN CONTEMPT OF THE COURT'S ORDER TO SUBMIT THE REQUISITE BECHET AFFIDAVIT. ACCORDINGLY, IT IS SANCTIONED AS FOLLOWS: 1. WHEREVER GILLETTE HAS FAILED, AS OF THIS DATE, TO PRODUCE FOREIGN CATALOGS PUBLISHED OR DISTRIBUTED SINCE JUNE 2000, THE PLAINTIFF MAY ARGUE AN

13

      ADVERSE INFERENCE THAT SUCH CATALOGS INCLUDE
      UNAUTHORIZED FOREIGN USES OF PIC'S IMAGES.

The order is susceptible to two meanings. The Court may have intended that, wherever PIC can demonstrate the existence of a foreign catalog (distributed since June 2000) that Gillette failed to produce as of April 7, PIC is entitled to an adverse inference that such a catalog includes unauthorized foreign uses of PIC images. Though Gillette disputes the propriety of sanctions in general (*see* Sections II. and III., *supra*), if the Court is not inclined to vacate its order, such a sanction would appear proportional to Gillette's failure to submit an affidavit to the Court's satisfaction.

      Alternatively, the Court may have intended that PIC is entitled to two adverse inferences, namely (1) that foreign catalogs exist which Gillette has not produced and, thus, PIC has not seen; and (2) that with respect to that entire universe of catalogs, PIC is entitled to an adverse inference that these unproduced and unseen catalogs contain unauthorized foreign uses of PIC images. This compound inference is clearly disproportionate to Gillette's failure to submit an affidavit to the Court's satisfaction.

      In effect, such a compound inference would allow a discovery sanction to infer the existence of catalogs that do not, in fact exist. Indeed, the sanction would prove an essential element of PIC's claims for copyright infringement. – *i.e.*, unauthorized use, based upon a single PIC image with Spanish-language text on it (that neither party can confirm is from a Gillette catalog) and its own speculation about Gillette's business model, PIC maintains that a universe of foreign catalogs exists that have yet to be produced by Gillette. (Dkt. No. 64 at 4.) PIC has not substantiated this allegation because it has no basis. Gillette has submitted affidavits confirming that all foreign offices were searched and that the results were provided to its Boston office, where PIC

reviewed these materials.  If the Court intended such a compound inference based upon PIC's allegations, it has proved up a shadowy and undefined universe of infringement claims on behalf of PIC.  This result would be grossly disproportionate to Gillette's conduct.  On this basis as well, the Court should reconsider its order of contempt.

## CONCLUSION

For the foregoing reasons, Gillette respectfully requests the Court grant its motion for reconsideration and vacate its order of contempt against Gillette.

Dated:  May 6, 2005                             FROSS ZELNICK LEHRMAN & ZISSU, P.C.


By:   /s/Patrick T. Perkins/
      Patrick T. Perkins (Admitted *pro hac vice*)
      David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP

By:    /s/Richard M. Gelb/
       Richard M. Gelb (BBO#188240)
       rgelb@gelbgelb.com
       Robert S. Messinger (BBO#651396)
       rmessinger@gelbgelb.com
20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009

*Attorneys for Defendant/Counterclaim-Plaintiff
The Gillette Company*

I:\jdeabler\Gillette - PIC\Memo - Mot. for Reconsideration (Contempt).doc