IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

       Plaintiff,

v.

THE GILLETTE COMPANY,

       Defendant.

Civil Action No. 04-CV-10913-WGY

**PIC'S OPPOSITION TO GILLETTE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE THAT THE LIQUIDATED DAMAGES CLAUSE IS INTENDED TO COMPENSATE FOR UNLICENSED USE OF PHOTOGRAPHS**

    Gillette does not claim (nor could it) that PIC's *cause of action* for non-return of its transparencies is preempted by copyright law.  Rather, Gillette seeks to preclude PIC from offering evidence at trial concerning one of the ways in which PIC was damaged by that non-return: Gillette's misuse of the non-returned transparencies, for which Gillette should have paid PIC but did not.  In essence, Gillette advances the novel argument that *presentation of evidence* at trial can be "preempted by copyright law."  This invites legal error.

    Evidence regarding the value of lost copyright licenses resulting from non-return of transparencies – which Gillette seeks to exclude here – is a factor often cited by courts in upholding the reasonableness of the industry-standard $1,500 liquidated damages provision. E.g., Baker v. Int'l Record Syndicate, Inc., 812 S.W.2d 53, 55 (Tex. App. 1991) (reversing judgment that had held $1,500 liquidated damages figure unenforceable where photographer testified that he could sell prints of a photograph three times for $500 each).

Because liquidated damages clauses are at their most enforceable when damages are "difficult to ascertain," Kelly v. Marx, 705 N.E. 2d 1114, 1116 (Mass. 1999), evidence of potential lost licensing fees is relevant even when such damages are speculative. See Sharpshooters, Inc. v. McCaffrey, Case No. 88-1102 (S.D. Fla. Mar. 27, 1989) (unpublished, attached hereto as Exhibit 1) ("Although the lost transparencies in this case had very little prior sales history, they were with a young stock house and it is not unusual for a transparency to sit around for years before it is matched up with some advertising program that utilizes it.").

*A fortiori*, where the plaintiff has evidence that misuse by the defendant – which should have resulted in additional payment to the plaintiff – *actually occurred*, that evidence reinforces the reasonableness of the liquidated damages provision, which is intended in part to address photographer's *ex ante* fears that clients who retain film may misuse it. (Sedlik Report at 14-15).

> Levine misrepresented to Cook the number of proposed projects for which he initially planned to use her slides. In addition, he gave Global Adventures the slides and Global Adventures in turn caused the slides to be used in an unauthorized manner in the Fletcher Jones commercials. Defendants deprived plaintiff of possession of 47 of her slides from August, 1998 until June, 1991 without any payment whatsoever for their use, authorized or unauthorized, or for their continued possession. In addition, defendants lost six of plaintiff's slides … The court finds defendant's actions and omissions to be willful and wanton, resulting in tortious injury to plaintiffs.

Cook v. Levine, Civil Action No. 89-00660 at 12-13 (D. Haw. Oct. 9, 1991) (unpublished, attached hereto as Exhibit 2) (awarding $1,500 liquidated damages per transparency, as well as punitive damages, where defendant made unauthorized uses of non-returned transparencies without payment).[1]

---

[1] Gillette's conduct in this case closely parallels that of the defendant in Cook v. Levine – including, *inter alia*, misrepresentations to PIC regarding the uses it would make of PIC's film, unauthorized transfer of film to third parties around the world for their use, refusal to return transparencies, and failure to implement even the most basic safeguards to prevent outright loss of thousands of transparencies that are PIC's valuable property.

Undisputed testimony in this case establishes that one of the many reasons why Gillette was required to return PIC's film upon demand was to provide PIC with a mechanism for policing and preventing the misuse of its images. (2/10/05 Picone Depo. at 52-53). This concern proved prescient. Because Gillette has lost or given away to third parties thousands of PIC's transparencies and refused to return thousands of others, PIC has been unable to control the use of these images. This is one of the consequences the return requirement was intended to prevent.

Gillette's motion conflates the right to obtain return of a physical *object* with copyright rights prohibiting the copying or distribution of *images* identical or substantially similar to those created by the copyright owner. Gillette cites no authority for its conclusion that presentation of PIC's *evidence* of misuse (which translates into loss by PIC) is "preempted" by copyright law.

Many courts, in assessing the reasonableness of a liquidated damages clause, have looked to a number of factors as *proxies* for a direct calculation of the value of the missing items. As explained above, one such proxy is often the likely (or actual) cost of a license to use the copyrighted work embodied in the article. Numerous other factors, such as the cost of recreating a photographic image from scratch, or the value of the image for relicensing as stock photography (among others), can also serve as proxies for the determination of the reasonableness of the contractual amount allocated to the missing item.

This list of factors is, of course, not the same as a cause of action for violation of rights protected by the Copyright Act and thus is not subject to preemption, as every court considering this issue has concluded. E.g., Bair v. Axiom Design, LLC, 20 P.3d 388, 389 n.1 (Utah 2001) (reversing dismissal of breach of contract claim for failure to return transparencies); Baker, 812 S.W.2d 53 (cited supra). Wolff v. IEEE, Inc., 768 F. Supp. 66 (S.D.N.Y. 1991) (granting plaintiff's motion for summary judgment on liquidated damages claim for failure to return photographs); Cook (cited supra); Sharpshooters (cited supra).

Finally, as with most of Gillette's nine (9) pre-trial motions filed to exclude relevant evidence in this case, this motion seeks a "second bite at the apple" to obtain summary judgment on an issue well after the deadline for such motions. Gillette has been on notice of PIC's support for the reasonableness of the liquidated damages amount since long before the deadline for dispositive motions, and could have sought summary judgment on this ground by the Court-ordered deadline.

Gillette's motion should be denied.[2]

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS CORPORATION,

By its counsel,

Dated: May 13, 2005

/s/ Michael A. Albert
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO #646990
mrader@wolfgreenfield.com
Adam J. Kessel, BBO #661211
akessel@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

---

[2] Gillette does not argue, nor can it, that evidence of its misuse of PIC's images should not be admitted for other purposes, such as to demonstrate Gillette's copyright infringement, breach of the temporal and geographic limitations on use in the license, fraud and unfair and deceptive trade practices.

- 4 -