IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JAN COOK dba STOCK PHOTOS )   Civil No. 89-00660 HMF
HAWAII,                    )
                           )
                           )
        Plaintiff,         )
                           )                FILED IN THE
   vs.                     )         UNITED STATES DISTRICT COURT
                           )              DISTRICT OF HAWAII
LARRY LEVINE, GLOBAL       )
ADVENTURES, TRAVEL CLUB    )                 OCT 0 9 1991
INTERNATIONAL OF NEVADA, INC. )
                           )        at __ o'clock and __ min. __M.
        Defendants.        )          WALTER A. Y. H. CHINN, CLERK
_____)

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT

#### INTRODUCTION

On September 24, 1991, the court held a bench trial in the above-captioned case. Ronald F. Movrich appeared on behalf of plaintiff and defendants failed to appear.

Plaintiff filed her complaint in the instant case on August 23, 1989. The complaint alleged breach of contract, tortious breach of contract, conversion, fraud, unfair and deceptive trade practices, negligent and/or intentional infliction of emotional distress, and wilful or grossly negligent misconduct against defendants jointly and severally for their interactions with plaintiff's stock photo business.

Plaintiff filed a motion for summary judgment on April 4, 1991 which this court denied in its order filed June 28, 1991, finding that a genuine issue of material fact existed as to the terms and scope of the agreement between the parties. Defendants' September 18, 1989 motion to transfer the case to the United States District Court for the District of Nevada was earlier denied by this court.

Jurisdiction in the instant case is based upon diversity of citizenship under 28 U.S.C. § 1332 (a).

## FINDINGS OF FACT

1. Plaintiff Jan Cook (Cook) is the sole proprietor of Stock Photos Hawaii. Her business has a large collection of slides of all aspects of Hawaii life, culture and scenery. The majority of Cook's slides are original transparencies of photographs because only originals can be reproduced to the quality expected among Cook's clientele. Many of these slides are from prominent Hawaiian professional photographers whom she represents. (Testimony of plaintiff).

2. Cook works primarily with advertising agencies to produce print advertisements, brochures, and other promotional material. (Testimony of plaintiff).

3. Defendant Travel Club International of Nevada, Inc. (Travel Club) was organized sometime before August, 1988. Defendant was the President, Secretary and Treasurer of the corporation. Travel Club was a tele-marketing venture that sold memberships for discounted travel. (Deposition testimony of Levine).[1]

4. Defendant Global Adventures, a Nevada corporation, was organized in or about August, 1988. Defendant Levine was the President and Treasurer of Global Adventures and Ron Macko was the

---

[1] All cited deposition testimony of defendant Levine refers to the July 26, 1991 deposition taken of Levine in Las Vegas, Nevada. The deposition was admitted into evidence in its entirety as plaintiff's exhibit M.

2

Vice-President and Secretary. Global Adventures was formed to sell discounted travel club packages using similar techniques as Travel Club but without the use of tele-marketing. (Deposition testimony of Levine).

5. On or about August 5, 1988, defendant Larry Levine (Levine) telephoned Cook. Levine said he was the President of Travel Club and that he had seen some of Cook's photographs in a Sheraton Hotel brochure and had tracked her down through calling Sheraton's advertising agency in Hawaii. (Testimony of plaintiff; deposition testimony of Levine).

6. Levine told Cook that he was working on putting together a printed travel brochure/certificate and described certain photographs he wanted of Hawaii scenes. (Testimony of plaintiff; deposition testimony of Levine).

7. The final product was to be a travel certificate which could be redeemed for discount travel. The certificate would display a Hawaii photograph. (Deposition testimony of Levine).

8. Levine and Cook discussed what Cook would charge for this project. The only use Levine proposed for Cook's slides was for one-time rights to reproduce one photograph inside Levine's 8.5" x 11" travel brochure/certificate with a press run of 10,000. Cook agreed to this limited use and indicated that the charge would be $250.00. Levine agreed with the price and terms and asked Cook to send him a selection of slides. (Testimony of plaintiff; deposition testimony of Levine).

3

9. Because Levine was a potential new customer, Cook went over the terms of her standard Stock Picture Delivery Agreement with him. Levine voiced no objections to this agreement. (Testimony of plaintiff).

10. Levine instructed Cook to send him a selection of slides via Federal Express and provided her with his Federal Express account number in order for her to charge the shipping costs to him directly. (Testimony of plaintiff; deposition testimony of Levine).

11. On the same day, August 5, 1988, Cook shipped twenty-five (25) 35 mm. slides to Levine in Nevada via Federal Express and charged the shipping costs to Levine's account number. (Testimony of plaintiff; plaintiff's exhibit A).

12. On or about August 8, 1988, Levine again telephoned Cook in Honolulu and said that he had received the 25 slides Cook had sent and that they were exactly what he needed. Levine said that now that he had seen the high quality of Cook's slides, he would like Cook to send additional slides of other Hawaii subjects. Levine indicated that these slides would be used for additional Hawaii pictures in a travel brochure/certificate. (Testimony of plaintiff; deposition testimony of Levine).

13. Levine again agreed to pay $250.00 for each photograph he would use and stated that the brochure/certificate would be limited to a press run of 10,000 copies. (Testimony of plaintiff).

14. Plaintiff sent 22 additional slides to Levine on August 8, 1988, again via Federal Express and charged to Levine's account number. (Testimony of plaintiff; plaintiff's exhibit D).

15. Cook included a photocopy of all slides sent to Levine in both slide shipments. (Testimony of plaintiff; plaintiff's exhibits C and F).

16. Cook also sent a copy of her standard Stock Picture Delivery Agreement along with both slide shipments, pursuant to an agreement with Levine reached during their first telephone conversation. (Testimony of plaintiff; plaintiff's exhibits B and E).

17. Defendant Levine received both shipments of slides and at least one copy of the Stock Picture Delivery Agreement. (Deposition testimony of Levine).

18. Levine never objected to any of the terms and conditions of the Stock Picture Delivery Agreement nor to the quality of the slides. (Testimony of plaintiff; deposition testimony of Levine).

19. Cook's Stock Picture Delivery Agreement contained, in pertinent part, the following provisions:

TERMS OF DELIVERY

1. After 14 days the following holding fees are charged until return: $5.00 per week per color transparency.

2. Submission is for examination only. Photographs may not be reproduced, copied, projected, or used in any way without express written permission from the photographer on our invoice stating the rights granted and the terms thereof and payment of said invoice.

3. Submission is conditioned on return of all delivered items safely, undamaged and in the condition delivered. Recipient assumes insurer's liability for such return

prepaid and fully insured by bonded messenger, air freight or registered mail. Recipient assumes full liability for its employees, agents, assigns, messengers and freelance researchers for any loss, damage or misuse of the photographs.

4. Reimbursement for loss or damage shall be determined by photograph's value which recipient agrees shall be not less than a reasonable minimum of $1,500.00 for each transparency.

. . .

7. Time is of the essence for receipt of payment and return of photographs. No rights are granted until payment is made....

8. Objection to above terms must be made in writing within ten (10) days of the agreement's receipt. Holding material constitutes acceptance of above terms.

(Plaintiff's exhibits B and E).

20. The "use consideration" portion of the August 5, 1988 Stock Picture Delivery Agreement stated as follows: "FOR USE @ 8 1/4 x 6" IN 8 1/2 x 11 TRAVEL BROCHURE/PRESS RUN 10,000." The "use fee" portion states as follows: "ONE TIME USE $250.00" with "postcard?" handwritten underneath. The August 8, 1988 agreement states "SAME AS FIRST SUBMISSION" in both of the corresponding portions of the agreement. (Plaintiff's exhibits B and E).

21. Cook's Stock Picture Delivery Agreement is essentially identical to a standard "delivery memo" contained in <u>Professional Business Practices in Photography</u> (4th ed.), a compilation published by the American Society of Magazine Photographers, a professional association of which plaintiff is a member. (Testimony of plaintiff; plaintiff's exhibit O).

22. From early September, 1988 until early August, 1989, Cook attempted to contact Levine by telephone and by both certified and

express mail in order to determine the status of her slides and demand their return. Only one of plaintiff's phone calls was returned, her letters were not answered and her slides were not returned. In her letters, Cook reiterated relevant terms of the Stock Picture Delivery Agreement, including the requirements for payment of usage and holding fees. (Testimony of plaintiff; plaintiff's exhibit G, H, I, Q, R).

23. On or about September 29, 1988, Levine left a message on Cook's answering machine stating that he would be finished with her slides within one week and would return all the slides along with a check for usage fees. However, Levine failed both to return the slides and to render usage or holding fees. (Testimony of plaintiff).

24. Plaintiff filed the instant action on August 23, 1989. (Complaint).

25. On January 3, 1990, Levine wrote a letter to plaintiff's attorney, Mr. Movrich, in which he stated as follows: "We are now in a position to restore the personal property to your client which is the subject of this litigation." (Plaintiff's exhibit J).

26. The slides were still not returned and no payment was rendered. (Testimony of plaintiff).

27. Levine's letter to Mr. Movrich was not written on company letterhead and was signed by Levine as an individual, not as an officer of either of defendant corporations. (Plaintiff's exhibit J).

28. Travel Club ceased to exist as of about February, 1989. (Deposition testimony of Levine).

29. Defendant Levine has not been associated with Global Adventures for over two years and is unsure if it continues to exist. (Deposition transcript of Levine).

30. Although Levine originally contacted Cook in his capacity as President of defendant Travel Club in order to print travel certificates for Hawaiian vacations, he later turned the slides over to defendant Global Adventures for two similar projects; Global Adventures ultimately completed one certificate and the other projects were never completed. Global Adventures's certificate used several of Cook's photographs. (Deposition testimony of Levine).

31. Global Adventures sold approximately 2,000 travel certificates to Fletcher Jones Chevrolet (Fletcher Jones), an automobile dealership, to be given away to its customers. In two television commercials for the give-away, Fletcher Jones used photographs from the selection that Cook had sent to Levine. Fletcher Jones received the slides through an employee of Global Adventures. (Deposition testimony of Levine).

32. One of the Fletcher Jones commercials listed Global Adventures in the credits. (Testimony of plaintiff).

33. Cliff Peters, a Hawaii photographer familiar with Cook's photographs, saw a Fletcher Jones commercial while on a trip to Las Vegas and recognized photographs in the commercial as ones

contained in Cook's stock photograph collection. Mr. Peters informed Cook of the commercial. (Testimony of plaintiff).

34. Cook was eventually able to obtain a videotape of the Fletcher Jones commercials from a Las Vegas television station through the services of a private investigator; she viewed the videotape on or about March 23, 1991. Cook was able to identify the photographs in the two commercials as being among the selection she had sent to Levine. One of the commercials used three of Cook's photographs while the other used six of Cook's photographs. Each commercial was thirty seconds long. (Testimony of plaintiff).

35. Levine never requested nor received approval from Cook for any use other than the original Travel Club brochure/certificate. (Testimony of plaintiff; deposition testimony of Levine).

36. Upon learning of the unauthorized use of her slides, Cook was shocked and surprised. She continued in her attempts to contact Levine. Cook reached Levine on the phone sometime in 1989 and inquired as to any unauthorized use of her slides. Levine awkwardly responded with only evasive answers. (Testimony of plaintiff).

37. Levine gave 41 of Cook's slides to Mark Gibbons to deliver to Cook on an up-coming trip to Hawaii. (Deposition testimony of Levine).

38. The 41 slides were delivered to plaintiff on or about June 19, 1991, along with several duplicates of Cook's slides and one slide not belonging to Cook. (Testimony of plaintiff).

39. Six of plaintiff's slides have yet to be returned. (Testimony of plaintiff).

40. Plaintiff has suffered insomnia, loss of weight, stomach problems, anxiety and tension resulting from defendant's failures to return her slides and pay the remuneration owed her. (Testimony of plaintiff).

41. These findings of fact shall operate as conclusions of law in all applicable instances.

## CONCLUSIONS OF LAW

1. The court may pierce a corporate veil and impose liability on individuals to prevent fraud or to achieve equity. Kahili, Inc. v. Yamamoto, 54 Haw. 267 (1973).

2. Levine served as the sole officer of Travel Club and was one of two officers of Global Adventures.

3. Levine obtained possession of plaintiff's slides as a representative of Travel Club and then turned the slides over to Global Adventures. Additionally, Levine admitted possession of the slides after Travel Club was out of business and he was no longer associated with Global Adventures and made such admission in his personal capacity.

4. Thus, in order to prevent injustice and to achieve equity, the court pierces the corporate veils of both Travel Club and Global Adventures and holds Levine individually liable for his actions.

5. Plaintiff and defendants entered into a binding contract as evidenced by their conversations, actions and agreements.

10

Plaintiff's Stock Picture Delivery Agreement evidences the terms of said contractual agreements. At no time did defendants object to the terms of these agreements. Thus, there was a meeting of the minds on all essential terms or elements, and a binding contract was created. Malani v. Clapp, 56 Haw. 507 (1975). Although plaintiff performed her part of the bargain, defendants jointly and severally failed to perform and their failure to perform was neither justified nor excused.

6. Among the terms in the Stock Picture Delivery Agreement is a provision for payment of at least a "reasonable minimum of $1,500.00" for each lost slide.

7. Under Hawaii law, liquidated damages clauses will be upheld if at the time the contract is made the injury due to breach would be difficult to estimate and the liquidated damages clause is a reasonable preestimate of the damage that would be caused by a breach. In re Holiday Mart, Inc., 9 B.R. 99 (1981) (applying Hawaii law).

8. Because of the nature of the stock photo business, the value of slides is intrinsically difficult to estimate and the liquidated damages clause of $1,500.00 is a reasonable preestimate of damage. This reasonableness is further evidenced by the identical industry-wide standards of the American Society of Magazine Photographers. See also Sharpshooters v. McCaffrey & McCall, No. 88-1102 (D.C. Miami 1988).

9. Defendants have lost six (6) slides belonging to plaintiff. Under the terms of the above agreements, damages for such loss totals $9,000.00 (6 x $1,500.00).

10. The agreements entered into described above also call for holding fees. Holding fees computed from the date defendants received Cook's slides through the date of trial for 41 slides and from the date defendants received Cook's slides through the date the majority of the slides were returned for 6 slides (at which time these six slides were deemed lost) amount to $34,435.00.

11. Defendants, jointly and severally, are thus liable to Cook for lost slides ($9,000.00) and holding fees ($34,435.00) totalling $43,435.00.

12. Under Haw. Rev. Stat. § 607-14, in all actions in the nature of assumpsit the losing party shall pay reasonable attorneys' fees to the prevailing party. Plaintiff's action is in the nature of assumpsit and therefore, pursuant to Haw. Rev. Stat. § 607-14, the court awards plaintiff attorneys' fees to be paid by defendants, jointly and severally, in the amount of $1,710.88.

13. Under Hawaii law, when a contract is breached in a wanton or reckless manner, resulting in tortious injury, the aggrieved person is entitled to recover in tort in addition to recovering in contract for out-of-pocket losses. Dold v. Outrigger Hotel, 54 Haw. 18 (1972).

14. Levine misrepresented to Cook the number of proposed projects for which he initially planned to use her slides. In addition, he gave Global Adventures the slides and Global

Adventures in turn caused the slides to be used in an unauthorized manner in the Fletcher Jones commercials. Defendants deprived plaintiff of possession of 47 of her slides from August, 1988 until June, 1991 without any payment whatsoever for their use, authorized or unauthorized, or for their continued possession. In addition, defendants lost six of plaintiff's slides and Levine tried to substitute false or duplicate slides for these lost slides. The court finds defendants' actions and omissions to be wilful and wanton, resulting in tortious injury to plaintiff, and thus awards the sum of $43,435.00 to plaintiff for tortious breach of contract.

15. One in possession of a chattel as bailee or otherwise, who, on demand, refuses without proper qualification to surrender it to another entitled to its immediate possession is subject to liability for conversion. Restatement (Second) Torts, § 237.2. Moreover, one who is authorized to make a particular use of a chattel, and uses it in a manner exceeding the authorization, is subject to liability for conversion. Restatement (Second) Torts, § 228.

16. In Hawaii punitive damages may be awarded if "the wrongdoer has acted wantonly, oppressively, or with such malice as implies spirit of mischief or criminal indifference to civil obligations, or where there has been such wilful misconduct or entire want of care as would raise presumption of conscious indifference to consequences." Man v. Raymark Industries, 728 F. Supp. 1461, 1464 (D. Haw. 1989). Punitive damages are to be based upon "the degree of malice, oppression or gross negligence which

forms the basis for the award and the amount of money required to punish the defendant, considering his financial condition." <u>Id.</u> at 1465.

17. Defendants held Cook's slides after she repeatedly made demands by telephone and by mail for their return.

18. Defendants repeatedly lied to plaintiff by telling her that they would send her slides back to her along with usage fees and let the slides be put to unauthorized use in television commercials.

19. Defendants failed to return plaintiff's slides for almost three years, and ultimately attempted to "pass" false or duplicate slides for several of plaintiff's lost slides.

20. Defendants' lies and evasions, failure to return Cook's property, and unauthorized use of Cook's slides constitute conversion. In addition, their actions amount to wanton and oppressive behavior aw well as an entire want of care raising the presumption of a conscious indifference to consequences. Further, such wilful and wanton behavior deprived plaintiff of potential income from the slides held by defendants. Thus, defendants, jointly and severally, are liable to plaintiff for punitive damages in the amount of $75,000.00.

21. Therefore, the court awards plaintiff a total of $163,580.88 in damages ($43,435.00 contract damages, $1,710.88 attorneys' fees, $43,435.00 for tortious breach of contract and $75,000.00 in punitive damages for conversion) to be paid by defendants who are deemed jointly and severally liable.

22. These conclusions of law shall operate as findings of fact in all applicable instances.

23. Accordingly, judgment is entered in favor of plaintiff and against the defendants, jointly and severally, in all respects.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, _____OCT 9 1991_____

_____
UNITED STATES DISTRICT JUDGE

JAN COOK dba STOCK PHOTOS HAWAII v. LARRY LEVINE, GLOBAL ADVENTURES, TRAVEL CLUB INTERNATIONAL OF NEVADA, INC.
Civil No. 89-00660 HMF
FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT

15

AO 450 (Rev. 5/85) Judgment in a Civil Case

# United States District Court

DISTRICT OF __Hawaii__

JAN COOK, etc.,             JUDGMENT IN A CIVIL CASE

V.

LARRY LEVINE, et al.,

CASE NUMBER: 89-00660 HMF

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

that Judgment is entered in favor of Plaintiff and against Defendants, jointly and severally in all respects, for a total of $163,580.88 in damages ($43,435.00 contract damages, $1,710.88 attorneys' fees, $43,435.00 for tortious breach of contract and $75,000.00 in punitive damages for conversion).

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 11 1991

WALTER A.Y.H. CHINN, CLERK

cc: all counsel

OCT 1 1 1991

Date                           Clerk

(By) Deputy Clerk