IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>       Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY,<br><br>       Defendant. | Civil Action No. 04-CV-10913-WGY |

**PIC'S OPPOSITION TO GILLETTE'S MOTION TO EXCLUDE
EVIDENCE BARRED UNDER THE PAROL EVIDENCE RULE
AND THE DOCTRINE OF JUDICIAL ADMISSIONS**

In an attempt to hide damaging facts, Gillette moves to exclude evidence relating to (1) discussions between Mr. Picone and Gillette at the outset of their relationship; and (2) the meaning of certain terms in the commercial photography industry. The motion should be denied.

**Early Discussions Between Mr. Picone and Gillette Representative Nadine Romano**

Gillette seeks to exclude testimony and evidence of conversations that Mr. Picone had with Gillette's representative Nadine Romano around the time of PIC's first job for Gillette in 1992. Gillette's argument that such conversations are barred by the parol evidence rule misses the importance of the conversations, which demonstrate that Gillette was aware of PIC's Terms and Conditions from the beginning of the parties' relationship. This is extremely relevant to showing that Gillette (1) knew it was entering a binding agreement by hiring PIC to perform photography services through which it would provide Gillette with photographic transparencies; and (2) knew the terms of that agreement. It also will (3) impeach more recent testimony by Gillette employees that Gillette had no idea it was entering into contracts with PIC when it received, reviewed, signed and failed to object to PIC's invoices that contained the same Terms and Conditions Gillette carefully examined in 1992.

None of these evidentiary uses is in any way implicated by the parol evidence rule. Indeed, it is well established in Massachusetts law that the parol evidence rule does not bar the admission of evidence as to *whether* a written contract binds the parties. See e.g., Johnston v. Holiday Inns, Inc., 565 F.2d 790 (1st Cir. 1977); Ryder v. Williams, 558 N.E. 2d 1134 (Mass. App. Ct. 1990).

The conversations that Gillette seeks to exclude also reflect the parties' intent to extend the 30-day limit on the return period – something that happened anyway when PIC elected to treat Gillette's retention of its property beyond 30 days as an extension of the bailment.

> [I]f at the expiration of the appointed time the bailee does not redeliver the property or excuse his or her failure to do so, or deny the bailor's right to possession of it, the bailment does not necessarily end. ***Though the bailor has the right to resume possession, he or she may consider the bailment as continued or renewed.***

8A Am. Jur. 2d Bailments § 202 (emphasis added). Accord Bibby's Refrigeration, Heating & Air Conditioning, Inc. v. Salisbury, 603 A.2d 726, 728 (R.I. 1992) ("If at the expiration of the bailment the bailee does not redeliver the property or excuse the failure to do so, the bailor may elect to treat the bailee's retention of the property as a continuation of the original agreement or to treat the contract as ended and pursue a remedy for breach of contract or in tort.").

In other words, the conversations in question are not offered for the purpose, as Gillette suggests, of "altering" the parties' contracts – but rather to simply confirm that the parties' understanding that what would happen in the future was consistent with the default legal rule of bailments. At Gillette's request, Mr. Picone indicated his intention to consider the bailment "continued or renewed" when Gillette did not return PIC's transparencies at the end of the 30-day period. Evidence that Gillette understood (and in fact requested) this extension is not in any way prohibited by the parol evidence rule.

Gillette's next argument, that PIC is barred by the "doctrine of judicial admissions" from arguing that Gillette's custody of its images was extended past the thirty-day period borders on

- 2 -

the frivolous. PIC is not required to lay out the entire proof of its case in its complaint. In the case cited by Gillette, Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc., 976 F.2d 58 (1st Cir. 1992), the plaintiff alleged an operative contract in its complaint, then argued (in an effort to avoid summary judgment) that the contract had been terminated. Id. at 61-62. PIC has always maintained that its invoices constitute the parties' contracts.

### The Meaning of the Terms "Reproduction" and "Duplication"

Based on the parol evidence rule, Gillette also seeks to exclude testimony relating to the meaning of the terms "reproduction" and "duplication." Yet the parol evidence rule is inapplicable here – PIC is offering evidence concerning the customary usage of these terms in the industry, *not* of any prior or contemporaneous negotiations.

In any case, Gillette misses the point of PIC's argument. Gillette was granted a limited license to reproduce PIC's images for a particular, licensed purpose – for example, in a catalog or a trade show display. This limitation appeared on the face of the invoice.

Gillette was, necessarily, permitted to make copies of the images as needed for that licensed purpose. (Thus, for example, an intermediate copy could be made if necessary to a vendor's printing process for a catalog.) Gillette did *not*, however, have wholesale permission to make secondary, high-quality copies of PIC's images from which additional copies could be made (known in the industry as "duplication"). Gillette nevertheless did so, and (among other misuses) distributed those duplicates within the company and to third parties around the country and the world.

Gillette incorrectly asserts that PIC is suggesting an ambiguity in the contract. To the contrary, the contract contains industry-standard terms used by thousands of photographers around the country and is unambiguous within the photography industry. (Ex. 11 to Docket #77 at 11-12). The correct meaning should be given to terms of art such as "reproduction" and "duplication" in this industry-specific contract. Gillette should not be permitted to keep the Court or the jury in the dark by excluding evidence of industry usage of such terms.

Gillette's attempt to twist language from PIC's complaint into a "judicial admission" that there is no distinction between "reproduction" and "duplication" is also baseless. Neither excerpt cited by Gillette remotely suggests an admission by PIC that Gillette was licensed to make reproduction-grade duplicates unnecessary to accomplishing the particular purposes for which Gillette was licensed.

### The Meaning of the Term "Publication"

Gillette's reliance on the parol evidence rule to exclude evidence from PIC's photography expert Mr. Sedlik about the meaning of the term "publication" in the photography industry is similarly misplaced because, once again, the parol evidence rule is not implicated.

PIC is confused by Gillette's approach for a second reason. Gillette cites Section 101 of the Copyright Act, which includes the following definition of "publication": "The offering to distribute copies … to a group of persons for purposes of further distribution." This is the *same definition* that PIC cited in its opening summary judgment brief on liquidated damages (at 6), and it is consistent with the explanation of PIC's photography expert Jeff Sedlik that "publication" of a photograph occurs when it is provided to the client for further distribution. (Id.). That is also the way that Mr. Picone, who has been in business for over 30 years, uses the term. (2/10/05 Picone Depo. at 40) ("Q: Now, what did you understand 'first publication' to mean? A: That's when I would have turned the material over to the client.").

The case law is consistent – transmission of a copyrighted work to an entity that would later distribute the work publicly is held to be "publication." See e.g., Advisers, Inc. v. Wiesen-Hart, Inc., 238 F.2d 706 (6th Cir. 1956); Bagdadi v. Nazar, 84 F.3d 1194 (9th Cir. 1996); see also Hirshon v. United Artists Corp., 243 F.2d 640 (D.C. Cir. 1957) ("What constitutes publication, so as to validate or invalidate a copyright, must be determined, therefore, in each case by considering its facts in the light of the policy of the Copyright Act.").

Gillette presents no authority to suggest that evidence like that proffered by PIC is inadmissible, whether under the parol evidence rule or any other rule of evidence.

Gillette's motion should accordingly be denied.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS CORPORATION,

By its counsel,

Dated: May 13, 2005

/s/ Michael A. Albert
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO #646990
mrader@wolfgreenfield.com
Adam J. Kessel, BBO #661211
akessel@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000