IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>       Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY,<br><br>       Defendant. | Civil Action No. 04-CV-10913-WGY |

**PIC'S OPPOSITION TO GILLETTE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE ON WHICH PIC'S 30(b)(6) WITNESS COULD NOT TESTIFY**

Gillette has never before indicated any dissatisfaction with PIC's lengthy and far-reaching Rule 30(b)(6) deposition. If Gillette felt that there remained any unanswered questions after PIC's second day of testimony, it could have contacted PIC through counsel and expressed such concern. If it failed to get satisfaction, Gillette could have moved to compel PIC to produce an additional witness, or to better prepare Mr. Picone, to answer the three questions it now raises.

Gillette, however, never raised the issue. Quite to the contrary, despite having argued prior to Mr. Picone's second day of deposition that more than one additional day would be warranted, Gillette ended the deposition by specifically declining to hold it open: "I'm going to *terminate* the deposition at this point." (3/24/05 Picone Depo. at 294) (emphasis added). That statement came at 6:30 pm, after a very full day of questioning. (Id.).[1]

In essence, Gillette is requesting a sanction after having indicated quite clearly that there was no issue. In any event, more importantly, Gillette's argument that Mr. Picone was incompetent in answering the three questions addressed in its motion is completely unjustified.

---

[1] It was preceded just a few minutes earlier by Gillette's counsel commenting, "Believe it or not, I'm almost done. I just want to take a break for a few minutes." (Id. at 291).

**Use of a Copyright Notice**

First, Gillette's claim that Mr. Picone "refused" to answer questions about "proper use of copyright notice" (a requirement of the parties' contracts) is wrong. Gillette quotes one line out of Mr. Picone's transcript where he explains his reluctance to discuss "legalese." Immediately thereafter, however, Mr. Picone *did* most certainly explain his own understanding of the copyright notice requirement at length. The transcript speaks for itself:

> Q. Well, what did you understand it to mean when you presented this invoice to Gillette?
>
> A. That was all my images, everything that I shoot is copyrighted by me. It's standard procedure, standard practice in my industry that if you shoot it you own it unless you relinquish the rights to it. * * *
>
> Q. What's a copyright notice? * * *
>
> A. My best understanding of copyright notice is that it's, again, my images are my property. They're copyrighted, they can't be reproduced. In some cases they should be identified as my property as me being the originator of the image.
>
> Q. In which cases should they be identified as your property? * * *
>
> A. Everything should be identified as -- if I originated it, it should be identified as my original image.
>
> Q. Does it say that anywhere on this invoice? * * *
>
> A. That to me is my interpretation of what a copyright notice is. I may be incorrect. I'm not, you know, privy – I'm not a lawyer. I don't understand all the legal terms and how they're tied to -- how they're used.
>
> Q. You've made a claim, however, that Gillette has violated this provision of the agreement; isn't that right?
>
> A. If -- yes.
>
> Q. What's the violation?
>
> A. Not identifying the images.
>
> Q. Identifying them how?
>
> A. As generated by Paul Kevin Picone, PIC Corp., which is our copyrighted identification.
>
> Q. And is it your testimony that paragraph 9 of the back of the invoice requires that of Gillette?
>
> A. Yes.

(Ex. 9 to Docket #77 at 55-58).

**Copyright Registration Deposits**

Gillette's second argument is that PIC should be barred from introducing evidence that Gillette infringed three of its copyright registrations because Mr. Picone was unable to identify the registered images simply by looking at the registration certificates. The fact that PIC's principal could not recall which images corresponded to which certificates at his deposition is not surprising, let alone sanctionable. A Rule 30(b)(6) deposition "is not designed to be a memory contest." EEOC v. Am. Int'l Group, 1994 WL 376052 at *3 (S.D.N.Y. July 18, 1994). If Mr. Picone had been permitted to review PIC's full copyright records in the deposition, he would of course have been able to identify the images in question.

Gillette ascribes great significance (in this and other duplicative motions) to the fact that the image deposits which accompanied three of PIC's copyright registrations were inadvertently not photocopied during discovery. As explained in PIC's summary judgment reply brief (Docket #130 at 15), both the registrations *and* the deposits *were* produced for inspection. Gillette elected to receive copies rather than to inspect. The registrations were Bates Numbered, photocopied and provided to Gillette early in discovery. The same procedure was followed for the three deposits in question as soon as PIC became aware that they were not copied earlier.

Gillette only made PIC aware of this fact at Mr. Picone's March 24, 2005 deposition. Prior to that time, Gillette kept the information to itself, presumably to bolster the summary judgment motion and motions *in limine* that it planned to file based on the clerical error. Once again, if Gillette felt it important to question PIC's Rule 30(b)(6) witness about the deposits in question (which were provided to Gillette promptly after the deposition) it could simply have asked. Instead, Gillette emerged from behind the sandbag with this motion in hand.[2]

---

[2] Ironically, Gillette produced additional documents to PIC *yesterday* (March 12, 2005) *on which it intends to rely at trial*, according to its belated interrogatory responses. (Exhibit 1). With discovery closed and summary judgment briefing completed, PIC has been badly prejudiced by the eleventh-hour disclosure.

**Retailer Ad Photographs**

Gillette's final argument is that PIC's infringement claim based on third-party advertisements infringing its images should be barred because Mr. Picone was unable, at deposition, to identify the Jobs from which the images came. Mr. Picone indicated in his testimony, however, that he would be able to identify the Jobs if he were permitted to inspect his Job Folders so that he could try to "match up with a visual." (Ex. 10 to Docket #77 at 240-41).[3] Gillette did not, however, permit Mr. Picone to inspect such materials during the deposition, nor did it request that he follow up later to do the necessary research. Gillette's argument amounts to a game of discovery "gotcha" and should be rejected.

**Conclusion**

For the above reasons, Gillette's motion should be denied.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS CORPORATION,

By its counsel,

Dated: May 13, 2005

/s/ Michael A. Albert
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO #646990
mrader@wolfgreenfield.com
Adam J. Kessel, BBO #661211
akessel@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

---

[3] This might not always be possible because, as noted elsewhere, Gillette sometimes took every image that PIC had from a Job. On most other occasions PIC retained only a small sampling of exposures that Gillette had rejected. Still, there would often be enough similarity to a retained transparency or Polaroid that Mr. Picone could have identified the Job Folders with which a good number of shots were associated.