IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>       Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY,<br><br>       Defendant. | Civil Action No. 04-CV-10913-WGY |

**PIC'S LIMITED OPPOSITION TO GILLETTE'S MOTION TO
EXCLUDE THE EXPERT REPORT AND TESTIMONY OF JEFFREY SEDLIK**

Gillette seeks to "curtail" (although not bar) the testimony of PIC's photography expert Jeff Sedlik, an award-winning photographer who is a past President of Advertising Photographers of America (the leading trade association for commercial photographers like PIC), and who was involved in drafting the very contractual Terms and Conditions that are at issue in this case. See Sedlik Report at 3-4 & Appendix A; Sedlik Depo. (Ex. 7 to Docket #77) at 14.

With a few exceptions, Gillette's motion should be denied.

**Mr. Sedlik's Testimony on Practices in the
Commercial Photography Industry Is Admissible.**

Gillette seeks to exclude Mr. Sedlik's testimony relating to commercial photography industry practices on relevance grounds. (Motion at 4). Mr. Sedlik's testimony on industry practices, however, is highly relevant to numerous issues in this case. Gillette's attempt to keep highly probative evidence from the fact-finder should be rejected.

Gillette erroneously characterizes Mr. Sedlik's testimony regarding industry practices as relating primarily to issues of contractual interpretation. This is not the case. For example, photography industry practices and standards are one of the many factors that establish the reasonableness of the liquidated damages clause at issue. See Docket #117 at 10.

The fact that the same dollar amount for unreturned transparencies and negatives has been agreed upon, for decades, by literally thousands of photographers and their clients, indisputably is relevant to determination of the reasonableness of the liquidated damages clause. See Lynch v. Andrew, 481 N.E. 2d 1383, 1386 (Mass. App. 1985) (upholding industry-standard liquidated damages clause in real estate context: "We are disinclined to tamper with a well established solution to the problems of expense and uncertainty in litigating the precise damages in cases of this kind."); Cook v. Levine, Civil Action NO. 89-00660 (D. Haw. Oct. 9, 1991) (Ex. 31 to Docket #77 at 11) ("$1,500 is a reasonable preestimate of damage. ***This reasonableness is further evidenced by the identical industry-wide standards of the American Society of Magazine Photographers.***") (emphasis added).

As President of Advertising Photographers of America, Mr. Sedlik traveled the country and met with thousands of photographers to discussed exactly these issues with them. (Sedlik Depo. at 15). He is also a highly experienced and successful commercial photographer himself, as well as Professor of photography. (Sedlik Report at 3-4). Gillette does not dispute that Mr. Sedlik is thus *qualified* – as an expert – to testify about industry standards regarding, among other things, the value of photographic transparencies.

Indeed, the contract at issue here is a standard-form agreement drafted by the Advertising Photographers of America for use around the country. Because of the widespread use of this contract, the terms of the contract have come to have an accepted standard meaning in the commercial photography industry. This meaning has been confirmed by numerous court decisions interpreting the agreement and upholding claims similar to those at issue here. See Docket #74 at 15 (collecting cases). Mr. Sedlik is among the best qualified people in the entire country (if not *the* most qualified) to testify about the background to this particular contract, *since he helped draft it*. (Sedlik Depo. at 14).

"[I]t is permissible for experts to testify about the customs and usages in an industry, and to amplify the terms of a contract if customs and usages shed light on the meaning of those terms." Rush Presbyterian St. Luke's Medical Center v. Safeco Ins. Co., 722 F. Supp. 485, 497 (N. D. Ill. 1989). See also Boston Partners Asset Management, L.P. v. Archambo, 2005 WL 503940, *4 (Mass. Super. Jan. 18, 2005) (expert testimony on industry customs "seem to fit within the Daubert/Lanigan concept of acceptable reliable expert testimony").

Gillette incorrectly asserts that Mr. Sedlik's Expert Report suggests the presence of an ambiguity in the contract. The opposite is the case – his deep knowledge of the use of the contract within the photography industry demonstrates that it is *unambiguous* within that industry. Gillette should not be permitted to keep the Court or the jury in the dark by excluding evidence of industry usage of such terms.

Importantly, although Gillette apparently plans to articulate a position that is contrary to the standard interpretation of the contract that Mr. Sedlik explains, it has never articulated what that interpretation is (even in this latest round of motions). Nor has Gillette articulated what consequence its interpretation might have on the outcome of the case. The effort to curtail Mr. Sedlik's testimony appears to be a trick to leave PIC without the ability to counter Gillette's "expert" offering an as-yet-undisclosed contractual interpretation.

In any event, even the case cited by Gillette for the proposition that "extrinsic evidence" should be excluded cautions against a rigid application of this canon of construction: "This should be taken with a grain of salt … because language may point only slightly in one direction and extrinsic evidence strongly in another." National Tax Inst., Inc. v. Topnotch at Stowe Resort and Spa, 388 F.3d 15 (1st Cir. 2004). In another case cited by Gillette, Den Norske Bank AS v. First Nat. Bank of Boston, the First Circuit reversed a holding that expert testimony on banking industry practices in loan participation agreements was inadmissible. 75 F.3d 49 (1st Cir. 1996).

- 3 -

**Mr. Sedlik Does Not Offer Legal Conclusions.**

The issues that Gillette points to in its brief as allegedly constituting "legal conclusions" are in fact either factual questions or mixed questions of law and fact. For example, on the issue of "waiver," it is critical for a fact-finder unfamiliar with the photography industry to have an appropriate context within which to evaluate whether particular conduct or inaction by a photographer like PIC (as alleged by Gillette) would in fact have been understood as a waiver by the client. Mr. Sedlik's extensive experience dealing with his own clients, as well as his experience interacting with photographers and their clients around the country, make him well-suited to offer such information at trial. At best, Gillette's arguments to go the weight rather than the admissibility of Mr. Sedlik's testimony on such an issue.

Similarly, Mr. Sedlik's testimony on the operation of the industry-standard contract at issue here – such as the *factual matter* that clients must return, and do return, to the photographer to purchase additional rights beyond an initially-granted license, or the way that photographers and their clients deal with practical logistics of image return requirements and extensions thereto (Motion at 5), is appropriate and admissible for the jury to understand and appreciate conduct that would normally be expected in the context presented in this case. Obviously, Mr. Sedlik will not testify as to purely legal matters such as the application of copyright law.

Finally, Mr. Sedlik's testimony that a $1,500 liquidated damages figure is a reasonable number because some photographs are worth considerably less than that, while some are worth more, is entirely appropriate because only a witness with industry experience would know the range of valuation for photographic imagery.

**Mr. Sedlik Will Not Testify to Facts Beyond His Personal Knowledge.**

Gillette misunderstands the purpose of the background facts discussed in Mr. Sedlik's report. Contrary to Gillette's assertion that Mr. Sedlik does not indicate the source of his understanding of these facts, Mr. Sedlik does cite specific telephone interviews with Mr. Picone throughout his report. For expert testimony to be admissible under Rule 702, the testimony must be based upon the facts of the case. This section of Mr. Sedlik's report demonstrates his detailed and specific knowledge of the facts of the case. Indeed, if Mr. Sedlik had not included these sections of his report, Gillette would likely have argued that his testimony should be excluded because it *wasn't* based on the facts of the case.

PIC obviously has no intention of having Mr. Sedlik recount the specific events and conversations that occurred between PIC and Gillette. The witnesses involved in those events will testify on those issues. In order for Mr. Sedlik to testify as to matters within his expertise, however, he will need to explain certain factual predicates. For example, Mr. Sedlik is well qualified to testify to the reasonableness of PIC's charges for the Spring 2004 Jobs, and it is essential that he know, and be able to testify to, the quantity and quality of the work PIC performed for Gillette to explain those charges.

**Witness Credibility**

Gillette apparently wants to exclude testimony reflecting a single sentence from Mr. Sedlik's report. The sentence, in context, is as follows:

> Several Gillette employees testified at deposition that they did not read or appreciate the terms and conditions on the front and back of PIC's invoices. **I find this position less than credible, given the number of invoices that were reviewed and signed (by multiple individuals in many cases) over time.** Moreover, an entity of Gillette's size and sophistication with regard to intellectual property rights (as is made evident by Gillette's aggressive enforcement of it's [*sic*] patents) could not reasonably come to the conclusion that it had acquired unlimited rights use and exploit a photographer's intellectual property for the sums that Gillette paid.

(Ex. 11 to Docket #77 at 14).

PIC concedes that Mr. Sedlik will not testify as to the bolded sentence above.

**Mr. Sedlik's Testimony on Gillette's Photographic
Storage System Is Necessary and Admissible.**

Gillette is mistaken when it asserts that Mr. Sedlik's opinion on Gillette's system for storing and tracking photographs is unnecessary.  As a bailee of PIC's property, Gillette owed PIC either a duty of ordinary care (if the bailment was for the mutual benefit of the parties) or a higher duty (if the bailment was for Gillette's exclusive benefit). E.g., Woburn Country Club, Inc. v. Woburn Golf & Ski Authority, 486 N.E.2d 1128 (Mass. App. 1985).  Gillette admits that it has lost the vast majority of PIC's transparencies and negatives.  Although Gillette's breach of contract in failing to return PIC's images does not depend on it having breached its duty of care, the extent to which Gillette failed to take ordinary precautions is highly relevant to PIC's fraud and Chapter 93A claims, particularly in light of Gillette's repeated representations to PIC that it was keeping PIC's images "safe and secure."

The case excerpt provided by Gillette – that expert testimony is unnecessary when the subject "deals with common occurrences that the jurors have knowledge of through their experiences in everyday life" – proves PIC's point. Van Blargen v. Williams Hospitality Corp., 754 F. Supp. 246, 249 (D. P. R. 1991).  It is quite unlikely that any of the jurors in this case have dealt with the sort of expensive, high quality commercial photography services at issue in this case or that they will be familiar with standard industry practices regarding the handling of film that is worth thousands of dollars, generated by photographers who charge thousands of dollars per day for their services.  Accordingly, Mr. Sedlik should be permitted to testify about these standard practices.

- 6 -

### Mr. Sedlik's Testimony Regarding the Group Registration Process Is Admissible.

Gillette attacks Mr. Sedlik for explaining the "group registration" copyright process, claiming that he is not an expert in this area. Notwithstanding that Mr. Sedlik has testified in other cases on this very topic, if Mr. Sedlik is not an expert on group registration, it is hard to imagine anyone who is. As the National President of the Advertising Photographers of America, Mr. Sedlik worked closely with the Copyright Office to design and implement the system which allows photographers to bulk register their images. (Sedlik Report at 23). The current regulations permitting group registration only went into effect in 2001, and because there is very little reported case law on the process, Mr. Sedlik's knowledge and experience in this area may be quite helpful at trial.

### Conclusion

Gillette's motion should accordingly be denied to the extent indicated above.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS CORPORATION,

By its counsel,

Dated: May 13, 2005

/s/ Michael A. Albert
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO # 646990
mrader@wolfgreenfield.com
Adam J. Kessel, BBO # 661211
akessel@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000