IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY,<br><br>    Defendant. | Civil Action No. 04-CV-10913-WGY |

**PIC'S OPPOSITION TO GILLETTE'S MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF PROFESSOR ROBERT HANSEN**

Plaintiff Photographic Illustrators Corporation ("PIC") opposes Defendant The Gillette Company's ("Gillette") Motion *in Limine* to exclude evidence and testimony of Professor Robert Hansen. Gillette's central argument, repeated several times in its brief, seems to be that the Court already granted de facto summary judgment for Gillette on one theory of recovery when it denied a motion to compel production of documents. This argument is without merit, as discussed below. Gillette's other attacks on Professor Hansen relate to his credibility as a witness, not the admissibility of his testimony, and consequently are inappropriate for a motion *in limine*.

Professor Robert Hansen is a faculty member of the University of Minnesota's Carlson School of Management. Docket #127 Ex. A at 1. He is also on the Board of Directors of a billion dollar corporation where he regularly performs the sorts of calculations necessary to estimate profits that result from marketing. Ex. 1 at 48. He has over 30 years of teaching experience in the field of marketing to undergraduates, graduate students, and corporate executives. Docket #127 Ex. A at 1. Unlike Gillette's marketing expert, who has testified in 35 cases in the last four years alone, Professor Hansen does not make his living as a professional

expert witness.  Docket #127 Ex. C at Ex. B.  He is well qualified to testify on marketing issues based on his academic expertise and industry experience, and his testimony will assist the fact-finder at the damages stage in providing a methodology for calculating the amount of Gillette's profits from its infringing use of PIC's images.  Professor Hansen thus satisfies the Daubert and Kumho Tire requirements for nonscientific experts, and his testimony should be admitted.

A.   **Gillette's Motion *in Limine* is an Untimely Summary Judgment Motion**

As with most of Gillette's nine other pretrial motions, this motion represents an attempt to bring an extra summary judgment motion after the Court-ordered deadline.  Gillette did not move for summary judgment on infringer's profits, see Docket #89, but now seeks to preclude this theory of damages.  Gillette's motion should be denied on this basis alone.

B.   **Gillette's Argument is an Improper Attempt to Shift the Burden of Proof**

It is well established that once a copyright plaintiff has demonstrated that a defendant has profited from infringement, the burden shifts to the defendant to prove the amount of profits attributable to other sources.  Polar Bear Productions v. Timex Corporation, 384 F.3d 700, 712 (9th Cir. 2004) ("Under § 504(b), Polar Bear was not required to separate the gross profits resulting from the infringement from the profits resulting from other sources[.]"); Konor Enterprises, Inc. v. Eagle Publications, Inc., 878 F.2d 138, 140 (4th Cir. 1989) ("[O]nce there is a finding of copyright infringement and a demonstration by the plaintiff of the defendant's revenues, the burden shifts to the defendant to prove what portion of its revenue did not result from the infringement."); Bonner, Sr. v. Dawson, 404 F.3d 290, 294 (4th Cir. 2005).  Moreover, the plaintiff need only show that the defendant's profits were generated by misuse of the plaintiff's copyrighted work.  See id. (holding that district court "misinterpreted the level of

connection between infringement and profits" in requiring plaintiff to show that profits resulted from the "particularized design" of the copyrighted works in question).

Gillette has not offered any evidence at all of what portion of its profits are attributable to sources other than infringing use of PIC's images. Instead, it has attempted to improperly shift the burden to PIC to perform the calculation. Gillette cannot plausibly deny that it spent over $1 million on photography services that made no contribution to its profits, and that use of those images beyond the geographical, temporal, and use license added no value to the company. PIC went beyond the requirements of § 504(b) when Professor Hansen undertook his analysis, and Gillette's attempt to impose a higher burden of proof on PIC should be rejected.

C. **Professor Hansen's Use of the Same Methodology on the Same Issue Has Been Cited With Approval By The Ninth Circuit Court of Appeals**

Professor Hansen testified as an expert witness in Polar Bear Productions v. Timex Corporation, 384 F.3d 700 (9th Cir. 2004). The issue in that case, the profits attributable to the use of copyrighted visual material in marketing materials beyond the scope of the defendant's temporal license, was the same as one of the issues in this case. The approach used by Professor Hansen in that case, an aggregate approach that extrapolates profits from several different sources and relies on executive judgment based on industry experience, was the same approach used by Professor Hansen used in this case. This is, in fact, how corporate decision makers make marketing decisions. Prof. Hansen confirmed this in his deposition. Ex. 1 at 106. The Ninth Circuit found Professor Hansen's approach an appropriate method to arrive at an approximation of an infringer's profits: "Hansen's testimony established the requisite causal connection between the category of profits sought-revenue from trade booth sales--and the infringement. Thus, Polar Bear's request is a reasonable approximation of the profit related to infringement." Id. at 712.

### D. PIC is not required to establish infringer's profits with mathematical or scientific certainty

Gillette's attempt to apply a rigid mathematical model to the infringer's profit's inquiry should be rejected. While PIC admits that "[m]arketing research is hardly an exact science," Sunbeam Corp. v. Equity Industries Corp., 635 F. Supp. 625 (E.D. Va. 1986), under § 504(b), the "sole requirement" to prove infringer's profits is to present a "reasonable approximation" of the amount of profits attributable to the infringing materials. Polar Bear Productions v. Timex Corporation, 384 F.3d 700, 712 (9th Cir. 2004) (emphasis added). It is well established that a district court "may focus upon personal knowledge or experience" in evaluating the admissibility of expert testimony. Kumho Tire, 526 U.S. 137, 150 (1999). Prof. Hansen's industry experience in making the sort of judgments about value and profit involved here, as detailed in his report, is exactly the sort of "personal knowledge or experience" which makes his testimony admissible. U.S. v. Jones, 107 F.3d 1147, 1155 (6th Cir. 1997) ("Experience is to nonscientific experts as experimentation is to scientists") (quoting law review article with approval). See also Yarchak v. Trek Bicycle Corp., 208 F. Supp. 2d 470, 500 (D. N. J. 2002) ("When evaluating the reliability of the reasoning and methodology employed by nonscientific or technical expert witnesses, the court's main objective is to 'ensure that an expert, whether basing testimony on professional studies, a clearly established methodology or technique, or on his own specialized knowledge, skill or experience, employs in the courtroom the same level of intellectual rigor that characterize the practice of an expert in the relevant field.'") (quoting Kumho Tire).

Even Gillette's own expert testified repeatedly that the sort of calculations at question here cannot be done with mathematical precision. See Ex. 2 at 28 (in response to question about profits resulting from increased sales, "I don't know. I mean, it depends"); 62 (in response to a question about whether images contribute to the effectiveness of advertising, "It sometimes

might. It often does not.  So it depends."); 74 ("Q: So is it your opinion that product imagery plays a negligible role in consumer decision making? A: I don't want to make such an umbrella statement. It depends on so many factors that it's not meaningful thing that I can say globally yes or no."); 75 ("Q: Can you say whether placing – having a retailer place ads with or without pictures would have, say more than a 10 percent differential? A: I can't say.").

Despite the difficult of establishing profits resulting from infringing advertising with certainty, numerous courts have found such testimony admissible and awarded such damages. E.g., Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 712 (9th Cir. 2004) (affirming award of infringer's profits from sale of watches attributable to infringing use of copyrighted advertising material in trade show booths); Andreas v. Volkswagen of America, Inc., 336 F.3d 789 (8th Cir. 2003) (*reversing* district court's grant of JMOL and *reinstating* jury's award of infringer's profits from sale of cars attributable to infringing use of copyrighted advertising material in television commercials).

Gillette's specific challenges to the accuracy and assumptions behind Professor Hansen's calculations accordingly go to the *weight* and *credibility* of his testimony, not the admissibility thereof.  "[A]rguments that the assumptions relied on by an expert are unfounded go to the weight rather than the admissibility of the evidence." Silivanch v. Celebrity Crusies, Inc., 171 F. Supp. 2d 241, 270 (S.D.N.Y. 2001) (citing Boucher v. United States Suzuki Motor Corp., 73 F.3d 18, 21 (2nd Cir. 1996)).  Gillette is welcome to cross-examine Professor Hansen on the witness stand or to call its own rebuttal expert, but it is inappropriate to exclude clearly admissible testimony.

**E.     The Court's February 1 Discovery Order Was Not A Decision On The Merits**

Gillette mischaracterizes the Court's discovery order. On January 25, 2005, PIC moved to compel Gillette to respond to its discovery requests. Docket #33. One of the ten categories of discovery sought was revenue and profit information that could be used to determine Gillette's profits from the sale of products that Gillette marketed with infringing images. On February 1, 2005, the Court entered the following order on PIC's motion:

> THE OBJECTIONS TO REQUESTS 2,5 AND 14 ARE OVERRULED. ALL THE DOCUMENTS AGREED TO BE PRODUCED (WHETHER OR NOT AN OBJECTION HAS BEEN INTERPOSED) AS WELL AS ALL DOCUMENTS RESPONSIVE TO REQUESTS 2,5, AND 14 SHALL BE PRODUCED WITHIN 10 DAYS OF THE DATE OF THIS ORDER. MOTION OTHERWISE DENIED.

PIC also moved for clarification of this order (Docket #36), which the Court treated as motion for reconsideration and denied without comment on February 10, 2005.

In correspondence with PIC and filings with the Court, Gillette has repeatedly claimed this denial of part of a discovery motion amounts to summary judgment in Gillette's favor on damages under 17 USC § 504(a)(1). Gillette repeats this argument in its Motion *in Limine* to exclude PIC's marketing expert, claiming that the issue is "decided and no longer within the Court's consideration." Mot. at 7. Although PIC does not pretend to know the Court's thoughts on infringer's profits in this case before the Court has reviewed the evidence, it does know that the Court's February 1 evidentiary ruling could not possibly have been a ruling of summary judgment in Gillette's favor. Accordingly, Gillette's reliance on the "law of the case" doctrine is without merit.

For the above reasons, Gillette's motion should be denied.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS CORPORATION,

By its counsel,

Dated: May 13, 2005

/s/ Michael A. Albert
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Michael N. Rader, BBO #646990
mrader@wolfgreenfield.com
Adam J. Kessel, BBO #661211
akessel@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000