UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION<br><br>Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>Defendant.<br><br>THE GILLETTE COMPANY,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>Counterclaim Defendants. | Civil Action No. 04-10913 WGY<br><br>**REPLY MEMORANDUM IN SUPPORT OF THE GILLETTE COMPANY'S MOTION IN LIMINE TO EXCLUDE EXPERT REPORT AND TESTIMONY OF ROBERT HANSEN** |

The Gillette Company ("Gillette") respectfully seeks leave to file this Reply Memorandum in support of its Motion In Limine (the "Motion") to exclude the expert report of Robert Hansen (the "Hansen Report") dated March 1, 2005 and his testimony proffered by plaintiff Photographic Illustrators Corporation ("PIC").

## INTRODUCTION

By ruling that PIC is not entitled to discovery of Gillette's advertising expenditures and product sales information, the Court has already determined that a profit award on the facts of this case would be speculative and inappropriate. Moreover, even if such a finding is not implicit in the Court's prior ruling, the lack of any causal connection between the alleged

infringements and Gillette's profits renders Hansen's alleged profits calculation moot and there is no reason for a jury to consider his report or testimony.

Notwithstanding PIC's blithe characterization of Gillette's Motion as a summary judgment motion, that PIC has not and cannot demonstrate a causal nexus between any infringement and Gillette's profits is only one of several reasons for the Court to exclude Hansen's testimony. Indeed, the Court need not even reach the more fundamental issue of whether PIC is entitled to a profit award to determine that Hansen's conclusions are subjective, inaccurate and unreliable in flagrant violation of the principles underlying Rule 702 of the Federal Rules of Evidence.[1] Basically conceding the unreliability of the Hansen Report, PIC does not even attempt to substantiate the numerous assumptions made by Hansen, nor does it address the fact that his entire profits calculation is extrapolated from a *false* assumption, namely, that the PIC images were used in Gillette print advertising (when they were not). PIC merely refers to Hansen's vastly distinguishable fact-based profits calculation in another case, which has no relevance here. PIC then expressly concedes the uncertainty of Hansen's calculation and attempts to defend it as an acceptable approximation. To the contrary, PIC has not disputed and cannot dispute the speculative and unreliable nature of Hansen's calculation and thus, Hansen's report and testimony should be excluded entirely.

## ARGUMENT

**A.    PIC Cannot Carry *Its* Initial Burden Of Demonstrating A Causal Link Between Any Infringement and Gillette's Profits And So The Burden Never Reaches Gillette**

PIC argues that the burden of disproving profits attributable to the alleged infringement lies with Gillette and that, by its Motion, Gillette is attempting to shift this burden. However, PIC readily concedes that Gillette has no such burden until PIC "has demonstrated that [it] has profited from an infringement." Plaintiff's Opposition Brief ("PIC Opp. Br.") at 2. Indeed, the cases cited by both parties are unequivocal that, before any burden concerning the *amount* of

---

[1] The abbreviations herein are as defined in the Memorandum in Support of The Gillette Company's Motion In Limine To Exclude Expert Report and Testimony of Robert Hansen.

2

profits attributable to an infringement shifts to Gillette, PIC must make the prerequisite showing that there exists "a causal nexus" between an alleged infringement and some amount of Gillette's profits. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 710-11 (9th Cir. 2004); 17 U.S.C. § 504(b); *see also* 4 M. Nimmer and D. Nimmer, *Nimmer on Copyright*, § 14.03 at 14-34 (2003) ("When an infringer's profits are only remotely and speculatively attributable to the infringement, courts will deny recovery to the copyright owner."); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 -526 and n.10 (4th Cir. 2003) (denying infringement claims by creator of Baltimore Ravens' logo and finding that "no reasonable trier of fact could find that the sale of a ticket, or of a sponsorship, or of broadcast rights was in any way a consequence of the team's adoption of one logo design rather than another").

     PIC dismisses this insurmountable hurdle by saying that "Gillette cannot plausibly deny that it spent over $1 million on photography services that made no contribution to its profits [sic]… ." PIC Opp. Br. at 3. PIC cannot bypass its burden of proof by concluding, without evidentiary support, that the PIC images have some hypertechnical, undetectable influence on Gillette's sales. Under the cases cited above, PIC must *prove* a non-remote causal link between an infringement and Gillette's profits. Neither PIC nor Hansen has presented any survey evidence, market studies or objective data to support the general assumption that the PIC images had an actual impact on Gillette's profits. Ex. A, p. 11, ¶ 33.[2] Because PIC cannot meet the legal threshold of demonstrating any causal link between Gillette's profits and any unauthorized use of the PIC images, PIC's claim for Gillette's profits allegedly attributable to the PIC images should not be considered at all, and Hansen's calculation should be deemed irrelevant and inadmissible. F.R.E. 702; *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579, 589 (1993) (the trial judge must assure that proffered expert testimony is relevant under F.R.E. 401 and F.R.E. 402); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

---

[2] References to "Ex" are to the Exhibits to the Declaration of David Donahue, dated May 6, 2005. References to "Reply Ex." are to the Exhibit to the Declaration of David Donahue, dated May 17, 2005.

**B		Hansen's Methodology Differs Significantly From The Methodology Approved By The Ninth Circuit In The *Polar Bear* Case.**

Contrary to PIC's claim, Hansen's approach for calculating profits in this case differs substantially from the approach he took in the *Polar Bear* case and thus, the Ninth Circuit's acceptance of Hansen's profits calculation in the *Polar Bear* case is completely irrelevant to the reliability of his calculation here.  Indeed, Hansen readily concedes that, in this case, unlike the Timex case, he "did not have internal production and sales documents" and a profits calculation in this case "required a different approach."  Reply Ex. A at 17:4 – 18:12.

If anything, the stark contrast between the methodologies employed by Hansen in the *Polar Bear* case and this case only further supports a finding that Hansen's calculation is without factual basis and therefore entirely unreliable.  In *Polar Bear*, the plaintiff was the owner of copyright in an extreme-kayaking film used by the defendant Timex in promotions for its watches.  The Ninth Circuit approved two specific profits calculations by Hansen.  The first was Timex' profits from use of clips of plaintiff's film in a looped promotional video for Timex watches at specific trade shows.  Having access to Timex' sales and internal documents, Hansen was able to determine twelve trade shows at which the video was displayed and he was able to calculate that Timex yielded an average of $30,000 in direct sales at each of those trade shows for a total of $360,000.  *Polar Bear,* 384 F.3d at 712.  These sales were not disputed.  Then, having reviewed the promotional video in issue, and based on Timex' concession that the promotional video was an unqualified success, Hansen assessed what portion of those sales were attributable to Timex' use of the film clips in the promotional video.  *Id.*  Here, Hansen has not reviewed the allegedly infringing Sales Materials that formed the basis for his calculation; he does not know where, when or how the PIC images were viewed by consumers; he has not reviewed Gillette's profits or sales data; he has shown no actual association between any of the Sales Materials and actual sales and; he has reviewed no evidence of whether or to what extent

4

the PIC images actually impacted consumer decisions.  Accordingly, the fact-based *Polar Bear* calculation is not remotely analogous to Hansen's calculation here.

Likewise, Hansen's second calculation in *Polar Bear* was premised upon undisputed facts and tangible data.  Hansen calculated Timex's profits attributable to a cross-promotion with Mountain Dew that included still images from plaintiff's film (the "Mountain Dew ad").  The Mountain Dew ad offered a specific opportunity to purchase Timex watches at a discounted discount price such that specific sales could be attributed directly to the Mountain Dew ad.  *Id.*  In fact, Timex issued a press release specifically stating that the Mountain Dew ad had generated $564,000 in sales.  *Id.*  Further, Hansen reviewed the specific Mountain Dew ad in issue and thus, could assess the impact of the infringing images within the ad to make a determination of what portion of Timex' sales were attributable to the infringement.  *Id.*  Here, Hansen did not review any Gillette sales information; he had no way to link any particular sales to any of the Sales Materials in issue and; he had not even reviewed the Sales Materials that purportedly formed the basis for his entire conclusion (indeed, contrary to his *assumption*, the PIC images appeared in no Gillette print advertising).

Hansen's conclusions in *Polar Bear* were premised on objective and undisputed data, as opposed to the intricate web of assumptions he implemented in this case.  Thus, the Ninth Circuit's findings in *Polar Bear* do not support the admissibility of Hansen's conclusion here.

**C.    Subjective, Inaccurate and Unreliable Expert Testimony Is Simply Inadmissible.**

Underscoring the infirmity of its damages theory and calculation, PIC admits that Gillette's profits cannot be determined with certainty and resorts to an argument that Hansen may give a "reasonable approximation" based on his "personal knowledge or experience."  PIC Opp. Br. at 4.  As an initial matter, even a "reasonable approximation" as contemplated by the *Polar Bear* case must satisfy the causal nexus requirement, as well as the *Daubert* inquiry.  *Polar*

5

*Bear*, 384 F.3d at 710-11; *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579, 589 (1993).[3] Hansen's calculation in this case does neither.

Moreover, while expert knowledge and experience may be an appropriate basis for some expert opinions, it cannot be the sole basis for a calculation of the amount of Gillette's profits that are attributable to use of the PIC images in Gillette's Sales Materials.  Clearly, such a fact-specific determination must consider, *at minimum*, the manner of presentation of the PIC images within each of the Sales Materials, the manner and extent of distribution of each allegedly infringing Sales Material and the relative success of each allegedly infringing Sales Material.  Although Hansen may be able to apply his "experience" to tangible, objective data in order to derive conclusions (as he did in the *Polar Bear* case), he cannot be permitted to fabricate data and substitute pure speculation for objectivity and reliability.

Most telling is the fact that PIC completely ignores the fact that Hansen's entire calculation is premised on a fundamental assumption that is *false*.  As explained in Gillette's Motion, Hansen's entire calculation is premised upon the assumption that the PIC images were used in Gillette's print advertising.  Motion at 10.  However, PIC can point to no evidence that the PIC images were ever used in Gillette print advertising, thus dismantling the entire foundation of Hansen's report and conclusions.  *Id.*  That PIC neglects to address this fundamental failure of the Hansen Report, or for that matter any of the baseless assumptions underlying Hansen's findings, is nothing less than a concession that the report is flawed at its roots and therefore entirely unreliable.

Finally, PIC is incorrect that the subjectivity, inaccuracy and unreliability of an expert's report and testimony only go to the weight and credibility of Hansen's testimony.  Rather, such characteristics are routinely the basis for denying admissibility of expert testimony entirely. *Saia v. Sears Roebuck and Co., Inc.*, 47 F. Supp. 2d 141, 146-150 (D. Mass. 1999) (rejecting expert

---

[3] In *Polar Bear*, the Ninth Circuit was not faced with a motion *in limine* to determine the reliability of Hansen's conclusions, but rather a challenge to the existence of a causal link between Timex' infringing activity and its profits as required for recovery of a defendant's profits under the U.S. Copyright Act.

6

opinion as unreliable because it was based on unverified assumptions); *Sutera v. The Perrier Group pf America, Inc.*, 986 F. Supp. 655, 661 (D. Mass. 1997) (granting motion to exclude expert testimony under Rule 702); *see also Daubert*, 509 U.S. at 591-95 (establishing test to assess the "admissibility" of expert testimony); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that district court had not abused its discretion in finding that expert testimony was inadmissible).

## CONCLUSION

Hansen's report and proposed testimony are irrelevant as PIC is not entitled to a profit award given the remote causal connection, if any, between the PIC images and Gillette's profits. Moreover, irrespective of whether PIC is *entitled* to a profit award, the Hansen report falls well short of satisfying the reliability and objectivity requirements for expert testimony under the Federal Rules of Evidence. As such, his report and testimony should be excluded.

Dated: May 17, 2005

| | |
|---|---|
| GELB & GELB LLP | FROSS ZELNICK LEHRMAN & ZISSU, P.C. |
| By:    /s/Richard M. Gelb/    <br>    Richard M. Gelb (BBO#188240)<br>    rgelb@gelbgelb.com<br>    Robert S. Messinger (BBO# 651396)<br>    rmessinger@gelbgelb.com | By:   /s/Patrick T. Perkins/    <br>    Patrick T. Perkins (Admitted *pro hac vice*)<br>    David Donahue (Admitted *pro hac vice*) |
| 20 Custom House Street<br>Boston, MA 02110<br>Tel: (617) 345-0010<br>Fax: (617) 345-0009 | 886 United Nations Plaza<br>New York, New York 10017<br>Ph: (212) 813-5900<br>Fax: (212) 813-5901<br><br>*Attorneys for Defendant/Counterclaim-Plaintiff The Gillette Company* |