UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>THE GILLETTE COMPANY,<br><br>    Defendant. | Civil Action No. 04-10913 WGY |
| THE GILLETTE COMPANY,<br><br>    Counterclaim-Plaintiff,<br><br>vs.<br><br>PHOTOGRAPHIC ILLUSTRATORS CORPORATION and PAUL PICONE,<br><br>    Counterclaim-Defendants. | |

**THE GILLETTE COMPANY'S MEMORANDUM OF LAW REGARDING BREACH OF CONTRACT ISSUES REMAINING TO BE TRIED**
**— AND —**
**MOTION AND MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE ON ACTUAL DAMAGES FOR UNRETURNED PHOTOGRAPHS**

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Patrick T. Perkins (Admitted *pro hac vice*)
    David Donahue (Admitted *pro hac vice*)
886 United Nations Plaza
New York, New York 10017
Ph: (212) 813-5900
Fax: (212) 813-5901

GELB & GELB LLP
    Richard M. Gelb (BBO#188240)
    Robert S. Messinger (BBO#651396)
20 Custom House Street
Boston, MA  02110
Tel: (617) 345-0010
Fax: (617) 345-0009
*Attorneys for Defendant/Counterclaim-Plaintiff*
*The Gillette Company*

**PRELIMINARY STATEMENT**

From the outset of this case, PIC has asserted breach of contract claims against Gillette on grounds that it is entitled to liquidated damages of $1500 per photograph not returned by Gillette within thirty days of Gillette's receipt of them.  PIC did not request actual damages for Gillette's breach of contract in the Prayer for Relief its complaint, and did not specify any such actual damages as a "category of damages" in its initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(C).  Moreover, PIC *never* sought specific performance of the return requirement or requested the Court to order Gillette to return the photographs in any of its pleadings.  Rather, PIC wanted a windfall, not the photographs.

Gillette filed a motion for summary judgment on PIC's claims—as they were pleaded by PIC—and the Court now has ruled on the motion, holding that PIC "*waived* [the] *30 day return requirement*" and that Gillette's motion for summary judgment on PIC's breach of contract claims is "Allowed in all … respects" other than as to PIC's claims relating to the Spring 2004 Projects.  As a result of the Court's order, there no longer is any need for the jury to hear days of testimony concerning how many photographs PIC claims to have provided to Gillette on each of the 650 jobs that PIC performed for Gillette over a twelve year period.

Nevertheless, PIC argues that it *still* should be permitted to attempt to prove to a jury that it suffered actual damages for photographs not returned by Gillette.  Aside from the fact that this does not make any sense, it would completely gut the Court's grant of summary judgment in Gillette's favor and result in a lengthy trial on the merits of an already dismissed claim.  As set forth below, PIC's backdoor attempt to undo the Court's order and multiply these proceedings yet again should be rejected.

## BACKGROUND

In its three complaints in this action, PIC alleges that PIC and Gillette entered into hundreds of "Agreement[s] … pursuant to PIC's standard terms and conditions," which appear on the back of PIC's invoices. (Second Am. Compl. ("SAC") ¶ 9.) PIC further alleges that it provided photographic materials to Gillette under such Agreements and that Gillette was required to return the photographs to PIC under the "Return of Photographs" provision of Paragraph 10 and the related "Loss or Damage" provision of paragraph 11. These provisions state, in full:

> 10. RETURN OF PHOTOGRAPHS: Client assumes all risk for all photographic material(s) delivered by Photographer from time of receipt by client to time of receipt by Photographer. If no Return date appears on the face of this form, Client shall return all these material(s) in undamaged, unaltered and unretouched condition within 30 days of first publication.
>
> 11. LOSS OR DAMAGE: If no "actual value" for liquidated damage(s) amount per photograph appears on the face of this form, or by attachment or by delivery memorandum, then liquidated damage(s) for loss or damage has been agreed upon between the parties to be $1500 dollars per original transparency or negative. In the event of failure to return photographs per item #10, Photographer shall be entitled to immediate payment in full of above liquidated damages.

(Declaration of David Donahue ("Donahue Decl."), filed concurrently herewith, Ex. 1, ¶¶ 10-11; *see also* SAC ¶¶ 14-15.)

PIC alleges that Gillette breached the Agreements by failing to return PIC's photographs "as required by Paragraph 10 of the Agreements" and that, as a result, "Gillette owes PIC liquidated damages for thousands of unreturned Photographs."[1] (SAC ¶¶ 17, 53.) PIC did not, however, plead in the alternative that it should be entitled to *actual* damages for any photograph

---

[1] All of PIC's other breach of contract claims against Gillette, with the exception of its claim based on Gillette's non-payment of four Spring 2004 invoices, were dismissed as preempted under the Copyright Act. (9/23/04 Hr'g Tr. at 7-8.)

not returned by Gillette.² Nor did PIC plead a cause of action for bailment requesting return of the photographs: Indeed, PIC did not even seek specific performance of the Return Requirement or otherwise request the Court to order Gillette to return the photographs in its detailed "Prayer for Relief" or anywhere else in its complaint. (*See id.* at pp. 14, ¶ 5; *see generally id.* at pp. 14-15.) Instead, PIC went for the "home run," seeking *only* liquidated damages of $1500 per photograph not returned by Gillette within 30 days of Gillette's receipt of the photographs. In other words, consistent with the fact that PIC never enforced the Return of Photographs requirement for *ten* years, its pleadings show that PIC did not want the photographs back or to prove that it suffered any actual loss—it just wanted a windfall conferred by the liquidated damages clause.

PIC's election to seek only liquidated damages as opposed to specific performance or actual damages is further evidenced by PIC's initial disclosures under Federal Rule of Civil Procedure 26(a)(1), which PIC served on October 4, 2004. In setting forth its computation of damages under Federal Rule of Civil Procedure 26(a)(1)(C), PIC again specified liquidated damages as the only remedy it sought for Gillette's alleged breach of the Return Requirement. (Donahue Decl. Ex. 2 at 3.) PIC did not even refer to actual damages, much less provide grounds for any computation of such, as it would have been required to do if it actually were seeking such damages. (*See id.*) Notably, PIC updated its computation of damages on November 22, 2004 to add a new theory of damages for Gillette's alleged copyright infringement, but still did not provide any computation of actual damages for unreturned photographs. (Donahue Decl. Ex. 3.)

---

² Notably, PIC <u>did</u> seek actual damages as an alternative to statutory damages on its copyright infringement claim. (SAC at 14, ¶¶ C & D.)

3

PIC's reliance on liquidated as opposed to actual damages or equitable relief on its breach of contract claims continued throughout the litigation. On March 3, 2005, the Court, *inter alia*, ordered PIC to supplement its responses to Gillette's Interrogatory No. 2, which required PIC to "state the basis for" each of its breach of contract claims. (3/3/05 Order Re: Gillette Mot. to Compel.) The Court further stated that "unless promptly supplemented with express and detailed factual claims, the plaintiff will be limited at trial to the production of the documents specifically identified" in answer to Interrogatory No. 2. (3/8/05 Order Re: Mot. for Clarification.) Yet PIC again did not provide a computation of any supposed actual damages for unreturned photographs in its response to Gillette's Interrogatory No. 2.[3] (Dkt. No. 99, Ex. 7 at 59-218.)

The parties proceeded with discovery, including the deposition of PIC's principal, Paul Picone, based on the claims as alleged in PIC's complaint and identified in discovery. Because actual damages for unreturned photographs were not part of the case, Gillette did not direct its discovery efforts to that issue.

On April 8, 2005, Gillette moved for summary judgment on PIC's claims, including its breach of contract claim based on Gillette's failure to return photographs under the Return of Photographs provision of the Agreements. (Dkt. No. 89.) Among other things, Gillette argued that by failing to request that Gillette return the photographs at any time from 1992 through 2002, all the while entering into Agreement after Agreement—hundreds of them—with Gillette, PIC long ago waived the Return of Photographs provision and the attendant Loss or Damage provision providing for liquidated damages. Gillette also argued that PIC should be estopped from advancing its breach of contract claim based on failure to return the photographs. Specifically, through the undisputed testimony of its current and former employees, Gillette

---

[3] Moreover, the word "bailment" does not appear anywhere in PIC's interrogatory responses. (*See* Dkt. No. 99, Ex. 7.)

4

established that in reliance on PIC's failure to enforce the Return of Photographs and Loss or Damage provisions and on PIC's representations to Gillette that it kept duplicate copies of all the photographs, Gillette did not keep separate files of the original transparencies, negatives, and electronic images provided by PIC for the purpose of returning them to PIC upon its request. (Dkt. Nos. 106-110.) Gillette's summary judgment motion did not address the issues of bailment or of actual damage to PIC for unreturned photographs because PIC made no mention of such issues in its pleadings, did not disclose them in its initial disclosures, and did not refer to them in its Supplemental Interrogatory Responses. These issues are not and never have been in the case.

In response to Gillette's summary judgment motion, PIC did not claim that it should be entitled to establish actual damages in the event that the Court held that the Return of Photographs and Loss or Damages clauses had been waived or otherwise deemed them to be unenforceable. (*See* Dkt. No. 117.) Rather, PIC simply argued that summary judgment should be granted for PIC instead of Gillette, and that Gillette should be ordered to pay the liquidated damages amount. (*See id.*)

PIC also filed its own summary judgment motions—five, to be exact. In one of its motions, PIC moved for judgment in its favor on its breach of contract claim based on Gillette's failure to return the photographs. (Dkt. No. 72.) Again, however, PIC requested the Court only to enforce the liquidated damages provision; it did <u>not</u> ask the Court to order Gillette to return the photographs, nor could it, given that it failed to request such relief in its pleading. (*See* Dkt. No. 74.)

While the parties' motions for summary judgment were pending, the parties drafted their Joint Pretrial Memorandum, which the Court ordered the parties to file by no later than May 18, 2005, the day after the scheduled hearing on the parties' summary judgment motions. (4/19/05

5

Procedural Order re: Final Pretrial Conference/Trial.)  Among other things, the parties were required to identify any proposed amendments to their pleadings.  (*Id.* at 2, ¶ 7.)  PIC did not request any amendment having to do with its contract claims, did not seek to add a claim for bailment, and did not seek to its Prayer for Relief add a request for specific performance or for actual damages for unreturned photographs.  (Dkt. No. 146 at 22-23.)  (In any event, any such proposed amendments would be improper at this late stage in the litigation.)

At oral argument on the parties' summary judgment motions, the Court held as follows with respect to Gillette's motion for summary judgment on PIC's breach of contract claims:

> Gillette's motion on summary judgment *on PIC's liquidated damages and breach of contract claim is allowed*.  It's allowed on the waiver theory.  The language, the boilerplate language on these invoices controls.  There has been the evidence -- I reserve my right if there be further proceedings to amplify on this, but cannot be orally modified.  Massachusetts law requires action to return the photos.  Under the law of bailment they're liquidated damages of $1,500 per image.  *That's been waived and motion's allowed.*

(3/17/05 Hr'g Tr. at 18) (emphasis added.)

Despite its finding of waiver, and despite the fact that PIC *never* requested the Court to order Gillette to return the photographs, the Court exercised its equitable power by ordering Gillette to return photographs to PIC:

> The fact that I am granting Gillette summary judgment as to the terms and conditions of the contract and ruling that there was a waiver as to the liquidated damages clause, does not mean that somehow title to those images vests in Gillette.  It does not.  Gillette is ordered to locate and return to PIC any and all images and transparencies produced for it by PIC.

(*Id.* at 19.)[4]

---

[4] Gillette respectfully reserves its right to seek relief from the Court's holding that the terms on PIC's invoices govern the parties' contracts and from its order that Gillette return photographs to PIC.  Gillette notes, however, that it is in the process of complying with the Court's order and returning photographs to PIC's counsel.

6

The Court later clarified that it was ordering Gillette to return only those photographs that Gillette still possessed, not photographs that had been lost or discarded during the ten year period that PIC made clear that it did not want the photographs back. (*Id.* at 22-23.) Thereafter, PIC's counsel, for the first time, raised the issue of PIC's alleged actual damages due to Gillette's failure to return photographs within 30 days in accordance with the Return of Photographs provision in the following colloquy with the Court:

> MR. ALBERT:  Your Honor, I have a related question.
>
> THE COURT:  A question, yes.
>
> MR. ALBERT:  Yes, with regard to the images that Gillette will not be returning because they have for whatever reason been unable to locate them, that is actually going to be the bulk of the pictures that have been at issue here from what we understand from the evidence. I take it the Court agrees that these images belong to PIC and therefore even without the liquidated damages clause would we be permitted to proceed at trial on the issue of their value?
>
> THE COURT:  Well, that hasn't been briefed here. So, we're going to have to talk about that tomorrow.

(*Id.* at 23.)

The parties discussed PIC's newly minted actual damages argument and other issues with the Court at the Pretrial Conference, which was held on May 18, 2005, the day after oral argument on the summary judgment motions. The Court made clear that the issue of bailment is not alive in this case. It then invited Gillette to submit briefing on what issues were left to be tried in the case and on the issue whether PIC should be permitted, notwithstanding the Court's dismissal of PIC's breach of contract claims based on PIC's waiver, to present evidence, if any, of actual damages due to Gillette's failure to return photographs.

The next day, the Court issued an Amended Order articulating its oral ruling. With respect to PIC's breach of contract claim based on Gillette's failure to return photographs, the Court held as follows:

7

> With the exception of the Spring 2004 Projects, the Terms and Conditions on the invoice governed. Such terms included a 30 day return requirement. Gillette did not return the photos in that 30 day period. *PIC waived such 30 day return requirement.* Despite arguments of oral modifications to the Terms and Conditions, the contract terms themselves indicate that any modifications must be made in writing.

(5/19/05 Order at 2) (emphasis added.) The Court also reiterated that Gillette was required to return to PIC the photographs in its possession, holding as follows:

> With the exception of the images provided in connection with the Spring 2004 Projects, PIC retains title to the images it provided to Gillette. The Terms and Conditions provide that any transfers of ownership or title in the images must be in writing and signed by PIC. With the exception of the images provided in connection with the Spring 2004 Projects, Gillette is ORDERED to locate and return to PIC any and all images produced for it by PIC.

(*Id.*) The Court's Amended Order does not carve out for PIC the right to attempt to prove actual damages at trial based on Gillette's failure to return photographs. Accordingly, as a result of the Court's Amended Order, the *only* remaining breach of contract claims remaining to be tried are PIC's claims arising from Gillette's alleged breach of the terms agreed to by the parties in connection with four projects for which PIC performed work for Gillette in Spring 2004.[5]

## ARGUMENT

I.   **PIC SHOULD NOT BE PERMITTED TO PRESENT ITS NEW ACTUAL DAMAGES THEORY TO THE JURY ON ITS ALREADY DISMISSED BREACH OF CONTRACT CLAIMS BASED ON GILLETTE'S ALLEGED FAILURE TO RETURN PHOTOGRAPHS.**

   A.   **As the Court Already has Held, PIC Waived The Return of Photographs Provision.**

Paragraph 10 of the Agreements provides that Gillette "assumes all risk for all photographic material(s) delivered by [PIC] from time of receipt by [Gillette] to time of receipt by [PIC]." (Donahue Decl. Ex. 1, ¶ 10; SAC ¶ 14.) Moreover, it states that "[i]f no Return date

---

[5] The Court also dismissed PIC's fraud and Chapter 93A claims, and limned PIC's copyright claims to a considerable extent. PIC's remaining copyright claims are addressed in Gillette's Memorandum Pursuant to the Court's Request Concerning PIC's Copyright Claims, filed concurrently herewith.

8

appears on the face of this form, [Gillette] shall return all these material(s) in undamaged, unaltered and unretouched condition within 30 days of first publication." (*Id.*) It is undisputed that the front of PIC's invoices did not specify any date for return of the transparencies. (*See* Dkt. No. 77, Exs. 13-14.)

Waiver is established where "clear, decisive and unequivocal conduct" indicates that the party to a contract would not insist that the contractual provision at issue be performed. *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 893 (1st Cir. 1988) (citation omitted); *see also Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 992-93 (1st Cir. 1988) ("[P]laintiff's admitted failure to abide by the terms of the dual notice provision barred the subsequent prosecution of a breach of contract claim against Mass. Electric."). "If [a party] intentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it and may not thereafter seek judicial enforcement." *Gooley v. Mobil Oil Corp.*, 678 F. Supp. 939, 941 (D. Mass. 1987), *aff'd* 851 F.2d 513 (1st Cir. 1988) (citation omitted and alterations in original). The purpose behind the doctrine of waiver is to prevent a one party from lulling another into a false sense of security that a contract provision will not be enforced, only to attempt to reinstate the provision years later to the other party's detriment. *See Porter v. Harrington*, 262 Mass. 203, 208 (1928) (refusing to enforce provision where parties' conduct "was such as to lull the [other party] into a justifiable assumption that, notwithstanding the terms of the contract, he would be given indulgence …."); *cf.* Mass. Gen. L. ch. 106, § 2-209(5) ("A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, *unless the retraction would be unjust in view of a material change of position in reliance on the waiver*.") (emphasis added).

9

By failing to insist on the return of the photographs for over a decade despite the facts that the Agreements required return of photographs within thirty (30) days of receipt and that Gillette *never* returned any photographs to PIC until 2003, PIC clearly and unequivocally waived its right to seek enforcement under the Return of Photographs provision *in its entirety*. As a result of this waiver, the risk of loss of the photographs shifted back to PIC, and PIC cannot seek damages from Gillette based on loss of the photographs on any theory of recovery, whether based on liquidated damages or actual damages.[6] Thus, PIC's waiver of the Loss or Damage provision flows from its waiver of the Return of Photographs provision.

Although the Court held that PIC's waiver of the Return of Photographs provision did not result in a transfer of title in the images from PIC to Gillette, *but cf. Kelley v. Thomas G. Plant Co.*, 274 Mass. 102, 105-06 (1931) (failure of plaintiff to request return of goods for six years resulted in transfer of title to defendant), this does not change the fact that PIC's waiver of the Return of Photographs provision bars PIC from seeking judicial relief under the provision. It simply means that Gillette cannot continue to maintain custody of the photographs that it still possessed at the time of the Court's ruling.

According to PIC, it still should be permitted to present evidence to the jury of its actual damages due to Gillette's failure to return the photographs as and when required under the Agreements. Apparently, PIC is arguing that it waived only the related "Loss or Damage" provision providing for liquidated damages, but not the "Return of Photographs" provision itself.

---

[6] It is undisputed that PIC chose not to enforce the Return of Photographs provision or the attendant Loss or Damage provision because it wanted to continue its relationship with Gillette. (Dkt. No. 77, Ex. 9 at 29-31 & 40; *id.* Ex. 10 at 133-34.) It is further undisputed that PIC did not provide any written inventory of materials it provided to Gillette, nor did it alert Gillette with any writing on the packages containing its materials that Gillette's failure to return the materials within 30 days would require Gillette to pay PIC $1,500 per image. (Dkt. No. 91 ¶ 4.) These actions (or inactions) on PIC's part further support the Court's finding that PIC waived the Return of Photographs and Loss or Damage provisions as a matter of law.

But this is not what the Court's Amended Order says. Rather, the Court held that PIC "*waived* [the] *30 day return requirement"* and that Gillette's motion for summary judgment on PIC's breach of contract claims is "Allowed in all … respects" other than as to PIC's claims relating to the Spring 2004 Projects. (5/19/05 Am. Order at 1-2.) In light of these holdings, no breach of contract claims on the return of photographs issue remain to be litigated in this case. A contrary interpretation of the Court's ruling would not make any sense.[7]

### B. The Doctrine of Equitable Estoppel Also Precludes PIC from Seeking Actual Damages for Gillette's Loss of the Photographs.

"'A person is estopped from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon the representations made.'" *Precious Metals Assocs., Inc. v. Commodity Futures Trading Comm'n,* 620 F.2d 900, 908 (1st Cir. 1980) (quoting *Bergeron v. Mansour*, 152 F.2d 27, 30 (1st Cir. 1945)).

As set forth above, PIC chose not to enforce the Return of Photographs provision for more than *ten years*. For approximately 650 separate jobs, PIC was aware that Gillette did not return its transparencies to PIC within 30 days. Yet PIC took no action. In reliance upon PIC's failure for more than ten years to enforce the Return of Photographs provision, Gillette had no reason to believe that it would be required at some unspecified future date to return original transparencies and negatives or be charged a fee for each transparency or negative not returned. (Dkt. No. 106 ¶ 5; Dkt. No.107 ¶ 3; Dkt. No. 109 ¶ 4; Dkt. No. 108 ¶ 3; Dkt. No. 110 ¶ 3.) Thus,

---

[7] Moreover, it would severely prejudice Gillette by permitting PIC to argue to the jury that some of the unreturned photographs were worth *more* than $1500.00—i.e., the cap fixed by the Loss or Damage provision. It is highly unlikely that PIC would be able to prove *any* actual damages from unreturned photographs, given that the straightforward photographs of Gillette's consumer products are worthless to PIC, as shown by PIC's failure to request their return for over a decade. Nevertheless, Gillette should not be subject to *any* risk. much less increased risk, as a result of PIC's waiver.

11

Gillette did not maintain the photographs in a manner in which they could be easily found and returned to PIC.  (Dkt. No.107 ¶ 4; Dkt. No. 109 ¶ 5; Dkt. No. 108 ¶ 4; Dkt. No. 110 ¶ 4.)

Gillette's reliance on PIC's inaction is further justified by the undisputed fact that, since 1997, PIC kept high resolution digital copies of everything it provided to Gillette that PIC considers to be "original," "reproducible," and "equal in quality to originals."  (Dkt. No. 77, Ex. 10 at 218-19; *id.* Ex. 9 at 82; Dkt. No. 99, Ex. 7 at 166.)  PIC also repeatedly made Gillette employees aware that PIC was creating and storing duplicate, high resolution digital scans of its images of Gillette products.  (*See, e.g.,* Dkt. No. 99, Ex. 23 at PIC 5875; Dkt. No.107 ¶ 3; Dkt. No. 109 ¶ 4; Dkt. No. 108 ¶ 3; Dkt. No. 110 ¶ 3; Dkt. No. 127, Ex. E.)  Thus, at least as early as 1997, Gillette had no reason to believe PIC would require the return of its transparencies and negatives because PIC retained a high resolution digital scan of "everything" that was provided to Gillette.  (Dkt. No. 99, Ex. 2 at 218-19; Dkt. No.107 ¶ 3; Dkt. No. 109 ¶ 4; Dkt. No. 108 ¶ 3; Dkt. No. 110 ¶ 3.)

Based upon the above undisputed facts, the doctrine of estoppel precludes any attempt by PIC now to seek damages based on Gillette's failure to return the photographs.

### C.    PIC's Failure to Disclose Its Computation of Damages Provides an Independent Ground for Precluding PIC from Presenting its New Damages Theory to a Jury.

Federal Rule of Civil Procedure 26(a) requires a party, "without receiving a discovery request" to disclose "a computation of *any category of damages* claimed by the disclosing party" and to produce the documents on which such calculations are based.  Fed. R. Civ. P. 26(a)(1)(C) (emphasis added).  A district court recently summarized the purposes behind the rule as follows:

> Rule 26(a)(1) disclosures are designed to accelerate the exchange of basic information and "help focus the discovery that is needed, and facilitate preparation for trial or settlement." Initial disclosures should provide the parties "with information essential to the proper litigation of all relevant facts, to eliminat[e] surprise, and to promot[e] settlement."

12

*Sender v. Mann*, 225 F.R.D. 645, 650 (D. Colo. 2004) (citations omitted); *see also* Fed. R. Civ. P. 26, Advisory Comm. Note to 1993 Amendments. Federal Rule of Civil Procedure 37 "requires *virtually automatic preclusion* of information not disclosed pursuant to Rule 26(a)(1)." *See Austrian Airlines Oesterreichische Lufverkehrs AG v. UT Fin. Corp.*, No. 04 Civ. 3854, 2005 U.S. Dist. LEXIS, at *4-*5 (S.D.N.Y. April 28, 2005) (emphasis added); *see also Laplace-Bayard v. Batlle*, 295 F.3d 157, 162 (1st Cir. 2002) ("[E]xclusion of evidence is a standard sanction for a violation of the duty of disclosure under Rule 26(a).") (citation omitted).

As explained in the Background section above, PIC did not seek actual damages for unreturned photographs in its complaint and failed to identify its actual damages for unreturned photographs in its initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(C). Instead, PIC relied exclusively on a liquidated damages theory of recovery. PIC's failure even to mention actual damages as a basis for recovery, much less to provide the requisite computation of such damages, forecloses PIC's attempt to seek such damages now. *See, e.g., Austrian Airlines Oesterreichische Lufverkehrs AG*, 2005 U.S. Dist. LEXIS, at *4-*5 (precluding plaintiff's damages theory that was not disclosed in initial disclosures); *Gilvin v. Fire*, 2002 WL 32170943, at *3 (D.D.C. Aug. 16, 2002) (plaintiff "failed to comply with the disclosure requirement in Rule 26(a)(1)(C) and the evidence of his damages … must therefore be excluded" where plaintiff waited until pre-trial conference to identify damages theory); *Am. Realty Trust, Inc. v. Matisse Partners, L.L.C.*, 2002 WL 1489543, at *3-*6 (N.D. Tex. 2002) (excluding evidence of damages at trial because plaintiff failed to meet its disclosure obligations under Rule 26(a)(1)(C)); *Colombini v. Members of the Board of Dirs. of the Empire College School of Law*, 2001 WL 1006785, at *8 (N.D. Cal. 2001) (granting summary judgment to defendant and holding that as a result of "the plaintiff's failure to provide any information whatsoever about the

13

computation of his damages …. the plaintiff would be precluded from introducing such evidence at trial."); *see also, e.g., San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220-21 (N.D. Cal. 2003) (holding that "the 'computation' of damages required by Rule 26(a)(1)(C) "contemplates some analysis" and that the plaintiff failed to meet its obligations under Rule 26(a)(1)(C) by providing only an "aggregation of damages for all claims, all contracts and all defendants").

Here, Gillette would be prejudiced in the extreme if PIC were permitted to rely on a previously undisclosed actual damages theory. Discovery closed long ago, and the deadline to file dispositive motions has passed. Requiring PIC to make the disclosures now and permitting Gillette to take discovery on them now would not cure the prejudice to Gillette, which should have been permitted to craft its case and streamline its discovery efforts armed with full knowledge of PIC's claims at the outset. This is why initial disclosures are required under Section 26(a)(1)(C) in the first place. *See Sender*, 225 F.R.D. at 650; Fed. R. Civ. P. 26(a)(1)(C), Advisory Comm. Note to 1993 Amendments. It also is the guiding force behind the principle of *res judicata*, which bars litigation of claims that could have been brought at the outset of a case but were left out by the plaintiff. The only appropriate remedy is to preclude PIC from advancing its new damages theory at this late date.

### C. In the Alternative, the Statute of Limitations Bars PIC from Attempting to Prove Actual Damages for any Photographs Not Returned in Connection With Jobs Performed Prior to May 7, 1998.

The statute of limitations for breach of contract claims is six years from the date of accrual. *Saenger Org. v. Nationwide Ins. Licensing Assoc., Inc.*, 119 F.3d 55, 64 (1st Cir. 1997). "[A]n action for breach of contract generally accrues at the time of breach, thereby triggering the statute of limitations for purposes of determining whether a claim is time-barred." *Id.* (citations omitted). Because PIC instituted this action on May 7, 2004, its breach of contract claims arising out of Gillette's failure to return photographs to PIC prior to May 7, 1998 are time-barred. Thus,

any evidence relating to any purported breach of contract that occurred prior to May 7, 1998 should be precluded. (*See* Donahue Decl. Ex. 4 at 19-21 (listing PIC job numbers for time-barred breach of contract claims).)

PIC has attempted to avoid the statute of limitations by arguing that there was a "bailment" between PIC and Gillette and that the six-year statute of limitations began to run only upon PIC's first demand that the photographs be returned in 2002. PIC's argument should be rejected on two independent grounds.

First, the issue of bailment never has been in this case. PIC did not plead any claim for bailment, whether based on contract or tort, in any of its three pleadings in this action. More importantly, the word "bailment" appears nowhere in PIC's Supplemental Response to Gillette's Interrogatory No. 2, which the Court ordered PIC to supplement in full and to which PIC is strictly bound. (3/3/05 Order Re: Gillette Mot. to Compel; *see also* 3/8/05 Order Re: Mot. for Clarification.) PIC's attempt to raise the issue of bailment for the first time in briefing on the parties' summary judgment motions comes too late in this litigation and should be rejected. (Indeed, the Court confirmed at the Pretrial Conference that bailment is not at issue in this case.)

Second, the reason PIC did not raise the issue of bailment is plain. The elements of a claim for bailment under Massachusetts law are: (1) delivery of property to the bailee; (2) "*timely demand*" by the bailor; (3) failure by the bailee to return the property; and (4) lack of due care by the bailee. *Knowles v. Gilchrist Co.*, 362 Mass. 642, 652 (1972) (emphasis added). PIC has steadfastly avoided citing *Knowles* and other leading Massachusetts cases for an obvious reason: PIC obviously failed to make a "timely demand" as required under Massachusetts law.

Indeed, as the Supreme Judicial Court of Massachusetts explained in *Kelley v. Thomas G. Plant Co.*, 274 Mass. 102, 105 (1931), where a contract calls for return of goods within a certain

15

period of time, "the bailor [cannot] delay indefinitely before demanding a redelivery."[8]  Here, the Agreements between PIC and Gillette purportedly required redelivery of the photographs to PIC within 30 days of receipt by Gillette.  Yet PIC did not make any demand for the photographs for *ten years*.  Accordingly, its demand was not timely, and PIC would not have been able to sustain a cause of action for bailment even if it had pleaded one (which it did not).

The one Massachusetts case cited by PIC in support of its bailment theory, *Town of Warren v. Ball*, 341 Mass. 350 (1960), is easily distinguished.  Unlike this case, in which the parties' contract required redelivery of the photographs within 30 days, in *Town of Warren*, the bailment contract for storage of historic hand tubs was for an unspecified duration.  Thus, the Supreme Judicial Court found that "the transaction between the parties, being a bailment, was to continue into the future for a substantial period of time before the plaintiff would be expected to demand the return of the tubs."  *Id.* at 353-54.  There is no basis for such a finding in this case, where, as in *Kelley v. Thomas G. Plant*, the alleged bailment was for a specified duration.

## CONCLUSION

For the foregoing reasons, the Court should preclude PIC from attempting to present evidence of actual damages allegedly caused by Gillette's failure to return photographs.

---

[8] PIC attempted to claim for the first time in post-summary judgment briefing that there is an unresolved issue under Massachusetts law whether a bailee's failure to return goods under a contract for a bailment with a specified duration results in a continuing bailment.  (Dkt. No. 145 at 2-3.)  In light of *Kelley v. Thomas G. Plant Co.*, however, PIC's claim, and its citation to out-of-state authority on the issue, must be viewed as disingenuous.

Dated: May 24, 2005

| | |
|---|---|
| GELB & GELB LLP | FROSS ZELNICK LEHRMAN & ZISSU, P.C. |
| By:   /s/Richard M. Gelb/ <br>     Richard M. Gelb (BBO#188240) <br>     rgelb@gelbgelb.com <br>     Robert S. Messinger (BBO# 651396) <br>     rmessinger@gelbgelb.com | By:   /s/Patrick T. Perkins/ <br>     Patrick T. Perkins (Admitted *pro hac vice*) <br>     David Donahue (Admitted *pro hac vice*) <br> 886 United Nations Plaza <br> New York, New York 10017 <br> Ph: (212) 813-5900 <br> Fax: (212) 813-5901 |
| 20 Custom House Street <br> Boston, MA 02110 <br> Tel: (617) 345-0010 <br> Fax: (617) 345-0009 | *Attorneys for Defendant/Counterclaim-Plaintiff The Gillette Company* |

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)**

I, Patrick T. Perkins, do hereby certify that on May 18, 2005, I communicated with Michael Albert, Esq., counsel of record for Plaintiff, in a good faith effort pursuant to Local Rule 7.1(a)(2) to resolve or narrow the issues raised in this motion.

By:   /s/Patrick T. Perkins/
Patrick T. Perkins (Admitted *pro hac vice*)

I:\ddonahue\GLTC\COURT DOCS\050520-0420298- Memorandum re Damages for Unreturned Photographs-dd.doc