IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

       Plaintiff,

v.

THE GILLETTE COMPANY,

       Defendant.

Civil Action No. 04-CV-10913-WGY

**PIC'S OPPOSITION TO GILLETTE'S MOTION FOR RECONSIDERATION OF THE
COURT'S CONCLUSION THAT PIC MAY PRESENT EVIDENCE OF ACTUAL
DAMAGES FOR PHOTOGRAPHIC MATERIALS UNRETURNED BY GILLETTE**

Michael A. Albert, BBO #558566
Michael N. Rader, BBO # 646990
Adam J. Kessel, BBO # 661211
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

COUNSEL FOR PLAINTIFF
PHOTOGRAPHIC ILLUSTRATORS CORP.

## TABLE OF CONTENTS

I.     ARGUMENT...........................................................................................................3

    A.     Legal Standards ..........................................................................................3

    B.     PIC Adequately Pled Its Breach of Contract
        Claim, and the Parties Litigated the Same ................................................4

    C.     The Court Did Not Hold That PIC Waived
        Its Contractual Right to Return of Its Property........................................14

    D.     Gillette's Estoppel and Statute of Limitations Arguments Fail .............16

II.     CONCLUSION.....................................................................................................19

Gillette's motion for reconsideration should be denied.

At the summary judgment hearing on May 17, 2005, the Court granted Gillette's motion for summary judgment that PIC waived its claim to <u>liquidated</u> damages for photographic materials lost or destroyed by Gillette.[1]

At a hearing in chambers on May 18, the Court explained that it had carefully reviewed PIC's complaint and concluded that PIC may properly pursue its claim for <u>actual</u> breach of contract damages at trial. Gillette requested permission to brief that specific issue, and the Court – although indicating that it was unlikely to be swayed – granted Gillette leave to do so.

Instead, Gillette filed a far-ranging motion for reconsideration, asking the Court to revisit a number of other issues, including its conclusion that Gillette has a contractual obligation to locate and return PIC's property. Gillette's arguments are without merit.

As explained in more detail below, PIC adequately pled its breach of contract claim and the parties litigated that claim extensively. Gillette sought summary judgment only that PIC waived its claim to <u>liquidated damages</u> for Gillette's failure to return PIC's images <u>within 30 days</u>. (Docket #89 at 6-7). Gillette's present motion is an attempt to take a second stab at summary judgment. The draconian result that Gillette urges – denying PIC the opportunity to present its actual damages claim for the vast amounts of property that Gillette admits it will never return to PIC as contractually required – is legally baseless and should be rejected.

Gillette's lead argument (at pp. 8-11 of its brief) is a nit-picking of the Court's verbal and written summary judgment Orders in an effort to show that the Court "already" held for Gillette on this issue – when the Court has in fact explained that the opposite is the case. In essence, Gillette argues (wrongly) that the Court misunderstood its own Orders.

---

[1] PIC respectfully preserves its right to appeal that decision.

Actual damages are a standard remedy when otherwise applicable liquidated damages clauses are not enforced.  As discussed below, several courts have so held in the context of photography contracts like the one at issue here.  Gillette cites no contrary authority.

Diverting attention from the relevant legal issues, Gillette's brief attempts to malign PIC by falsely claiming that PIC "did not want [its] photographs back or to prove that it suffered any actual loss – it just wanted a windfall conferred by the liquidated damages clause." (Gillette Br. at 3).  The statement is disingenuous.

Following termination of the parties' relationship, PIC repeatedly demanded return of its film.  PIC's efforts to secure return of its film, including numerous requests by PIC's principal Mr. Paul Picone, as well as follow-up efforts by his counsel, made over an 18-month period, met with nothing but stonewalling from Gillette.[2]  In June 2003, following a second demand from Mr. Picone, Gillette returned just 191 of the almost 10,000 transparencies that it had been provided by PIC.  Gillette later claimed that this was all the film it was able to find at the time. (Docket #89 at 2) ("On June 26, 2003, Gillette returned to PIC the materials it could find.").  It was not until a few days before the close of all discovery in this case that Gillette, for the first time, "found" thousands more of PIC's transparencies.  Nevertheless, over 7,000 transparencies still remain unaccounted for.[3]

Only after repeated demands for its film were ignored did PIC commence this suit as a last resort, seeking, *inter alia*, its film and damages for any film not returned.[4]

---

[2] A Gillette employee admitted to Mr. Picone that Gillette intends to "bury" him with this protracted litigation. (3/24/05 Picone Depo. at 290).

[3] See 3/24/05 Picone Depo. at 267; 4/8/05 Picone Decl. ¶¶ 30-32; 3/3/05 McManus Declaration; and Ex. 26, 28, 37, 33, 35 to Docket #77.

[4] In its summary judgment briefing, PIC reiterated: "It is undisputed that Gillette possesses thousands of PIC's transparencies, negatives and slides… Yet Gillette has refused – without so much as an explanation – to return these items to PIC." (Docket #74 at 12).

PIC's pleadings provide (as the Court observed in chambers) more than enough of a "short and plain" statement – the low Rule 8 threshold – for a contractual demand that PIC's film be returned, or if missing, that the value of that film be paid. What is more, Gillette's own Rule 30(b)(6) witnesses admitted at deposition that they knew PIC's film had to be returned. (Josephson Depo. at 117-120; Cooper Depo. at 191).

It is Gillette – not PIC – that seeks a "windfall" here. After misusing PIC's property over a period of years, and admittedly failing to safeguard that property despite promising repeatedly to do so,[5] Gillette now asks the Court to rule that it ought not be required to answer for the *thousands* of PIC's photographic materials that it admits it has lost or destroyed. This would be unjust and contrary to law. In lieu of liquidated damages, PIC is certainly entitled to recover its actual damages for property that Gillette is unwilling or unable to return.

## I.  ARGUMENT

### A.  <u>Legal Standards</u>

Modern notice pleading requires only a "short and plain statement of the claim" and a "demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). The requirements of a "demand for judgment" are further governed by Rule 54(c), which states:

> Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, ***even if the party has not demanded such relief in the party's pleadings***.

Fed. R. Civ. P. 54(c) (emphasis added).

---

[5] <u>See</u> Gillette Br. at 12 ("Gillette did not maintain the photographs in a manner in which they could easily be found and returned to PIC.").

Accordingly, it is well-settled that demanding one form of relief in a complaint does not foreclose other forms of relief to which the plaintiff is entitled through proof of its claim. E.g., Lehman v. Revolution Portfolio, LLC, 166 F.3d 389, 394 (1st Cir. 1999) (plaintiff entitled to money damages even though its prayer for relief demanded only rescission of property sales); United States v. Marin, 651 F.2d 24, 31 (1st Cir. 1981) ("This rule has been liberally construed, leaving no question that *it is the court's duty to grant whatever relief is appropriate in the case on the facts proved*.") (emphasis added); see also LINC Finance Corp. v. Onwuteaka, 129 F.3d 917, 922 (7th Cir. 1997) ("[A] plaintiff is not required to itemize his damages claims in his complaint. On the contrary, the rules [of civil procedure] entitle him to a judgment that grants him the relief to which he is entitled even if the complaint failed to ask for that relief."); Williamson v. Handy Button Mach. Co., 817 F.2d 1290, 1298 (7th Cir. 1987) (explaining that Rule 54(c) "was designed to divorce the decision what relief to award from the pleadings and arguments of counsel; the court is to determine, and award, the right relief in each case even if the complaint is silent on the question.").

Finally, the Federal Rules are governed by the overarching requirement that "[a]ll pleadings shall be so construed as to do substantial justice." Fed. R. Civ. P. 8(f).

**B.    PIC Adequately Pled Its Breach of Contract Claim, and the Parties Litigated the Same.**

As the Court expressed at the May 18 hearing in chambers, PIC pled, in its complaint, a broad breach of contract claim for Gillette's failure to return PIC's property as required by the parties' agreements. Relevant excerpts from PIC's complaint are reproduced below.

## DEFENDANT'S *UNAUTHORIZED RETENTION* AND USE OF PLAINTIFF'S PHOTOGRAPHS

18.    Following numerous requests, Gillette acknowledged its obligation to return the Photographs to PIC, but belatedly sent PIC a box containing only a small fraction of the Photographs. *The remaining Photographs still have not been returned.*

30.    On or about June 30, 2003, Gillette sent to PIC a box containing a small fraction of the Photographs owed to PIC. *The remaining Photographs were not (and still have not been) returned.*

46.    *Gillette has not returned PIC's original images as required by the Agreement.*

47.    On information and belief, Gillette's … *breach[es] of the Agreements* … have been knowing and willful.

## COUNT III
### (Breach of Contract)

52.    PIC repeats and re-alleges the allegations of the paragraphs above as though fully set forth herein.

53.    *Gillette has breached its Agreements with PIC by failing to return PIC's Photographs as required by the Agreements.*

57.    *PIC has been, and will continue to be, damaged by Gillette's breaches of the Agreements.*

## RELIEF REQUESTED

WHEREFORE, PIC requests that this Court:

E.    Direct Gillette to pay to PIC *its damages* sustained as a result of Gillette's fraud and unfair and deceptive trade practices.

K.    Award PIC *such further relief as this Court may deem just and proper*.

PIC's complaint made clear that PIC is suing for Gillette's unauthorized retention of its film, that Gillette's failure to return the film constitutes a breach of the parties' agreements, and that PIC was damaged by this breach. PIC explicitly pled this as a cause of action in Count III.

That PIC also articulated its entitlement to liquidated damages under the parties' agreements because Gillette did not return the film within 30 days (2D Am. Compl. ¶¶ 14, 15, 17) does nothing to detract from PIC's explicit pleading that Gillette's failure to return PIC's film *at any time* is an actionable breach of contract resulting in <u>actual damage</u> to PIC.

In its prayer for relief, PIC requested a number of remedies, including actual damages and liquidated damages. In paragraph E, PIC requested actual damages for Gillette's violation of Chapter 93A. PIC's 93A claim incorporates by reference all of Gillette's wrongful conduct, including its refusal to return PIC's images and its stonewalling of PIC's efforts to secure return of those images, and avers that PIC was damaged by such conduct. (2d Am. Compl. ¶¶ 70-75).

In paragraph F, PIC requested, in addition to actual damages for all of Gillette's wrongful conduct, liquidated damages as set forth in the parties' agreements.

Thus, PIC requested both liquidated and actual breach of contract damages in its prayer for relief. In any event, the numbered paragraphs of PIC's complaint put Gillette on abundant notice that it was seeking actual damages for unreturned film. Finally, even if PIC had failed to list every possible remedy in its prayer for relief, pursuant to Rule 54(c) "it is the court's duty to grant whatever relief is appropriate in the case on the facts proved." <u>Marin</u>, 651 F.2d at 31. <u>See also</u> <u>Lupien v. Citizens Utils. Co.</u>, 159 F.3d 102 (2d Cir. 1998) (permitting the defendant to pursue its contract counterclaim, despite having "failed to allege or show actual damages," if it could "provide evidence that it suffered actual damages due to [the plaintiff's] breach").[6]

---

[6] <u>See also</u> <u>id.</u> at 106 (counterclaim reciting liquidated damages "can also be read to seek recovery of CUC's actual damages, since it alleges that H-L breached the" agreement).

PIC will unquestionably prove at trial that Gillette has failed to return thousands of its images; Gillette admits this.  Gillette invites legal error by requesting that the court preemptively preclude PIC from seeking relief "on the facts [that will be] proved." Marin, 651 F.2d at 31.

Finally, in paragraph K of its prayer for relief, PIC requested that the Court "[a]ward PIC such further relief as this Court may deem just and proper."  This paragraph, although unnecessary in light of Rule 54(c), provides yet another ground on which the Court should reject Gillette's draconian request that PIC be precluded from proving its actual damages.

Contrary to suggestions by Gillette, the parties conducted extensive discovery on the value of PIC's images and the damage to PIC from Gillette's failure to return them.  Indeed, this discovery was essential even with respect to the liquidated damages analysis, since both parties agree that a liquidated damages figure is enforceable only if it "represents a reasonable estimate of the actual damages." Kelly v. Marx, 705 N.E. 2d 1114, 1116 (Mass. 1999).  Accordingly, both parties produced documents, testimony and other evidence bearing on actual value.

The parties exchanged thousands of documents and hundreds of pages of interrogatories, conducted over a dozen depositions and exchanged expert discovery.  A few excerpts from this extensive discovery suffice to demonstrate that actual damages have been addressed extensively. There is no "prejudice" to Gillette from PIC pursuing its actual damages at trial.

By way of example, in her expert report, Gillette's photography expert Beverly Adler expressed her view that PIC's photography for Gillette was "straightforward and simple" and fell "at the low-end of the spectrum of assignment photography both in terms of creativity and value."  The photographs, in her view, "would have no value to anyone other than Gillette" and "are not the type of photographs that would retain long-term value." (Adler Report ¶ 15).[7]

---

[7] The fact that Ms. Adler was asked to opine on these topics is further proof that Gillette was well aware that the value of PIC's images would be an issue at trial.

At deposition, Ms. Adler testified that she was asked by Gillette to render an opinion on the actual value of PIC's transparencies, and described that analysis in detail:

> Q: My first question is were you asked to offer any opinion about the value of the PIC images that are in dispute in this case?
>
> A: Yes.  Yes.
>
> Q: And did you formulate an opinion as to the value of each of the images that are in dispute in this lawsuit?
>
> A: Of the images that I viewed.
>
> Q: And your estimate of that was, what you had looked at was several dozen was your earlier testimony?
>
> A: It could have been several hundred.
>
> Q: Now, as to the images that you did view, did you formulate an opinion as to what their value was?
>
> A: Yes.
>
> Q: And did you put that dollar value anywhere in your expert report?
>
> A: No, I did not form a dollar value.
>
> Q: So, you can predict before you even see a picture how much it's going to be worth commercially?
>
> A: Yes.
>
> Q: What factors would you use to form that valuation?
>
> A: The uniqueness of the image, whether the image is -- whether it's a photograph of something that could never -- that was a moment in time that could never be reproduced, such as a portrait of somebody who you are never going to be able to see that person again or -- so, unique in that way; basically, something that would be difficult to ever re-shoot.  I mean that's how I would look at it.  Also, I would look at, when I do assignment, the complexity of the shot.
>
> Q: What's the highest value that as an art buyer that you've ever placed on a single image that you've purchased?
>
> A: I don't recall what the highest value was.
>
> Q: Well, have you ever purchased an image for more than $20,000?
>
> A: Yes.

(Adler Depo. at 86-89) (excerpts).

- 8 -

PIC's photography expert Jeff Sedlik, an award-winning photographer and past president of the Advertising Photographers of America trade organization, reviewed Mr. Picone's work and concluded that Mr. Picone "is a highly talented artist and a skilled craftsman, with quality work of the highest technical standards." (Sedlik Report at 9).

Having reviewed a sampling of the photographic materials at issue, Mr. Sedlik discussed the value of those materials in detail, concluding (unlike Ms. Adler) that PIC's photographs have significant actual value, *and* that they had significant potential value at the time of contract formation, thus justifying a $1,500 liquidated damages figure. Indeed, Mr. Sedlik testified that $1,500 is a reasonable figure to choose for liquidated damages precisely because it appropriately assesses the <u>actual</u> loss to PIC for transparencies not returned by Gillette.

- "The value of an original transparency or negative created for commercial use can range up to tens of thousands of dollars if the image is of high quality and is used in a commercially significant fashion (such as to advertise a product that sells well as a result of the advertising)." (<u>Id.</u> at 17).
- "$1,500 is unquestionably a reasonable estimate of the value of an individual transparency or negative provided to a client by a commercial photographer. In view of Mr. Picone's experience and expertise, and the high quality of his work, the $1,500 amount is most certainly reasonable in his case." (<u>Id.</u>).
- "[E]ach individual transparency provided by PIC to Gillette … has independent economic value." (<u>Id.</u> at 18).
- "$1,500 is a reasonable, and in fact modest, estimate of the economic loss to a photographer like PIC from Gillette's failure to return PIC's original images." (<u>Id.</u>).

Following up on the issue of actual value, at deposition, Gillette's counsel asked Mr. Sedlik (who has extensive experience with so-called "stock" photo licensing) how much a stock photo agency would pay for a one-year license to use an image of a toaster in unlimited media. (Mr. Picone provided Gillette with many pictures of toasters and similar products.) Mr. Sedlik explained that, although different quotes might be received from different agencies, the range would likely be between $10,000 and $30,000 for such a license. (Sedlik Depo. at 163-164).

Mr. Sedlik also reviewed, in detail, several factors that go into determining the actual value of photographic transparencies, including the potential to re-license the image to the same client, the potential to license the image to third parties, the archival or artistic value of the image, and the worth of the image to the photographer's estate. (Id. at 162-163).

Testimony was also taken of fact witnesses that supports Mr. Sedlik's estimate that an average photograph delivered by PIC to Gillette has a value in the $1,500 range.  For example, Gillette employee Linda Mallette testified that the value of a particular transparency is determined based on the cost of the shoot in which it was produced:

> Q:  And do you have any way to assign a particular value to an individual chrome or transparency?
>
> A:  Only by what it cost me to get the chrome.
>
> Q:  And, by that, do you mean the cost of the shoot?
>
> A:  Yes.

(Mallette Depo. at 160).  In his deposition, Mr. Picone explained that $1,500 "would represent the fee price for most photographic assignments." (2/10/05 Picone Depo. at 46).

Consistent with its complaint, PIC's interrogatory responses specifically called out Gillette's failure to return PIC's images in "stating the basis" for PIC's breach of contract claim, *without* limiting PIC to a liquidated damages remedy.  Indeed, in the very first sentence of its supplemental response to Gillette's Interrogatory No. 2, PIC stated:

> For all of the following Jobs, Gillette failed entirely to return PIC's images as required by Paragraph 10 of the Agreements, with the exception of the 191 images listed in the previous section (which images also were not returned within thirty days of PIC's demand as required).

(Ex. 7 to Docket #99 at 67).

In all its sub-parts, Interrogatory No. 2, did not request *any* damages data. (Id. at 59-60).  Thus, Gillette's assertion that PIC's response "did not provide a computation of any supposed actual damages" (Gillette Br. at 4) is a red herring – the interrogatory did not ask for one.

The above are but a few examples of the discovery taken by both parties regarding PIC's actual damages for film not returned as contractually required. There is no "surprise" or "prejudice" to Gillette here. See Fenoglio v. Augat, Inc., 2000 WL 294883 (D. Mass. Mar. 16, 2000) (plaintiff entitled to damages even though complaint only sought specific performance; no prejudice to defendant as a matter of law because cause of action allowed for damages remedy).

Gillette's final argument regarding discovery (Gillette Br. at 12-14), that PIC should be sanctioned for failure to comply with Fed. R. Civ. P. 26(a)(1)(C), is baseless. PIC's Initial Disclosures provided a detailed calculation of its damages, including a statement that "Gillette has failed to return at least 7,000 original images," such that liquidated damages of $1,500 per image would yield a total damages figure of $10,500,000. (Ex. 2 to 5/24/05 Donahue Decl.). This plainly put Gillette on notice of the scope and magnitude of PIC's claim.

Subsequent discovery, including expert discovery, informed Gillette that the $1,500 figure is appropriate for measuring actual damages as well as liquidated damages. The multiplication of that figure and the number of images that Gillette did not return yields the same result that PIC included in its Initial Disclosures. Accordingly, even assuming *arguendo* that PIC's Initial Disclosure could be deemed incomplete, the error was harmless to Gillette. This precludes imposition of sanctions. See Fed. R. Civ. P. 37(c)(1) (sanctions are not imposed where a failure to disclose is harmless).

Moreover, consistent with Fed. R. Civ. P. 26(e), courts permit parties to update their Initial Disclosures as the case progresses, even following the summary judgment stage. E.g., Giese v. Pierce Chem. Co., 43 F. Supp. 2d 98, 109-10 (D. Mass. 1999) (Young, C.J.) (permitting patent infringement plaintiff which had improperly described its damages claim in its Initial Disclosures to "refile his Rule 26(a)(1)(C) report" after disposition of summary judgment motions).

This practice makes sense, particularly given that the focus of a case can shift following the Court's decisions on important motions. See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir.1999) (district court properly allowed plaintiff to proceed at trial on a recission theory for contract damages, even assuming that plaintiff improperly failed to disclose it pursuant to Rule 26(a): "Woodworker's initial disclosures … occurred before the district court ruled that ERISA preempted a number of its claims. Those rulings no doubt prompted Woodworker to modify its damage theory.").

Here, while PIC's claim for actual damages due to Gillette's breach of contract has always been in the case (and was the subject of extensive discovery as discussed above), it is certainly true that this claim took on added significance on May 17 when the Court granted summary judgment to Gillette on the liquidated damages issue. As previously discussed, the two damage measures substantially overlap; any failure to dissect every detail of the actual damages claim was harmless and unintentional. Id. (court's ruling prompting plaintiff to modify its damage theory "reduces the likelihood that Woodworker acted in 'bad faith' in varying its trial testimony from its deposition testimony").

Most decisions precluding parties from presenting evidence due to violation of Rule 26(a), including Laplace-Bayard v. Batlle, 295 F.3d 157 (1st Cir. 2002) (cited by Gillette at 13), concern late disclosure of expert testimony,

The decisions cited by Gillette in the damages context present very different facts and are readily distinguishable. For example, in Gilvin v. Fire, 2002 WL 32170943 (D.D.C. Aug. 16, 2002), the plaintiff disclosed, for the first time in a pre-trial statement, that it would seek damages based on a new set of facts (travel-related expenses). Id. at *3. Here, PIC has always maintained that it is entitled to damages for Gillette's failure to return its images. No new facts or claims have been presented.

- 12 -

In <u>Colombini v. Empire College School of Law</u>, 2001 WL 1006785 (N.D. Cal. Aug. 17, 2001), the plaintiff refused to provide any explanation of the compensatory damages he asserted, "despite repeated requests from the defendants," and refused to consent to depositions that would have provided the defendants with information about his damage claim. <u>Id.</u> at *8.

Here, by contrast, PIC has provided a straightforward calculation of the damages to which it is entitled, both through its formal disclosures and through subsequent depositions and other discovery. Moreover, despite being on notice of PIC's actual damages claim since the filing of PIC's complaint, Gillette has never once requested additional information on that claim. As noted above, Gillette declined to request information about damages in its interrogatory directed to PIC's breach of contract claim. <u>Cf.</u> <u>Am. Hotel Int'l Group, Inc. v. CGU Ins. Co.</u>, 2002 WL 1974052, *3 (S.D.N.Y. Aug. 22, 2002) (declining to impose Rule 37(c) sanction for alleged violation of Rule 26(a) where "Plaintiffs have not refused to provide discovery and they have not disobeyed an order of this Court.").

In <u>Austrian Airlines v. UT Finance Corp.</u>, 2005 U.S. Dist. Lexis 7283 (S.D.N.Y. Apr. 28, 2005), the plaintiff updated its Rule 26(a) disclosure at the close of discovery with a new damages theory for "currency conversion damages," seeking to have any award under the contract be made in Euros rather than in dollars. The court concluded that no such cause of action existed under New York law; thus, it was "highly unlikely that plaintiff would prevail on this issue," such that the "interest of justice" did not favor permitting such an amendment. <u>Id.</u> at *8-9. By contrast, as described above (and as expressed by the Court at the May 18 hearing in chambers), PIC's actual damages claim is proper and was timely presented in its complaint.[8]

_____

[8] Gillette's argument concerning alleged deficiency of PIC's Initial Disclosures rings hollow given that Gillette itself *never disclosed or described its damages case, including in its Rule 26(a) disclosure*, despite purportedly seeking damages in connection with its counterclaims. <u>See</u> Gillette's Counterclaim (Docket #24) at 16 (requesting damages for "PIC's and Picone's breach of contract, estoppel, fraud, and unfair and deceptive trade practices").

Finally, Gillette's argument that it will be "severely prejudiced" if a jury elects to award PIC more than $1,500 per image is unfounded as a matter of law. A litigant is unquestionably entitled to recover more than any estimate provided in its complaint or Rule 26(a) disclosure. E.g., Aggarwal v. Ponce School of Med., 745 F.2d 723, 729 (1st Cir. 1984) ("[I]t is firmly settled that the *ad damnum* does not constitute a ceiling of any sort on the plaintiff's recovery.").

Moreover, liquidated damages clauses are intended to avoid litigation and protect both parties from risk – one side from the actual value being shown to be lower than the liquidated amount, and the other side from the actual value being shown to be higher. See Kelly, 705 N.E. 2d at 117 (liquidated damages clauses are intended to "eliminate uncertainty and … prevent costly future litigation"). Having elected to challenge (successfully) the liquidated damages clause in this case, Gillette cannot have its cake and eat it too by fretting over what actual damages a jury may find.

### C.   The Court Did Not Hold That PIC Waived Its Contractual Right to Return of Its Property.

Although Gillette requested leave to re-brief the issue of whether PIC waived its claim to liquidated damages or all damages for unreturned film, its papers do not present the Court with any substantive argument on this point. Rather, Gillette argues, by nit-picking the Court's verbal and written summary judgment Orders, that the Court "already" held for Gillette on this issue. (Gillette Br. at 8-11).[9] To the contrary, the Court explained in chambers on May 18 that this interpretation of its Orders is not correct.

---

[9] Gillette misleadingly leads off its argument with the heading "*As the Court Already has Held*, PIC Waived The Return of Photographs Provision." (Gillette Br. at 8) (emphasis added).

Gillette latches onto language in the Court's Orders to the effect that PIC "waived the 30 day return requirement" and that Gillette's motion for summary judgment was "allowed in all … respects." (Id. at 11). Yet, as the Court explained in its Orders and in chambers, waiver of PIC's liquidated damages claim for Gillette's failure to return PIC's images within 30 days did not work a waiver of PIC's underlying breach of contract claim for failure to return the images *at any time*.[10]

Moreover, allowance of Gillette's summary judgment motion has no bearing on this aspect of PIC's breach of contract claim, because Gillette sought summary judgment only on PIC's claim for liquidated damages, not on PIC's broader contract claim for non-return of is property.[11] (Docket #89 at 6-7).

Thus, Gillette's argument that "[i]n light of these holdings, no breach of contract claims on the return of photographs issue remain to be litigated in this case" is a non-sequitur because the Court's holdings do not stand for that proposition in the first place.

In any event, as a matter of law, where a liquidated damages clause for failure to return property as required by contract is found unenforceable, the plaintiff may still proceed to prove actual damages at trial. Numerous courts have so held in the specific context of photography contracts like the one at issue here.

---

[10] See 5/17/05 Transcript ("Under the law of bailment they're liquidated damages of $1,500 per image. **That's been waived** and motion's allowed … The fact that I am … ruling that there was a **waiver as to the liquidated damages clause**, does not mean that somehow title to those images vests in Gillette. It does not. **Gillette is ordered to locate and return to PIC any and all images and transparencies produced for it by PIC.**") (bold added); 5/19/05 Order ("PIC waived the **30-day** return requirement … **Gillette is ORDERED to locate and return to PIC any and all images produced for it by PIC.**") (caps original; bold added).

[11] Gillette could not have secured summary judgment on the latter issue. The record amply demonstrates that PIC expected to receive its property back at the conclusion of the parties' relationship, and that Gillette personnel understood this. (Docket #130 at 8-11; Docket #74 at 12).

For example, in <u>Guthy-Renker Corp. v. Bernstein</u>, 1999 WL 1049072 (C.D. Cal. Mar. 5, 1999) the defendant photographer filed a "breach of contract" counterclaim, asserting a liquidated damages provision requiring payment of $5,000 for every use of the photographer's work unaccompanied by a proper credit line. Finding the liquidated damages clause unenforceable, the court granted the plaintiff's motion "to limit Bernstein to his actual damages proven at trial." <u>Id.</u> at *1. At trial, actual damages of $36,000 were awarded, "a sum the court calculated by trebling the $12,000 licensing fee that GRC paid Bernstein." The Ninth Circuit affirmed. <u>Guthy-Renker Corp. v. Bernstein</u>, 39 Fed. Appx. 584, 587 (9th Cir. 2002).

Similarly, in <u>Focus on Sports, Inc. v. Newsweek, Inc.</u>, 158 A.D.2d 351 (N.Y. App. Div. 1990), Newsweek delayed returning slides to the plaintiff, a stock photography house. The plaintiff sought summary judgment on its claim for liquidated "holding fee" damages of $5 per week per slide as set forth in its "delivery memo." The court denied the plaintiff's motion, holding that "the liquidated damage provision … might very well be void as a penalty." <u>Id.</u> at 352. Instead, the court directed the parties to continue discovery on "a relevant area of inquiry, namely, plaintiff's damages." <u>Id.</u>

Gillette cites no authority to the contrary. The Court's conclusion that PIC may proceed to prove its actual damages at trial was correct, and ought not be disturbed.

### D.    <u>Gillette's Estoppel and Statute of Limitations Arguments Fail</u>.

Gillette's final two arguments, estoppel and statute of limitations, were presented and deemed unavailing at the summary judgment stage. Both exceed the scope of any leave that Gillette requested or received to present in its present brief. For at least these reasons, both arguments should be rejected here.[12]

---

[12] In the event that the Court elects to consider such arguments, PIC incorporates by reference its responses to the same in its summary judgment briefing.

Two additional points are worth making here with regard to Gillette's statute of limitations defense. First, while Gillette argues (without citation to authority) that "bailment has never been in this case" because "PIC did not plead any claim for bailment" (Gillette Br. at 15), as a matter of law Gillette is incorrect. PIC certainly pled and litigated each of the elements of a bailment, even as Gillette itself defines them, and such a claim does not require use of the "magic word" "bailment." <u>See generally</u> <u>Wright and Miller</u> § 1281 ("The effect of Rule 8(e)(1) is to give a party great flexibility in framing his pleadings. Neither technical expressions nor any particular form of words is required. A pleader is free to select language that he believes most simply and clearly sets forth the claims or defenses that are being advanced.").

Second, Gillette misapprehends PIC's position on bailment and exaggerates the holdings of its own bailment cases in an effort to cast doubt on PIC's position that unresolved issues in Massachusetts bailment law should have precluded summary judgment for Gillette on waiver in the first place.[13] As explained in PIC's Motion for Interlocutory Appeal or Certification (Docket #145), the law in most jurisdictions is that a bailment for a time certain is automatically extended by operation of law *under the same terms and conditions as the original bailment* when the bailee retains possession of the bailed goods past the original bailment period. Massachusetts courts have not spoken on this issue. If the law is consistent in Massachusetts, then PIC's failure to demand return of its images after 30 days did not, as a matter of law, work a waiver, but rather caused the definite-term bailment to be converted into an indefinite bailment.

---

[13] Factual issues, such as Mr. Picone's unrebutted testimony that he agreed to permit Gillette extended custody of his images, also should have precluded summary judgment for Gillette on waiver. Once again, PIC respectfully preserves its right to appeal the waiver decision.

Gillette counters by citing <u>Kelley v. Thomas G. Plant Co.</u>, 274 Mass. 102 (1931) for the proposition that "where a contract calls for return of goods within a certain period of time, 'the bailor cannot delay indefinitely before demanding a redelivery.'" (Gillette Br. at 15-16). <u>See also</u> Gillette Br. at 16 (alleging again that the bailment in <u>Kelley</u> was "for a specified duration").

Gillette is wrong about <u>Kelley</u> – that case involved a bailment for an indefinite duration, *not* a definite duration. <u>Id.</u> ("The leather was delivered ***without*** a definite date for return.") (emphasis added). More importantly, <u>Kelley</u> explained:

> What is a reasonable time is a question of law, ***to be determined with reference to the nature of the contract and he probable intention of the parties as indicated by it***. There is nothing in this case to excuse the delay in making the demand.

<u>Id.</u>

There is ample reason in the present case to excuse PIC's delay – in particular, Mr. Picone's unrebutted testimony that he and Gillette's representative (Nadine Romano) agreed, at the time of PIC's very first Jobs for Gillette, that Gillette could maintain custody of PIC's images until PIC required that they be returned. As explained in previous briefing, Ms. Romano is available to and cooperating with Gillette, yet was unable or unwilling to contradict Mr. Picone's recollection of these discussions.

If the definite-term bailment created by the parties' agreements in this case rolled over into an indefinite-term bailment (as in other jurisdictions), there is ample evidence that PIC's ultimate demand was made within a "reasonable time" as required by <u>Kelley</u>.

Gillette's other bailment case, <u>Knowles v. Gilchrist Co.</u>, 289 N.E. 2d 879 (Mass. 1972) merely reiterates the requirement of <u>Kelley</u> that demand for return of property be "timely made." It does not contradict the <u>Kelley</u> court's conclusion that "timeliness" must be determined by examining the circumstances of the particular case.

- 18 -

## II.    CONCLUSION

For the above reasons, Gillette's motion for reconsideration of the Court's conclusion that PIC may proceed to prove its actual breach of contract damages at trial should be denied.

To avoid confusion in the future, and to ensure a clear record in the event this case is referred to a Magistrate Judge for trial, PIC respectfully requests that the Court make a written record of its conclusion, communicated in chambers on May 18, that the value of PIC's photographic materials should be assessed as of the conclusion of the one-year license term for each image.

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS CORP.

By its counsel,

Dated: May 31, 2005              /s/ Michael A. Albert
                                Michael A. Albert, BBO #558566
                                malbert@wolfgreenfield.com
                                Michael N. Rader, BBO # 646990
                                mrader@wolfgreenfield.com
                                Adam J. Kessel, BBO # 661211
                                akessel@wolfgreenfield.com
                                WOLF, GREENFIELD & SACKS, P.C.
                                600 Atlantic Ave.
                                Boston, MA 02210
                                (617) 646-8000