IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHOTOGRAPHIC ILLUSTRATORS
CORPORATION,

       Plaintiff,

v.

THE GILLETTE COMPANY,

       Defendant.

Civil Action No. 04-CV-10913-WGY

## PIC'S SUPPLEMENTAL BRIEF ON
## COPYRIGHT REGISTRATION

PIC respectfully requests leave to file this supplemental brief clarifying four issues that arose, but were left unresolved, at today's hearing.

**First,** it is absolutely clear that a copyright registration requires deposit of the photograph being registered.  See 17 U.S.C. § 408(b).  Gillette did not even argue to the contrary. See Docket #150.  While there is some flexibility in the exact nature of the deposit, this does not mean that PIC could have filed copyright applications without possessing a copy of the image to be registered.  At most, 37 C.F.R. § 202.20(d)(iii) permits an applicant to petition the Register of Copyrights for special relief to file "an actual copy or copies, in lieu of the identifying material otherwise required by this section."  No statute or rule permits registration without a deposit. Gillette withheld the deposit materials.  It will shortly return them as ordered by the Court, and PIC will file registrations as soon as possible thereafter.

**Second,** at today's hearing, Gillette presented the Court with Form CA, which allows a copyright holder to correct an erroneous registration.  Gillette's suggestion that PIC could have guessed at publication dates for purposes of obtaining a registration, relying on the ability to make corrections later, is unacceptable because it would require PIC to certify that the information on the application is correct while knowing that it is not.

**Third,** PIC was <u>not</u> required to register the copyrights in its images at the time they were created in order to protect its right to sue later for infringement. Indeed, an author need not obtain a copyright registration before filing an infringement suit, or even before the infringement begins, let alone before publishing the work to its client in the first instance. <u>E.g.</u>, <u>Positive Black Talk, Inc. v. Cash Money Records, Inc.</u>, 66 U.S.P.Q. 2d 1468, 1473 (E.D. La. 2003) (holding that plaintiff's filing of suit without copyright registration "was cured … when the Copyright Office received PBT's application"); <u>Foraste v. Brown Univ.</u>, 248 F. Supp. 2d 71, 77 (D.R.I. 2003) (jurisdiction for infringement suit established where "Plaintiff has alleged in the Amended Complaint that he has initiated the process of copyright registration in ninety-seven of the disputed images in his possession").

The Copyright Act does create an <u>incentive</u> for authors to register their works before infringement begins, and preferably before even publishing the works to their clients – namely, the availability of statutory damages. <u>See</u> 17 U.S.C. § 412. As a matter of law, however, a copyright holder cannot be precluded from suing merely because it did not choose to register at an earlier stage. <u>See</u> 17 U.S.C. § 411 (only jurisdictional pre-requisite is that copyright registration ultimately be made).

In short, while PIC could have insisted on the opportunity to register copyrights in its images before providing them to Gillette,[1] it was <u>not</u> required to do so. PIC should not now be penalized for Gillette's indisputable interference in its ability to register copyrights, simply because PIC could have (but was not required to) run its business differently years ago. Importantly, in a situation similar to this one, the District of Rhode Island concluded:

---

[1] Notably, the group registration process, which Gillette suggests that PIC could have used throughout the parties' relationship in the 1990's, only came into existence in 2001. <u>See</u> Federal Register, July 17, 2001, Vol. 66 No. 137 Pages 37142-37150.

> **[I]t would be wholly inequitable to require that Foraste, prior to proceeding with this action, register a copyright in images to which Brown presently denies him access.**

Foraste, 248 F. Supp. 2d at 78 (emphasis added).

Fourth, PIC does not contend, and has never contended, that the jurisdictional prerequisite of copyright registration does not apply in this case. See Docket Nos. 130, 137. The point, rather, is that PIC has been deprived of the opportunity to obtain additional registrations now because Gillette withheld the materials necessary to obtain those registrations until the end of discovery.

In short, PIC urges that the following statement from the Court's written Summary Judgment Order[2] be left undisturbed:

> To the extent PIC has not registered copyrights, as to such claims summary judgment is ALLOWED; however, this case will proceed to trial on those images for which copyright registrations have been obtained, and **will be administrative[ly] closed as to those images for which PIC has been unable to obtain copyright registrations because Gillette maintained possession of such images. PIC is not foreclosed from seeking relief on such claims in the future.**

(Docket #147) (emphasis added).

Respectfully submitted,

PHOTOGRAPHIC ILLUSTRATORS CORP.

By its counsel,

Dated: June 1, 2005          ___/s/ Michael N. Rader_____
                             Michael A. Albert, BBO #558566
                             malbert@wolfgreenfield.com
                             Michael N. Rader, BBO # 646990
                             mrader@wolfgreenfield.com
                             Adam J. Kessel, BBO # 661211
                             akessel@wolfgreenfield.com
                             WOLF, GREENFIELD & SACKS, P.C.
                             600 Atlantic Ave.
                             Boston, MA 02210
                             (617) 646-8000

---

[2] PIC wishes to clarify any ambiguity that may have arisen at today's hearing as to when this statement was made. It was not made in the untranscribed May 18 meeting in chambers, but rather is part of the Court's written Order (Docket #147). Gillette now seeks to have that written Order amended.