UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION,<br><br>                Plaintiff,<br><br>    vs.<br><br>THE GILLETTE COMPANY,<br><br><br><br>                Defendant. | Civil Action No. 04-10913 WGY<br><br>**THE GILLETTE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL BRIEF ON COPYRIGHT REGISTRATION** |

       This Court ordered—in two separate orders—that PIC had until March 17, 2005 to identify any documents upon which it would rely at trial or be precluded thereafter. (Electronic Orders of March 3 & 9, 2005.) PIC's current plea that it be permitted to register copyrights *now*, more than two months after the Court-ordered deadline, is simply a belated request for relief from the Court's Orders. Presumably the Court's Order means what it says—PIC's failure to identify documents upon which it would rely at trial by March 17, 2005 would result in preclusion at trial.

       PIC has attempted to justify its relief from the Court's deadline by claiming—without any basis—that it was unable to obtain copyright registrations for the images it identified as having been infringed because "<u>Gillette withheld the deposit materials</u>." (PIC Supp. Br. at 1 (emphasis in original).) **This is categorically false.**

       As the Court pointed out during today's hearing, nothing prevented PIC from registering its images *before* it gave them to Gillette.[1] That PIC was not required under the law to obtain a registration is irrelevant. The point is that *it could have* obtained a registration prior to turning the materials over to Gillette, but chose not to. On that basis alone it cannot be said that PIC was

---

[1] PIC's counsel's statement at the hearing that there is evidence that Gillette took all the film produced at photo shoots is nonsense. PIC had to have the film *developed* before the transparencies could be provided to Gillette.

1

"unable" to obtain copyright registrations due to any action of Gillette.[2]

Moreover, prior to and in connection with this case, PIC has had in its possession or has had access to *everything it needed* to obtain copyright registrations for each category of claimed infringements in plenty of time to meet the Court's deadline of March 17, 2005. Consider the following:

- **The Alleged Catalog Infringements** - PIC has claimed that it did not know about these alleged infringements prior to the litigation. This is an egregious falsehood. In a letter dated *September 29, 2003*, **six months before the litigation was filed**, PIC's counsel represented that "*PIC also has seen numerous Gillette product catalogs* in which the same picture was used in multiple years despite PIC having granted Gillette only a one-time use license." (Dkt No. 99, Ex. 12 (emphasis added); *see also* Dkt. No. 77, Ex. 10 at 80-109; Dkt. No. 99, Exs. 12, 17, 22; *id.*, Ex. 19 at 107-109.) The fact that PIC was allegedly "unaware" of the alleged catalog infringements cannot be Gillette's fault—PIC had the catalogs in its possession. As for the date of publication of the Catalogs—it is obvious from the face of the catalogs. Indeed, PIC has claimed images in the Catalogs were used beyond the purported one-year license. How could it so allege if it was unaware of when it provided the images to Gillette? Copies of the Catalogs could have been deposited with the Copyright Office and registrations obtained back in 2003. PIC chose not to obtain registrations.

- **The Advanced Duplicates** – PIC has asserted that the images allegedly infringed in the so-called Advanced Duplicates (2,034 duplicate transparencies, 4,770 duplicate 35 mm negatives, and 17 duplicate digital images), *all were copied from* transparencies returned to PIC *in 2002*. (Dkt. No. 77, Ex. 9 at 87-90.) PIC 's allegation of infringement of copyright in the Advanced Duplicates has been in the case since the outset. (SAC ¶¶ 24-27.) PIC has provided no explanation as to why it did not register the images returned to it in 2002.

- **The 4,529 Duplicates** – PIC does not dispute, because it cannot, that these images were produced to it on February 15, 2005, 10 days before the close of discovery. PIC took *no action* to copy any of these alleged infringements or to otherwise seek a registration.

- **The Digital Duplicates** – These 63 images PIC claims are infringing were in its possession in around mid February 2005 – before the close of discovery on February 25, 2005. PIC took *no action* to register these images.

- **The Alleged Internet Infringements** – These 13 unregistered alleged infringements have been in PIC's possession for many months, some as early as 2004. For reasons known only to PIC, it made no effort to register these within the deadline set by the

---

[2] In any event, PIC's position cannot cure its jurisdictional failing. *Dodd v. Fort Smith Special School Dist. No. 100*, 666 F. Supp. 1278, 1282 (W.D.Ark.,1987) ("lack of registration is a result of the defendants' retention of the only copy of the manuscript, however, the Copyright Act does not provide any exceptions from the registration requirement").

2

Court.

- **The Third Party Images** – As is the case with the "Digital Duplicates," PIC has had these allegedly infringed images in its possession since at least mid February. No effort was made to meet the Court's March 17, 2005 deadline.

- **The Foreign Web Sites** – These allegedly infringed images were in PIC's possession by mid February. No effort was made to meet the Court's March 17, 2005 deadline.

- **The Foreign Catalogs** – PIC concedes that these allegedly infringing images were in its own documents. (Dkt No. 99, Ex. 7 at 56.)

- **Product Packaging** – PIC concedes it discovered these alleged infringements in January 2005. (*Id.* at 58-59.) PIC made no effort to obtain registrations for the images at issue.

PIC's position here is that it was a lot of work to obtain registrations within the time set by the Court. However, PIC made **no effort** to register any of the allegedly infringed works prior to the Court's March 17, 2005 deadline. Similarly, PIC did not come to the Court at the time it issued its Orders on March 3 and 9, 2005, respectively, seeking relief from the Court's deadline in order to obtain copyright registrations.

PIC cites to two cases—*Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 66 U.S.P.Q.2d 1468, 1473 (E.D. La. 2003) and *Foraste v. Brown Univ.*, 248 F. Supp. 2d 71, 77 (D.R.I. 2003)—for the unremarkable proposition that lack of jurisdiction for failure to obtain a registration at the dismissal stage can be cured simply by filing an application with the Copyright Office. (PIC Supp. Br. at 2.) That is not this case. The parties, and the Court, are well beyond that now. PIC has known from the outset that its copyright claims would be limited to those images for which it owns registrations. PIC had in its possession or had access to all it needed to obtain copyright registrations by the Court's March 17, 2005 deadline. It made a litigation decision not to obtain registrations and not to seek more time from the Court.

## CONCLUSION

For the reasons set forth herein, PIC's copyright claims for the images for which it owns no registrations must be dismissed with prejudice.

June 1, 2005

| | |
|---|---|
| GELB & GELB LLP | FROSS ZELNICK LEHRMAN & ZISSU, P.C. |
| By:   /s/Richard M. Gelb/       Richard M. Gelb (BBO#188240)       rgelb@gelbgelb.com       Robert S. Messinger (BBO# 651396)       rmessinger@gelbgelb.com | By:  /s/Patrick T. Perkins/      Patrick T. Perkins (Admitted *pro hac vice*)      David Donahue (Admitted *pro hac vice*) 886 United Nations Plaza New York, New York 10017 Ph: (212) 813-5900 Fax: (212) 813-5901 |
| 20 Custom House Street Boston, MA  02110 Tel: (617) 345-0010 Fax: (617) 345-0009 | *Attorneys for Defendant The Gillette Company* |

I:\PPERKINS\GLTC\General\Opp to PIC Supp. Brief on Copyright.doc